Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jonathan.serrano@dinsmore.com

Proposed Special Counsel to Richard A. Marshack

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC |
| Debtor. | Chapter 11 |
| Richard A. Marshack, | **DECLARATION OF JEREMY B. FREEDMAN IN SUPPORT OF STATUS CONFERENCE REPORT** |
| Plaintiff | Date: June 12, 2023 |
| v. | Time: 1:30 p.m. |
| TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TANG, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW GROUP, INC.; MAVERICK MANAGEMENT, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN CONSULTING GROUP LLC; B.A.T. INC. d/b/a COAST PROCESSING; PRIME LOGIX, LLC; TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD GLOBAL; OPTIMUMBANK HOLDINGS, INC. d/b/a OPTIMUM BANK; MARICH BEIN, LLC; | Judge: Hon. Scott C. Clarkson<br>Place: Courtroom 5C<br>411 W. Fourth Street<br>Santa Ana, CA 92701 |

1  BANKUNITED, N.A.; REVOLV3, INC.;
   FIDELITY NATIONAL INFORMATION
2  SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
   WORLDPAY GROUP; MERIT FUND, LLC;
3  GUARDIAN PROCESSING, LLC; THE
   UNITED STATES POSTAL SERVICE; and
4  DOES 1 through 100, inclusive,

5                  Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF JEREMY B. FREEDMAN

I, Jeremy B. Freedman, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California. I am an associate attorney in the law firm Dinsmore & Shohl LLP, proposed special counsel for Richard A. Marshack, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estate of The Litigation Practice Group, L.P. (the "Debtor" or "LPG"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.      I submit this declaration in support of the *Status Conference Report*, filed contemporaneously herewith. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the *Status Conference Report.*

3.      On June 8, 2023, I spoke with Bill Rumping of WPR, a marketing company with which LPG has and continues to do business. Mr. Rumping expressed concern that WPR had not been paid under a specific contract for the sale of certain client ACH revenue streams entered into with LPG, signed by Daniel March on March 31, 2023 –shortly after LPG filed its petition. True and correct copies of the email from Bill Rumping on June 8, 2023 and the March 31, 2023 purchase sale contract is attached hereto as **Exhibits 3 and 4**, respectively. He explained, that an individual, he refused to name at LPG, had informed him, week after week, that LPG would pay pursuant to the contract, however, for one reason or another (not related to having filed bankruptcy) was unable to do so that week but would pay the following week. This apparently continued until he contacted proposed special counsel for Trustee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 11, 2023

Jeremy Freedman

1

# **EXHIBIT 3**

**From:** Bill Rumping <bill@midamericadebtrelief.com>
**Sent:** Thursday, June 8, 2023 4:29 PM
**To:** Freedman, Jeremy <Jeremy.Freedman@Dinsmore.com>
**Subject:** InformationHi Jeremy, thank you for taking my call. Here is the information we spoke about over the phone about what is owed to me. Please keep me informed as to what is going on,


Hi Jeremy, thank you for taking my call. Here is the information we spoke about over the phone about what is owed to me.
 Please keep me informed as to what is going on,


 Thanks again,



To schedule a free 30 min **consultation** between the hours of **8am to 4:30pm** **https://calendly.com/bill-130/30min?month=2020-11**


*"Freedom is life without debt"*

**Bill Rumping**
*Bill@MidAmericaDebtRelief.com*


**(636) 223-5900 Ext. 3 | FAX: (636) 660-2221**

**2 CityPlace Dr. Suite 200**
**St Louis MO 63146**


www.MidAmericaDebtRelief.com


**Disclaimer:** This e-mail communication and the documents accompanying this e-mail communication contain information from Mid America Debt Relief, which is intended to be for the use of the individual or entity named on this transmission e-mail and which may be confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this e-mail information is strictly prohibited. If you receive this e-mail in error, or all attachments are not received, please contact Bill Rumping at the address and telephone number above.

EXHIBIT 3
Page 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

DocuSign Envelope ID: AF6D1B16-8BE8-48FB-A9AB-71DAF4265646

**ACCOUNTS RECEIVABLE PURCHASE AGREEMENT**

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of March 31st, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and WPR Group LLC (the "**Seller" or "LPG**", and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

**RECITALS**

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

**ARTICLE 1.**
**DEFINITIONS**

Section 1.1    <u>Certain Definitions</u>.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

**ARTICLE 2.**
**ASSIGNMENT AND TRANSFER AND CONSIDERATION**

Section 2.1    <u>Assignment of the Purchased Accounts to the Buyer</u>.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    <u>No Assumption of Liabilities</u>.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    <u>Payment of Purchase Price</u>.  Buyer shall pay $31,128.64 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    <u>Guarantee of LPG</u>.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

EXHIBIT 4
Page 5

DocuSign Envelope ID: AF6B1B16-0BB3-48FB-A9AB-71DAFAD65E46

package as a whole equals 80%.  This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    <u>Organization; Good Standing</u>.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Missouri and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    <u>Power and Authority</u>.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    <u>Title to, and Sufficiency of, the Purchased Accounts</u>.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    <u>Consents</u>.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    <u>No Conflicts</u>. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

EXHIBIT 4

Page 6

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    <u>Confidentiality</u>. Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

**ARTICLE 4.**
**REPRESENTATIONS AND WARRANTIES OF THE BUYER**

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the  availability of equitable remedies may be limited by applicable Law.

EXHIBIT 4
Page 7

Section 4.3    <u>No Conflicts</u>.  The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    <u>Sufficient Funds</u>.  The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    <u>Appropriate Actions</u>.

(a)    <u>General</u>.  Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    <u>Closing</u>.  The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing.  The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    <u>Closing Deliverables of the Seller</u>.  At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    <u>Closing Deliverables of the Buyer</u>.  At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to <u>Section 6.2</u>, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    <u>Indemnification by the Seller</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

EXHIBIT 4
Page 8

DocuSign Envelope ID: AF6D1B16-0BF3-48FB-A9AB-71DAF4D65646

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    <u>Indemnification by the Buyer</u>.  Subject to the limitations set forth in this <u>Article 6</u>, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    <u>Indemnification Procedures</u>.

(a)    <u>No Restraints</u>.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, <u>provided</u>, <u>however</u>, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; <u>provided</u>, <u>however</u>, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

EXHIBIT 4
Page 9

DocuSign Envelope ID: A56D1B16-8BE8-48FB-A9AB-71DAF4D65646

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)     If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

## ARTICLE 7.
### MISCELLANEOUS

Section 7.1     Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2     Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3     Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

EXHIBIT 4
Page 10

DocuSign Envelope ID: AF6D1B16-0BB3-48FB-A9AB-71DAFAD65646

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 13 of 26

Section 7.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    <u>Expenses and Fees</u>.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    <u>Specific Performance</u>.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    <u>Governing Law</u>.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    <u>Severability</u>.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    <u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

EXHIBIT 4
Page 11

DocuSign Envelope ID: AF6D1B16-8DB3-48FB-A9AB-71DAFAD65E46

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: _Daniel S March_
9D494DB1993341E...
Name: Daniel S March
Title: Managing Shareholder

**SELLER:**

**WPR Group LLC**

By: _William Rumping_
47E575CEC5914E7...
Name: William Rumping
Title: Owner

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: _Daniel S March_
9D494DB1993341E...
Name: Daniel S. March
Title: Managing Shareholder

*[Signature Page to Accounts Receivable Purchase Agreement]*

EXHIBIT 4
Page 12

DocuSign Envelope ID: AF6B1B16-0BB3-48FB-A9AB-71DAFAD65646

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)       "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)       "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)       "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)       "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)       "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)       "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)       "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)       "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)        "**Closing**" shall have the meaning set forth in Section 6.1.

(j)        "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)       "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)        "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)       "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)       "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

EXHIBIT 4
Page 13

DocuSign Envelope ID: AF6B1B16-8BE3-48FB-A9AB-71DAFAD65646

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

EXHIBIT 4
Page 14

DocuSign Envelope ID: AF6D1B16-0BB8-48FB-A9AB-71DAFAD65646

(bb)     "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)     "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)     "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)     "     **Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)     "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)     "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)     "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)     "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)     "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)     "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)     "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

EXHIBIT 4
Page 15

DocuSign Envelope ID: A56D1B16-8BB8-48FB-A9AB-71DAF4D65646

**EXHIBIT B**

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**. Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1. <u>Defined Terms</u>. Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2. <u>Sale of Purchased Accounts; Assignment</u>. The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3. <u>Further Assurances</u>. Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4. <u>Terms of the Purchase Agreement</u>. This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement. The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference. The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

*[Remainder of page intentionally left blank.]*

DocuSign Envelope ID: AF6D1B16-0BE8-48FB-A9AB-71DAFAD65646

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 19 of 26

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_
          9D494DB1993341E
          Name: Daniel S. March
          Title: Managing Shareholder

**SELLER:**

**WPR Group LLC**

By: _William Rumping_
          47E575GEC5914E7
          Name: William Rumping
          Title: Owner

Accounts Receivable Purchase Agreement

EXHIBIT 4
Page 17

DocuSign Envelope ID: AF6D1B16-0BB3-48FB-A9AB-71DAF4D65646

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 20 of 26

**Schedule 2.3**
**Wire Instructions**

<u>**$31,128.64**</u>

**Account Holder Name: WPR Group LLC**

**Address: 1444 Brookside Dr High Ridge, MO 63049**

**Routing Number: 081001387**

**Account Number: 0185491292**

DocuSign Envelope ID: AF6B1B16-8BB3-48FB-A9AB-71DAF4D65646

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 21 of 26

| Full Name | Customer I | Company | Assigned T | Enrolled Da | Monthly Pa | Second Pay | Third Paym | Fourth Pay | Fifth Paym |
|---|---|---|---|---|---|---|---|---|---|
| Cindy Lee I | BATLLC-31 | WPR Grou | William P F | 7/3/2019 | 250.54 | 250.54 | 250.54 | 250.54 | 250.54 |
| Joseph Bel | BATLLC-32 | WPR Grou | William P F | 5/9/2019 | 418.2 | 418.2 | 418.2 | 418.2 | 418.2 |
| Lori Atkins | BATLLC-33 | WPR Grou | William P F | ######## | 254.07 | 254.07 | 254.07 | 254.07 | 338.76 |
| Andrea Fer | BATLLC-51 | WPR Grou | William P F | ######## | 260.39 | 260.39 | 260.39 | 260.39 | 260.39 |
| Marsha De | BATLLC-51 | WPR Grou | William P F | ######## | 786.28 | 786.28 | 786.28 | 786.28 | 786.28 |
| Moletta St | BATLLC-51 | WPR Grou | William P F | ######## | 128.01 | 128.01 | 128.01 | 128.01 | 128.01 |
| Moira McC | BATLLC-52 | WPR Grou | William P F | ######## | 171.25 | 171.25 | 171.25 | 171.25 | 171.25 |
| Darleen Ro | BATLLC-54 | WPR Grou | William P F | 2/3/2022 | 252.08 | 252.08 | 252.08 | 252.08 | 252.08 |
| Blanche Jo | BATLLC-54 | WPR Grou | William P F | ######## | 424.09 | 424.09 | 429.09 | 429.09 | 429.09 |
| Joan Glasb | BATLLC-55 | WPR Grou | William P F | ######## | 251.68 | 408.42 | 197.97 | 197.97 | 197.97 |
| Jimmy Mai | BATLLC-55 | WPR Grou | William P F | 4/5/2022 | 254.98 | 254.98 | 254.98 | 254.98 | 254.98 |
| Melissa Ea | BATLLC-55 | WPR Grou | William P F | ######## | 297.41 | 297.41 | 297.41 | 297.41 | 297.41 |
| Juan Marti | BATLLC-55 | WPR Grou | William P F | ######## | 356.34 | 356.34 | 356.34 | 356.34 | 356.34 |
| Phyllis Calc | BATLLC-57 | WPR Grou | William P F | ######## | 329.13 | 329.13 | 329.13 | 329.13 | 329.13 |
| Christy Lan | BATLLC-57 | WPR Grou | William P F | ######## | 277.84 | 277.84 | 277.84 | 277.84 | 277.84 |
| Laroy Dors | BATLLC-58 | WPR Grou | William P F | ######## | 540.27 | 540.27 | 540.27 | 540.27 | 540.27 |
| Anthony Co | BATLLC-59 | WPR Grou | William P F | ######## | 522.02 | 522.02 | 522.02 | 522.02 | 522.02 |
| Ashleigh N | BATLLC-59 | WPR Grou | William P F | 7/6/2022 | 458.71 | 458.71 | 458.71 | 458.71 | 458.71 |
| Deborah N | BATLLC-60 | WPR Grou | William P F | ######## | 330.3 | 330.3 | 330.3 | 330.3 | 330.3 |
| Shawn Osh | BATLLC-60 | WPR Grou | William P F | ######## | 796.09 | 796.09 | 796.09 | 808.09 | 808.09 |
| Josh Alber | BATLLC-61 | WPR Grou | William P F | 8/5/2022 | 288.44 | 288.44 | 288.44 | 313.44 | 288.44 |
| Michael Ro | BATLLC-61 | WPR Grou | William P F | ######## | 388.21 | 388.21 | 388.21 | 388.21 | 388.21 |
| Sheila Dun | BATLLC-61 | WPR Grou | William P F | ######## | 338.81 | 359.65 | 359.65 | 359.65 | 359.65 |
| Michael Cl | BATLLC-65 | WPR Grou | William P F | ######## | 411.18 | 411.18 | 411.18 | 411.18 | 411.18 |
| Daniel Sen | BATLLC-65 | WPR Grou | William P F | ######## | 553.66 | 553.66 | 553.66 | 553.66 | 553.66 |
| Patricia Sa | BATLLC-66 | WPR Grou | William P F | ######## | 271.41 | 271.41 | 271.41 | 271.41 | 271.41 |
| Brenae Pay | BATLLC-66 | WPR Grou | William P F | ######## | 367.15 | 367.15 | 367.15 | 367.15 | 367.15 |
| Charles Ca | BATLLC-67 | WPR Grou | William P F | ######## | 451.61 | 451.61 | 451.61 | 451.61 | 451.61 |
| Catherine / | BATLLC-68 | WPR Grou | William P F | 2/7/2023 | 425.51 | 425.51 | 425.51 | 425.51 | 425.51 |
| Ginger Ger | BATLLC-69 | WPR Grou | William P F | ######## | 271.76 | 263.54 | 263.54 | 263.54 | 263.54 |
| Mike Leste | BATLLC-69 | WPR Grou | William P F | ######## | 251.08 | 251.08 | 251.08 | 251.08 | 251.08 |
| Karen Loftu | BATLLC-69 | WPR Grou | William P F | ######## | 868.96 | 868.96 | 868.96 | 868.96 | 868.96 |
| Michael Co | BATLLC-69 | WPR Grou | William P F | ######## | 596.38 | 391.25 | 391.25 | 391.25 | 391.25 |
| Melissa Fra | BATLLC-70 | WPR Grou | William P F | 2/9/2023 | 273.88 | 273.88 | 273.88 | 273.88 | 273.88 |

EXHIBIT 4
Page 19

DocuSign Envelope ID: AF6D1B16-0BB3-48FB-A9AB-71DAF4D65646

| Debt Enrol | Total Progr | Total Paym | Fee 1 | State | Program Le | First Paym | Second Pay | Third Paym | Fourth Pay |
|---|---|---|---|---|---|---|---|---|---|
| 13259 | 5762.42 | 5762.42 | 34 | MO | 23 Months | Cleared | Cleared | Cleared | Cleared |
| 17279 | 11542.58 | 11124.38 | 40 | IL | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 11823.5 | 5343.59 | 5343.59 | 40 | MO | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 15211 | 9374.08 | | 40 | MO | 35 Months | Open | Open | Open | Open |
| 47284 | 18716.08 | 11134.2 | 40 | MO | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 14089 | 5192.69 | 1651.73 | 20 | MO | 42 Months | Cleared | Cleared | Cleared | Cleared |
| 22600 | 12329.68 | 4795 | 40 | MO | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 8437 | 5293.78 | 2772.88 | 40 | MO | 20 Months | Cleared | Cleared | Cleared | Cleared |
| 100250.1 | 42276.33 | 8731.67 | 40 | NY | 47 Months | Cleared | Cleared | Cleared | Cleared |
| 15349.63 | 10558.55 | 845.59 | 40 | MO | 31 Months | Cleared | Returned / | Cleared | Cleared |
| 13906 | 8949.3 | 2039.84 | 40 | MO | 34 Months | Cleared | Cleared | Cleared | Returned / |
| 18543 | 10706.88 | 2974.1 | 40 | MO | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 23846 | 12828.08 | 3563.4 | 40 | CA | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 57794 | 23697.58 | 5595.21 | 35 | FL | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 29033 | 15558.83 | 2500.56 | 35 | MO | 54 Months | Cleared | Cleared | Cleared | Cleared |
| 10146 | 4887.41 | 3266.62 | 35 | MO | 7 Months | Cleared | Cleared | Cleared | Cleared |
| 68412 | 26508.4 | 3154.14 | 35 | MO | 59 Months | Cleared | Cleared | Cleared | Cleared |
| 37268 | 16997.19 | 2752.26 | 35 | MO | 34 Months | Cleared | Cleared | Cleared | Cleared |
| 24060 | 12245.98 | 1651.5 | 35 | MO | 36 Months | Cleared | Cleared | Cleared | Cancel |
| 101398.4 | 38752.11 | 4812.54 | 35 | MO | 47 Months | Cleared | Cleared | Cleared | Cleared |
| 26339 | 14158.33 | 1467.2 | 35 | IL | 46 Months | Cleared | Cleared | Returned / | Cleared |
| 30017 | 13975.63 | 2329.26 | 35 | NJ | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 36105 | 17242.15 | 698.46 | 35 | MO | 47 Months | Cleared | Cleared | Pending | Open |
| 43172 | 19736.44 | 822.36 | 35 | MO | 47 Months | Cleared | Returned / | Cleared | Pending |
| 103983 | 39863.73 | 2768.3 | 35 | MO | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 7001 | 3799.67 | 271.41 | 35 | MO | 13 Months | Cleared | Pending | Open | Open |
| 27851 | 13217.53 | 734.3 | 35 | MO | 35 Months | Cleared | Cleared | Pending | Open |
| 36538.24 | 16709.68 | 903.22 | 35 | IL | 34 Months | Cleared | Returned / | Cleared | Open |
| 29622 | 15318.48 | 425.51 | 40 | MO | 34 Months | Cleared | Open | Open | Open |
| 17552 | 11076.98 | 271.76 | 40 | MO | 40 Months | Cleared | Pending | Open | Open |
| 10442 | 6779.06 | | 40 | MO | 26 Months | Open | Open | Open | Open |
| 115887 | 52137.6 | 868.96 | 40 | MO | 58 Months | Cleared | Open | Open | Open |
| 35897 | 18985.04 | 596.38 | 40 | MO | 47 Months | Cleared | Cancel | Open | Open |
| 9762.58 | 6025.39 | 273.88 | 40 | MO | 21 Months | Cleared | Open | Open | Open |

EXHIBIT 4
Page 20

DocuSign Envelope ID: AF6D1B16-0BB3-48FB-A9AB-71DAFAD65646

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 23 of 26

| Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cle | Pay Freq. | Payment M | Paused | Client Statu | Payments |
|---|---|---|---|---|---|---|---|---|---|
| Cleared | Cleared | ######## | | 24 | Monthly | Bank | No | Active File | 24 |
| Cleared | Returned / | ######## | | 36 | Monthly | Bank | No | Active File | 36 |
| Cleared | Cleared | ######## | | 24 | Monthly | Bank/CC | No | Paused Per | 25 |
| Open | Open | ######## | ######## | 0 | Monthly | Checks | No | Active File | 0 |
| Cleared | Cleared | ######## | ######## | 15 | Monthly | Bank | No | Active File | 15 |
| Cleared | Cancel | ######## | ######## | 13 | Monthly | Bank | No | Active File | 13 |
| Cleared | Cleared | ######## | 3/9/2023 | 28 | Bi-Weekly | Bank | No | Active File | 28 |
| Cleared | Cleared | ######## | 3/2/2023 | 11 | Monthly | Bank | No | Active File | 11 |
| Cancel | Cleared | ######## | ######## | 11 | Monthly | Bank | No | Active File | 11 |
| Cleared | Pending | ######## | 3/9/2023 | 4 | Bi-Weekly | Bank | No | NSF | 4 |
| Cleared | Cleared | ######## | ######## | 8 | Monthly | Bank | No | NSF | 8 |
| Cleared | Cleared | ######## | ######## | 10 | Monthly | Bank | No | Active File | 10 |
| Cleared | Cleared | ######## | ######## | 10 | Monthly | Bank | No | Paused Per | 10 |
| Cleared | Cleared | ######## | 3/3/2023 | 17 | Bi-Weekly | Bank | No | Active File | 17 |
| Cleared | Cleared | 6/6/2022 | 3/6/2023 | 9 | Monthly | Bank | No | Active File | 9 |
| Cleared | Returned / | ######## | | 6 | Monthly | Bank | No | Active File | 6 |
| Cleared | Cleared | ######## | 3/1/2023 | 7 | Monthly | Bank | No | Active File | 7 |
| Cleared | Cleared | ######## | ######## | 6 | Monthly | Bank | No | Active File | 6 |
| Cleared | Returned / | ######## | ######## | 5 | Monthly | Bank | No | Active File | 5 |
| Cleared | Cleared | 9/6/2022 | 3/6/2023 | 6 | Monthly | Bank | No | Active File | 6 |
| Cleared | Returned / | ######## | ######## | 5 | Monthly | Bank | No | NSF | 5 |
| Cleared | Cleared | 9/2/2022 | 3/2/2023 | 6 | Monthly | Bank | No | Active File | 6 |
| Open | Open | ######## | 3/8/2023 | 2 | Monthly | Bank | No | Active File | 2 |
| Open | Open | ######## | ######## | 2 | Monthly | Bank | No | NSF | 2 |
| Cleared | Pending | ######## | 3/3/2023 | 5 | Bi-Weekly | Bank | No | Active File | 5 |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File | 1 |
| Open | Open | ######## | 3/9/2023 | 2 | Monthly | Bank | No | Active File | 2 |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No | Active File | 2 |
| Open | Open | 2/9/2023 | 3/8/2023 | 1 | Monthly | Bank | No | Active File | 1 |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File | 1 |
| Open | Open | ######## | ######## | 0 | Monthly | Bank | Yes | Affiliate Re | 0 |
| Open | Open | 2/6/2023 | 3/6/2023 | 1 | Monthly | Bank | No | Educationa | 1 |
| Open | Open | 2/1/2023 | ######## | 1 | Monthly | Bank | No | Paused Per | 1 |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Educationa | 1 |

EXHIBIT 4
Page 21

| Payment S | # NSFs |
|-----------|--------|
| 24 of 24 | 0 |
| 36 of 37 | 1 |
| 25 of 25 | 0 |
| 0 of 36 | 0 |
| 15 of 36 | 0 |
| 13 of 41 | 0 |
| 28 of 72 | 0 |
| 11 of 21 | 0 |
| 11 of 47 | 0 |
| 4 of 52 | 1 |
| 8 of 35 | 2 |
| 10 of 36 | 0 |
| 10 of 36 | 0 |
| 17 of 72 | 0 |
| 9 of 56 | 0 |
| 6 of 9 | 1 |
| 7 of 60 | 0 |
| 6 of 37 | 1 |
| 5 of 37 | 1 |
| 6 of 48 | 0 |
| 5 of 49 | 2 |
| 6 of 36 | 0 |
| 2 of 48 | 0 |
| 2 of 48 | 1 |
| 5 of 72 | 0 |
| 1 of 14 | 0 |
| 2 of 36 | 0 |
| 2 of 37 | 1 |
| 1 of 36 | 0 |
| 1 of 42 | 0 |
| 0 of 27 | 0 |
| 1 of 60 | 0 |
| 1 of 48 | 0 |
| 1 of 22 | 0 |

EXHIBIT 4
Page 22

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
655 W. Broadway, Suite 800, San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF JEREMY B. FREEDMAN IN SUPPORT OF STATUS CONFERENCE REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 12, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On June 12, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 12, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 12, 2023 | Caron Burke | |
| *Date* | *Printed Name* | *Signature* |

1.     <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov