| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Christopher Ghio<br>Dinsmore & Shohl, LLP<br>655 W. Broadway Suite 800<br>San Diego, CA 92101<br><br>619–400–0500<br><br><br><br><br><br>_Plaintiff or Attorney for Plaintiff_ | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA**

| In re:<br><br>The Litigation Practice Group P.C.<br><br><br>Debtor(s). | CASE NO.:  8:23–bk–10571–SC<br><br>CHAPTER:  11<br><br>ADVERSARY NUMBER: 8:23–ap–01046–SC |
|---|---|
| Richard A. Marshack<br><br>Plaintiff(s)<br><br>Versus<br><br>Tony Diab<br><br>**(See Attachment A for names of additional defendants)**<br><br>Defendant(s) | **ANOTHER**<br>**SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** |

TO THE DEFENDANT(S): A Complaint has been filed by the Plaintiff against you. If you wish to defend against the Complaint, you must file with the court a written pleading in response to the Complaint. You must also serve a copy of your written response on the party shown in the upper left–hand corner of this page. The deadline to file and serve a written response is **07/24/2023.** If you do not timely file and serve the response, the court may enter a judgment by default against you for the relief demanded in the Complaint.

A status conference in the adversary proceeding commenced by the Complaint has been set for:

| | |
|---|---|
| **Date:** | **September 12, 2023** |
| **Time:** | **01:30 PM** |
| **Hearing Judge:** | **Scott C Clarkson** |
| **Location:** | **411 W Fourth St., Crtrm 5C, Santa Ana, CA 92701** |

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**You must comply with LBR 7016–1, which requires you to file a joint status report and to appear at a status conference.** All parties must read and comply with the rule, even if you are representing yourself. You must cooperate with the other parties in the case and file a joint status report with the court and serve it on the appropriate parties at least 14 days before a status conference. A court–approved joint status report form is available on the court's website (LBR form F 7016–1.STATUS.REPORT) with an attachment for additional parties if necessary (LBR form F 7016–1.STATUS.REPORT.ATTACH). If the other parties do not cooperate in filing a joint status report, you still must file with the court a unilateral status report and the accompanying required declaration instead of a joint status report 7 days before the status conference. **The court may fine you or impose other sanctions if you do not file a status report. The court may also fine you or impose other sanctions if you fail to appear at a status conference.**

**KATHLEEN J. CAMPBELL
CLERK OF COURT**

Date of Issuance of Alias Summons and Notice of Status Conference in Adversary Proceeding: June 23, 2023

By: _____ "s/" Nickie Bolte _____

Deputy Clerk



---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# ATTACHMENT A
## Names of plaintiffs and defendants

| Plaintiff(s): | Defendant(s): |
|---|---|
| Richard A. Marshack | Tony Diab |
| | Daniel S. March |
| | Rosa Bianca Loli |
| | Lisa Cohen |
| | William Taylor Carss |
| | Eng Tang |
| | Maria Eeya Tan |
| | Jake Akers |
| | Han Trinh |
| | Jayde Trinh |
| | Wes Thomas |
| | Scott James Eadie |
| | Jimmy Chhor |
| | Dongliang Jiang |
| | Oakstone Law Group PC |
| | Greyson Law Center PC |
| | Phoenix Law Group, Inc. |
| | Maverick Management, LLC |
| | LGS Holdco, LLC |
| | Consumer Legal Group, PC |
| | Vulcan Consulting Group LLC |
| | B.A.T. Inc. |
| | Prime Logix, LLC |
| | Teracel Blockchain Fund II LLC |
| | EPPS |
| | Equipay |
| | Authorize Net |
| | World Global |
| | Optimumbank Holdings, Inc. |
| | Marich Bein, LLC |
| | BankUnited, N.A. |
| | Revolv3, Inc. |
| | Fidelity National Information Services, Inc. |
| | Worldpay, Inc. |
| | Worldpay Group |
| | Merit Fund, LLC |
| | Guardian |
| | The United States Postal Service |
| | Fidelity National Information Services, Inc. dba FIS |
| | Worldpay, LLC |
| | Touzi Capital, LLC |
| | Heng Taing |
| | Eng Taing |
| | Stripe, Inc. |
| | Seamless Chex Inc. |
| | Phoenix Law, PC |
| | Payliance, LLC |
| | Optimumbank Holdings, Inc. dba Optimum Bank |
| | Maverick Management Group, LLC |
| | Guardian Processing, LLC |
| | Dwolla, Inc. |
| | Max Chou |
| | BAT Inc. dba Coast Processing |
| | Gallant Law Group |
| | Coast Processing |
| | Optimum Bank |
| | FIS |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# ATTACHMENT A

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

A true and correct copy of the foregoing document entitled: **SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004–1]** and (2) the accompanying pleading(s) entitled:

_____

_____

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005–2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (<u>state method for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____   _____   _____
*Date*                                      *Printed Name*                                 *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2016                                    **F 7004–1.SUMMONS.ADV.PROC**

# UNITED STATES BANKRUPTCY COURT

## Early meeting of Counsel and Status Conference Instructions

**1.** **Service of Order.**  A copy of this Order re: Rule 26(f) Meeting, Initial Disclosures, and Scheduling Conference must be served with the summons and complaint.  The proof of service of the summons and complaint must indicate that a copy of this order was served therewith.

**2.** **Local Bankruptcy Rule 7026-1.**  Compliance with Local Bankruptcy Rule 7026-1 (ALBR 7026-1") is required in ALL adversary proceedings.

**3.** **Rule 26(f) Meeting.**  Unless all defendants default, the parties must meet and confer pursuant to Rule 26(f) of the Federal Rules of Civil Procedure (ARule 26(f) Meeting@) at least 21 days before the status conference date set forth in the summons.  **The status conference set forth in the summons shall also serve as the initial Rule 16(b) Scheduling Conference in this adversary proceeding.**

The parties are jointly responsible for arranging and attending the Rule 26(f) Meeting, which may be conducted in person or by telephone.  During the Rule 26(f) Meeting, the parties must, at a minimum: (a) discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case; (b) make or arrange for the initial disclosures required by Rule 26(a)(1); and ( c) develop a proposed discovery plan.  The discussion of claims and defenses must be substantive and meaningful.  The parties are directed to approach the Rule 26(f) Meeting cooperatively and in good faith.

**4.** **Initial Disclosures.**  Rule 26(a)(1) states that a party must, without awaiting discovery request, provide to other parties:

    a.   The name and, if known, the address and telephone number for each individual likely to have discoverable information - along with the subjects of that information - that the disclosing party may use to support its claims or defenses,

unless the use would be solely for impeachment.

    b.   A copy of - or a description by category and location - of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

    c.   A computation of each category of damages claimed by the disclosing party - who must also make available for inspection and copying under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

    d.   For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

F.R.Civ.P.26(a)(1)(A). Rule 26(a)(1) requires a party to make its initial disclosures based on the information that is reasonably available to it.  A party is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party=s disclosures or because another party has not made its disclosures.

F.R.Civ.P.26(a)(1)(E).

    **5.**   **Alternative Dispute Resolution (AADR@).**   The parties must explore the feasibility of ADR to reach a settlement or early resolution of the adversary proceeding.  The specific reasons for any decision not to participate in a form of early ADR must be explained in the Joint Status Report.  If the parties elect not to participate in an early ADR effort, the Court may nonetheless direct the parties to ADR before trial

    **6.**   **Discovery Plan.**   At the Rule 26(f) Meeting, the parties must also discuss issues about preserving discoverable information and develop a proposed discovery plan.  The discussion regarding discovery following the initial disclosures must address the relevance of the discovery sought and the sequence and timing of such discovery, including whether the discovery will be conducted informally or formally.  The deadlines in the discovery plan must be mutually

agreeable, with a view to achieve resolution of the case with a minimum of expense and delay.

**7.** **Joint Status Report.** A status report must be filed within the time frames specified within LBR 7016-1(a)(2).   The Joint Status Report must contain the information set forth in LBR 7016-1(a)(2), and a statement that the parties have completed the Rule 26(f) Meeting and made the initial disclosures required by Rule 26(a)(1).  The Joint Status Report shall also serve as the written report of the Rule 26(f) Meeting.  If Defendant(s) have not filed and served an answer to the Complaint, a Unilateral Status report is due seven (7) days prior to the first status conference hearing.

**8.** **Status Conference/Rule 16(b) Scheduling Conference.** At the Rule 16(b) Scheduling Conference, the Court will review the discovery plan set forth in the Joint Status Report and set appropriate deadlines.

Counsel representing any party in conjunction with the Rule 26(f) Meeting, Joint Status Report, and Rule 16(b) Scheduling Conference must be authorized to bind the party on all matters to be covered.

**9.** **Default.** If no response to the complaint is timely filed, plaintiff should request entry of default by the clerk prior to the status conference date set forth in the summons. F.R.Civ.P.55(a). Plaintiff may also request entry of a default judgment by filing and serving an appropriate motion. F.R.Civ.P.55(b)(2).

**10. Sanctions.  Failure to comply with these instructions may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding.  The failure of either party to cooperate in the preparation of timely filing of a Joint Status Report or appear at the status conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).**

///

11. <u>**Joint Pre-Trial Order**</u>.  **Failure to timely file a Joint Pre-Trial order may subject the responsible party and/or counsel to sanctions, which may include dismissal of the adversary proceeding.  The failure of either party to cooperate in the preparation of timely filing of a Joint Pre-Trial Conference or appear at the Joint Pre-Trial Conference may result in the imposition of sanctions under LBR 7016-1(f) or (g).**

Honorable Scott C. Clarkson<br>
United States Bankruptcy Judge

Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jonathan Serrano (State Bar No. 333225)
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:   619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jonathan.serrano@dinsmore.com

Proposed Special Counsel to Richard A. Marshack,
Chapter 11 Trustee

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>               Debtor. | Case No. 8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. Proc. No. 8:23-ap-01046-SC<br><br>**NOTICE OF REQUIRED COMPLIANCE WITH RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 7026-1 OF THE LOCAL BANKRUPTCY RULES** |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>               Plaintiff,<br><br>               v.<br><br>TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TAING, an individual; HENG TAING, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an | <u>**Status Conference**</u><br><br>Date:    August 15, 2023<br>Time:    11:30 a.m.<br>Judge:  Hon. Scott C. Clarkson<br>Place:   Courtroom 5C<br>         411 West Fourth Street<br>         Santa Ana, CA 92701 |

individual; DONGLIANG JIANG, an
individual; MAX CHOU, an individual;
OAKSTONE LAW GROUP PC;
GREYSON LAW CENTER PC; PHOENIX
LAW, PC; MAVERICK MANAGEMENT
GROUP, LLC; LGS HOLDCO, LLC;
CONSUMER LEGAL GROUP, P.C.;
VULCAN CONSULTING GROUP LLC;
BAT INC. d/b/a COAST PROCESSING;
PRIME LOGIX, LLC; TERACEL
BLOCKCHAIN FUND II LLC; EPPS;
EQUIPAY; AUTHORIZE.NET; WORLD
GLOBAL; OPTIMUMBANK HOLDINGS,
INC. d/b/a OPTIMUM BANK; MARICH
BEIN, LLC; BANKUNITED, N.A.;
REVOLV3, INC.; FIDELITY NATIONAL
INFORMATION SERVICES, INC. d/b/a
FIS; WORLDPAY, LLC; WORLDPAY
GROUP; MERIT FUND, LLC;
GUARDIAN PROCESSING, LLC;
PAYLIANCE, LLC; TOUZI CAPITAL,
LLC; SEAMLESS CHEX INC; DWOLLA,
INC.; STRIPE, INC.; and DOES 1 through
100, inclusive,

Defendants.

1

**TO ALL DEFENDANTS:**

PLEASE TAKE NOTICE that the parties in the above-captioned adversary proceeding are required to comply with Rule 7026 of the Federal Rules of Bankruptcy Procedure and Rule 7026-1 of the Local Bankruptcy Rules for the Central District of California. A true and correct copy of Rule 7026 of the Federal Rules of Bankruptcy Procedure is attached hereto as **Exhibit 1**. A true and correct copy of Rule 7026-1 of the Local Bankruptcy Rules for the Central District of California is attached hereto as **Exhibit 2**.

DATED: June 22, 2023                    DINSMORE & SHOHL LLP

                                        By:___/s/ Jonathan Serrano_____
                                             Jonathan Serrano
                                        Counsel to Richard A. Marshack,
                                        Chapter 11 Trustee

## *USCS Bankruptcy R 7026*

Current through changes received March 22, 2023.

***USCS Federal Rules Annotated  >  Federal Rules of Bankruptcy Procedure and Official
Bankruptcy Forms  >  Part VII. Adversary Proceedings***

## Rule 7026. General Provisions Governing Discovery

*Rule 26 F.R.Civ.P.* applies in adversary proceedings.

USCS Federal Rules Annotated
Copyright © 2023 All rights reserved.

**End of Document**

## USCS Fed Rules Civ Proc R 26, Part 1 of 5

Current through changes received March 22, 2023.

*USCS Federal Rules Annotated  >  Federal Rules of Civil Procedure  >  Title V. Disclosures and Discovery*

# Rule 26. Duty to Disclose; General Provisions Governing Discovery

**(a) Required Disclosures.**

**(1)** *Initial Disclosure.*

**(A)**  In General. Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

**(i)**  the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**(ii)**  a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**(iii)**  a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**(iv)**  for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**(B)**  Proceedings Exempt from Initial Disclosure. The following proceedings are exempt from initial disclosure:

**(i)**  an action for review on an administrative record;

**(ii)**  a forfeiture action in rem arising from a federal statute;

**(iii)**  a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

**(iv)**  an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

**(v)**  an action to enforce or quash an administrative summons or subpoena;

**(vi)**  an action by the United States to recover benefit payments;

**(vii)**  an action by the United States to collect on a student loan guaranteed by the United States;

**(viii)**  a proceeding ancillary to a proceeding in another court; and

**(ix)**  an action to enforce an arbitration award.

**(C)** Time for Initial Disclosures—In General. A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

**(D)** Time for Initial Disclosures—For Parties Served or Joined Later. A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

**(E)** Basis for Initial Disclosure; Unacceptable Excuses. A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

**(2)** *Disclosure of Expert Testimony.*

**(A)** In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under *Federal Rule of Evidence 702*, 703, or 705.

**(B)** Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

**(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

**(ii)** the facts or data considered by the witness in forming them;

**(iii)** any exhibits that will be used to summarize or support them;

**(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

**(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

**(vi)** a statement of the compensation to be paid for the study and testimony in the case.

**(C)** Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

**(i)** the subject matter on which the witness is expected to present evidence under *Federal Rule of Evidence 702*, 703, or 705; and

**(ii)** a summary of the facts and opinions to which the witness is expected to testify.

**(D)** Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

**(i)** at least 90 days before the date set for trial or for the case to be ready for trial; or

**(ii)** if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

**(E)** Supplementing the Disclosure. The parties must supplement these disclosures when required under Rule 26(e).

**(3)** *Pretrial Disclosures.*

**(A)** In General. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

**(i)** the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises;

**(ii)** the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

**(iii)** an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.

**(B)** Time for Pretrial Disclosures; Objections. Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made—except for one under *Federal Rule of Evidence 402* or *403*—is waived unless excused by the court for good cause.

**(4)** *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

**(b) Discovery Scope and Limits.**

**(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**(2)** *Limitations on Frequency and Extent.*

**(A)** When Permitted. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

**(B)** Specific Limitations on Electronically Stored Information. A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(C)** When Required. On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    **(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    **(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

**(3)** *Trial Preparation: Materials.*

    **(A)** Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

        **(i)** they are otherwise discoverable under Rule 26(b)(1); and

        **(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

    **(B)** Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

    **(C)** Previous Statement. Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

        **(i)** a written statement that the person has signed or otherwise adopted or approved; or

        **(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording—or a transcription of it—that recites substantially verbatim the person's oral statement.

**(4)** *Trial Preparation: Experts.*

    **(A)** Deposition of an Expert Who May Testify. A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

    **(B)** Trial-Preparation Protection for Draft Reports or Disclosures. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

    **(C)** Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

        **(i)** relate to compensation for the expert's study or testimony;

        **(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

        **(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

    **(D)** Expert Employed Only for Trial Preparation. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

        **(i)** as provided in Rule 35(b); or

        **(ii)** on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

**(E)** Payment. Unless manifest injustice would result, the court must require that the party seeking discovery:

**(i)** pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

**(ii)** for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

**(5)** *Claiming Privilege or Protecting Trial-Preparation Materials.*

**(A)** Information Withheld. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**(B)** Information Produced. If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

**(c) Protective Orders.**

**(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending — or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;

**(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;

**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

**(2)** *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

**(3)** *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

**(d) Timing and Sequence of Discovery.**

**(1)** *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

**(2)** *Early Rule 34 Requests.*

**(A)** Time to Deliver. More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered:

**(i)** to that party by any other party, and

**(ii)** by that party to any plaintiff or to any other party that has been served.

**(B)** When Considered Served. The request is considered to have been served at the first Rule 26(f) conference.

**(3)** *Sequence.* Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

**(A)** methods of discovery may be used in any sequence; and

**(B)** discovery by one party does not require any other party to delay its discovery.

**(e) Supplementing Disclosures and Responses.**

**(1)** *In General.* A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

**(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

**(f) Conference of the Parties; Planning for Discovery.**

**(1)** *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable—and in any event at least 21 days before a scheduling conference is held or a scheduling order is due under Rule 16(b).

**(2)** *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

**(3)** *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

**(A)** what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

**(B)** the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

**(C)** any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;

**(D)** any issues about claims of privilege or of protection as trial-preparation materials, including — if the parties agree on a procedure to assert these claims after production — whether to ask the court to include their agreement in an order under *Federal Rule of Evidence 502*;

**(E)** what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

**(F)** any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

**(4)** *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

**(A)** require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

**(B)** require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

**(g) Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1)** *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

**(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and

**(B)** with respect to a discovery request, response, or objection, it is:

**(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

**(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

**(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

**(2)** *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

**(3)** *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

# History

Amended Dec. 27, 1946, eff. March 19, 1948; Jan. 21, 1963, eff. July 1, 1963; Feb. 28, 1966, eff. July 1, 1966; March 30, 1970, eff. July 1, 1970; Apr. 29, 1980, eff. Aug. 1, 1980; Apr. 28, 1983, eff. Aug. 1, 1983; March 2, 1987,

eff. Aug. 1, 1987; Dec. 1, 1993; Dec. 1, 2000; Dec. 1, 2006; Dec. 1, 2007; As amended April 28, 2010, eff. Dec. 1, 2010; April 29, 2015, eff. Dec. 1, 2015.

USCS Federal Rules Annotated

Copyright © 2023 All rights reserved.

**End of Document**

(2)   <u>Other Parties</u>.  Any party other than plaintiff who has not received plaintiff's proposed pretrial stipulation within the time limits set forth in subsection (c) of this rule must prepare, file, and serve at least 14 days prior to the trial or pretrial conference, if one is ordered, a declaration attesting to plaintiff's failure to prepare and serve a proposed pretrial stipulation in a timely manner.

**(f)**   **Sanctions for Failure to Comply with Rule.**  In addition to the sanctions authorized by F.R.Civ.P. 16(f), if a status conference statement or a joint proposed pretrial stipulation is not filed or lodged within the times set forth in subsections (a), (b), or (e), respectively, of this rule, the court may order one or more of the following:

(1)   A continuance of the trial date, if no prejudice is involved to the party who is not at fault;

(2)   Entry of a pretrial order based conforming party's proposed description of the facts and law;

(3)   An award of monetary sanctions including attorneys' fees against the party at fault and/or counsel, payable to the party not at fault; and/or

(4)   An award of non-monetary sanctions against the party at fault including entry of judgment of dismissal or the entry of an order striking the answer and entering a default.

**(g)**   **Failure to Appear at Hearing or Prepare for Trial.**  The failure of a party's counsel (or the party, if not represented by counsel) to appear before the court at the status conference or pretrial conference, or to complete the necessary preparations therefor, or to appear at or to be prepared for trial may be considered an abandonment or failure to prosecute or defend diligently, and judgment may be entered against the defaulting party either with respect to a specific issue or as to the entire proceeding, or the proceeding may be dismissed.

## LBR 7026-1.  <u>DISCOVERY</u>

**(a)**   **General.**  Compliance with FRBP 7026 and this rule is required in all adversary proceedings.

(1)   <u>Notice</u>.  The plaintiff must serve with the summons and complaint a notice that compliance with FRBP 7026 and this rule is required.

(2)   <u>Proof of Service</u>.  The plaintiff must file a proof of service of this notice together with the proof of service of the summons and complaint.

**(b)**   **Discovery Conference and Disclosures.**

(1)   <u>Conference of Parties</u>.  Unless all defendants default, the parties must conduct the meeting and exchange the information required by FRBP 7026 within the time limits set forth therein.  Unless otherwise ordered, the initial status conference

constitutes the "scheduling conference" referred to in FRCP 26(f)(1) (incorporated by FRBP 7026).

(2) <u>Joint Status Report</u>.  Within 7 days after such meeting, the parties must prepare a joint status report containing the information set forth in LBR 7016-1(a)(2).  The joint status report will serve as the written report of the meeting required by FRBP 7026.

**(c)**    <u>**Failure to Make Disclosures or Cooperate in Discovery**</u>.

(1) <u>General</u>.  Unless excused from complying with this rule by order of the court for good cause shown, a party must seek to resolve any dispute arising under FRBP 7026-7037 or FRBP 2004 in accordance with this rule.

(2) <u>Meeting of Parties</u>.  Prior to the filing of any motion relating to discovery, the parties must meet in person or by telephone in a good faith effort to resolve a discovery dispute.  It is the responsibility of the moving party to arrange the conference.  Unless altered by agreement of the parties or by order of the court for cause shown, the opposing party must meet with the moving party within 7 days of service upon the opposing party of a letter requesting such meeting and specifying the terms of the discovery order to be sought.

(3) <u>Moving Papers</u>.  If the parties are unable to resolve the dispute, the party seeking discovery must file and serve a notice of motion together with a written stipulation by the parties.

   (A) The stipulation must be contained in 1 document and must identify, separately and with particularity, each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue.

   (B) The stipulation must not simply refer the court to the document containing the discovery request forming the basis of the dispute.  For example, if the sufficiency of an answer to an interrogatory is in issue, the stipulation must contain, verbatim, both the interrogatory and the allegedly insufficient answer, followed by each party's contentions, separately stated.

   (C) In the absence of such stipulation or a declaration of a party of noncooperation by the opposing party, the court will not consider the discovery motion.

(4) <u>Cooperation of Parties; Sanctions</u>.  The failure of any party either to cooperate in this procedure, to attend the meeting of parties, or to provide the moving party the information necessary to prepare the stipulation required by this rule within 7 days of the meeting of parties will result in the imposition of sanctions, including the sanctions authorized by FRBP 7037 and LBR 9011-3.

(5)   Contempt.  LBR 9020-1 governing contempt proceedings applies to a discovery motion to compel a non-party to comply with a deposition subpoena for testimony and/or documents under FRBP 7030 and 7034.

## LBR 7026-2.  DISCOVERY DOCUMENTS – RETENTION, FILING, AND COPIES

(a)   **Retention by Propounding Party.**  The following discovery documents and proof of service thereof must not be filed with the clerk until there is a proceeding in which the document or proof of service is in issue:

(1)   Transcripts of depositions upon oral examination;
(2)   Transcripts of depositions upon written questions;
(3)   Interrogatories;
(4)   Answers or objections to interrogatories;
(5)   Requests for the production of documents or to inspect tangible things;
(6)   Responses or objections to requests for the production of documents or to inspect tangible things;
(7)   Requests for admission;
(8)   Responses or objections to requests for admission;
(9)   Notices of Deposition, unless filing is required in order to obtain issuance of a subpoena in another district; and
(10) Subpoena or Subpoena Duces Tecum.

(b)   **Period of Retention for Discovery Documents.**  Discovery documents must be held by the attorney for the propounding party pending use pursuant to this rule for the period specified in LBR 9070-1(b) for the retention of exhibits, unless otherwise ordered by the court.

(c)   **Filing of Discovery Documents.**

(1)   When required in a proceeding, only that part of the document that is in issue must be filed with the court.

(2)   When filed, discovery documents must be submitted with a notice of filing that identifies the date, time, and place of the hearing or trial in which it is to be offered.

(3)   Original deposition transcripts are treated as trial exhibits and must be delivered to the judge for use at the hearing or trial.  The original deposition transcript and a copy must be lodged with the clerk pursuant to LBR 7030-1(b).

(d)   **Copies of Discovery Documents.**

(1)   Unless an applicable protective order otherwise provides, any entity may obtain a copy of any discovery document described in subsection (a) of this rule by making a written request therefor to the clerk and paying duplication costs.

1/22

Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jeremy B. Freedman (State Bar No. 308752)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
Jeremy.freedman@dinsmore.com

Proposed Special Counsel to Richard A. Marshack,
Chapter 11 Trustee for the Bankruptcy Estate of
The Litigation Practice Group P.C.

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, PC,<br><br>Debtor. | Case No. 8:23-bk-10571-SC<br><br>Adv. Proc. No. 8:23-ap-01046-SC<br><br>Chapter 11<br><br>**AMENDED COMPLAINT FOR:** |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TAING, an individual; HENG TAING, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; MAX CHOU, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW, PC; MAVERICK MANAGEMENT GROUP, | **(1) INJUNCTIVE RELIEF;**<br><br>**(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(3) AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(4) AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS; AND**<br><br>**(6) TURNOVER.**<br><br>Judge:    Hon. Scott C. Clarkson |

1

#30604840v2

1  LLC; LGS HOLDCO, LLC; CONSUMER
   LEGAL GROUP, P.C.; VULCAN
2  CONSULTING GROUP LLC; BAT INC.
   d/b/a COAST PROCESSING; PRIME
3  LOGIX, LLC; TERACEL BLOCKCHAIN
   FUND II LLC; EPPS; EQUIPAY;
4  AUTHORIZE.NET; WORLD GLOBAL;
   OPTIMUMBANK HOLDINGS, INC. d/b/a
5  OPTIMUM BANK; MARICH BEIN, LLC;
   BANKUNITED, N.A.; REVOLV3, INC.;
6  FIDELITY NATIONAL INFORMATION
   SERVICES, INC. d/b/a FIS; WORLDPAY,
7  LLC; WORLDPAY GROUP; MERIT FUND,
   LLC; GUARDIAN PROCESSING, LLC;
8  PAYLIANCE, LLC; TOUZI CAPITAL, LLC;
   SEAMLESS CHEX INC; DWOLLA, INC.;
9  STRIPE, INC.; and DOES 1 through 100,
   inclusive,

10                    Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

#30604840v2

For his *Complaint for (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; and (6) Turnover* (the "Complaint"), plaintiff Richard A. Marshack, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of debtor The Litigation Practice Group, PC (the "Debtor" or "LPG") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

## STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court"). Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court. The Defendant is hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires defendants to plead whether consent is given to the entry of a final order and judgment by the bankruptcy court. Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

## THE PARTIES

2.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

3.      Defendant Tony Diab ("Diab") is, and at all material times was, an individual residing in the State of California.

///

3

#30604840v2

4.      Defendant Daniel S. March ("March") is, and at all material times was, an individual residing in the State of California.

5.      Defendant Lisa Cohen is, and at all material times was, an individual residing in the State of California.

6.      Defendant Eng Taing is, and at all material times was, an individual residing in the State of California.

7.      Defendant Heng Taing is, and at all material times was, an individual residing in the State of California.

8.      Defendant Maria Eeya Tan is, and at all material times was, an individual residing in the State of California.

9.      Defendant Jake Akers is, and at all material times was, an individual residing in the State of California.

10.      Defendant Han Trinh is, and at all material times was, an individual residing in the State of California.

11.      Defendant Jayde Trinh is, and at all material times was, an individual residing in the State of California.

12.      Defendant Wes Thomas is, and at all material times was, an individual residing in the State of California.

13.      Defendant William Taylor "Ty" Carrs is, and at all material times was, an individual residing in the State of California.

14.      Defendant Scott James Eadie is, and at all material times was, an individual residing in the State of California.

15.      Defendant Jimmy Chhor is, and at all material times was, an individual residing in the State of California.

16.      Defendant Dongliang Jiang is, and at all material times was, an individual residing in the State of California.

17.      Defendant Max Chou is, and at all material times was, an individual residing in the State of California.

#30604840v2

18.     Defendant Rosa Loli a.k.a. Rosa Bianca Loli a.k.a. Bianca Loli is, and at all material times was, an individual residing in the State of California.

19.     Defendant Oakstone Law Group, PC ("Oakstone") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in La Jolla, California.

20.     Defendant Greyson Law Center, PC ("Greyson") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Costa Mesa, California.

21.     Defendant Phoenix Law, PC ("Phoenix") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Irvine, California.

22.     Defendant LGS Holdco, LLC is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware.

23.     Defendant Consumer Legal Group, PC ("CLG") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of New York.

24.     Defendant Maverick Management Group, LLC ("Maverick") is, and at all material times was, a reserved name for a limited liability corporation in the State of Wyoming.

25.     Defendant Teracel Blockchain Fund II, LLC ("Teracel") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware.

26.     Defendant Vulcan Consulting Group, LLC ("Vulcan") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Newport Coast, California.

27.     Defendant BAT Inc. d/b/a Coast Processing ("Coast Processing") is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Riverside, California.

///

5

#30604840v2

28.     Defendant Prime Logix, LLC ("Prime Logix") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Wyoming, with its principal place of business in Long Beach, California.

29.     Defendant EPPS is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California.

30.     Defendant EquiPay, LLC ("EquiPay") is an ACH processor.

31.     Defendant Authorize.net ("Authorize.net") is a subsidiary of Visa, Inc.

32.     Defendant World Global is an ACH processor.

33.     Defendant Gallant Law Group, PC ("Gallant"), is and at all material times was, a professional corporation organized, existing and in good standing under the laws of the State of Pennsylvania.

34.     Defendant Merit Fund LLC ("Merit Fund") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Torrance, California.

35.     Defendant OptimumBank Holdings, Inc. d/b/a Optimum Bank ("Optimum Bank") is, and at all material times was, a bank holding company, with its principal place of business in Fort Lauderdale, Florida.

36.     Defendant Marich Bein, LLC ("Marich Bein") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of New York.

37.     Defendant BankUnited, NA, ("BankUnited") is, and at all material times was, a financial institution insured by the FDIC with its principal place of business in Miami Lakes, Florida.

38.     Defendant Revolv3, Inc. ("Revolv3") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware, with its principal place of business in Laguna Beach, California.

///

///

6

#30604840v2

39.     Defendant Fidelity National Information Services, Inc. d/b/a FIS, including but not limited to its subsidiaries Worldpay, LLC, Worldpay Group or any other subsidiaries providing ACH processing services ("FIS").

40.     Defendant Guardian Processing, LLC ("Guardian") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Wyoming, with its principal place of business in Sheridan, Wyoming.

41.     Defendant Payliance, LLC ("Payliance") is and, at all material times was, a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio.

42.     Defendant Touzi Capital, LLC ("Touzi") is, and at all material times was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Walnut, California.

43.     Defendant Seamless Chex, Inc. ("Seamless") is, and at all material times was, a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York.

44.     Defendant Dwolla, Inc. ("Dwolla") is, and at all material times was, a corporation organized under the laws of the State of Iowa, with its principal place of business in Des Moines, Iowa.

45.     Defendant Stripe, Inc. ("Stripe") is, and at all material times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

## **GENERAL ALLEGATIONS**

### A.     The Bankruptcy Case

46.     On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

47.     After the Office of the United States Trustee (the "UST") filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC

filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44], the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58] on May 4, 2021, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

48.     Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63; the *Order Approving Appointment* is  Order is Docket No. 65], on May 8, 2023, the Plaintiff accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Plaintiff was not appointed until after events of the case and, therefore, bases these allegations on information and belief.

49.     The Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of the Debtor's Estate and its creditors.

**B.     LPG's Ownership and Management**

50.     After being disbarred in both California and Nevada for forging a judge's signature and stealing large amounts of client funds, Diab transferred his existing debt resolution practice to LPG. LPG is a law firm that provides consumer debt resolution. LPG services more than 50,000 customers across the United States, with annual revenue estimated to total $150,000,000 in 2022.

51.     Despite having been disbarred, Diab has controlled and operated LPG since its inception. However, Diab has endeavored to conceal his control of LPG. For example, Diab requires LPG's employees to call him "Admin," and the name plate on his desk reads, "I don't work here."

52.     To pull this off, Diab rents March's law license. March masquerades, at times, as the managing partner of LPG but exercises no actual management or control. In fact, Diab sometimes impersonates March and regularly signs March's signature on contracts. LPG's primary DocuSign account goes to Diab's email address, admin@lpglaw.com, where Diab signs contracts as Daniel March. For use of his law license, March receives an annual salary of $600,000 in addition to irregular bonuses.

53.     March's predecessor at LPG was John Thompson. Thompson was the original sole shareholder of LPG from February 2019 to November 2019. But he conveyed interest in LPG to

8

March in November 2019 due to concerns about his and LPG's potential liability. Diab has impersonated Thompson on many matters representing clients in an attorney capacity. One such impersonation was in signing that certain Service Application and Service Agreement, submitted by LPG to Credit Reporting Services, LLC.

### C.  LPG's Business Structure

54.    Historically, LPG had a business partner called Coast Processing, which was owned by Brian Real, Arash Asante Bayrooti, and Diab. Coast Processing was one entity through which LPG ran its' in house marketing and client development operations. LPG, however, also had a network of over 100 marketing affiliates from which LPG purchased new clients. In 2021, Diab bought out the other investors in Coast Processing and merged its operations with LPG, including Coast Processing's contracts with other marketing affiliates. Despite Coast Processing's operations being merged into LPG, Coast Processing exists as a California corporation in good standing.

55.    Marketing affiliates refer clients to LPG. The marketing affiliates locate clients who were victims of predatory lending or who are subject to claims for large debt that are not legally valid under applicable law. After taking on these clients, LPG pays the marketing affiliates a percentage of the fees earned through the debt resolution process. Clients pay fees to LPG over a period of time, ranging from 18 to 30 months, through monthly debits from their bank accounts. The monthly debits are controlled by LPG. Each set of payments due by a client is referred to as a "file."

56.    Once a new client has signed up, executed the retainer and payment plan contract, and provided bank ACH information, LPG is responsible for servicing the client file. To this end, LPG utilized software such as DebtPayPro ("DPP") and, more recently, cobbled together a less efficient proprietary software such as LUNA to automate the dispute process, facilitate client communications, and track payment information. For instance, the correspondence sent on behalf of clients to creditors, collection agencies, and/or credit bureaus are automated and generic templates sent via U.S. Mail, facsimile, and/or email. Some cases result in the disputed debt being corrected on the client's credit report, some result in successful challenges to consumer protection laws, and

///

#30604840v2

others result in debt settlement, which the client is responsible to pay in addition to the payment plan. In limited instances, LPG will file a lawsuit in an effort to eliminate a disputed debt.

57.    Because LPG and its marketing affiliates receive only incremental payments over a period of time, LPG would often sell the future cash flow at a discounted rate. The factoring companies that buy the receivables on account of these files receive a return equal to the difference between the amount the clients owe on the file and the amount the buyer paid for the file.

58.    The largest factoring company to have purchased accounts receivable on account of LPG's files is Validation Partners LLC ("Validation Partners"). Between August 30, 2021 and August 17, 2022, Validation Partners spent $66,000,000 to purchase accounts receivable from LPG and 58 of LPG's marketing affiliates. In total, Validation Partners purchased over 40,000 accounts from LPG and its affiliates with a total value greater than $400,000,000.

**D.    Diab's Scheme**

59.    After selling the aforementioned receivables to Validation Partners and other factoring companies, Diab caused LPG to sell receivables on 719 files for $2,070,000 to Teracel, an entity owned and operated by Touzi, which is headed by Eng Taing, one of Validation Partner's investors, and his brother, Heng Taing. Out of the 719 files purchased by Teracel, 643 of those files had been already purchased by Validation Partners. Despite LPG never receiving a payment from Teracel for the purchase of these files, account receivables on behalf of those files are being paid out directly to Teracel.

60.    In particular, despite not paying for these files, Touzi Capital continues to process duplicate ACH electronic funds transfers in its own name and/or in the name of Oakstone via ACH payment processors, most recently to include but not limited to, Payliance using a merchant account in the name of Guardian.  Trustee is informed and believes and based thereon alleges that Touzi and Oakstone may also be using additional payment processors including, but not limited to: (i) Paynote by Seamlesschex; (ii) Dwolla; (iii) Stripe; and/or ACH processing accounts held by other entities named herein.

///

///

10

61.     All of these files were resold without Validation Partners' knowledge or consent. Yet, thousands of files have been doubly sold in this manner, effectuating Diab and Eng Taing's Ponzi scheme to defraud creditors.

**E.     LPG's Prepetition Creditors**

62.     In addition to the financing provided by factoring companies, LPG has obtained financing directly from other sources. Both of these sources of financing, having lent hundreds of millions of dollars to LPG, are among the creditors scheduled by the Debtor.

63.     On the Debtor's Schedule D [Bankr. Docket No. 33], the Debtor listed three secured creditors—(a) Diverse Capital, LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000 (together, the "Secured Creditors")—with secured claims totaling $6,274,810.

64.     In addition, on the Debtor's Schedule E/F [Bankr. Docket No. 33], the Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Dept. of Revenue, Dept. of Labor and Industries, Arizona Dept. of Economic Security, Arkansas Dept. of Finance & Admin., California Franchise Tax Board, Georgia Dept. of Labor, Internal Revenue Service, Mississippi Dept. of Revenue, Nevada Dept. of Taxation, Utah State Tax Commission, and Wisconsin Dept. of Revenue (collectively, the "Priority Unsecured Creditors").

65.     Another group of creditors that the Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive

11

Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, the "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, the "Prepetition Creditors").

### F.    Transfers to Alter Egos and Fraudulent Conveyances

66.    In addition to diverting millions of dollars to third parties, Diab has transferred LPG's entire business to new law firms free of LPG's obligations to its creditors. These new law firms are alter egos of the Debtor and include Oakstone and Phoenix (collectively, the "Alter Egos"). As he did with LPG, Diab controls and operates the Alter Egos, despite them being nominally owned by licensed attorneys from which Diab "rented" their license to practice law in return for unsustainable salaries.

67.    In addition to fraudulent client file transfers to the Alter Egos, described above, Trustee is informed and believes and based thereon alleges that Diab sold with little or no consideration or fraudulently transferred additional LPG client files to Greyson, Gallant, its affiliate Center Pointe Law Group, PC ("Center Pointe") and CLG without client consent in exchange for a right to receive a percentage of the revenue stream generated by those files (the "Fraudulent Transferees").

68.    In an effort to make LPG appear insolvent, in February 2023, Diab purchased a shell corporation and the website domain phoenixlaw.co and registered the business with the Better Business Bureau. Similarly, around the same time, Diab set up Oakstone, to run LPG's business through these new entities. Diab's actions are contrary his testimony at the 341(a) meeting of creditors where Diab testified that LPG was not able to afford to service the same clients through LPG.

///

12

#30604840v2

69.     At or around the Petition Date, Diab admitted that LPG had transferred or sold approximately 15,000 client files to Oakstone (approximately $4.2 million in revenue), 12,000 files to CLG (approximately $3.3 million in revenue), and the remaining files, approximated at slightly less than 40,000, to Phoenix (approximately $11.2 million in revenue). Neither LPG nor Diab obtained consent prior to fraudulently transferring the client files to these alter egos and/or fraudulent transferees. LPG does not have an executed assignment contract for any of the transferred client files.

70.     Diab, Ms. Cohen, Ms. Loli and the same group of partners running LPG are now, post-petition, syphoning off money through these new Alter Egos, using LPG's ACH processing accounts at FIS that identify "Tony Diab" as the user of the account and LPG as the merchant account holder. LPG's FIS account indicates that, from March 28, 2023 through May 19, 2023, Diab has netted between $6 million and $9.3 million dollars and transferred such funds to LPG's Alter Egos or Fraudulent Transferees from this one ACH processing company alone.

71.     Further, Diab, Eng Taing Heng Taing and/or Touzi have used other ACH processing companies including Payliance (using a Guardian merchant account), among others, to process and transfer property of the Estate through Diab's network of Alter Egos and Fraudulent Transferees. With this money, Diab has recently made payroll from an account held by Vulcan. Clients who have requested a refund after their file was transferred to Phoenix were refunded by an account held by Prime Logix. Diab is using LPG's Alter Egos and Fraudulent Transferees to re-direct LPG funds for his own personal gain and avoid the protections afforded creditors and the Estate under the Bankruptcy Code. Collectively, the files, accounts receivable, and funds transferred to the Alter Egos and Fraudulent Transferees, are referred to herein as the "Transfers."

### G.     Diab's Control over LPG's Payment Processing

72.     LPG's monthly revenue from client files is primarily received via ACH payments. In order to process ACH payments, LPG is required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab has enlisted numerous

///

///

13

#30604840v2

1  ACH processing companies[1] in order to easily switch between different vendors and quickly transfer

2  millions of dollars of LPG funds to entities he controls, including but not limited to Vulcan, Prime

3  Logix, Greyson and/or Coast Processing, generally in less than three days from ACH pull, without

4  oversight and detection and to avoid payment disputes and complications with the vendor itself.

5  Notably, LPG does not have service contracts with EPPS or Marich Bein, among potential others

6  who have processed the majority of LPG's ACH payments. The side deals between Diab and Marich

7  Bein, created to avoid a lawsuit against LPG, evidences Diab's continued influence and control over

8  the companies processing LPG and its Alter Egos' ACH EFTs—property of the Estate.

9      73.    LPG's monthly gross revenue from receipt of client payments has, pre-petition,

10  ranged between $8.4 million to $11.2 million per month from May 2022 through September 2022.

11  It is estimated that the current monthly revenue from client accounts that are serviced exceed $15

12  million dollars per month, using a conservative growth model and based on the number of estimated

13  client files whose ACH EFTs are successfully processed. Notwithstanding LPG's substantial

14  monthly revenue and relatively low pre-petition monthly expenses (ranging between $2.3 to $3.4

15  million at the end of 2022), LPG was not accumulating any cash on hand and claimed to have only

16  $4,500 in its bank account on the Petition Date.

17                          **<u>FIRST CLAIM FOR RELIEF</u>**

18                              **Injunctive Relief**

19                            **Against All Defendants**

20      74.    The Plaintiff realleges and incorporates herein by reference each and every allegation

21  contained in paragraphs 1 through 73 as though set forth in full.

22      75.    The Plaintiff requests that this Court enjoin the Defendants and each of them from

23  interfering with any ACH Transfer being executed pursuant to documents authorizing such transfers

24  to be executed in favor of LPG.

25

26  ---

[1]    The ACH processing companies LPG uses and which Diab controls include, but are not
limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited;
27  Marich Bein; Revolv3; FIS; Guardian; and/or any entity associated with the ACH identification
transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially
28  similar ACH identification transaction.

14

76.     The Plaintiff also requests that this Court enter a preliminary injunction prohibiting interference with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG.

77.     The Plaintiff also requests that this Court enter a preliminary injunction prohibiting Prime Logix, Maverick and Greyson, and any person or entity acting with or in concert with them, including, but not limited to, any staff or other attorneys or employees (including, without limitation Han Trinh or Jayde Trinh) from accessing or attempting to access: 1) LPG client files and/or information whether stored electronically or in hardcopy, except as ordered by the Court and/or agreed to by the Chapter 11 Trustee; and 2) LUNA, any other customer relationship management ("CRM") software on which LPG client information, including without limitation the LPG client information subject to the above-described Transfers – is stored; 3) LPG's electronic mail ("email") accounts, including but not limited those hosted by Microsoft 365; 4) LPG's Netsuite account with Oracle; 5) LPG's Airtable account with Formgrid; and 6) LPG's Quickbook account.

78.     The Plaintiff also requests that this Court enter a preliminary injunction prohibiting Prime Logix, Maverick and Greyson, and any person or entity acting with or in concert with them including, but not limited to, any staff or other attorneys or employees (including, without limitation Han Trinh or Jayde Trinh) from interfering with Plaintiff's administration of the Estate or property of the Estate, without limitation.  Without limitation on the foregoing, Greyson may continue to process ACH electronic funds transfers for the 48 client files specifically identified by Plaintiff, provided that all of pre- and post-petition payroll obligations of Greyson, without limitation, must be made by Greyson alone and without any contribution from ACH electronic funds transfers derived from any source other than the 48 client files specifically identified by Plaintiff.

79.     The Plaintiff also requests that this Court enter a preliminary injunction prohibiting Prime Logix, Oakstone, Touzi, Eng Taing, Heng Taing, Payliance, Seamless, Dwolla, Stripe, and Maverick and any person or entity acting with or in concert with them including, but not limited to, any staff or other attorneys or employees from accessing or attempting to access any ACH electronic funds transfers obtained from LPG client files subject to the above-described Transfers.

///

15

**SECOND CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers**

**Against All Defendants**

**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

80.     The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 79 as though set forth in full.

81.     On or after the date that such Transfers were made, entities to which the Debtor was indebted include the Prepetition Creditors.

82.     The source of the files, accounts receivable, and funds that are the subject of the Transfers are that of the Debtor.

83.     Diab retained possession and control of the files, accounts receivable, and funds transferred to the Alter Egos and Fraudulent Transferees or elsewhere after the Transfers.

84.     By creating several entities including the Alter Egos and transferring files, accounts receivable, and funds to such entities, Diab has endeavored to conceal the files, accounts receivable, funds, and Transfers, including to the Fraudulent Transferees.

85.     Diab made the Transfers after LPG faced multiple lawsuits including those initiated by factoring companies. Validation Partners initiated a lawsuit on September 20, 2022 (Case No. 30-2022-01281911-CU-BC-CXC) in the Superior Court of California, County of Orange. DVF II also filed a lawsuit on January 23, 2023 (Case No. 30-2023-01303355-CU-CO-CXC) in the Superior Court of California, County of Orange. Notably, the lawsuits sought the appointment of a receiver to perform many of the same duties of the Trustee and obtain information, an accounting of LPG funds, assets and accounts receivables and maintain the status quo, among other relief, pending the outcome of the litigation.

86.     The files, accounts receivable, and funds that were subject to the Transfers constitute substantially all of the Debtor's non-exempt property. In other words, the Transfers were of substantially all of the Debtor's assets.

87.     The Transfers were made by Diab to insiders, Alter Egos of the Debtor that are under Diab's control and the Fraudulent Transferees.

#30604840v2

88.    In addition, the Debtor received little to no consideration for the Transfers.

89.    The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream.

90.    Thus, the Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor.

91.    The Transfers of the Debtor's files, accounts receivable, and funds occurred within the two years prior to the Petition Date.

92.    Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

## SECOND CLAIM FOR RELIEF

### Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers

### Against All Defendants

### [11 U.S.C. §§ 548(a)(1)(B), 550, and 551]

93.    The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 92 as though set forth in full.

94.    At the time of the Transfers, the Debtor received less than reasonably equivalent value in exchange for the Transfers.

95.    In many cases, the Debtor received no consideration for the Transfers.

96.    The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

97.    On or after the date that the Transfers were made, the Debtor was not paying debts to the Prepetition Creditors including Validation Partners and DVF II as they came due.

98.    Thus, at the time of the Transfers, or as a result thereof, the Debtor either:

17

#30604840v2

a. was insolvent on the date the Transfers were made, or became insolvent was a result thereof;

b. was engaged or was about to engage in a transaction for which any property remaining with the Debtor was of unreasonably small capital;

c. intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

99. The Transfers of the Debtor's files, accounts receivable, and funds occurred within the two years prior to the Petition Date.

100. Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

**FOURTH CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers**

**Against All Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.04(a) and 3439.07]**

101. The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 100 as though set forth in full.

102. On or after the date that such Transfers were made, entities to which the Debtor was indebted include the Prepetition Creditors.

103. The source of the files, accounts receivable, and funds that are the subject of the Transfers are that of the Debtor.

104. Diab retained possession and control of the files, accounts receivable, and funds transferred to the Alter Egos or elsewhere after the Transfers.

105. By creating several entities including the Alter Egos and transferring files, accounts receivable, and funds to such entities, Diab has endeavored to conceal the files, accounts receivable, funds, and Transfers.

106. Diab made the Transfers after LPG faced multiple lawsuits including those initiated by factoring companies. Validation Partners initiated a lawsuit on September 20, 2022 (Case No.

18

30-2022-01281911-CU-BC-CXC) in the Superior Court of California, County of Orange. DVF II also filed a lawsuit on January 23, 2023 (Case No. 30-2023-01303355-CU-CO-CXC) in the Superior Court of California, County of Orange. Notably, the lawsuits sought the appointment of a receiver to perform many of the same duties of the Trustee and obtain information, an accounting of LPG funds, assets and accounts receivables and maintain the status quo, among other relief, pending the outcome of the litigation.

107.   The files, accounts receivable, and funds that were subject to the Transfers constitute substantially all of the Debtor's non-exempt property. In other words, the Transfers were of substantially all of the Debtor's assets.

108.   The Transfers were made by Diab to insiders, Alter Egos of the Debtor that are under Diab's control.

109.   In addition, the Debtor received little to no consideration for the Transfers.

110.   The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

111.   As such, the Transfers left the Debtor with remaining assets that were unreasonably small in relation to the transaction.

112.   Further, the Debtor was insolvent at the time of the Transfers or became insolvent as a result of the Transfers; the exact aim of Diab's scheme to bankruptcy LPG in the event a receiver was appointed.

113.   On or after the date that such Transfers were made, the Debtor was not paying debts to the Prepetition Creditors, all of which arose before the Transfers were made, as they became due.

114.   Thus, the Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor, as well as the duly appointed Receiver.

115.   Thus, at the time of the Transfers, without receiving reasonably equivalent value in exchange for the Transfers, the Debtor either:

19

a.      was engaged or was about to engage in a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

b.      intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

116.    The Transfers of the Debtor's files, accounts receivable, and funds occurred within the four years prior to the Petition Date.

117.    At all relevant times, the Transfers of the Debtor's files, accounts receivable, and funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

118.    Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.04(a) and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

**FIFTH CLAIM FOR RELIEF**

**Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers**

**Against All Defendants**

**[11 U.S.C. §§ 544(b), 550, and 551; CAL. CIV. CODE §§ 3439.05, and 3439.07]**

119.    The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 118 as though set forth in full.

120.    At the time of the Transfers, the Debtor did not receive reasonably equivalent value in exchange for the Transfers.

121.    In many cases, the Debtor received no consideration for the Transfers.

122.    The Debtor became insolvent as a result of the Transfers. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the files, accounts receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and

///

20

#30604840v2

no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

123.   The Transfers left the Debtor remaining assets that were unreasonably small in relation to the transaction.

124.   On or after the date that the Transfers were made, the Debtor was not paying debts to the Prepetition Creditors including Validation Partners and DVF II as they came due.

125.   At the time of the Transfers, Diab intended the Debtor to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond its ability to pay as they became due.

126.   Thus, at the time of the Transfers, or as a result thereof, the Debtor either:

   a.   was insolvent on the date the Transfers were made, or became insolvent was a result thereof;

   b.   was engaged or was about to engage in a transaction for which any property remaining with the Debtor was of unreasonably small capital; or

   c.   intended to incur, or believed that he would incur, debts beyond his ability to pay as such debts matured.

127.   The Transfers of the Debtor's files, accounts receivable, and funds occurred within the four years prior to the Petition Date.

128.   At all relevant times, the Transfers of the Debtor's files, accounts receivable, and funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

129.   Accordingly, the Transfers that Diab caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and CAL. CIV. CODE §§ 3439.05 and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and CAL. CIV. CODE § 3439.07.

///

21

#30604840v2

## SIXTH CLAIM FOR RELIEF

### Turnover of Estate Property Against All Defendants

### [11 U.S.C. § 542]

130.    The Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 129 as though set forth in full.

131.    One or all of Diab and LPG's Alter Egos or Fraudulent Transferees have possession or control over property of the Estate, including but not limited to the files, accounts receivable, and funds; including LPG's Merchant Account at FIS where Diab has orchestrated the post-petition transfer of in excess of $6,000,000 of Estate Property to entities owned and controlled by Diab and his associates/co-conspirators. None of those approximately $6,000,000 in post-petition payment assets have been turned over to the Trustee despite repeated request for same.

132.    The files, accounts receivable, funds, and potentially other property are property of the Estate and are not of inconsequential value to the Estate.

133.    The files, accounts receivable, and funds that are the subject of the Transfers are paramount to the operation of the Debtor and its ability to pay creditors.

134.    Accordingly, the Trustee is entitled to a judgment for turnover of the files, accounts receivable, and funds pursuant to 11 U.S.C. § 542.

## RESERVATION OF RIGHTS

135.    The Plaintiff reserves the right to bring all other claims or causes of action that the Plaintiff may have against any of the defendants, on any and all grounds, as allowed under the law or in equity, including but not limited to, those claims not known by the Trustee at this time but that he may discover during the pendency of this adversary proceeding.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for a judgment as follows:

**On the First Claim for Relief:**

1.    <u>Control over ACH Transfers</u>: Entry of a preliminary injunction prohibiting interference with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG as follows:

22

#30604840v2

a.      Covered Entities and Individuals: The following entities and individuals, and anyone acting on their behalf:  LPG, Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen, Dan March, Ty Carss, Eng Taing, Heng Taing and all other aliases, agents, or corporate entities affiliated with same shall, absent further order from this Court:

b.      Enjoined Conduct re ACH Instructions: No covered entity or individual shall initiate, cause to be initiated, or instruct any company or person that processes ACH transfers and/or their affiliated financial institution including EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Touzi; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction, to execute any ACH EFT on any file, financial institution, or current or former client of LPG, to or for the benefit of LPG including but not limited to Oakstone; Greyson; Phoenix;; Maverick; Prime Logix; and Vulcan without the express written authorization of Trustee;

c.      Enjoined Conduct re Bank Accounts: No covered entity or individual shall open, or cause to be opened, any account, whether business or personal, that can receive or send money or anything of value, at any company including banking, financial, or similar institution and/or receive, directly or indirectly, any funds drawn from ACH Transfers;

2.      Execution of ACH Transfers: Entry of a preliminary injunction prohibiting interference with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG as follows:

a.      Covered Entities and Individuals: All companies capable of processing ACH transfers including EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Touzi; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875," or any such substantially similar ACH identification transaction, are enjoined absent further order of this court, from:

///

i.   Enjoined Conduct re ACH Transfers: No covered entity or individual shall initiate or receive funds from any ACH EFT on any file, financial institution, or current or former client of LPG, to or for the benefit of LPG or any one or more of its alleged assignees or transferees including, but not limited to, Oakstone; Greyson; Phoenix; Maverick; Prime Logix and/or Touzi;

ii.   Injunction Mandating Turnover to Trustee: All covered entities or individuals shall hold in trust any and all funds, receipts, and transfers related to any account, file, or current or former client of LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG (as to 40% of all Transfers for which reasonably fair value was not paid at the time each of the Transfers); Vulcan; Coast Processing; Prime Logix; Touzi, Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen, Eng Taing, Heng Taing and/or other aliases, agents or corporate entities affiliated with same until expressly directed to release, wire or transfer such funds by the Trustee and to a bank account whose information shall be provided with any such request; and, shall upon request by the Trustee provide an accounting of any and all such funds held in trust to the Trustee upon written request within 10 days of said request;

b.   enjoining LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other corporate entities affiliated with same, from incurring, taking out, or pledging any receivables of LPG or any one or more of its alter ego entities, including but not limited to, Oakstone; Phoenix; Maverick; Prime Logix and/or CLG without seeking leave of court;

c.   enjoining LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same, from instructing any person and/or Client to cancel and/or demand a refund from LPG; Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

24

d.      enjoining Bank of America from allowing any and all funds on behalf of Prime Logix or Vulcan, including but not limited to account Nos. ending in xxx951 and xxx9021 and/or any other accounts to be withdrawn, wired, drawn against, moved, or otherwise transferred without the express consent of the Trustee in writing and to a financial account identified by the Trustee at the time the authorization is provided, and ordering Bank of America to hold in trust such funds;

e.      enjoining all persons identified below from accessing or attempting to gain access whether physically, remotely, electronically, or virtually to the following locations associated with LPG, or any one or more of its alter egos, including but not limited to Oakstone;; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or aliases, agents or other corporate entities affiliated with same: (1) 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; (2) 17542 17th St Suite 100, Tustin, California 92780; (3) Luna's domain located on AWS; (4) DPP Data or accounts; (5) Accounting Data and/or accounts on NetSuite, Quickbooks and Microsoft SharePoint, G-Suite or other permanent or cloud based systems; (6) ACH processing accounts, whether individual, merchant or business, held at any ACH processing or affiliated financial institution, including but not limited to EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Touzi; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification transaction; (7) Vulcan and/or PrimeLogix' financial accounts at Bank of America, including but not limited to Account Nos. ending in xxx951 and xxx9021; and (8) the Email Data, as follows:

i) Tony Diab;

ii) Rosa Loli aka Rosa Bianca Loli aka Bianca Loli;

iii) Lisa Cohen;

iv) Daniel March;

v) Eng Taing;

vi) Maria Eeya Tan;

1         vii) Jake Akers;

2         viii) Han Trinh;

3         ix) Jayde Trinh;

4         x) Wes Thomas;

5         xi) William Taylor "Ty" Carrs;

6         x)  Scott James Eadie;

7         xi) Jimmy Chhor;

8         xii) Brad Lee;

9         xiii) Dongliang Jiang;

10         (ixx) Heng Taing;

11         (xx) Max Chou.

12         f.     requiring the United States Postal Service to re direct all mail directed to (1)

13  LPG, 17542 17th St Suite 100, Tustin, California 92780; (2) Oakstone, 888 Prospect Street, Suite

14  200 La Jolla, California 92037; (3) Phoenix, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine,

15  California 92612 and/or P.O. Box 749, Millville, NJ 08332; (4) Primelogix, 3347 Michelson Drive,

16  Suites 400, 410 & 420, Irvine, California 92612; (5) CLG, P.O. Box 412 Elmsford, NY 10523; and

17  (6) Greyson, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; (7) Oakstone,

18  888 Prospect St., Suite 200, La Jolla California 92037 and/or any other address associated with such

19  entities, and ordering the United States Postal Service to forward and re-direct such mail to an

20  address provided by the Trustee until such time as ordered by the Court.

21  **On the Second and Third Claims for Relief:**

22  3.     avoiding, recovering, and preserving the two-year transfers against all

23  defendants:

24  **On the Fourth and Fifth Claims for Relief:**

25  4.     avoiding, recovering, and preserving the four-year transfers against all

26  defendants:

27  **On the Sixth Claim for Relief:**

28  5.     ordering turnover to the Trustee of the following:

#30604840v2

a.    Information regarding any and all persons who signed a Legal Services Contract with LPG or whose file was purchased or otherwise transferred to LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen; Eng Taing; Heng Taing; Max Chou and/or other aliases, agents or corporate entities affiliated with same, for which the client's file remains open and/or continues to make payments under an agreed upon installment contract.

b.    All Client files, including but not limited to names, contact information, client file management, communications, account information, letters, pleadings, communications, payment history, financial account information, credit reports, executed legal services contracts, ACH contracts, executed installment contracts, account balances, debts in dispute, payment history, file status, settlements, debt invalidations and/or any other information created, managed and stored electronically utilizing DPP software program's software license, key or account, that was opened and is maintained and controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen; Eng Taing; Heng Taing; Max Chou and/or other aliases, agents or corporate entities affiliated with same;

c.    All administrative usernames and passwords that give the Trustee access to any DPP account held, maintained or controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

d.    All Client files, including but not limited to names, contact information, client file management, communications, account information, letters, pleadings, communications, payment history, financial account information, credit reports, executed legal services contracts, ACH contracts, executed installment contracts, account balances, debts in dispute, payment history, file status, settlements, debt invalidations and/or any other information created, managed and stored electronically utilizing proprietary software program "LUNA" hosted on AWS and located at the

27

#30604840v2

current domain "lunapp.com" that is maintained and controlled by LPG, or any one or more of its

alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG;

Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca

Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

         e.     All administrative usernames and passwords that give the Trustee access to

any AWS account where Luna, its software program, databases and client information is held, stored

and hosted that is maintained or controlled by LPG, or any one or more of its alter egos, including

but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast

Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen

and/or other aliases, agents or corporate entities affiliated with same;

         f.     All ACH files related to Client information, details, accounts, history of

EFTs, payments, amounts held, interest on held amounts, penalty fees, nonsufficient fund fees or

other ACH related charges to the Clients stored electronically or in hard copy associated with ACH

processing service providers and/or affiliated financial institutions, including but not limited to

EPPS; Equipay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.;

Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the

ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any

such substantially similar ACH identification transaction;

         g.     All files, information, reports, spreadsheets, account numbers, routing

numbers, and databases related to transfer of funds out of any account opened, maintained and

controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone;

Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab;

Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or

corporate entities affiliated with same that were processed and executed by ACH processing service

providers and/or their affiliated financial institutions, including but not limited to EPPS; Equipay;

Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS;

Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH

1    identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such

2    substantially similar ACH identification transaction;

3        h.    All administrative usernames and passwords that give the Trustee access to

4    any ACH processing accounts, software, database or other program at ACH processing service

5    providers and/or affiliated financial institutions, including but not limited to EPPS; Equipay;

6    Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS;

7    Guardian; Payliance; Seamless; Dwolla; Stripe; or any entity associated with the ACH identification

8    transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially

9    similar ACH identification transaction, used to upload or input Client information, initiate Client

10   ACH EFTs, transfer Client ACH funds to outside financial institutions or otherwise manage any

11   account opened, maintained and controlled by LPG, or any one or more of its alter egos, including

12   but not limited to Oakstone, Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast

13   Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen

14   and/or other aliases, agents or corporate entities affiliated with same;

15       i.    All accounting records, files, data and information for LPG, or any one or

16   more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC;

17   CLG; Vulcan; Coast Processing and Prime Logix stored on NetSuite; Quickbooks and Microsoft

18   SharePoint; G-Suite or other permanent or cloud based systems;

19       j.    All contracts, records, reports, information, data and details regarding the

20   transfer or sale of any Client files or future Client ACH payments to any other law firm,

21   organization, corporate entity, person(s), or investment group (otherwise known as factoring

22   companies) including but not limited to, Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC

23   and/or CLG;

24       k.    All contracts, records, reports, information, data, cost basis, payment

25   information and details regarding the transfer or receipt of any Client files or future Client ACH

26   payments from any other law firm, organization, corporate entity, person(s), investment or

27   marketing group (otherwise known as capping companies) to LPG or any one or more of its alter

28   egos including, but not limited to, Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

#30604840v2

l.      All information, data, tables, spreadsheets and reports regarding Client information stored on Airtable cloud based data management system used by LPG, or any one or more of its alter egos, including but not limited to, Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG to manage the aforementioned information;

m.      All administrative usernames and passwords that give the Trustee access to any Airtable account opened, maintained or controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

n.      All email accounts related to LPG, or any one or more of its alter egos, including but not limited to, Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG stored maintained and/or hosted on Office 365, G-suite or any other email server, whether physical or cloud based servers;

o.      All post-petition Client ACH payments processed and received by LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; Prime Logix; CLG; LGS Holdco, LLC; Vulcan; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or any other aliases, agents or entities associated with same related to Clients who entered into a Legal Services Contract pre-petition and who have received the services provided in the contract;

p.      All rental payments made by Tony Diab; Lisa Cohen; Vulcan or Prime Logix or from Bank of America Account No. ending in xxx9021 to any landlord(s), property management company(s) or owner(s), including but not limited to Jason Oppenheim of real property located at 20101 S.W. Cypress Street, Newport Beach 92660 and at 8 Almanzora, Newport Coast, California 92657 utilizing funds originating from LPG, or any one or more of its alter ego entities or fraudulent transferees, including but not limited to, Oakstone; Phoenix; Maverick; CLG; Vulcan and/or Prime Logix; and

q.      All rental payments made by Tony Diab; Lisa Cohen; Vulcan or Prime Logix or from Bank of America Account No. ending in xxx9021 to any landlord(s), property management company(s) or owner(s), including but not limited to 8 Almanzora, LLC, 310 West Profit Pro, Inc., Lisa Delaney and/or Tong Gan of real property located at 8 Almanzora, Newport Coast, California

30

#30604840v2

92657 utilizing funds originating from LPG, or any one or more of its alter ego entities or fraudulent

transferees, including but not limited to, Oakstone; Phoenix; Maverick; CLG; Vulcan and/or Prime

Logix.

**On All Claims for Relief:**

6.     granting any other and further relief as the Court deems just and proper.

Dated: June 15, 2023                                    Respectfully submitted,


                                                       DINSMORE & SHOHL LLP


                                                       By:____/s/ Christopher B. Ghio_____
                                                              Christopher B. Ghio
                                                              Christopher Celentino
                                                              Jeremy Freedman
                                                       Proposed Special Counsel to
                                                       Richard A. Marshack, Chapter 11 Trustee

31

#30604840v2

1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Jeremy B. Freedman (State Bar No. 308752)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone:  619.400.0500
Facsimile:  619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | Jeremy.freedman@dinsmore.com

7 | Proposed Special Counsel to Richard A. Marshack,
Chapter 11 Trustee for the Bankruptcy Estate of
8 | The Litigation Practice Group P.C.

9

**FILED & ENTERED**

**JUN 23 2023**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

10 | **UNITED STATES BANKRUPTCY COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

13 | In re:

14 | THE LITIGATION PRACTICE GROUP P.C.,

15 |        Debtor.

16 | ——————————————————

17 | RICHARD A. MARSHACK,
Chapter 11 Trustee,

18 |            Plaintiff,

19 |        v.

20 | TONY DIAB, an individual; DANIEL S.
MARCH, an individual; ROSA BIANCA LOLI,
21 | an individual; LISA COHEN, an individual;
WILLIAM TAYLOR CARSS, an individual;
22 | ENG TAING, an individual; HENG TAING, an
individual; MARIA EEYA TAN, an individual;
23 | JAKE AKERS, an individual; HAN TRINH, an
individual; JAYDE TRINH, an individual; WES
24 | THOMAS, an individual; SCOTT JAMES
EADIE, an individual; JIMMY CHHOR, an
25 | individual; DONGLIANG JIANG, an individual;
MAX CHOU, an individual; OAKSTONE LAW
26 | GROUP PC; GREYSON LAW CENTER PC;
PHOENIX LAW, PC; MAVERICK
27 | MANAGEMENT GROUP, LLC; LGS
HOLDCO, LLC; CONSUMER LEGAL GROUP,
28 | P.C.; VULCAN CONSULTING GROUP LLC;
BAT INC. d/b/a COAST PROCESSING; PRIME

Case No. 8:23-bk-10571-SC

Adv. Proc. No. 8:23-ap-01046-SC

Chapter 11

**ORDER ON TRUSTEE, RICHARD
MARSHACK'S OMNIBUS MOTION
GRANTING :
1) TURNOVER OF ESTATE PROPERTY
AND RECORDED INFORMATION
PURSUANT TO 11 U.S.C. § 542;
2) PRELIMINARY INJUNCTION;
3) LOCK-OUT;
4) RE-DIRECTION OF UNITED STATES
PARCEL SERVICES MAIL;
5) ORDER TO SHOW CAUSE RE
COMPLIANCE WITH COURT ORDER;
AND
6) OTHER RELIEF AS NECESSARY TO
EFFICIENT ADMINISTRATION OF THIS
MATTER**

Date:   June 12, 2023
Time:  **1:30 P.M.**
Judge: Hon. Scott C. Clarkson
Place:  Courtroom 5C
        411 W. Fourth Street
        Santa Ana, CA  92701

1 | LOGIX, LLC; TERACEL BLOCKCHAIN
FUND II LLC; EPPS; EQUIPAY;
2 | AUTHORIZE.NET; WORLD GLOBAL;
OPTIMUMBANK HOLDINGS, INC. d/b/a
3 | OPTIMUM BANK; MARICH BEIN, LLC;
BANKUNITED, N.A.; REVOLV3, INC.;
4 | FIDELITY NATIONAL INFORMATION
SERVICES, INC. d/b/a FIS; WORLDPAY, LLC;
5 | WORLDPAY GROUP; MERIT FUND, LLC;
GUARDIAN PROCESSING, LLC;
6 | PAYLIANCE, LLC; TOUZI CAPITAL, LLC;
SEAMLESS CHEX INC; DWOLLA, INC.;
7 | STRIPE, INC.; and DOES 1 through 100,
inclusive,

8

9 |                     Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    In his capacity as the duly appointed and acting Chapter 11 Trustee, Richard Marshack

2    ("Trustee") filed an Omnibus Emergency Motion for Turnover of Estate Property and Recorded

3    Information Pursuant to 11 U.S.C. § 542; Preliminary Injunction; Lock-Out; Re-Direction of United

4    States Postal Service Mail; Setting an Order To Show Cause re Compliance with the Court's Order

5    as to Tony Diab, Rosa Loli aka Rosa Bianca Loli aka Bianca Loli ("Rosa Loli"), Lisa Cohen, Daniel

6    March and William Taylor "Ty" Carss; and Other As Necessary to the Efficient Administration of

7    this Matter under seal on May 25, 2023, which matter was heard on May 25, 2023, pursuant to Local

8    Bankruptcy Rule 9075-1. The Court, having considered the pleadings on file and the discussion of

9    the parties at the hearing, and having placed its findings of fact and conclusions of law in support of

10   this order orally on the record at the hearing, and finding that exigent circumstances exist and good

11   cause appearing therefor, hereby **ORDERS AS FOLLOWS**:

12   **TURNOVER ORDER OF ESTATE PROPERTY AND RECORDED INFORMATION:**

13       **A. RECORDED INFORMATION**

14       Within twenty-four (24) hours from the date of this Order or notice thereof, whichever is

15   later, the following information regarding  any and all persons who signed a Legal Services Contract

16   with LPG or whose file was purchased or otherwise transferred to LPG; Oakstone Law Group, PC

17   ("Oakstone"); Greyson Law, P.C. ("Greyson"); Gallant Law Group, PC ("Gallant") and its affiliate

18   Center Pointe; Phoenix Law, PC (Phoenix); LGS Holdco., LLC; Consumer Legal Group, PC

19   ("CLG"); Maverick Management, LLC ("Maverick"); Vulcan Consulting Group, LLC ("Vulcan");

20   BAT Inc. d/b/a Coast Processing ("Coast Processing"); Strategic Consulting Solutions, LLC

21   ("SCS"); Prime Logix, LLC ("Prime Logix"); Touzi Capital, LLC ("Touzi"); Tony Diab; Rosa Loli

22   aka Rosa Bianca Loli aka Bianca Loli ("Rosa Loli"); Lisa Cohen; Eng Taing; Heng Taing; Maria

23   Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang

24   Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same, for which

25   the client's file remains open and/or continues to make payments under an agreed upon installment

26   contract, except those clients who signed a Legal Services Contract post-petition (hereinafter

27   "Client") shall be turned over to the Trustee by Debtor:

28   ///

1

1. All Client files, including but not limited to names, contact information, client file management, communications, account information, letters, pleadings, communications, payment history, financial account information, credit reports, executed legal services contracts, automated clearing house ("ACH") contracts, executed installment contracts, account balances, debts in dispute, payment history, file status, settlements, debt invalidations and/or any other information  created, managed and stored electronically utilizing DebtPayPro, a Forth, Inc. ("DPP") software program's software license, key or account, that was opened and is maintained and controlled by LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; Vulcan; Coast Processing; SCS; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same (the "DPP Data");

2. All administrative usernames and passwords that give the Trustee access to any DPP account held, maintained or controlled by LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; Vulcan; SCS; Coast Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same;

3. All Client files, including but not limited to names, contact information, client file management, communications, account information, letters, pleadings, communications, payment history, financial account information, credit reports, executed legal services contracts, ACH contracts, executed installment contracts, account balances, debts in dispute, payment history, file status, settlements, debt invalidations and/or any other information  created, managed and stored electronically utilizing proprietary software program "LUNA" hosted on Amazon Web Services ("AWS") and located at the current domain "lunapp.com" that is maintained and controlled by LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; Vulcan; SCS; Coast Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang

1  Jiang; Max Chou and/or any other alias', agents or corporate entities affiliated with same (the "Luna

2  Data");

3      4. All administrative usernames and passwords that give the Trustee access to any AWS

4  account where Luna, its software program, databases and client information is held, stored and hosted

5  that is maintained or controlled by LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC;

6  CLG; Maverick; SCS; Vulcan; Coast Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa

7  Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott

8  James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou and/or any other alias', agents or corporate

9  entities affiliated with same;

10      5. All ACH files related to Client information, details, accounts, history of electronic fund

11  transfers ("EFT"), payments, amounts held, interest on held amounts, penalty fees, nonsufficient fund

12  fees or other ACH related charges to the Clients stored electronically or in hard copy associated with

13  ACH processing service providers and/or affiliated financial institutions, including but not limited to

14  EPPS; EquiPay, LLC ("EquiPay"); Merit Fund, LLC ("Merit Fund"); Authorize.net a subsidiary of

15  Visa, Inc. ("Authorize.net"); World Global; OptimumBank Holdings, Inc. dba Optimum Bank

16  ("Optimum Bank"); BankUnited, Inc. ("BankUnited"); Marich Bein, LLC ("Marich Bein");

17  Revolv3, Inc. ("Revolv3"); Fidelity National Information Services, Inc. dba FIS , including but not

18  limited to its subsidiaries Worldpay, LLC , Worldpay Group or any other subsidiaries providing ACH

19  processing services ("FIS"); Guardian Processing, LLC ("Guardian"); Payliance, LLC ("Payliance");

20  Seamless Chex, Inc. ("Seamless"); Dwolla, Inc. ("Dwolla") Stripe, Inc. ("Stripe"); and/or any entity

21  associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER

22  NJ 0875" or any such substantially similar ACH identification transaction (hereinafter the "ACH

23  Data");

24      6. All files, information, reports, spreadsheets, account numbers, routing numbers, and

25  databases related to transfer of funds out of any account opened, maintained and controlled by LPG;

26  Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; SCS; Vulcan; Coast

27  Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria

28  Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang

Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same that were processed and executed by ACH processing service providers and/or their affiliated financial institutions, including but not limited to EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction (hereinafter the "ACH Transfer Data");

7. All administrative usernames and passwords that give the Trustee access to any ACH processing accounts, software, database or other program at ACH processing service providers and/or affiliated financial institutions, including but not limited to EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction used to upload or input Client information, initiate Client ACH EFTs, transfer Client ACH funds to outside financial institutions or otherwise manage any account opened, maintained and controlled by  LPG; Oakstone; Greyson; Phoenix; LGS Holdco., LLC; CLG; SCS; Vulcan; Coast Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same;

8. All accounting records, files, data and information for LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; SCS; Vulcan; Coast Processing; and Prime Logix stored on NetSuite, Quickbooks and Microsoft SharePoint, G-Suite or other permanent or cloud based systems (hereinafter the "Accounting Data");

9. All contracts, records, reports, information, data and details regarding the transfer or sale of any Client files or future Client ACH payments to any other law firm, organization, corporate entity, person(s), or investment group (otherwise known as factoring companies) by LPG; Oakstone; Greyson; Phoenix; LGS Holdco., LLC; and/or CLG (hereinafter the "Client Transfer-Out Data");

10. All contracts, records, reports, information, data, cost basis, payment information and details regarding the transfer or receipt of any Client files or future Client ACH payments from any other law firm, organization, corporate entity, person(s), investment or marketing group (otherwise known as capping companies) to LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; Maverick; and/or CLG (hereinafter the "Client Transfer-In Data");

11. All information, data, tables, spreadsheets and reports regarding Client information stored on Formgrid, Inc. dba Airtable's ("Airtable") cloud based data management system used by LPG; Oakstone; Greyson; Phoenix; LGS Holdco., LLC; and/or CLG to manage the aforementioned information (hereinafter the "Airtable Data"); and

12. All administrative usernames and passwords that give the Trustee access to any Airtable account opened, maintained or controlled by LPG; Oakstone; Greyson, Phoenix; LGS Holdco., LLC; Maverick; and/or CLG; and

13. All email accounts related to LPG; Oakstone; Greyson; Gallant;  Phoenix; LGS Holdco., LLC; and/or CLG stored maintained and/or hosted on Office 365, g-suite or any other email server, whether physical or cloud based servers (hereinafter "Email Data").

14. Nothing herein is intended to require Greyson or its owner, Scott Eadie, or Greyson employees Jayde Trinh or Han Trinh to turn over: (a) any files for Clients which Greyson did not obtain from or through access to data or personnel, including affiliated attorneys, from LPG, Phoenix, Oakstone, LGS Holdco, LLC, CLG, or Gallant; (b) any accounting records, files, data and information for Clients which Greyson did not obtain from or through any access to data or personnel, including affiliated attorneys, from LPG, Phoenix, Oakstone, LGS Holdco, LLC, CLG, or Gallant; (c) contracts, records, reports, information, data and details regarding the transfer or sale of any Client files or future Client ACH payments to any other law firm, organization, corporate entity, person(s), or investment group for Clients which Greyson did not obtain from or through any access to data or personnel, including affiliated attorneys, from LPG, Phoenix, Oakstone, LGS Holdco, LLC, CLG, or Gallant.  Further, nothing herein is intended to prevent Greyson from storing, maintaining, and/or hosting email accounts and domains on Office 365, g-suite or any other email server, whether physical or cloud based, that is unrelated to LPG, Phoenix, Oakstone, LGS Holdco, LLC, CLG, or

5

Gallant, and provided that such email accounts and domains were not funded through, acquired or developed by funds the genesis of which was the legacy files of LPG, including but not limited to any funds delivered after January 1, 2019, from, through or affiliated with Maverick, Vulcan. Coast Processing; SCS, Prime Logix, Oakstone, Gallant, Touzi, and/or any of the ACH payment processors or financial institutions named in this Order.

**B. <u>ESTATE FUNDS</u>**

Within five (5) calendar days from the date of this order or notice thereof, whichever is later, the following shall be turned over to the Trustee:

1. All post-petition Client ACH payments processed on or after March 20, 2023, and received by LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; SCS; Vulcan; Coast Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same related to LPG Clients who entered into a Legal Services Agreement pre-petition and who have received the services provided in the contract;

2. The $6,308,702.72 million dollars in post-petition ACH EFTs processed through LPG's Revolv3, Inc. merchant account from March 2023 to the present, including any amounts that have been transferred, wired or otherwise withdrawn from LPG's Revolv3, Inc. merchant account to Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; SCS; Vulcan; Coast Processing; Prime Logix; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same;

3. Nothing herein is intended to require Greyson to turnover any post-petition Client ACH payments related to the approximate 48 LPG clients who are contemplated to be serviced by Greyson and for whom Greyson provides the Chapter 11 Trustee with signed retention agreement to the extent such funds were processed or received after the date of the signed retention agreement with Greyson.

///

///

<u>**PRELIMINARY INJUNCTION**</u>

From the date of this **ORDER** and until further Ordered by this Court:

**1. <u>Control Over ACH Transfers</u>:** All covered entities and individuals (defined below) are hereby enjoined and shall not interfere with any ACH electronic funds transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG as follows:

a) <u>Covered Entities and Individuals</u>: The following entities and individuals, and anyone acting on their behalf: LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; Vulcan; Coast Processing; Prime Logix; SCS; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same shall, absent further order from this Court, are Preliminary Enjoined as follows:

i) <u>Enjoined Conduct re ACH Instructions</u>: No covered entity or individual shall initiate, cause to be initiated, or instruct any company or person that processes ACH transfers and/or their affiliated financial institutions, including EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction, to execute any ACH EFT on any file, financial institution, or current or former client of LPG, to or for the benefit of LPG, including but not limited to Oakstone; Greyson; Phoenix; CLG; Prime Logix; SCS; Maverick;  and/or Vulcan, without the express authorization of Trustee;

ii) <u>Enjoined Conduct re Bank Accounts</u>: No covered entity or individual shall open, or cause to be opened, any account, whether business or personal, that can receive or send money or anything of value, at any company including banking, financial, or similar institutions and/or receive, directly or indirectly, any funds drawn from ACH electronic fund transfers;

**2. <u>Enjoined Execution of ACH Transfer</u>**: All covered entities and individuals (defined below) are hereby enjoined and prohibited from interfering with any ACH electronic funds transfer

///

7

1  being executed pursuant to documents authorizing such transfers to be executed in favor of LPG as

2  follows:

3          a) <u>Covered Entities and Individuals</u>: All companies capable of processing ACH

4  electronic funds transfers, including EPPS; EquiPay; Merit Fund; Authorize.net; World Global;

5  Optimum Bank; BankUnited; Marich Bein; Revolv3; FIS; Guardian; Payliance, Seamless; Dwolla;

6  Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5

7  2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction

8  are enjoined absent further order of this court, from:

9          i) <u>Enjoined Conduct re ACH Transfers</u>: No covered entity or individual shall

10  transfer, wire, divert or otherwise permit the withdraw any funds received from any ACH electronic

11  funds transfer on any client file, financial institution, or current or former client of LPG, to or for the

12  benefit of LPG or any or more of its alleged assignees or transferees, including but not limited to

13  Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG and/or Maverick to any financial

14  account maintained, owned or controlled by Vulcan; Coast Processing; Prime Logix; SCS; Touzi;

15  Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde

16  Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor; Dongliang Jiang; Max Chou; and/or any

17  other alias', agents or corporate entities affiliated with same. All ACH funds held by any covered

18  entity or individual shall be held in trust until such time as written authorization and instruction is

19  provided by Trustee;

20          ii) <u>Preliminary Injunction Mandating Turnover to Trustee</u>: all covered entities

21  and individuals shall hold in trust any and all funds, receipts, and transfers related to any account,

22  file, or current or former client of LPG; Oakstone; Greyson; Phoenix; LGS Holdco., LLC; CLG;

23  Maverick; Vulcan; Coast Processing; Prime Logix; SCS; Touzi; Tony Diab; Rosa Loli; Lisa Cohen;

24  Eng Taing; Heng Taing; Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie,

25  Jimmy Chhor; Dongliang Jiang; Max Chou and/or other alias', agents or corporate entities affiliated

26  with same until expressly directed to release, wire or transfer such funds by the Trustee and to a bank

27  account whose information shall be provided with any such request; and, shall upon request by the

28  ///

1  Trustee provide an accounting of any and all such funds held in trust to the Trustee upon written

2  request within 10 days of said request;

3  3. LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; SCS; Vulcan; Coast

4  Processing; Prime Logix; SCS; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing;

5  Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor;

6  Dongliang Jiang; Max Chou and/or any other alias', agents or corporate entities affiliated with same

7  are hereby enjoined and shall not incur, take out or pledge any receivables of LPG; Oakstone;

8  Greyson; Gallant; Phoenix; Prime Logix; SCS; Touzi; Maverick; and/or CLG without seeking leave

9  of court;

10  4. Any and all funds held at Bank of America on behalf of Prime Logix and/or Vulcan,

11  including but not limited to account Nos. ending in xxx951 and xxx9021 and/or any other financial

12  accounts having received funds originating from LPG; Oakstone; Greyson; Gallant; Phoenix; LGS

13  HoldCo., LLC; CLG; and/or Maverick shall be held in trust and shall not be with withdrawn, wired,

14  drawn against, moved, or otherwise transferred without the express consent of the Trustee in writing

15  and to a financial account identified by the Trustee at the time the authorization is provided.

16  5. Nothing herein is intended to prevent Greyson or its owner, Scott Eadie, or Greyson

17  employees Jayde Trinh or Han Trinh from initiating, causing to be initiated, or instructing any

18  company or person that process ACH transfers to execute any ACH EFT on any file or financial

19  institution related to any Clients which Greyson did not obtain from or through access to data or

20  personnel, including affiliated attorneys, from LPG, Phoenix, Oakstone, LGS Holdco, LLC, CLG,

21  or Gallant, or related to the approximate 48 LPG clients who are contemplated to be serviced by

22  Greyson, or whom Greyson provides the Chapter 11 Trustee with signed retention agreement, and as

23  to which such processing occurs from and after the date of the signed retention agreement.

24  **LOCKOUT ORDER**

25  From the date of this **ORDER** until further order of this Court:

26  1. All persons identified below are enjoined and shall not access or attempt to gain access

27  whether physically, remotely, electronically, or virtually to the following locations associated with

28  LPG; Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG; Maverick; Vulcan; Coast

1   Processing; Prime Logix; SCS; Touzi; Tony Diab; Rosa Loli; Lisa Cohen; Eng Taing; Heng Taing;

2   Maria Eeya Tan; Jake Akers; Jayde Trinh; Wes Thomas; Scott James; Eadie, Jimmy Chhor;

3   Dongliang Jiang; Max Chou; and/or any other alias', agents or corporate entities affiliated with same:

4   a) 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; b) 17542 17th St Suite

5   100, Tustin, California 92780; b) Luna's domain located on AWS; c) DPP Data or accounts; d)

6   Accounting Data and/or accounts on NetSuite, Quickbooks and Microsoft SharePoint, G-Suite or

7   other permanent or cloud based systems; e) ACH processing accounts, whether individual, merchant

8   or business, held at any ACH processing or affiliated financial institution, including but not limited

9   to EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich

10   Bein; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated

11   with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875"

12   or any such substantially similar ACH identification transaction; f) Vulcan and/or PrimeLogix'

13   financial accounts at Bank of America, including but not limited to Account Nos. ending in xxx951

14   and xxx9021; and g) the Email Data, as follows:

15         i) Tony Diab;

16         ii) Rosa Loli aka Rosa Bianca Loli aka Bianca Loli;

17         iii) Lisa Cohen;

18         iv) Daniel March;

19         v) Eng Taing;

20         vi) Maria Eeya Tan (except as may be authorized by the Trustee in the exercise of

21   his business judgment)

22         vii) Jake Akers;

23         viii) Han Trinh;

24         ix) Jayde Trinh;

25         x) Wes Thomas;

26         xi) William Taylor "Ty" Carss (except at may be authorized by the Trustee in the

27   exercise of his business judgment);

28         x)  Scott James Eadie;

1    xi) Jimmy Chhor;

2    xii) Brad Lee;

3    xiii) Dongliang Jiang;

4    xiv) Heng Taing; and

5    xiiv) Max Chou.

6    Nothing herein is intended to prevent Greyson or its owner or employees from accessing or

7    attempting to gain access whether physically, remotely, electronically, or virtually to 3347 Michelson

8    Drive, Suites 400B, Irvine, California 92612 (but, for the sake of clarity, nothing herein confers any

9    legal right to possession of access to such suite, which possession or access is governed by applicable

10    law) or from accessing or attempting to gain access whether physically, remotely, electronically, or

11    virtually to ACH processing accounts with Revolv3 so long as Greyson or its owner or employees do

12    not access or attempt to access any ACH processing account at Revolv3 or otherwise held by LPG;

13    Prime Logix; Guardian; Oakstone; Phoenix; and/or any other account previously used to processes

14    LPG client ACH transfers that is not in Greyson's own name and established by or through funds the

15    source of which is unrelated to legacy LPG clients and established in Greyson's own name after the

16    date of this Order.

17    **<u>ORDER TO RE-DIRECT MAIL</u>**

18    From the date of this **ORDER** until further order of this Court:

19    1. Trustee is hereby authorized to instruct the United States Postal Service to re-direct any

20    and all mail processed by the United States Postal Service Directed to: a) LPG, 17542 17th St Suite

21    100, Tustin, California 92780; b) Oakstone, 888 Prospect Street, Suite 200 La Jolla, California

22    92037; c) Phoenix, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; d) Prime

23    Logix, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; e) CLG, PO Box 412

24    Elmsford, NY 10523; f) Greyson, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California

25    92612; and/or any other address associated with such entities, shall be forwarded and re-directed to

26    an address provided by the Trustee until such time as ordered by the Court.  To the extent that the

27    Trustee receives any mail addressed to Greyson, the Trustee shall .pdf a copy of the correspondence

28    to Greyson's counsel, Doug Plazak of Reid & Hellyer at dplazak@rhlaw.com, within 24 hours of

1    said receipt, unless receipt falls on a Friday or a day preceding any Federal or State holiday and/or

2    emergency requiring Trustee's office to close, in which case any mail received by Trustee and

3    addressed to Greyson shall be forwarded to Greyson's counsel the next business day.

4

5    ### NOTICE TO LPG CLIENTS

6          Trustee is hereby authorized to provide notice to any and all LPG clients, including those

7    transferred and/or assigned to Oakstone; Greyson; Gallant; Phoenix; LGS Holdco., LLC; CLG;

8    and/or Maverick regarding: i) LPG's Bankruptcy filing; ii) pending evaluation of their file; and iii)

9    status prior to assuming or rejecting their contract in substantially the same form of notice attached

10   to this Order as Exhibit 1.

11                                           # # #

12

13

14

15

16

17

18

19

20

21

22

23

24   Date: June 23, 2023

Scott C. Clarkson
United States Bankruptcy Judge

25

26

27

28

12

Exhibit 1

[Client Name]
  [Date]
[Address Line 1]
[Address Line 2]
[Address Line 3]
Tel:
Email:

**RE: STATUS REGARDING YOUR MATTER WITH THE LITIGATION PRACTICE GROUP**

Dear [Name],

Please be advised that on May 20, 2023, The Litigation Practice Group ("LPG") filed for protection under Chapter 11 of the Bankruptcy Code. On May 8, 2023, the United States Bankruptcy Court—Central District of California, Case No. 8:23-bk-10571, appointed Richard Marshack, Esq. as the duly appointed Chapter 11 Trustee to oversee the administration of LPG's Bankruptcy matter. See Docket No. 65.

Subsequently, the United States Bankruptcy Court authorized Trustee to obtain information in order to review and evaluate the status of your file at LPG and/or any other debt relief law firm your file may have been transferred or assigned to at or around the time LPG filed for Bankruptcy, including but not limited to Oakstone Law Group, P.C.; Greyson Law Center, P.C.; Gallant Law Group, PC; Phoenix Law, P.C.; LGS Holdco., LLC; Consumer Legal Group, P.C. and/or Maverick Management Group, LLC.

Over the coming weeks, Trustee Richard Marshack will provide status of your file and continuation of legal services pursuant to the Legal Services Agreement with LPG.

We greatly appreciate your patience and cooperation while we work on your behalf.

Sincerely,


[Signatory name]

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California  92101

A true and correct copy (1) of the foregoing document entitled: **ANOTHER SUMMONS AND NOTICE OF STATUS CONFERENCE IN ADVERSARY PROCEEDING [LBR 7004-1]** and (2) the accompanying pleading(s) entitled:

**ORDER RE: RULE 26(f) MEETING, INITIAL DISCLOSURE, AND SCHEDULING CONFERENCE**

**NOTICE OF REQUIRED COMPLIANCE WITH RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND RULE 7026-1 OF THE LOCAL BANKRUPTCY RULES**

**AMENDED COMPLAINT FOR:  (1) INJUNCTIVE RELIEF; (2) AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR ACTUAL FRAUDULENT TRANSFERS; (3) AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS; (4) AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR ACTUAL FRAUDULENT TRANSFERS; (5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS; AND (6) TURNOVER.**

**ORDER ON TRUSTEE, RICHARD MARSHACK'S OMNIBUS MOTION GRANTING: 1) TURNOVER OF ESTATE PROPERTY AND RECORDED INFORMATION PURSUANT TO 11 U.S.C. § 542; 2) PRELIMINARY INJUNCTION; 3) LOCK-OUT; 4) RE-DIRECTION OF UNITED STATES PARCEL SERVICES MAIL; 5) ORDER TO SHOW CAUSE RE COMPLIANCE WITH COURT ORDER; AND 6) OTHER RELIEF AS NECESSARY TO EFFICIENT ADMINISTRATION OF THIS MATTER**

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **June 23, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Quickbooks - Intuit Inc.
c/o 1505 Corporation / CSC - Lawyers Incorporating Service, Agent for Service of Process
2710 Gateway Oaks Drive, Suite 150N
Sacramento, California  95833**

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL SERVICE/DELIVERY:**

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2023 | Nicolette D. Murphy | *Nicolette D. Murphy* |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*IN RE THE LITIGATION PRACTICE GROUP P.C. / RICHARD A. MARSHACK v. TONY DIAB, et al.*
United States Bankruptcy Court Case No. 8:23-bk-10571-SC
United States Bankruptcy Court Adversary Proceeding Case No. 8:23-mp-0102

## SERVICE LIST

| | |
|---|---|
| Jake Akers<br>27 Songbird Lane<br>Aliso Viejo, California 92656-1232 | Authorize.Net, a subsidiary of Visa<br>Attn:  1505 Corporation / CT Corporation System,<br>Agent for Service of Process<br>330 North Brand Boulevard<br>Glendale, California 91203 |
| BankUnited, N.A.<br>7815 NW 148th Street<br>Miami Lakes, Florida 33016 | William Taylor Carss<br>6080 Center Drive, 6th Floor<br>Los Angeles, California 90045 |
| William Taylor Carss<br>3347 Michelson Drive, Suite 400<br>Irvine, California  92612 | Jimmy Chhor<br>1918 Pepperdale Drive<br>Rowland Heights, California 91748-3252 |
| Lisa Cohen<br>20101 SW Cypress Street<br>Newport Beach, California 92660 | Consumer Legal Group, P.C.<br>c/o Ronald Richards, Esq.<br>LAW OFFICE OF RONALD RICHARDS<br>Post Office Box 11480<br>Beverly Hills, California  90213 |
| Consumer Legal Group, P.C.<br>c/o USACORP Inc., Agent for Service of Process<br>325 Division Avenue, Suite 201<br>Brooklyn, New York  11211 | Tony Diab<br>20101 SW Cypress Street<br>Newport Beach, California 92660 |
| Scott James Eadie<br>SEDEHI LAW<br>555 Anton Boulevard, Suite 150<br>Costa Mesa, California 92626 | Scott James Eadie<br>5000 Birch Street, Suite 3000<br>Newport Beach, California 92660-2140 |
| Scott James Eadie<br>GREYSON LAW CENTER, P.C.<br>440 North Barranca Avenue, Suite 1331<br>Covina, California 91723 | Equipay<br>c/o Resident Agents Inc., Agent for Service of Process<br>8 The Green, Suite R<br>Dover, Delaware 19901 |
| Fidelity National Information Service, Inc. d/b/a FIS<br>Attn:  1505 Corporation / CT Corporation System,<br>Agent for Service of Process<br>330 North Brand Boulevard<br>Glendale, California 91203 | Gallant Law Group, PC<br>123 South Broad Street, Suite 1640<br>Philadelphia, Pennsylvania 19109 |

| | |
|---|---|
| Greyson Law Center, P.C.<br>c/o Douglas A. Plazak, Esq.<br>Post Office Box 1300<br>Riverside, California 92502 | Greyson Law Center, P.C.<br>c/o Scott James Eadie<br>440 North Barranca Avenue, Suite 1331<br>Covina, California 91723 |
| Dongliang Jiang<br>19200 Von Karman Avenue, 4-6 Floors<br>Irvine, California 92612 | LGS Holdco, LLC<br>c/o USACORP DE INC., Agent for Service of Process<br>1811 Silverside Road<br>Wilmington, Delaware 19810 |
| LGS Holdco, LLC<br>c/o The LLC, Agent for Service of Process<br>11 Broadway, Suite 300<br>New York, New York 10004 | Rosa Bianca Loli<br>1220 Ensenada Avenue<br>Laguna Beach, California 92651 |
| Rosa Bianca Loli<br>3347 Michelson Drive, Suite 400<br>Irvine, California 92612 | Daniel S. March<br>LPG / LAW OFFICE OF DANIEL MARCH<br>17291 Irvine Boulevard, Suite 101<br>Tustin, California 92780-2966 |
| Marich Bein, LLC<br>c/o The LLC, Agent for Service of Process<br>99 Wall Street, Suite 2669<br>New York, New York 10005 | Merit Fund, LLC<br>c/o Mike S Patel, Agent for Service of Process<br>3531 Torrance Boulevard<br>Torrance, California 90503 |
| Oakstone Law Group, P.C.<br>c/o 1505 Corporation / CT Corporation System,<br>Agent for Service of Process<br>330 North Brand Boulevard<br>Glendale, California 91203 | Optimum Bank Holdings, Inc. d/b/a Optimum Bank<br>c/o Mary Franco, Agent for Service of Process<br>2929 East Commercial Boulevard, Suite 101<br>Fort Lauderdale, Florida 33308 |
| Prime Logix, LLC<br>c/o Cloud Peak Law, LLC, Agent for Service of<br>Process<br>1095 Sugar View Drive, Suite 500<br>Sheridan, Wyoming 82801 | Prime Logix, LLC<br>c/o Rosa Bianca Loli<br>3347 Michelson Drive, Suite 400<br>Irvine, California 92612 |
| Prime Logix, LLC<br>c/o Rosa Bianca Loli<br>1220 Ensenada Avenue<br>Laguna Beach, California 92651 | Revolv3, Inc.<br>c/o United States Corporation Agents, Inc., Agent for<br>Service of Process<br>101 North Brand Boulevard, 11th Floor<br>Glendale, California 91203 |
| Maria Eeya Tan<br>3347 Michelson Drive, Suite 400<br>Irvine, California 92612 | Teracel Blockchain Fund II, LLC<br>c/o Harvard Business Services, Inc., Agent for Service<br>of Process<br>16192 Coastal Highway<br>Lewes, Delaware 19958 |

| | |
|---|---|
| Wes Thomas<br>2030 Main Street, Suite 1300<br>Irvine California 92614 | Han Trinh<br>2128 West Cherry Drive<br>Orange, California 92868 |
| Jayde Trinh<br>2128 West Cherry Drive<br>Orange California 92868-1927 | Vulcan Consulting Group, LLC<br>c/o Lisa Cohen, Agent for Service of Process<br>20101 SW Cypress Street<br>Newport Beach, California 92660 |
| WorldPay Global, LLC<br>Business Filings Incorporated, Agent for Service of Process<br>187 Wolf Road, Suite 101<br>Albany, New York  12205 | WorldPay Group<br>1505 Corporation / CT Corporation System, Agent for Service of Process<br>330 North Brand Boulevard<br>Glendale, California 91203 |
| Amazon.com, Inc.<br>c/o Corporation Services Company, Agent for Service of Process<br>Attn:  Legal Department – Legal Process<br>300 Deschutes Way SW, Suite 20<br>Tumwater, Washington  98501 | Bank of America, N.A.<br>800 Samoset Drive<br>Newark, Delaware 19713 |
| Formgrid, Inc., d/b/a Airtable<br>c/o Corporation Service Company, Agent for Service of Process<br>80 State Street<br>Albany, New York 12207-2543 | Google<br>c/o Corporation Service Company, Agent for Service of Process<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, CA 95833 |
| Microsoft<br>CSC - Lawyers Incorporating Service, Agent for Service of Process<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, California  95833 | Netsuite, a Subsidiary of Oracle<br>1505 Corporation / CSC - Lawyers Incorporating Service, Agent for Service of Process<br>2710 Gateway Oaks Drive, Suite 150N<br>Sacramento, California 95833-3502 |