Daniel H. Reiss
State Bar No. 150573
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Avenue
Los Angeles, California 90034

Rusty O'Kane
Texas State Bar No. 24088149 (admitted pro hac vice)
*rusty.okane@wickphillips.com*
Alexandra W. Wahl
Texas State Bar No. 241071581 (admitted pro hac vice)
*alex.wahl@wickphillips.com*
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISON

| | |
|---|---|
| In re: | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP, PC, | Adv. Proc. No. 8:23-ap-01046-SC |
| Debtor. | Chapter 11 |
| RICHARD A. MARSHACK, Chapter 11 Trustee, | **MOTION BY DEFENDANTS ENG TAING AND TOUZI CAPITAL, LLC TO DISMISS COMPLAINT UNDER FED. RULE BANK. PROC. 7012 AND FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** |
| Plaintiff, | |
| v. | Judge: Hon. Scott C. Clarkson |
| TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TAING, an individual; HENG TAING, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; | **DATE: SEPTEMBER 13, 2023**
**TIME: 1:30 P.M.**
**PLACE: ZOOMGOV**
       COURTROOM 5C
       411 WEST 4TH STREET
       SANTA ANA, CA 92701-4593 |

JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; MAX CHOU, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW, PC; MAVERICK MANAGEMENT GROUP, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN CONSULTING GROUP LLC; BAT INC. d/b/a COAST PROCESSING; PRIME LOGIX, LLC; TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD GLOBAL; OPTIMUMBANK HOLDINGS, INC. d/b/a OPTIMUM BANK; MARICH BEIN, LLC; BANKUNITED, N.A.; REVOLV3, INC.; FIDELITY NATIONAL INFORMATION SERVICES, INC. d/b/a FIS; WORLDPAY, LLC; WORLDPAY GROUP; MERIT FUND, LLC; GUARDIAN PROCESSING, LLC; PAYLIANCE, LLC; TOUZI CAPITAL, LLC; SEAMLESS CHEX INC; DWOLLA, INC.; STRIPE, INC.; and DOES 1 through 100, inclusive,

      Defendants.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

I.   INTRODUCTION AND SUMMARY ........................................................................ 1

II.  FACTUAL BACKGROUND ....................................................................................... 1

III. ARGUMENTS AND AUTHORITIES ........................................................................ 2

    A. Standard for Rule 12(b)(6) ..................................................................................... 2

    B. Plaintiff's Factual Allegations Do No Meet the Standard to State a Claim
       Against Touzi Defendants ....................................................................................... 3

    C. Plaintiff's Claims are barred by the Doctrine of *In Pari Delicto* ................................. 5

       1. First *Peregrine* Factor:  Imputation of Misconduct to the Debtor ............................ 6

       2. Second *Peregrine* Factor:  Imputation of Misconduct to the Trustee ...................... 9

       3. Third Peregrine *Factor*:  Relation of the Misconduct to the Causes of
          Action Asserted ................................................................................................. 10

IV.  CONCLUSION ............................................................................................................ 11

# **TABLE OF AUTHORITIES**

Cases                                                                                                        Page(s)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................... 2
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................... 2
*Bouncing Angels, Inc. v. Burlington Ins. Co.*,
   No. EDCV170015JGBSPX, 2017 WL 1294004 (C.D. Cal. Mar. 20, 2017) ................................. 2
*Casey v. U.S. Bank Nat'l Ass'n*,
   127 Cal. App. 4th 1138, 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005) ............................................ 7
*Clement 1, LLC v. Scottsdale Ins. Co.*,
   2023 WL 4492422 (C.D. Cal. July 11, 2023) ................................................................................ 2
*Goldman v. Dardashti (In re Tootian)*,
   634 B.R. 361 (Bankr. C.D. Cal. 2021) .......................................................................................... 5
*In re California TD Investments, LLC*,
   489 B.R. 124 (Bankr. C.D. Cal. 2013) .......................................................................................... 7
*In re Crown Vantage, Inc.*,
   2003 WL 25257821 (N.D. Cal. Sept. 25, 2003) ............................................................................ 6
*In re Infinity Bus. Grp., Inc.*,
   612 B.R. 76 (Bankr. D.S.C. 2019) ................................................................................................. 7
*Johnson v. Riverside Health Care System, LP*,
   534 F.3d 1116 (9th Cir. 2008) ....................................................................................................... 3
*McHale v. Silicon Valley Law Group*,
   2011 WL 6990187 (N.D. Cal. Dec. 14, 2011) .............................................................................. 7
*Mosier v. Stonefield Josephson, Inc.*,
   2011 WL 5075551 (C.D. Cal. Oct. 25, 2011) ............................................................................... 6
*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP*,
   133 Cal. App. 4th 658 (2005) ........................................................................................................ 6
*Rund v. Lee (In re Amergence Technology, Inc.)*,
   2016 WL 4069550 (Bankr. C.D. Cal. July 27, 2016) ................................................................. 10
*ShengdaTech Liquidating Trust v. Hansen, Barnett & Maxwell, P.C., et al. (In re ShengdaTech, Inc.)*,
   519 B.R. 292 (D. Nev. 2014) ........................................................................................................ 6
*Sugarman v. Taylor (In re Yellow Cab Coop., Inc.)*,
   602 B.R. 357 (Bankr. N.D. Cal. 2019) .......................................................................................... 6
*Uecker v. Wells Fargo Capital Finance, LLC (In re Mortg. Fund '08 LLC)*,
   527 B.R. 351 (N.D. Cal. 2015) ................................................................................................ 7, 10
*USACM Liquidating Trust v. Deloitte & Touche, LLP*,
   764 F.Supp.2d 1210 (D. Nev. 2011) ............................................................................................. 6

Statutes

11 U.S.C. § 542 .................................................................................................................................... 1
11 U.S.C. §§ 544(b), 550, and 551 ...................................................................................................... 1
11 U.S.C. §§ 548(a)(1)(A), 550, and 551 ............................................................................................ 1
11 U.S.C. §§ 548(a)(1)(B), 550 and 551 ............................................................................................. 1
Cal. Civ. Code 3439.04(a) and 3439.07 .............................................................................................. 1

Section 3517 of the California Civil Code ................................................................................... 6

Rules

Federal Bankruptcy Rule of Procedure 7012 ............................................................................... 1
Federal Rule of Civil Procedure 12(b)(6) ............................................................................ 1, 2, 3

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) made applicable to this proceeding under Federal Bankruptcy Rule of Procedure 7012, Defendants Eng Taing ("Mr. Taing") and Touzi Capital, LLC ("Touzi") (collectively, "Touzi Defendants") file this Motion to Dismiss the claims alleged against them in Plaintiff Richard A. Marshack's ("Plaintiff") Amended Complaint ("Complaint") [Dkt. No. 62], and respectfully state as follows:

## I.

## INTRODUCTION AND SUMMARY

Plaintiff throws Touzi Defendants in with the host of 41 other defendants he sues for injunctive relief, fraudulent transfers, and turnover. This Court should dismiss Plaintiff's claim against Touzi Defendants because under Rule 12(b)(6), Plaintiff has not properly pleaded a factual basis for suit against these defendants. Because the Complaint lacks well-pleaded factual allegations, those claims should be dismissed as a matter of law. In addition, the Complaint should be dismissed under the doctrine of *in pari delicto*.

## II.

## FACTUAL BACKGROUND

The Complaint alleges the following causes of action against Touzi Defendants (and all other 41 defendants):

1. *Injunctive Relief;*
2. *Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(A), 550, and 551 (Compl. at ¶¶ 80-92);*
3. *Constructive Fraudulent Transfer under 11 U.S.C. §§ 548(a)(1)(B), 550 and 551 (Compl. at ¶¶ 93-100);*
4. *Avoidance of Fraudulent Transfer under 11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code 3439.04(a) and 3439.07 (Compl. at ¶¶ 101-118);*
5. *Avoidance of Constructive Fraudulent Transfer under 11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code 3439.04(a) and 3439.07 (Compl. at ¶¶ 119-129); and*
6. *Turnover of Estate Property under 11 U.S.C. § 542 (Compl. at ¶¶ 130-134).*

1

The factual allegations against Touzi Defendants lodged in the Complaint are slim and conclusory, at best. In Plaintiff's factual recitation, Mr. Taing is mentioned only three times, and Touzi is mentioned four. *See* Compl. at ¶¶ 46-73 (mentioned at ¶¶ 59, 60, 61, 71). Specifically, the Complaint alleges:

- Tony Diab, alleged former owner and operator of debtor Litigation Practice Group, LP ("LPG") "caused LPG to sell receivables on 719 files for $2,070,000 to Teracel, an entity owned and operated by Touzi, which is headed by Eng Taing, one of Validation Partnership and investors, and his brother, Heng Taing." Compl. at ¶ 59.

- "[D]espite not paying for these files, Touzi Capital continues to process and duplicate ACH electronic funds transfers in its own name and/or in the name of Oakstone via ACH payment processors." Compl. at ¶ 60.

- "Thousands of files have been doubly sold in this manner, effectuating Diab and Eng Taing's Ponzi scheme to defraud creditors." Compl. at ¶ 61.

- "Diab, Eng Taing, Heng Taing, **and/or** Touzi have used other ACH processing companies including Payliance (using a Guardian merchant account), amount others, to process and transfer property of the Estate through Diab's network of Alter Egos and Fraudulent Transferees." Compl. at ¶ 71 (emphasis added).

## III.

## ARGUMENTS AND AUTHORITIES

### A.    Standard for Rule 12(b)(6)

A plaintiff's complaint must "give defendant fair notice of what the […] claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Bouncing Angels, Inc. v. Burlington Ins. Co.*, No. EDCV170015JGBSPX, 2017 WL 1294004, at *2 (C.D. Cal. Mar. 20, 2017). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard asks for more than a sheer possibility that a defendant acted unlawfully. These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those

1   that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79. Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Clement 1, LLC v. Scottsdale Ins. Co.*, 2023 WL 4492422, at *2 (C.D. Cal. July 11, 2023). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Twombly*, 550 U.S. at 557 (citation omitted). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.' " *Johnson v. Riverside Health Care System, LP*, 534 F.3d 1116, 1121-1122 (9th Cir. 2008)

**B.    Plaintiff's Factual Allegations Do Not Meet the Standard to State a Claim Against Touzi Defendants.**

In reviewing the seven instances Touzi Defendants are mentioned, it is clear Plaintiff's Complaint fails to meet the foregoing legalstandard. To meet the standards of fraudulent transfer, Plaintiff must allege (1) a conveyance (2) was made by each Touzi Defendant with the actual intent to hinder, delay, or defraud. *See* 11 U.S.C. § 548(a)(1)(A).

In the first instance, Plaintiff alleges Tony Diab "caused LPG to sell receivables on 719 files for $2,070,000 to Teracel, an entity owned and operated by Touzi, which is headed by Eng Taing, one of Validation Partnership and investors, and his brother, Heng Taing." Compl. at ¶ 59. The alleged sale of files was a purported sale to Teracel – not to Touzi or Mr. Taing. Teracel Blockchain Fund II, LLC ("Teracel") has already been sued herein as a defendant. Compl. at ¶ 25. Further, Plaintiff does not allege any facts that support a claim that transfers to Teracel constituted transfers to Touzi or Mr. Taing. *See generally*, Complaint. That LPG and/or Tony Diab twice sold the same receivables to Teracel and Validation Partners does not amount to liability for fraudulent transfer against Touzi or Mr. Taing.[1]

---

[1] In fact, the Complaint alleges LPG did not own (and therefore could not convey) Validation Partners' receivables. Compl. at ¶ 59 ("643 of those files had been already purchased by Validation Partners"). Therefore, not only

3

The Complaint contains the heading "F. Transfers to Alter Egos and Fraudulent Conveyances." Compl., pg. 12, ln. 9. One would expect that Plaintiff would make factual allegations against Touzi Defendants in the paragraphs to follow that establish his prima facie case that Touzi Defendants received a fraudulent conveyance. However, Plaintiff fails to do so.

Rather Plaintiff alleges only that transfers were made to "Alter Egos" and "Fraudulent Transferees." Compl. at ¶¶ 66 and 67. Plaintiff alleges that "new law firms are alter egos of the Debtor and include Oakstone and Phoenix (collectively, the 'Alter Egos')." Compl. at ¶ 66, lns. 11 – 12. Neither of the Touzi Defendants are named by Plaintiff as "Alter Egos" nor are they law firms. Therefore, the Touzi Defendants are not an "Alter Ego" that allegedly received transfers from the Debtor.

Plaintiff also does not allege facts that support a claim that Touzi Defendants are among the "Fraudulent Transferees". The only parties named as "Fraudulent Transferees" are: "Greyson, Gallant, its affiliate Center Pointe Law Group, PC ("Center Pointe") and CLG." Compl. at ¶ 67, lns. 18 – 19.

Simply put, there are no factual allegations that either Touzi or Mr. Taing were transferees or recipients of property from the Debtor as a result of a fraudulent conveyance. . Further, the conclusory factual allegation that Teracel purchased receivables from LPG has nothing to do with Touzi Defendants. Plaintiff does not allege facts that support that Teracel's purported purchase of receivables constitute a fraudulent conveyance of the Debtor's property to either Touzi or Mr. Taing.

Secondly, concerning Touzi, Plaintiff alleges Touzi "continues to process and duplicate ACH electronic funds transfers in its own name and/or in the name of Oakstone via ACH payment processors." Compl. at ¶ 60. Plaintiff continues, "Diab, Eng Taing, Heng Taing, **and/or** Touzi have used other ACH processing companies including Payliance (using a Guardian merchant account), among others, to process and transfer property of the Estate through Diab's network of Alter Egos and Fraudulent Transferees." Compl. at ¶ 71 (emphasis added). While Touzi Defendants vehemently deny this allegation, an allegation that Touzi processes (or processed) ACH transfers and that Mr.

---

was there not a conveyance by the debtor, Validation Partners would arguably be the only party with standing to sue for those files it purportedly owned.

4

Taing *may have* participated (as indicated by "and/or") does not rise to the level of pleading required for fraudulent transfer. Plaintiff fails to allege facts that support a claim that Touzi Defendants had knowledge of any fraudulent nature of any transfer, that either agreed to be involved in any fraudulent transaction nor does it allege a relationship between the debtor (LPG) and Touzi Defendants beyond that of an alleged processor. Without express factual allegations that support a finding of fraudulent intent on behalf of the Touzi Defendants, Plaintiff's alleged claim for fraud fails under *Twombly*.

Lastly, in reference to Mr. Taing, Plaintiff makes the conclusory allegation that files were sold to "effectuate" Mr. Taing's alleged "Ponzi scheme." Compl. at ¶ 61. Plaintiff provides no basis for this accusation or Mr. Taing's alleged involvement in a "Ponzi scheme." *See* Compl. at ¶¶ 46-73. The United States Securities and Exchange Commission ("SEC") defines a "Ponzi scheme" as "an investment fraud that involves the payment of purported returns to existing investors from funds contributed by new investors."[2] Nowhere in the Complaint does the Plaintiff alleges Mr. Taing (or Touzi Capital) paid "purported returns to existing investors from funds contributed by new investors." *See generally*, Compl. This statement amounts to pure inflammatory speculation without factual allegations to substantiate it.

None of the above allegations made by Plaintiff in the Complaint constitute a plausible claim for fraudulent transfer.[3] Further, for turnover, nowhere in the Complaint does Plaintiff identify what (if anything) or any alleged amount of Estate Property he alleges is in Touzi Defendants' possession.

Accordingly, Touzi Defendants have not been placed on fair notice of what the claims against each of them are and the alleged grounds for liability upon which each claim rests. While Touzi Defendants make no objection to compliance with this Court's preexisting rulings on a temporary injunction and/or preliminary injunction, they ask the Court to dismiss Plaintiff's claims against Touzi

---

[2] SEC Enforcement Actions Against Ponzi Schemes (2019), https://www.sec.gov/spotlight/enf-actions-ponzi.shtml.

[3] For constructive fraudulent transfer, which Plaintiff also pleads, Plaintiff must allege (1) a transfer to Touzi Defendants of LPG's interest in property, (2) within two years prior to the commencement of LPG's bankruptcy case, (3) for less than reasonably equivalent value, and (4) at a time when LPG was insolvent. *See* 11 U.S.C. §§ 548(a)(1)(B). Plaintiff also fails to meet this standard. Plaintiff's Complaint alleges a sale to Teracel, but does not allege LPG transferred anything to Touzi Defendants, let alone for less than reasonably equivalent value. *See* Compl. at ¶¶ 59, 60, 61, 71.

Case 8:23-ap-01046-SC    Doc 96    Filed 07/24/23    Entered 07/24/23 13:39:44    Desc
Main Document    Page 11 of 19

Defendants for injunctive relief, fraudulent transfer, and turnover for failure to state a claim for which relief can be granted.

**C.    Plaintiff's Claims are barred by the Doctrine of *In Pari Delicto*.**

Plaintiff's claims for relief in this action are subject to dismissal under the doctrine of *in pari delicto*. The doctrine of *in pari delicto* provides that "when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed *in pari delicto*, and the law will aid neither, but rather, will leave them where it finds them." *Goldman v. Dardashti (In re Tootian)*, 634 B.R. 361, 373 (Bankr. C.D. Cal. 2021). Put more simply, "[t]he doctrine of *in pari delicto* is an affirmative defense that generally 'prohibits plaintiffs from recovering damages resulting from their own wrongdoing.'" *ShengdaTech Liquidating Trust v. Hansen, Barnett & Maxwell, P.C., et al. (In re ShengdaTech, Inc.)*, 519 B.R. 292, 301 (D. Nev. 2014) (quoting *USACM Liquidating Trust v. Deloitte & Touche, LLP*, 764 F.Supp.2d 1210, 1229 (D. Nev. 2011)). As noted in *Sugarman v. Taylor (In re Yellow Cab Coop., Inc.)*, 602 B.R. 357, 360 (Bankr. N.D. Cal. 2019), "Section 3517 of the California Civil Code generally codifies the doctrine of *in pari delicto* or unclean hands: 'No one can take advantage of his own wrong.'"

As it relates to situations when a bankruptcy trustee is the plaintiff, California courts applying the *in pari delicto* doctrine examine: (1) whether the misconduct at issue can be "imputed to the corporate" debtor; (2) whether the debtor's "misconduct can be imputed to the bankruptcy trustee"; and (3) "whether the misconduct is sufficiently related to the causes of action asserted" by the trustee in bankruptcy. *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP*, 133 Cal. App. 4th 658, 679 (2005) [citations omitted]. An analysis of the factors in the *Peregrine* decision demonstrates that doctrine should be applied in this case and compels the conclusion that the Complaint should be dismissed.

**1.    First *Peregrine* Factor: Imputation of Misconduct to the Debtor.**

In *Peregrine,* the court stated that "[i]t is settled California law that knowledge of an officer of a corporation within the scope of his duties is imputed to the corporation." *Peregrine*, 133 Cal.App.4th at 679 [internal quotation and citation omitted]. Generally, "the doctrine of *in pari delicto* applies if, under agency principles, the unlawful actions of an agent of the corporation are imputed to

**6**

the corporation." *Mosier v. Stonefield Josephson, Inc.*, 2011 WL 5075551, at *4 (C.D. Cal. Oct. 25, 2011) (citing *In re Crown Vantage, Inc.*, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003), *aff'd sub nom. Crown Paper Liquidating Tr. v. PricewaterhouseCoopers LLP*, 198 F. App'x 597 (9th Cir. 2006)).

In *Peregrine*, one of the primary perpetrators of the Ponzi scheme at issue was a co-owner and the sole controller of the corporation used in the scheme. These facts lead the court in *Peregrine* to conclude that the conduct of the owner/controller was properly imputed to the corporation. Based on the allegations in the Complaint, there can be no serious dispute that Diab served as the primary decision maker and agent for the Debtor. Therefore, under *Peregrine*, Diab's acts are properly be imputed to the Debtor . *See Compl*. ¶¶ 50 – 54, 59 – 61, 66 – 69. (These allegations in the Complaint are quoted extensively below).

Touzi Defendants are cognizant that under the adverse interest exception, "where corporate agents act in a manner adverse to the interests of the corporation, the actions of the agents are not imputed to the corporation." *Uecker v. Wells Fargo Capital Finance, LLC (In re Mortg. Fund '08 LLC)*, 527 B.R. 351, 368 (N.D. Cal. 2015). "In other words, if an officer's or director's alleged fraud was 'on behalf' of the company, it would be imputed to the company and *in pari delicto* would apply; whereas, if the fraud was 'against' the company, the alleged fraud would not be imputed to the company." *In re Infinity Bus. Grp., Inc.*, 612 B.R. 76, 137 (Bankr. D.S.C. 2019), *aff'd*, 628 B.R. 213 (D.S.C. 2021), *aff'd*, 31 F.4th 294 (4th Cir. 2022).

However, there is an exception to the "adverse interest exception", which is commonly referred as the "sole actor" exception. Based on the allegations in the Complaint, the sole actor exception applies here, and therefore Plaintiff's the adverse interest exception to the *in pari delicto doctrine* is inapplicable. The United States District Court for the Northern District of California explained the sole actor exception as follows:

> *"California courts have recognized a limited exception to the rule that the acts of an officer acting adversely to a company will not be attributed to it. In Peregrine, the court imputed the fraudulent conduct of an officer and sole-shareholder to the corporation in spite of the fact that his actions were adverse to it. 133 Cal. App. 4th at 679, 35 Cal. Rptr. 3d 31. The court reasoned that because the perpetrator of the fraud "was also the owner and sole person in control of [the corporation], his fraud is properly imputed to [the corporation]." Id. Courts have declined to impute this*

7

*exception, however, where it has not been established that all relevant decision makers for the corporation were engaged in the fraud. See Casey v. U.S. Bank Nat'l Ass'n, 127 Cal. App. 4th 1138, 1143, 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005). Thus, finding that a corporation is barred from recovery on the basis of unclean hands is appropriate at the summary judgment stage only if the undisputed evidence meets the standard set forth in Peregrine, namely, that those who perpetrated the fraud solely control the corporation."*

*McHale v. Silicon Valley Law Group*, 2011 WL 6990187, at *6 (N.D. Cal. Dec. 14, 2011). Further, in *In re California TD Investments, LLC*, 489 B.R. 124, 130 (Bankr. C.D. Cal. 2013), the Court observed that "the weight of authority applies the exception if the agent/officer was either the sole shareholder *or* the sole manager of the corporation." 489 B.R. at 131 [emphasis in original].

Taken as true, the allegations in the Complaint establish that the Debtor was controlled by Diab, that Diab was the mastermind behind all of the illegal and improper conduct which allegedy harmed this bankruptcy estate and its creditors, and therefore was the "sole actor" for purposes of the *Peregrine* analysis. Below are excerpts from the Complaint that demonstrate that the first *Peregrine* factor is satisfied by the factual allegations in the Complaint itself:

> ***"B. LPG's Ownership and Management***
>
> *50. After being disbarred in both California and Nevada for forging a judge's signature and stealing large amounts of client funds, Diab transferred his existing debt resolution practice to LPG. LPG is a law firm that provides consumer debt resolution. LPG services more than 50,000 customers across the United States, with annual revenue estimated to total $150,000,000 in 2022.*
>
> *51. Despite having been disbarred, Diab has controlled and operated LPG since its inception. However, Diab has endeavored to conceal his control of LPG. For example, Diab requires LPG's employees to call him "Admin," and the name plate on his desk reads, "I don't work here."*
>
> *52. To pull this off, Diab rents March's law license. March masquerades, at times, as the managing partner of LPG but exercises no actual management or control. In fact, Diab sometimes impersonates March and regularly signs March's signature on contracts. LPG's primary DocuSign account goes to Diab's email address, admin@lpglaw.com, where Diab signs contracts as Daniel March. For use of his law license, March receives an annual salary of $600,000 in addition to irregular bonuses.*
>
> *53. March's predecessor at LPG was John Thompson. Thompson was the original sole shareholder of LPG from February 2019 to November 2019. But he conveyed interest in LPG to March in November 2019 due to concerns about his and LPG's potential liability. Diab has impersonated Thompson on many matters representing clients in an attorney capacity. One such impersonation was in signing that certain Service Application and Service Agreement, submitted by LPG to Credit Reporting Services, LLC.*

...

**D. Diab's Scheme**

59. After selling the aforementioned receivables to Validation Partners and other factoring companies, Diab caused LPG to sell receivables on 719 files for $2,070,000 to Teracel, an entity owned and operated by Touzi, which is headed by Eng Taing, one of Validation Partner's investors, and his brother, Heng Taing. Out of the 719 files purchased by Teracel, 643 of those files had been already purchased by Validation Partners. Despite LPG never receiving a payment from Teracel for the purchase of these files, account receivables on behalf of those files are being paid out directly to Teracel.61. All of these files were resold without Validation Partners' knowledge or consent. Yet, thousands of files have been doubly sold in this manner, effectuating Diab and Eng Taing's Ponzi scheme to defraud creditors.

...

**F. Transfers to Alter Egos and Fraudulent Conveyances**

66. In addition to diverting millions of dollars to third parties, Diab has transferred LPG's entire business to new law firms free of LPG's obligations to its creditors. These new law firms are alter egos of the Debtor and include Oakstone and Phoenix (collectively, the "Alter Egos"). As he did with LPG, Diab controls and operates the Alter Egos, despite them being nominally owned by licensed attorneys from which Diab "rented" their license to practice law in return for unsustainable salaries.

67. In addition to fraudulent client file transfers to the Alter Egos, described above, Trustee is informed and believes and based thereon alleges that Diab sold with little or no consideration or fraudulently transferred additional LPG client files to Greyson, Gallant, its affiliate Center Pointe Law Group, PC ("Center Pointe") and CLG without client consent in exchange for a right to receive a percentage of the revenue stream generated by those files (the "Fraudulent Transferees").

68. In an effort to make LPG appear insolvent, in February 2023, Diab purchased a shell corporation and the website domain phoenixlaw.co and registered the business with the Better Business Bureau. Similarly, around the same time, Diab set up Oakstone, to run LPG's business through these new entities. Diab's actions are contrary his testimony at the 341(a) meeting of creditors where Diab testified that LPG was not able to afford to service the same clients through LPG.

69. At or around the Petition Date, Diab admitted that LPG had transferred or sold approximately 15,000 client files to Oakstone (approximately $4.2 million in revenue), 12,000 files to CLG (approximately $3.3 million in revenue), and the remaining files, approximated at slightly less than 40,000, to Phoenix (approximately $11.2 million in revenue).

...

### G. Diab's Control over LPG's Payment Processing

*72. LPG's monthly revenue from client files is primarily received via ACH payments. In order to process ACH payments, LPG is required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab has enlisted numerous ACH processing companies1 in order to easily switch between different vendors and quickly transfer millions of dollars of LPG funds to entities he controls, including but not limited to Vulcan, Prime Logix, Greyson and/or Coast Processing, generally in less than three days from ACH pull, without oversight and detection and to avoid payment disputes and complications with the vendor itself. Notably, LPG does not have service contracts with EPPS or Marich Bein, among potential others who have processed the majority of LPG's ACH payments. The side deals between Diab and Marich Bein, created to avoid a lawsuit against LPG, evidences Diab's continued influence and control over the companies processing LPG and its Alter Egos' ACH EFTs—property of the Estate."*

In sum, based solely on Plaintiff's allegations, it is proper to find that Mr. Diab was the sole manager and individual that directed and authorized all of the alleged transfers and transactions complained of by Plaintiff. Therefore, his misconduct as described in the Complaint should be imputed to the Debtor..

### 2. Second *Peregrine* Factor: Imputation of Misconduct to the Trustee

*In pari delicto* applies to a trustee to the same extent as it would to the debtor under California law. Thus, in *Rund v. Lee (In re Amergence Technology, Inc.)*, 2016 WL 4069550, at *2 (Bankr. C.D. Cal. July 27, 2016). In *Rund v. Lee (In re Amergence Technology, Inc.)*, 2016 WL 4069550, at *2 (Bankr. C.D. Cal. July 27, 2016), the court stated" 'Although the Ninth Circuit has not directly addressed the issue, every circuit to have considered the question has held that a defendant sued by a trustee in bankruptcy may assert the defense of *in pari delicto*, if the jurisdiction whose law creates the claim permits such a defense outside of bankruptcy.' " (quoting *Uecker v. Wells Fargo Capital Finance, LLC (In re Mortgage Fund '08 LLC)*, 527 B.R. 351, 366–367 (N.D. Cal. 2015)) [internal quotation omitted]. Because California law recognizes the doctrine of *in pari delicto*, the Debtor's conduct should be imputed to the Trustee under the second *Peregrine* factor.

### 3. Third *Peregrine* Factor: Relation of the Misconduct to the Causes of Action Asserted

Under the third *Peregrine* factor, "[t]he question is whether the unclean conduct relates directly to the transaction concerning which the complaint is made, i.e., to the *subject matter involved*,

and not whether it is part of the basis upon which liability is being asserted." *Peregrine*, 133 Cal. App. 4th at 681 [emphasis in original]. The court in *Peregrine* concluded that the company's, and its officer's, "orchestration of the Ponzi scheme that defrauded investors is intimately related to the professional malpractice claims before the court," which were "based entirely on the assertion that [the law firm's] professional advice and tactics enabled [the debtor and its officer] to perpetuate their fraud on investors." *Id.*

Without doubt, the allegations of Diab is intimately related to – and directly the cause of – fraudulent conduct that is alleged in the Complaint. Although Plaintiff does allege some vague involvement of other third parties in certain aspect of Diab's misconduct, these other parties are very minor players in Diab's overall scheme. Plaintiff's allegations leave no doubt that Plaintiff targets Diab as the mastermind of all of the alleged harm to creditors complained of in this action.

For the foregoing reasons, the Complaint also should be dismissed under the doctrine of *in pari delicto*.

///

///

///

## IV.

## **CONCLUSION**

For these reasons, Plaintiff failed to meet his burden to state a claim for which relief may be granted. Accordingly, Touzi Defendants respectfully request the Court (i) grant Touzi Defendants' Motion to Dismiss without leave to amend, (ii) dismiss the claims pleaded against Touzi Defendants with prejudice, and (ii) grant any and all further relief to which each may be entitled.

Dated: July 24, 2023.                          Respectfully submitted,

/s/ Daniel H. Reiss
Daniel H. Reiss
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK, LLP**
2818 La Cienega Avenue
Los Angeles, California 90034

Rusty O'Kane
Alexandra W. Wahl
**WICK PHILLIPS GOULD & MARTIN, LLP**
3131 McKinney Avenue, Suite 500
Dallas, Texas 75204
Telephone: (214) 692-6200
Facsimile: (214) 692-6255

**ATTORNEYS FOR DEFENDANTS ENG TAING AND TOUZI CAPITAL, LLC**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **MOTION BY DEFENDANTS ENG TAING AND TOUZI CAPITAL, LLC TO DISMISS COMPLAINT UNDER FED. RULE BANK. PROC. 7012 AND FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 24, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com
- Christopher Celentino    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- Christopher Ghio    christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- Meredith King    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- David S Kupetz    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- Daniel A Lev    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- Richard A Marshack (TR)    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Douglas A Plazak    dplazak@rhlaw.com
- Ronald N Richards    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- Jonathan Serrano    jonathan.serrano@dinsmore.com
- Howard Steinberg    steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- Andrew Still    astill@swlaw.com, kcollins@swlaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Johnny White    JWhite@wrslawyers.com, jlee@wrslawyers.com

**2. SERVED BY UNITED STATES MAIL**: On **July 24, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 24, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 24, 2023 | D. Woo | /s/ D. Woo |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                          **F 9013-3.1.PROOF.SERVICE**