1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Jonathan Serrano (State Bar No. 333225)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone: 619.400.0500
   Facsimile: 619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  jonathan.serrano@dinsmore.com

7  Proposed Special Counsel to Richard A. Marshack

8

9                    UNITED STATES BANKRUPTCY COURT

10              CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

11

12  In re:                                    Case No.: 8:23-bk-10571-SC

13  THE LITIGATION PRACTICE GROUP P.C.,       Chapter 11

14      Debtor.                               **TRUSTEE'S NOTICE OF MOTION AND
                                              <u>EMERGENCY</u> MOTION (I) FOR ENTRY
15                                            OF INTERIM ORDER: (A)
                                              AUTHORIZING THE TRUSTEE TO
16                                            OBTAIN POST-PETITION FINANCING
                                              AND SUPERPRIORITY
17                                            ADMINISTRATIVE EXPENSE CLAIM
                                              PURSUANT TO 11 U.S.C. § 364; AND (B)
18                                            SETTING FINAL HEARING; AND
                                              PURSUANT TO FINAL HEARING, (II)
19                                            FOR ENTRY OF FINAL ORDER
                                              APPROVING POST-PETITION
20                                            FINANCING ON A FINAL BASIS;
                                              MEMORANDUM OF POINTS AND
21                                            AUTHORITIES; DECLARATION OF
                                              RICHARD A. MARSHACK IN SUPPORT
22                                            THEREOF; AND EXHIBITS**

23                                            Date:  [To be set]
                                              Time:  [To be set]
24                                            Judge: Hon. Scott C. Clarkson
                                              Place: Courtroom 5C
25                                                   411 W. Fourth Street
                                                     Santa Ana, CA  92701
26

27

28

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ 3

I.   INTRODUCTION ................................................................................................................... 3

II.  FACTUAL BACKGROUND .................................................................................................. 4

    A.   The Bankruptcy Case ..................................................................................................... 4

    B.   The Adversary Proceeding, TRO, and Preliminary Injunction ...................................... 4

    C.   The Debtor's Business .................................................................................................... 5

    D.   Secured Liabilities .......................................................................................................... 5

    E.   The Trustee's Need for Funds ........................................................................................ 6

    F.   The Note .......................................................................................................................... 6

    G.   The Lender's Recent Funding of Payroll ....................................................................... 7

III. ARGUMENT ........................................................................................................................... 8

    A.   The Court Should Authorize the Trustee to Obtain Credit Pursuant to 11 U.S.C. § 364. ............................................................................................................................................ 8

    B.   Notice With Respect to the Interim Order ................................................................... 12

    C.   Notice With Respect to Final Hearing ......................................................................... 12

    D.   Waiver of Rule 6004(a) and (h) ................................................................................... 12

IV.  CONCLUSION ..................................................................................................................... 13

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL SCHEDULED CREDITORS AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on June 16, 2023, Richard A. Marshack, the Chapter 11 Trustee (the "<u>Trustee</u>") for the bankruptcy estate (the "<u>Estate</u>") of The Litigation Practice Group P.C. (the "<u>Debtor</u>" or "<u>LPG</u>") in the above-captioned bankruptcy case (the "<u>Case</u>"), filed a motion (the "<u>Motion</u>"), **on an emergency basis**, for entry of an interim order and final order (1) authorizing the Trustee to obtain superpriority financing, (2) scheduling a final hearing; and (3) granting related relief, as further described in the Motion.

**NOTICE IS FURTHER GIVEN** that the Motion is made pursuant to 11 U.S.C. §§ 105(a), 363, and 364 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure on the grounds that the requested relief is necessary to preserve the value of the Debtor's business by paying both legal and nonlegal costs to operate the business and paying past due expenses including payroll, DebtPayPro software, mail services, and refunds. Nothing herein will allow or authorize the payment of any of the Estate's professional fees, and all expenses must be approved by the Trustee.

**NOTICE IS FURTHER GIVEN** that, in accordance with Fed. R. Bankr. P. 4001(c)(1)(A), the proposed order is attached as **Exhibit 1** hereto and a copy of the proposed Super-Priority Promissory Note is attached as **Exhibit 2** to the Trustee's Declaration.

**NOTICE IS FURTHER GIVEN** that the Motion is based on (a) this Notice of Motion and Motion, Memorandum of Points and Authorities, and Declaration of Richard A. Marshack, (b) the pleadings on file in this Case and related adversary proceeding of which the Court is requested to take judicial notice, and (c) such other pleadings and evidence as may be properly submitted in connection with the Motion.

**NOTICE IS FURTHER GIVEN** that, pursuant to Rule 9075-1 of the Local Bankruptcy Rules of the U.S. Bankruptcy Court for the Central District of California, the Trustee seeks to have this Motion heard on an emergency basis because the Trustee needs the funds to pay payroll (mostly related to employee time and expense dedicated to compliance with the TRO in this Case) and other operating costs on June 16, 2023, or as soon as possible. Once the Court has scheduled a hearing,

the Trustee will provide separate notice of the hearing date and time and the deadline for filing any opposition to the Motion.

**NOTICE IS FURTHER GIVEN** that, in accordance with Rules 4001(c)(1)(A), the following table summarizes the significant terms of the proposed Super-Priority Promissory Note.

| Material Term or Type of Provision | Summary of Provision | Location in Super-Priority Promissory Note | Location in Order |
|---|---|---|---|
| Amount | $800,000 in the aggregate, which includes an initial advance of $350,000 and a subsequent advance of up to $450,000 | § 1 | ¶ 3 |
| Interest Rate | 8% per annum | § 1 | ¶ 3 |
| Due Date | Full balance, including all accrued interest, is due and payable in one year from the Start Date | § 2 | ¶ 3 |
| A grant of priority on property of the estate under § 364(c) or (d) | Superpriority administrative expense claim | § 4 | ¶ 2 |
| Allocation of Payments | Payments first credited to interest due and any remainder will be credited to principal | § 5 | ¶ 3 |

Dated: June 16, 2023

Respectfully submitted,

DINSMORE & SHOHL LLP

By:     /s/ Jonathan Serrano
    Christopher B. Ghio
    Christopher Celentino
    Jonathan Serrano
    Proposed Special Counsel to Richard A. Marshack, Chapter 11 Trustee

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Richard A. Marshack, the Chapter 11 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of The Litigation Practice Group, L.P. (the "Debtor" or "LPG") hereby submits this motion (the "Motion") for entry of an interim order and final order (1) authorizing the Trustee to obtain superpriority financing, (2) scheduling a final hearing; and (3) granting related relief. Financing is necessary to preserve the value of the Debtor's business by paying both legal and nonlegal costs to operate the business and paying past due expenses including payroll (for employee time dedicated primarily to provision of books, records and data ordered by the Court in its TRO issued in the related adversary proceeding), DebtPayPro (client management software that automates the dispute process, facilitates client communications, and tracks payment information), mail services, and refunds. For example, for the month of June 2023, the Trustee anticipates approximately $1.5 million in non-legal costs and approximately $1.5 million in legal costs for attorneys in multiple jurisdictions who are protecting the interests of the consumer clients of the Estate. In addition, approximately $1 million in past due expenses remain outstanding.

Although the Trustee anticipates collecting approximately $5.5 million from consumer client payments during this period based on historical collection rates, the Trustee does not have readily available funds at this time to ensure that the Debtor's business will continue to operate, mostly due to the fact that the Office of the United States Trustee (the "UST") has objected to the use of any funds held by the Debtor and funded from consumer client payments for services to fund the payroll and other operating costs. Thus, without consent to use consumer client payments and without the proposed financing, the Trustee will not be able to fund payroll and pay other operating expenses that are past due and scheduled for payment, hindering the Trustee's ability to ensure -- in accordance with this Court's admonition on the record on June 12, 2023 to "protect" the consumer clients from worsening conditions -- that LPG's consumer clients get the debt relief they were promised while maximizing the value of the Estate in anticipation of a sale of assets pursuant to which the Estate will recoup a fund from which allowed consumer creditor claims can be paid. Nothing herein will allow

3

or authorize the payment of any Estate professional fees, and all business expenses must be approved by the Trustee.

## II. FACTUAL BACKGROUND

### A. The Bankruptcy Case

On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy case.

After the Office of the United States Trustee (the "UST") filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Docket No. 44], the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Docket No. 58] on May 4, 2023, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63], on May 8, 2023, the Plaintiff accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time.

### B. The Adversary Proceeding, TRO, and Preliminary Injunction

On May 25, 2023, the Trustee initiated an adversary proceeding, *Marshack v. Diab et al.* (Adv. No. 8:23-ap-1046-SC), against LPG's alter egos, fraudulent transferees, and other related parties. In the complaint, the Trustee alleged six causes of action for injunctive relief; avoidance, recovery, and preservation of actual and constructive fraudulent transfers; and turnover. *See generally* Compl., Adv. ECF No. 1. On May 26, 2023, the Court entered the *Amended Order on Trustee, Richard Marshack's Omnibus Emergency Motion for: 1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; 2) Preliminary Injunction; 3) Lock-Out; 4) Re-Direction of United States Parcel Services Mail; 5) Order to Show Cause re Compliance With Court Order; and 6) Other Relief as Necessary to Efficient Administration of This Matter* [Adv. Docket No. 21] (the "TRO"), authorizing

4

turnover of estate property and recorded information, lock-out, and an order to show cause re compliance with court order, among other relief. Then, on June 12, 2023, the Court held a hearing re preliminary injunction, whereat the Court granted a preliminary injunction, thereby extending the TRO with certain modification. The preliminary injunction order has been lodged with the Court.

### C. The Debtor's Business

LPG held itself out as a law firm that provided consumer debt resolution. Before its clients were fraudulently transferred away to other entities on the eve of its bankruptcy, LPG serviced approximately 50,000 customers across the United States. According to its Schedules and Statements of Financial Affairs, its annual revenue in 2022 exceeded $150,000,000.

To service its clients, LPG utilized software including DebtPayPro to automate the dispute process, facilitate client communications, and track payment information. For instance, the correspondence sent on behalf of clients to creditors, collection agencies, and/or credit bureaus was generated primarily by automated and generic templates and after approval was sent via U.S. Mail, facsimile, and/or email.

Some cases resulted in the disputed debts being corrected on the client's credit report, some resulted in successful challenges based on consumer protection laws, and others resulted in debt resolution. Pursuant to the legal service agreements executed between the Debtor and its clients, the client was responsible to pay any resolution amount in addition to the fees payable to the Debtor. In some instances, the creditors would engage in unfair debt collection practices and use LPG's clients and LPG would file a lawsuit in an effort to eliminate a disputed debt. LPG thus required numerous legal and non-legal employees and independent contractors to service its clients, gather documents for counsel, appear as counsel of record, and negotiate resolutions of debts.

### D. Secured Liabilities

On the Debtor's Schedule D [Docket No. 33], it listed three secured creditors—(a) Diverse Capital LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000—with secured claims totaling $6,274,810. In addition to the secured creditors listed on Schedule D, there are numerous other UCC-1 financing statements appearing of record in a search of the California

Secretary of State's database. Attached as **Exhibit 3** is a true and correct copy of a recent search reflecting the other financing statements of record.

### E. <u>The Trustee's Need for Funds</u>

For the month of June 2023, the Trustee anticipates approximately $1.5 million in non-legal costs and approximately $1.5 million in legal costs. In addition, approximately $1 million in past due, post-petition expenses remain outstanding. Although the Trustee anticipates collecting approximately $5.5 million of consumer client payments (all of which is held in blocked accounts) during this period based on historical collection rates, because of the US Trustee's objection to the use of funds for any purpose, the Trustee does not have readily available funds at this time to ensure that the Debtor's business has the funding it needs to continue to operate to make a smooth, non-destabilizing transition for its consumer clients.

If the Court approves the Loan, the Trustee will pre-approve and authorize all uses of funds. In the event that the Trustee is unavailable, due to being on vacation or any other reason, the Trustee seeks authority for a designee (such as the Estate's field agent, Lori Ensley, or one of his law firm partners, Ed Hays, David Wood, or Laila Masud) to approve and authorize all uses of funds. All ordinary business expenses approved by the Trustee will be paid for by a trustee check. No payment of Estate professional fees will be allowed or authorized through this Motion and corresponding order, just ordinary payroll and other operational expenses.

Without being able to obtain post-petition financing for purposes of operations, the Trustee will not be able to fund payroll and pay other operating expenses that are past due and scheduled for payment, hindering the Trustee's ability to ensure LPG's consumer clients get the debt relief they were promised and destroying his ability to seek a sale of the Debtor's business as a going concern.

### F. <u>The Note</u>

Subject to Court approval, the Trustee and Resolution Ventures (the "<u>Lender</u>") have negotiated for a written credit facility as set forth in that certain Super-Priority Promissory Note (the "<u>Note</u>") in substantially the same form as the note attached to the Trustee's Declaration as **Exhibit 2**. The negotiations were conducted at arm's length over a period of approximately three days, and began within minutes of the UST's indication that it would oppose any use of the consumer client funds,

even those incurred by employees providing data and information to the Trustee in compliance with the Court's TRO. The proposed Note contains reasonable terms. The Lender has agreed to advance up to $800,000 in the aggregate, including an initial advance in the amount of $350,000 and a subsequent advance of up to $450,000, to fund operations for a limited period until a lawful disposition and sale can be approved by the Court. Without limiting the terms set forth in the Note and the above chart required by Rules 4001(c)(1)(A) of the Federal Rules of Bankruptcy Procedure, the following is a brief summary of significant loan terms:

1. The loan amount is in the principal amount of up to $800,000 in the aggregate, which includes an initial advance in the amount of $350,000 and a subsequent advance of up to $450,000.

2. The interest rate is 8%.

3. The maturity date is one year from the Start Date.

4. The loan including all accrued interest will be due in full on the Due Date.

5. The loan will be afforded super administrative priority status (without prejudice for the Estate to obtain other super administrative priority loans).

The Trustee does not believe that any other financing than that offered by the Lender under the Note is available to him, particularly given the exigency of needing operating funds and the UST's position that Trustee cannot use the ACH revenues received from clients without violating the TSR. Trustee's attempts to locate alternative financing have been unavailing.

### G. The Lender's Recent Funding of Payroll

Payroll was due on June 16, 2023. Even though the Trustee is in receipt of more than $5 million, the UST contends that the Trustee may not use such funds without violating the TSR. Trustee does not necessarily agree with that assessment and preserves all arguments to the contrary, out of an abundance of caution. Taking the UST's position to heart and good faith desire to fashion a solution within those limitations and concerns raised by this Court, Trustee has decided to hold and segregate these funds and not seek authorization to use them to fund operations pending appropriate court determinations and orders. The Trustee recognizes that the vast majority of employee time, and therefore expense, was incurred to ensure compliance with this Court's TRO -- indeed, a significant portion of the Trustee's success in securing all of the data and records of the Debtor's business, and

that of its alter egos and fraudulent transferee affiliates was dedicated to such compliance. The UST has refused to authorize use of customer funds to compensate for such expenses. To cover the June 16, 2023, payroll, the Trustee's proposed operator/purchaser (who is also the proposed Lender) paid all employees from its own funds in the total amount of approximately $240,000.

By doing so, the Lender has subrogated to the administrative expense claims otherwise held by the employees that have provided post-petition services since the Trustee served the Court's TRO and taken control of the books, records and instrumentalities of operations. If the Court approves the proposed financing, the amounts advanced by Lender's direct payments to the employees will be subsumed into the amounts owed pursuant to the Note. This will permit the Estate to pay these amounts over time instead of having to pay such amounts to fund payroll due on June 16, 2023.

### III. ARGUMENT

#### A. The Court Should Authorize the Trustee to Obtain Credit Pursuant to 11 U.S.C. § 364.

Section 364 of the Bankruptcy Code allows the Court to authorize postpetition financing and expressly allows courts to authorize protections designed to assure repayment of postpetition loans. *Resolution Trust Corp, v. Official Unsecured Creditors Comm. (In re Defender Drug Stores, Inc.)*, 145 B.R. 312, 316 (9th Cir. BAP 1992). Section 364(a) of the Bankruptcy Code provides as follows:

> If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a). In addition, section 364(b) of the Bankruptcy Code provides as follows:

> The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a). Finally, section 364(c) of the Bankruptcy Code provides the following:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> **(1)** with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> **(2)** secured by a lien on property of the estate that is not otherwise subject to a lien; or

8

**(3)** secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

The Court has discretion to approve proposed postpetition financing, which should be exercised as long as the proposed financing does not leverage the bankruptcy process or its purpose and the benefit to the estate remains of paramount interest as opposed to the individual interests of the parties. *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). In this Case, the first tranche of the loan is a trade of 90+ administrative creditors for consolidation of claims in one.

Generally, courts apply a three-part test to determine whether a trustee or debtor in possession may obtain credit under section 364(c) of the Bankruptcy Code. *See In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL), 2016 Bankr. LEXIS 1927, at *34 (Bankr. S.D.N.Y. May 3, 2016). Under such test, a trustee or debtor may incur postpetition financing pursuant to section 364(c) of the Bankruptcy Code if it demonstrates that (a) it cannot obtain credit unencumbered or without superpriority status, (b) the financing is necessary to preserve assets of the estate, and (c) the terms of the loan are fair, reasonable and adequate. *See id.*; *In re Los Angeles Dodgers, LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011). Section 364(d) of the Bankruptcy Code authorizes a trustee or debtor in possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien if the trustee or debtor is unable to obtain such credit otherwise and the interests of secured creditors whose liens are being primed are adequately protected. 11 U.S.C. § 364(d)(1); *see also In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991).

Against this statutory backdrop, courts will evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing. *See, e.g.*, *Ames*, 115 B.R. at 40–41. A debtor in possession or trustee is generally permitted to exercise their business judgment consistent with their fiduciary duties when evaluating the necessity of proposed protections for a party extending credit under section 364 of the Bankruptcy Code. *Id.* at 38. The Court should give broad deference to the business decision of the Trustee, particularly with respect to the need for and proposed use of funds. *See, e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 448–49 (D. Co. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated

9

Case 8:23-bk-10571-SC    Doc 119    Filed 06/16/23    Entered 06/16/23 23:24:11    Desc
Main Document    Page 12 of 15

financing was necessary and reasonable for the benefit of the estate); *Ames*, 115 B.R. at 38 (with respect to postpetition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties").

Here, the Trustee seeks approval to obtain unsecured credit with priority over all other administrative expenses pursuant to section 364(c)(1) of the Bankruptcy Code. In his business judgment, the Trustee does not believe he can obtain credit unencumbered or without superpriority status due to the time constraints to keep the business open for a short period until sale by making payroll, and the amount of scheduled claims including UCC-1 filings of record with the Secretary of State. Scheduled secured claims total $6,274,810 and there appear to be many other liens as set forth in **Exhibit 3**. Scheduled priority unsecured claims total $374,060.04. The total amount of scheduled unsecured, non-priority claims exceeds $140 million.

Although the value of the Debtor's assets are much greater than the scheduled secured and priority unsecured claims, it is not likely more valuable than the general unsecured claims. The value of Debtor's assets could be in the $30 to $50 million range if the Trustee can preserve the going concern value of the business. In that respect, as the Court learned at the hearing concerning the preliminary injunction on June 12, 2023, the Trustee believes that a sale can be affected (a) with consumer client consent and (b) with reformation (to the extent appropriate or warranted, if even only out of an abundance of caution) of the fee retention agreement to comply with restrictions which may not otherwise legally apply. The Trustee has received the input from consumer creditors and other creditors who greatly prefer this approach -- which offers some hope of some payment to consumer creditors and all creditors -- to the draconian approach of "ushering" the consumer clients out the door, much like ushering nursing home residents into the street.

The proposed financing is crucial to preserve assets of the Estate because, without such funding, the Debtor would not be able to provide services to its consumer clients, or to engage the consumer clients in the lawful and consented transition to a law firm to assist in the fight against the aggressive debt collectors. If the Debtor's business ceased operations, all of the client contracts would have to terminate, all clients will be prejudiced at the hands of debt collection hawks, and there will be no funds from which one would expect those very creditors to be able to recover on their civil

10

claims against the Estate based upon the actions of former management. The worst case scenario promises that Debtor's former principals would continue to prey upon the consumer clients.

Value is maximized for the Estate if LPG, with its existing consumer clients, by continuing to operate on a going-concern basis. As such, the Trustee needs the funds to cover payroll and other operating costs, as soon as possible. Without the ability to operate, the Estate and its creditors will have little to no recourse for their investments in and claims against the Debtor. And, as noted, consumer clients will become prey once again. As such, the proposed financing is necessary to avoid immediate and irreparable harm to the estate and preserve the Debtor's ongoing business operations and the Estate's assets. Because the UST has objected to the Debtor's use of consumer credit funds to make the payroll, absent the proposed financing, requested herein, the Trustee will be unable to operate the Debtor's business and the Trustee will not be able to preserve the assets of the Estate.

Finally, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances and disparate bargaining power of both the debtor and potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds). Here, the terms of the Note were negotiated in good faith and at arm's length between the Trustee and Lender, resulting in an agreement designed to permit the Trustee to continue to operate the Debtor's business going forward and address the Debtor's immediate operational needs. The Lender has agreed to provide the Trustee with unsecured credit in the aggregate amount of up to $800,000 at 8% interest and an allowed superpriority administrative claim pursuant to section 364(c)(1). The Trustee believes that the proposed terms are reasonable and account for his need in obtaining the postpetition financing quickly. Based on the existing financial condition of the Debtor, having been looted by many of the Defendants named in the related adversary proceeding, and the totality of the relevant circumstances, the Trustee exercised sound business judgment in determining that postpetition financing proposed in the Note is appropriate and necessary under the circumstances. The Trustee does not believe that he would have been able to obtain postpetition financing from another source on terms more favorable than those described herein.

The requested interim relief and order are necessary to preserve the business as a going concern and thereby prevent immediate and irreparable harm to the Debtor's business and the Estate pending a final hearing.

### B.    Notice With Respect to the Interim Order

The Trustee submits that, given the circumstances surrounding the Debtor's financial condition and operations and the recent preservation of its property from alter egos and other fraudulent transferees, and the Estate's immediate need to obtain credit, an expedited hearing as contemplated by Fed. R. Bankr. P. 4001(c) is warranted.

### C.    Notice With Respect to Final Hearing

Pursuant to Fed. R. Bankr. P. 4001(c), the Trustee respectfully requests that he be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 15 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order granting this Motion, on interested parties. The Trustee submits that such notice constitutes sufficient notice of the final hearing pursuant to Fed. R. Bankr. P. 4001(c) and 2002.

### D.    Waiver of Rule 6004(a) and (h)

To implement the foregoing successfully, the Trustee requests that the interim order to be entered by the Court provide that notice of the relief requested herein satisfies Fed. R. Bankr. P. 6004(a) and that the Trustee has established cause to exclude such relief from the 14-day stay period under Fed. R. Bankr. P. 6004(h), with respect to the interim order submitted herewith so that there will be no interruption of the Debtor's business operations.

[*Remainder of Page Intentionally Left Blank*]

**IV.  CONCLUSION**

For all these reasons, the Court should enter the interim order, substantially in the form attached as **Exhibit 1** hereto, granting the relief requested herein and such other relief as is just and proper under the circumstances.

Dated: June 16, 2023                                  Respectfully submitted,

                                                DINSMORE & SHOHL LLP

                                                By:  /s/ Jonathan Serrano
                                                    Christopher B. Ghio
                                                    Christopher Celentino
                                                    Jonathan Serrano
                                                    Proposed Special Counsel to Richard A. Marshack,
                                                    Chapter 11 Trustee