CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
YOSINA M. LISSEBECK (201654)
yosina.lissebeck@dinsmore.com
JEREMY B. FREEDMAN (308752)
jeremy.freedman@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Telephone: 619.400.0500
Facsimile: 619.400.0501

Special Counsel to Richard A. Marshack,
Chapter 11 Trustee for the Bankruptcy Estate of
The Litigation Practice Group P.C.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC |
| Debtor. | Chapter 11 |
| RICHARD A. MARSHACK, Chapter 11 Trustee, Plaintiff, v. TONY DIAB, *et. al.* Defendants. | **DECLARATION OF CHRISTOPHER B. GHIO REGARDING CLAIMS OF THE ESTATE AGAINST TOUZI CAPITAL, LLC AND ENG TAING AND RELATED PARTIES MADE IN SUPPORT OF OPPOSITION OF CHAPTER 11 TRUSTEE, RICHARD A. MARSHACK TO MOTION TO DISMISS COMPLAINT AGAINST TOUZI CAPITAL, LLC AND ENG TAING PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) MADE APPLICABLE HEREIN BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012** |

I, CHRISTOPHER B. GHIO, declare as follows

1.      I am an attorney at law duly licensed to practice law by the State Bar of California and admitted to practice before this Court.  I am a partner with the law firm of Dinsmore & Shohl LLP, and Special Counsel to Richard A. Marshack, Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group P.C.  I make this declaration in support of the Opposition of Chapter 11 Trustee, Richard A. Marshack to Motion to Dismiss Complaint Against Touzi Capital, LLC and Eng Taing Pursuant to Federal Rule of Civil Procedure 12(B)(6) Made Applicable Herein By Federal Rule of Bankruptcy Procedure 7012.  I have personal knowledge of the facts contained in this declaration, and if called upon to testify, I could and would testify competently thereto.

2.      The Firm is Special Counsel to Chapter 11 Trustee Richard A. Marshack in the above-referenced bankruptcy case and this adversary proceeding.  In this capacity and since the Firm's retention, the Firm has investigated the Debtor's finances and financial transactions.  A major focus of this investigation has been the pre-petition dissipation of Debtor's assets.

3.      In the course of this investigation, I have interviewed individuals with knowledge of Debtor's pre-petition activities, including the transfer of various client files and the associated receivables from the Debtor to multiple third parties.

4.      As alleged in the Amended Adversary [Adv. Doc. No. 62], Touzi Capital, LLC ("Touzi") is owned and controlled by Eng Taing and his brother, Heng Taing.  Touzi, in turn, owns an interest in Teracel Blockchain Fund II, LLC ("Teracel").  Teracel purportedly purchased client files and associated receivables from Debtor.  Following this transfer, Touzi proceeded to initiate ACH withdrawals from Debtor's customers based on the information contained in those files.  Despite Teracel's purported acquisition of files and receivables from the Debtor, it has failed to answer or respond to the Trustee's complaint in this Adversary, which may indicate that it no longer has any assets.

5.      In the course of discussions with counsel for Touzi and Taing, which were not subject to any claim of settlement privilege, Attorney Alexandra Wahl claimed "Mr. Taing did not personally pull any ACH customer payments … and neither did Touzi".  This is proven false by the evidence gathered since that date and set forth in the concurrently filed Declaration of Christine Le.  The

communications from consumer clients of the Debtor that are attached to Ms. Le's Declaration clearly show that Touzi made ACH pulls in its own name presumably as a subsequent transferee of Teracel. Upon information and belief, I believe that Taing was a subsequent transferee of the funds Touzi withdrew from the bank accounts of LPG's consumer clients given that Touzi is a limited liability company.

6.    In these discussions, Ms. Wahl indicated that another entity owned by Touzi (and, in turn, through Touzi, by Eng Taing) PECC Corp. ("PECC") also received pre-petition transfers of Debtor property.

7.    Attached, hereto as Exhibit B-1 is the Accounts Receivable Purchase Agreement ("Agreement") dated January 11, 2023 between PECC and the Debtor.    The Agreement states that the Debtor purported to sell certain client files and their associated receivables to PECC to satisfy a promissory note dated August 26, 2022.  The principal amount of the note at execution is not stated, but the Agreement represents that the balance of this Note in January 2023 was in excess of $28,000,000.00.  The Trustee does not have a copy of this August 26, 2022 promissory note and does not know how these borrowed funds were used.

8.    The Trustee will either file a new Adversary Proceeding, or will seek leave to amend its Complaint in this Adversary Proceeding to assert a claim against PECC to avoid and recover the transfer of these files and any amounts collected therefrom as fraudulent and/or preferential transfers. PECC would then join Touzi, Eng Taing, and Teracel as a defendant in the Adversary Proceeding. Upon information and belief, the Trustee would seek to recover any amounts transferred to Touzi and/or Eng Taing as subsequent transferee(s) of PECC.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 31st day of August 2023 at San Diego, California.

/s/ Christopher B. Ghio_____
Christopher B. Ghio

# EXHIBIT B-1

DocuSign Envelope ID: 05493DBE-7BB4-4BB4-B98E-F590EF653E76

Case 8:23-ap-01046-SC    Doc 159-2    Filed 08/31/23    Entered 08/31/23 15:40:45    Desc
Declaration of Christopher Ghio ISO Opposition to Motion to Dismiss    Page 5 of 25

## ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This Accounts Receivable Purchase Agreement (this "***Agreement***") is made as of January 11, 2023 (the "***Effective Date***"), by and between PECC CORP., a California corporation (the "***Buyer***"), and THE LITIGATION PRACTICE GROUP P.C., a California Professional Corporation (the "***Seller***", and together with the Buyer, the "***Parties***").

## RECITALS

**WHEREAS**, the Parties have entered into that certain Secured Promissory Note dated August 26, 2022 (the "***Note***");

**WHEREAS**, the total amount that is outstanding and remains unpaid for the Note is $28,291,728.59 (the "***Note Amount***").

**WHEREAS**, in the regular course of business, the Seller originates account receivables through legal contracts with clients in connection with legal services provided by the Seller to its clients;

**WHEREAS**, the account receivables represent an obligation of clients to pay Seller for legal services provided by the Seller;

**WHEREAS**, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, these account receivables set forth on **Exhibit B** (the "***Purchased Accounts***");

**NOW, THEREFORE**, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

## ARTICLE 1.
## DEFINITIONS

Section 1.1    <u>Certain Definitions</u>.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

## ARTICLE 2.
## ASSIGNMENT AND TRANSFER AND CONSIDERATION

Section 2.1    <u>Assignment of the Purchased Accounts to the Buyer</u>.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts, free and clear of any Liens.  Except for the Purchased Accounts, the Buyer is not purchasing or acquiring any other assets of the Seller (collectively, the "***Excluded Assets***").

Section 2.2    <u>No Assumption of Liabilities</u>.  The Buyer will not assume, and shall not be responsible for, any Liabilities of the Seller of any kind, whether currently existing or hereinafter created (collectively, the "***Excluded Liabilities***").

Section 2.3    <u>Payment of Purchase Price</u>. The Buyer shall pay $28,291,360.00 for all Purchased Accounts (the "***Purchase Price***"). The Buyer shall pay the Purchase Price to the Seller at the Closing, payable by amendment to the Note to reduce the Note Amount by the Purchase Price.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Effective Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Professional Corporation, duly organized, validly existing, and in good standing under the Laws of the State of California and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law applicable to the Seller or any of the Purchased Accounts.

Section 3.6    Compliance with Laws.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    Legal Proceedings. Except for the matter of *Validation Partners LLC v. Litigation Practice Group PC, et al.*, Case No. 30-2022-01281911, there is no Action of any nature pending or, to the

Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements. No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8      <u>Condition of Purchased Accounts</u>. Each Purchased Account shall have received one prior payment from the primary account debtor and will be in good standing.

Section 3.9      <u>No Brokers</u>. No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions hereunder based upon arrangements made by or on behalf of the Seller.

## ARTICLE 4.
## REPRESENTATIONS AND WARRANTIES OF THE BUYER

The Buyer represents and warrants to the Seller, as of the Effective Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1      <u>Organization; Good Standing</u>. The Buyer is a corporation, duly organized, validly existing, and in good standing under the Laws of the State of California.

Section 4.2      <u>Power and Authority</u>. The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby. This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 4.3      <u>No Conflicts</u>. The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Organizational Documents of the Buyer; (b) any contract to which the Buyer is party; or (c) any Law applicable to the Buyer.

Section 4.4      <u>Sufficient Funds</u>. The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

Section 4.5      <u>No Brokers</u>. No broker, finder, or investment banker is entitled to any brokerage, finder's, or other fee or commission in connection with the transactions hereunder based upon arrangements made by or on behalf of the Buyer.

## ARTICLE 5.
## COVENANTS

Section 5.1    <u>Confidentiality</u>. The Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are the proprietary and confidential information of the Buyer (together, the "***Confidential Information***").  The Seller will at all times keep the Confidential Information in confidence and trust.  The Seller will not, without the prior written consent of an authorized officer of the Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for the Seller's own use or use it to the detriment of the Buyer.  Notwithstanding the foregoing, the Seller may, without consent, use the Confidential Information and disclose and deliver same to the Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by the Buyer and containing provisions at least as restrictive as this Section 5.1.  The Seller will be solely liable to for any breach of this Section 5.1 by its employees or agents. The Seller agrees that the disclosure of the Confidential Information in violation of this Agreement will cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

Section 5.2    <u>Authorization to File Financing Statements</u>.  In the event that the sale of the Purchased Accounts contemplated herein is for any reason not deemed to be a true sale thereof despite the parties' intentions, and in any event, as security for all of the obligations of the Seller, the Seller grants to Buyer a security interest, to secure all of the Seller's present and future obligations under this Agreement, in the following, whether now existing or otherwise arising or acquired: (a) all Purchased Accounts; (b) all proceeds of the foregoing including insurance proceeds; and (c) any other property of the Seller in which Buyer is assigned, purchases or is granted a lien or security interest under this Agreement or pursuant to any supplement or amendment to this Agreement or any other agreement now existing or hereafter executed by the Seller with or in favor of Buyer. Seller hereby irrevocably authorizes Buyer at any time and from time to time to prepare and file, at Seller's cost, one or more financing statements describing the Purchased Accounts as they exist on the effective date of this Agreement and, also, as the description and type of the Purchased Accounts may change in the future.

Section 5.3    <u>Affirmative and Negative Covenants</u>. From the Effective Date and thereafter until this Agreement is terminated:

(a)    <u>Records and Reports; Notification of Event of Default</u>.  Seller will maintain complete and accurate books and records with respect to the Purchased Accounts and furnish to Buyer such reports relating to the Purchased Accounts as Buyer shall from time to time reasonably request.  Seller will give prompt notice in writing to Buyer of the occurrence of any Event of Default and of any other development, financial or otherwise, which might materially and adversely affect the Purchased Accounts.

(b)    <u>Disposition of Purchased Accounts</u>.  Seller will not sell, lease or otherwise dispose of the Purchased Accounts except in the ordinary course of business.

(c)    <u>Liens</u>.  Seller will not create, incur, or suffer to exist any lien or security interest on the Purchased Accounts.

(d)    <u>Change in Location, Jurisdiction of Organization or Name</u>.  Seller will not change its jurisdiction of organization, unless Seller shall have given Buyer not less than 30 days'

prior written notice thereof, and Buyer shall have determined that such change will not adversely affect the validity, perfection or priority of Buyer's security interest in the Purchased Accounts.

(e)    <u>Other Financing Statements</u>.    Seller will not sign or authorize the preparation and filing of any financing statement covering all or any portion of the Purchased Accounts.

(f)    <u>Collection of Purchased Accounts</u>.    Seller will collect and enforce, at Seller's sole expense, all amounts due or hereafter due to Seller under the Purchased Accounts.

(g)    <u>Notice to Account Debtor</u>.    Buyer may, in its sole discretion, at any time or times after an Event of Default has occurred and is continuing, with prior notice to Seller, notify any or all account debtors that the Purchased Accounts have been assigned to Buyer and that Buyer has a security interest therein.  After an Event of Default has occurred and is continuing, Buyer may direct any or all account debtors to make all payments upon the Purchased Accounts directly to Buyer.

Section 5.4    <u>Performance by Buyer</u>.  If Seller fails to perform any agreement or obligation provided herein, Buyer may itself perform, or cause performance of, such agreement or obligation, and the reasonable expenses of Buyer incurred in connection therewith shall be reimbursed by Seller.

Section 5.5    <u>Further Assurances</u>. Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.

Section 6.1    <u>Events of Default</u>. Each of the following constitutes an "***Event of Default***" under this Agreement:

(a)    <u>Non-Performance of Covenants</u>.    The failure of Seller to timely and properly observe, keep or perform any covenant, agreement, warranty or condition required herein;

(b)    <u>Default Under the Note</u>.  The occurrence of an Event of Default under the Note;

(c)    <u>Action by Other Lienholder</u>.  The holder of any lien or security interest on any of the assets of Seller, including without limitation, the Purchased Accounts (without hereby implying the consent of Buyer to the existence or creation of any such lien or security interest on the Purchased Accounts), declares a default thereunder or institutes foreclosure or other proceedings for the enforcement of its remedies thereunder;

(d)    <u>Judgements</u>. There shall exist any judgment, decree, levy, attachment, garnishment or other process, or any lien, security interest or other encumbrance filed against the Seller involving an individual liability in the aggregate a liability in excess of $ 5,000,000 (not paid or to the extent not covered by a reputable and solvent insurance company which has not disclaimed coverage) and such judgment, decree, levy, attachment, garnishment or other process or any lien, security interest or other encumbrance either shall be final and non-appealable or shall not be vacated, discharged or stayed or bonded pending appeal for any period of 30 consecutive days; or

(e) <u>Change of Control</u>. Any change of control or ownership of Seller.

Section 6.2 <u>Remedies Upon Default</u>. If any Event of Default shall occur and be continuing, Buyer may without notice declare the Indebtedness or any part thereof to be immediately due and payable, and the same shall thereupon become immediately due and payable, without notice, demand, presentment, notice of dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, protest, or other formalities of any kind, all of which are hereby expressly waived by Seller. If any Event of Default shall occur and be continuing, Buyer may exercise all rights and remedies available to it in law or in equity, under this agreement, or otherwise.

## ARTICLE 7.
## CLOSING

Section 7.1 <u>Closing</u>. The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing. The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 7.2 <u>Closing Deliverables of the Seller</u>. At or prior to the Closing, Seller shall deliver to Buyer the following: (i) a bill of sale and assignment agreement substantially in the form attached hereto as **Exhibit C** (the "**Bill of Sale and Assignment Agreement**"), duly executed by the Seller, effecting the transfer and assignment to the Buyer of the Purchased Accounts; (ii) LPG's written approval of assignment and acceptance of payment terms; and (iii) such other customary instruments of transfer, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 7.3 <u>Closing Deliverables of the Buyer</u>. At or prior to the Closing, the Buyer shall deliver to Seller the following: (i) payment of the Aggregate Purchase Price; and (ii) the Bill of Sale and Assignment Agreement, duly executed by the Buyer.

Section 7.4 <u>Indemnification by the Seller</u>. Subject to the limitations set forth in this <u>Article 6</u>, the Seller agrees to indemnify and hold harmless the Buyer, and its Affiliates, including its and their shareholders, members, directors, managers, officers, employees, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, actions, suits, demands, losses, Liabilities, damages, deficiencies, diminutions in value, awards, judgments, penalties, fines, taxes, interest, costs, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement; (c) any Purchased Accounts prior to the Closing, or (d) any Excluded Asset or any Excluded Liability.

Section 7.5 <u>Indemnification Procedures</u>.

(a) Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-Party Claim**"), such Indemnified Party shall provide written

notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-Party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-Party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-Party Claim, to assume the defense of such Third-Party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-Party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within such twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-Party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-Party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)      No Indemnified Party may settle or compromise any Third-Party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-Party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-Party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-Party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party, and its Affiliates, and its and their shareholders, members, directors, managers, officers, employees, and agents from all Liability arising out of, or related to, such Third-Party Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)      If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-Party Claim (a "***Direct Claim***"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "***Notice of Claim***").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have to such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.5(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate

DocuSign Envelope ID: 05493DBE-7BB4-4BB4-B98E-F590EFE53E76

Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

**ARTICLE 8.**
**MISCELLANEOUS**

Section 8.1    <u>Entire Agreement; Amendment</u>.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 8.2    <u>Waivers</u>.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for which it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 8.3    <u>Notices</u>.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after electronic mail transmission.  A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

Section 8.4    <u>Successors and Assigns</u>.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 8.5    <u>No Other Representations and Warranties</u>. Except for the representations and warranties contained in this Agreement, no other express or implied representation or warranty, either written or oral, has been made by any Party or other Person in connection with the transactions contemplated by this Agreement.

Section 8.6    <u>Public Disclosure</u>.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 8.7    Expenses and Fees.  Whether or not the Closing occurs, all fees and expenses incurred in connection with the transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 8.8    Remedies. No remedy herein conferred is intended to be exclusive of any other remedy. The rights and remedies of the Parties under this Agreement are cumulative, and either Party may enforce any of its rights or remedies under this Agreement without prejudice to its other remedies under this Agreement or other rights and remedies available at law or in equity.

Section 8.9    Specific Performance.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 8.10    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 8.11    Governing Law; Venue.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles. Any action or proceeding brought by either Party against the other Party arising out of or related to this Agreement shall be brought exclusively in a state or federal court of competent jurisdiction located in Los Angeles County, California. To the extent permitted by applicable law, the Parties expressly and irrevocably waive any right to trial by jury.

Section 8.12    Severability.   Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 8.13    Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

**[Signature Page Follows]**

DocuSign Envelope ID: 05493DBE-7BB4-4BB4-B98E-F590EF5E3E76

Case 8:23-ap-01046-SC    Doc 159-2    Filed 08/31/23    Entered 08/31/23 15:40:45    Desc
Declaration of Christopher Ghio ISO Opposition to Motion to Dismiss    Page 14 of 25

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed their respective duly authorized representatives effective as of the Effective Date.

**BUYER:**

PECC CORP.
a California Corporation

By: _Eng Taing_____
      Name: Eng Taing
      Title:  Chief Executive Officer
        1/19/2023

**SELLER:**

THE LITIGATION PRACTICE GROUP P.C.
a California Professional Corporation

By: _Daniel S. March_____
      Name: Daniel S. March
      Title:   Managing Shareholder
        1/20/2023

[*Signature Page to Accounts Receivable Purchase Agreement*]

DocuSign Envelope ID: 05493DBE-7BB1-4BB1-B98E-F590EE553E76

## APPROVAL OF ASSIGNMENT AND ACCEPTANCE OF PAYMENT TERMS

  The Litigation Practice Group P.C. ("**_LPG_**") hereby approves the sale, transfer, and assignment of the Purchased Accounts from Seller to Buyer as set forth in this Agreement, and with respect to the Purchased Accounts, LPG agrees to pay the Buyer 100% of the total gross collections received on the Purchased Accounts on the first (1st) and fifteenth (15th) day of each month. Notwithstanding anything to the contrary in any agreements between the Seller and LPG, no maintenance or administrative fees shall be deducted from the collections received prior to calculation of the percentage fee. LPG will pay the Buyer by electronic funds transfer in accordance with the instructions set forth in **Exhibit D**. Any late payments after seven (7) days past due will accrue interest equal to the lesser of one and one-half percent (1.5%) per month or the maximum amount allowable under applicable laws, compounded monthly, from the due date until paid. Buyer shall be entitled to recover all reasonable costs of collection (including agency fees, attorneys' fees, and court costs) incurred in attempting to collect payment from LPG. In event of any payment delinquency or default, Buyer shall have the right to specific performance and injunctive or other equitable relief, in addition to any other rights and remedies at law or in equity, without the necessity of securing or posting any bond.

**THE LITIGATION PRACTICE GROUP P.C.**

By: _Daniel S. March_
   Name: Daniel S. March
   Title: Managing Shareholder
   1/20/2023

Accounts Receivable Purchase Agreement
Page 11 of 8

**EXHIBIT B-1**
**Page 15**

DocuSign Envelope ID: 05493DBE-7BB4-4BB4-B98E-F590EE359E76

**EXHIBIT A**

**DEFINITIONS**

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)  "***Action***" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)  "***Agreement***" shall have the meaning set forth in the preamble to this Agreement.

(c)  "***Affiliate***" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(d)  "***Bill of Sale and Assignment Agreement***" shall have the meaning set forth in Section 6.2.

(e)  "***Business***" shall mean the business of the Seller as conducted on the Effective Date.

(f)  "***Buyer***" shall have the meaning set forth in the preamble to this Agreement.

(g)  "***Buyer Indemnified Parties***" shall have the meaning set forth in Section 6.4.

(h)  "***Closing***" shall have the meaning set forth in Section 6.1.

(i)  "***Closing Date***" shall have the meaning set forth in Section 6.1.

(j)  "***Direct Claim***" shall have the meaning set forth in Section 6.5(c).

(k)  "***Effective Date***" shall have the meaning set forth in the preamble to this Agreement.

(l)  "***Event of Default***" shall have the meaning set forth in Section 6.1.

(m)  "***Excluded Assets***" shall have the meaning set forth in Section 2.1.

(n)  "***Excluded Liabilities***" shall have the meaning set forth in Section 2.2.

(o)  "***Governmental Body***" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-

national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

(p)　　"**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(q)　　"**Indemnified Party**" shall mean a Buyer Indemnified Party, making a claim for indemnification under Article 6.

(r)　　"**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(s)　　"**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge, after due inquiry, of the existence or non-existence of any fact by any individual who, as of the Effective Date or Closing Data, is a director, officer, manager, partner, executor, or trustee of the Seller or any individual in a similar capacity.

(t)　　"**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision or order, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(u)　　"**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any nature or type whatsoever, whether known or unknown, asserted or unasserted, accrued or unaccrued, absolute or contingent, matured or unmatured, determined or undeterminable, on- or off-balance sheet, or otherwise.

(v)　　"**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, purchase rights, options, warrants, contracts, commitments, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(w)　　"**Losses**" shall have the meaning set forth in Section 6.4.

(x)　　"**Note**" shall have the meaning set forth in the recitals to this Agreement.

(y)　　"**Note Amount**" shall have the meaning set forth in the recitals to this Agreement.

(z)　　"**Notice of Claim**" shall have the meaning set forth in Section 6.5(c).

(aa)　　"**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(bb)　　"**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(cc)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

(dd)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(ee)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(ff)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(gg)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(hh)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(ii)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(jj)    "**Third-Party Claim**" shall have the meaning set forth in <u>Section 6.5(a)</u>.

(kk)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

DocuSign Envelope ID: 05403DBE-7BB4-4BB1-898E-F590EE650E76

Case 8.23-ap-01046-SC    Doc 159-2    Filed 08/31/23    Entered 08/31/23 15:40:45    Desc
Declaration of Christopher Ghio ISO Opposition to Motion to Dismiss    Page 19 of 25

**EXHIBIT B**

**PURCHASED ACCOUNTS**

**(See Attached)**

REDACTED DUE TO PERSONAL INFORMATION

DocuSign Envelope ID: 05493DBE-7BB4-4BB4-B98E-F590EE E5E76

Case 8:23-ap-01046-SC    Doc 159-2    Filed 08/31/23    Entered 08/31/23 15:40:45    Desc
Declaration of Christopher Ghio ISO Opposition to Motion to Dismiss    Page 20 of 25

## EXHIBIT C

## FORM OF BILL OF SALE AND ASSIGNMENT AGREEMENT

      This Bill of Sale and Assignment Agreement (this "***Agreement***") is made on the Closing Date (the "***Effective Date***") by and between PECC CORP., a California corporation (the "***Buyer***") and THE LITIGATION PRACTICE GROUP P.C., a California Professional Corporation (the "***Seller***"). Each of the Seller and the Buyer are sometimes referred to herein, individually, as a "***Party***" and, collectively, as the "***Parties***."

      WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement dated January 11, 2023 (the "***Purchase Agreement***"), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

      NOW, THEREFORE, in consideration of the premises and mutual promises contained in the Agreement, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

      1.    <u>Defined Terms</u>.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

      2.    <u>Sale of Purchased Accounts; Assignment</u>.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

      3.    <u>Further Assurances</u>.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

      4.    <u>Terms of the Purchase Agreement</u>.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.  The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein. In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

      5.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**[Signature Page Follows]**

DocuSign Envelope ID: 05493DBE-7BD4-4BB4-B98E-F590EF5E9E76

Case 8:23-ap-01046-SC    Doc 159-2    Filed 08/31/23    Entered 08/31/23 15:40:45    Desc
Declaration of Christopher Ghio ISO Opposition to Motion to Dismiss    Page 21 of 25

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective duly authorized representatives as of the Effective Date.

**BUYER**

PECC CORP.
a California Corporation

By: _Eng Taing_ _____
CBB060DE14C2486...
Name: Eng Taing
Title: Chief Executive Officer
1/19/2023

**SELLER**

THE LITIGATION PRACTICE GROUP P.C.
a California Professional Corporation

By: _Daniel S. March_ _____
0B044D55CC87467...
Name: Daniel S. March
Title: Managing Shareholder
1/20/2023

DocuSign Envelope ID: 05493DBE-78B4-4BB4-B98E-F590EE5E9E76

Case 8:23-ap-01046-SC    Doc 159-2    Filed 08/31/23    Entered 08/31/23 15:40:45    Desc
Declaration of Christopher Ghio ISO Opposition to Motion to Dismiss    Page 22 of 25

**EXHIBIT D**

**Electronic Funds Transfer and Payment Instructions**

Account Holder:       PECC CORP.

Bank Routing #:       ███████████

Bank Account #:       ███████████

Bank Name:            JP Morgan Chase

Bank Address:         ████████████████████████

FEIN:                 ███████████

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF CHRISTOPHER B. GHIO REGARDING CLAIMS OF THE ESTATE AGAINST TOUZI CAPITAL, LLC AND ENG TAING AND RELATED PARTIES MADE IN SUPPORT OF OPPOSITION  OF CHAPTER 11 TRUSTEE, RICHARD A. MARSHACK TO MOTION TO DISMISS COMPLAINT AGAINST TOUZI CAPITAL, LLC AND ENG TAING PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) MADE APPLICABLE HEREIN BY FEDERAL RULE OF BANKRUPTCY PROCEDURE 7012**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August 31, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Eric Bensamochan<br>on behalf of Interested Party Courtesy NEF | eric@eblawfirm.us<br>G63723@notify.cincompass.com |
| Christopher Celentino<br>on behalf of Plaintiff Richard A. Marshack | christopher.celentino@dinsmore.com<br>caron.burke@dinsmore.com |
| Christopher Celentino<br>on behalf of Trustee Richard A Marshack (TR) | christopher.celentino@dinsmore.com<br>caron.burke@dinsmore.com |

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 31, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY - VIA FEDEX**
Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| August 31, 2023 | Nicolette D. Murphy | *(signature)* |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

| | |
|---|---|
| Leslie A Cohen<br>on behalf of Interested Party Courtesy NEF | leslie@lesliecohenlaw.com<br>jaime@lesliecohenlaw.com<br>clare@lesliecohenlaw.com |
| Michael T Delaney<br>on behalf of Defendant Fidelity National Information<br>Services, Inc. dba FIS | mdelaney@bakerlaw.com<br>tbreeden@bakerlaw.com |
| Christopher Ghio<br>on behalf of Plaintiff Richard A. Marshack | christopher.ghio@dinsmore.com<br>nicolette.murphy@dinsmore.com<br>karina.reyes@dinsmore.com |
| Christopher Ghio<br>on behalf of Plaintiff Richard A. Marshack (TR) | christopher.ghio@dinsmore.com<br>nicolette.murphy@dinsmore.com<br>karina.reyes@dinsmore.com |
| Eric D Goldberg<br>on behalf of Defendant Stripe, Inc. | eric.goldberg@dlapiper.com<br>eric-goldberg-1103@ecf.pacerpro.com |
| Richard H Golubow<br>on behalf of Creditor Debt Validation Fund II, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Richard H Golubow<br>on behalf of Creditor MC DVI Fund 1, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Richard H Golubow<br>on behalf of Creditor MC DVI Fund 2, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Meredith King<br>on behalf of Defendant Gallant Law Group | mking@fsl.law<br>ssanchez@fsl.law<br>jwilson@fsl.law |
| Meredith King<br>on behalf of Interested Party Courtesy NEF | mking@fsl.law<br>ssanchez@fsl.law<br>jwilson@fsl.law |
| David S Kupetz<br>on behalf of Defendant Marich Bein, LLC | David.Kupetz@lockelord.com<br>mylene.ruiz@lockelord.com |
| Daniel A Lev<br>on behalf of Defendant Consumer Legal Group, PC | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Daniel A Lev<br>on behalf of Defendant LGS Holdco, LLC | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Daniel A Lev<br>on behalf of Interested Party Courtesy NEF | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Yosina M Lissebeck<br>on behalf of Plaintiff Richard A. Marshack | yosina.lissebeck@dinsmore.com<br>caron.burke@dinsmore.com |
| Richard A Marshack (TR) | pkraus@marshackhays.com<br>rmarshack@iq7technology.com<br>ecf.alert+Marshack@titlexi.com |
| Kenneth Misken<br>on behalf of U.S. Trustee United States Trustee (SA) | Kenneth.M.Misken@usdoj.gov |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                      Page 2                        **F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| Queenie K Ng<br>on behalf of U.S. Trustee United States Trustee (SA) | queenie.k.ng@usdoj.gov |
| Teri T Pham<br>on behalf of Defendant Daniel S. March | tpham@epgrlawyers.com<br>ttpassistant@epglawyers.com<br>dle@epglawyers.com |
| Teri T Pham<br>on behalf of Defendant Tony Diab | tpham@epgrlawyers.com<br>ttpassistant@epglawyers.com<br>dle@epglawyers.com |
| Douglas A Plazak<br>on behalf of Defendant Greyson Law Center PC | dplazak@rhlaw.com |
| Douglas A Plazak<br>on behalf of Defendant Han Trinh | dplazak@rhlaw.com |
| Douglas A Plazak<br>on behalf of Defendant Jayde Trinh | dplazak@rhlaw.com |
| Douglas A Plazak<br>on behalf of Defendant Scott James Eadie | dplazak@rhlaw.com |
| Daniel H Reiss<br>on behalf of Defendant Touzi Capital, LLC | dhr@lnbyg.com<br>dhr@ecf.inforuptcy.com |
| Daniel H Reiss<br>on behalf of Defendant Eng Taing | dhr@lnbyg.com<br>dhr@ecf.inforuptcy.com |
| Ronald N Richards<br>on behalf of Defendant Consumer Legal Group, PC | ron@ronaldrichards.com<br>7206828420@filings.docketbird.com |
| Jonathan Serrano<br>on behalf of Plaintiff Richard A. Marshack | jonathan.serrano@dinsmore.com |
| Howard Steinberg<br>on behalf of Defendant BankUnited, N.A | steinbergh@gtlaw.com<br>pearsallt@gtlaw.com<br>howard-steinberg-6096@ecf.pacerpro.com |
| Andrew Still<br>on behalf of Interested Party Courtesy NEF | astill@swlaw.com<br>kcollins@swlaw.com |
| United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |
| Johnny White<br>on behalf of Interested Party Courtesy NEF | JWhite@wrslawyers.com<br>jlee@wrslawyers.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                          Page 3                                  **F 9013-3.1.PROOF.SERVICE**