1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  **MARSHACK HAYS LLP**
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 11 Trustee
   RICHARD A. MARSHACK
7

8  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
   Jeremy B. Freedman (State Bar No. 308752)
9  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
10 San Diego, CA 92101
   Telephone: 619.400.0500
11 Facsimile: 619.400.0501
   Christopher.ghio@dinsmore.com
12 Christopher.celentino@dinsmore.com
   Jeremy.freedman@dinsmore.com
13
   Special Counsel to Richard A. Marshack,
14 Chapter 11 Trustee for the Bankruptcy Estate
   of The Litigation Practice Goup P.C.
15

16              UNITED STATES BANKRUPTCY COURT

17      CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

18 | In re | Case No. 8:23-bk-10571-SC |
19 | THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
20 | Debtor. | CHAPTER 11 TRUSTEE'S STATUS REPORT |
21 | | |
22 | | Date:      July 19, 2023 |
   | | Time:      1:30 p.m. |
23 | | Ctrm:      Courtroom 5C – Virtual[1] |
   | | 411 West Fourth Street |
   | | Santa Ana, CA 92701 |
24
25
26

[1] This hearing date is designated Zoom Only, pursuant to Judge Clarkson's self-calendaring
27 procedures. Video and audio connection information for each hearing will be provided on Judge
   Clarkson's publicly posted hearing calendar, which may be viewed online at:  http://ecf-
28 ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

TO THE HONORABLE JUDGE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY COURT JUDGE AND ALL INTERESTED PARTIES:

Richard A. Marshack, in his capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy estate ("Estate") of The Litigation Practice Group P.C. ("Debtor"), submits this case status report ("Status Report").

1.    <u>PREVIOUS STATUS REPORTS</u>

On June 12, 2023, as Dk. No. 45, and June 23, 2023, as Dk. No. 74, Trustee filed status reports in Adversary Case No. 8:23-ap-01046-SC. A true and correct copy of each status report is attached as Exhibit "1" and Exhibit "2." The following status report supplements these initial status reports and does not attempt to repeat all of the previously disclosed information.

2.    <u>PROCEDURAL BACKGROUND</u>

On March 20, 2023, Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code (Dk. No. 1).

On March 30, 2023, the United States Trustee filed a Motion to Dismiss or Convert Case Pursuant to 11 U.S.C. §1112(b) ("UST Dismissal Motion") as Docket No. 21.

On May 3, 2023, a hearing on the UST Dismissal Motion was held on May 3, 2023, and the Order Directing United States Trustee to Appoint Chapter 11 Trustee was entered on May 4, 2023, as Docket No. 58.

On May 8, 2023, as Dk. No. 62, the United States Trustee appointed Richard A. Marshack as Chapter 11 Trustee. In the less than two months since his appointment, Trustee and his special and general counsel have worked constantly to protect the consumer clients that signed legal service agreements with Debtor and all other creditors of the estate.

On June 23, 2023, as Dk. No. 134, the United States Trustee appointed an official committee of unsecured creditors. On June 29, 2023, as Dk. No. 157, the United States Trustee filed an amended notice of appointment of official committee of unsecured creditors. Because the United States Trustee agreed that a majority of the official committee would be comprised of consumers, the Chapter 11 Trustee withdrew his motion for authority to reimburse the ad hoc committee of

consumer creditors' fees and expenses. See, Dk. Nos. 102 and 149.

3.      ADVERSARY PROCEEDING, OPERATIONS, AND BORROWING

On May 25, 2023, Trustee filed an adversary complaint against numerous defendants including Phoenix Law Group, Inc. The gravamen of the complaint was that Debtor's pre-bankruptcy efforts to transfer its client files to successor law firms did not result in transfers or that the transfers were avoidable as fraudulent. Trustee's allegations including claims that Debtor's former principals were secretly colluding with or in control over the successor defendants.

On May 25, 2023, the Court held an emergency hearing during which is granted a temporary restraining order that, among other things, gave Trustee control over the defendant entities including the use of Debtor's assets to execute ACH pulls from clients (which had been being used to divert funds to the Defendants).

On June 2, 2023, Trustee served the temporary restraining order and took control of the defendant entities. Trustee has been segregating the ACH pulls and will not use the funds absent court order.

From and after June 2, 2023, Trustee has used a manager and field agent to supervise operations in order to ensure that the consumer clients are receiving the benefits of their legal service agreements. The operations are handled by employees that provide services to Phoenix Law. To fund payroll and other related expenses, Trustee has had to borrow money.

On June 16, 2023, as Dk. No. 119, Trustee filed a motion to borrow up to $800,000 from Resolution Ventures LLC. On June 20, 2023, the Court conducted a hearing in which it granted Trustee's motion to borrow. On June 22, 2023, as Dk. No. 131, the Court entered a formal order granting the motion to borrow and setting a final hearing on July 20, 2023. Pursuant to this order, the Estate borrowed approximately $250,000.

On June 29, 2023, as Dk. No. 156, Trustee filed an ex parte notice of non-material modification to use a replacement lender, Liberty Acquisitions Group, Inc., for the unused amount of the court-approved $800,000 financing facility. On June 30, 2023, the Court conducted a hearing on the ex parte notice in which it granted approval to use the replacement lender. On July 3, 2023, as Dk. No. 168, the Court entered an order on the ex parte notice. Pursuant to this order, the Estate

borrowed and received the remaining approximate $550,000 of approved financing.

On June 30, 2023, as Dk. No. 164, Trustee filed copies of the notes executed in favor of the two lenders. On July 3, 2023, as Dk. No. 170, Trustee filed copies of amended notes in favor of the two lenders reflecting the updated amount owed to Resolution Ventures and the corresponding reduced amount borrowed from Liberty Acquisitions.

After taking over control on June 2, 2023, through the date this report is being filed, Trustee has received more than $5 million of income from Debtor's consumer clients. Trustee is holding, has not used, and will not use any of this money without first obtaining an order from the Court.

Given the costs of operations, and unless the Court approves the use of any money received from clients beforehand, Trustee may have to borrow additional funds pending a ruling by the Court on Trustee's anticipated motion to sell.

4.    <u>STATUS OF SALE NEGOTIATIONS AND MOTION TO SELL</u>

Shortly after taking over control of operations, Trustee has been negotiating with two potential buyers (who are also the two lenders): Resolution Ventures and Liberty Acquisitions. Trustee continues to negotiate with both potential buyers in the hopes of reaching an agreement that protects the consumer clients and reduces to money property of the estate so that Trustee can provide distributions to the very substantial creditors that have filed claims against the Estate.

Trustee's primary focus during sale negotiations has been to protect the consumer clients. Specifically, Trustee has refused to consider any sale that does not require the buyer to agree to comply with all applicable consumer protection laws and to agree to a post-sale monitor that will audit the buyer's compliance.

Trustee remains optimistic that he will be able to file a motion seeking court approval of a sale on or before Friday, July 7, 2023. Trustee will file an application for order shortening time on the sale motion given the cash flow problems arising from Trustee's decision to hold the ACH pulls.

Without disclosing the specifics of sale negotiations pending execution of any proposed purchase and sale agreement, Trustee believes that total consideration for a sale will exceed $30 million. The exact amount will ultimately depend upon how much is collected by the buyer because each sale contains a provision to pay the estate a portion of the amounts actually received by the

1  buyer from the clients.

2       On Wednesday, July 5, 2023, Trustee arranged for the Office of the United States Trustee to

3  conduct a site inspection where operations are being conducted in Irvine. Trustee has also produced

4  documents and information requested by the United States Trustee and is continuing to informally

5  provide all requested discovery.

6       On July 5, 2023, Trustee was informed of another potentially interested buyer. Trustee will

7  continue to look towards procuring a buyer that will best protect the Debtor's consumer clients.

8  5.    <u>NO CONSUMER PRIVACY OMBUDSMAN IS REQUIRED</u>

9       Under Section 363(b)(1), a consumer privacy ombudsman is required prior to any sale of

10  personally identifiable information ***only*** "if the debtor in connection with offering a product or a

11  service discloses to an individual a policy prohibiting the transfer of personally identifiable

12  information about individuals to persons that are not affiliated with the debtor and if such policy is in

13  effect on the date of the commencement of the case." The phrase "personally identifiable

14  information" is defined in Section 101(41A) and includes names, birthdates, Social Security

15  numbers, etc.

16       Trustee has not discovered any evidence that Debtor disclosed to its clients in connection

17  with providing its services any policy prohibiting the transfer of personally identifiable information

18  or that any such policy existed as of the petition date. As such, Trustee does not believe that the

19  appointment of a consumer privacy ombudsman is required prior to the Court approving any

20  proposed sale. That said, Trustee's sale negotiations and motion for order approving sale will

21  propose to comply with California State Bar Rule 1.17 governing the sale of a law practice and the

22  similar Model ABA rule. Such rules require that a sale of a law firm provide notice to the clients and

23  provide them with the ability to opt-out of any sale.

24  6.    <u>REFUNDS TO CLIENTS DOUBLE-CHARGED</u>

25       Trustee is aware of allegations that some clients were double-charged as a result of the

26  actions of Debtor's former principal or his agents. Trustee believes the amount of the potential

27  overcharges is approximately $120,000. Trustee is actively attempting to identify all individuals that

28  were double-charged and the amount of each such charge. Trustee anticipates filing a motion to seek

1  a court order authorizing him to refund the double-charged amounts to each such client.

2  7.      <u>CONTINUING UPDATES</u>

3         Given the speed and exigencies of this case, Trustee may file an update to this status report

4  so that the Court is apprised of the most current case information prior to the status conference on

5  July 19, 2023.

6

7  DATED: July 5, 2023                    DINSMORE & SHOHL LLP
                                          Special Counsel for Chapter 11 Trustee
8                                         RICHARD A. MARSHACK

9                                         AND

10                                        MARSHACK HAYS LLP

11
                                          By: */s/ D. Edward Hays*
12                                            D. EDWARD HAYS
                                              LAILA MASUD
13                                            General Counsel for Chapter 11 Trustee
                                              RICHARD A. MARSHACK
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TRUSTEE'S STATUS REPORT

# EXHIBIT 1

Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jeremy B. Freedman (State Bar No. 308752)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jeremy.freedman@dinsmore.com

Proposed Special Counsel to Richard A. Marshack

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC |
| Debtor. | Chapter 11 |
| | **STATUS CONFERENCE REPORT** |
| RICHARD A. MARSHACK, Chapter 11 Trustee, | Date:   June 12, 2023 |
| Plaintiff, | Time:   1:30 p.m. |
| v. | Judge: Hon. Scott C. Clarkson |
| | Place:  Courtroom 5C |
| | 411 W. Fourth Street |
| | Santa Ana, CA  92701 |

TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TANG, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW GROUP, INC.; MAVERICK MANAGEMENT, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN CONSULTING GROUP LLC; B.A.T. INC. d/b/a COAST PROCESSING; PRIME LOGIX, LLC; TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD GLOBAL; OPTIMUMBANK HOLDINGS, INC.

| 1 | d/b/a OPTIMUM BANK; MARICH BEIN, LLC; |
| 2 | BANKUNITED, N.A.; REVOLV3, INC.; FIDELITY NATIONAL INFORMATION SERVICES, INC. d/b/a FIS; WORLDPAY, INC.; |
| 3 | WORLDPAY GROUP; MERIT FUND, LLC; GUARDIAN PROCESSING, LLC; THE |
| 4 | UNITED STATES POSTAL SERVICE; and DOES 1 through 100, inclusive, |
| 5 | |
| 6 | Defendants. |

The duly appointed Chapter 11 Trustee, Richard Marshack ("Trustee") submits the following status report ahead of the June 12, 2023 status conference in the above captioned Court. To date the following has occurred and/or been completed:

**INTRODUCTION**

The Trustee has been available and working with Special Counsel on this case each day since 26 May 2023 from 6 a.m. until typically 11:00 p.m. Special Counsel team members have reviewed tens of thousands of documents, handled thousands of emails and phone calls, reviewed and prepared pleadings, effected process, secured financial information and interviewed witnesses during the same hours as the Trustee made himself available. This case is complicated but in one important sense, it is very simple: the labyrinth of illegal and unethical operation of LPG and all of its alter ego entities, including but not limited to OakStone Legal Group, P.C. ("OakStone"); Greyson Law, P.C. ("Greyson"); Phoenix Law Group, P.C. (Phoenix"); LGS Holdco., LLC; Maverick Management, LLC ("Maverick"); Guardian Processing, LLC ("Guardian"); Prime Logix, LLC ("Prime Logix"); BAT Inc. d/b/a Coast Processing ("Coast Processing"); Strategic Consulting Solutions, LLC ("SCS"); and Vulcan Consulting Group, LLC ("Vulcan")  over the last six to twelve months have greatly exacerbated the damage to the Consumer Creditors of LPG; yet, the immediate dismantling and shut-down of that business, instead of a reformation to a legally compliant one, virtually assures that LPG's Consumer Creditors and others harmed by these activities will NOT receive significant economic compensation but will have to rely on satisfaction in the form of some non-economic penalty imposed upon the wrong-doers. It is with the protection of the Consumer Creditor at the forefront of the Trustee's approach that the Trustee submits this Status Report.

**PRIOR HISTORY AND FACTS ESTABLISHED SINCE LAST HEARING**

1.    Prior to the Litigation Practice Group, PC ("Debtor") filing for Bankruptcy protection, Tony Diab and is associates, including Dan March, Eng Taing, Rosa Bianca Loli, Han Trinh, Jayde Trinh and a group of other non-lawyer managers started a series of affiliated companies, including but not limited to OakStone; Greyson; Phoenix; LGS Holdco., LLC; Maverick (the entity known as Gallant may have been in prior existence). These entities were used to facilitate a transfer of revenue and client files in the face of pending litigation by Debtor's creditors and a series of Class Action

1    lawsuits, and in order to protect and syphon off the ACH pulls (as to which clients had only authorized

2    LPG to withdraw funds from their accounts) to other existing or newly created entities, including but

3    not limited to Vulcan and Prime Logix, among others.

4        2.    Throughout his short tenure as Trustee, Mr. Marshack's focus has primarily been to

5    protect the consumers, their private data and prevent unauthorized ACH transactions and duplicate

6    transactions that have been complained of after files were transferred to Phoenix and Oakstone,

7    among others. To that end, on March 25, 2023, Trustee sought emergency relief in the form on order

8    seeking a temporary restraining order, turnover of information and data, re-direction of mail and

9    setting an order to show cause ("Emergency Order"). After considering the moving papers and

10   evidence in support thereof and finding good cause and exigent circumstances the Court granted the

11   Emergency Order subject to the court's ruling at the hearing, which was incorporated into the order

12   signed by the Court on May 26, 2023.

13       3.    Virtually all of the named parties (except as noted below) subject to Trustee's

14   adversary complaint were served with the summons, complaint, order appointing Richard Marshack

15   as the Chapter 11 Trustee in this matter and the emergency Order on the Chapter 11 Trustee, Richard

16   Marshack's Omnibus Motion entered May 26, 2023 ("Emergency Order") on or around June 2, 2023,

17   with the exception of Defendants EPPS, Chris Winslow and Maria Eeya Tan.  A person named Hahn

18   Trinh was initially served, however, Trustee has been contacted and informed the Han Trinh that was

19   initially served is not affiliated with Debtor any of the other named entities; a substitute service was

20   effected on the correct Han Trinh who has been served.  The proofs of service of which were filed on

21   Friday, June 9, 2023, Docket Nos. 31, 34-37, 40-44.  The Trustee has not served the United States

22   Postal Service ("USPS"), and upon reflection, intends to dismiss the USPS without prejudice; and

23   seek to address the authority to change the mail address for the related entities per the USPS guidelines

24   in the modified Preliminary Injunction being sought hereby.

25       4.    All non-parties subject to the Emergency Order were served on or about June 2, 2023;

26   see Proofs of Service, Docket Nos. 31, 34-36, 41-42.

27       5.    On Friday, June 2, 2023, with the assistance of the Irvine Police department, a

28   processes server and proposed special counsel for Trustee, and Lori Ensley of Bicher Associates

EXHIBIT 1, PAGE 10

1  (application for employment by Trustee pending) employees of the Litigation Practice Group, PC

2  operating through Phoenix Law, PC, Prime Logix, LLC and Greyson Law Group were served, locked

3  out of the premises located at 3347 Michelson Drive, Suite 400, 410 & 420, Irvine CA 92612 and

4  informed of the turnover order and the role of the Trustee in the Bankruptcy matter to protect

5  Consumer Creditors, data and funds. Gary Depew of Resolution Processing, a consultant retained by

6  the Trustee to assist in the evaluation of the operations and data, employees of Greyson, Maverick

7  Management and Phoenix were informed of the purpose of their presence, to collect information and

8  make sure data systems and company property are secure for the benefit of LPG clients; as set forth

9  in the report of Mr. Depew maintained as a regular business record of the Trustee, there was no

10  communication that the Trustee was serving as a "Manager" but only that there was to be compliance

11  with the Court's order. See Declaration of Christopher Celentino ("Celentino Decl.") at ¶ 3. Mr.

12  Depew and Lori Ensley have remained exclusively in private offices affording them a view of the

13  employees of the various entities that remain in the premises in order to monitor the coming and going

14  of employees to ensure no loss of information or assets. *Id*. However, dissension among employees

15  who remain working to keep Greyson, Phoenix and Maverick running has been exacerbated by missed

16  payroll prior to June 2, 2023 and non-payment of subsequent payroll in the afternoon on June 2, 2023.

17  *Id*.  It is the Trustee's belief that persons enjoined by the TRO may have tried to shift the blame for

18  the missed payroll on the Trustee, but the details of the shenanigans concerning the payroll are set

19  forth in the Declaration of Jonathan Serrano, submitted herewith. As a result of these efforts the

20  Trustee was able to gain access to, freeze and preserve critical business and financial records, client

21  files, email accounts (including archives), bank accounts and ACH processing accounts, as detailed

22  below.

23        6.     The Trustee has gained access to and secured super administrative permission over

24  LPG and Phoenix's email accounts hosted on Microsoft 365 despite Mr. Diab's representations to the

25  Trustee no such access was available. Microsoft is further working to provide Trustee with super

26  administrative access rights to Oakstone and Guardian Processing's email accounts hosted through

27  the same service.

28  *///*

3

7.     The Trustee has gained access to and secured super administrative permission over Debtor's Revolv3 and WorldPay software and accounts preventing any further unauthorized ACH transactions through these entities. As previously indicated, Mr. Diab had represented that neither he nor Debtor had access to any other ACH processing platforms or accounts other than at Equipay/Approvely who was holding approximately $653,000 which was needed to pay expenses, which apparently did not include payroll which was being paid through Vulcan Consulting and/or Prime Logix's Bank of America Accounts, or the Wells Fargo account in the name of Maverick Consulting, as discussed more fully in the Declaration of Jonathan Serrano submitted in support to Preliminary Injunction.

8.     To date, Trustee has not been given access to Debtor's Equipay/Approvely accounts, nor has the approximately $635,000 charged to Consumer Creditors been turned over to the Trustee. The Trustee, however, has frozen bank accounts at Bank of America held by Vulcan Consulting, Prime Logix and Gallant Law Group, including Vulcan and Prime Logix accounts from which payroll has been issued to employees ending in xxx 9021 and xxx 951. Bank of America has indicated they intend to provide and accounting of accounts and funds held, however, did not anticipate being able to provide such information by the time of the status conference on June 12, 2023. Based upon records secured from WorldPay, Trustee is informed and believes that the amount of such frozen funds in the aforementioned Bank of America accounts is more than $1.2 million dollars to date.  Trustee has also been able to secure monies in the amount of $239,197.01 in the form of a Cashier's Check made payable to the Trustee which came from a bank account in the name of Maverick, controlled by Defendant Rosa Loli, and maintained at Wells Fargo Bank.

9.     The Trustee has recently learned as a result of the Emergency Order that Oakstone's manager, Mr. Eng Taing, has the capability and is processing ACH transactions post-petition against LPG client accounts wrongfully transferred to Oakstone using a newly discovered ACH processing company, Payliance located in Ohio. In order to accomplish this, Mr. Taing created an account under Guardian Processing at Payliance. See Declaration of Jonathan Serrano ("Serrano Decl." at ¶ 7, **Exhibit 1**. In May of 2023, Mr. Taing by and through Guardian Processing and the ACH services of Payliance pulled $551,893.42 in ACH transactions on LPG client accounts that had been wrongfully

EXHIBIT 1, PAGE 12

1  transferred to Oakstone Legal Group. *Id.* These funds were then transferred to a separate entity, Touzi

2  Capital, Inc. with which Mr. Taing and his brother, Heng Taing, are involved and operating what has

3  been described in complaints available online as a financial / cryptocurrency ponzi scheme. See

4  Serrano Decl. at ¶ 8, **Exhibit 2**. According to Mr. Diab Mr. Eng "went rogue" after initially receiving

5  transferred LPG files but having had a "falling out" with Mr. Diab and his team, necessitating the

6  transfer of those Oakstone files elsewhere. Trustee believes additional fraudulent transfers of funds

7  and ACH transactions similar to those described above have taken place and been initiated by Mr.

8  Diab, Mr. Taing and/or others through various entities, including Guardian Processing, that have yet

9  to be identified, but strongly support the necessary imposition of a preliminary injunction to attempt

10  to curb such activity.  Also as set forth below, it appears that funds taken from consumer customers

11  of LPG and diverted to Touzi Capital may have been used by Touzi Capital on more than one occasion

12  to make payroll to attorneys and employees of the alter ego company known as Greyson; see Decl.

13  of Jonathan Serrano, below.  All of these entities and individuals have been specifically identified by

14  name in the Adversary Complaint and the Court's Emergency Order with the exception of Payliance.

15  Mr. Eng Taing was properly served with the summons and complaint and Emergency Order.

16     10.    As detailed above, Oakstone remains the only entity Trustee has not been able to

17  control. Mr. Taing continues to devise new ways to utilize legacy LPG client information, and

18  withdraw funds from the LPG consumer's accounts without providing any known services. Although

19  Mr. Taing has been served with the Court's Emergency Order, his activity has not stopped and he is

20  knowingly acting in contempt of the TRO. Trustee's plan would be to stop that wrongdoing with

21
22  modified or further court orders as necessary, including making a case and seeking imposition of an

23  order for criminal contempt.

24     11.    The Trustee has served, secured and/or has access to all known ACH processing

25  companies accounts, including EquiPay, LLC ("EquiPay"); Merit Fund, LLC ("Merit Fund");

26  Authorize.net a subsidiary of Visa, Inc. ("Authorize.net"); World Global; OptimumBank Holdings,

27  Inc. dba Optimum Bank ("Optimum Bank"); BankUnited, Inc. ("BankUnited"); Marich Bein, LLC

28  ("Marich Bein"); Revolv3, Inc. ("Revolv3"); Fidelity National Information Services, Inc. dba FIS ,

EXHIBIT 1, PAGE 13

including but not limited to its subsidiaries Worldpay, Inc., Worldpay, LLC, Worldpay Group or any other subsidiaries providing ACH processing services ("FIS"). ACH Processing companies including EPPS and entities affiliated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction have yet to be identified. Guardian Processing, LLC appears to be under Mr. Taing and/or Mr. Diab's control and while it has been served, it has yet to be determined whether they have or intend to comply with the Emergency Order further necessitating a preliminary injunction. Trustee is in the process of serving Payliance with the Emergency Order and Order Appointing Richard Marshack as Trustee, and as discussed above further supports the necessity for a preliminary injunction.

12.    Despite Mr. Diab's representations to Trustee that Debtor does not have access to the Luna customer relationship management software ("CRM"), Trustee was provided access to the Luna CRM for Phoenix and Greyson, which appears to contain legacy LPG client files, after being served with the Emergency Order in an effort to preserve client files and that software processes currently in place continue to function. This includes daily IT maintenance to the Luna CRM and other related components. Trustee has spoken to and is currently working with Amazon Web Services to gain access to any other domains for Maverick, Gallant, Oakstone, Prime Logix and/or any others in order to ascertain the location of LPG client files and preserve the data. Based on Trustee's preliminary review of the thousands of documents turned over and Declarations obtained concerning the same, CLG and Gallant appear to be operating law firms that have other operations and client accounts that are not affiliated or pertain to LPG or the siphoning of LPG's executory contracts to other entities as noted above -- it does appear, however, that CLG also has "legacy" LPG client files for which it is paying referral fees to LPG or other entities (it appears that such fees may have been diverted to PrimeLogix in the form of an "advance").

13.    Trustee and his proposed special counsel have further become aware after serving the Emergency Order, LPG continued to enter into further executory contract(s) for the purchase of client files / receivables as early as a few days post-petition. See Declaration of Jeremy Freedman ("Freedman Decl.") at ¶ 3, **Exhibits 3** and **4**.

EXHIBIT 1, PAGE 14

14. Notwithstanding the questionable acts of those individuals named in the Adversary complaint and others they have enlisted to aid them, Trustee's investigation shows that under proper management the practice appears viable within the confines of the law as many other consumer litigation firms operate, whether entirely or as part of a larger suite of legal services offered. See the Declaration of Robert Schneider, submitted herewith; Trustee continues to seek additional opinions on this matter, and will supplement the record when available.

15. Trustee has communicated with a number of actual lawyers providing legal services to the various clients in the various locations of operations. Celentino Decl. at ¶ 4. Those lawyers, for the most part appear to be diligent in discharging their duties to represent Consumer Creditors. *Id*. To that end, Trustee was informed that court appearances continue to be made, cases are being settled and have not received any complaints concerning matters handled in the last 72 hours after the Emergency Order was served and Trustee secured the client information and funds as detailed above -- except for complaints about the continuous "pulling" of ACH funds by Mr. Eng and Oakstone, noted above. *Id*. A review of the client accounts indicate other attorneys have secured victories for such clients, including legal challenge to creditors, including Goldman Sachs, where a judgment in favor of the client was obtain covering the cost of the fees paid to Debtor and providing compensation to the client. See Serrano Decl. at ¶ 16.

16. In furtherance of protecting consumers, Trustee envisioned the creation of an ad hoc committee of Consumer Creditors being formed (the "Ad Hoc Committee"), and reached out to the firm of Pachulski Stang to consider taking such representation with the understanding that the Trustee would support a reimbursement agreement so the estate would pay the legal expenses at no cost to the Consumer Creditors. See Declaration of Richard Marshack ("Marshack Decl.") at ¶ 4. The Trustee envisions that, with the input of the Ad Hoc Committee, Trustee, the committee and the Court could ensure that the consumer customers of the Estate could be properly serviced by an ethical and honorable consumer law firm where the transfer by the estate could require implementation of safeguards to the Consumer Creditors built-in to any post transfer operations, with audit and other document inspection rights could ensure ethical practices are employed.

///

EXHIBIT 1, PAGE 15

17.    The Trustee discussed the same with the Office of the United States Trustee, and they are not in favor of the idea; alternatively, the Trustee asked for the Office of the United States Trustee to appoint a formal committee of consumer creditors under 11 U.S.C. section 1102, and has received no response.  Trustee understands that proposed counsel to the Ad Hoc Committee from Pachulski Stang will be present to discuss these ideas -- and their ideas for protecting the consumers -- with the Court.

18.    It is the Trustee's belief that an immediate shut down of the businesses, and a dissolution of the TRO, will lead to worsening conditions for the Consumer Creditors of the Estate. While it appears the Ad Hoc Committee and its counsel harbor the same belief, it is unclear that the Office of United States Trustee agrees. It appears that many of the current clients have active litigation cases, and an immediate shut-down of the business may negatively impact that representation; it also appears that many of the Consumer Creditors are having success invalidating the debts being enforced against them  In the Trustee's view, it appears consumers stand to be harmed absent immediate operation of the business pending a transfer of the assets/business to a good faith buyer, or, in the alternative a winding down the business altogether. The invoices and monthly accounts payable necessary for proper operations and meeting payroll of Phoenix, Greyson and Maverick among others are mounting. While the total amount owed outstanding is still be gathered by accountants, Trustee is aware of over $200,000 in expenses outstanding, including but not limited to, office leases, re-instating DebtPayPro, staffing for affiliated customer service and digital mail rooms, and many claims for employees from the entities that are utilizing LPG client contracts and the revenue therefrom to support their expenses;

19.    To date, in the last week, Trustee has secured more than $1.4 million from the alter ego entities and financial institutions listed in the Emergency Order that have provided an accounting of held funds and/or turned over said funds. This does not include money held by Bank of America in the two accounts identified in the Emergency Order held by Vulcan Consulting and Prime Logix. These accounts may include some of the approximated $6 million dollars in ACH transfers processed through Revolv3 and Worldpay between March and May 2023 as indicated in the Emergency Order pending receipt of the accounting from Bank of America.

EXHIBIT 1, PAGE 16

20.    Greyson is an entity that currently operates within the same physical space as the Phoenix Law Group. There appears to be no lease, no sub-lease and no legal right for this entity to be present in this space. The Manger of the entity is Han Trinh, who is not a lawyer, and appears to have herself slated for a $300,000 salary. The reputed lawyers in charge are Phuong "Jayde" Trinh (CA Lic. No. 340042) (who the CA state bar lists as having been licensed on November 24, 2021 and is slated for a $500,000 annual salary) and Scott Eadie (CA Bar No. 108345) (who the CA state bar lists as having been licensed on June 3, 1983, and is slated for a $360,000 annual salary). There appears to be no active supervision of non-lawyer staff by the attorneys built-into the workflow operation of this entity. It appears to have been incorporated on May 12, 2023, and the Principal is listed as Scott Eadie. In conversations with Mr. Celentino, Ms. Han Trinh contends that "hates Tony Diab, that she and her sister Jayde started this company to separate itself from Tony Diab and the terrible persons running LPG and Phoenix and that Greyson, Han and her sister have no affiliation or contact with Mr. Diab." Ironically, Mr. Celentino was introduced to Ms. Han Trinh in a call that included Trustee Marshack on the morning of June 2, 2023, when Mr. Diab told Ms. Trinh to comply with requests and turnover to the Trustee all the information pertaining to Greyson.

21.    Interestingly, business records turned over to the Trustee and Mr. Celentino by Ms. Trinh establish that Greyson has exactly 48 clients, all 48 of whom were once clients of LPG, and all 48 of whom were also recently or remain current clients of Phoenix in the database. Also interestingly, Greyson now employs -- as salaried attorneys -- almost all of the attorneys who once served as LPG attorneys, and prior to that, all served as attorneys for Phoenix. Interestingly, despite contending no relationship to Greyson, it was Mr. Diab who reached out to Mr. Marshack, and Mr. Celentino, when he learned from a Greyson Manager (who we are informed and believe was Ms. Han) was informed by a Greyson attorney that Mr. Celentino had called to ensure a clients' court hearing was being handled. See Marshack Decl. at ¶ 5, **Exhibit 5**.

22.    Without any evident contractual right or obligation to pay for access to the LPG/Phoenix CRM system, all of the records of these 48 clients are made available to Greyson employees and attorneys. It appears that the anticipated revenue from the 48 former LPG client contracts is under about $15,000 per month. Until the first Greyson client was on-boarded on March

9

1  20, 2023 (the date of the bankruptcy filing), Mr. Carss of Phoenix indicates that the LPG attorneys

2  were on 1099 set fee for Phoenix at a  set rate per case;  subsequently, those attorneys appear to have

3  walked from Phoenix to work for Greyson, and Ms. Han Trinh charges Phoenix a set fee that is 167%

4  higher than the prior charge to Phoenix;  for reasons unknown, Phoenix is unable to secure attorneys

5  other than those former LPG and Phoenix attorneys now at Greyson to assist LPG legacy clients

6  formerly parked at Phoenix.  Mr. Carss believes that the plan of action at Greyson is to eventually

7  poach all of the former LPG clients once transferred to Phoenix to Greyson, and to overcharge

8  Phoenix for legal services to both make a "spread" for Greyson and to destroy the economics of the

9  former assignments to Phoenix.  In a surprise move, the human resources payroll for Phoenix --

10  assuming the hourly employees only work 1 hour per year -- is a staggering contractual amount of

11  over $6.79 million per year, or approximately $565,900 per month;  which of course cannot be

12  sustained on a projected gross revenue from current clients at approximately $15,000 per month.  The

13  Greyson payroll appears to have been paid in March, April and May from various entities from which

14  LPG client pulls were made: Touzi (Mr. Eng's company), Vulcan (Ms. Cohen), Prime (Ms. Loli) and

15  Maverick (Ms. Loli).  That Greyson in and of itself is some form of a  Ponzi scheme is self-evident -

16  - the Trustee believes that the customers and attorneys of Greyson should be contacted, the customers

17  referred to a safe, legal operation with their consent, and the attorneys can assume with customer

18  consent the direct relationship with the clients under new contracts for services that comply with the

19  law; alternatively, Phoenix and Mr. Carss will reach out to provide the support and care to such

20  customers, lawfully and under the supervision of the Trustee, until an alternative representation can

21  be arranged.  Unfortunately, the many hourly employees who "drank the koolaid" and wrongfully

22  believed that Greyson had a legitimate purpose are hurt.  The Trustee will seek to amend the

23  Complaint to provide that Greyson is not an alter ego of the Debtor, but is a party that received

24  fraudulent conveyances of Debtor's property with direct and indirect intent to defraud the Debtor, the

25  Court, the Trustee and the creditors thereof.  Greyson and its principals should be held accountable

26  to the employees whose lives they negatively impacted with this selfish Ponzi charade.

27  ///

28  ///

10

EXHIBIT 1, PAGE 18

**TRUSTEE'S PROPOSED RECOMMENDATIONS FOR COURSE OF ACTION.**

Based on the foregoing, and ongoing review of client files and business operations, the Trustee raises the following issues and proposes the Court, subject to Trustee's motion, grant authority for a third party to operate Debtor for a short, two to three week period of time pending a motion for sale of Debtor's assets, or, in the alternative have the Trustee use funds on hand to effect an orderly winding down of Debtor's Business, and for certain at any time in the event the Debtor's Business cannot be operated legally, as follows:

23.    Trustee is most concerned about the Consumer Creditors who through ignorance or other means are potentially harmed by the status quo if something isn't done to improve it, and who could be further harmed if there is no orderly transition to legitimate counsel.

24.    The Trustee has received an offer from one, and believes at least two other reputable firms who have indicated they will make offers, and in the Trustee's current judgment, there are likely several additional firms, who would make offers on overbid to be able to secure the assumption and assignment of the consumer contracts.

25.    Any motion seeking to assume and assign (or sell) the law business and its key client contract, would seek findings from the court that such sale and further provision of services was legal, and would only be sold if the Purchaser affirms acceptance of appropriate safeguards for the Consumer Creditors;

26.    It is the Trustee's belief that any sale would be subject to and consistent with Rule 1.17 of the ABA Model Rules of Professional Responsibility allowing clients of the Law Firm a full 90-day period to Opt Out of the sale and seek their own counsel; the Trustee would welcome the maintenance of a Preliminary Injunction to prevent continued prey upon these clients by the named principals of the Debtor and its alter egos, affiliates and fraudulent conveyance partners

27.    With consumer input (as noted, an Ad Hoc Committee of Consumer Creditors has been formed), the Trustee could effectuate a system where there are safeguards to the Consumer Creditors built-in to the post-sale operations, with audit and other document inspection rights that could be made available to ensure ethical treatment of the customers;

EXHIBIT 1, PAGE 19

28.    Trustee has procured one offer from a reputable businesses to pay more than $35 million to purchase the assets and provide the services for which the consumers contracted;

29.    Additionally, there are a series of "call centers" that work the industry, and they are accustomed to robocalls of the consumers and assigning those clients to firms, like Debtor, to service. A continuation of the case offers a chance to expose and correct some of that activity with appropriate court orders.

30.    Alternatively, should the Court find that the Debtor's business may not appropriately be continued under management of a reputable firm with consumer safeguards in place with the input of the consumer committee, then Trustee believes in his best judgment, that Debtor's business operations, and those of its affiliates, alter egos, and fraudulent conveyance partners, should in all likelihood be wound down over a short but reasonable period of time to protect the consumers and provide time to allow Consumer Creditors of Debtor to seek similar services and potentially make claims for reimbursement based on any contracts that remain executory, with the protection of an enforced Preliminary Injunction prohibiting the continued wrongful conduct, especially that of Greyson.

31.    The alternative -- shutting down LPG and dissolving the TRO as to the other entities – raises other concerns. Doing so will leave these consumers in a state of disrepair, and exacerbating despair. Those getting proper services will find difficulty in retaining new lawyers. These clients could be better serviced by a quality law firm. If Trustee doesn't assist in transitioning these clients to a reputable firm, they will continue to be preyed upon by Debtor's former principal, his cohorts, his new affiliates and their fraudulent conveyance partners. Moreover, rejecting all the contracts will damage the customers who won't receive what they bargained for (relief from their debts) and the estate won't have any funds from which it can pay damages arising from their potentially wasted years of payments.

32.    There is no ideal solution, but Trustee is concerned that the best course of action is to develop a plan that ensures some degree of protection for the consumers so they do not again find themselves as prey. Trustee believes a short-lived (i.e. 2-3 weeks) temporary operation of the affiliated entities pending a properly- noticed sale of the business with consumer-protections can be

EXHIBIT 1, PAGE 20

consummated.  In any event, Trustee intends to pursue litigation against all persons who worked with and for Mr. Diab in this enterprise, and to recover all ill-gotten gains, or the value thereof, in civil judgments.

33.    Mr. Diab's recent communication to the call centers and the aligned staff predicts that he "will be in charge of the entire operation in two weeks."  There is no protection for the consumers, the Estate, and Trustee if that prediction comes to fruition.

34.    Trustee is focused on preventing further damage to the consumers and will only proceed with administration of assets if that can be done lawfully and pursuant to court orders. If that cannot be done, Trustee will of course work diligently to terminate all alter ego and related businesses and fraudulent conveyance partners and to prevent further damage to consumers.

## AUTHORITY AND SUPPORT FOR TRUSTEE'S PROPOSED ACTION

### *LPG's Business Model Rehabilitation Process*

While the execution of its business was clearly mismanaged, LPG's business model is not atypical for the Debt Resolution industry – making it a prime contender to be sold in bankruptcy now that said mismanagement has been removed from the equation. *See Richard Marshack's Omnibus Emergency Motion* [Doc. No. 4] (the "Turnover Motion"), Section II(A)(2), incorporated herein.

As further described in the Turnover Motion, LPG operated a nationwide debt relief law practice, servicing over 40,000 clients for legal and non-legal services as outlined in an agreement with the consumer in an effort to extinguish, settle or reduce consumer debts on their behalf. LPG would: (1) assist with ensuring creditors ceased harassing communications with respect to any of the debts in dispute; (2) dispute legal validity of the debts in dispute; (3)  defend clients against any collection activity or lawsuit on any invalidated debt; (4) initiate legal action against any creditor that violates state or federal law in connection with the debt in dispute; and (5) qualifying clients for Bankruptcy under Chapter 7 or Chapter 13 or the U.S. Bankruptcy Code and provide counsel regarding whether the client qualifies, the procedures and effect of filing bankruptcy. *Id.* at RS Decl. at ¶ 6, Exh. 3 [Dkt. No. 5].

LPG would charge forty percent (40%) of the debt in dispute, to be paid over sixty (60) monthly payments. However, to the extent the client agrees to any settlement, the monthly payment

13

would be reduced to cover all or a portion of the settlement payment. Further, no additional charges were incurred in order to file a lawsuit. Finally, if no outcome is achieved, the consumer could request a full refund for all amounts paid to LPG. Thus, client protections were incorporated into the model despite the failure in LPG's actual implementation.  In other words, LPG's model is sound and legally compliant if executed appropriately. The only necessary and substantial model-based adjustment is the result of the adoption in California of the Fair Debt Settlement Practices Act ("FDSPA"), effective as of January 1, 2022; this statute applies prospectively only.[1] Thus, only a portion of the customers will require updates to structure, communication, and execution. The FDSPA offers clear parameters for the necessary reformation of LPG's business model transformation In fact, much of the FDSPA relates to how various processes are carried out, and thus will automatically be remediated by an appropriate purchaser. *See e.g.,* Cal. Civ. Code 1788.302 (prohibiting any debt settlement provider from engaging in false, deceptive or misleading acts). Other requirements, however, require specific disclosures no less than three (3) calendar days before you sign a contract with them, including provisions that currently exist in LPG's agreements, such as: the consumer's right to cancel the contract at any time and the possibility of a negative credit score rating from failing to pay debts on time. *Id.*; *see also* Turnover Motion, RS Decl. at ¶ 6, Exh. 3 [Dkt. No. 5].

To be sure, not all of the FDSPA's requirements were incorporated into LPG's agreement and processes, and additional laws would require incorporation in order to ensure proper compliance (i.e., Consumer Legal Remedies Act and Credit Repair Organization Act). However, the FDSPA enables a swift remediation to these deficiencies. For example, a list of what each contract is required to contain is spelled out in Cal. Civil Code 1788.302.

One important update to the business model will be how LPG receives fees. The FDSPA instilled an explicit ban against advanced fees until a settlement agreement has been reached, agreed

---

[1] There is no indication of retroactive intent in the bill as drafted, nor is there any indication of the same in the enacted law, or subsequent case published case law.  In California, as in most states, a statute is presumed to operate prospectively. Quarry v. Doe I (2012) 53 Cal.4th 945, 955. In construing statutes, there is a presumption against retroactive application unless the Legislature plainly has directed otherwise by means of express language of retroactivity or other sources that provide a clear and unavoidable implication that the Legislature intended retroactive application of the statute. Id.

14

1  to, and at least one payment to the creditor has been made as a result of the agreement. *Id.* Prior to

2  the FDSPA, a restriction against the advanced-fee model only applied to credit repair agencies, which,

3  upon information and belief, LPG is not. Turnover Motion, RS Decl. Exh. 3; *see also* 15 U.S.C.

4  1679(a)(3) (the Credit Repair Organization Act (the "<u>CROA</u>").

5        In support of the exclusion of LPG from the purview of CROA, the Trustee has reviewed the

6  business model of LPG and its relevant documents to execute the same. The core documents include,

7  but certainly are not limited to: the Legal Services Agreement (the "LSA"); the LPG "QC Script"; the

8  LPG "Sales Script"; and, the "Educational Outreach Script" (together, the "<u>Core Documents</u>"). The

9  Core Documents contain the description of services and actions to include debt disputes and debt

10  relief. The Core Documents are completely devoid of any language indicating that LPG: (1) is a credit

11  repair agency; (2) can "repair" bad credit after the fact, or (3) act with the purpose of repairing credit.

12  Instead, the implication of a credit repair is an indirect, unstated, and un-marketed benefit of the

13  services LPG offers. In fact, LPG discloses the potential *negative* impact the program could have on

14  the applicant's credit. *See* QC Script, Page 11 of 14. A true and correct copy of the QC Script is

15  attached to the Serrano Decl. at ¶ 15, **Exhibit 6** and incorporated herein. Only in response to an

16  applicant's confusion to this disclosure does LPG respond,

17  

18       "…your credit report is used by creditors to determine whether to extend new credit
     to you or not, but your main concern while in our program should be getting out of
     debt. Once your accounts are invalidated and removed from your credit report, your
     credit should begin to repair itself as long as the rest of your credit stays positive…".

19  

20  *Id.* If credit repair was incorporated into the business model of LPG, one would certainly expect to

21  find that information contained in the customer pitch. However, the Sales Script is devoid of any

22  flavor of credit repair. *See generally* Sales Script. A true and correct copy of the Sales Script is

23  attached to the Serrano Decl. at ¶ 15, **Exhibit 6** and incorporated herein.

24        Thus, the positive impact to credit is a mere collateral consequence, mentioned only in

25  response to an applicant's uncertainty on the negative impact the program can have in the initial

26  stages. The same mention is absent from any marketing or contract. Similar to filing bankruptcy,

27  one's credit is negatively impacted before it improves. Therefore, it is clear LPG's primary focus is

28  not on the improvement or repair of a consumer's creditor record, but instead on the development of

EXHIBIT 1, PAGE 23

1   creditworthy behavior and resolution of debts. This thereby excludes LPG from CROA's purview.

2   *Plattner v. Edge Solutions, Inc.,* 422 F. Supp. 2d 969 (ND Ill. 2006) (finding a "Post Closing Credit

3   Restoration Program" did not render the company a "credit repair organization" when viewed in

4   context with the company's primary debt management services since the primary service was to assist

5   in managing a consumer's debt); *Walston v. Nationwide Credit, Inc.,* 2019 U.S. Dist. LEXIS 147865

6   (ND Ill. August 30, 2019) (stating that "the definition of credit repair organization encompasses

7   'entities whose focus is on the improvement or repair of a consumer's credit record, credit history or

8   credit rating, explicitly or implicitly, not entities whose activities are aimed at assisting consumers in

9   developing "creditworthy behavior" and paying their debts, which may result in improved actual

10  credit as a collateral consequence, rather than as a program objective."); *White v. Fin. Credit Corp.,*

11  2001 U.S. Dist. LEXIS 21486 (ND Ill. December 20, 2001)(finding a company that represented

12  paying debts would improve credit history was not a credit repair organization because its primary

13  business focus was debt collection); s*ee e.g., Jackson v. Tel. Chrysler Jeep, Inc.*, No. 07-10489, 2009

14  U.S. Dist. LEXIS 30550 *20 (E.D. Mich. Mar. 31, 2009) (Finding a reasonable juror could not find

15  that the Defendants met the definition of "credit repair organization" under the CROA where

16  Plaintiffs had not offered any evidence which suggest that the Defendants (1) held themselves out as

17  a credit repair agency, (2) offered to "repair" bad credit after the fact, or (3) "crossed the boundary

18  from credit counseling to credit repair" in their dealings with the Plaintiffs.)

19        In the Trustee's judgment, and in conjunction with its review of the relevant documents and

20  business model, and this appearing to be the closest mention to anything related to a credit repair, and

21  applicable case law, LPG's model does not implicate the CROA.

22  ### ***The Sale of LPG***

23        Based on the flexible model of LPG and the streamlined ability to true-up the company with

24  the assistance of the FDSPA, the Trustee believes substantially all assets of this Debtor can and should

25  be sold pursuant to Section 363 of the Bankruptcy Code or, in the alternative, a liquidating plan.

26  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing,

27  may ... sell ..., other than in the ordinary course of business, property of the estate." 11 U.S.C. §

28  363(b)(1). Also, a trustee may sell property "free and clear of any interest" in the estate property. 11

EXHIBIT 1, PAGE 24

U.S.C. § 363(f). The sale of estate property under the Bankruptcy Code is conducted by a trustee, who has ample discretion to administer the estate, including authority to conduct public or private sales of estate property. *In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S. D. Cal. 1985).

In deciding whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test. Recent cases typically inquire "whether a sale is supported by a sound business reason and is based on a sound exercise of business judgment." 3 Collier on Bankruptcy § 363.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013). The court should determine only whether the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms. 3 Collier on Bankruptcy P 363.02 (16th 2023). "Although a trustee normally would be expected to sell to the highest bidder at an auction, there may be sound business reasons to accept a lower bid, particularly in a negotiated sale" and the trustee enjoys a certain amount of judicial deference in its business judgment *Id.*

Further, an asset sale offers some prospect of recovery of value of the estates to pay creditors and prevents returning the creditors to the prepetition status quo where they have to fend for themselves. *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 387 (Bankr. C.D. Cal. 2015). Indeed, in this case, absent some form of advancement of the consumer representation to a legitimate law firm to provide compliant services and some form of compensation to the estate for the transfer, there is a substantially reduced chance that consumer creditors will be able to recover any claim to funds from the estate for any violations of the FDCPA or any other applicable law.  The Trustee is informed and believes that the Ad Hoc Committee supports this approach.

Most cases where a trustee is appointed involve similar factual situations of wrongdoing and do not prevent the sale of debtor assets. *See In re Ford,* 36 Bankr. 501 (Bankr. W.D. Ky. 1983) (debtor made intercorporate loans and transfers without court permission and without disclosure in its monthly financial reports); *In re Brown,* 31 Bankr. 583 (D. D.C. 1983) (debtor's principal mismanaged parking garage by refusing to sell or lease that property to maximize distribution to creditors in order to retain that property for his individual control and operation); *In re*

///

17

1    *Philadelphia Athletic Club, Inc.,* 15 Bankr. 60 (Bankr. E.D. Penn. 1981) (principal self-dealing and

2    commingling of funds with principal's other corporation).

3        Similarly, in this instance, the mismanagement should not result in conversion or dismissal

4    when the appointed Trustee believes there to be greater recovery and protection for the creditors and

5    the estate if allowed to proceed with a sale of the business in a manner that both ensures future

6    compliance with all laws (and the FDCPA, to the extent applicable to CA customers) and will provide

7    notice to the consumer to be able to opt out of a law firm sale within 90 days as applicable under

8    ABA Model Rule of Professional Conduct 1.17.

9

10   Dated:  June 12, 2023             Respectfully submitted,

11                                   DINSMORE & SHOHL LLP

12

13                            By:  */s/ Christopher Celentino*
                                  Christopher B. Ghio

14                                   Christopher Celentino
                                  Proposed Special Counsel to

15                                   Richard A. Marsha

16

17

18

19

20

21

22

23

24

25

26

27

28

18

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
655 W. Broadway, Suite 800, San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **STATUS CONFERENCE REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 12, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On June 12, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 12, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

        **JUDGE'S COPY**
        The Honorable Scott C. Clarkson
        United States Bankruptcy Court
        Central District of California
        Ronald Reagan Federal Building and Courthouse
        411 West Fourth Street, Suite 5130 / Courtroom 5C
        Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 12, 2023 | Caron Burke | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1.    __TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)__:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 30 of 139

Case 8:23-ap-01046-SC    Doc 45-1    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Richard A. Marshack    Page 1 of 9

1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone:  619.400.0500
Facsimile:  619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | jonathan.serrano@dinsmore.com

7 | Proposed Special Counsel to Richard A. Marshack

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11 |

12 | In re: | Case No.: 8:23-bk-10571-SC

13 | THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC

14 | Debtor. | Chapter 11

15 | Richard A. Marshack, | **DECLARATION OF CHAPTER 11 TRUSTEE, RICHARD A. MARSHACK  IN SUPPORT OF STATUS CONFERENCE REPORT**

16 | Plaintiff |

17 | v. | Date:    June 12, 2023
Time:    1:30 p.m.

18 | TONY DIAB, an individual; DANIEL S. | Judge: Hon. Scott C. Clarkson

19 | MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; | Place:    Courtroom 5C
411 W. Fourth Street

20 | WILLIAM TAYLOR CARSS, an individual; ENG TANG, an individual; MARIA EEYA TAN, | Santa Ana, CA  92701

21 | an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an |

22 | individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY |

23 | CHHOR, an individual; DONGLIANG JIANG, an individual; OAKSTONE LAW GROUP PC; |

24 | GREYSON LAW CENTER PC; PHOENIX LAW GROUP, INC.; MAVERICK |

25 | MANAGEMENT, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN |

26 | CONSULTING GROUP LLC; B.A.T. INC. d/b/a COAST PROCESSING; PRIME LOGIX, LLC; |

27 | TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD |

28 | GLOBAL; OPTIMUMBANK HOLDINGS, INC. d/b/a OPTIMUM BANK; MARICH BEIN, LLC; |

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 31 of 139

Case 8:23-ap-01046-SC    Doc 45-1    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Richard A. Marshack    Page 2 of 9

1  BANKUNITED, N.A.; REVOLV3, INC.;
   FIDELITY NATIONAL INFORMATION
2  SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
   WORLDPAY GROUP; MERIT FUND, LLC;
3  GUARDIAN PROCESSING, LLC; THE
   UNITED STATES POSTAL SERVICE; and
4  DOES 1 through 100, inclusive,

5              Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document      Page 32 of 139

Case 8:23-ap-01046-SC    Doc 45-1    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Richard A. Marshack    Page 3 of 9

## <u>DECLARATION OF RICHARD A. MARSHACK</u>

I, Richard A. Marshack, declare as follows:

1.    I am the duly appointed Chapter 11 Trustee in the above captioned matter. I am an equity partner at Marshack Hays LLP, and duly admitted to practice before all of the Courts in the State of California, United States District Court for the State of California and the United States Bankruptcy Courts for the State of California.

2.    I have personal knowledge of the matters set forth herein. If called as a witness in this matter, I could and would testify competently thereto.

3.    I submit this declaration in support of the *Status Conference Report*, filed contemporaneously herewith. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the *Status Conference Report.*

4.    Since the outset of being appoint Chapter 11 Trustee in this matter, my primary concern has been the welfare of the Consumer Creditors which has formed the basis of my plan of action and in my judgment the best course of action moving forward. To that end, I assisted in the formation of an ad hoc consumer creditors committee. Further, I reached out to the he law firm of Pachulski Stang Ziehl & Jones LLP ("Pachulski Stang") to consider taking such representation with the understanding that the Trustee would support a reimbursement agreement so the estate would pay the legal expenses at no cost to the Consumer Creditors.

5.    Attached is a true and correct copy of an email sent from Tony Diab to myself on May 31, 2023 attached as **Exhibit 6**.

6.    After serving the Court's Emergency Order, more than $1.4 million dollars has been transferred to and/or turned over to my control. The final figures have yet to be determined as certain transfers and other accounts holds have not been fully processed as of the date of my declaration.

7.    In the best interest of the Consumer Creditors and in my best judgment, it would be my recommendation to the Court, subject to related motion and Court approval, to proceed as follows:

a.    Grant authority for a third party to operate Debtor for a short, two to three week period of time pending a motion for sale of Debtor's assets or, in the alternative, a winding

1

down of Debtor's Business, and for certain at any time in the event the Debtor's Business cannot be operated legally;

  b.    Any motion seeking to assume and assign (or sell), would seek findings from the Court that such sale and further provision of services was legal, and would only be sold if the Purchaser affirms acceptance of appropriate safeguards for the Consumer Creditors;

  c.    It is the Trustee's belief that any sale would be subject to and consistent with Rule 1.17 of the ABA Model Rules of Professional Responsibility allowing clients of the Law Firm a full 90-day period to Opt Out of the sale and seek their own counsel; the Trustee would welcome the maintenance of a Preliminary Injunction to prevent continued prey upon these clients by the Principals of the Debtor and its alter egos.

  d.    With consumer input (an ad hoc committee of Consumer Creditors has been formed), the Trustee could effectuate a system where there are safeguards to the Consumer Creditor built-in to the post-sale operations, with audit and other document inspection rights that could be made available to ensure ethical treatment of the customers.

  e.    Additionally, there are a series of "call centers" that work the industry, and they are accustomed to robocalls of the consumers and assigning those clients to firms, like Debtor, to service. A continuation of the case offers a chance to expose and correct some of that activity with appropriate court orders.

  f.    Alternatively, should the Court find that the Debtor's business may not appropriately be continued under management of a reputable firm with consumer safeguards in place with the input of the consumer committee, then Trustee believes, in his best judgment, that Debtor's business should in all likelihood be wound down over a short but reasonable period of time to protect the consumers and provide time to allow Consumer Creditors of Debtor to seek similar services and potentially make claims for reimbursement based on any

EXHIBIT 1, PAGE 32

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 34 of 139

Case 8:23-ap-01046-SC    Doc 45-1    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Richard A. Marshack    Page 5 of 9

1  contract that remain executory, with the protection of an enforced Preliminary Injunction

2  prohibiting the continued wrongful conduct, especially that of Greyson.

3      8.      To date, I have received one offer from a reputable business to pay more than $35

4  million to purchase the assets and provide the services for the Consumer Creditors contracted. Other

5  bidders exist, who would likely make offers on overbid to be able to secure the assumption and

6  assignment of the consumer contracts.

7      I declare under penalty of perjury under the laws of the state of California that the foregoing

8  is true and correct, and that this declaration is executed on this 12 day of June, 2023.

9

10

11                                                                  _____

12                                                                  Richard A. Marshack

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 35 of 139

Case 8:23-ap-01046-SC    Doc 45-1    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Richard A. Marshack    Page 6 of 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

EXHIBIT 6
Page 4

EXHIBIT 1, PAGE 34

**From:** Tony Diab <tony@coastprocessing.com>
**Date:** May 31, 2023 at 5:12:37 PM PDT
**To:** Richard Marshack <RMarshack@marshackhays.com>, Ed Hays
<EHays@marshackhays.com>
**Cc:** "joon khanglaw.com" <joon@khanglaw.com>, Pam Kraus <pkraus@marshackhays.com>,
"Daniel S. March" <dan@litigationpracticegroup.com>
**Subject: Christopher Celentino**

Hi Richard and Ed -

Christopher Celentino contacted a former LPG attorney/employee today stating that he was
retained by the US Trustee to look into LPG.  That former LPG attorney contacted me to confirm
whether this was true.  I looked up Mr. Celentino and see that he is with Dinsmore & Shohl.  I
instructed the attorney that I have not been told of Mr. Celentino's retention or participation in
this matter.  Please let me know if he is working with you as soon as possible.  He was asking
questions that suggest he is counsel for a creditor, not for the US Trustee's office.  I obviously do
not want to interfere if he was retained, so hopefully I was not wrong in stating that this
employee should not respond to Mr. Celentino.  Thank you in advance for your response.

Thanks,
Tony

EXHIBIT 6
Page 5
EXHIBIT 1, PAGE 35

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF CHAPTER 11 TRUSTEE, RICHARD A. MARSHACK  IN SUPPORT OF STATUS CONFERENCE REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 12, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠      Service information continued on attached page

**2**.  **SERVED BY UNITED STATES MAIL**:  On <u>June 12, 2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐      Service information continued on attached page

**3**.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>June 12, 2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>JUDGE'S COPY</u>
The Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐      Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 12, 2023 | Caron Burke | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

EXHIBIT 1, PAGE 36

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  Jonathan Serrano (State Bar No. 333225)
   **DINSMORE & SHOHL LLP**
3  655 West Broadway, Suite 800
   San Diego, CA 92101
4  Telephone:  619.400.0500
   Facsimile:  619.400.0501
5  christopher.ghio@dinsmore.com
   christopher.celentino@dinsmore.com
6  jonathan.serrano@dinsmore.com

7  Proposed Special Counsel to Richard A. Marshack

8

9                    **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11

12  In re:                                    Case No.: 8:23-bk-10571-SC

13  THE LITIGATION PRACTICE GROUP P.C.,       Adv. Proc. No. 8:23-ap-01046-SC

14          Debtor.                           Chapter 11

15  _____   **DECLARATION OF CHRISTOPHER
                                              CELENTINO IN SUPPORT OF STATUS
16  Richard A. Marshack,                      CONFERENCE REPORT**

17          Plaintiff                         Date:   June 12, 2023
                                              Time:   1:30 p.m.
18  v.                                        Judge:  Hon. Scott C. Clarkson
                                              Place:  Courtroom 5C
19  TONY DIAB, an individual; DANIEL S.               411 W. Fourth Street
    MARCH, an individual; ROSA BIANCA LOLI,           Santa Ana, CA  92701
20  an individual; LISA COHEN, an individual;
    WILLIAM TAYLOR CARSS, an individual;
21  ENG TANG, an individual; MARIA EEYA TAN,
    an individual; JAKE AKERS, an individual; HAN
22  TRINH, an individual; JAYDE TRINH, an
    individual; WES THOMAS, an individual;
23  SCOTT JAMES EADIE, an individual; JIMMY
    CHHOR, an individual; DONGLIANG JIANG,
24  an individual; OAKSTONE LAW GROUP PC;
    GREYSON LAW CENTER PC; PHOENIX
25  LAW GROUP, INC.; MAVERICK
    MANAGEMENT, LLC; LGS HOLDCO, LLC;
26  CONSUMER LEGAL GROUP, P.C.; VULCAN
    CONSULTING GROUP LLC; B.A.T. INC. d/b/a
27  COAST PROCESSING; PRIME LOGIX, LLC;
    TERACEL BLOCKCHAIN FUND II LLC;
28  EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
    GLOBAL; OPTIMUMBANK HOLDINGS, INC.
    d/b/a OPTIMUM BANK; MARICH BEIN, LLC;

EXHIBIT 1, PAGE 38

Case 8:23-ap-01046-SC   Doc   Filed 07/05/23   Entered 07/05/23 19:07:52   Desc Main
Document   Page 40 of 139

Case 8:23-ap-01046-SC   Doc 45-2   Filed 06/12/23   Entered 06/12/23 09:41:27   Desc
Declaration of Christopher Celentino   Page 2 of 6

1   BANKUNITED, N.A.; REVOLV3, INC.;
    FIDELITY NATIONAL INFORMATION
2   SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
    WORLDPAY GROUP; MERIT FUND, LLC;
3   GUARDIAN PROCESSING, LLC; THE
    UNITED STATES POSTAL SERVICE; and
4   DOES 1 through 100, inclusive,

5                    Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 41 of 139

Case 8:23-ap-01046-SC    Doc 45-2    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Christopher Celentino    Page 3 of 6

## <u>DECLARATION OF CHRISTOPHER CELENTINO</u>

I, Christopher Celentino, declare as follows:

1.     I am an attorney duly licensed to practice law in the State of California. I am a partner attorney in the law firm Dinsmore & Shohl LLP, proposed special counsel for Richard A. Marshack, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estate of The Litigation Practice Group, L.P. (the "Debtor" or "LPG"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.     I submit this declaration in support of the *Status Conference Report*, filed contemporaneously herewith. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the *Status Conference Report.*

3.     On June 2, 2023, I assisted Trustee Richard Marshack and his team of agents in the service of the Emergency Order and their communications to staff incident thereto, to encourage cooperation in the turnover and delivery of the Consumer Creditor information and files as called for in the Emergency Order.  Mr. Ty Carss, the lead attorney for Phoenix, was cooperative and supervised his staff in their discharge of their duties to customers of Phoenix.   Although the Emergency Order enjoins the use of any such funds that were generated through the ACH pulls of LPG clients, there is no provision in such Order to utilize such consumer funds for payment of any payroll or other obligations of the various alter ego and fraudulent conveyance partners of LPG.  Employees and staff were obviously upset with that aspect of the Emergency Order, and it seemed as if former management -- except Ty Carss -- went out of their way to suggest that the Trustee's compliance with the Emergency Order was in derogation of the hopes and wishes of the employees and staff.  Trustee and his team implemented the Emergency Order as written.

4.     I have communicated with a number of lawyers who are actually providing legal services to the carious Consumer Creditors transferred to various entities, including Phoenix and Greyson. The lawyers I spoke with, appeared to be discharging their duties and providing the services under LPG's Legal Services Contract diligently. They informed me court appearances continue to be made. LPG consumer Creditor cases are being settled. Moreover, that they have not received any

1

1  complaints from any Consumer Creditor concerning matters handling in the 72 hours after the

2  Emergency Order was served and the Trustee secured the Consumer Creditor information and funds

3  as detailed in the concurrently filed status report.

4       5.    Ms. Trinh was initially introduced to me during a call with Richard Marshack and

5  Tony Diab on June 2, 2023, when Mr. Diab instructed Ms. Trinh to comply with the Emergency Order

6  and turnover to the Trustee all information pertaining to Greyson. During a subsequent conversation

7  I had with Ms. Han Trinh, she informed me she "hates Tony Diab, that she and her sister Jayde started

8  this company to separate itself from Tony Diab and the terrible persons running LPG and Phoenix

9  and that Greyson, Han and her sister have no affiliation or contact with Mr. Diab."

10      I declare under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct.

12

13  Dated:  June 11, 2023                  */s/ Christopher Celentino*

                                            Christopher Celentino

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1, PAGE 41

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
655 W. Broadway, Suite 800, San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF CHRISTOPHER CELENTINO IN SUPPORT OF STATUS CONFERENCE REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 12, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

⊠    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On <u>June 12, 2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>June 12, 2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 12, 2023 | Caron Burke | *[signature]* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone:  619.400.0500
Facsimile:  619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | jonathan.serrano@dinsmore.com

7 | Proposed Special Counsel to Richard A. Marshack

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11 |

12 | In re:

13 | THE LITIGATION PRACTICE GROUP P.C.,

14 |       Debtor.

15 |

Richard A. Marshack,

16 |       Plaintiff

17 | v.

18 | TONY DIAB, an individual; DANIEL S.
19 | MARCH, an individual; ROSA BIANCA LOLI,
an individual; LISA COHEN, an individual;
20 | WILLIAM TAYLOR CARSS, an individual;
ENG TANG, an individual; MARIA EEYA TAN,
21 | an individual; JAKE AKERS, an individual; HAN
TRINH, an individual; JAYDE TRINH, an
22 | individual; WES THOMAS, an individual;
SCOTT JAMES EADIE, an individual; JIMMY
23 | CHHOR, an individual; DONGLIANG JIANG,
an individual; OAKSTONE LAW GROUP PC;
24 | GREYSON LAW CENTER PC; PHOENIX
LAW GROUP, INC.; MAVERICK
25 | MANAGEMENT, LLC; LGS HOLDCO, LLC;
CONSUMER LEGAL GROUP, P.C.; VULCAN
26 | CONSULTING GROUP LLC; B.A.T. INC. d/b/a
COAST PROCESSING; PRIME LOGIX, LLC;
27 | TERACEL BLOCKCHAIN FUND II LLC;
EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
28 | GLOBAL; OPTIMUMBANK HOLDINGS, INC.
d/b/a OPTIMUM BANK; MARICH BEIN, LLC;

Case No.: 8:23-bk-10571-SC

Adv. Proc. No. 8:23-ap-01046-SC

Chapter 11

**DECLARATION OF JONATHAN
SERRANO IN SUPPORT OF STATUS
CONFERENCE REPORT**

Date:    June 12, 2023
Time:    1:30 p.m.
Judge:  Hon. Scott C. Clarkson
Place:   Courtroom 5C
            411 W. Fourth Street
            Santa Ana, CA  92701

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 46 of 139

Case 8:23-ap-01046-SC    Doc 45-3    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jonathan Serrano    Page 2 of 39

1  BANKUNITED, N.A.; REVOLV3, INC.;
   FIDELITY NATIONAL INFORMATION
2  SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
   WORLDPAY GROUP; MERIT FUND, LLC;
3  GUARDIAN PROCESSING, LLC; THE
   UNITED STATES POSTAL SERVICE; and
4  DOES 1 through 100, inclusive,

5              Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I, JONATHAN SERRANO, declare:

1.    I am an attorney duly licensed to practice law in the State of California. I am an associate attorney in the law firm Dinsmore & Shohl LLP, proposed special counsel for Richard A. Marshack, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estate of The Litigation Practice Group, L.P. (the "Debtor" or "LPG"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.    I submit this declaration in support of the *Status Conference Report*, filed contemporaneously herewith. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the *Status Conference Report*.

3.    On June 2, 2023, I accompanied Lori Ensley, Gary DePew, Russ Squires, (collectively, the "Trustee's Team") and a service processor onto the premises of Phoenix and Greyson located at 3347 Michelson Drive, Suite 400, 410 & 420, Irvine, CA 92612. While on the premises, I explained to several people including Stephanie King, Phoenix's HR Manager; Rosa Bianca Loli, Maverick's owner; and Justin Nguyen, Greyson's information technology ("IT") professional, that the Trustee's Team was present to execute the TRO. I explained that the TRO required their compliance therewith. I also explained that Mr. DePew and Mr. Squires were on site to ensure that Consumer Creditors continue to get the services they need and that one of the Court's chief concerns is that Consumer Creditors' files are properly and legally handled.

4.    On June 2, I worked with Justin Nguyen to secure administrative access to LPG and Greyson's Microsoft 365 account and domain hosting.

5.    On June 5, 2023, I again accompanied the Trustee's Team, along with Alex Rubin, an IT professional, to support execution of the TRO. I relayed the IT account information that I had obtained to Mr. Rubin and supported him in further securing access.

6.    I requested copies of a lease or sublease from Phoenix or Greyson. However, none were available to be provided. We are in the process of investigating Phoenix and/or Greyson's right to be on the premises. As of now, there appears not to be such rights as no lease, sublease, or other agreement has been provided.

EXHIBIT 1, PAGE 46

7.     On June 6, 2023, Rosa Bianca Loli complied with the TRO and delivered to me the username and password for Maverick's Wells Fargo checking account. Due to the checking account having an RS security device, which Ms. Loli said was lost, I arranged to meet Ms. Loli at the Wells Fargo branch located at 14468 Culver Drive, Irvine, CA 92604. At approximately 1:00 p.m. on June 9, 2023, Ms. Loli obtained a cashier's check in the amount of $239,197.01, the balance of the checking account, and handed it over to me. Thereafter, I immediately delivered the cashier's check to the Trustee's office. A true and correct copy of the cashier's check is attached hereto as **Exhibit 1**.

8.     On June 5, 2023, at Phoenix's town hall meeting, I learned from Phoenix employees that payment processors were making unauthorized draws on Consumer Creditors' bank accounts. Consumer Creditors were often having their monthly fee debited twice in one month. I requested from Ms. Loli a list of payment processors making these unauthorized draws. On June 7, 2023, Ms. Loli provided a list process that Eng Taing was using to debit the LPG clients, allegedly wrongfully. Those processors included (i) Paynote by Seamlesschex, (ii) Dwolla, (iii) Stripe, (iv) Bank of the West, and (v) Unity Financial. Upon looking into the Phoenix's business records, we learned that Mr. Taing created an account under Guardian Processing at a newly discovered ACH processing company, Payliance, to process the ACH transactions that appear to relate to legacy LPG clients. I learned that, in May 2023, Mr. Taing by and through Guardian Processing and the ACH services of Payliance pulled $551,893.42 in ACH transactions on LPG client accounts that had been wrongfully transferred to Oakstone Legal Group. These funds were then transferred to a separate entity, Touzi Capital, Inc., with which I am informed and believe Mr. Taing and his brother, Heng Taing, are involved and operating what has been described in complaints available online as a financial / cryptocurrency ponzi scheme. A true and correct copy of the online complaints and reviews on Reddit, last accessed 6/11/2023 is attached hereto as **Exhibit 2**.

9.     On June 7, 2023, I received what seemed like hundreds of emails from Greyson employees who were frustrated by having not been paid. They expressed to me that Greyson had not paid them timely prior to June 2 and they were told internally that they would get paid on June 9. In response, I informed the Greyson employees that the Trustee was working through issues and hoped

2

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 49 of 139

Case 8:23-ap-01046-SC    Doc 45-3    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jonathan Serrano    Page 5 of 39

1  to be able to restore some sense of normalcy for them. There appeared to be a narrative coming from

2  within Greyson that the Trustee's Team was preventing them from being paid.

3      10.    Upon investigation into the Greyson's bank accounts, we learned that Greyson did not

4  have sufficient funds to make its payroll. Instead, Greyson's payroll was being paid through Vulcan

5  Consulting and/or Prime Logix's Bank of America Accounts, which accounts were the recipients of

6  LPG customer monies. In addition, it appears that funds taken from consumer customers of LPG and

7  diverted to Touzi Capital may have been used by Touzi Capital on more than one occasion to make

8  payroll to attorneys and employees of Greyson.

9      11.    On June 8, 2023, I reviewed a list representing all of Greyson's clients from Greyson's

10  business records. The list details a total of 48 clients being serviced by Greyson. The list indicates

11  that all of the files were transferred to Greyson from Oakstone, postpetition; the Declaration of Mr.

12  Carss of Phoenix, submitted in conjunction herewith, indicates that 42 of those clients remain as

13  "active" in the CRM system shared by Greyson and Phoenix.

14      12.    On June 8, 2023, I requested from Han Trinh a list of Greyson's employees with pay

15  rates and job titles. But Ms. Trinh ignored my request.

16      13.    On June 9, 2023, I also requested account credentials for Greyson's Zoom account

17  from Ms. Trinh. Again, she ignored my request.

18      14.    On June 9, 2023, after a request for the employee list was made to Maria Thach,

19  Greyson's HR Director, I received the list. The list included 139 employees, with annual salaries

20  ranging from $36,000 to $500,000 and hourly wages ranging from $16.00 to $40.00.  The total annual

21  payroll, assuming the hourly employees work only 1 hour, exceeds $6.79M.

22      15.    I was also provided the attached QC (Quality Control) Script and Sales Script which

23  are regularly kept in the ordinary course of business as **Exhibits 7 and 8**, respectively.

24      16.    On June 9, 2023, I learned that Greyson and Phoenix attorneys have secured recent

25  victories for clients, including legal challenges to creditors such as obtaining a judgment in favor of

26  a client over Goldman Sachs, covering the cost of the fees paid to the Debtor and providing

27  compensation to the client.

28

3

EXHIBIT 1, PAGE 48

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 50 of 139

Case 8:23-ap-01046-SC    Doc 45-3    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jonathan Serrano    Page 6 of 39

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct.

3

4    Dated:  June 11, 2023

5    Jonathan Serrano

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document      Page 51 of 139

Case 8:23-ap-01046-SC    Doc 45-3    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jonathan Serrano    Page 7 of 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

EXHIBIT 1

Page 5

EXHIBIT 1, PAGE 50



EXHIBIT 1
Page 6
EXHIBIT 1, PAGE 51

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

EXHIBIT 2
Page 7

EXHIBIT 1, PAGE 52



Search Community

Get app    Log In

 **r/realestateinvesting** • 2 yr. ago    Join    •••
by sifeo

# TouziCapital Scam or Not ?

Hi all,

Like many of you I'm looking for some passive income stream. I don't want to manage/deal with properties, it's too time consuming. I'm exposed to the stock market and have some retirement accounts. I looked for real estate syndication and found a couple of sites: Fundrise, Peerstreet and TouziCapital.

The thing is TouziCapital seems to be too good to be true: return of 1% monthly, 1 year commitment on some investments/funds, no fee (they don't do it for free it just means they make more than the 1% they share with you). Anyway it looks too good to be true and I really have no idea on how to "evaluate" if they are solid financially and trustworthy. Any idea? Also the way the investment works is you get share in a spinoff corp so it means their initial business is never affected if anything goes wrong which worries me a bit. It seems like a shield to their main business but maybe it's just the way these investment deals are done.

⬆ 6 ⬇    💬 100    ⬆ Share

u/Microsoft_Azure • Promoted

Choose the right virtual machines for your workloads and reduce costs.

azure.microsoft.com                    Sign Up

Sort by: 🛡 Best ⌄                                    100 comments

＋ Add a Comment

**Kabinetapp** • 2 yr. ago

Be very careful investing your money in places where you do not have direct control over it. Hope this helps as we wouldn't want to comment on anyone's business specifically without knowing the full details.

⬆ 4 ⬇    💬 Reply    ⬆ Share    •••

[deleted] • 1 yr. ago

**Any-Tax6279** • 1 mo. ago

EXHIBIT 2
Page 8
EXHIBIT 1, PAGE 53



Log In

about this. Genuinely not sure if he is busy, unwell, or left the country. If you are considering taking legal action please reach out.

⊖    ⬆ 3 ⬇    💬 Reply    ⬆ Share    ···

**Any-Tax6279** • 1 mo. ago

Also before I get roasted. I'm new to Reddit and have no idea what I'm doing. Just created this account because someone told me I might find other touzi investors here.

⬆ 2 ⬇    💬 Reply    ⬆ Share    ···

⊕ 3 more replies

**arvindramki** • 1 mo. ago

Can you share the concerning news? I haven't invested in the same project but have invested in another senior living facility.

⬆ 2 ⬇    💬 Reply    ⬆ Share    ···

⊕ 13 more replies

⊕ 2 more replies

**Redcrux** • 2 yr. ago

Google Eng Taing, he is the founder and did an interview that's floating around online. It seems legit but you are literally just investing your money in a big real estate investor from Kansas city. He has been investing for 12 years and was originally a data scientist at Apple if that means anything. If you think he can deliver than you're good, if he goes under so will your money. There is no such thing as a guaranteed return.

⊖    ⬆ 2 ⬇    💬 Reply    ⬆ Share    ···

**bornamental** • 2 yr. ago

Are guaranteed returns common in real estate syndications? Because 1% a month guaranteed returns sounds like a ponzi scheme to me

⬆ 2 ⬇    💬 Reply    ⬆ Share    ···

⊕ 8 more replies

**jtfromer** • 9 mo. ago

We work directly with Touzi and our members have invested in several of their projects - we are a free group of investors, formed for this exact reason - so we could discuss projects and vet sponsors like Touzi. Check us out at AdaptMyWealth.com

⬆ 2 ⬇    💬 Reply    ⬆ Share    ···

**CommitteeCute2683** • 6 mo. ago

I heard recently from a guy who invested with them that most of the real estate and crypto funds have stopped paying distributions. Not saying its a Ponzi but it walks like a duck..

⊖    ⬆ 1 ⬇    💬 Reply    ⬆ Share    ···

EXHIBIT 2
Page 9
EXHIBIT 1, PAGE 54

Log In

programs where the ¨sponsor¨ makes money regardless and you're not having that much upside. In the end I just do my own investment and I'm better off.

⬆ 2 ⬇    💬 Reply    ⬆ Share    ···

⊕ 6 more replies

[deleted] · 1 mo. ago

sifeo 🎙 · 3 days ago

just updating that I got report from some people that couldn't reach the CEO Eng Taing recently. Today I just found out he disabled his linkedin profile. I feel like I dodged a bullet :/

⬆ 1 ⬇    💬 Reply    ⬆ Share    ···

⊕ 4 more replies

[deleted] · 2 yr. ago

nankerjphelge · 2 yr. ago

I don't have any personal experience with that particular fund, however I do have experience with other private lending funds, specifically Ignite Funding, which is legit and I have had good results with.

Such managed private lending funds can be totally legit, you just want to do your due diligence to check their track record, specifically how many loans they've managed that went into default or foreclosure, what the results of those defaults or foreclosures were in terms of returning capital to investors, and length of time they've been in business as a private lending fund.

It's also a good idea to do a Google and BBB search to see if there are reviews from previous or current investors and if there are any major complaints or issues that come up in those reviews and searches. Given that there are a number of private lending funds out there you could invest with, I would pass if you can't find a significant number of favorable reviews from other investors for the fund you're looking at.

⬆ 1 ⬇    💬 Reply    ⬆ Share    ···

arvindramki · 1 yr. ago

I'm not sure if anyone has any negative experiences with Touzi but I just invested 25k in their senior living offering. I was also skeptical but I took the plunge now that they have a couple years of track record and AUM has increased considerably. I hope it all works out. Fingers crossed

⊖ ⬆ 1 ⬇    💬 Reply    ⬆ Share    ···

BUSFULOFNUNS · 10 mo. ago

How did this go for you?

I am also considering investing in one of their real estate offerings.

⬆ 1 ⬇    💬 Reply    ⬆ Share    ···

EXHIBIT 2
Page 10
EXHIBIT 1, PAGE 55



Log In

[deleted] • 5 mo. ago



**jszeto0724** • 9 days ago

Anyone here invest in Touzi's Bitcoin Mining fund? Let's connect.

⊖    ⌃ 1 ⌄    💬 Reply    ⬆ Share    ⋯



**California2019Ellie** • 8 days ago

message BlackEndLight - he knows Ryan Beatty, ex-Touzi employee, and they are working on getting a class action law suit together.

⌃ 1 ⌄    💬 Reply    ⬆ Share    ⋯



[deleted] • 4 days ago

## More posts you may like

    r/singaporefi • 2 yr. ago

Is SYFE good?

9 upvotes  ·  10 comments

r/Superstonk • 2 yr. ago

Can we talk about brokers real quick?

14 upvotes  ·  8 comments

    r/CryptoCurrency • 2 yr. ago

I am a co-founder of a crypto company and I am super worried about marketing space in this industry. Seriously, how do you actually look for something worth investing in?

14 upvotes  ·  111 comments

r/tax • 2 yr. ago

What is the likely of being audited by the IRS (Crypto bot trading)

1 upvote  ·  12 comments

r/BEFire • 2 yr. ago

Is the ING Focus Plan worth it?

6 upvotes  ·  10 comments

EXHIBIT 2
Page 11
EXHIBIT 1, PAGE 56



Log In

---

### Rethinking the Ethics of Real Estate Investing

398 upvotes  ·  282 comments

---

 r/realestateinvesting · 6 days ago

### Section 8 Deposited $17,000 To My Account

104 upvotes  ·  89 comments

---

 r/realestateinvesting · 10 days ago

### How are people scaling to 40 properties in 3 years?

174 upvotes  ·  255 comments

---

 r/realestateinvesting · 28 days ago

### What don't property management companies do?

101 upvotes  ·  120 comments

---

 r/realestateinvesting · 25 days ago

### What is your income from real estate investing?

138 upvotes  ·  326 comments

---

 r/realestateinvesting · 3 days ago

### For those waiting for a housing market crash, why do you think it will happen? The majority of loans are not ARMs like they were back in the early 2000s.

150 upvotes  ·  347 comments

---

 r/realestateinvesting · 22 days ago

### Why are these closing costs so high when buying a home now? What happened to 5-6% of the cost of the home? Sale price is $135k with $15k closing costs?

135 upvotes  ·  96 comments

---

 r/realestateinvesting · 13 days ago

### What has been your most expensive mistake?

187 upvotes  ·  243 comments

---

 r/realestateinvesting · 4 days ago

EXHIBIT 2
Page 12
EXHIBIT 1, PAGE 57



Log In

227 upvotes  ·  110 comments

r/RealEstate · 16 days ago

## Buyers are short $8k. What are my options?

715 upvotes  ·  758 comments

r/RealEstate · 27 days ago

## Why are listing prices HIGHER than last year with higher interest rates?

416 upvotes  ·  496 comments

r/RealEstate · 20 days ago

## What are my obligations, if any?

126 upvotes  ·  100 comments

r/RealEstate · 3 days ago

## What are the chances of getting a 2nd offer in the last hour of a deadline?

303 upvotes  ·  240 comments

r/realtors · 2 days ago

## Don't be that agent.

305 upvotes  ·  141 comments

r/RealEstate · 18 days ago

## The interest rate blues

152 upvotes  ·  302 comments

r/RealEstate · 18 days ago

## We (buyer) pulling out of deal

302 upvotes  ·  172 comments

r/RealEstate · 10 days ago

## Seller/Agent mad about us having a lawyer

302 upvotes  ·  255 comments

EXHIBIT 2
Page 13
EXHIBIT 1, PAGE 58

    Q                                                          Log In

198 upvotes  ·  150 comments

---

r/RealEstate · 27 days ago

### Am I crazy to sell my house when I have a 3% mortgage?

731 upvotes  ·  302 comments

---

r/RealEstate · 23 days ago

### Two Que. real estate brokers under investigation for submitting bogus bids on homes

125 upvotes  ·  51 comments

EXHIBIT 2
Page 14
EXHIBIT 1, PAGE 59

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
                    Document        Page 61 of 139

Case 8:23-ap-01046-SC    Doc 45-3    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
                Declaration of Jonathan Serrano    Page 17 of 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 6

EXHIBIT 6
Page 15

EXHIBIT 1, PAGE 60

Litigation Practice Group QC Script

QC number 725-735-8100 Hours M-F 7 AM-6 PM PDT

Good afternoon/morning, **[CLIENT NAME].** this is **[YOUR NAME]** with the LPG Verification Department.

Welcome to LPG. It is great to meet you today. Based on your situation and file, it looks like you are prime candidate for our program. I will be conducting your verification call with you today.

Now, before I continue, I would like to advise you this call is for verification of your file and program with LPG.

If you have any questions during or after this call, you can contact LPG directly at 949-229-6262.

This call will be recorded for quality assurance purposes. Do I have your permission to record this call? Great. Thank you!

EXHIBIT 6
Page 16
EXHIBIT 1, PAGE 61

Litigation Practice Group QC Script

In the event we are disconnected, is **[CLIENT's PHONE #]** the best number to reach you?

Is this your primary contact number? Are we able to leave voice messages on this number? Is this a cell phone?

**[IF YES]** Are we able to send text messages to this number? Thank you.

EXHIBIT 6
Page 17
EXHIBIT 1, PAGE 62

Litigation Practice Group QC Script

I see that you have been speaking with **[OUTREACH SPECIALIST NAME]** and you have enrolled into the **Litigation Practice Group Legal Debt Resolution Program**. Is that correct?

Can you please state and spell your full legal name? Can you please confirm your complete mailing address? Are we able to send mail to this address?

Do you have any additional phone numbers you wish to be contacted on?

Can you please state your date of birth?

If Yes > You will get text reminders about upcoming payments, follow-up calls and updates to your account.

If No > Thank you. I will note that on your file.

EXHIBIT 6
Page 18
EXHIBIT 1, PAGE 63

Litigation Practice Group QC Script

Now, there are several different types of debt programs on the market and I realize that some people have preconceptions about the LPG program so I want to take this time to go over some details about the program and make sure you understand how the LPG program is different and how it is going to resolve the accounts you have enrolled in the program.

If you do not understand anything I ask or say, I will be more than happy to repeat it for you, OK?

EXHIBIT 6
Page 19
EXHIBIT 1, PAGE 64

Litigation Practice Group QC Script

First, by enrolling in the program, you are now represented by The Litigation Practice Group or LPG for short. LPG is a law firm that specializes in resolving and eliminating debt and your lawyer is Daniel S. March. Do you understand?

Yes > Thank you...Go to the next question

No > LPG is a law firm that specializes in debt resolution and will represent you with the creditors you have enrolled in the program.

EXHIBIT 6
Page 20
EXHIBIT 1, PAGE 65

Litigation Practice Group QC Script

The monthly payments you are making are for the attorney fees associated with your representation by LPG. Do you understand?

Yes > Thank you... Go to the next question

No > The monthly payments are for the retainer fee to have the law firm resolve your debts. They are split up into payments to make the program affordable to you. If LPG cannot invalidate your accounts, you are entitled to a refund of what you have paid LPG for those accounts.

EXHIBIT 6
Page 21
EXHIBIT 1, PAGE 66

Litigation Practice Group QC Script

The Litigation Practice Group is a law firm specializing in debt resolution and it is not a debt settlement program. Do you understand the difference?

Yes > Thank you...Go to the next question.

No > Debt settlement is a program that puts your monthly payments into an escrow account where it builds into a lump sum payoff of your accounts one at a time. Debt resolution is a program that uses a legal process to resolve your debt and remove them from your credit report. It can include several different resources and processes that attorneys have access to and knowledge about.

EXHIBIT 6
Page 22
EXHIBIT 1, PAGE 67

Litigation Practice Group QC Script

The attorney fees you are paying will go to The Litigation Practice Group and not to your creditors. They do not accumulate towards settlement and they will not be used to pay your debts. Do you understand?

Yes > Thank you...Go to the next question.

No > The LPG program is designed to resolve your debts through a process of disputing and invalidating your accounts. The collection agencies have an obligation to prove they have a legal right to collect from you and most of the time they cannot. There is a chance your accounts might have to be settled and LPG will handle that as well. The goal is to resolve your debts one way or another through their legal process.

EXHIBIT 6
Page 23
EXHIBIT 1, PAGE 68

Litigation Practice Group QC Script

If at the end of the process, LPG is unable to invalidate or resolve one or more of your accounts, you are entitled to a refund for the fees paid for that or those accounts that can be used towards a settlement with the creditor. OK?

Yes > Thank you…Go to the next question.

No > Our settlement process is included in the program and there is no fee for that service. Your payments to the program will be adjusted and reduced to include the payments for your settlement, but you will pay the settlement payments directly to the creditor.

EXHIBIT 6
Page 24
EXHIBIT 1, PAGE 69

Litigation Practice Group QC Script

If you receive a lawsuit on any account, The Litigation Practice Group will represent you and handle all legal proceedings at NO ADDITIONAL cost to you. Do you understand?

Yes > Thank you…Go to the next question

No > While it's not very common, some creditors will choose to file a summons complaint to collect. Don't panic. You will send your paperwork to LPG and LPG will answer the summons, negotiate on your behalf, and then settled the account for you. Once settled, it can still be removed from your credit report.

EXHIBIT 6
Page 25
EXHIBIT 1, PAGE 70

Litigation Practice Group QC Script

Depending on your current credit standing, this program could possibly have a temporary negative effect on your credit. Do you understand? However, it is the goal of this program to resolve and delete any derogatory information from your credit report.

Yes > Thank you. That completes the questions.

No > [CLIENT NAME] your credit report is used by creditors to determine whether to extend new credit to you or not, but your main concern while in our program should be getting out of debt. Once your accounts are invalidated and removed from your credit report, your credit should begin to repair itself as long as the rest of your credit stays positive. Repeat Question.

EXHIBIT 6
Page 26
EXHIBIT 1, PAGE 71

Litigation Practice Group QC Script

Now I would like to go over the accounts being enrolled into the program.

I show there are **[# of accounts]** accounts listed on your agreement.

I would like to go over the accounts and balances enrolled. [Go over each account name and balance of the account(s). If you cannot tell what the creditor is, state what is listed and then state the balance. The client will most likely know what it is.]

Do you agree that the accounts and amounts listed on your agreement are correct to the best of your knowledge?

Do you understand that if any of the enrolled debts are auto loans, secured, or have any type of collateral, those items may be repossessed?

Yes > Thank you.

No > Ok, once we complete the call, I will have LPG reach out and get the correct numbers so we have the most accurate info for your file.

EXHIBIT 6
Page 27
EXHIBIT 1, PAGE 72

Litigation Practice Group QC Script

Now, I would like to confirm payment information.

Per your agreement, you have chosen to make payments using your [BANK NAME] account. Is that correct?

Could you please verify your routing and account number? [If they don't have it available, read it to them from DPP and have them confirm]

[CLIENT NAME] can you please confirm that your first payment is on [DATE] for [PAYMENT AMOUNT] and you have a total of [NUMBER OF PAYMENTS] payments to the program. Is that correct?

Litigation Practice Group will be processing your payments. When you see LPG on your statement, it is the scheduled payment per your agreement.

Finally, for our records, I would like you to confirm that the information you gave me was, to the best of your knowledge, truthful and accurate.

If you agree, please state your full name. Please state today's date. Please state the last 4 digits of your social security number.

EXHIBIT 6
Page 28
EXHIBIT 1, PAGE 73

Litigation Practice Group QC Script

Great, that completes your verification call! Congratulations on taking the first step towards a debt free future and welcome to the LPG program.

LPG will be sending you a follow-up text with their contact information along with an outreach call with a more detailed explanation if the program within 3 business days.

If you have any questions or need anything in the meantime, feel free to call or email LPG, email is preferred (support@lpglaw.com), otherwise you can call the Client Support Team at 949-229-6262

Congratulations on your enrollment. Have a great

**[Morning/Afternoon/Evening]!**

EXHIBIT 6
Page 29
EXHIBIT 1, PAGE 74

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 76 of 139

Case 8:23-ap-01046-SC    Doc 45-3    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jonathan Serrano    Page 32 of 39

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 7

EXHIBIT 7
Page 30
EXHIBIT 1, PAGE 75

**Educational Outreach Script**

**Page 1**

Hello, I am trying to reach {FIRSTNAME}?

Hi **{FIRSTNAME}**. My name is **{SYSTEMUSER_FIRSTNAME}** and I'm calling from **The Litigation Practice Group on a recorded line.** We are going to handle the **Debt Resolution Program** that you recently enrolled in with {ASSIGNED_TO}.

I am calling to welcome you to our program and to discuss your account in detail and how our program will benefit you. I also want to let you know that if you haven't received our welcome package in the mail yet, you will shortly. For security purposes could you please verify the last four digits of your Social Security Number and your date of birth (also acceptable is the address and phone number).

SSN: {SSN}

Date of Birth: {DOB}

First, thank you for choosing The Litigation Practice Group to help you with your financial situation. The program you enrolled in is the **most effective debt resolution program** in the marketplace today because it is designed and operated by attorneys licensed to practice law. **At The Litigation Practice Group, our goal is to not only help you clear your debt, but also to help get you back to a normal credit standing.** Although you went over our process in detail with **{ASSIGNED_TO}**, it is very important to us that you have any additional questions answered as we begin the process.

EXHIBIT 7
Page 31
EXHIBIT 1, PAGE 76

**Page 2**

**First, we will immediately give notice to your creditors that you are represented by counsel and that all communication should be directed to your attorneys.** This will ensure that your creditors or any related debt collectors immediately cease communication with you. If throughout the process of resolving your debts, your creditors continue to harass or intimidate you regarding any of your accounts enrolled, **we will review that communication for violations of your rights and immediately file suit against the creditor on your behalf.**

During this initial part of the program, your credit report will undergo an audit and any incorrect or negative items impacting your credit report will be evaluated. For this to be corrected, we will be contacting the credit bureaus to challenge the erroneous information. The initial dispute letters to the credit bureaus and letters or representation to your creditors have been prepared for you and have already been sent out. Please remember that the timeframe for the credit bureaus to investigate and respond is 45-60 days. You should receive any responses in the mail. They will come in a plain white envelope. Please make sure you send those to LPG or upload them in your client portal.

EXHIBIT 7
Page 32
EXHIBIT 1, PAGE 77

**Page 3**

**Now please keep in mind that the first few months are the most difficult phase in the program. You will most likely start receiving collection calls from the creditors. This is normal. We encourage you to answer these calls and tell the caller that you have hired LPG to represent you for this account and that we are exploring all options including bankruptcy and then politely hang up. That will let them know to contact us and help slow the calls.**

**Any questions so far?**

EXHIBIT 7

Page 33

EXHIBIT 1, PAGE 78

**Page 4**

To be clear, you have hired us as your law firm and the fees that you pay are for our representation of you. As a result, **we work for you and will do everything in our power to assist you and give meaning to the rights that you have under federal law.**

A few more things before I let you go; throughout this process you have an attorney assisting you and you have the right to speak with an attorney to address any and all questions you have regarding the debts you have hired us to help you resolve.  If at any time you want to speak with an attorney, call us and schedule a time, and one of our attorneys will contact you to discuss whatever issue you wish to address regarding your accounts.

EXHIBIT 7

Page 34

EXHIBIT 1, PAGE 79

**Page 5**

The Welcome Package has all of this information and more details regarding the program. Please take the time to thoroughly read that welcome package because it gives a lot of great information on the process and what your role is in this program.

**Before we end the call, do you have any questions or clarification?**

It has been such a pleasure speaking with you today **{FIRSTNAME}**, I appreciate your time and your patience. Again, we want to welcome you and we look forward to working with you and assisting you with your program. I hope you have a great day!

Thank you again for trusting us to serve as your attorneys, and do not hesitate to reach out to us if there is anything that we can do to assist you throughout this process.

Before we hang up, I do need read the following disclosure to you:

<span style="color:red">**LPG is a law firm and not a settlement or consolidation company. We do not pay your creditors wit the funds that you pay. Rather those funds go directly to attorney's fees to resolve your debts.**</span>

I would like to confirm that you have been speaking with (YOUR NAME).

Thank you for your time and we look forward to working with you. Have a great day!

EXHIBIT 7
Page 35
EXHIBIT 1, PAGE 80

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
655 W. Broadway, Suite 800, San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF JONATHAN SERRANO IN SUPPORT OF STATUS CONFERENCE REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 12, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On <u>June 12, 2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>June 12, 2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> <u>JUDGE'S COPY</u>
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| June 12, 2023 | Caron Burke | |
| *Date* | *Printed Name* | *Signature* |

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 84 of 139

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 1 of 26

1 | Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
2 | Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
3 | 655 West Broadway, Suite 800
San Diego, CA 92101
4 | Telephone:  619.400.0500
Facsimile:  619.400.0501
5 | christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
6 | jonathan.serrano@dinsmore.com

7 | Proposed Special Counsel to Richard A. Marshack

8 |

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11 |

12 | In re:

13 | THE LITIGATION PRACTICE GROUP P.C.,

14 |        Debtor.

15 |

16 | Richard A. Marshack,

17 |        Plaintiff

18 | v.

19 | TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual;
20 | WILLIAM TAYLOR CARSS, an individual; ENG TANG, an individual; MARIA EEYA TAN,
21 | an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an
22 | individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY
23 | CHHOR, an individual; DONGLIANG JIANG, an individual; OAKSTONE LAW GROUP PC;
24 | GREYSON LAW CENTER PC; PHOENIX LAW GROUP, INC.; MAVERICK
25 | MANAGEMENT, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN
26 | CONSULTING GROUP LLC; B.A.T. INC. d/b/a COAST PROCESSING; PRIME LOGIX, LLC;
27 | TERACEL BLOCKCHAIN FUND II LLC; EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
28 | GLOBAL; OPTIMUMBANK HOLDINGS, INC. d/b/a OPTIMUM BANK; MARICH BEIN, LLC;

Case No.: 8:23-bk-10571-SC

Adv. Proc. No. 8:23-ap-01046-SC

Chapter 11

**DECLARATION OF JEREMY B. FREEDMAN IN SUPPORT OF STATUS CONFERENCE REPORT**

Date:    June 12, 2023
Time:    1:30 p.m.
Judge:  Hon. Scott C. Clarkson
Place:   Courtroom 5C
           411 W. Fourth Street
           Santa Ana, CA  92701

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 85 of 139

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 2 of 26

1  BANKUNITED, N.A.; REVOLV3, INC.;
   FIDELITY NATIONAL INFORMATION
2  SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
   WORLDPAY GROUP; MERIT FUND, LLC;
3  GUARDIAN PROCESSING, LLC; THE
   UNITED STATES POSTAL SERVICE; and
4  DOES 1 through 100, inclusive,

5                    Defendants.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF JEREMY B. FREEDMAN

I, Jeremy B. Freedman, declare as follows:

1.    I am an attorney duly licensed to practice law in the State of California. I am an associate attorney in the law firm Dinsmore & Shohl LLP, proposed special counsel for Richard A. Marshack, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estate of The Litigation Practice Group, L.P. (the "Debtor" or "LPG"). As such, except as expressly stated otherwise, I have personal knowledge of the facts set forth below and could and would competently testify under oath thereto if requested to do so.

2.    I submit this declaration in support of the *Status Conference Report*, filed contemporaneously herewith. Capitalized terms not otherwise defined herein have the same meanings ascribed to them in the *Status Conference Report.*

3.    On June 8, 2023, I spoke with Bill Rumping of WPR, a marketing company with which LPG has and continues to do business. Mr. Rumping expressed concern that WPR had not been paid under a specific contract for the sale of certain client ACH revenue streams entered into with LPG, signed by Daniel March on March 31, 2023 –shortly after LPG filed its petition. True and correct copies of the email from Bill Rumping on June 8, 2023 and the March 31, 2023 purchase sale contract is attached hereto as **Exhibits 3 and 4**, respectively. He explained, that an individual, he refused to name at LPG, had informed him, week after week, that LPG would pay pursuant to the contract, however, for one reason or another (not related to having filed bankruptcy) was unable to do so that week but would pay the following week. This apparently continued until he contacted proposed special counsel for Trustee.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  June 11, 2023

_Jeremy Freedman_

Jeremy Freedman

1

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 87 of 139

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 4 of 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 3

**From:** Bill Rumping <bill@midamericadebtrelief.com>
**Sent:** Thursday, June 8, 2023 4:29 PM
**To:** Freedman, Jeremy <Jeremy.Freedman@Dinsmore.com>
**Subject:** InformationHi Jeremy, thank you for taking my call. Here is the information we spoke about over the phone about what is owed to me. Please keep me informed as to what is going on,

Hi Jeremy, thank you for taking my call. Here is the information we spoke about over the phone about what is owed to me.
 Please keep me informed as to what is going on,

 Thanks again,

**To schedule a free 30 min consultation between the hours of 8am to 4:30pm** https://calendly.com/bill-l30/30min?month=2020-11

*"Freedom is life without debt"*

**Bill Rumping**
*Bill@MidAmericaDebtRelief.com*

**(636) 223-5900 Ext. 3 | FAX: (636) 660-2221**

**2 CityPlace Dr. Suite 200**
**St Louis MO 63146**

www.MidAmericaDebtRelief.com

**Disclaimer:** This e-mail communication and the documents accompanying this e-mail communication contain information from Mid America Debt Relief, which is intended to be for the use of the individual or entity named on this transmission e-mail and which may be confidential. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this e-mail information is strictly prohibited. If you receive this e-mail in error, or all attachments are not received, please contact Bill Rumping at the address and telephone number above.

EXHIBIT 3
Page 3
EXHIBIT 1, PAGE 87

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document      Page 89 of 139

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 6 of 26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 4

### ACCOUNTS RECEIVABLE PURCHASE AGREEMENT

This ACCOUNTS RECEIVABLE PURCHASE AGREEMENT (this "**Agreement**") is made as of March 31st, 2023 (the "**Agreement Date**"), by and between The Litigation Practice Group PC (collectively the "**Buyer**"), and WPR Group LLC (the "**Seller**" **or "LPG"**, and together with the Buyer, the **"Parties"**), and The Litigation Practice Group PC ("LPG").

### RECITALS

WHEREAS, in the regular course of business, the Seller originates account receivables from **LPG** in connection with client on-boarding services provided by the Seller to LPG and its affiliates;

WHEREAS, the account receivables represent an obligation of various clients to pay Seller for services that Seller previously provided, but which LPG shall provide from the date of execution of this Agreement;

WHEREAS, the Seller desires to sell, assign, transfer, and deliver to the Buyer, and the Buyer desires to purchase, acquire, and accept from the Seller, certain of these account receivables (the "**Purchased Accounts**").

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, the Parties, intending to be legally bound, agree as follows:

### ARTICLE 1.
### DEFINITIONS

Section 1.1    Certain Definitions.  Certain defined terms used in this Agreement are set forth on **Exhibit A**.

### ARTICLE 2.
### ASSIGNMENT AND TRANSFER AND CONSIDERATION

Section 2.1    Assignment of the Purchased Accounts to the Buyer.  Upon execution of this Agreement and subject to the terms and conditions set forth herein, the Seller shall sell, assign, transfer, and deliver, and the Buyer shall purchase, acquire, and accept from the Seller, all of the Seller's right, title, and interest in and to the Purchased Accounts set forth on the spreadsheet attached to this Agreement, free and clear of any Liens.  Other than the Purchased Accounts, the Buyer shall not purchase or acquire any other assets of the Seller (collectively, the "**Excluded Assets**").

Section 2.2    No Assumption of Liabilities.  The Buyer shall not assume any Liabilities of the Seller of any kind, whether known or unknown, contingent, matured, or otherwise, whether currently existing or hereinafter created (collectively, the "**Excluded Liabilities**").

Section 2.3    Payment of Purchase Price.  Buyer shall pay $31,128.64 (total purchase price) for the Purchased Accounts (the "**Purchase Price**") by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth in **Schedule 2.3** (the "**Wire Instructions**").  The Purchased Accounts are set forth on the attached spreadsheet.

Section 2.4    Guarantee of LPG.  If any file acquired by buyer shall fail to make a first payment, LPG will replace the file and bear any cost associated with such replacement.  The replacement file shall yield no less than the receivable of the failed file.  In addition, if any any calendar month a total of less than 80% of files make a cleared payment, LPG shall replace any non-performing files in such month so that the performance of the file

EXHIBIT 4

Page 5

EXHIBIT 1, PAGE 89

DocuSign Envelope ID: AF691B16-0BB3-4EEB-A9AB-7CDAFA365646

package as a whole equals 80%. This guarantee shall continue until the completion of the 24th month following execution of this agreement.

## ARTICLE 3.
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller represents and warrants to the Buyer, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 3.1    Organization; Good Standing.  The Seller is a Limited Liability Company duly organized, validly existing, and in good standing under the Laws of the State of Missouri and is duly qualified to do business and is in good standing as a foreign corporation in each jurisdiction where the ownership or operation of the Business requires such qualification, except where the failure to be so qualified would not reasonably be expected to have, individually or in the aggregate, a material adverse effect on the business, results of operations, financial condition, or assets of the Seller.

Section 3.2    Power and Authority.  The Seller has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Seller, and the consummation by the Seller of the transactions contemplated hereby and thereby, have been duly approved by the Seller, and no further action is required on the part of the Seller to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Seller and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Seller, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium, and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

Section 3.3    Title to, and Sufficiency of, the Purchased Accounts.  The Seller has and shall convey to the Buyer, at the Closing, good, valid, transferable, and marketable title to, or valid leasehold interests in, all of the Purchased Accounts, free and clear of all Liens.

Section 3.4    Consents.  The Seller is not required to give any notice to, make any filing with, or obtain any authorization, consent, or approval of, any Governmental Body or Third Party, including a party to any assigned contract, in connection with the execution, delivery, and performance by the Seller of this Agreement or any of the Transaction Agreements to which it is a party or the consummation of the transactions contemplated hereby and thereby.

Section 3.5    No Conflicts. The execution and delivery by the Seller of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of any obligation, or loss of any benefit, under: (a) any provision of the Organizational Documents of the Seller; (b) any contract to which the Seller is party, including, without limitation, any assigned contract; or (c) any Law or order applicable to the Seller or any of the Purchased Accounts.

EXHIBIT 4
Page 6
EXHIBIT 1, PAGE 90

Section 3.6    <u>Compliance with Laws</u>.  The Seller has materially complied, and is now materially complying, with all Laws applicable to the ownership and use of the Purchased Accounts.

Section 3.7    <u>Legal Proceedings</u>.  There is no Action of any nature pending or, to the Knowledge of the Seller, threatened against or by the Seller: (a) relating to or affecting the Purchased Accounts or (b) that challenges or seeks to prevent, enjoin, or otherwise delay the transactions contemplated by this Agreement and the Transaction Agreements.  No event has occurred or circumstance exists that may give rise to, or serve as a basis for, any such Action.

Section 3.8    <u>Condition of Purchased Accounts</u>.  Each Purchased Account shall have received no less than one processed payment.

Section 3.9    <u>Confidentiality</u>.  Seller agrees and acknowledges that all Purchased Accounts, the pricing, and all terms set forth in this Agreement are confidential (together, the "**Confidential Information**").  Seller will at all times keep the  Confidential Information in confidence and trust.  Seller will not, without the prior written consent of an authorized officer of Buyer, (A) copy, use or disclose any Confidential Information, (B) deliver or disclose any Confidential Information to any person or entity outside the Buyer, or (C) use the Confidential Information for Seller's own use or use it to the detriment of Buyer.  Notwithstanding the foregoing, Seller may, without consent, use the Confidential Information and disclose and deliver same to Seller's employees or agents, if applicable, who have a need to know, provided such employees or agents have entered into written agreements approved by Buyer and containing provisions at least as restrictive as these provisions.  Seller agrees that violation of this Section 3.9.  The Parties agree that the disclosure of the Confidential Information in violation of this Agreement may cause the Buyer irreparable harm and that any breach or threatened breach by the Seller entitles Buyer to seek injunctive relief, in addition to any other legal or equitable remedies available to it, in any court of competent jurisdiction.

**ARTICLE 4.**
**REPRESENTATIONS AND WARRANTIES OF THE BUYER**

The Buyer represents and warrants to the Seller, as of the Agreement Date and as of the Closing Date, or, if expressly made as of a specified date, as of such specified date, as follows:

Section 4.1    <u>Organization; Good Standing</u>.  The Buyer is a limited liability company, duly organized, validly existing, and in good standing under the Laws of the State of Florida.

Section 4.2    <u>Power and Authority</u>.  The Buyer has all requisite right, power, and authority to execute, deliver, and perform this Agreement and the Transaction Agreements to which it is a party, to consummate the transactions contemplated hereby and thereby, and to perform its obligations hereunder and thereunder.  The execution and delivery of this Agreement and the Transaction Agreements by the Buyer, and the consummation by the Buyer of the transactions contemplated hereby and thereby, have been duly approved by the Buyer, and no further action is required on the part of the Buyer to authorize this Agreement, any Transaction Agreement to which it is a party, or the transactions contemplated hereby and thereby.  This Agreement has been, and each of the Transaction Agreements will be, duly and validly executed and delivered by the Buyer and, assuming the due and valid authorization, execution, and delivery of this Agreement by the other Parties, and of each such Transaction Agreement by the other parties thereto, constitutes, or will constitute, a valid and binding obligation of the Buyer, enforceable against it in accordance with its terms and conditions, except as enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium and other Laws affecting enforcement of creditor's rights generally and except insofar as the availability of equitable remedies may be limited by applicable Law.

EXHIBIT 4
Page 7
EXHIBIT 1, PAGE 91

Section 4.3    No Conflicts. The execution and delivery by the Buyer of this Agreement and each of the Transaction Agreements, and the consummation of the transactions contemplated hereby and thereby, will not conflict with, result in any violation of, or default under (with or without notice or lapse of time, or both), or give rise to an additional payment obligation, a right of termination, cancellation, modification, or acceleration of, any obligation, or loss of any benefit under: (a) any provision of the Buyer's Organizational Documents; (b) any contract to which the Buyer is party, other than the Buyer Representation Agreement; or (c) any Law applicable to the Buyer.

Section 4.4    Sufficient Funds. The Buyer has, and will have, sufficient funds available to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement and the Transaction Agreements.

## ARTICLE 5.
## COVENANTS

Section 5.1    Appropriate Actions.

(a)    General. Each of the Parties shall use commercially reasonable efforts to take all actions necessary to consummate the transactions contemplated by this Agreement as soon as reasonably practicable after the execution of this Agreement, including taking all actions necessary to comply promptly with all applicable Laws that may be imposed on it or any of its Affiliates with respect to the Closing.

## ARTICLE 6.
## CLOSING

Section 6.1    Closing. The closing of the transactions contemplated by this Agreement (the "**Closing**") will take place upon the execution and delivery of this Agreement or at such other time, date, and place as the Parties may agree in writing. The date on which the Closing occurs is hereinafter referred to as the "**Closing Date**." The Parties agree that the Closing may take place by the electronic exchange of executed counterpart documents and the electronic transfer of funds.

Section 6.2    Closing Deliverables of the Seller. At or prior to the Closing, Seller shall deliver to Buyer any of the following if requested by Buyer:  (i) a bill of sale and assignment and assumption agreement substantially in the form attached hereto as **Exhibit B** (the "**Bill of Sale and Assignment and Assumption Agreement**"), duly executed by the Seller, effecting the transfer and assignment to, and assumption by, the Buyer of the Purchased Accounts; and (ii) such other customary instruments of transfer, assumption, filings, or documents, in form and substance reasonably satisfactory to the Buyer, as may be required to give effect to this Agreement.

Section 6.3    Closing Deliverables of the Buyer. At or prior to the Closing, the Seller shall have received the following: (i) the Upfront Cash Payment; and (ii) if requested pursuant to Section 6.2, the Bill of Sale and Assignment and Assumption Agreement, duly executed by the Buyer.

Section 6.4    Indemnification by the Seller. Subject to the limitations set forth in this Article 6, the Seller agrees to indemnify and hold harmless the Buyer, including its shareholders, members, directors, managers, officers, employees, Affiliates, and agents (each, a "**Buyer Indemnified Party**" and, collectively, the "**Buyer Indemnified Parties**"), against all claims, losses, Liabilities, damages, deficiencies, diminutions in value, costs, interest, awards, judgments, penalties, and expenses, including reasonable out-of-pocket attorneys' and consultants' fees and expenses and including any such reasonable expenses incurred in connection with investigating, defending against, or settling any of the foregoing (each, a "**Loss**" and, collectively, the "**Losses**") paid, suffered, incurred, sustained, or accrued by any Buyer Indemnified Party, directly or indirectly, as a result of,

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 94 of 139

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 11 of 26

DocuSign Envelope ID: AF6D1B16-BBB3-4FEB-A9AB-7DAFAB65E646

arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Seller contained in this Agreement, (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Seller pursuant to this Agreement, (c) any Excluded Asset or any Excluded Liability.

Section 6.5    Indemnification by the Buyer.  Subject to the limitations set forth in this Article 6, the Buyer agrees to indemnify and hold harmless the Seller, including its Affiliates and agents (each, a "**Seller Indemnified Party**" and, collectively, the "**Seller Indemnified Parties**"), against all Losses paid, suffered, incurred, sustained, or accrued by any Seller Indemnified Party, directly or indirectly, as a result of, arising out of, or in connection with: (a) any inaccuracy in, or breach of, any of the representations or warranties of the Buyer contained in this Agreement; (b) any breach or non-fulfillment of any covenant, agreement, or obligation to be performed by the Buyer pursuant to this Agreement; (c) any event or occurance related to the Purchased Accounts or Buyer occurring after the Closing; or (d) resulting from any omissions or misstatements made by Buyer to investors or potential investors.

Section 6.6    Indemnification Procedures.

(a)    No Restraints.  Promptly following receipt by an Indemnified Party of notice by a Third Party (including any Governmental Body) of any complaint, dispute, or claim or the commencement of any audit, investigation, Action or proceeding with respect to which such Indemnified Party may be entitled to indemnification pursuant hereto (a "**Third-party Claim**"), such Indemnified Party shall provide written notice thereof to the Indemnifying Party, provided, however, that the failure to so notify the Indemnifying Party shall relieve the Indemnifying Party from Liability hereunder with respect to such Third-party Claim only if, and only to the extent that, such failure to so notify the Indemnifying Party results in the forfeiture by the Indemnifying Party of rights and defenses otherwise available to the Indemnifying Party with respect to such Third-party Claim.  The Indemnifying Party shall have the right, upon written notice delivered to the Indemnified Party within twenty days thereafter assuming full responsibility for any Losses resulting from such Third-party Claim, to assume the defense of such Third-party Claim, including the employment of counsel reasonably satisfactory to the Indemnified Party and the payment of the fees and disbursements of such counsel; provided, however, if the Indemnifying Party declines or fails to assume the defense of such Third-party Claim on the terms provided above or to employ counsel reasonably satisfactory to the Indemnified Party, in either case within twenty day period, then any Losses shall include the reasonable fees and disbursements of counsel for the Indemnified Party as incurred.  In any Third-party Claim for which indemnification is being sought hereunder the Indemnified Party or the Indemnifying Party, whichever is not assuming the defense of such Third-party Claim, shall have the right to participate in such matter and to retain its own counsel at such Party's own expense.  The Indemnifying Party or the Indemnified Party (as the case may be) shall at all times use reasonable efforts to keep the Indemnifying Party or Indemnified Party (as the case may be) reasonably apprised of the status of the defense of any matter, the defense of which it is maintaining, and to cooperate in good faith with each other with respect to the defense of any such matter.

(b)    No Indemnified Party may settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder without the prior written consent of the Indemnifying Party (which may not be unreasonably withheld or delayed), unless (i) the Indemnifying Party fails to assume and maintain the defense of such Third-party Claim or (ii) such settlement, compromise, or consent includes an unconditional release of the Indemnifying Party and its officers, directors, employees and Affiliates from all Liability arising out of, or related to, such Third-party Claim.  An Indemnifying Party may not, without the prior written consent of the Indemnified Party, settle or compromise any Third-party Claim or consent to the entry of any judgment with respect to which indemnification is being sought hereunder unless such settlement, compromise, or consent (A) includes an unconditional release of the Indemnified Party and its officers, directors, employees, and Affiliates from all Liability arising out of, or related to, such Third-party

Claim, (B) does not contain any admission or statement suggesting any wrongdoing or Liability on behalf of the Indemnified Party, and (C) does not contain any equitable order, judgment, or term that in any manner affects, restrains, or interferes with the business of the Indemnified Party or any of the Indemnified Party's Affiliates.

(c)        If an Indemnified Party claims a right to payment pursuant hereto with respect to any matter not involving a Third-party Claim (a "**Direct Claim**"), such Indemnified Party shall send written notice of such claim to the appropriate Indemnifying Party (each, a "**Notice of Claim**").  Such Notice of Claim shall specify the basis for such Direct Claim.  The failure by any Indemnified Party so to notify the Indemnifying Party shall not relieve the Indemnifying Party from any Liability that it may have such Indemnified Party with respect to any Direct Claim made pursuant to this Section 6.6(c).  If the Indemnifying Party does not notify the Indemnified Party within thirty days following its receipt of such Notice of Claim that the Indemnifying Party disputes its Liability to the Indemnified Party under this Article 6 or the amount thereof, the Direct Claim specified by the Indemnified Party in such Notice of Claim shall be conclusively deemed a Liability of the Indemnifying Party under this Article 6, and the Indemnifying Party shall pay the amount of such Liability to the Indemnified Party on demand or, in the case of any Notice of Claim in which the amount of the Direct Claim (or any portion of the Direct Claim) is estimated, on such later date when the amount of such Direct Claim (or such portion of such Direct Claim) becomes finally determined.  In the event that the Indemnifying Party has timely disputed its Liability with respect to such Direct Claim as provided above, as promptly as possible, such Indemnified Party and the appropriate Indemnifying Party shall establish the merits and amount of such Direct Claim (by mutual agreement, litigation, arbitration or otherwise) and, within five business days following the final determination of the merits and amount of such Direct Claim, the Indemnifying Party shall pay to the Indemnified Party an amount equal to such Direct Claim as determined hereunder.

### ARTICLE 7.
### MISCELLANEOUS

Section 7.1      Entire Agreement; Amendment.  This Agreement and the Transaction Agreements (including the exhibits hereto and thereto and the documents referred to therein) constitute the entire agreement among the Parties with respect to the subject matter hereof and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they related in any way to the subject matter hereof.  This Agreement may be amended with the written consent of each of the Parties or any successor thereto by execution of an instrument in writing.

Section 7.2      Waivers.  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.  To the maximum extent permitted by applicable Law: (a) no claim or right arising out of this Agreement or the documents referred to in this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Parties; (b) no waiver that may be given by a Party will be applicable except in the specific instance for what it is given; and (c) no notice to, or demand on, one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this Agreement or the Transaction Agreements.

Section 7.3      Notices.  All notices and other communications required or permitted hereunder shall be made to the address of a Party listed on the signature page to this Agreement and shall be (a) in writing, (b) effective when given, and (c), in any event, deemed to be given upon receipt or, if earlier: (i) upon delivery, if delivered by hand; (ii) two business days after deposit with FedEx Express or similar recognized international overnight courier service, freight prepaid; or (iii) one business day after facsimile or electronic mail transmission. A Party may change the address to which notices, requests, demands, claims, and other communications hereunder are to be delivered by giving the other Parties advance written notice pursuant to the provisions above.

EXHIBIT 4
Page 10
EXHIBIT 1, PAGE 94

Section 7.4    Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement nor any rights or obligations of a Party hereunder shall be assigned by a Party (unless to an Affiliate of such Party) without the prior written consent of the other Parties.  This Agreement will be binding upon any permitted assignee of any Party.  No assignment shall have the effect of relieving any Party to this Agreement of any of its obligations hereunder.

Section 7.5    Public Disclosure.  Except as may be required by Law, the Seller shall not issue any statement or communication to any Third Party (other than its respective agents) regarding the subject matter of this Agreement or the transactions contemplated hereby, including, if applicable, the termination of this Agreement and the reasons therefor, without the prior written consent of the Buyer.

Section 7.6    Expenses and Fees.  Whether or not the Closing occurs, all fees and expenses incurred in connection with this transactions contemplated by this Agreement, including all legal, accounting, financial advisory, consulting and all other fees and expenses of Third Parties incurred by a Party in connection with the negotiation and effectuation of the terms and conditions of this Agreement and the transactions contemplated hereby, shall be the obligation of the respective Party incurring such fees and expenses.

Section 7.7    Specific Performance.  The Parties agree that irreparable damage would occur if any provision of this Agreement was not performed in accordance with the terms hereof and that the Parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled hereunder, at Law or in equity.

Section 7.8    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

Section 7.9    Governing Law.  This Agreement shall, in all respects, be construed in accordance with, and governed by, the Laws of the State of California without regard to conflict of Laws principles.

Section 7.10    Severability.  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

Section 7.11    Construction.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

EXHIBIT 4
Page 11
EXHIBIT 1, PAGE 95

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Agreement Date.

**BUYER:**

**The Litigation Practice Group P.C.**

By: *Daniel S March*
       9D494DB1993341E...
       Name: Daniel S March
       Title: Managing Shareholder

**SELLER:**

**WPR Group LLC**

By: *William Rumping*
       47E576CEC5914E7...
       Name: William Rumping
       Title: Owner

**APPROVAL OF ASSIGNMENT AND GUARANTEE**

The assignment of the Purchased Accounts set forth in this Agreement as well as the guarantee included therein is hereby approved, and with respect to the Purchased Accounts, the Buyer shall have all rights of Buyer as set forth in this agreement.

**The Litigation Practice Group P.C.**

By: *Daniel S March*
       9D494DB1993341E...
       Name: Daniel S. March
       Title: Managing Shareholder

[*Signature Page to Accounts Receivable Purchase Agreement*]

EXHIBIT 4
Page 12
EXHIBIT 1, PAGE 96

## EXHIBIT A

## DEFINITIONS

As used in this Agreement, the following terms have the following meanings (terms defined in the singular to have a correlative meaning when used in the plural and vice versa).

(a)    "**Action**" shall mean any civil, criminal, or administrative action, claim, suit, demand, charge, citation, reexamination, opposition, interference, decree, injunction, mediation, hearing, notice of violation, demand letter, litigation, proceeding, labor dispute, arbitral action, governmental or other audit, inquiry, criminal prosecution, investigation, unfair labor practice charge, or complaint.

(b)    "**Agreement**" shall have the meaning set forth in the preamble to this Agreement.

(c)    "**Agreement Date**" shall have the meaning set forth in the preamble to this Agreement.

(d)    "**Affiliate**" shall mean (i) with respect to any non-natural Person, any Person that, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person and (ii), with respect to any individual, (A) family members of such individual, by blood, adoption, or marriage, (B) such individual's spouse or ex-spouse and (C) any Person that is directly or indirectly under the control of any of the foregoing individuals.  For purposes of this definition, "control" (including with correlative meanings, the terms "controlling," "controlled by," and under "common control with") means the possession, directly or indirectly, of the power to direct the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise.

(e)    "**Bill of Sale and Assignment and Assumption Agreement**" shall have the meaning set forth in Section 6.2.

(f)    "**Business**" shall mean the business of the Seller as conducted on the Agreement Date.

(g)    "**Buyer**" shall have the meaning set forth in the preamble to this Agreement.

(h)    "**Buyer Indemnified Parties**" shall have the meaning set forth in Section 6.4.

(i)    "**Closing**" shall have the meaning set forth in Section 6.1.

(j)    "**Closing Date**" shall have the meaning set forth in Section 6.1.

(k)    "**Direct Claim**" shall have the meaning set forth in Section 6.6(c).

(l)    "**Excluded Assets**" shall have the meaning set forth in Section 2.1.

(m)    "**Excluded Liabilities**" shall have the meaning set forth in Section 2.2.

(n)    "**Governmental Body**" shall mean any: (i) nation, province, state, county, city, town, village, district, or other jurisdiction of any nature; (ii) federal, provincial, state, local, municipal, foreign, or other government; (iii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court or other tribunal); (iv) multi-national organization or body; or (v) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority or power of any nature.

EXHIBIT 4
Page 13
EXHIBIT 1, PAGE 97

(o)    "**Indebtedness**" means, without duplication and with respect to the Seller, all: (i) indebtedness for borrowed money; (ii) obligations for the deferred purchase price of property or services, (iii) long or short-term obligations evidenced by notes, bonds, debentures or other similar instruments; (iv) obligations under any interest rate, currency swap, or other hedging agreement or arrangement; (v) capital lease obligations; (vi) reimbursement obligations under any letter of credit, banker's acceptance or similar credit transactions; (vii) guarantees made by the Seller on behalf of any third party in respect of obligations of the kind referred to in the foregoing clauses (i) through (vi); and (viii) any unpaid interest, prepayment penalties, premiums, costs and fees that would arise or become due as a result of the prepayment of any of the obligations referred to in the foregoing clauses (i) through (vii).

(p)    "**Indemnified Party**" shall mean a Buyer Indemnified Party or a Seller Indemnified Party, as the case may be, making a claim for indemnification under Article 6.

(q)    "**Indemnifying Party**" shall mean a Party against whom a claim for indemnification is asserted under Article 6.

(r)    "**Knowledge**" shall mean, with respect to the Seller, the actual or constructive knowledge of all facts relevant to this transaction and the transacting parties, after due inquiry.

(s)    "**Law**" shall mean any law, statute, ordinance, regulation, rule, code, notice requirement, court decision, or agency guideline, of any foreign, federal, state, or local Governmental Body.

(t)    "**Liabilities**" shall mean any direct or indirect liability, Indebtedness, obligation, commitment, expense, claim, deficiency, guaranty, or endorsement of, or by, any Person of any type, known or unknown, and whether accrued, absolute, contingent, matured, unmatured, determined or undeterminable, on- or off-balance sheet, or other.

(u)    "**Lien**" shall mean any mortgage, pledge, lien, charge, claim, security interest, adverse claims of ownership or use, restrictions on transfer, defect of title, or other encumbrance of any sort.

(v)    "**Losses**" shall have the meaning set forth in Section 6.4.

(w)    "**Notice of Claim**" shall have the meaning set forth in Section 6.6(c).

(x)    "**Organizational Documents**" shall mean, with respect to a Person, the charter, bylaws, limited liability company agreement, and other organizational documents of such Person, in each case, as amended.

(y)    "**Party**" or "**Parties**" shall have the meaning set forth in the preamble to this Agreement.

(z)    "**Permitted Liens**" shall mean (i) Liens for Taxes not yet delinquent or being contested in good faith by appropriate proceedings, (ii) statutory Liens (including materialmen's, warehousemen's, mechanic's, repairmen's, landlord's, and other similar Liens) arising in the ordinary course of business securing payments not yet delinquent or being contested in good faith by appropriate proceedings, and (iii) restrictive covenants, easements, and defects, imperfections or irregularities of title, if any, of a nature that do not materially and adversely affect the assets or properties subject thereto.

(aa)    "**Person**" shall mean any individual, corporation (including any non-profit corporation), general or limited partnership, limited liability company, joint venture, estate, trust, association, organization, labor union, Governmental Body, or other entity.

EXHIBIT 4
Page 14
EXHIBIT 1, PAGE 98

(bb)    "**Purchase Price**" shall have the meaning set forth in <u>Section 2.3</u>.

(cc)    "**Purchased Accounts**" shall have the meaning set forth in the Recitals.

(dd)    "**Seller**" shall have the meaning set forth in the preamble to this Agreement.

(ee)    "       **Seller Indemnified Parties**" shall have the meaning set forth in <u>Section 6.5</u>.

(ff)    "**Tax**" or "**Taxes**" shall mean any U.S. federal, state, local or non-U.S. income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, customs duties, capital stock, escheat, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not.

(gg)    "**Tax Returns**" means any return, declaration, report, claim for refund, or information return or statement relating to Taxes, including any schedule or attachment thereto, and including any amendment thereof.

(hh)    "**Third Party**" or "**Third Parties**" shall mean any Person other than the Parties or their respective Affiliates.

(ii)    "**Third-party Claim**" shall have the meaning set forth in <u>Section 6.6(a)</u>.

(jj)    "**Transaction Agreements**" shall mean the Bill of Sale and Assignment and Assumption Agreement, and each other agreement, instrument, and/or certificate contemplated by this Agreement or such other agreements to be executed in connection with the transactions contemplated hereby or thereby.

(kk)    "**Upfront Cash Payment**" shall have the meaning set forth in <u>Section 2.3</u>.

(ll)    "**Wire Instructions**" shall have the meaning set forth in <u>Section 2.3</u>.

EXHIBIT 4
Page 15
EXHIBIT 1, PAGE 99

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 101 of 139

DocuSign Envelope ID: AF5B1B16-8BD3-4EEB-A9AB-7DAFA265E646

Case 8:23-ap-01046-SC    Doc 43-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 18 of 26

**EXHIBIT B**

**FORM OF BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT**

THIS BILL OF SALE AND ASSIGNMENT AND ASSUMPTION AGREEMENT (this **"Agreement"**), is made by and between **Buyer**, and **Seller**.  Each of the Seller and the Buyer are sometimes referred to herein, individually, as a **"Party"** and, collectively, as the **"Parties."**

WHEREAS, the Buyer and the Seller have entered into that certain Accounts Receivable Purchase Agreement, of even date herewith (the **"Purchase Agreement"**), pursuant to which the Seller has agreed to sell, assign, transfer, and deliver to the Buyer, and the Buyer has agreed to purchase, acquire, and accept from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

NOW, THEREFORE, in consideration of the covenants and representations set forth herein, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1.    Defined Terms.  Capitalized terms used but not otherwise defined in this Agreement shall have the meanings assigned to such terms in the Purchase Agreement.

2.    Sale of Purchased Accounts; Assignment.  The Seller hereby sells, assigns, transfers, and delivers to the Buyer, and the Buyer hereby purchases, acquires, and accepts from the Seller, all right, title, and interest of the Seller in and to the Purchased Accounts, free and clear of any Liens.

3.    Further Assurances.  Each of the Parties agrees, from time to time, at the request of the any other Party, to execute and deliver such other instruments of conveyance, power of attorney, sale, transfer, or assignment and take such other actions as such other Party may reasonably request in order to more effectively consummate the transactions contemplated by this Agreement.

4.    Terms of the Purchase Agreement.  This Agreement is intended to evidence the consummation of the transactions contemplated by the Purchase Agreement and is subject to the terms and conditions set forth in the Purchase Agreement.   The terms of the Purchase Agreement, including, but not limited to, the representations, warranties, covenants, agreements, and indemnities relating to the Purchased Accounts are incorporated herein by this reference.  The Parties acknowledge and agree that the representations, warranties, covenants, agreements, and indemnities contained in the Purchase Agreement shall not be superseded hereby but shall remain in full force and effect to the full extent provided therein.  In the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern.

5.    Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement.  A signed copy of this Agreement delivered by facsimile, electronic mail, or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[*Remainder of page intentionally left blank.*]

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

**BUYER: The Litigation Practice Group P.C.**

By: _Daniel S March_ _____
Name: Daniel S. March
Title: Managing Shareholder

**SELLER:**

**WPR Group LLC**

By: _William Rumping_ _____
Name: William Rumping
Title: Owner

**Schedule 2.3**
**Wire Instructions**

**$31,128.64**

**Account Holder Name: WPR Group LLC**

**Address: 1444 Brookside Dr High Ridge, MO 63049**

**Routing Number: 081001387**

**Account Number: 0185491292**

| Full Name | Customer I | Company | Assigned T | Enrolled Da | Monthly Pa | Second Pay | Third Paym | Fourth Pay | Fifth Paym |
|---|---|---|---|---|---|---|---|---|---|
| Cindy Lee l | BATLLC-31 | WPR Grou | William P F | 7/3/2019 | 250.54 | 250.54 | 250.54 | 250.54 | 250.54 |
| Joseph Bel | BATLLC-32 | WPR Grou | William P F | 5/9/2019 | 418.2 | 418.2 | 418.2 | 418.2 | 418.2 |
| Lori Atkins | BATLLC-33 | WPR Grou | William P F | ######## | 254.07 | 254.07 | 254.07 | 254.07 | 338.76 |
| Andrea Fer | BATLLC-51 | WPR Grou | William P F | ######## | 260.39 | 260.39 | 260.39 | 260.39 | 260.39 |
| Marsha De | BATLLC-51 | WPR Grou | William P F | ######## | 786.28 | 786.28 | 786.28 | 786.28 | 786.28 |
| Moletta St | BATLLC-51 | WPR Grou | William P F | ######## | 128.01 | 128.01 | 128.01 | 128.01 | 128.01 |
| Moira McC | BATLLC-52 | WPR Grou | William P F | ######## | 171.25 | 171.25 | 171.25 | 171.25 | 171.25 |
| Darleen Rc | BATLLC-54 | WPR Grou | William P F | 2/3/2022 | 252.08 | 252.08 | 252.08 | 252.08 | 252.08 |
| Blanche Jo | BATLLC-54 | WPR Grou | William P F | ######## | 424.09 | 424.09 | 429.09 | 429.09 | 429.09 |
| Joan Glasb | BATLLC-55 | WPR Grou | William P F | ######## | 251.68 | 408.42 | 197.97 | 197.97 | 197.97 |
| Jimmy Mar | BATLLC-55 | WPR Grou | William P F | 4/5/2022 | 254.98 | 254.98 | 254.98 | 254.98 | 254.98 |
| Melissa Ea | BATLLC-55 | WPR Grou | William P F | ######## | 297.41 | 297.41 | 297.41 | 297.41 | 297.41 |
| Juan Marti | BATLLC-55 | WPR Grou | William P F | ######## | 356.34 | 356.34 | 356.34 | 356.34 | 356.34 |
| Phyllis Calc | BATLLC-57 | WPR Grou | William P F | ######## | 329.13 | 329.13 | 329.13 | 329.13 | 329.13 |
| Christy Lan | BATLLC-57 | WPR Grou | William P F | ######## | 277.84 | 277.84 | 277.84 | 277.84 | 277.84 |
| Laroy Dors | BATLLC-58 | WPR Grou | William P F | ######## | 540.27 | 540.27 | 540.27 | 540.27 | 540.27 |
| Anthony C | BATLLC-59 | WPR Grou | William P F | ######## | 522.02 | 522.02 | 522.02 | 522.02 | 522.02 |
| Ashleigh M | BATLLC-59 | WPR Grou | William P F | 7/6/2022 | 458.71 | 458.71 | 458.71 | 458.71 | 458.71 |
| Deborah M | BATLLC-60 | WPR Grou | William P F | ######## | 330.3 | 330.3 | 330.3 | 330.3 | 330.3 |
| Shawn Osh | BATLLC-60 | WPR Grou | William P F | ######## | 796.09 | 796.09 | 796.09 | 808.09 | 808.09 |
| Josh Albert | BATLLC-61 | WPR Grou | William P F | 8/5/2022 | 288.44 | 288.44 | 288.44 | 313.44 | 288.44 |
| Michael Rc | BATLLC-61 | WPR Grou | William P F | ######## | 388.21 | 388.21 | 388.21 | 388.21 | 388.21 |
| Sheila Dun | BATLLC-61 | WPR Grou | William P F | ######## | 338.81 | 359.65 | 359.65 | 359.65 | 359.65 |
| Michael Cl | BATLLC-65 | WPR Grou | William P F | ######## | 411.18 | 411.18 | 411.18 | 411.18 | 411.18 |
| Daniel Sen | BATLLC-65 | WPR Grou | William P F | ######## | 553.66 | 553.66 | 553.66 | 553.66 | 553.66 |
| Patricia Sa | BATLLC-66 | WPR Grou | William P F | ######## | 271.41 | 271.41 | 271.41 | 271.41 | 271.41 |
| Brenae Pay | BATLLC-66 | WPR Grou | William P F | ######## | 367.15 | 367.15 | 367.15 | 367.15 | 367.15 |
| Charles Ca | BATLLC-67 | WPR Grou | William P F | ######## | 451.61 | 451.61 | 451.61 | 451.61 | 451.61 |
| Catherine | BATLLC-68 | WPR Grou | William P F | 2/7/2023 | 425.51 | 425.51 | 425.51 | 425.51 | 425.51 |
| Ginger Ger | BATLLC-69 | WPR Grou | William P F | ######## | 271.76 | 263.54 | 263.54 | 263.54 | 263.54 |
| Mike Leste | BATLLC-69 | WPR Grou | William P F | ######## | 251.08 | 251.08 | 251.08 | 251.08 | 251.08 |
| Karen Loft | BATLLC-69 | WPR Grou | William P F | ######## | 868.96 | 868.96 | 868.96 | 868.96 | 868.96 |
| Michael Cc | BATLLC-69 | WPR Grou | William P F | ######## | 596.38 | 391.25 | 391.25 | 391.25 | 391.25 |
| Melissa Fra | BATLLC-70 | WPR Grou | William P F | 2/9/2023 | 273.88 | 273.88 | 273.88 | 273.88 | 273.88 |

EXHIBIT 4
Page 19
EXHIBIT 1, PAGE 103

DocuSign Envelope ID: AF6918J6-8BB3-48FB-A9AB-71DAFAB55646

Case 8:23-ap-01046-SC    Doc 45-4    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Jeremy B. Freedman    Page 22 of 26

| Debt Enrol | Total Progr | Total Paym | Fee 1 | State | Program Le | First Paymo | Second Pay | Third Paymo | Fourth Pay |
|---|---|---|---|---|---|---|---|---|---|
| 13259 | 5762.42 | 5762.42 | 34 | MO | 23 Months | Cleared | Cleared | Cleared | Cleared |
| 17279 | 11542.58 | 11124.38 | 40 | IL | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 11823.5 | 5343.59 | 5343.59 | 40 | MO | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 15211 | 9374.08 | | 40 | MO | 35 Months | Open | Open | Open | Open |
| 47284 | 18716.06 | 11134.2 | 40 | MO | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 14089 | 5192.69 | 1651.73 | 20 | MO | 42 Months | Cleared | Cleared | Cleared | Cleared |
| 22600 | 12329.68 | 4795 | 40 | MO | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 8437 | 5293.78 | 2772.88 | 40 | MO | 20 Months | Cleared | Cleared | Cleared | Cleared |
| 100250.1 | 42276.33 | 8731.67 | 40 | NY | 47 Months | Cleared | Cleared | Cleared | Cleared |
| 15349.63 | 10558.55 | 845.59 | 40 | MO | 31 Months | Cleared | Returned / | Cleared | Cleared |
| 13906 | 8949.3 | 2039.84 | 40 | MO | 34 Months | Cleared | Cleared | Cleared | Returned / |
| 18543 | 10706.88 | 2974.1 | 40 | MO | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 23846 | 12828.08 | 3563.4 | 40 | CA | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 57794 | 23697.58 | 5595.21 | 35 | FL | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 29033 | 15558.83 | 2500.56 | 35 | MO | 54 Months | Cleared | Cleared | Cleared | Cleared |
| 10146 | 4887.41 | 3266.62 | 35 | MO | 7 Months | Cleared | Cleared | Cleared | Cleared |
| 68412 | 26508.4 | 3154.14 | 35 | MO | 59 Months | Cleared | Cleared | Cleared | Cleared |
| 37268 | 16997.19 | 2752.26 | 35 | MO | 34 Months | Cleared | Cleared | Cleared | Cleared |
| 24060 | 12245.98 | 1651.5 | 35 | MO | 36 Months | Cleared | Cleared | Cleared | Cancel |
| 101398.4 | 38752.11 | 4812.54 | 35 | MO | 47 Months | Cleared | Cleared | Cleared | Cleared |
| 26339 | 14158.33 | 1467.2 | 35 | IL | 46 Months | Cleared | Cleared | Returned / | Cleared |
| 30017 | 13975.63 | 2329.26 | 35 | NJ | 35 Months | Cleared | Cleared | Cleared | Cleared |
| 36105 | 17242.15 | 698.46 | 35 | MO | 47 Months | Cleared | Cleared | Pending | Open |
| 43172 | 19736.44 | 822.36 | 35 | MO | 47 Months | Cleared | Returned / | Cleared | Pending |
| 103983 | 39863.73 | 2768.3 | 35 | MO | 32 Months | Cleared | Cleared | Cleared | Cleared |
| 7001 | 3799.67 | 271.41 | 35 | MO | 13 Months | Cleared | Pending | Open | Open |
| 27851 | 13217.53 | 734.3 | 35 | MO | 35 Months | Cleared | Cleared | Pending | Open |
| 36538.24 | 16709.68 | 903.22 | 35 | IL | 34 Months | Cleared | Returned / | Cleared | Open |
| 29622 | 15318.48 | 425.51 | 40 | MO | 34 Months | Cleared | Open | Open | Open |
| 17552 | 11076.98 | 271.76 | 40 | MO | 40 Months | Cleared | Pending | Open | Open |
| 10442 | 6779.06 | | 40 | MO | 26 Months | Open | Open | Open | Open |
| 115887 | 52137.6 | 868.96 | 40 | MO | 58 Months | Cleared | Open | Open | Open |
| 35897 | 18985.04 | 596.38 | 40 | MO | 47 Months | Cleared | Cancel | Open | Open |
| 9762.58 | 6025.39 | 273.88 | 40 | MO | 21 Months | Cleared | Open | Open | Open |

EXHIBIT 4
Page 20
EXHIBIT 1, PAGE 104

DocuSign Envelope ID: AF6B1B16-8BB3-48FB-A9AB-717AFAB65646

| Fifth Paym | Sixth Paym | First Paym | Next Paym | # Drafts Cl | Pay Freq. | Payment M | Paused | Client Statu | Payments |
|---|---|---|---|---|---|---|---|---|---|
| Cleared | Cleared | ######## | | 24 | Monthly | Bank | No | Active File | 24 |
| Cleared | Returned / | ######## | | 36 | Monthly | Bank | No | Active File | 36 |
| Cleared | Cleared | ######## | | 24 | Monthly | Bank/CC | No | Paused Per | 25 |
| Open | Open | ######## | ######## | 0 | Monthly | Checks | No | Active File | 0 |
| Cleared | Cleared | ######## | ######## | 15 | Monthly | Bank | No | Active File | 15 |
| Cleared | Cancel | ######## | ######## | 13 | Monthly | Bank | No | Active File | 13 |
| Cleared | Cleared | ######## | 3/9/2023 | 28 | Bi-Weekly | Bank | No | Active File | 28 |
| Cleared | Cleared | ######## | 3/2/2023 | 11 | Monthly | Bank | No | Active File | 11 |
| Cancel | Cleared | ######## | ######## | 11 | Monthly | Bank | No | Active File | 11 |
| Cleared | Pending | ######## | 3/9/2023 | 4 | Bi-Weekly | Bank | No | NSF | 4 |
| Cleared | Cleared | ######## | | 8 | Monthly | Bank | No | NSF | 8 |
| Cleared | Cleared | ######## | ######## | 10 | Monthly | Bank | No | Active File | 10 |
| Cleared | Cleared | ######## | ######## | 10 | Monthly | Bank | No | Paused Per | 10 |
| Cleared | Cleared | ######## | 3/3/2023 | 17 | Bi-Weekly | Bank | No | Active File | 17 |
| Cleared | Cleared | 6/6/2022 | 3/6/2023 | 9 | Monthly | Bank | No | Active File | 9 |
| Cleared | Returned / | ######## | ######## | 6 | Monthly | Bank | No | Active File | 6 |
| Cleared | Cleared | ######## | 3/1/2023 | 7 | Monthly | Bank | No | Active File | 7 |
| Cleared | Cleared | ######## | ######## | 6 | Monthly | Bank | No | Active File | 6 |
| Cleared | Returned / | ######## | ######## | 5 | Monthly | Bank | No | Active File | 5 |
| Cleared | Cleared | 9/6/2022 | 3/6/2023 | 6 | Monthly | Bank | No | Active File | 6 |
| Cleared | Returned / | ######## | ######## | 5 | Monthly | Bank | No | NSF | 5 |
| Cleared | Cleared | 9/2/2022 | 3/2/2023 | 6 | Monthly | Bank | No | Active File | 6 |
| Open | Open | ######## | 3/8/2023 | 2 | Monthly | Bank | No | Active File | 2 |
| Open | Open | ######## | ######## | 2 | Monthly | Bank | No | NSF | 2 |
| Cleared | Pending | ######## | 3/3/2023 | 5 | Bi-Weekly | Bank | No | Active File | 5 |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File | 1 |
| Open | Open | ######## | 3/9/2023 | 2 | Monthly | Bank | No | Active File | 2 |
| Open | Open | ######## | ######## | 0 | Monthly | CC | No | Active File | 2 |
| Open | Open | 2/9/2023 | 3/8/2023 | 1 | Monthly | Bank | No | Active File | 1 |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Active File | 1 |
| Open | Open | ######## | ######## | 0 | Monthly | Bank | Yes | Affiliate Re | 0 |
| Open | Open | 2/6/2023 | 3/6/2023 | 1 | Monthly | Bank | No | Educationa | 1 |
| Open | Open | 2/1/2023 | ######## | 1 | Monthly | Bank | No | Paused Per | 1 |
| Open | Open | ######## | ######## | 1 | Monthly | Bank | No | Educationa | 1 |

EXHIBIT 4
Page 21
EXHIBIT 1, PAGE 105

| Payment S | # NSFs |
|-----------|--------|
| 24 of 24 | 0 |
| 36 of 37 | 1 |
| 25 of 25 | 0 |
| 0 of 36 | 0 |
| 15 of 36 | 0 |
| 13 of 41 | 0 |
| 28 of 72 | 0 |
| 11 of 21 | 0 |
| 11 of 47 | 0 |
| 4 of 52 | 1 |
| 8 of 35 | 2 |
| 10 of 36 | 0 |
| 10 of 36 | 0 |
| 17 of 72 | 0 |
| 9 of 56 | 0 |
| 6 of 9 | 1 |
| 7 of 60 | 0 |
| 6 of 37 | 1 |
| 5 of 37 | 1 |
| 6 of 48 | 0 |
| 5 of 49 | 2 |
| 6 of 36 | 0 |
| 2 of 48 | 0 |
| 2 of 48 | 1 |
| 5 of 72 | 0 |
| 1 of 14 | 0 |
| 2 of 36 | 0 |
| 2 of 37 | 1 |
| 1 of 36 | 0 |
| 1 of 42 | 0 |
| 0 of 27 | 0 |
| 1 of 60 | 0 |
| 1 of 48 | 0 |
| 1 of 22 | 0 |

EXHIBIT 4
Page 22
EXHIBIT 1, PAGE 106

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF JEREMY B. FREEDMAN IN SUPPORT OF STATUS CONFERENCE REPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>June 12, 2023</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2**.  **SERVED BY UNITED STATES MAIL**:  On <u>June 12, 2023</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3**.  **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>June 12, 2023</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 12, 2023 | Caron Burke | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 110 of 139

Case 8:23-ap-01046-SC    Doc 45-5    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Peter M. Schneider    Page 1 of 7

1    Christopher B. Ghio (State Bar No. 259094)
     Christopher Celentino (State Bar No. 131688)
2    Jeremy B. Freedman (State Bar No. 308752)
     **DINSMORE & SHOHL LLP**
3    655 West Broadway, Suite 800
     San Diego, CA 92101
4    Telephone:  619.400.0500
     Facsimile:  619.400.0501
5    christopher.ghio@dinsmore.com
     christopher.celentino@dinsmore.com
6    jeremy.freedman@dinsmore.com

7    Proposed Special Counsel to Richard A. Marshack

8

9                    **UNITED STATES BANKRUPTCY COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

11

| 12 | In re: | Case No.: 8:23-bk-10571-SC |
| 13 | THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. |
| 14 | Debtor. | Chapter 11 |
| 15 | | **DECLARATION OF PETER M. SCHNEIDER** |
| 16 | RICHARD A. MARSHACK, Chapter 11 Trustee, | |
| 17 | Plaintiff, | Date:  June 12, 2023 Time:  1:30 p.m. |
| 18 | v. | Judge: Hon. Scott C. Clarkson Place:  Courtroom 5C |

19   TONY DIAB, an individual; DANIEL S.
     MARCH, an individual; ROSA BIANCA LOLI,
20   an individual; LISA COHEN, an individual;
     WILLIAM TAYLOR CARSS, an individual;
21   ENG TANG, an individual; MARIA EEYA TAN,
     an individual; JAKE AKERS, an individual; HAN
22   TRINH, an individual; JAYDE TRINH, an
     individual; WES THOMAS, an individual;
23   SCOTT JAMES EADIE, an individual; JIMMY
     CHHOR, an individual; DONGLIANG JIANG,
24   an individual; OAKSTONE LAW GROUP PC;
     GREYSON LAW CENTER PC; PHOENIX
25   LAW GROUP, INC.; MAVERICK
     MANAGEMENT, LLC; LGS HOLDCO, LLC;
26   CONSUMER LEGAL GROUP, P.C.; VULCAN
     CONSULTING GROUP LLC; B.A.T. INC. d/b/a
27   COAST PROCESSING; PRIME LOGIX, LLC;
     TERACEL BLOCKCHAIN FUND II LLC;
28   EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
     GLOBAL; OPTIMUMBANK HOLDINGS, INC.

Date:  June 12, 2023
Time:  1:30 p.m.
Judge: Hon. Scott C. Clarkson
Place:  Courtroom 5C
        411 W. Fourth Street
        Santa Ana, CA  92701

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 111 of 139

Case 8:23-ap-01046-SC    Doc 45-5    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Peter M. Schneider    Page 2 of 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

d/b/a OPTIMUM BANK; MARICH BEIN, LLC;
BANKUNITED, N.A.; REVOLV3, INC.;
FIDELITY NATIONAL INFORMATION
SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
WORLDPAY GROUP; MERIT FUND, LLC;
GUARDIAN PROCESSING, LLC; THE
UNITED STATES POSTAL SERVICE; and
DOES 1 through 100, inclusive,

           Defendants.

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 112 of 139

Case 8:23-ap-01046-SC    Doc 45-5    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Peter M. Schneider    Page 3 of 7

I, Peter M. Schneider declare as follows:

1. I am an attorney duly licensed to practice before the Courts of the States of Washington Oregon, Montana, and California. I have been in active practice for approximately 12 years. I am over the age of 18 and know the following facts of my own personal knowledge. If called as a witness in this matter, I could and would testify competently thereto.

2. I was hired on August 23, 2021 as a W2 employee by the Litigation Practice Group P.C. ("LPG") to provide legal services to LPG's clients in my capacity as an attorney and member of the bar.

3. I make this declaration as a neutral party in order to provide an account of the many benefits, services and successes LPG provided its clients during my time at LPG.

4. In addition to LPG's efforts – in which I was not involved – to invalidate or seek out of court resolution of their client's consumer debt, these monthly payments provided the client access – at no additional charge –to an experienced lawyer (such as myself) in their local jurisdiction in the event a creditor filed suit.

5. In such event I would defend the client – at no further expense to the client – and either obtain an outright dismissal (in a significant percentage of cases, approximately 25%) based on hardship or the Plaintiff's failure to prosecute its claim within a year, obtain a favorable settlement for the client in the average range of 50-70% of the outstanding principal balance of the debt without interest or fees, and in other instances secure outright dismissal based on the creditor's violation of the FDCPA or its state analogues, in approximately 5% of cases. These actions sometimes involved recoveries to the client for such FDCPA violations.

6. In all instances of settlement, the client would approve the settlement amount and terms. In virtually all instances, settlement would be funded by a commensurate reduction in the monthly fee paid by the client to LPG under their existing Legal Services Agreement. For example, if a client had a 24-month remaining obligation to LPG at $400/month and the creditor settled for 24-monthly payments of $200/mo., I would instruct LPG to reduce the client's monthly payment to $200/mo. The client would then pay its creditor the difference ($200/mo.) in satisfaction of the debt and only $200/mo. to LPG going forward. Thus the customer's total monthly payment remained

1

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 113 of 139

Case 8:23-ap-01046-SC    Doc 45-5    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Peter M. Schneider    Page 4 of 7

1  $400/mo., some attributable to settlement, the balance attributable to their Legal Service Agreement
2  with LPG.

3      7.    In some rare circumstances, clients approved settlements that required them to pay
4  amounts in excess of their monthly payments due to LPG. In those instances, I instructed LPG to
5  freeze collecting monthly payments from that client, so the client could apply their payment otherwise
6  due to LPG (plus additional amounts) in satisfaction of its settlement with its creditor. But, in each
7  such case, the client had already received valuable legal services provided by myself and other
8  dedicated consumer attorneys.

9      8.    Although my knowledge of the demise of LPG is limited, I received notice from Han
10  Trinh that Litigation Practice Group had "shut its doors" on February 17, 2023.

11      9.    When working properly, my experience with LPG was that it provided a needed and
12  valuable service to the consumers. My 200-250 LPG clients were generally pleased with the services
13  provided for the value.

14      10.    I continue to represent legacy LPG clients notwithstanding I was not paid required
15  401k contributions (the basis of my Proof of Claim No. 46) and no longer receive a salary from LPG.
16  When I do withdraw from cases, I send out a certified letter, copy of LPG's bankruptcy filing, and
17  my withdraw materials. The majority of client reactions has been absolute shock, as I am the only
18  person notifying them about the bankruptcy. Often times they are unaware that they have been
19  "transferred" to other "law firms." Many report money continues to be taken out of their accounts,
20  sometimes twice in a month, with cryptic notations that make it unclear who is withdrawing the
21  money. In two instances Phoenix Law has notified former LPG clients of its pending withdrawal
22  from their bank accounts, and then continued to make the withdrawals despite the former LPG clients'
23  written and verbal demands that it not do so, and that they never agreed to be represented by Phoenix
24  Law. It is my sincere hope that, through the supervised process led by the Trustee and this Court, a
25  workable solution in which LPG's clients and former clients are provided the legal services for which
26  they contracted and which LPG formerly provided.

27  ///
28  ///

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
Document    Page 114 of 139

Case 8:23-ap-01046-SC    Doc 45-5    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
Declaration of Peter M. Schneider    Page 5 of 7

1        11.     For related reasons I have filed lawsuits against Phoenix Law in the District Court of

2    Western Washington seeking amongst other things, injunctive relief.[1] [2]

3         I declare under penalty of perjury under the laws of the state of Washington that the foregoing

4    is true and correct, and that this declaration is executed on this 1st day of June, 2023 at Bothell,

5    Washington.



Peter M. Schneider

---

[1] Ademosu v. Phoenix Law, PC, 3:32-cv-05404

[2] Williams v. Phoenix Law, PC, 3:32-cv-054374

Case 8:23-ap-01046-SC    Doc    Filed 07/05/23    Entered 07/05/23 19:07:52    Desc Main
                    Document      Page 115 of 139

Case 8:23-ap-01046-SC    Doc 45-5    Filed 06/12/23    Entered 06/12/23 09:41:27    Desc
                Declaration of Peter M. Schneider    Page 6 of 7

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
655 W. Broadway, Suite 800, San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF PETER M. SCHNEIDER**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 12, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On June 12, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 12, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 12, 2023 | Caron Burke | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

1  Christopher B. Ghio (State Bar No. 259094)
   Christopher Celentino (State Bar No. 131688)
2  **DINSMORE & SHOHL LLP**
   655 West Broadway, Suite 800
3  San Diego, CA 92101
   Telephone:  619.400.0500
4  Facsimile:  619.400.0501
   christopher.ghio@dinsmore.com
5  christopher.celentino@dinsmore.com

6  Proposed Special Counsel to Richard A. Marshack

7

8                    **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

10

11  In re:                                        Case No.: 8:23-bk-10571-SC

12  THE LITIGATION PRACTICE GROUP P.C.,           Adv. Proc. No. 8:23-ap-01046-SC

13        Debtor.                                 Chapter 11

14  _____            **DECLARATION OF TY CARSS**

15  Richard A. Marshack,                          Date:    June 12, 2023
                                                  Time:    1:30 p.m.
16        Plaintiff                               Judge:   Hon. Scott C. Clarkson
                                                  Place:   Courtroom 5C
17  v.                                                     411 W. Fourth Street
                                                           Santa Ana, CA  92701
18  TONY DIAB, an individual; DANIEL S.
    MARCH, an individual; ROSA BIANCA LOLI,
19  an individual; LISA COHEN, an individual;
    WILLIAM TAYLOR CARSS, an individual;
20  ENG TANG, an individual; MARIA EEYA TAN,
    an individual; JAKE AKERS, an individual; HAN
21  TRINH, an individual; JAYDE TRINH, an
    individual; WES THOMAS, an individual;
22  SCOTT JAMES EADIE, an individual; JIMMY
    CHHOR, an individual; DONGLIANG JIANG,
23  an individual; OAKSTONE LAW GROUP PC;
    GREYSON LAW CENTER PC; PHOENIX
24  LAW GROUP, INC.; MAVERICK
    MANAGEMENT, LLC; LGS HOLDCO, LLC;
25  CONSUMER LEGAL GROUP, P.C.; VULCAN
    CONSULTING GROUP LLC; B.A.T. INC. d/b/a
26  COAST PROCESSING; PRIME LOGIX, LLC;
    TERACEL BLOCKCHAIN FUND II LLC;
27  EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
    GLOBAL; OPTIMUMBANK HOLDINGS, INC.
28  d/b/a OPTIMUM BANK; MARICH BEIN, LLC;
    BANKUNITED, N.A.; REVOLV3, INC.;
    FIDELITY NATIONAL INFORMATION

                                   1

1 SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
WORLDPAY GROUP; MERIT FUND, LLC;
2 GUARDIAN PROCESSING, LLC; THE
UNITED STATES POSTAL SERVICE; and
3 DOES 1 through 100, inclusive,

4 　　　　　　　　Defendants.

5

6 　　　　　I, William Taylor "Ty" Carss, declare:

7 　　　　　1.　　I am an attorney duly admitted to practice before all of the Courts in the State of

8 California, United States District Court for the Central District of the State of California.  I make this

9 Declaration of my own personal volition and based upon my personal knowledge, except as to those

10 matters based upon information and belief, and as to those matters, I believe them to be true.

11 　　　　　2.　　In late October 2022, I was hired by Tony Diab to work for a Law Firm called Gallant

12 Law Group ("GLG"); the head attorney of GLG was in Pennsylvania, but the operations were here in

13 Irvine, California.  I was the onsite attorney and was to provide legal advice, help manage the "law

14 firm," and represent California clients in either litigation or in bankruptcy.  In January 2023, the

15 business nearly came to a halt and the CRM (Debt Pay Pro) that we employees used was taken away.

16 Mr. Diab stated that there was a disagreement between the people that ran GLG, and we were parting

17 ways.  Even though things were slow during this down period, I was told that business would be

18 ramping up quickly.  A few weeks were spent in limbo, and then Mr. Diab floated the idea of starting

19 a new Law Firm. The name Phoenix Law was settled on, and in early February 2023, on a Monday

20 night around 10:00 pm, Mr. Diab called me and asked if I would be the Managing Attorney of Phoenix

21 Law (because I was doing such a great job and was well-liked in the office).  Thinking back now, it

22 seems like a haphazardly way to pick a new Head Attorney – although it was Mr. Diab's normal

23 operating protocol to call and text very late at night – but given the necessity for Mr. Diab to hurriedly

24 offload the Litigation Practice Group ("LPG") clients, thinking back now, it makes sense.

25 　　　　　3.　　My understanding as Managing Attorney of Phoenix Law was that we were going to

26 get a portion of the GLG clients and start onboarding new clients through marketing affiliates.  The

27 Corporation was set up in my name, and we started working under the Phoenix Law banner.  Within

28 ///

EXHIBIT 1, PAGE 117

1  a few weeks, thousands upon thousands of LPG clients were "dumped" onto Phoenix Law; Mr. Diab

2  was correct, things got really busy overnight.

3          4.       Prior to the "transfer" of LPG clients to Phoenix, all I knew about LPG was that Mr.

4  Diab supposedly ran the administrative operations, and that it was "winding down" its business (i.e.,

5  not taking on new clients and would operate until its current clients had completed their terms.)

6          5.       I was never informed about the LPG clients coming to Phoenix Law – it just happened.

7  If a Legal Agreement exists between Phoenix Law and LPG, I have not seen it.

8          6.       I do not know if Mr. Diab's scheme was already in motion back in October 2022 when

9  I was hired; but as things progressed, I should have realized sooner that I was being duped.  Notably,

10  during a "town hall" meeting with all the employees of Phoenix Law, Ms. Loli introduced me to the

11  whole group as the "fall guy."  I really enjoy working with the employees of Phoenix Law and trying

12  to help the clients the best we can – I thought as a team, if we always chose to do the right thing by

13  the clients, we could make this enterprise work.

14          7.       While Mr. Diab has not interfered with or acted as legal counsel for or within Phoenix

15  Law (as far as I know), he has continued to assert management and control over the operations,

16  hirings, and most importantly, the finances.  All expenditures must be approved by Mr. Diab.  We all

17  know that to be true.

18          8.       While I will provide more specifics and details to the Court over the coming days,

19  there are several matters which deserve the Court's attention today:

20          a.       First, since being served with the Court's TRO on June 2, 2023, and

21  understanding then the falsehoods around which Mr. Diab's con was based, I have been cooperating

22  with the Trustee and his investigative team 100%.  I have instructed the employees in the premises of

23  Phoenix to cooperate as well.

24          b.       Second, my most important concern today is for the tens of thousands of

25  consumer customers who originally were customers of LPG, and who -- through the machinations of

26  Mr. Diab and his insider team -- have been shifted from LPG to and through multiple different law

27  firms without their consent.  The overwhelming majority of the consumer clients in the database

28  (discussed below) are legacy LPG clients.  I support some form of orderly transition under the

1   guidance of the Trustee to secure adequate and lawful representation of those consumers -- this time

2   with their consent -- to ensure their situation is not worsened, and to provide some hope of economic

3   recovery for damages caused by the prior representation of Mr. Diab's many entities.

4          c.      Third, the CRM databases utilized by the current Phoenix and Greyson

5   practices contain the historical data of all LPG clients who have been migrated to these entities from

6   LPG.  The original CRM was a hosted database from Debt Pay Pro, an entity I understand is

7   cooperating with the Trustee.  After the loss of use of Debt Pay Pro, development of a new CRM

8   named "Luna" was ramped up to allow the various law firms operated by Mr. Diab to provide services

9   for the LPG clients.  Luna was likely released too soon as it appears to be a compromised version of

10  Debt Pay Pro.  Luna does appear to contain a complete copy of the data from the former Debt Pay

11  Pro database.  Much of Luna's development has occurred at Phoenix Law, and Mr. Diab may have

12  been involved in the financing of it.

13         d.      Fourth, some observations on the recent (since the bankruptcy filing) of the

14  rise of another law firm, Greyson Law.  I am informed that Mr. Diab's confidante, Han Trinh is the

15  "face" of the operation as the Lead Manager, and her sister, Jayde Trinh, serves as the lead attorney.

16  I am informed and believe that Han Trinh is on Greyson payroll for $300,000 and Phuong "Jayde"

17  Trinh -- who is in her second year of legal practice -- is on the payroll for $500,000 per year.  Prior

18  to the filing of the Bankruptcy Proceeding, the majority of the former contract lawyers working for

19  LPG were also transitioned first to Gallant (and maybe Oakstone) and then as contract lawyers for

20  Phoenix.  When legal services were required in states outside California, Phoenix would assign the

21  legal case of one of those contract lawyers, on a 1099 basis, to handle the case for a set fee.  On March

22  20, 2023, it appears that Greyson signed its first client, who was a former client of Oakstone Law, the

23  entity to which the clients not transitioned to Gallant law were transitioned by Mr. Diab before being

24  transitioned then to Phoenix.  A copy of that client's new Fee Agreement with Greyson is in the Luna

25  database.  It appears that all the 48 "clients" of Greyson are former LPG, Gallant, Oakstone, and/or

26  Phoenix clients; of the 48 such clients, 42 of them remain "active" in the Luna database as Phoenix

27  clients.  Since March 20, 2023, when Phoenix reached out to the attorney network to secure

28  representation for Phoenix clients, Phoenix is informed that the attorneys are now salaried employees

4

EXHIBIT 1, PAGE 119

1  of Greyson, and that Greyson will invoice Phoenix for such work.  Those invoices from Greyson have

2  now increased the expenses to Phoenix for such services and are now invoiced at a 167% increase to

3  Phoenix.  It is readily apparent that the rise of Greyson is designed to compete with, and siphon money

4  away from, Phoenix.

5         e.    Finally, a few preliminary comments about the affiliates PrimeLogix and

6  Maverick Management.  After the Trustee was appointed, Mr. Diab informed me that he would

7  present to the Trustee an agreement for Phoenix Law to be the successor to LPG, but which has yet

8  to materialize.  I am informed and believe that PrimeLogix and Maverick are operated (and allegedly

9  owned) by Mr. Diab's confidante, Rose Bianca Loli.  I do not believe Ms. Loli operates without

10  specific instruction from Mr. Diab.

11         I declare under penalty of perjury under the laws of the state of California that the foregoing

12  is true and correct, and that this declaration is executed on this   11th   day of June, 2023 at

13    Escondido  , California.

14

15                                        _____

16                                        William "Ty" Carss

17

18

19

20

21

22

23

24

25

26

27

28

5

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 655 W. Broadway, Suite 800, San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **DECLARATION OF TY CARSS**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 12, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On June 12, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 12, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 12, 2023 | Caron Burke | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

Christopher Celentino on behalf of Plaintiff Richard A. Marshack
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Celentino on behalf of Trustee Richard A Marshack (TR)
christopher.celentino@dinsmore.com, caron.burke@dinsmore.com

Christopher Ghio on behalf of Plaintiff Richard A. Marshack
christopher.ghio@dinsmore.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kenneth Misken on behalf of U.S. Trustee United States Trustee (SA)
Kenneth.M.Misken@usdoj.gov

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

**EXHIBIT 2**

1   Christopher B. Ghio (State Bar No. 259094)
    Christopher Celentino (State Bar No. 131688)
2   Yosina M. Lissebeck (State Bar No. 201654)
    Jonathan Serrano (State Bar No. 333225)
3   **DINSMORE & SHOHL LLP**
    655 West Broadway, Suite 800
4   San Diego, CA 92101
    Telephone:  619.400.0500
5   Facsimile:  619.400.0501
    christopher.ghio@dinsmore.com
6   christopher.celentino@dinsmore.com
    yosina.lissebeck@dinsmore.com
7   jonathan.serrano@dinsmore.com

8   Proposed Special Counsel to Richard A. Marshack

9   D. Edward Hays (State Bar No. 162507)
    Laila Masud (State Bar No. 311731)
10  MARSHACK HAYS WOOD LLP
    870 Roosevelt
11  Irvine, CA 92620
    Telephone:  949.333.7777
12  Facsimile:   949.333.7778
    ehays@marshackhays.com
13
    Proposed General Bankruptcy Counsel to Richard A. Marshack, Chapter 11 Trustee
14

15

16              **UNITED STATES BANKRUPTCY COURT**

17         **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

18

19  In re:                                    Case No.: 8:23-bk-10571-SC

20  THE LITIGATION PRACTICE GROUP P.C.,       Adv. Proc. No. 8:23-ap-01046-SC

21       Debtor.                              Chapter 11

22  _____  **STATUS CONFERENCE REPORT**

    RICHARD A. MARSHACK,
23  Chapter 11 Trustee,

24                  Plaintiff,

25                      v.

26  TONY DIAB, an individual; DANIEL S.
    MARCH, an individual; ROSA BIANCA LOLI,
27  an individual; LISA COHEN, an individual;
    WILLIAM TAYLOR CARSS, an individual;
28  ENG TANG, an individual; MARIA EEYA TAN,
    an individual; JAKE AKERS, an individual; HAN

1    TRINH, an individual; JAYDE TRINH, an
      individual; WES THOMAS, an individual;
2    SCOTT JAMES EADIE, an individual; JIMMY
      CHHOR, an individual; DONGLIANG JIANG,
3    an individual; OAKSTONE LAW GROUP PC;
      GREYSON LAW CENTER PC; PHOENIX
4    LAW GROUP, INC.; MAVERICK
      MANAGEMENT, LLC; LGS HOLDCO, LLC;
5    CONSUMER LEGAL GROUP, P.C.; VULCAN
      CONSULTING GROUP LLC; B.A.T. INC. d/b/a
6    COAST PROCESSING; PRIME LOGIX, LLC;
      TERACEL BLOCKCHAIN FUND II LLC;
7    EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
      GLOBAL; OPTIMUMBANK HOLDINGS, INC.
8    d/b/a OPTIMUM BANK; MARICH BEIN, LLC;
      BANKUNITED, N.A.; REVOLV3, INC.;
9    FIDELITY NATIONAL INFORMATION
      SERVICES, INC. d/b/a FIS; WORLDPAY, INC.;
10   WORLDPAY GROUP; MERIT FUND, LLC;
      GUARDIAN PROCESSING, LLC; THE
11   UNITED STATES POSTAL SERVICE; and
      DOES 1 through 100, inclusive,

12

13                    Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The duly appointed Chapter 11 Trustee, Richard Marshack ("Trustee") submits the following status report as requested by the Court in its *sua sponte* order. To date the following has occurred and/or been completed:

## INTRODUCTION

The Office of the United States US Trustee ("UST") and the Chapter 11 Trustee agree that Debtor appears to have engaged in improper conduct prior to bankruptcy. Based on Trustee's investigation to date and, which remains ongoing, he believes there is a possible solution that does not involve ceasing operations. Moreover, terminating operations likely would cause additional harm to Debtor's consumer clients including the following:

* Abandonment of Client files: Clients who have active files including defense of pending lawsuits will find themselves without counsel leaving them susceptible to aggressive enforcement of efforts by their creditors and leave them subject to substantial money judgments. In the first 20 days since Trustee served the Court's TRO mandating that he control operations, funds have been received from approximately 11,000 clients. Of this amount, at least 2,500 are involved in pending court cases. If LPG ceases all operations, it will be unable to pay for the legal services currently being rendered by attorneys across the country. This likely will cause consumers to be left representing themselves and increases the likelihood that they will miss court dates or be unable to advance a competent defense. Many will end up with judgments against them and all monies paid to LPG will have been wasted. Inevitably, consumers' answers will be stricken or their affirmative complaints will be dismissed since they will be unrepresented;

* Waste of Fees Paid by Client: Substantial numbers of client files are more than half-way complete. If operations cases, clients will have to start over again with a new firm assuming they still have sufficient funds to retain new counsel. To be clear, all that has been accomplished and all that has been paid for will go to waste and the clients will have to start over;

EXHIBIT 2, PAGE 125

\* Inability to Pay LPG employees to transfer Client Documents: Terminating operations will leave the estate without any funds to transition files to tens of thousands of clients. In other words, the estate will not have the labor or money to provide an orderly transition;

\* Public Relations issues: Immediately ceasing business will likely create a public relations nightmare. During the June 12, 2023, hearing, the Court analogized this case to a nursing home. If a nursing home is not being operated pursuant to the law, the answer is not to throw all occupants out onto the street. Instead, if operations must cease, sufficient notice and services must still be provided in order to have an orderly transition. Moreover, clients have paid for services and results that they will not receive leaving them subject to their debts, collection efforts, judgments, and vulnerable to other scams with little or no funds to pay a second time for legal representation. In sum, they won't get their debts resolved, they won't get the benefit of what they have paid for, and their answers may be stricken and they will be stuck with default judgments;

\* Possible Breach of Trustee's Duty to Reduce to Money the Property of the Estate: If Trustee does not attempt to sell assets (subject to the court's determination that any proposed sale is lawful), the estate will not realize what Trustee believes to be $30-40 million. These funds could otherwise enable significant distributions to creditors including consumers who have in fact been damaged. Also, if the case is left in Chapter 11, a plan of liquidation could be proposed that separately classifies the consumers whose claims will be significantly smaller than the tens of millions of dollars of non-consumer creditors and can fund refunds and pay damages to consumer that did not receive the benefit of their contracted bargain; and

\* Double Payment: If operations cease, clients will be forced to find and pay again for services they have already paid. Instead, a sale can be negotiated pursuant to which any purchaser will have to agree to provide the balance of services for no additional costs.

EXHIBIT 2, PAGE 126

Instead, Trustee believes his fiduciary duty requires him to continue his investigation to determine if assets can be sold in a fashion that contractually and by court order requires a buyer to comply with all applicable consumer protection laws.

\*        Compliance with Consumer Protection Laws: A purchase and sale agreement can include provisions that the buyer agrees to comply with all applicable laws including consumer protection laws such as the 15 U.S.C. § 6101-6108 (Telemarketing and Consumer Fraud and Abuse Prevention Act); 16 C.F.R., Part 310 (Telemarketing Sales Rule); and 15 U.S.C. § 1679-1679j (Credit Repair Organizations Act). In addition, compliance with such a provision can be maintained under the threat of contempt. If clients are abandoned, they may end up continuing to be subjected to unscrupulous competing businesses. Trustee is aware that Debtor's former principals are attempting to create a new business and compete for Debtor's clients;

\*        Reformed Contracts: Any sale can reform all existing legal services contracts to ensure that no contractual provision violates any law and that all services will be rendered in compliance with all applicable laws including the TSR and CROA;

\*        Post-Sale Monitor: Trustee has secured agreement with the two existing potential purchasers that a court-appointed monitor will be appointed who will audit and ensure compliance with the sales contract, sale order, and applicable laws. The monitor will be required to file periodic reports and can be a source for the UST, Trustee, and other governmental agencies to verify compliance. The costs of the monitor will be paid by the buyer. Trustee will require that any proposed sales agreement will provide that the Court will select the monitor. Trustee is contemplating proposing Nancy Rappaport who is a law professor at UNLV;

\*        Funding for Creditors: Debtor's existing contracts are by far the estate's most valuable and potentially its only significant asset. The value of the existing contracts could be worth more than $40 million. While Trustee is certain that the estate also has avoidance claims, there is no guarantee that prosecuting such claims will result in any recovery from Debtor's former principals.

3

EXHIBIT 2, PAGE 127

&ast; Orderly Transition and Preservation of Consumer Choices: State Bar Rule 1.17 applies to the sale of a law firm. Trustee will model any purchase and sale agreement to incorporate the salient provisions of this rule. Specifically, clients will be notified of the sale and their right to terminate their contract and their right to opt-out of being represented by the purchaser. As such, only those people that wish to continue their contracts will receive legal representation from buyer.

Bankruptcy courts are courts of equity where an equitable solution can be reached that avoids further damage to consumers. If this were simply a federal or state class action for violations of consumer protection laws, then such court's ability may be limited to awarding damages or imposing fines. There would be no ability to structure a sale to a buyer that would comply with the law or be found in contempt of court.

Additionally, the bankruptcy court has the ability to impose significant post-sale safeguards to protect consumers. The interested purchasers, with whom Trustee has already been negotiating have already agreed to permit a post-sale monitor to be appointed by the bankruptcy court to audit and supervise compliance. Lastly, any proposed sale will model California State Bar Rule 1.17, which provides notice to clients that they have the ability to opt-out and terminate their contracts instead of receiving services from a buyer.  In short, Trustee and his counsel have spent countless hours searching for solutions that protects consumers from further harm and that provides recoveries so that creditors may receive distributions.

### LPG'S OWNERSHIP AND MANAGEMENT

The Court requested information as it related to paragraphs 44-47 of the Complaint. The Trustee's continued investigation into the case substantiates the allegations set forth in those paragraphs and confirms that the facts as set forth are accurate.  Additional facts discovered are set forth as follows:

(44) Based on Trustee's investigation to date, there are approximately 22,000 active consumer clients of Debtor or its' alter egos.  Approximately 25-35% are in active litigation and being serviced by attorneys across the country who continue to make court appearances and meet deadlines.  Trustee

4

1    has received information that Mr. Diab is attempting to set up a new alter ego entity.  Trustee is

2    actively engaged in gathering evidence regarding these.

3        (45) At the hearing on June 12, 2023, Mr. Diab testified that LPG was created after he closed

4    Diab Law. Mr. Diab, Mr. March and Ty Carss conceded at the Preliminary Injunction hearing that Mr.

5    Diab controlled LPG's business and financial operations. Mr. Diab has admitted this in many other

6    forms after trying to hide his involvement. According to Mr. Diab, he hid his heavy involvement in

7    managing and running LPG to avoid the impact on financial and ACH account applications due to his

8    disbarment. The evidence and Declarations obtained from Darius Newbold who worked in LPG's

9    Tustin office pre-petition confirm he worked solely with Mr. Diab on all financial issues, witnessed

10   the sign on Mr. Diab's desk that read "I don't work here" and that he preferred to be called an

11   "Admin"  in the office. To wit, Mr. Diab has communicated with the Trustee directly using the email

12   address admin@lpglaw.com.

13       (46) At the hearing on June 12, 2023, Mr. Diab testified that he was involved in the high-level

14   decision making of LPG, including deciding for LPG to file for bankruptcy, hiring decisions, making

15   ACH pulls, and selecting the accounts where funds from ACH pulls were diverted. He also testified

16   that, up until March 2023, he was paying monthly rent of $43,500.00 for his residence and he

17   continues to rent a Lamborghini, which is conveniently stored in his garage. Mr. Diab, Dan March

18   and Ty Carss all conceded at the Preliminary Injunction hearing that Mr. Diab controlled all aspects of

19   LPG and its alter egos business, including the financing, client refunds, marketing efforts and

20   factoring. LPG's payroll records and Mr. March's testimony at the Preliminary Injunction hearing

21   confirm he received a significant salary of at least $600,000.00 per year, actually paid, with a

22   contractual salary of $100,000.00 per month or $1.2 million per year. Similarly, the evidence at the

23   Preliminary Injunction hearing establishes a two year attorney at Greyson Law Center, PC who

24   provides only general in house counsel receives a similar salary of approximately $500,000.00 per

25   year.

26       (47) At the hearing on June 12, 2023, Mr. Diab testified that he made the decision for LPG to

27   file for bankruptcy in conjunction with March.

28

EXHIBIT 2, PAGE 129

### LPG'S BUSINESS STRUCTURE

The Court requested information as it related to paragraphs 48-52 of the Complaint. The Trustee's continued investigation into the case substantiates the allegations set forth in those paragraphs and confirms that the facts as set forth are accurate.  Additional facts discovered are set forth as follows:

(48)  The correct name of the entity doing business as Coast Processing is BAT, Inc.  This has been corrected in the Amended Adversary Proceeding Complaint filed June 16, 2023. BAT, Inc. is still a registered California Corporation. Based on the Trustee's preliminary investigation BAT, Inc. does not appear to be actively marketing new LPG or Phoenix clients. That said, the Trustee is aware Mr. Diab may intend to start yet another law firm which may be the beneficiary of BATs marketing efforts.

(49)  The Trustee is aware of at least two contracts for the purchase of new clients and/or accounts receivables with marketing affiliates entered into by Dan March on behalf of LPG post-petition. These contracts were entered within two weeks of LPG filing its petition. To date, Trustee is not aware based on the evidence obtained to date of any other marketers actively seeking to enroll clients with LPG or its alter ego, Phoenix Law.

(50)  As discussed above, about one-third of LPG's consumer clients are in active litigation being handled by a licensed attorney located in that client's jurisdiction.  The Trustee and his counsel have interviewed numerous of these attorneys – including current and former LPG attorneys and confirmed that LPG did provide valuable litigation services to these clients.

(51)  The contractual and financial evidence received to date confirms this to be true as it relates to accounts receivables sold to a factoring company.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

6

(52)  Validation Partners is a creditor in this action. Having made a claim the Trustee remains committed to first and foremost achieving what is in the best interest of the consumer, and at the same time providing a reasonable solution to obtaining funds for the Estate and all creditors including Validation Partners. At this time, pending further investigation, Trustee believes Validation Partner is a creditor of accounts receivables subject to recovery.

**TRUSTEE'S ACTIONS TO DATE**

The Court's *sua sponte* request for status report requested the above information concerning the status of the Trustee's investigation as it relates to specifically identified paragraphs of the Adversary Complaint.  In addition, the Trustee believes that the Court would be interested in information concerning the Trustee's actions to date.

First, the Trustee has secured interim financing to ensure the payment of essential customer service personnel and the payment of ordinary operating expenses.  Among other things, this financing has allowed the Trustee to (i) authorize payments due to email domain operators to ensure that attorneys actively working cases for consumer clients can continue to communicate effectively with those clients; and (ii) make payroll of customer service personnel employees who remain on-site to connect consumer clients to attorneys in the event a summons or complaint is filed against them. The employees paid by way of this interim financing are also assisting the Trustee gather essential information concerning the operations and assets of LPG so that the Trustee's investigation may proceed and so that the Trustee can provide responses to the United States Trustee's informal discovery requests.

Second, the Trustee is in active negotiations with two prospective buyers, each of which has agreed to stringent consumer safeguards in connection with any sale of the Debtor's business.  Such safeguards include, but are not limited to, compliance with the Credit Repair Organizations Act, the Telemarketing Sales Rule and other applicable federal statutes.  The prospective buyers have each agreed to provide Trustee with full audit rights and to the pay for the services of a Court-appointed monitor.  The Trustee – based on comments concerning prospective purchasers made by the United States Trustee – is also conducting a full investigation into the practices of said prospective purchasers to ensure their existing operations comply with applicable state and federal statute.  In connection

7

1  with any sale, the Trustee intends to comply with the ABA's Model Rule 1.17 governing the sale of

2  law firms, to which each of the prospective purchasers has agreed.  Trustee currently anticipates that

3  an order shortening time on a sale motion will be filed by the end of next week.

4       Third, the Trustee and his counsel have actively interviewed multiple attorneys currently

5  providing legal services – in active litigation – to nearly one-third of the enrolled consumer clients of

6  LPG.  All information obtained from these interviews indicates that attorneys continue to provide

7  valuable legal services to LPG's consumer clients and that termination of LPG's business absent an

8  orderly sale to an ethical operator would be antithetical to the Trustee's highest priority: protection of

9  LPG's consumer clients.

10

11  Dated:  June 23, 2023                         Respectfully submitted,

12                                              DINSMORE & SHOHL LLP

13
                                              By:  /s/ Jonathan Serrano
14                                                 Christopher B. Ghio
                                                   Christopher Celentino
15                                                 Jonathan Serrano
                                                   Proposed Special Counsel to
16                                                 Richard A. Marshack, Chapter 11 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

8

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Dinsmore & Shohl LLP
550 S. Hope Street, Suite 1765
Los Angeles, California 90071

A true and correct copy of the foregoing document entitled (*specify*): ***Status Conference Report*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 23, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **June 23, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 23, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 23, 2023 | Katrice Ortiz | /s/ Katrice Ortiz |
|---|---|---|
| Date | Printed Name | Signature |

2

**In re The Litigation Practice Group, P.C.**
**U.S.B.C., Central District of California, Santa Ana**
**Case No. 8:23-bk-105701-SC**

## I. SERVED ELECTRONICALLY VIA NEF:

- **Eric Bensamochan:** eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown:** ron@rkbrownlaw.com
- **Christopher Celentino:** christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson:** cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark** : rbc@randallbclark.com
- **Leslie A Cohen:** leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Christopher Ghio:** christopher.ghio@dinsmore.com
- **Richard H Golubow:** rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays:** ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser:** ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander:** ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Joon M Khang:** joon@khanglaw.com
- **Ira David Kharasch:** ikharasch@pszjlaw.com
- **David S Kupetz:** David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley:** chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev:** daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman:** mlieberman@lipsonneilson.com
- **Richard A Marshack (TR):** pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud:** lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken:** Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo:** bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias:** anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark:** vnewmark@pszjlaw.com
- **Queenie K Ng:** queenie.k.ng@usdoj.gov
- **Teri T Pham:** tpham@enensteinlaw.com, 3135.002@enensteinlaw.com
- **Douglas A Plazak:** dplazak@rhlaw.com
- **Ronald N Richards:** ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato:** gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott:** olivia.scott3@bclplaw.com
- **Jonathan Serrano:** jonathan.serrano@dinsmore.com
- **Paul R Shankman:** PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim:** leslie.skorheim@usdoj.gov
- **Andrew Still:** astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA):** ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss:** sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White:** JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

EXHIBIT 2, PAGE 134

**B.**    **<u>SERVED VIA REGULAR U.S. MAIL:</u>**

N/A

**III.**    **<u>SERVED VIA OVERNIGHT MAIL (FED EX):</u>**

**<u>United States Bankruptcy Court</u>**

Honorable Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, California 92701

4

EXHIBIT 2, PAGE 135

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **CHAPTER 11 TRUSTEE'S STATUS REPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 5, 2023** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **July 5, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**DEBTOR – MAIL REDIRECTED TO TRUSTEE**
THE LITIGATION PRACTICE GROUP P.C.
~~17542 17TH ST~~
~~SUITE 100~~
~~TUSTIN, CA 92780-1981~~

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 5, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
**PRESIDING JUDGE'S COPY**
HONORABLE SCOTT C. CLARKSON
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 5, 2023 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                 **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **INTERESTED PARTY COURTESY NEF: Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC.:** Ronald K Brown ron@rkbrownlaw.com
- **ATTORNEY FOR TRUSTEE: Christopher Celentino** christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- **ATTORNEY FOR TRUSTEE: Christopher Ghio**    christopher.ghio@dinsmore.com
- **INTERESTED PARTY COURTESY NEF: Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **ATTORNEY FOR TRUSTEE:** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CITY CAPITAL NY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Garrick A Hollander ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP P.C.:** Joon M Khang joon@khanglaw.com
- **INTERESTED PARTY COURTESY NEF: David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **INTERESTED PARTY COURTESY NEF: Christopher J Langley** chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com; ecf123@casedriver.com
- **INTERESTED PARTY COURTESY NEF: Michael D Lieberman**    mlieberman@lipsonneilson.com
- **CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR TRUSTEE:** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **US TRUSTEE: Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **INTERESTED PARTY COURTESY NEF:** Byron Z Moldo bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com, dperez@ecjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Alan I Nahmias anahmias@mbn.law, jdale@mbnlawyers.com
- **ATTORNEY FOR US TRUSTEE:** Queenie K Ng queenie.k.ng@usdoj.gov
- **INTERESTED PARTY COURTESY NEF: Douglas A Plazak**    dplazak@rhlaw.com
- **INTERESTED PARTY COURTESY NEF:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **INTERESTED PARTY COURTESY NEF: Gregory M Salvato**    gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **INTERESTED PARTY COURTESY NEF:** Paul R Shankman PShankman@fortislaw.com, info@fortislaw.com
- **INTERESTED PARTY COURTESY NEF: Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **US TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov

4865-5287-5111, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                                                    **F 9013-3.1.PROOF.SERVICE**