Michael A. Sweet (SBN 184345)
Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
msweet@foxrothschild.com
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Proposed* Counsel For Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br><br>**CONDITIONAL OPPOSITION TO APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE REGARDING SALE MOTION; DECLARATION OF NICHOLAS A. KOFFROTH IN SUPPORT THEREOF**<br><br>**Hearing Date and Time**<br>Date:    July 10, 2023<br>Time:    2:00 p.m.<br>Location: *ZoomGov* |

The Official Committee of Unsecured Creditors (the "Committee") of The Litigation Practice Group, P.C. (the "Debtor"), in the above-referenced bankruptcy case (the "Bankruptcy Case") pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),[1] hereby submits this conditional opposition (the "Opposition") to the *Application for Order Setting Hearing on Shortened Notice* [Docket No. 192] (the "Application") filed by the chapter 11 trustee, Richard A. Marshack (the "Trustee"), and related to the *Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* [Docket No. 191] (the "Motion"). In support of the Opposition, the Committee refers to the record in this Bankruptcy Case and the related adversary proceeding, captioned *Marshack v. Diab, et al.*, Adv. Proc. No. 8:23-ap-01046-SC (the "Adversary Proceeding"), the *Declaration of Christopher Ghio* attached to the Application (the "Ghio Declaration"), the *Declaration of Nicholas A. Koffroth* (the "Koffroth Declaration") attached hereto, the argument of counsel at any hearing on the Application, and respectfully states as follows:

**I.**

**INTRODUCTION**

The purchaser under the proposed sale—Consumer Legal Group, P.C. ("CLG")—is already an infamous participant in this Bankruptcy Case. Just weeks ago, the Trustee obtained a preliminary injunction against CLG based on the Trustee's allegation that CLG was the transferee of a prepetition fraudulent transfer of 12,000 customer files that siphoned-off $3.3 million in the Debtor's annual revenue. Just last week, CLG's special purpose affiliate, Liberty Acquisitions Group Inc. ("Liberty"), was authorized to loan the estate $560,000, on a superpriority basis, on 24 hours' notice. It is fair to expect that CLG's selection as purchaser in a sale intended to provide "extraordinary oversight and consumer protections" would cause whiplash among the Committee's constituency.

---

[1] Unless otherwise defined herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

The asset purchase agreement (the "<u>APA</u>") documenting the proposed transaction is also rife with potential red flags that give the Committee immediate pause. The Trustee asserts that CLG is entitled to a good faith purchaser finding under § 363(m) notwithstanding the history of litigation brought by the Trustee against CLG. The Trustee requests authority to utilize over half of the initial $1 million deposit to repay Liberty's postpetition loan outside of a plan and prior to the final hearing on postpetition financing. The Trustee proposes the assumption and assignment and reformation of consumer agreements—to "cleanse" them of potentially unenforceable provisions—post-closing utilizing an opt-out procedure that is light on detail. The Trustee seeks approval of a "monitor" to oversee the propriety of the consumer agreement transfer and post-closing operations without any input from the Committee representing those constituents, and purports to hamstring the monitor by limiting the amount that CLG is willing to fund.

While the Committee has expressed its concerns to the Trustee, and asked to participate in the formulation of any purchase agreement in real time, the Trustee has effectively shut-out the Committee from the same sale process he claims will protect its constituents' interests. The Committee has repeatedly provided written and verbal comments, redlines, and a slew of requests to participate in the negotiations directly. None have resulted in meaningful participation or modification of the APA. The Trustee seeks a hearing on an expedited basis as a result of "the realities of this case and time constraints" but has eschewed the Committee's near daily efforts to substantively address the serious concerns raised by the APA and proposed sale process. If the Trustee intends to force the Committee to exercise its voice through motion practice, then it must provide adequate time to do so rather than relying on the same shortened-notice requests that are becoming "old hat" in this Bankruptcy Case.

The Committee appreciates the exigencies of this Bankruptcy Case and the value-maximizing potential of a sale. That said, the Committee has expressed doubts about the purported financial urgency—the need to keep funding a call center operated by non-debtor, Phoenix Law, P.C., that employs a largely non-attorney staff for client retention and billing rather than substantive debt settlement work. Moreover, the Committee ***does not*** believe that the proposed sale is outright unsalvageable and desires to work toward a value-maximizing sale that protects consumers. The

Committee's concerns—including those related to timing—can always be resolved by prompt and constructive collaboration with the Trustee. In the event that the Trustee immediately addresses the Committee's concerns and incorporates them into any sales proposal, it is possible that the Committee might consent to a sale on less than full notice. However, in its absence, the Trustee's claim of "financial" exigencies do not outweigh the Committee's right to full briefing and discovery on the Motion that will seriously impact the rights of consumers, customers, and the estate.

## II.

## FACTUAL BACKGROUND

### A.    General Background

On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

On May 4, 2023, the Court entered an order [Docket No. 58] appointing the Trustee as chapter 11 trustee in this Bankruptcy Case. On June 13, 2023, the Trustee filed a motion [Docket No. 102] for the approval of reimbursement procedures for counsel to a proposed *ad hoc* committee of consumer claimants. On June 27, 2023, the Court entered an order [Docket No. 151] approving a stipulation [Docket No. 149] voluntarily dismissing the *ad hoc* committee motion in light of the appointment of the Committee and the agreement that a majority of the Committee's members will remain consumer claimants.

On June 23, 2023, the Office of the United States Trustee (the "UST") appointed [Docket No. 134] the Committee. On June 29, 2023, the UST expanded [Docket No. 157] the Committee's membership from five to seven members. On June 29, 2023, the Committee retained proposed counsel.

### B.    The Trustee Files and Prosecutes the Adversary Proceeding Against Its Proposed Purchaser.

On May 25, 2023, the Trustee filed a complaint [Adv. Docket No. 1] in the Adversary Proceeding against, among others, CLG. As set forth more fully in the Complaint, the Debtor's former owner, Tony Diab, "transferred [the Debtor's] entire business to new law firms free of [the Debtor's] obligations to its creditors," including transfers to CLG. *See* Compl., at ¶ 59. The Trustee

alleged that CLG was one of a series of "alter egos" of the Debtor "set up" by Diab and that "Diab owns and operates the Alter Egos, despite them being nominally owned by licensed attorneys." *Id.*, at ¶¶ 59-60. "At or around the Petition Date, Diab admitted that [the Debtor] had transferred approximately . . . 12,000 [customer] files to CLG (approximately $3.3 million in revenue)." *Id.*, at ¶ 61. "Diab is using [CLG] to re-direct LPG funds for his own personal gain and avoid the protections afforded creditors and the Estate under the Bankruptcy Code." *Id.*, at ¶ 63.

On May 26, 2023, the Court entered a temporary restraining order [Adv. Docket No. 13] enjoining CLG from, among other things, siphoning-off the Debtor's assets. On June 23, 2023, the Court entered a preliminary injunction [Adv. Docket No. 70] granting the estate similar relief against CLG.

On June 30, 2023, the Trustee filed a stipulation [Adv. Docket No. 81] with CLG concerning a "partial settlement of claims" that is currently set [Docket No. 182] for hearing (on shortened notice) on July 11, 2023 as a compromise.

**C.    The APA Includes Concerning Provisions That Materially Impact the Committee's Constituency.**

The APA will materially affect the Committee's constituencies and contain a series of worrisome provisions. By way of example, the Motion and APA provide the following:

- **Good Faith Purchaser.** The APA requires that the Court enter a sale order that includes "a finding that [CLG] is a good faith buyer of the Property under Section 363(m) of the Bankruptcy Code" as a condition to CLG's obligations under the APA. *See* APA, § 6(a)(1) at 12.

- **Initial Deposit.** The APA provides for a $1 million "initial deposit" to be received by July 13. However, one day later, the APA requires the Trustee to pay the $560,000 postpetition superpriority claim of Liberty (a CLG affiliate) from the initial deposit (plus interest). *See* APA, § 2(a) at 7. This payment is slated to occur before the proposed sale hearing, before the August 10 hearing on final approval of the postpetition Liberty loan, and before plan confirmation.

- **Assumption, Assignment, and Opt-Out.** The Trustee proposes a sale of the agreements between consumers and the Debtor. *See* APA, § 1(a) at 3-4. The APA allows CLG to add or remove agreements from the assumed agreement list for 120 days post-closing and, conflictingly, provides that CLG will be required to provide a 90-day "opt-out" notice to consumers under California law. *See id.*, § 1(c) at 6, § 2.1 at 9. The APA and Motion contain no provisions concerning notice of assumption and assignment procedures, and limited discussion of the "opt-out" procedures. The APA suggests that CLG may be operating or funding the Debtor's business prior during some period between execution of the APA and contract assignment, but the APA is unclear. *See id.*, § 2(d) at 9. CLG also represents that it will modify assumed agreements to be consistent with applicable federal law, but the Motion offers only a thin discussion of the mechanism by which an assigned contract may be reformed. *See id.*, § 12(j), (k) at 16.

- **Monitor.** The APA provides that a monitor will oversee CLG's post-closing operations with respect to any consumer agreements transferred to CLG.[2] *See* APA, § 2.2 at 9. The Committee has no oversight over the Monitor or role in selecting the Monitor designated to serve as a consumer watchdog.

- **Marketing Efforts.** The Motion contains limited disclosures concerning the Trustee's marketing efforts. Moreover, the Motion provides that the sale price is $42 million when, in reality, the majority of the figure constitutes a speculative "earn out" fee. *See* Mot. at 12. The disclosures, misleading "purchase price," and confusing overbid procedures cast doubt that there will be any practical chance for overbids.

These and other provisions raise concerns with the Committee. Though they may be surmountable, the Committee has received little feedback or information to quell its fears.

---

[2] The APA is admittedly inconsistent on this point. In a separate section, CLG represents that it will permit oversight by the Monitor and Committee for a one-year period. *See* APA, § 12(*l*) at 16.

- 5 -

**D.    The Trustee Has Ignored the Committee's Relentless Efforts to Participate in Negotiations.**

The Committee has reached out to the Trustee nearly every day since it retained counsel to discuss and negotiate potential sale terms and has been ignored. As more specifically set forth in the Koffroth Declaration, the Trustee has made daily efforts to contact the Trustee to engage in substantive discussions since the Committee retained counsel on June 29. The Committee has provided verbal, email, and redlined comments on numerous occasions, none of which have made their way into the APA filed with the Court.

The Committee is not letting the Trustee's intransigence delay the discharge of its duties. The Committee is serving subpoenas on the Trustee's two postpetition lenders and is also serving CLG with a subpoena today concerning the sale Motion. However, the Committee is under no illusions that conducting discovery in the days between the filing of the Motion and the Trustee's proposed hearing will produce limited results. The notion that parties must now race to respond to the Trustee's nearly thousand-page sale Motion after the Trustee's own delay efforts is plainly prejudicial.

## III.

## ARGUMENT

Rule 2002(a)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides for at least 21 days' notice of a motion "a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice." FED. R. BANKR. P. 2002(a)(2); *see also* FED. R. BANKR. P. 9006(c)(1) (permitting reduction of time "for cause shown"). "In exercising that discretion, [a court] should consider the prejudice to parties entitled to notice and weigh this against the reasons for hearing the motion on an expedited basis." *In re Philadelphia Newspapers, LLC*, 690 F.3d 161, 171 (3d Cir. 2012); *In re Park Distributors, Inc.*, 176 F. Supp. 38, 42 (S.D. Cal. 1959) (shortened notice may be appropriate if "an advantageous sale will be lost or the property to be sold will substantially depreciate in value during the notice period" but "there is no warrant" to modify for "convenience"). Rule 9075-1(b) of the Local Bankruptcy Rules (the "LBRs") prescribes

the specific procedure to reduce a notice period, including that the application must "state the reasons necessitating a hearing on shortened notice" and be accompanied by a declaration that "that justifies the setting of a hearing on shortened notice and establishes a prima facie basis for the granting of the underlying motion." LBR 9075-1(b)(2).

A.  **The Alleged Basis of the Urgency Necessitating a Hearing Is at Odds with the Record in This Bankruptcy Case.**

The Trustee seeks a hearing on shortened notice without regard to the foreseeability of the purported exigency and his own delays in addressing the Committee's concerns. *First*, as set forth above, the Trustee can hardly claim that the sale is a surprising development. At the June 30 hearing on financing, the Trustee had promised the Motion would be filed by Monday, July 3. The Committee understands this was not the first promise a sale motion was forthcoming. The Ghio Declaration does not address the delay—other than ongoing negotiations—and does not offer a specific explanation for the requested July 14 hearing date. Additionally, the Trustee's concurrently filed status report supplement [Docket No. 187] claims that the Trustee is "in the process of finalizing and filing a Motion to Borrow Funds to operate for an additional several weeks to allow operations to continue pending determination of the Trustee's Motion to Sell." *See* Docket No. 187 at 2. The Committee reserves all rights to yet another expedited financing motion; however, the Trustee clearly believes that an avenue exists to continue what he believes to be necessary operations beyond July 14. The Motion is neither a surprising development, nor does the proposed hearing date appear connected to any material inflection point in the Bankruptcy Case.

*Second*, the Trustee has squandered the Committee's near daily efforts to negotiate in advance of motion practice. The Trustee now requests that the Committee dive into expedited discovery, briefing, and a hearing despite stringing along the Committee for nearly two weeks. The delay is particularly offensive where the Motion repeatedly champions the APA's "extraordinary protections" for the Committee's constituency without substantively engaging the Committee. Accordingly, the Trustee cannot demonstrate a need (or entitlement) to expedited relief under these circumstances.

1   **B.**   **The Application Is Not Supported by a *Prima Facie* Showing That the Motion—With Several, Easily Identifiable "Red Flag" Features—Will Be Successful on the Merits.**

The Trustee does not address whether the Motion will be successful on the merits. The Committee is mindful that a value-maximizing sale may be the best outcome for its constituency. However, the APA contains seriously concerning provisions developed in a black box with a potential purchaser that remains subject to injunctive relief for its role in a fraudulent transfer scheme. The requirement in LBR 9075-1(b) that the Application include a *prima facie* showing that the Motion will be successful is acutely necessary where the rights of consumers and creditors will be materially altered under the APA. Accordingly, an expedited hearing is not appropriate because the Trustee has failed to establish the *prima facie* showing required under the LBRs.

## IV.

## RESERVATION OF RIGHTS

The Committee expressly reserves all rights with respect to substantive briefing and argument on the Motion. Nothing contained herein shall be construed as an admission with respect to the Motion, a waiver of arguments, claims, or defenses, or an election of remedies. Additionally, the Committee reserves all rights with respect to challenging notice of any hearing on the Motion set on shortened notice, including, without limitation, as set forth in LBR 9075-1(c).

## V.

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court enter an order: (i) denying the Application; (ii) setting the hearing on the Motion on regular notice, subject to the Trustee substantively engaging with the Committee on a more expedited basis; and (iii) granting the Committee such other and further relief as is just and appropriate under the circumstances.

Dated: July 10, 2023                   Respectfully submitted,

**FOX ROTHSCHILD LLP**

By:  *Nicholas A. Koffroth*
Proposed Counsel to Official Committee
of Unsecured Creditors

**DECLARATION OF NICHOLAS A. KOFFROTH**

I, Nicholas A. Koffroth, declare as follows:

1. I am an attorney with Fox Rothschild, LLP, counsel to the Official Committee of Unsecured Creditors (the "Committee") of The Litigation Practice Group, P.C. (the "Debtor"), in the above-referenced bankruptcy case (the "Bankruptcy Case"). I am licensed to practice law in the State of California and authorized to submit this Declaration.

2. I submit this Declaration in further support of the *Conditional Opposition to Application for Order Setting Hearing on Shortened Notice Regarding Sale Motion* (the "Opposition")[3] filed concurrently herewith, and for any other purpose authorized by law.

3. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge or my opinion based upon my experience and knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would competently testify to the facts stated in this Declaration.

4. In light of the confidential nature of the sale process, this Declaration does not attach supporting email correspondence, which may contain information and attachments shared with the Committee on a confidential basis or could otherwise impact a competitive sale process. Upon request of the Court, I can provide supporting email correspondence under seal in support of the statements in this Declaration.

5. On Friday, June 30, 2023, I organized an introductory call with the Trustee and his counsel during which I requested access to certain information, including any asset purchase agreement and sale motion drafts and informal discovery concerning marketing efforts.

6. On Saturday, July 1, 2023, I sent the Trustee's counsel two email requests for sale documents. I also requested and scheduled a call with the Trustee's counsel on Sunday, July 2, concerning the status of the sale efforts and informal discovery requests.

7. On Sunday, July 2, 2023, I sent two more emails requesting sale documents from the Committee's counsel. The Trustee's counsel indicated that they had drafts of sale documents,

---

[3] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Opposition.

but wanted to wait to share them until further revisions were completed. The Trustee's counsel canceled the sale status call that we had scheduled the day earlier on this basis.

8. On Monday, July 3, 2023, the Trustee's counsel provided draft sale documents for the review of Committee counsel on an "attorneys' eyes only" basis. Less than an hour later, I participated in a call with counsel to the Trustee and Committee concerning an overview of the sale documents. During the call, I was informed by the Trustee that the Committee's counsel would have a "seat at the table" during negotiations going forward. Following the call, Trustee's counsel initiated an email thread with CLG's counsel and the Committee's counsel presumptively for negotiations going forward.

9. On Tuesday, July 4, 2023, I sent an email to the Trustee's counsel following-up on the June 30 information requests, which remained outstanding. The Trustee's counsel provided a portion of the requested information; however, none related to the sale and marketing information requests.

10. On Wednesday, July 5, 2023, the Trustee's counsel provided the Committee's counsel with a revised asset purchase agreement. The Committee's counsel had not been involved or copied on the communications that resulted in the new draft.

11. On Thursday, July 6, 2023, I emailed the Trustee's counsel with the Committee's initial comments to the draft CLG asset purchase agreement and a redline version with proposed revisions.

12. On Friday, July 7, 2023, the Committee's counsel requested a call with the Trustee and his counsel during which the Committee's counsel learned another draft of the CLG asset purchase agreement existed. The Trustee's counsel forwarded the current version that did not include the Committee's comments or revisions. I provided redline comments to the Trustee's counsel again in two separate emails; however, the Trustee filed the Motion without any comments incorporated. The Trustee's counsel emailed me and indicated that further comments would be incorporated over the weekend.

13. On Sunday, July 9, 2023, I emailed the Trustee's counsel and requested the status of revisions to the APA. The Trustee's counsel responded that revisions were ongoing. By contrast, the Trustee responded that his counsel "took a day off" and that "discussion should start tomorrow."

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of July, 2023, in Los Angeles, California.

*/s/ Nicholas A. Koffroth*
Nicholas A. Koffroth

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled CONDITIONAL OPPOSITION TO APPLICATION FOR ORDER SETTING HEARING ON SHORTENED NOTICE REGARDING SALE MOTION; DECLARATION OF NICHOLAS A. KOFFROTH IN SUPPORT THEREOF on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/10/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Eric Bensamochan**  eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**  ron@rkbrownlaw.com
- **Christopher Celentino**  christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**  cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**  rbc@randallbclark.com
- **Leslie A Cohen**  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Christopher Ghio**  christopher.ghio@dinsmore.com
- **Jeffrey I Golden**  jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays**  ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**  ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Joon M Khang**  joon@khanglaw.com
- **Ira David Kharasch**  ikharasch@pszjlaw.com
- **David S Kupetz**  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**  chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**  daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman**  mlieberman@lipsonneilson.com
- **Richard A Marshack (TR)**  pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken**  Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**  bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**  anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**  vnewmark@pszjlaw.com
- **Queenie K Ng**  queenie.k.ng@usdoj.gov
- **Teri T Pham**  tpham@enensteinlaw.com, 3135.002@enensteinlaw.com
- **Douglas A Plazak**  dplazak@rhlaw.com
- **Ronald N Richards**  ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**  gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com

Active\118774763.v1-1/20/21

- **Olivia Scott**  olivia.scott3@bclplaw.com
- **Jonathan Serrano**  jonathan.serrano@dinsmore.com
- **Paul R Shankman**  PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim**  leslie.skorheim@usdoj.gov
- **Andrew Still**  astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**  sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**  JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

**2.    SERVED BY UNITED STATES MAIL**:  On July 10, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

Parties not on ECF but require service of filings:

Daniel A Edelman
Edelman, Combs, Latturner & Goodwin, LLC
20 S Clark St Ste 1500
Chicago, IL 60603-1824

Grobstein Teeple LLP
23832 Rockfield Blvd suite 245
Lake Forest, CA 92630

Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620

Jason Patterson Stopnitzky
52 Cupertino Circle
Aliso Viejo, CA 92656

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 10, 2023, I served the following persons and/or entities by personal delivery, mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct

| 7/10/2023 | Kimberly Hoang | /s/ Kimberly Hoang |
|---|---|---|
| Date | Printed Name | Signature |

2

Active\118774763.v1-1/20/21