Christopher B. Ghio (State Bar No. 259094)
Christopher Celentino (State Bar No. 131688)
Jeremy B. Freedman (State Bar No. 308752)
Jonathan Serrano (State Bar No. 333225)
**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Telephone:  619.400.0500
Facsimile:  619.400.0501
christopher.ghio@dinsmore.com
christopher.celentino@dinsmore.com
jeremy.freedman@dinsmore.com
jonathan.serrano@dinsmore.com

Special Counsel to Richard A. Marshack

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |
| Debtor. | **TRUSTEE'S NOTICE OF MOTION AND <u>EMERGENCY</u> MOTION (I) FOR ENTRY OF A SECOND INTERIM ORDER: (A) AUTHORIZING THE TRUSTEE TO OBTAIN ADDITIONAL POST-PETITION FINANCING AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 364; AND (B) SETTING FINAL HEARING; AND PURSUANT TO FINAL HEARING, (II)  FOR ENTRY OF FINAL ORDER APPROVING POST-PETITION FINANCING ON A FINAL BASIS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF RICHARD A. MARSHACK  IN SUPPORT** |
| | Date:    [To be set] <br> Time:    [To be set] <br> Judge:  Hon. Scott C. Clarkson <br> Place:  Courtroom 5C <br>              411 W. Fourth Street <br>              Santa Ana, CA  92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL SCHEDULED CREDITORS AND THEIR COUNSEL OF RECORD:**

**NOTICE IS HEREBY GIVEN** that, on July 16, 2023, Richard A. Marshack, the Chapter 11 Trustee ("Trustee") for the bankruptcy estate ("Estate") of The Litigation Practice Group P.C. ("Debtor" or "LPG") in the above-captioned bankruptcy case ("Case"), filed a motion ("Motion"), **on an emergency basis**, for entry of an interim order and final order (1) authorizing Trustee to obtain additional, superpriority financing, (2) scheduling a final hearing; and (3) granting related relief, as further described in the Motion. The amount of the proposed loan is just under $500,000 and is in addition to the previous $800,000 borrowed pursuant to court approval.

**NOTICE IS FURTHER GIVEN** that the Motion is made pursuant to 11 U.S.C. §§ 105(a) and 364 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure on the grounds that the requested relief is necessary to preserve the value of the Debtor's business by paying both legal and non-legal costs to operate the business and paying past due expenses including payroll, DebtPayPro software, mail services, and refunds until such time as Trustee's *Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* [Docket No. 191] ("Sale Motion") may be heard. The Sale Motion is currently scheduled to be heard on July 21, 2023.  The Motion does not seek to allow or authorize the payment of any of the Estate's professional fees, and all expenses must be approved by Trustee.

**NOTICE IS FURTHER GIVEN** that, in accordance with Fed. R. Bankr. P. 4001(c)(1)(A), the proposed order is attached as **Exhibit 1** to the Declaration of Richard Marshack ("Marshack Decl."). In addition, that certain Amended Super-Priority Promissory Note, by and between Trustee, on the one hand, and Resolution Ventures, on the other hand, is attached as **Exhibit 3**. And that certain Amended and Restated Super-Priority Promissory Note, by and between Trustee, on the one hand, and Liberty, on the other hand, is attached as **Exhibit 4**.

i

1   **NOTICE IS FURTHER GIVEN** that the Motion is based on (a) this Notice of Motion and

2   Motion, Memorandum of Points and Authorities, and Declaration of Richard A. Marshack, (b) the

3   pleadings on file in this Case and related adversary proceeding of which the Court is requested to take

4   judicial notice, and (c) such other pleadings and evidence as may be properly submitted in connection

5   with the Motion.

6   **NOTICE IS FURTHER GIVEN** that, pursuant to Rule 9075-1 of the Local Bankruptcy

7   Rules of the U.S. Bankruptcy Court for the Central District of California, Trustee seeks to have this

8   Motion heard on an emergency basis because Trustee needs the funds to pay payroll (mostly related

9   to employee time and expenses dedicated to compliance with the preliminary injunction in the

10  related adversary proceeding) and other operating costs that came due on July 14, 2023. Once the

11  Court has scheduled a hearing, Trustee will provide separate notice of the hearing date and time

12  and the deadline for filing any response to the Motion.

13  **NOTICE IS FURTHER GIVEN** that, in accordance with Fed. R. Bankr. P.

14  4001(c)(1)(B), the following table summarizes the significant terms of the proposed Amended

15  Super-Priority Promissory Note with Resolution Ventures, which is attached to the Declaration of

16  Richard A. Marshack as **Exhibit 3**:

| Material Term or Type of Provision | Summary of Provision | Location in Am. Super-Priority Promissory Note | Location in Order |
|---|---|---|---|
| Amount | $249,663.98 | § 1 | ¶ 3 |
| Interest Rate | 8% per annum | § 1 | ¶ 3 |
| Due Date | Full balance, including all accrued interest, is due and payable in one year from the Start Date | § 2 | ¶ 3 |
| A grant of priority on property of the estate under § 364(c) or (d) | Superpriority administrative expense claim | § 3 | ¶ 2 |
| Allocation of Payments | Payments first credited to interest due and any remainder will be credited to principal | § 4 | ¶ 3 |

*[Remainder of Page Intentionally Left Blank]*

2

**NOTICE IS FURTHER GIVEN** that, in accordance with Fed. R. Bankr. P. 4001(c)(1)(B), the following table summarizes the significant terms of the proposed Amended and Restated Super-Priority Promissory Note with Liberty Acquisitions Group, Inc., which is attached to the Declaration of Richard A. Marshack as **Exhibit 4**:

| Material Term or Type of Provision | Summary of Provision | Location in Am. And Restated Super-Priority Promissory Note | Location in Order |
|---|---|---|---|
| Amount | $249,663.98 of additional funds; $800,000.00 in the aggregate | § 1 | ¶ 3 |
| Interest Rate | 8% per annum | § 1 | ¶ 3 |
| Due Date | Full balance, including all accrued interest, is due and payable thirty (30) days from the Start Date | § 2 | ¶ 3 |
| A grant of priority on property of the estate under § 364(c) or (d) | Superpriority administrative expense claim | § 3 | ¶ 2 |
| Allocation of Payments | Payments first credited to interest due and any remainder will be credited to principal | § 4 | ¶ 3 |

Dated: July 16, 2023

Respectfully submitted,

DINSMORE & SHOHL LLP

By:    /s/ Jonathan Serrano
       Christopher B. Ghio
       Christopher Celentino
       Jonathan Serrano
       Special Counsel to Richard A. Marshack,
       Chapter 11 Trustee

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ....................................................................................... 3

    A.    The Bankruptcy Case ....................................................................................... 3

    B.    The Adversary Proceeding, TRO, and Preliminary Injunction ........................ 3

    C.    The Debtor's Business ..................................................................................... 4

    D.    Secured Liabilities ........................................................................................... 4

    E.    The Lenders' Previous Loans .......................................................................... 5

    F.    The Proposed Sale ........................................................................................... 6

    G.    Trustee's Need for Funds ................................................................................. 7

    H.    The Notes ......................................................................................................... 8

III.  ARGUMENT ............................................................................................................. 10

    A.    The Court Should Authorize the Trustee to Obtain Credit Pursuant to 11 U.S.C. § 364.
           ......................................................................................................................... 10

    B.    Notice With Respect to the Interim Order ..................................................... 14

    C.    Notice With Respect to Final Hearing ........................................................... 14

    D.    Waiver of Rule 6004(a) and (h) ..................................................................... 15

IV.   CONCLUSION ........................................................................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Richard A. Marshack, the Chapter 11 Trustee ("Trustee") for the bankruptcy estate ("Estate") of The Litigation Practice Group, L.P. ("Debtor" or "LPG") submits this motion ("Motion") for entry of an interim order and final order further (1) authorizing Trustee to obtain superpriority financing in the aggregate amount of $499,327.96, (2) scheduling a final hearing; and (3) granting related relief. Financing is necessary to preserve the value of the Debtor's business by paying both legal and non-legal costs to operate the business and paying past due expenses including payroll (for employee time dedicated primarily to provision of servicing clients, books, records, and data authorized by the Court in its preliminary injunction issued in the related adversary proceeding), DebtPayPro (the client management software that automates the dispute process, facilitates client communications, and tracks payment information), mail services, and refunds. Trustee has previously borrowed $800,000. Trustee seeks this additional round of financing totaling $499,327.96 to operate the business until his *Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* [Docket No. 191] ("Sale Motion") can be heard. The hearing on the Sale Motion is currently set on July 21, 2023.

Trustee made every effort to file and have his Sale Motion heard no later than July 14, 2023, when the initial rounds of financing were anticipated to run out. However, efforts to maximize the value of the Estate, meet strict consumer financial protection requirements, and negotiate complex sale terms with multiple parties have unfortunately resulted in a hearing on the Sale Motion for one week later than anticipated.  After the hearing on Trustee's application for order shortening time to hear the Sale Motion, the Court entered the *Scheduling Order on the Motion of Trustee Richard A. Marshack for Entry of Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Execution Contracts and Unexpired Leases and Other Agreements Filed July 7, 2023 [Dk. 191]* [Docket No. 214] ("Scheduling Order") on July 11, 2023,

setting the hearing on Trustee's Sale Motion for July 21, 2023. Because funds are scheduled to run out and employees are likely to quit, which will effectively shutter the business and reduce the value of the Estate's assets, Trustee seeks an order approving emergency funding in the aggregate amount of $499,327.96 based on terms similar to those provided for in the Initial Financing Motion.  The borrowed funds will only be used to cover the minimum legal and non-legal costs to keep operations running until the Court may hear and rule on Trustee's Sale Motion on July 21, 2023.

As previously indicated, this case is a melting iceberg. Shutting down operations stands to significantly impact the value of the underlying assets to be sold and lower the return to all creditors and the Estate. The approximate monthly cost of providing legal and non-legal services to clients exceeds $1.5 million. Here, Trustee seeks authorization for financing covering the bare minimum to operate until Trustee's Sale Motion, which is set for July 21, 2023, can be heard.

Although Trustee estimates approximately $5.5 million has been collected from consumer client payments during this period, he is holding all of these funds in trust pursuant to this Court's Order. Trustee was informed by his Head of Operations that since he has been in control of operations since June 2, 2023, several hundred clients have had their debts resolved or settled. As such, Trustee believes that fees have been earned and he is in the process of calculating these amounts. Trustee may bring a motion seeking Court approval that these fees may be taken from trust to pay costs.

Because he is holding all the money in trust, Trustee does not have readily available funds at this time to ensure that the Debtor's business will continue to operate. Thus, without the proposed financing, Trustee will not be able to fund payroll and pay other costs necessary to provide clients with the services they have retained Debtor to provide. If this were to occur, Trustee's ability to ensure -- in accordance with this Court's admonition on the record on June 12, 2023, to "protect" the consumer clients from worsening conditions -- that LPG's consumer clients get the debt relief they were promised would be hindered. With the proposed financing, Trustee will be able to maximize the value of the Estate in anticipation of a sale of assets, pursuant to which the Estate will recoup a fund to pay allowed consumer creditor claims. This Motion does not seek to allow or authorize the payment of any Estate professional fees, and all business expenses must be approved by Trustee.

## II.    FACTUAL BACKGROUND

### A.    The Bankruptcy Case

On March 20, 2023 ("Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the bankruptcy case.

After the UST filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Docket No. 44], the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Docket No. 58] on May 4, 2023, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63], on May 8, 2023, the Plaintiff accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time.

### B.    The Adversary Proceeding, TRO, and Preliminary Injunction

On May 25, 2023, Trustee initiated an adversary proceeding, *Marshack v. Diab et al.* (Adv. No. 8:23-ap-1046-SC), against LPG's alter egos, fraudulent transferees, and other related parties. In the complaint, Trustee alleged six causes of action for injunctive relief; avoidance, recovery, and preservation of actual and constructive fraudulent transfers; and turnover. *See generally* Compl., Adv. ECF No. 1.

On May 26, 2023, the Court entered the *Amended Order on Trustee, Richard Marshack's Omnibus Emergency Motion for: 1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; 2) Preliminary Injunction; 3) Lock-Out; 4) Re-Direction of United States Parcel Services Mail; 5) Order to Show Cause re Compliance With Court Order; and 6) Other Relief as Necessary to Efficient Administration of This Matter* [Adv. Docket No. 21] ("TRO"), authorizing turnover of estate property and recorded information, lock-out, and an order to show cause re compliance with court order, among other relief. Later, on June 12, 2023, the Court held a hearing re

preliminary injunction, after which the Court granted a preliminary injunction, thereby extending the TRO with certain modification. The preliminary injunction order has been lodged with the Court.

### C.    The Debtor's Business

LPG held itself out as a law firm that provided consumer debt resolution. Before its clients were fraudulently transferred away to other entities on the eve of its bankruptcy, LPG serviced approximately 50,000 customers across the United States. According to its Schedules and Statements of Financial Affairs, its annual revenue in 2022 exceeded $150,000,000.

To service its clients, LPG utilized software including DebtPayPro to automate the dispute process, facilitate client communications, and track payment information. For instance, the correspondence sent on behalf of clients to creditors, collection agencies, and/or credit bureaus was generated primarily by automated and generic templates and after approval was sent via U.S. Mail, facsimile, and/or email.

Some cases resulted in the disputed debts being corrected on the client's credit report, some resulted in successful challenges based on consumer protection laws, and others resulted in debt resolution. Pursuant to the legal service agreements executed between the Debtor and its clients, the client was responsible to pay any resolution amount in addition to the fees payable to the Debtor. In some instances, the creditors would engage in unfair debt collection practices and and LPG would file a lawsuit in an effort to eliminate a disputed debt. LPG thus required numerous legal and non-legal employees and independent contractors to represent its clients, gather documents for counsel, appear as counsel of record, and negotiate resolutions of debts.

### D.    Secured Liabilities

On the Debtor's Schedule D [Docket No. 33], it listed three secured creditors—(a) Diverse Capital LLC with a claim in the amount of $1,224,810, (b) City Capital NY with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000—with secured claims totaling $6,274,810. In addition to the secured creditors listed on Schedule D, there are numerous other UCC-1 financing statements appearing of record in a search of the California Secretary of State's database. Attached as **Exhibit 2** is a true and correct copy of a recent search reflecting the other financing statements of record.

E.    **The Lenders' Previous Loans**

In need of funds to pay legal and non-legal expenses and payroll for the month of June, on June 16, 2023, Trustee filed his *Notice of Motion and Emergency Motion (I) for Entry of Interim Order: (A) Authorizing the Trustee to Obtain Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (B) Setting Final Hearing; and Pursuant to Final Hearing, (II) for Entry of Final Order Approving Post-Petition Financing on a Final* Basis [Docket No. 119] ("Initial Financing Motion"). The Initial Financing Motion asked the Bankruptcy Court to approve a maximum of $800,000 in post-petition borrowing to fund essentials expenses of the Estate, including employee salaries. The Initial Financing Motion also stated that the proposed post-petition lender already advanced $240,000 to the Estate to pay outstanding employee wages ("First Advance") and that the maximum borrowing request included the amount of the First Advance.

Payroll at that time was due on June 16, 2023. On June 22, 2023, the Court entered an *Interim Order Granting Emergency Superpriority Financing by the Chapter 11 Trustee* [Docket No. 131] ("Initial Interim Financing Order"), thereby approving the Initial Financing Motion and setting a final hearing on the Initial Financing Motion for July 20, 2023 at 9:20 a.m. Thereafter, Trustee received the First Advance in the approximate amount of $240,000. Marshack Decl. ¶ 3(f). These funds were immediately approved by Trustee to fund payroll, which at that time was in arrears. The initial funding, however, was insufficient to cover all expense and payroll through the end of June 2023. *Id.*

The Initial Interim Financing Order authorized Trustee to enter into any non-material amendment or modification to the note, including but not limited to agreeing on the amount of the subsequent advance up to $450,000, without further Court order, provided that any such non-material amendment or modification was set forth in writing and signed by Trustee and the lender, and provided that Trustee provides notice of any such amendment or modification to the Court and the Office of the United States Trustee. *Id.* at ¶ 3(g).

Following the filing of the Initial Financing Motion and the entry of the Initial Interim Financing Order, Resolution Ventures, the lender identified in the Initial Financing Motion, told Trustee it would not provide any additional funding to the Estate at that time. *Id.* at ¶ 4. Without the

ability to borrow up to the remaining $560,000 ("Remaining Credit") that was sought in the Initial

Financing Motion, Trustee was unable to pay the necessary expenses of the Estate that needed be paid

before the final hearing on the Initial Financing Motion. *Id.*

Therefore, Trustee identified a third party that was willing to serve as a lender to the Estate

on similar terms and conditions set out in the Initial Financing Motion. *Id.* at ¶ 5. Borrowing from

this third party permitted the Estate to borrow up to the amount of the Remaining Credit under the

terms set forth in that certain Super-Priority Promissory Note ("Additional Note"). *Id.* The proposed

Notes that are the subject of this Motion, the Additional Note, and the initial note with Resolution

Ventures will be of equal priority and will be repaid *pari passu*. *Id.*

On June 29, 2023, Trustee requested the Court to approve a proposed change in Lender on an

ex parte basis pending the final hearing because there was no significant change in the terms of the

borrowing, the amount that can be borrowed, or the position of the Estate. *Id.* at ¶ 6. After conducting

a hearing, on July 3, 2023, the Court entered its order approving the modification to the loan and

allowing Trustee to obtain funds necessary to continue operations through the end of June 2023. *Id.*

**F.    The Proposed Sale**

At the same time as seeking financing to maintain the value of Debtor's assets, in an effort

to ensure consumer clients received the services they required, Trustee (a) developed critical terms

of a potential sale to cure any potential violations of the Telemarketing Sales Rule, among other

laws, whether applicable or not; (b) negotiated potential asset purchase agreements with multiple

potential purchasers; and (c) worked diligently to have the current Sale Motion filed and scheduled

for hearing prior to initial round of financing running out. *Id.* at ¶ 7. While all possible efforts were

made to achieve this goal, the complexity and conflicting interests at stake required considerable

consideration and discussion by the multiple interested parties unfortunately prevented Trustee from

filing the Sale Motion prior to July 7, 2023. *Id.* Given these constraints and the looming expenses

and payroll that needed to be paid in July, Trustee filed an application for order shortening time on

the Sale Motion, which was heard on July 10, 2023. *See id.*; App. for OST, ECF No. 192. At that

hearing on the application for order shortening time, the Court set the hearing for the Sale Motion

on July 21, 2023. *See* Scheduling Order, ECF No. 214.

1    Based on the July 21, 2023 hearing on the pending Sale Motion, there are not enough funds

2    to cover the necessary expenses, personnel payroll, and consumer client legal expenses to operate and

3    protect the value of Debtor's executory contracts and other estate assets pending the Sale Motion. *Id.*

4    at ¶ 8. All previous financing has almost been exhausted. *Id.*

5    At the July 10, 2023 hearing on Trustee's application for order shortening time to hear the

6    Sale Motion, the Court and counsel for Consumer Legal Group, PC appreciated the fact that allowing

7    current operations to terminate would likely have a significant negative impact on the value of the

8    Debtor's assets subject to the proposed sale. *Id.* at ¶ 9. Additionally, shuttering current operations

9    could cause the stalking horse bidder and other potential bidders to back out of the sale entirely,

10    thereby severely impacting the availability of potential assets intended to benefit the Estate and all

11    creditors including consumer creditors. *Id.* At this time, Trustee anticipates that there will be three

12    bidders at the Sale Hearing -- all of them have expressed that the termination of operations would

13    have a negative effect on their bids, and it is my expectation and belief, based upon my years of

14    experience as a trustee, that such would be the case. *Id.*

15    **G.    Trustee's Need for Funds**

16    Currently, Trustee is in receipt of approximately $5.5 million dollars of revenue received from

17    ACH pulls from the clients' accounts, which is being held in a blocked account pursuant to this

18    Court's order. *Id.* at ¶ 10. Thus, none of these funds are currently available to be used to finance

19    operations. *Id.* They are also not part of the proposed sale. *Id.* As such, the only available means to

20    ensure that Trustee is able to pay the absolute bare minimum of expenses necessary to operate the

21    business through the July 21, 2023, sale hearing date is to seek further financing. The amount of

22    financing requested in this Motion is $499,327.96. *Id.* **Exhibit 5** is a budget prepared to reflect the

23    expenses that must be paid during this time period.

24    As of July 14, 2023, Trustee has an accrued and owed payroll of approximately $364,000 and

25    an accrued but not yet owed payroll of approximately $178,000. *Id.* at ¶ 11. The new proposed loans

26    will thus provide the Estate with enough funds to get through the costs associated with the last payroll

27    due on July 14, 2023. *Id.* It will not, however, provide enough funds to cover the payroll that will

28    accrue prior to the Sale Hearing but not become payable until July 28, 2023. *Id.* The only way that

Trustee will be able to pay the July 28, 2023, payroll will be to use sale proceeds or obtain additional financing. *Id.* Plus, Trustee has budgeted an additional approximate $125,000 of other expenses, which includes malpractice insurance premiums. *Id.* Trustee remains hopeful that the sale will be approved at the Sale Hearing, eliminating the need for any further financing to cover this projected approximate $350,000 shortfall. *Id.*

To summarize, the budget reflects that Trustee will incur $844,000 in expenses to operate through July 21, 2023, and the requested $499,327.96 of new loans will leave a shortfall of approximately $350,000. Most of this shortfall will be the payroll that must be paid on July 28, 2023. *Id.* at ¶ 12.

In Paragraph 2(d) of the proposed APA signed July 7, 2023, and attached to the Sale Motion filed on July 7, 2023, the proposed Buyer (Consumer Legal Group, PC) agreed "to advance funds sufficient to cover payroll and operating expenses of the Debtor's business, which come due from the date of signature of this Agreement (in no event later than two days after Buyers' July 12, 2023 site visit), through and including the Closing ('Additional Advances'). . . . This provision would only apply if contingencies are waived by Buyer." After conducting their due diligence, however, Consumer Legal Group, PC did not waive contingencies, thus necessitating the proposed new financing. Marshack Decl. ¶ 13.

**H.    <u>The Notes</u>**

In order to cover expenses incurred through the sale hearing, Trustee sought financing from at least six separate potential lenders (who are also all potential bidders), including Consumer Legal Group, PC, Resolution Ventures, Azzure Capital, Creditor Group, Panam Consulting, and StratCap Management. *Id.* at ¶ 14. One of the potential lenders did not commit to any financing as it was still conducting its due diligence. *Id.* Another potential lender made an offer for financing but only on terms that would prime all existing secured creditors and the initial two lenders. *Id.*

As a result, subject to Court approval, the best Trustee has been able to negotiate are further credit facilities with the original two lenders: (1) Resolution Ventures in the amount of $249,663.98, as set forth in that certain Amended Super-Priority Promissory Note, which is attached as **Exhibit 3,** by and between Trustee, on the one hand, and Resolution Ventures, on the other hand, and (2) Liberty

Acquisitions Group, Inc. ("Liberty") in the additional amount of $249,663.98, as set forth in that certain Amended and Restated Super-Priority Promissory Note, which replaces the initial Liberty note, which is attached as **Exhibit 4**, by and between Trustee, on the one hand, and Liberty, on the other hand.[1] Marshack Decl. ¶ 15. Together, both notes are referred to as the "Notes" and both lenders are referred to as the "Lenders."

Trustee has negotiated the terms of the Notes in good faith and at arm's length and has attached the proposed notes in their anticipated final form. *Id.* at ¶ 16. As a result, the Lenders have agreed to advance up to $499,327.96 in the aggregate, to fund operations for a limited period until a lawful disposition and sale can be approved by the Court. I believe that the proposed terms of the Notes contain reasonable terms. *Id.*

Due to the exigent circumstances in obtaining Court approval of further financing prior to running out of funds before payroll became due on July 14, 2023, Trustee diligently sought further financing -- indeed, over the last week, Trustee and his counsel reached out to and discussed the possibility of lending with multiple parties. *Id.* at ¶ 17. Now that two Lenders have emerged -- and made their commitments in the late afternoon and early evening on that date, Trustee has caused his counsel to file this Motion to avoid any potential impact on the proposed sale of Debtor's executory contracts and assets, and the services being provided to consumer clients in the interim. *Id.*

Trustee does not believe that any other financing other than that offered by the Lenders under the proposed Notes is available to him, particularly given the exigency of needing operating funds, the Court's order, and the UST's position that he cannot use the ACH revenues received from clients, which are currently held and segregated. *Id.* at ¶ 17.

This case has presented particularly difficult circumstances. Debtor fraudulently transferred or attempted to fraudulently transfer assets worth tens of millions of dollars based on the offers to purchase Trustee have received to date. *Id.* at ¶ 19. The Court's temporary restraining order and then preliminary injunction authorized Trustee to take control of the operations of the alleged transferees. *Id.* Although the dozens of employees purportedly work for non-debtor entities, the Court's order that

---

[1]    The total amount previously borrowed from Resolution Ventures and Liberty under the Amended and Restated Super-Priority Promissory Notes is $800,000. The proposed additional loans total $499,327.96.

1   Trustee control operations places the Estate in the position of being liable for paying wages and other

2   expenses. *Id.*

3          Absent recovering the assets from the alleged transferees and proposing to sell them for the

4   benefit of the Estate's creditors including the consumers damaged by Debtor's conduct, the Estate

5   has no significant assets other than litigation claims. *Id.* at ¶ 20. In his business judgment, Trustee has

6   a fiduciary duty to determine if there is a sale which the Court would approve to realize benefit for

7   the Estate. *Id.* Had Trustee just chosen to terminate all operations and not attempt to recover

8   fraudulently transferred assets, the Estate would have missed out on tens of millions of dollars of

9   potential recoveries. *Id.*

10         Trustee understands that the Court has not yet ruled on whether any proposed sale can be

11  lawfully completed. *Id.* at ¶ 21. But, in the interim, the employees that are conducting the business of

12  servicing the consumer clients deserve to be paid. *Id.* Trustee and his professionals have consented to

13  the previous and proposed loans receiving super-priority administrative status to ensure that the

14  employees are paid pending a determination regarding a sale. *Id.*

15         Since serving the Court's TRO on June 2, 2023, Trustee is informed by his Head of

16  Operations, Eeyah Tan, that hundreds of clients have had their debts resolved or settled. *Id.* at ¶ 22.

17  As such, Trustee believes that some portion of the approximate $5.5 million he has received in ACH

18  pulls has been earned and will be payable to the Estate. *Id.* Trustee is in the process of calculating the

19  amounts of fees that have been earned and may bring a motion seeking Court approval to take such

20  funds out of trust. *Id.* If granted, these funds can also be used to repay the super-priority administrative

21  loans that Trustee has taken out to pay for operations. *Id.*

22  **III.    ARGUMENT**

23         **A.    <u>Good Cause Exists to Authorize Trustee to Obtain Credit Pursuant to 11 U.S.C.</u>**

24             **<u>§ 364.</u>**

25         Section 364 of the Bankruptcy Code allows the Court to authorize post-petition financing and

26  expressly allows courts to authorize protections designed to assure repayment of post-petition loans.

27  *Resolution Trust Corp, v. Official Unsecured Creditors Comm. (In re Defender Drug Stores, Inc.),*

28  145 B.R. 312, 316 (9th Cir. BAP 1992). Section 364(a) of the Bankruptcy Code provides as follows:

> If the trustee is authorized to operate the business of the debtor under section 721, 1108, 1183, 1184, 1203, 1204, or 1304 of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a). In addition, section 364(b) of the Bankruptcy Code provides as follows:

> The court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense.

11 U.S.C. § 364(a). Finally, section 364(c) of the Bankruptcy Code provides the following:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> **(1)** with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> **(2)** secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> **(3)** secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

The Court has discretion to approve proposed post-petition financing, which should be exercised as long as the proposed financing does not leverage the bankruptcy process or its purpose and the benefit to the estate remains of paramount interest as opposed to the individual interests of the parties. *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Generally, courts apply a three-part test to determine whether a trustee or debtor in possession may obtain credit under section 364(c) of the Bankruptcy Code. *See In re Republic Airways Holdings Inc.*, No. 16-10429 (SHL), 2016 Bankr. LEXIS 1927, at *34 (Bankr. S.D.N.Y. May 3, 2016). Under such test, a trustee or debtor may incur post-petition financing pursuant to section 364(c) of the Bankruptcy Code if it demonstrates that (a) it cannot obtain credit unencumbered or without superpriority status, (b) the financing is necessary to preserve assets of the estate, and (c) the terms of the loan are fair, reasonable and adequate. *See id.*; *In re Los Angeles Dodgers, LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011). Section 364(d) of the Bankruptcy Code authorizes a trustee or debtor in possession to obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien if the trustee or debtor is unable to obtain such credit otherwise and the interests of secured creditors whose

liens are being primed are adequately protected. 11 U.S.C. § 364(d)(1); *see also In re Aqua Assocs.*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991).

Against this statutory backdrop, courts will evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing. *See, e.g.*, *Ames*, 115 B.R. at 40–41. A debtor in possession or trustee is generally permitted to exercise their business judgment consistent with their fiduciary duties when evaluating the necessity of proposed protections for a party extending credit under section 364 of the Bankruptcy Code. *Id.* at 38. The Court should give broad deference to the business decision of the Trustee, particularly with respect to the need for and proposed use of funds. *See, e.g.*, *In re Simasko Production Co.*, 47 B.R. 444, 448–49 (D. Co. 1985) (authorizing interim financing agreement where debtor's best business judgment indicated financing was necessary and reasonable for the benefit of the estate); *Ames*, 115 B.R. at 38 (with respect to post-petition credit, courts "permit debtors in possession to exercise their basic business judgment consistent with their fiduciary duties").

Here, Trustee seeks approval to obtain unsecured credit with priority over all other administrative expenses pursuant to section 364(c)(1) of the Bankruptcy Code. In his business judgment, Trustee does not believe he can obtain credit on terms better than what is proposed. In fact, one other potential lender would only loan money if it primed secured creditors and the previously-approved loans. Marshack Decl. ¶ 15. In this case, scheduled secured claims total $6,274,810 and there appear to be many other liens as set forth in **Exhibit 2** to the Marshack Declaration. Scheduled priority unsecured claims total $374,060.04. The total amount of scheduled unsecured, non-priority claims exceeds $140 million.

Although the value of the Debtor's assets are much greater than the scheduled secured and priority unsecured claims, it is not likely more valuable than the general unsecured claims. The value of Debtor's assets could be in the $30 to $50 million range if Trustee can preserve the value of the business pending a sale. As set forth in Trustee's Sale Motion, he believes that a sale can be accomplished (a) by complying with State Bar procedures for the sale of a law practice which provides notice to clients and a 90-day period to opt out; and (b) with reformation (to the extent appropriate or warranted, if even only out of an abundance of caution) of the legal services agreements

between Debtor and the consumer clients to comply with all consumer protection laws. Trustee has received input from the Official Committee of Unsecured Creditors, multiple, individual consumer creditors, and other unsecured creditors who greatly prefer this approach. If the proposed sale is approved, creditors (including consumer creditors damaged by Debtor's conduct) have some hope of receiving distributions. On the other hand, a draconian approach of terminating all operations, "ushering" the consumer clients out the door (much like ushering nursing home residents into the street), and leaving the estate with no funds to transition client files to former clients or new counsel does not help anyone.

The proposed financing is crucial to preserve assets of the Estate because, without such funding, Trustee will not be able to provide services to consumer clients, or to engage the consumer clients in the lawful and consented transition to a new law firm to assist in the fight against aggressive debt collectors. If all business operations ceased, all of the client contracts would have to terminate, all clients will be prejudiced at the hands of debt collection hawks, and there will be no funds from which one would expect those very creditors to be able to recover on their civil claims against the Estate based upon the actions of former management. The worst-case scenario promises that Debtor's former principals would continue to prey upon the consumer clients.

Trustee believes that value is maximized for the Estate if the business continues to operate. As such, Trustee needs the requested funds as soon as possible to cover payroll and other operating costs through July 21, 2023. Without the ability to operate, the Estate and its creditors will have little to no recourse for their investments in and claims against the Debtor. And, as noted, consumer clients will become prey once again. As such, the proposed financing is necessary to avoid immediate and irreparable harm to the Estate and preserve the Debtor's ongoing business operations and the Estate's assets.

Finally, in considering whether the terms of post-petition financing are fair and reasonable, courts consider the terms in light of the relative circumstances and disparate bargaining power of both the debtor and potential lender. *See In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (a debtor may have to enter

into hard bargains to acquire funds). Here, the terms of the Notes were and are being negotiated in good faith and at arm's length between Trustee and the Lenders. The anticipated result are agreements designed to permit Trustee to continue to operate the Debtor's business going forward and address the immediate operational needs. The Lenders have agreed to provide Trustee with unsecured credit in the aggregate amount of $499,327.96 on an allowed superpriority administrative basis pursuant to Section 364(c)(1). Trustee believes that the proposed terms are reasonable and account for his need in obtaining the post-petition financing quickly. Based on the existing financial condition of the Debtor, having been looted by many of the Defendants named in the related adversary proceeding, and the totality of the relevant circumstances, Trustee exercised sound business judgment in determining that post-petition financing as proposed in the Notes is appropriate and necessary under the circumstances. Marshack Decl. ¶ 11. Trustee was unable to and does not believe that he can obtain the much-needed post-petition financing from another source on terms more favorable than those proposed. *Id*.

The requested interim relief and order are necessary to preserve the business as a going concern and thereby prevent immediate and irreparable harm to the Debtor's business and the Estate.

**B.**    **Notice With Respect to the Interim Order**

Trustee submits that, given the circumstances surrounding the Debtor's financial condition and operations and the recent preservation of its property from alter egos and other fraudulent transferees, and the Estate's immediate need to obtain credit, an expedited hearing as contemplated by Fed. R. Bankr. P. 4001(c) is warranted.

**C.**    **Notice With Respect to Final Hearing**

Pursuant to Fed. R. Bankr. P. 4001(c), Trustee respectfully requests that he be authorized to provide notice of the final hearing to be scheduled by the Court no sooner than 15 days after service of the Motion by serving a copy of the Motion (to the extent not previously served) together with any interim order granting this Motion, on interested parties. Trustee submits that such notice constitutes sufficient notice of the final hearing pursuant to Fed. R. Bankr. P. 4001(c) and 2002.

1

### D.     <u>Waiver of Rule 6004(a) and (h)</u>

2         To implement the foregoing successfully, Trustee requests that the interim order to be entered

3 by the Court provide that notice of the relief requested herein satisfies Fed. R. Bankr. P. 6004(a) and

4 that Trustee has established cause to exclude such relief from the 14-day stay period under Fed. R.

5 Bankr. P. 6004(h), with respect to the attached proposed interim order so that there will be no

6 interruption of the Debtor's business operations.

7 **IV.**     **CONCLUSION**

8         For all these reasons, good cause exists for the Court to enter the interim order, substantially

9 in the form attached as **Exhibit 1** to the Marshack Declaration, granting the relief requested and for

10 any such other or further relief as is just and proper under the circumstances.

11

12 Dated: July 16, 2023               Respectfully submitted,

13                                   DINSMORE & SHOHL LLP

14

15                                   By: <u>/s/   Jonathan Serrano            </u>
                                        Christopher B. Ghio

16                                         Christopher Celentino
                                        Jonathan Serrano

17                                         Special Counsel to Richard A. Marshack,
                                        Chapter 11 Trustee

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:    655 W. Broadway, Suite 800, San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*):

**Trustee's Notice of Motion and _Emergency_ Motion (I) for Entry of Second Interim Order: (A) Authorizing the Trustee to Obtain Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (B) Setting Final Hearing; and Pursuant to Final Hearing, (II) for Entry of Final Order Approving Post-Petition Financing on a Final Basis; Memorandum of Points and Authorities; Declaration of Richard A. Marshack in Support Thereof; and Exhibits**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 16, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On July 16, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 16, 2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

> **JUDGE'S COPY**
> The Honorable Scott C. Clarkson
> United States Bankruptcy Court
> Central District of California
> Ronald Reagan Federal Building and Courthouse
> 411 West Fourth Street, Suite 5130 / Courtroom 5C
> Santa Ana, CA 92701-4593

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 16, 2023 | Jonathan Serrano | /s/ Jonathan Serrano |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August  2010*                **F 9013-3.1.PROOF.SERVICE**

1.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com
- **Richard H Golubow**    rgolubow@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com,
  arodriguez@mauricewutscher.com
- **Garrick A Hollander**    ghollander@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Joon M Khang**    joon@khanglaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com,
  omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**    daniel.lev@gmlaw.com,
  cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**    vnewmark@pszjlaw.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Teri T Pham**    tpham@enensteinlaw.com, 3135.002@enensteinlaw.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                **F 9013-.1.PROOF.SERVICE**