Daniel A. Lev (CA Bar No. 129622)
daniel.lev@gmlaw.com
**Greenspoon Marder LLP**
333 South Grand Avenue, Suite 3400
Los Angeles, California 90071-1406
Telephone: 213.626.2311
Facsimile: 954.771.9264

Ronald Richards (CA Bar No. 176246)
ron@ronaldrichards.com
Law Offices of Ronald Richards & Associates, APC
P.O. Box 11480
Beverly Hills, California 90213
Telephone: 310.556.1001
Facsimile: 310.277.3325

Attorneys for Consumer Legal Group, P.C.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP, P.C., | Chapter 11 |
| Debtor. | **CONSUMER LEGAL GROUP, P.C.'S RESPONSE TO ORDER REQUESTING ADDITIONAL BRIEFING IN SUPPORT OF SALE MOTION** |
| | DATE: July 21, 2023<br>TIME: 10:00 a.m.<br>PLACE: Courtroom "5C" |

DAL 54938537v1

Consumer Legal Group, P.C. ("CLG") hereby submits "Consumer Legal Group, P.C.'s Response to Order Requesting Additional Briefing in Support of Sale Motion" (the "Response"), in response to the "Order Requesting Additional Briefing in Support of Sale Motion" (the "Order") entered by the Court on July 10, 2023, in response to the "Notice of Motion and Motion of Trustee Richard A. Marshack for Entry of An Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements" (the "Sale Motion"), filed by Richard A. Marshack (the "Trustee"), the duly appointed, qualified, and acting chapter 11 trustee for the estate of the debtor The Litigation Practice Group, P.C. (the "Debtor"), and represents as follows:

**I.**

**PREFATORY STATEMENT**

Much has been written and said about the Trustee's proposed sale of a defined subset of assets to CLG, or other qualified overbidder. In order to obtain more clarity from the Trustee, the Court issued its Order which raised a number of questions for the Trustee, and others, to answer.[1] Although CLG is confident that the Trustee will

---

[1] Specifically, the Court noted that there were significant allegations, many supported by clear evidence, that the Debtor's pre-petition business model included activities that violated certain federal and state statutes and regulations, as well as raising serious questions of various state bar ethical violations by attorneys at law within the performance of the Debtor's business model. As a result, the Court ordered that no customer/client funds received under the agreements between the Debtor and its customers/clients would be available for use by the estate until further order, and that all funds received would be held in a segregated blocked account maintained by the Trustee, only to be released upon further order of the Court. In the Order, the Court requested briefing from all interested parties on the authority and ability of a United States Bankruptcy Court to permit the sale under 11 U.S.C. § 363 and all other related sections of the Bankruptcy Code, of assets of a business, or a business itself as a going concern, that would permit the continuance of possible significantly illegal operations by a successor organization. The Court was not speaking of successor liability, but of the public policy concerns of a United States Federal Court allowing a business utilizing questionable legal operations back into commerce without further restrictions and controls. The Court requested briefing regarding the conditions and post-sale reformations of any and all business operations, including independent monitoring, control and restrictions to remove doubt of post-sale illegal or unethical operations. The Court welcomed a discussion that would include the possibility, impossibility or improbability of viable enforceable independent monitoring, control and restrictions related to future business operations arising from the sale of estate assets, whether piecemeal or as a going (footnote continued)

Greenspoon Marder LLP
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

satisfy each of the Court's concerns, as well as any concerns raised by the Official Committee of Unsecured Creditors, the Office of the United States Trustee, and other affected parties, CLG believes it is important for the Court to understand its perspective of the sale.[2]

In CLG's view, the issue before the Court is more straightforward then the positions taken by other parties. Plainly stated, there is an insolvent, non-functioning law firm and the Trustee has identified another vibrant, well-capitalized law firm who is willing to acquire approximately 35,000 client files and service them at CLG's risk. CLG, which was incorporated in New York in early 2022 and has quickly established itself as one of the leading firms operating in the consumer debt space, is not acquiring and operating the Debtor's business, however. CLG only is seeking to acquire a finite number of existing client files that will enable clients, at their option, to continue to receive the legal representation they deserve.

If successful, CLG will comply with each of the rules of the California State Bar relating to the representation of the Debtor's clients who the Trustee simply is unable to service. It will be up to the clients, not the Trustee or CLG, to decide whether they will stay with CLG or depart for another firm. Hence, the legal work that clients need from licensed attorneys is no longer at issue. In fact, if there was a telemarketing or advance fee issue when the client first agreed to engage the Debtor, these issues are moot and irrelevant at this point.

---

concern. The Court also requested briefing discussing the funds from customers/clients since the Trustee's appointment and now blocked from use, including their disposition or use by the estate.

[2] Although the Trustee's "Complaint for: (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; and (6) Turnover," bearing Adv. No. 8:23-ap-01046-SC, alleged that CLG was an alter ego of the Debtor, CLG has since demonstrated to the Trustee that this is inaccurate, and it is not an insider of, controlled by, or affiliated with the Debtor in any way.

**Greenspoon Marder LLP**
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 954.771.9264

What is relevant, at this stage of the case, is for the Court to ensure that under no circumstances should the Debtor's existing clients be without legal representation. To facilitate this transition in the absence of a sale, and even though the Court has not approved nor has the Trustee has agreed, CLG would be willing to service the Debtor's clients for a fee of 10% of the contract charges to service the accounts, in addition to a 20% administration fee. If the client does not wish to use CLG as his or her counsel, then the client will not be charged, or will simply be refunded any fees charged by CLG from the funds being maintained by the Trustee for the Debtor's behalf.

The irony here is that if the Debtor's clients are serviced, most need and want lower cost legal services. So while there is a lot of conjecture and speculation from various parties opposed to the sale process, there is no evidence before the Court showing that the legal work needed by existing clients is either not necessary or effective. In short, there will not be a single client at risk for compelled legal services. Both CLG and the Trustee will refund any client who was charged, but chooses not to remain with CLG since the date the Trustee was appointed through the date of any sale.

In this regard, if the Court determines that the Debtor improperly obtained clients, that issue is frankly irrelevant now as there are nearly 35,000 clients that paid for legal services whose interests still need to be addressed. Importantly, the estate does not own the clients, no one does. And, to reiterate, upon closing of a sale, CLG will make every effort to sign up these new clients with their existing retainers and provide them the opportunity to accept or decline CLG's services, like in every other law firm sale. The primary decision this Court needs to make, therefore, is will it approve some lower fee associated with the cost of servicing 35,000 clients from the estate, or will it allow CLG, or another qualified bidder, to purchase the estate's active files with a significant return for creditors of the estate.

CLG agrees with the Court that the most important objective is to have consumers protected at all costs and placed with effective and skilled counsel. Approving a sale accomplishes this lofty goal, while also deferring any decision whether

to stay with CLG to the client, whose choice will not be interfered with or curtailed in any way by CLG.  Disapproving a sale to CLG would, conversely, harm clients by depriving them of any choice at all, since closure and conversion will leave 35,000 clients without any legal representation in the face of ongoing legal and collection demands.

CLG is incentivized to do whatever the Court recommends that is geared to ensuring that 35,000 clients are not without immediate representation whether they decide to remain with CLG or not.  The public interest is served by affording clients of insolvent, non-operating law firms the choice to retain the services of an acquiring firm that is more than capable of servicing their legal needs.  This part of the problem confronting the Trustee and the Court, therefore, has nothing to do with prior credit repair or telemarketing concerns associated with the Debtor.  There are simply countless clients in desperate need of counsel and the Trustee is confronted with scores of problems preventing him from operating the Debtor and providing any meaningful advice or services to the present client base.

In fact, delaying the sale to July 21, 2023, itself is causing the clients severe prejudice.  As indicated, even though the Court has not approved nor has the Trustee agreed to CLG's offer to manage the files, CLG is willing to take over the servicing function immediately to avoid prejudice upon CLG receiving a 10% fee from the contracts, plus an administration fee of 20% for the costs to service the approximately 35,000 clients.  The administration fee should come from the collected funds from the estate or from the collections from whatever contracts are eventually transferred to CLG.

However, if the Court prevents charges all together on the 35,000 existing files, CLG will provide a per file flat rate at a low price to simply work out the Debtor's caseload so that clients are not prejudiced.  If the Court desires this option, it can issue an order requesting it and CLG will comply.  This is no different than JPMorgan Chase taking over First Republic Bank´s customer accounts.  Unfortunately, CLG does not see any other party in this case with the resources or the desire to step up and fix the sheer number of problems confronting clients which CLG discovered through its two-day on site

DAL 54938537v1                                        5

due diligence visit.  This due diligence has allowed CLG to gain a deep understanding of the Debtor's systemic problems and how CLG can immediately step in and competently service the Debtor's existing case load and client base.

This is CLG's primary concern and hopefully it is an important concern of all parties; CLG already knows that protecting consumers has been the Court's primary concern since day one.  Fortunately, there already is an existing regulatory framework to protect clients of defunct law firms.  This is not the first time a law firm has filed for bankruptcy and later is sold or the clients transitioned to a new firm.  Both the Ninth Circuit and California Supreme Court have provided guidance in this area, and CLG is hopeful that the Court will support the process that the Trustee has put in place which is advantageous for clients and creditors alike.

## II.
## **THE PROPOSED SALE TO CLG IS ENTIRELY APPROPRIATE UNDER GOVERNING LAW**

"All or substantially all" of the law practice of a lawyer (living or deceased), including goodwill, may be sold to a law firm or another lawyer (subject to certain conditions).  See California Rules of Professional Conduct ("CRPC"), Rule 1.17. Generally, the following conditions control any proposed sale:

- Legal fees charged to clients of the acquired practice cannot be increased solely by reason of the sale of the law practice.  See CRPC 1.17(a).

- Any sale of a law practice involving the transfer of active client matters or client files or information protected from disclosure by Business & Professions Code § 6068(e) requires written notice to the client and the client's written consent to the transfer.  See CRPC 1.17(b).

- If the attorney selling the law practice is deceased, or if the seller has a conservator or other representative, the purchasing attorney is responsible for giving the required notice to the seller's clients.  See CRPC 1.17(b)(1)(i).

DAL 54938537v1                                              6

- A purchase required to give notice to the seller's clients must do so at least 90 days prior to the transfer.  See CRPC 1.17(b)(1)(i).
- In all other cases, the attorney selling the law practice must cause the written notice to be given to the clients.  See CRPC 1.17(b)(2)(i).
- If the selling attorney is responsible for the notice, it must be given at least 90 days prior to the transfer of the law practice.  See CRPC 1.17(b)(2)(i).
- Whether the written notice is given by the selling attorney or the purchasing attorney, it must contain all of the following information:
    (a) The interest in the law practice is being transferred to the purchasing attorney;
    (b) The client has the right to retain a different lawyer;
    (c) The client may take possession of any of the client's files and property (see CRPC 1.16(e)(1));
    (d) If no response is received within 90 days of sending the written notice, the purchasing attorney may act on the client's behalf until the client directs otherwise; and
    (e) The purchaser may act on behalf of the client during the 90-day period if the client would be prejudiced by a failure to act during that time.  See CRPC 1.17(b)(1)(i) and (2)(i).
- The client's written consent must be obtained by the seller, if the seller provides the written notice; or by the purchaser if the purchaser gives notice to the client.  See CRPC 1.17(b)(1)(ii) and (2)(ii).
- If, after reasonable efforts have been made to locate the client, the client does not respond within the 90-day period within that time, consent to the transfer will be presumed until otherwise notified by the client.  See CRPC 1.17(b)(1)(ii) and (2)(ii).

- Apart from the requirements under CRPC 1.17, the estate of a deceased attorney is also required to comply with the requirements of Business & Professions Code § 6180, *et seq.* (notice of cessation).

- Client confidential information must not be disclosed to a nonlawyer in connection with a sale under CRPC 1.17.  See CRPC 1.17(e).

- The purchasing attorney must comply with applicable conflict of interest rules in evaluating the purchase of a law firm.  See CRPC 1.17(d).

- A selling attorney is not permitted to divide his or her practice and sell parts piecemeal.  See CRPC 1.17, Comment [1] - Rule prohibits sale of only a field/area of practice or practice in particular jurisdiction/geographical area.

- CRPC 1.17 permits the sale of only "all or substantially all" of a law practice.  This also means the purchasing attorney cannot pick and choose among the seller's cases and clients.  Purchasing attorneys must "undertake all client matters sold in the transaction" (subject to client consent).  See CRPC 1.17, Comment [1].  However, the seller may retain (i) clients who pose a conflict of interest for the purchasing attorney; and (ii) clients who do not consent to be represented by the purchaser.  Se CRPC 1.17, Comment [1].

- To the extent the client affirmatively agrees to accept the purchasing attorney, the sale of the law practice will include transfer of the client's papers and other property, including client funds held in the seller's trust account.  See CRPC 1.15.  The purchasing lawyer essentially takes all, or substantially all, of the practice even though the clients remain free to seek another lawyer to handle their matters.

As illustrated, there are numerous rules set in place to deal with these types of law firm failures and sales.  And one of the overriding themes, buttressed by applicable law, is that when the clients right to choose counsel is preserved, a sale of an insolvent practice to another firm does not run afoul of any regulatory scheme or law and the sale can be approved.  See Heller Ehrman LLP v. Davis Wright Tremaine LLP, 4 Cal. 5th 467, 473 (limited nature of interest accorded to dissolved law firm protects clients' choice of

counsel and allows clients to choose new law firms unburdened by the reach of the dissolved firm that has been paid in full and discharged; a dissolved law firm, therefore, has no property interest in the fees or profits associated with unfinished hourly fee matters as the firm never owned such matters, and upon dissolution, cannot claim a property interest in the income streams that they generate); Diamond v. Hogan Lovells US LLP, 950 F.3d 1200 (9th Cir. 2020 (hourly-billed client matters are not "property" of the law firm, a client has an almost "unfettered right" to choose or to discharge counsel).

Since CLG will strictly comply with the foregoing rules governing sales and will honor the unfettered right of clients to either remain with or discharge CLG after any sale, CLG urges the Court to protect the interests of both consumers and creditors by allowing the Trustee's sale process to unfold or, alternatively, permit CLG to provide the management services proposed to the Trustee.

As a reminder, what made the Debtor's client contracts allegedly illegal - consisting primarily of purported violations of the Telemarketing Sales Rule (the "TSR") and the Unfair, Deceptive, or Abusive Acts or Practices (the "UDAAP") - are concerns not directly implicated by the assets being acquired.  Since no future telemarketing transactions, in other words, no solicitations, sales, or contract consummation over the phone (or its equivalent), are contemplated for this portfolio, the TSR and UDAAP have no applicability to the client contract portfolio from the closing sale date moving forward, as it exists in this legal vacuum.

However, CLG concedes that both the TSR and UDAPP apply to its servicing of the files after the sale is completed for all other purposes.  CLG simply believes that the mere act of buying the files alone is not a *per se* violation of the TSR and UDAPP, but it will, of course, scrupulously honor and abide by the requirements of both the UDAAP and TSR.

In sum, issues relating to the telemarketing and credit repair laws have no application here since the Court takes the assets as it finds them.  The straightforward servicing of clients and acquisition of a law firm portfolio is nothing novel or new under

California law.  And CLG will not come close to running afoul of these laws as its role is limited to the legal work that is necessary to be performed today.  How the estate acquired the client files is not germane as it relates to a purchase at this point in time and the Court's focus should be on ensuring that there is an experienced firm willing to step in and service the Debtor's clients, should they opt to permit such ongoing representation.

## III.

## CONCLUSION

Based on the foregoing, CLG respectfully requests that the Sale Motion be granted in all respects, and for such other and further relief as the Court deems just and proper.

DATED: July 17, 2023          **GREENSPOON MARDER LLP**


By: /s/ *Daniel A. Lev* _____
Daniel A. Lev
Attorneys for Consumer Legal Group, P.C.

DATED: July 17, 2023          **LAW OFFICES OF RONALD RICHARDS & ASSOCIATES, APC**


By: /s/ *Ronald Richards* _____
Ronald Richards
Attorneys for Consumer Legal Group, P.C.

DAL 54938537v1                    10

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*): **CONSUMER LEGAL GROUP, P.C.'S RESPONSE TO ORDER REQUESTING ADDITIONAL BRIEFING IN SUPPORT OF SALE MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 17, 2023 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 17, 2023 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                        **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

1. <u>**SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**</u>

- **Eric Bensamochan**  eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**  ron@rkbrownlaw.com
- **Christopher Celentino**  christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**  cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**  rbc@randallbclark.com
- **Leslie A Cohen**  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Jenny L Doling**  jd@jdl.law, dolingjr92080@notify.bestcase.com;15994@notices.nextchapterbk.com
- **Daniel A Edelman**  dedelman@edcombs.com, courtecl@edcombs.com
- **Christopher Ghio**  christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **Jeffrey I Golden**  jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays**  ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**  ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**  ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Razmig Izakelian**  razmigizakelian@quinnemanuel.com
- **Joon M Khang**  joon@khanglaw.com
- **Ira David Kharasch**  ikharasch@pszjlaw.com
- **Nicholas A Koffroth**  nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**  chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**  daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman**  mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**  Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Richard A Marshack (TR)**  pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**  lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Kenneth Misken**  Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**  bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**  anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**  vnewmark@pszjlaw.com
- **Queenie K Ng**  queenie.k.ng@usdoj.gov
- **Keith C Owens**  kowens@foxrothschild.com, khoang@foxrothschild.com
- **Teri T Pham**  tpham@epglawyers.com, ttpassistant@epglawyers.com
- **Douglas A Plazak**  dplazak@rhlaw.com
- **Ronald N Richards**  ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**  gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott**  olivia.scott3@bclplaw.com
- **Jonathan Serrano**  jonathan.serrano@dinsmore.com
- **Paul R Shankman**  PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim**  leslie.skorheim@usdoj.gov
- **Howard Steinberg**  steinbergh@gtlaw.com, pearsallt@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**  astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                          **F 9013-3.1.PROOF.SERVICE**

- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**   JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                    **F 9013-3.1.PROOF.SERVICE**