Michael A. Sweet (SBN 184345)
Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
msweet@foxrothschild.com
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Proposed* Counsel For Official Committee of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>      Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS LIMITED OPPOSITION AND RESERVATION OF RIGHTS CONCERNING: (I) THE TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF A SECOND INTERIM ORDER AUTHORIZING POST-PETITION FINANCING AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 364; AND (II) LIBERTY ACQUISITIONS GROUP, INC.'S STATEMENT IN SUPPORT THEREOF**<br><br>**<u>Hearing Date and Time</u>**<br><br>Date:    July 19, 2023<br>Time:    1:30 p.m.<br>Location:  *Via ZoomGov* |

# TABLE OF CONTENTS

I.      Introduction ...................................................................................................... 1

II.     Factual Background ........................................................................................... 2

        A.      General Background ............................................................................... 2

        B.      The Prior Financing Motions and Interim Orders.................................. 2

        C.      The Sale Motion and CLG PSA .............................................................. 4

        D.      The Motion and Amended Notes ............................................................ 5

        E.      The Liberty Statement ............................................................................ 6

III.    Legal Analysis .................................................................................................. 7

        A.      Payment of the Superpriority Claims Granted to Liberty from the Deposit (or
                Other Estate Assets) Violates the Bankruptcy Code's Priority Scheme, Effects
                an Improper Purchase Price Reduction, and Is Inconsistent with *Pari Passu*
                Treatment. ............................................................................................... 7

                1.      The Trustee and Liberty Do Not Address or Satisfy the Applicable
                        Standard for Advance Payment of an Administrative Claim...................... 7

                2.      The PSA Does Not Obligate Payment of the Amended Liberty Note
                        From the Deposit, Which Would Effect an Improper Purchase Price
                        Reduction. ............................................................................................... 9

                3.      Payment of the Amended Liberty Note from the Deposit Is
                        Inconsistent with the Alleged *Pari Passu* Treatment Among
                        Resolution and Liberty............................................................................ 10

        B.      The Committee Should Receive Notice of Nonmaterial Modifications. .............. 11

IV.     Reservation of Rights...................................................................................... 11

V Conclusion.............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Chi-Chi's, Inc.*,
305 B.R. 396 (Bankr. D. Del. 2004) ....................................................................... 7

*In re Conchise College Park, Inc.*,
703 F.2d 1339 (9th Cir. 1983)............................................................................... 7

*In re GPLA, Inc.*,
No. 16-13416, 2016 WL 4440376 (Bankr. C.D. Cal. Aug. 22, 2016)..................... 7

*In re LTV Steel Co.*,
288 B.R. 775 (Bankr. N.D. Ohio 2002) ................................................................ 7

*Spartan Plastics v. Verco Indus.*,
20 B.R. 664 (B.A.P. 9th Cir. 1982)........................................................................ 7

*In re Standard Furniture Co.*,
3 B.R. 527 (Bankr. S.D. Cal. 1980) ...................................................................... 7

*In re Steiny & Co., Inc.*,
No. 16-25619, 2017 WL 1788414 (Bankr. C.D. Cal. May 3, 2017) ....................... 7

*In re Sun Runner Marine, Inc.*,
134 B.R. 4 (B.A.P. 9th Cir. 1991)........................................................................... 7

*Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indus., Inc.)*,
19 F.3d 1371 (11th Cir. 1994)................................................................................ 8

*In re Verity Health Sys. of Cal., Inc.*,
No. 18-20151, 2018 WL 5281624 (Bankr. C.D. Cal. Oct. 22, 2018)..................... 7

**Statutes**

11 U.S.C. § 364(c) ....................................................................................... 3, 6, 10

11 U.S.C. § 364(c)(1)................................................................................... 2, 5, 7, 9

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of The Litigation Practice Group, P.C. (the "<u>Debtor</u>") appointed in the above-referenced bankruptcy case (the "<u>Bankruptcy Case</u>") pending under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"),[1] hereby submits this omnibus limited opposition (the "<u>Opposition</u>") to: (i) the *Trustee's Emergency Motion (I) For Entry of a Second Interim Order: (A) Authorizing the Trustee to Obtain Additional Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (B) Setting Final Hearing; and (II) For Entry of Final Order Approving Post-Petition Financing on a Final Basis* [Docket No. 249] (the "<u>Motion</u>") filed by Richard A. Marshack, in his capacity as chapter 11 trustee of the Debtor's estate (the "<u>Trustee</u>"); and (ii) *Liberty Acquisitions Group, Inc.'s Statement in Support of Trustee's Emergency Motion* [Docket No. 278] (the "<u>Statement</u>") filed by Liberty Acquisitions Group, Inc. ("<u>Liberty</u>").   In support of this Brief, the Committee refers to the record in this Bankruptcy Case and the argument of counsel at any hearing on the Motion, and respectfully states as follows:

**I.**

**<u>INTRODUCTION</u>**

The Committee submits this limited opposition to the Motion to obtain further postpetition financing, and requests that any order granting the Motion: (i) limit the right of superpriority claimants to receive immediate payment on their superpriority claims; and (ii) grant the Committee the right to receive notice of nonmaterial modifications to the Amended Notes.  The Committee has previously cast doubt on the value of the Debtor's call center—including after a site visit early this month—but understands the Trustee's position that the value of any sale is contingent on the continued operation of the call center through closing.  As such, the Committee does not oppose the bulk of the relief requested in the Motion and focuses its concerns on two limited provisions of the relief requested by the Trustee as set forth more fully herein.

---

[1] Unless otherwise defined herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## FACTUAL BACKGROUND

**A.     General Background**

On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

On May 4, 2023, the Court entered an order [Docket No. 58] appointing Richard A. Marshack as chapter 11 trustee (the "Trustee") in this Bankruptcy Case.  On June 13, 2023, the Trustee filed a motion [Docket No. 102] for the approval of reimbursement procedures for counsel to a proposed *ad hoc* committee of consumer claimants.  On June 27, 2023, the Court entered an order [Docket No. 151] approving a stipulation [Docket No. 149] voluntarily dismissing the *ad hoc* committee motion in light of the appointment of the Committee and the agreement that a majority of the Committee's members will remain consumer claimants.

On June 23, 2023, the Office of the United States Trustee (the "UST") appointed [Docket No. 134] the Committee.  On June 29, 2023, the UST expanded [Docket No. 157] the Committee's membership from five to seven members.  On June 29, 2023, the Committee retained proposed counsel.

**B.     The Prior Financing Motions and Interim Orders**

On June 22, 2023, the Court entered an interim order [Docket No. 131] (the "Resolution Interim Order") authorizing the Trustee to borrow "$800,000 in the aggregate, including an initial advance in the amount of $350,000 and a subsequent advance of up to $450,000" from Resolution Ventures ("Resolution").  Resolution Interim Order at 2.  The Resolution Interim Order authorized the Trustee to obtain credit from Resolution on an unsecured "superpriority" bases and granted Resolution "an allowed superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other administrative expenses or priority claims."  *Id.* at 3.

On June 29, 2023, the Trustee filed a notice [Docket No. 156] (the "Modification Notice") of "non-material modification" to the promissory note granted in favor of Resolution under the Resolution Interim Order.  As set forth in the Modification Notice, the Trustee explained that

Resolution "advised it was unable to provide any additional funding to the Estate" other than a $240,000 advance made, pursuant to the Resolution Interim Order.  *See* Modification Notice at 4. The Modification Notice informed parties of the Trustee's intention to borrow $560,000 from Liberty "on the same terms and conditions" as the loan from Resolution and that the two postpetition loans "will be of equal priority and will be repaid *pari passu*." *Id.*  On July 3, 2023, the Court entered an interim order [Docket No. 138] (the "Liberty Interim Order" and, together with the Resolution Interim Order, the "Interim Orders") authorizing the Trustee to obtain credit from Liberty "and execute the Super-Priority Promissory Note" submitted with the Modification Notice.  *See* Liberty Interim Order at 2.  The Committee appeared at the hearing on the Modification Notice and reserved all rights in light of its recent appointment (the day before the hearing) and the fact that the Trustee was seeking interim relief.  The Court set the final hearing on postpetition financing under the Resolution Interim Order and the Liberty Interim Order for August 10, 2023, at 10:00 a.m. (the "Final Hearing").  *See id.* at 3.

On July 3, 2023, the Trustee filed copies of the executed versions of the notes between the estate and Resolution (the "Resolution Note") and Liberty (the "Liberty Note").  *See* Docket No. 170, Exs. A & B.  The Resolution Note and Liberty Note contain inconsistent provisions concerning the priority of their repayment that is at odds with the Trustee's disclosures concerning *pari passu* treatment and repayment.  By way of example, the Resolution Note provides:

> This Note, in an amount of funds distributed to the Estate, shall be entitled to super administrative priority pursuant to 11 U.S. Code § 364(c) (without prejudice for the Estate to obtain other super administrative priority loans).

*Id.*, Ex. A (Resolution Note, § 3 at 4).  By contrast, the Liberty Note provides:

> This Note, in an amount of funds distributed to the Estate, shall be entitled to super administrative priority pursuant 11 U.S. Code § 364 (c) (without prejudice for the Estate to obtain other super administrative priority loans). The super administrative priority of this Note will be *pari passu* with the debt owed to Resolution Ventures for the Two Hundred and Forty Thousand Dollars and No Cents ($240,000.00) that was previously loaned to the Estate ***but the first monies paid from the deposit by a Buyer to the Asset Purchase Agreement shall first go to the Lender of this Super-Priority Note.***

1   *Id.*, Ex. B (Liberty Note, § 3 at 7).  The provision concerning Liberty's priority repayment from the

2   estate has also found its way into the proposed sale documents.

3   **C.       The Sale Motion and CLG PSA**

4           On July 7, 2023, the Trustee filed a *Motion for Entry of an Order (A) Approving Sale,*

5   *Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests*

6   *Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain*

7   *Executory Contracts and Unexpired Leases and Other Agreements* [Docket no. 191] (the "<u>Sale</u>

8   <u>Motion</u>").  As set forth more fully in the Sale Motion, the Trustee, among other things, requests

9   entry of an order authorizing the Trustee to enter into that certain *Agreement of Purchase and Sale*

10  *and Joint Escrow Instructions* (the "<u>PSA</u>"), by and between the Trustee, as seller, and Consumer

11  Legal Group, P.C. ("<u>CLG</u>"), as buyer.  *See* Sale Mot., Ex. 2 (PSA).

12          As set forth more fully in the PSA, the proposed purchase price of the transaction is

13  comprised of the aggregate of the following (collectively, the "<u>Purchase Price</u>"): (i) an initial

14  deposit in the amount of $1 million due by July 13, 2023 (the "<u>Initial Deposit</u>"); (ii) a second deposit

15  in the amount of $7 million due by July 24, 2023, or ten days after entry of an order granting the

16  Sale Motion (the "<u>Second Deposit</u>," and, together with the Initial Deposit, the "<u>Deposit</u>");[2] and

17  (iii) a fee equal to (20%) of all amounts collected by CLG on "Active Executory Contracts" (as

18  defined in the PSA) from and after the closing, plus (b) fifteen percent (15%) of all amounts

19  collected by CLG on Inactive Executory Contracts (as defined in the PSA) (collectively, the "<u>Earn-</u>

20  <u>Out Fee</u>").  *See* Sale Mot., Ex. 2 (PSA, § 2(a) at 6).  The PSA contains numerous sections that either

21  provide that the Deposit is not subject to refund or provide narrow circumstances under which the

22  Deposit may be refunded.  *See, e.g.*, *id.* (PSA, § 2(a) at 8) (providing that "[t]he Deposit shall only

23  be returned to Buyer if Trustee chooses not to execute the APA or if the Bankruptcy Court does not

24  approve the proposed sale" and providing the Deposit constitutes liquidated damages); (PSA, §

25  13(c)(1) at 19) ("Except as otherwise provided in Section 13(c)(2) below [describing termination],

26

27  ─────────────────
    [2] The Committee understands that, following due diligence efforts, the Deposit will be materially

28  reduced as set forth in an amended PSA to be filed by the Trustee in advance of the hearing on the
    Sale Motion.

the Deposit is nonrefundable.").  However, the PSA also provides the following concerning the disbursement priority of the Deposit proceeds:

> Pursuant to the Note "Liberty Note" [*sic*] executed by the Trustee in favor of Liberty Acquisitions, Inc., Buyer's affiliate, Liberty Acquisitions, Inc. shall receive the entire outstanding balance of the Liberty Note, plus interest, owed pursuant to the terms of the Liberty Note between Seller and Liberty Acquisitions, Inc., within one business day.

*Id.* (PSA, § 2(a) at 7).  Despite this language, the PSA does not provide that the Purchase Price—including the Deposit component—is subject to reduction based on the superpriority claim owing to CLG's "affiliate," Liberty.

The Court set [Docket No. 195] the Sale Motion for hearing on July 21, 2023, at 10:00 a.m. (the "Sale Hearing").

**D.    The Motion and Amended Notes**

On July 16, 2023, the Trustee filed the Motion on an emergency basis after exhausting previous postpetition financing fund and in light of accrued and payable payroll obligations related to the operation of its call center.  *See* Mot. at 7.  The Trustee submits that $364,000 of call center payroll became due and payable on July 14, 2023, and that payroll will continue to accrue prior to the Sale Hearing for the period payable on July 28, 2023.  *See id.*  The Trustee submits that potential purchasers uniformly believe that the call center's continued operation is essential to the value of the Debtor's business as a going concern.  *See id.* (citing Marshack Decl., at ¶ 9).  The Trustee has included other expenses that he anticipates will come due prior to the close of the sale.  *See* Mot., Ex. 5 (Budget).

The Trustee requests authority to borrow an additional $499,327.96, equally from Resolution and Liberty, in addition to the aggregate $800,000 of financing the Trustee already obtained, pursuant to the Interim Orders.  The Motion "seeks approval to obtain unsecured credit with priority over all other administrative expenses pursuant to section 364(c)(1) of the Bankruptcy Code" and provides that "[t]he proposed Notes that are the subject of this Motion, the Additional Note, and the initial note with Resolution Ventures will be of equal priority and will be repaid *pari passu*." Mot. at 6, 12.  However, as with the prior notes, the priority provisions in the proposed

amended notes to Resolution (the "<u>Amended Resolution Note</u>") and Liberty (the "<u>Amended Liberty</u>

<u>Note</u>" and, together with the Amended Resolution Note, the "<u>Amended Notes</u>") are inconsistent.

The Amended Resolution Note provides that:

> This Note, in an amount of funds distributed to the Estate, shall be entitled to super administrative priority pursuant 11 U.S.C. § 364(c) (without prejudice for the Estate to obtain other super administrative priority loans).

*Id.*, Ex. 3 (Am. Resolution Note, § 3 at 2).  But, the Amended Liberty Note provides:

> This Note, in an amount of funds distributed to the Estate, shall be entitled to super administrative priority pursuant 11 U.S.C. § 364(c) (without prejudice for the Estate to obtain other super administrative priority loans). The super administrative priority of this Note will be pari passu with the debts owed to Resolution Ventures that were loaned to the Estate under that certain Super-Priority Promissory Note and that certain Amended Super-Priority Promissory Note, but the first monies paid from the deposit by a Buyer to the Asset Purchase Agreement shall first go to the Lender of this Amended and Restated Super-Priority Promissory Note.

*Id.*, Ex. 4 (Am. Liberty Note, § 3 at 3-4).

**E.    <u>The Liberty Statement</u>**

On July 18, 2023, Liberty filed the Statement.  As set forth therein, Liberty states that it "has concerns regarding payment.  While Liberty is confident the sale will be approved and the proposed [Amended Liberty Note] will be repaid from the sale proceeds, there are a number of constituents adamantly opposed to any sale." Stmt. at 3.  As such, "Liberty wants assurances from both the Trustee and the Court that if the DIP loan is approved as requested, that Liberty's position is protect whether or not a sale is approved and whether or not the case is converted." *Id.*  Liberty requests that it "be repaid from current funds on hand that were pulled by the Trustee, or such other funds collected by the Trustee during this case." *Id.*

III.

**LEGAL ANALYSIS**

A.      **Payment of the Superpriority Claims Granted to Liberty from the Deposit (or Other Estate Assets) Violates the Bankruptcy Code's Priority Scheme, Effects an Improper Purchase Price Reduction, and Is Inconsistent with *Pari Passu* Treatment.**

       1.      **The Trustee and Liberty Do Not Address or Satisfy the Applicable Standard for Advance Payment of an Administrative Claim.**

Section 364(c)(1) permits the Trustee to obtain "credit or the incurring of debt . . . with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title." 11 U.S.C. § 364(c)(1); *but see In re Sun Runner Marine, Inc.*, 134 B.R. 4, 7 (B.A.P. 9th Cir. 1991) (holding postconversion claims under § 726(b) take priority over superpriority claims under § 507(b)). However, administrative claims are not entitled to automatic payment; instead, "[t]he determination of when an administrative expense is to be paid is within the discretion of the trial court." *Spartan Plastics v. Verco Indus.*, 20 B.R. 664, 664-665 (B.A.P. 9th Cir. 1982) (citing *In re Standard Furniture Co.*, 3 B.R. 527 (Bankr. S.D. Cal. 1980).

> In determining whether an administrative expense should be paid immediately, courts often consider the following factors: (1) the likelihood that all administrative claimants will be paid in full; (2) whether the administrative claimant could repay any payment that later proves to be excessive; (3) if the case is a Chapter 13 or 11 case, how close the case is to confirmation; and (4) whether the expense was incurred in the ordinary course of the debtor's business.

*In re Steiny & Co., Inc.*, No. 16-25619, 2017 WL 1788414 (Bankr. C.D. Cal. May 3, 2017); *accord In re Verity Health Sys. of Cal., Inc.*, No. 18-20151, 2018 WL 5281624, at *4 (Bankr. C.D. Cal. Oct. 22, 2018); *In re GPLA, Inc.*, No. 16-13416, 2016 WL 4440376, at *1 (Bankr. C.D. Cal. Aug. 22, 2016). The Ninth Circuit is clear that immediate payment is disfavored where it appears there will be insufficient assets to pay all administrative claims in full. *See In re Conchise College Park, Inc.*, 703 F.2d 1339, 1359 n.22 (9th Cir. 1983); *see also In re LTV Steel Co.*, 288 B.R. 775, 779 (Bankr. N.D. Ohio 2002) (denying immediate payment of administrative expenses because the Bankruptcy Code does not require it and instead requires parity amongst administrative claims); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 401 (Bankr. D. Del. 2004) (stating that "distributions prior to

confirmation of a plan are usually disallowed when the estate may not be able to pay all administrative expenses in full"); *Varsity Carpet Serv., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1384 (11th Cir. 1994) (holding that due to the existence of higher priority claims, it was within the discretion of the court to delay payment of administrative expenses).

The Trustee and Liberty have made no showing that the payment of Liberty's superpriority administrative claim through the Deposit proceeds, or other estate funds, is appropriate at this time based on the factor analysis adopted by courts in this District:

- **Factor 1: The Likelihood Administrative Claims Will Be Paid in Full.**  The Trustee and Liberty concede that the estate is at substantial risk of administrative insolvency if it is unable to close a sale.  *See* Mot. at 10 (explaining that absent a sale "the Estate has no significant assets other than litigation claims); Stmt. at 3 (requesting assurance of payment in light of challenges associated with approval of a sale).  Although Liberty's claim may be a superpriority administrative expense, the Trustee has already granted *pari passu* treatment to Resolution and noted that (while not allowed) the face value of secured claims is almost $6.3 million. Between the secured claims, *pari passu* superpriority claims, and an anticipated Deposit reduction, the Trustee and Liberty cannot demonstrate that administrative claims (even of equal priority) are likely to be paid.

- **Factor 2: Whether the Administrative Claimant Could Repay the Claim.**  The Trustee and Liberty provide no evidence of Liberty's ability to repay.  The Committee understands that Liberty is a special purpose entity (and CLG affiliate) formed to offer postpetition financing to the Debtor's estate and has no other source of funds.

- **Factor 3: Proximity to Confirmation.**  No plan is on file and, as of the date of this Opposition, it is unclear whether the case will successfully liquidate pursuant to a plan or convert to chapter 7.  The outcome of the pending sale is potentially determinative of this issue and the UST has a motion to convert the Bankruptcy Case pending.

- **Factor 4: Whether the Expense Was Ordinary Course.** Definitionally, a superpriority claim arising from postpetition financing under § 364(c)(1) is non-ordinary course.

Moreover, the Court authorized Liberty's superpriority claim on an interim basis and the Trustee provides no authority for the payment of a postpetition superpriority claim that is not yet allowed on a final basis. Accordingly, the Trustee and Liberty have not established (and cannot) a right to immediate payment of the Liberty superpriority claim from the Deposit or any other estate funds.

**2.    The PSA Does Not Obligate Payment of the Amended Liberty Note From the Deposit, Which Would Effect an Improper Purchase Price Reduction.**

The PSA provides that the Deposit is a nonrefundable component of the Purchase Price and does not condition the sale on the repayment of CLG's affiliate, Liberty. *First*, under the PSA, the Purchase Price is defined as the $8 million Deposit—provided in two installments—and the Earn Out Fee. *See* Sale Mot., Ex. 2 (PSA, § 2(a) at 6). The Purchase Price definition includes no mention of any Purchase Price reduction related to payment of the Amended Liberty Note. Instead, in a hanging paragraph, the PSA purports to dictate the priority of payment of claims—in this case the Amended Liberty Note—from the initial deposit. *See id.* (PSA, § 2(a) at 7). As set forth above, simply dictating repayment priority in a PSA does not alter the distribution scheme set forth in the Bankruptcy Code. *Second*, section 6(a) of the PSA, governing the "Conditions to Buyer's Obligations," does not provide that the payment of the Amended Liberty Note is a condition to closing nor is it a "Deposit[] by Seller" prior to closing. *See id.* (PSA, § 6(a) at 12, § 7 at 13). As such, the PSA does not permit Purchase Price reductions contemplated by the Amended Liberty Note and does not condition closing on such payment.

The Amended Liberty Note is in conflict with the provisions of the PSA. The proposed Amended Liberty Note essentially requests that the Court treat $800,000 as a "Purchase Price" reduction in the sale to CLG. *See* Mot., Ex. 4 (Am. Liberty Note, §§ 1-2 at 2). The Amended Liberty Note provides that any Deposit received from CLG will first—and immediately—be utilized to pay the superpriority claim of CLG's affiliate, Liberty, rather than serve as a meaningful "nonrefundable" deposit as liquidated damages in the event of a CLG default. *See id.*; *see also* Sale

- 9 -

Mot., Ex. 2 (PSA, § 2(a) at 7-8).  The Amended Liberty Note cannot be construed to read inconsistent provisions into the PSA.  Moreover, the Amended Liberty Note cannot grant Liberty what is—in essence—a secured claim in the Deposit or other estate funds where the Trustee and Liberty have only agreed to a superpriority, unsecured administrative claim.

With respect to Liberty's Statement and assuming *arguendo* payment of the Amended Liberty Note was authorized and mandated by the terms of the PSA, the PSA includes a "no third party beneficiaries" provision that precludes Liberty from attempting to enforce any provision of the PSA that obligates the Trustee to pay the outstanding balance from the deposit.  *See* Docket 191, Ex. 2 (PSA, § 21.c. at 22) ("Except as otherwise expressly provided herein, the execution and delivery of this Agreement shall not be deemed to confer any rights upon nor obligate either of Buyer or Seller to, any person or entity other than the parties.").  As such, the Liberty Statement seeking enforcement of the Deposit repayment terms should be overruled in the context of the Court's consideration of the Sale Motion.

**3.    <u>Payment of the Amended Liberty Note from the Deposit Is Inconsistent with the Alleged *Pari Passu* Treatment Among Resolution and Liberty</u>.**

The Motion and terms of the Amended Notes are inconsistent concerning the *pari passu* treatment of the two postpetition lenders.  The Motion provides that repayment of the obligations to Liberty and Resolution Ventures will be *pari passu*.  *See* Mot. at 6 ("The proposed Notes that are the subject of this Motion, the Additional Note, and the initial note with Resolution Ventures will be of equal priority and **will be repaid** pari passu.") (emphasis added) (citing Marshack Decl., at ¶ 5).  However, the Amended Notes do something different: they actually permit Liberty to be repaid from the PSA deposits before Resolution Ventures is repaid.  *See* Mot., Ex. 4 (Amended Liberty Note, § 3 at 2) ("The super administrative priority of this Note will be *pari passu* with the debts owed to Resolution Ventures that were loan to the Estate . . . but the first monies paid from the deposit by a Buyer to the Asset Purchase Agreement shall first go to [Liberty.]"); *see also id.*, Ex. 3 (Amended Resolution Note, § 3 at 2) (excluding reference to *pari passu* treatment from the "priority" provisions while providing that "[t]his Note . . . shall be entitled to super administrative priority pursuant to 11 U.S.C. § 364(c)").  The Motion does not accurately disclose that the

Amended Liberty Note and Amended Resolution Note are at odds, with the Amended Resolution Note requiring equal claim status and the Amended Liberty Note providing a priority right to estate funds.  To avoid the clear dispute these conflicting note provisions, the Court should not approve the Motion unless the Amended Notes are drafted consistent with the *pari passu* repayment disclosures in the Motion, and subject to the resolutions to any objections to the relief requested for entry of a final order.

**B.**    **The Committee Should Receive Notice of Nonmaterial Modifications.**

The proposed order granting the Motion "[a]uthorizes the Trustee to enter into any non-material amendment or modification to the Notes, without further order of this Court, provided that any such non-material amendment or modification is set forth in writing and signed by the Trustee and the Lender, and provided that the Trustee provides notice of any such amendment or modification to the Court and the Office of the United States Trustee." Mot., Ex. 1 (Proposed Order, ¶ 10 at 3).  Based on the Trustee's prior Modification Notice, it is apparent that the Committee and Trustee have divergent views of what may constitute a "non-material modification."  Moreover, in light of the super priority status accorded under the Amended Notes, any modifications may materially impact recoveries to unsecured creditors.  Accordingly, the Committee submits that any order granting the Motion should require that the Committee receive notice of any "non-material modification" in addition to the Court and the UST.

**IV.**

**RESERVATION OF RIGHTS**

The Committee expressly reserves all rights with respect to substantive briefing and argument on the Sale Motion.  Nothing contained herein shall be construed as an admission with respect to the Sale Motion, a waiver of arguments, claims, or defenses, or an election of remedies. The Committee further reserves all rights with respect to the Final Hearing on any request for postpetition financing.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V**

**CONCLUSION**

Based on the foregoing, the Committee respectfully requests that the Court enter an order: (i) granting the Motion subject to (a) the elimination of any right to obtain immediate payment of the superpriority claims granted under the Amended Notes from the Deposit, estate funds, or otherwise, and (b) granting the Committee the right to obtain notice of nonmaterial modifications; and (ii) granting the Committee such other and further relief as is just an appropriate under the circumstances.

Dated: July 18, 2023                                    Respectfully submitted,

                                                        **FOX ROTHSCHILD LLP**

                                                        *By:* /s/Keith C. Owens
                                                        Proposed Counsel to Official Committee
                                                        of Unsecured Creditors

1

## PROOF OF SERVICE OF DOCUMENT

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

4

A true and correct copy of the foregoing documents entitled: OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS LIMITED OPPOSITION AND RESERVATION OF RIGHTS

5

CONCERNING: (I) THE TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF A SECOND INTERIM ORDER AUTHORIZING POST-PETITION FINANCING AND SUPERPRIORITY

6

ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. § 364; AND (II) LIBERTY ACQUISITIONS GROUP, INC.'S STATEMENT IN SUPPORT THEREOF   on the judge in chambers in

7

the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

8

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and

9

hyperlink to the document.  On 7/18/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to

10

receive NEF transmission at the email addresses stated below:

11

- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**    ron@rkbrownlaw.com

12

- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com

13

- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com,

14

    jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com

15

- **Christopher Ghio**    christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **Jeffrey I Golden**    jgolden@go2.law,

16

    kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com

17

- **Richard H Golubow**    rgolubow@wghlawyers.com,
    jmartinez@wghlawyers.com;svillegas@wghlawyers.com

18

- **D Edward Hays**    ehays@marshackhays.com,
    ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

19

20

- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com,
    arodriguez@mauricewutscher.com

21

- **Garrick A Hollander**    ghollander@wghlawyers.com,
    jmartinez@wghlawyers.com;svillegas@wghlawyers.com

22

- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Joon M Khang**    joon@khanglaw.com

23

- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com

24

- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com,

25

    omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com

26

- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com

27

- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
    rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

28

- **Laila Masud**    lmasud@marshackhays.com,
    lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Active\118774763.v1-1/20/21

- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**    bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**    anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**    vnewmark@pszjlaw.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Teri T Pham**    tpham@epglawyers.com, ttpassistant@epglawyers.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**    gsalvato@salvatoboufadel.com,
  calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott**    olivia.scott3@bclplaw.com
- **Jonathan Serrano**    jonathan.serrano@dinsmore.com
- **Paul R Shankman**    PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim**    leslie.skorheim@usdoj.gov
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com,
  raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

**2.**    <u>**SERVED BY UNITED STATES MAIL**</u>:  On July 18, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

<u>Parties not on ECF but require service of filings:</u>

Grobstein Teeple LLP
23832 Rockfield Blvd suite 245
Lake Forest, CA 92630

Jason Patterson Stopnitzky
52 Cupertino Circle
Aliso Viejo, CA 92656

**3.**    <u>**SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**</u> (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 18, 2023, I served the following persons and/or entities by personal delivery,  mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct

| 7/18/2023 | Kenneth Hoang | /s/ Kimberly Hoang |
|-----------|---------------|--------------------|
| *Date* | *Printed Name* | *Signature* |