## DECLARATION OF HAN TRINH

I, HAN TRINH, declare:

1. I make this Declaration in support of the Motion for Allowance and Payment of Administrative Expense of Greyson Law Center, PC ("Greyson").

2. From when Greyson Law Center PC ("Greyson") was incorporated as a California corporation on 5/12/23, to present, I have been the administrator of Greyson, administering Greyson's operations and hiring/firing/assigning/monitoring Greyson's attorney staff. I have personal knowledge of everything in this declaration, and could and would testify competently thereto, if called on to do so at trial or hearing.

3. On 6/2/23, Trustee Marshack, by his attorney Celentino, and by Celentino's field agents, locked Scott Eadie, Jayde Trinh, and me out of Greyson's office. That lockout was done pursuant to the 5/26/23 Lockout and Preliminary Injunction Order, which Celentino had obtained based on the **false allegation** that Greyson was an alter ego of debtor Litigation Practice Group PC ("LPG"), when Greyson was not an alter ego of LPG, and instead was a **direct competitor of LPG**.

4. Greyson is not now, and has never been, an alter ego of debtor LPG. Greyson is not now, and has never been, the alter ego of Phoenix Law Group. Phoenix Law Group is an alter ego of LPG, and is being run by Celentino, from 6/2/23 to present, to my knowledge. Greyson is a direct competitor of Phoenix Law

**NOTICE OF MOTION AND MOTION OF *GREYSON LAW CENTER PC*, FOR AN ORDER (1) VACATING THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER AS TO GREYSON, AND (2) ORDERING TRUSTEE MARSHACK'S ATTORNEY, CELENTINO, TO RESTORE *GREYSON'S* ACCESS TO ALL OF *GREYSON'S* DATA, WHICH CELENTINO SEIZED AND LOCKED *GREYSON* OUT OF ON 5/2623 AND 6/12/23, CONTINUING TO PRESENT; DECLARATIONS OF HAN TRINH AND  KATHLEEN P. MARCH, ESQ.                     14**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Group.  Greyson is also a direct competitor of Morning Law Group, the winning

bidder at the Bankruptcy Court sale of LPG's assets.

5.  The Declaration of attorney Kathleen P. March hereto attaches, as

**Exhibit G to March Declaration**, the transcript of the 6/12/23 bankruptcy court

hearing, in which Celentino admitted to the Court that Greyson was NOT an alter ego

of debtor Litigation Practices Group, PC.

6.  I attach hereto, As Exhibit ONE to this Declaration, and incorporate by

reference, my Declaration (with exhibits thereto) signed by me on 11/17/23, and filed

on 11/17/23 in support of Greyson's Motion for Allowance and Payment of

Administrative Claim.

**7.  From 11/17/23 to present, NOTHING has changed from what I
reported in my attached Declaration signed 11/17/23.**

8.  My 11/17/23 declaration attests to all the computers and data which

Celentino/Celentino's field agents seized, on 6/2/23 (further data seized on 6/12/23)

and thereafter, NOTHING has changed from when I signed my attached Declaration

on 11/17/23, to present, 12/5/23—the date this Motion for access is being filed.

9.  During the 6/2/23 lockout, Celentino's field agents seized over 50

Greyson computers and B-links (B-links are smaller computers). Three of the

computers seized were the Greyson computer in my office, the Greyson computer in

the office of Greyson's managing attorney, Scott Eadie, Esq., and the Greyson

**NOTICE OF MOTION AND MOTION OF *GREYSON LAW CENTER PC*, FOR AN ORDER (1) VACATING
THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER AS TO GREYSON, AND (2)
ORDERING TRUSTEE MARSHACK'S ATTORNEY, CELENTINO, TO RESTORE *GREYSON'S* ACCESS TO
ALL OF *GREYSON'S* DATA, WHICH CELENTINO SEIZED AND LOCKED *GREYSON* OUT OF ON 5/2623
AND 6/12/23, CONTINUING TO PRESENT; DECLARATIONS OF HAN TRINH AND  KATHLEEN P.
MARCH, ESQ.                                                                              15**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

computer in the office of Greyson attorney Han Trinh. Plus, Celentino's field agents

seized 3 Macbooks that they took from the office of Greyson's IT director.  All 50

plus computers seized are owned by Greyson.  Celentino/his field agents have not

returned ANY of these computers to Greyson.  They should be returned to me, as the

administrator for Greyson.

     10.Immediately after seizing the 50 plus computers, Celentino's field agents

demanded that Greyson's IT staff change the passwords on all computers, to allow

Celentino and his field agents to access all data on all computers, and to **<u>lock</u>**

**<u>Greyson out of accessing any data on those computers</u>**.  Even without the physical

computers, I, attorney Scott Eadie, and attorney Jayde Trinh, could have accessed

Greyson's data, because it was back-up stored on "the cloud", except that

Celentino/his field agent locked us out of accessing Greyson's data back-up stored on

the "the cloud".

     11.The data stored on Greyson's computers, particularly on the computer in

my office, was Greyson's Microsoft Office account, which data and documents

included Greyson's contracts of all kinds, and Greyson's invoices, billing for services

performed by Greyson's W-2 attorneys, and which was essential for Greyson to

access, to carry on its business, including collecting amounts Greyson was owed.

     12.This continued denial of access to Greyson  includes that

Celentino/Celentino's field agents, have still NOT returned to Greyson, the Greyson

**NOTICE OF MOTION AND MOTION OF *GREYSON LAW CENTER PC*, FOR AN ORDER (1) VACATING THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER AS TO GREYSON, AND (2) ORDERING TRUSTEE MARSHACK'S ATTORNEY, CELENTINO, TO RESTORE *GREYSON'S* ACCESS TO ALL OF *GREYSON'S* DATA, WHICH CELENTINO SEIZED AND LOCKED *GREYSON* OUT OF ON 5/2623 AND 6/12/23, CONTINUING TO PRESENT; DECLARATIONS OF HAN TRINH AND  KATHLEEN P. MARCH, ESQ.                                                                                                16**

computers/B-links, which Celentino's field agents seized at Greyson's offices when they did the lockout on 6/2/23, and have not restored Greyson's access to the data on those Greyson computers, all of which was back-up stored in the "cloud", such as data and documents, which includes contracts and invoices for work done by Greyson attorneys.

13. In addition, Celentino/his field agents have never, to date this Motion is being filed, restored Greyson's access to Greyson's website (greysonlawpc.com), and have never restored Greyson's access to any of Greyson's 100 email accounts or to the emails in those accounts.

14.The data Celentino/his field agents seized and locked Greyson out of, to present, include Greyson's scripts, protocols, templates, procedures, for carrying on Greyson's business.  All those items were proprietary/confidential Greyson information, until Celentino and his staff accessed that information, and it appears, provided that information to Phoenix Law Group (being run by Celentino as an alter ego of LPG) and to Morning Law Group (buyer at the bankruptcy sale), both of which entities directly compete with Greyson.

15.Nor have Celentino/his field agents returned to Greyson 6 boxes of blank Greyson business checks, one box of checks for each of 6 different Greyson bank accounts, checks which are Greyson property.

16. It was knowingly improper conduct by Celentino, that **after Court** on

**NOTICE OF MOTION AND MOTION OF *GREYSON LAW CENTER PC*, FOR AN ORDER (1) VACATING THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER AS TO GREYSON, AND (2) ORDERING TRUSTEE MARSHACK'S ATTORNEY, CELENTINO, TO RESTORE *GREYSON'S* ACCESS TO ALL OF *GREYSON'S* DATA, WHICH CELENTINO SEIZED AND LOCKED *GREYSON* OUT OF ON 5/2623 AND 6/12/23, CONTINUING TO PRESENT; DECLARATIONS OF HAN TRINH AND  KATHLEEN P. MARCH, ESQ.    17**

6/12/23, Celentino/his field agents, seized Greyson's LUNA account, and locked

Greyson out of being able to access Greyson's LUNA account, and kept Greyson

locked out from accessing Greyson's LUNA account,  from 6/12/23 to present,

except for a two week period in July 2023, where Celentino allowed Greyson limited

(and insufficient) temporary access to Greyson's LUNA account. (Han Trinh's 2

Declarations hereto).   Greyson having access to Greyson's LUNA account was

essential for Greyson to operate, because Greyson's LUNA account contained

Greyson's data base for managing work done by Greyson attorneys defending

consumer debtor clients in lawsuits, nationwide.

17. Greyson urgently needs access to all Greyson's data that Celentino/his

field agents have cut Greyson off from accessing, including Greyson needs contracts

and invoices that are in the computer data that Celentino locked Greyson out of, from

6/2/23 to date this Motion is being filed.

18. As attorney Kathleen P. March's Declaration hereto explains, Celentino

got the 5/26/23 Lockout and Preliminary Injunction Order against Greyson, based on

the **false allegation** that Greyson was an **alter** ego of debtor LPG, but Celentino

admitted, at the Court hearing held 6/12/23, that Greyson was **NOT** an alter ego of

LPG.   As March's Declaration explains, Celentino had a duty to undo the damage he

had done to Greyson, by getting the Lockout and Preliminary Injunction Order

against Greyson, based on the **false allegation** that Greyson was an **alter** ego of

**NOTICE OF MOTION AND MOTION OF *GREYSON LAW CENTER PC*, FOR AN ORDER (1) VACATING THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER AS TO GREYSON, AND (2) ORDERING TRUSTEE MARSHACK'S ATTORNEY, CELENTINO, TO RESTORE *GREYSON'S* ACCESS TO ALL OF *GREYSON'S* DATA, WHICH CELENTINO SEIZED AND LOCKED *GREYSON* OUT OF ON 5/2623 AND 6/12/23, CONTINUING TO PRESENT; DECLARATIONS OF HAN TRINH AND  KATHLEEN P. MARCH, ESQ.                                                                                                              18**

debtor LPT.

19. But instead of Celentino/his field agents giving Greyson's computers back, immediately after the 6/12/23 court hearing, and instead of Celentino/his field agents giving Greyson access to Greyson's data, immediately after the 6/12/23 court hearing, Celentino—after Court on 6/12/23--seized and locked Greyson out of the LUNA data base that Greyson used to manage all Greyson's attorneys, and kept Greyson locked out, for over a month.

20. Greyson urgently needs to have Celentino/his field agents **return Greyson's computers to Greyson** (including the Greyson computer seized on 6/2/23 from my office and Greyson,  and needs to have Celentino/his field agents **restore Greyson's access to all of Greyson's data, emails, website**, etc. which Celentino/his field agents locked Greyson out of, starting on 6/2/23, and lockout of Greyson, from all Greyson data completed on 6/14/23, but have still NOT, to date of this Declaration, allowed Greyson access to.

21. The data on Greyson's computers, which Celentino/his field agents locked Greyson out from accessing, include contracts, and invoices, which are essential for Greyson to access, to carry on its business, collect amounts Greyson is owed.

22. Greyson's computers, data, emails and website **belong to Greyson**, NOT to Trustee Marshack.  By taking and keeping all Greyson's data, Trustee Marshack,

1  by Marshack's attorney Celentino, has made it impossible for Greyson to compete

2  with Phoenix Law Group (alter ego of debtor LPG, which Celentino is running), and

3
4  has made it impossible for Greyson to compete with Morning Law Group (winning

5  buyer at the 8/4/23 sale of LPG's assets).

6      23. Greyson respectfully requests this Court to  grant Greyson's herein

7
8  Motion, to vacate the 5/26/23 *Lockout and Preliminary Injunction Order*, as to

9  Greyson, and please order Celentino/his field agents to **immediately** (within 48 hours

10 after this Court rules) to all Greyson's seized property to Greyson—to me as

11
12 Greyson's administrator—including the seized 50 plus Greyson computers/B-links,

13 and to immediately restore to Greyson, Greyson's access to all of Greyson's

14 computer data, emails, website, and LUNA account data.

15
16     I declare under penalty of perjury that the foregoing is true and correct and that

17 this Declaration is executed at Orange, California on December 6, 2023.

18
19

20                HAN TRINH

21

22

23

24

25

26

27

28 NOTICE OF MOTION AND MOTION OF *GREYSON LAW CENTER PC*, FOR AN ORDER (1) VACATING
   THE 5/26/23 LOCKOUT AND PRELIMINARY INJUNCTION ORDER AS TO GREYSON, AND (2)
   ORDERING TRUSTEE MARSHACK'S ATTORNEY, CELENTINO, TO RESTORE *GREYSON'S* ACCESS TO
   ALL OF *GREYSON'S* DATA, WHICH CELENTINO SEIZED AND LOCKED *GREYSON* OUT OF ON 5/2623
   AND 6/12/23, CONTINUING TO PRESENT; DECLARATIONS OF HAN TRINH AND  KATHLEEN P.
   MARCH, ESQ.                                                    20

## **DECLARATION OF HAN TRINH**

I, HAN TRINH, declare:

1.  I make this Declaration in support of the Motion for Allowance and Payment of Administrative Expense of Greyson Law Center, PC ("Greyson").

2.  From when Greyson Law Center PPC ("Greyson") was incorporated as a California corporation on 5/12/23, to present, I have been the administrator of Greyson, administering Greyson's client files, and hiring/firing/assigning/monitoring Greyson's attorney staff.  I have personal knowledge of everything in this declaration, and could and would testify competently thereto, if called on to do so at trial or hearing.

3.  On 6/2/23, Trustee Marshack, by his attorney Celentino, and by Celentino's field agents, locked Scott Eadie, Jayde Trinh, and me out of Greyson's office. That lockout was done pursuant to the 5/26/23 Lockout and Preliminary Injunction Order, which Celentino had obtained based on the **false allegation** that Greyson was an alter ego of debtor LPG, when Greyson was not an alter ego of LPG, and instead was a **direct competitor of LPG**.  The lockout started on 6/2/23 and my office was never unlocked after 6/2/23.  Celentino demanded that all Greyson personnel (except not me, Jayde and Scott Eadie) should come in to Greyson and work pursuant to the supervision of Celentino's field agents.  Some did so, and none of them were ever paid by Celentino for their work  .  On 6/2/23, Trustee/his field agents seized or froze everything that Greyson had.  This included

**EXHIBIT ONE TO HAN TRINH DECL**

Celentino's field agents seized  my computer, Jayde's computer and Scott Eadie's computer,  and all the other computers that were in the Greyson offices, and demanded that the Greyson IT personnel give Celentino's field agents access to the data in the computers, which Greyson IT personnel did, including access to those computers' "cloud data storage".  On 6/2/23, I and Scott Eadie and Jayde were locked out of the computers/their data/the cloud data storage.  Celentino/his field agents never returned the computers, to present, and never allowed me or any other Greyson personnel to access the data in those computers (or their cloud storage) to **present.**   Celentino's field agents accessed the Greyson LUNA account, which contained the client files of Greyson's 48 clients, and was how Greyson managed Greyson's clients. I was locked out from the LUNA account on 6/2/23.  The field agents seized and removed, from Greyson's office space, boxes of Greyson checks, one box for each of Greyson's 6 bank accounts, none were ever returned to **present**.  Celentino/field agents seized Greyson's bank accounts (after demanding and receiving the log in credentials from me, for those bank accounts; and seized Greyson's payment processors accounts.  Celentino/his field agents demanded from Greyson's IT staff the managing access to Greyson's hundred-plus emails, got that access and then progressively locked Greyson personnel out of those emails, from 6/2/23 and continuing to 6/13/23 (and never gave access to those emails back to Greyson to **present**).  Celentino/his field agents seized Greyson's website/domain (and never gave access to Greyson's

domain back to Greyson to **present**), which prevented clients and others from communicating with Greyson through the Greyson website.  Celentino/his field agents seized and locked Greyson out of Greyson's LUNA client management account until 7/7/23.   Celintino/his field agents redirected Greyson's US mail to Celentino, promised to forward that mail to Greyson, and never did so to present, despite telling the Court he would do so.    What Celentino/his field agents did effectively shut down Greyson's ability to operate, for two months after 6/2/23.  Despite this, I continued doing administration work for Greyson, as soon as I was released from the lockout on 6/12/23, to present, as best I could.

4.      Jayde and I had managed legal operations at debtor Litigation Practice Group PC ("LPG").  We had interviewed, hired, and trained attorneys together, and had basically built LPG's attorney network from scratch. Jayde would supervise the attorney network while I made sure lawsuits were being processed and assigned to the attorney network in a timely manner. Before us, LPG was only using 1099 attorneys. The attorney network Jayde and I built together were mostly W-2 attorney employees of LPG. There were 5-6 attorneys that remained 1099 as an exception due to the relationship they and their firm built with LPG. After LPG started letting people go due to lack of funds, some of the attorneys found work elsewhere as 1099 (independent contractors, paid by accepted assigned lawsuits/cases). Many of LPG's attorneys became W2 attorneys at Oakstone Law Group for a brief amount of time, and did additional work at Consumer Legal

Group, Phoenix Law Group, and other law firms, as 1099 independent contractors. The network of attorneys that LPG and Phoenix were previously using was Jayde's and my network of attorneys that we established at LPG. They followed us to Greyson Law Center PC.

5.      The Greyson entity incorporated on 3/9/23 as California corporation 5561924 (I'll call it "Greyson ONE") was financially supported by Eng Taing through his investment business/company/entity Touzi Capital and/or personal funds, or so Eng Taing claimed.  Greyson ONE was incorporated on 3/9/23, because Oakstone, where Eng Taing and Scott Eadie and others were working was in financial trouble.  After my consultation period with Eng Taing and Scott Eadie, I told them that Oakstone was so badly managed it could not survive, including because Oakstone had former LPG clients, which were liabilities, more than assets.  I told Eng Taing and Scott Eadie that they should hand over Oakstone's clients to any law firm that would take these clients and start over. To be clear, Jayde Trinh and I were never employees of Oakstone Law Group PC.

6.      Jayde and I supervised the team of Greyson ONE attorneys.   But Greyson ONE was short lived.  There were many problems and disagreements at Greyson ONE, between Eng Taing, and Scott Eadie, and it soon appeared that Eng Taing was using Greyson ONE as a "back channel" to pay Eng's investors, with the result that there was no money to pay Greyson ONE's payroll and expenses. Jimmy Chhor, Eng Taing's cousin, dissolved Greyson ONE on 5/2/23. On

5/11/23, an unknown number sent a screenshot to the attorneys working for Greyson ONE, showing Greyson ONE was dissolved.  The records of the California Secretary of State report Greyson ONE as "terminated" (attached to Declaration of Kathleen P. March, Esq. to this Motion).

7.      The present Greyson Law Center PC ("Greyson" herein) was incorporated on 5/12/23, CA corporation no.5714736, by Scott Eadie, who was, and at all times has been, the 100% shareholder of the 5/12/23 Greyson Law Center PC.

8.      Greyson attorneys were hired by Phoenix Law Group, Consumer Legal Group, and other law firms to work cases for those entities, because those entities had no attorneys. Scott, Jayde, and I held multiple network meetings with the Greyson attorneys and determined that Phoenix Law and Consumer Legal should pay Greyson, for using Greyson attorneys, and then Greyson would pay Greyson's attorneys.

9.      Scott Eadie, Jayde, and I determined that the range of what attorneys were being paid per case by other law firms, ranged from $1,400-$2,500.  Scott, Jayde, I, and the Greyson attorneys, settled on charging Phoenix and Consumer Legal, and other law firms that used Greyson's attorneys, $2,000 per case, to be paid to Greyson, to use Greyson's attorneys.  $2,000 per case was a low amount, considering Greyson had to pay the attorneys, had to pay rent, and other overhead, to supply attorneys nationwide.

10.    Phoenix Law Group had not yet paid a lot of the Greyson attorneys' 1099 invoices so those attorneys told Phoenix to just pay Greyson directly instead, and Greyson would pay those attorneys. Phoenix rarely paid any invoices our attorneys sent to them as 1099 contractors on time and that was no different when Greyson started being the one issuing invoices, which put Greyson in a bind of never making payroll on time. By the time Phoenix said it had funds to pay for work by Greyson attorneys, I just told them to send the wire in the amount due for that payroll.  That left a large amount still owed to Greyson by Phoenix, which was a bad situation for Greyson.

11.    A considerable number of clients of Phoenix Law Group and Consumer Legal Group were unhappy with those firms and told our Greyson attorneys that they wanted to hire our attorneys directly. Our attorneys would state that they work for Greyson and basically informed their contracted clients that they had the right to choose who handles their files/accounts. If the clients wanted to hire our attorneys directly, they were welcome to check out Greyson if they were interested. That was how we obtained Greyson's first 48 clients—they had been clients of other law firms, but they signed contracts to switch to Greyson representing them.

12.    While Greyson was working on building its client base, the lockout order and preliminary injunction were executed on Greyson, on Friday, 06/02/2023.

13.    The first time I ever heard about a Trustee, the lockout order, and the preliminary injunction against Greyson was when Tony Diab phoned me and asked me to come onto a three-way call with Tony Diab and Special Counsel to the Trustee, Christopher Celentino, on 06/02/2023.

14.    It was totally unexpected when Diab phoned me, saying Celentino wanted to speak with me.  I asked Diab who Celentino was. Diab told me Celentino would explain who he was and what was going on.  I told Diab he could merge me into the three-way call with Diab and Celentino. Celentino asked me if I knew he was, and I told him no.

15.    Celentino told me that Marshack has been appointed as Chapter 11 Trustee, that Celentino was Marshack's special counsel, that Tony Diab was no longer in control of debtor LPG, that Marshack was now in control of debtor LPG, and that Marshack had obtained an Order of the Bankruptcy Court locking out Greyson personnel from the Greyson Law Center PC office located at 3345 Michelson Dr., Irvine, CA, 92612, Suite 400 and enjoining Greyson personnel from touching anything related to Greyson.

16.    Celentino told me that Celentino would like to be able to go back to Judge Clarkson and let him know that I have been fully cooperative and helpful, since it would work better in my favor if I were to do as Celentino requested.

17.    Celentino told me he was aware I had sent everyone home.  I told Celentino that it was a well-known protocol amongst Greyson employees that if

they were not paid on time, they were allowed to go home, with no consequences

against them, until they received their pay. I also told Celentino that staff had

heard a huge commotion going on next door to Greyson's office, at Phoenix Law

Group. For everyone's safety, I had Greyson's human resources department tell all

Greyson personnel to leave the Greyson premises. I was not aware that it was the

Trustee's personnel that were next door at Phoenix Law Group, locking the

Phoenix personnel out of Phoenix Law Group.   Everyone at Greyson assumed that

the commotion at Phoenix Law Group was another angry Phoenix Law Group

investor coming to demand money from Phoenix Law Group, in a belligerent way.

18.    Celentino told me to tell Greyson's staff to return to work at Greyson.

He did NOT pay the Greyson staff for coming back and working at Greyson, and

he never paid them. I told Celentino that when I got off the call with him, I would

have Greyson's HR person to notify Greyson's staff to come back to work at

Greyson.

19.    Celentino asked me to give Celentino an email to contact me through,

so he could send me the court papers, so I gave him my work email,

admin@greysonlawpc.com. After getting off the phone with him, I received an

email from Celentino saying I consented to the use of email and that on behalf of

Greyson Law Center PC, which I had not agreed to do. But I replied to Celentino

that I had received the document that he had served on me, for Greyson Law

Center PC **(Exhibit A)**.

20.     Since I did not fully understand the extent of the lockout and Injunction Order, I called Celentino on Monday, 06/05/2023. He asked me questions regarding Greyson and my involvement with Tony Diab. I told Celentino that **Greyson had NO involvement with Tony Diab**. I told Celentino that the only continued relationship Jayde Trinh and I had with Tony Diab and Dan March, Esq, had ended when Jayde and I were locked out of Greyson's offices on 6/2/23, was that, up to 6/2/23, Jayde and I had continued to oversee the thousands of lawsuits of LPG clients, which were active litigations, answering the many daily emails from LPG clients who wanted to know where were there attorneys and what was the status of their cases.

21.     I told Celentino that he had no idea how difficult it had been for me and Jayde, working at LPG, and that I hated Diab, and that Diab had no link to, or part in, Greyson.

22.     I also warned Celentino, that to my knowledge, the people (Russell Squires, Gary Depew, and Alex Rubin) who were appointed by the Trustee to run Greyson, during the lockout on 6/2/23 onward, were related to Validation Partners LLC and Morning Financial LLC --unsecured creditors of LPG. I told Celentino that Validation Partners and Morning Financial were competitors of Greyson, so they should **not** be running Greyson during the lockout. Celentino did not respond to me about that concern but said he would like to hear more from me and that

maybe we could meet that Wednesday, 06/07/2023. I told Celentino: absolutely.

05/03 status conference

23.    Between Monday (6/5/23) and Wednesday (6/7/23), I received various emails from Celentino's office, including an email from Jonathan Serrano requesting my home address for mailing purposes (which is how I was served the adversary proceeding documents in the mail that I received later in the week) **(Exhibit B)**. Another email I received from Jonathan Serrano requested that he wanted me to hand over a list of all Greyson employees, including their titles and salaries in a three-column spreadsheet **(Exhibit C)**. I thought that was strange since I did not see how that would assist Celentino in their investigation, but I instructed HR to do so.

24.    Jayde and I were locked out of the offices we occupied at Greyson, from 6/2/23 through the sale of LPG assets to Morning Law Group 8/4/23, which ended with my personal belongings being sold off to Morning Law Group as well.

25.    Many of Greyson staff members were emailing Celentino's team-- Jonathan Serrano, Edward Hayes, Christopher Ghio, Trustee personnel etc. – asking them what was going on and when would they be paid by Trustee, since Trustees' field agents (Lori Bicher/Ensley, Gary Depew Alex Rubin, and Russell Squires) had taken over Greyson's operations, as of 6/2/23, and had told the rest of the Greyson staff (not me and Jayde) that the rest of the Greyson staff were to come back to Greyson to continue working as usual.

DECLARATION OF HAN TRINH IN SUPPORT OF GREYSON LAW CENTER PC MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, TO BE PAID BY BANKRUPTCY ESTATE
OF DEBTOR LITIGATION PRACTICES GROUP PC ("LPG")                    10

30

26.    Since there was much resistance from the Greyson employees, Celentino asked me if Jayde and I could relay the Trustee's message to the Greyson's employees if the Trustee's field agents were to gather the Greyson employees together. "Indeed, we will gather them all together and put you both on speak(er) so you and Ja(y)de can express this sentiment to all the employees" **(Exhibit D)**.

27.    I did **<u>not</u>** respond to that email because I felt at a loss and uncomfortable. My thought process was, I was supposed to be locked out of everything related to Greyson and Judge Clarkson's preliminary injunction froze everything at Greyson, so it seemed wrong for me to try to convince Greyson staff to keep working, when they had yet to be paid, and had no commitment that the Trustee would pay them.

28.    On Wednesday, 06/07/2023, I called Celentino again to see when and where we would be meeting that day. I left him a voicemail. When it was getting late in the day, I decided to call his law office, Dinsmore & Shohl LLP, and requested to speak to him or someone from his office. I was told they would pass on my message. Instead of getting a call, I got an email from Celentino directly.

29.    Celentino's email to me stated Celentino wanted to make sure that I knew the Order I had been served on me required me to appear before Judge Clarkson on 06/12/2023 at 1:30PM. **(Exhibit E)**. I responded that I had reviewed all the court documents that I received and that I could not find where it stated that

I was required to appear. I also asked if we were going to still be meeting.

Celentino then emailed back to me, stating that "it looks like you were accidentally left out of the first round of the order. We will fix that for future appearances and depositions. I wouldn't want Judge Clarkson to miss your testimony about you and Ja(y)de being the brainchildren behind Greyson, your anger, and your complete disassociation from Tony in all respects, and your alleged complete lack of involvement in the operations that appear to have seriously hurt clients and creditors. There is no reason for us to meet until after hearing before Judge Clarkson on Monday. His direction will guide further action" **(Exhibit F and Exhibit G)**.  I do not know if that was in response to me not passing on the message to Greyson's staff like he wanted or he had not planned on meeting me at all to begin with.

30.    Greyson staff members were continuously emailing Celentino and the Trustee's Personnel (and copying me), regarding their payroll, wanting to know why they had to continue working if they were not being paid, and informing them that Greyson's operations were falling apart **(Exhibit H, Exhibit I, Exhibit J, Exhibit K, Exhibit L, Exhibit M, Exhibit N, Exhibit O, Exhibit P, Exhibit Q and Exhibit R).** Greyson's HR person had sent multiple emails to Celentino and other Trustee Personnel regarding how to go about payroll and how she should proceed with her duties **(Exhibit S and Exhibit T)** with no response until a couple of days later, she got a response that just stated, "okay".  If other staff members did

receive a response from the Trustee, it was a copy and paste response that attorney

Jonathan Serrano was sending out to everyone **(Exhibit U).**

31.    Celentino emailed one of Greyson's W-2 CA attorneys, Israel Orozco,

asking if Scott Eadie (who was the managing attorney for Greyson) was a lawyer,

and stating that Jayde Trinh (who is an attorney) was not a lawyer, and asking

which lawyer was supervising Greyson Law Center **(Exhibit V)**. Scott Eadie is

Greyson Law Center's Managing Attorney. Attorney Orozco responded with an

explanation as to who Scott Eadie and Jayde Trinh were and their job descriptions

**(Exhibit W and Exhibit X)**. Celentino responded that he would reach out to Scott

and Jayde, but never did so, from the Lockout and Preliminary Injunction Order on

6/2/23, to present **(Exhibit Y)**.

32.    I attended the Bankruptcy Court hearing held 6/12/23.  At the

bankruptcy court hearing on 06/12/2023, Trustee's attorney, Celentino, admitted

**that Greyson was NOT an alter ego of debtor LPG**.  Pages 33-34 of the 6/12/23

court transcript where Celentino admitted this are attached as **Exhibit G** to the

Declaration of Kathleen P. March, Esq. to this Motion.

33.    **Greyson was a direct competitor with LPG, not an alter ego of**

**LPG**.  Greyson was doing the same business as LPG had been doing (representing

consumer clients in defending them against debt claims made by creditors,

including defending those clients in court suits, if necessary).  But Scott Eadie,

Esq, Jayde, I, and the Greyson W-2 and 1099 attorneys, were trying to do that business better than LPG, and other law firms that were doing that business.

34.    It was **unfair competition** by LPG against Greyson, that Trustee Marshack/Celentino/Trustee's field agents locked Scott, Jayde, other Greyson personnel, and me out of Greyson's office, and froze all Greyson's property and data, on 6/2/23 , **then froze even more Greyson systems data on 6/12/23**, when Trustee's attorney Celentino had obtained the 5/26/23 Lockout and Preliminary Injunction Order as to Greyson—by sealed motion, with no notice to Greyson-- by making the **FALSE** allegation that Greyson was the alter ego of debtor LPG (the allegation Celentino admitted was false, at the 6/12/23 court hearing).

35.    LPG's bankruptcy estate has a duty to pay Greyson for the damage that Celentino and Celentino's field agents caused to Greyson, by getting that lockout order and preliminary injunction, by the false "alter ego" allegation, and pay Greyson for the further damage that Trustee caused Greyson, by failing to undo the lockout and by failing to immediately after the 6/12/23 court hearing, unfreeze all the Greyson items and data that Trustee/Celentino/Trustee's field agents had locked using the preliminary injunction—Celentino has never unlocked Greysons' emails to present--so Greyson could regain access to  Greyson's own data, to present.

36.    **Celentino and his Field Agents Seized/locked Greyson's LUNA account and database (which Greyson used to Manage Greyson's clients) on**

**6/12/23—after the Court hearing where Celentino Admitted Greyson was Not an Alter Ego of LPG--and did NOT Restore Greyson's Access to LUNA until 7/7/23, despite Greyson's attorney Plazak demanding on 6/13/23 that Celentino return access to LUNA to Greyson.**  On Greyson's LUNA account, Greyson could only access/see Greyson's clients, and could not see clients of any other law firms that also used LUNA software.

37.    Celentino and Trustee personnel locked Greyson out **completely** from accessing Greyson's LUNA account, **after** the court hearing on 6/12/23, despite the fact that, at the court hearing on 6/12/23, Celentino admitted, to the Court, on the record, that Greyson was NOT an alter ego of LPG.  Celentino had no basis for locking Greyson out of accessing Greyson's LUNA account, after the 6/12/23 hearing, in which Celentino **admitted** Greyson was NOT an alter ego of LPG

38.    I told Celentino several times that on Greyson's LUNA account, Greyson could only access/see Greyson's clients, and could not see clients of any other law firms that also used LUNA software.  Despite my explaining this to Celentino, repeatedly, Celentino refused to allow Greyson to access Greyson's LUNA account, until a month later with a time limit of two weeks to gather all the necessary data before the login credentials provided would expire. Locking Greyson out of its data has severely damaged Greyson.

39.    I told Celentino (through Plazak) that I was personally paying for Greyson's domain and Microsoft Office account and in no way was funding from LPG or its alter egos, contrary to what Celentino was alleging. Celentino not giving Greyson back its Microsoft Office account and domain was detrimental in more ways than one. Most of Greyson's mail was being scanned and received in Greyson's contact@greysonlawpc.com inbox. The rest of the mail was being delivered to Greyson's office at 3345 Michelson Drive, Irvine, CA 92612, Suite 400. At the 6/12/23 hearing, it was agreed upon that Greyson's "mail continue going to the Trustee, but the Trustee immediately reviews all mail that is going to Greyson and immediately turn it over if they feel that it would otherwise maintaining it would interfere with Greyson's operations. They could act as a gatekeeper but do it quickly." Celentino responded, "Quickly, your honor, is fine." Attorney Plazak asked for clarification, "by 'quickly', my assumption would be one to two business days?" The court affirmed, "That's what I think." Celentino stated that if they would be allowed to actually scan it to him, we can do it pretty quick. So it's not a problem" (6/12/23 Hearing Transcript pgs. 245 and 246; full 6/12/23 court hearing transcript is Exhibit G to March Decl). The Trustee interfered with Greyson's operations by not making sure that Greyson's mail was being forwarded, sent to, and received by Greyson. Lawsuits that Greyson clients mailed and emailed to Greyson were never received, checks clients mailed into Greyson were also lost, etc. By not returning Greyson's domain

(greysonlawpc.com), Greyson was not able to update Greyson's website with new contact information in hopes Greyson's clients would be able to reach them since the Trustee did not return Greyson's 48 seized client files to Greyson for a month after the 6/12/23 hearing.

40.    It was **<u>illegal interference with Greyson's LUNA account and data</u>**—**<u>which was Greyson's property</u>**-- for Celentino to lock Greyson out of Greyson's LUNA account on 6/12/23, **<u>after</u>** the hearing on 6/12/23, and keep Greyson locked out of Greyson's LUNA account until 7/7/23.  Celentino's conduct constituted the **<u>conversion</u>** (unlawful taking) of Greyson's LUNA account and data, which I understand is a tort.  Because Greyson was a direct competitor of LPG, Celentino converting Greyson's LUNA account and data, constituted <u>unfair</u> **<u>competition</u>**, by LPG, with Greyson.

41.    Greyson attorney Plazak emailed Celentino on 6/13/23, requesting Celentino to give Greyson access to Greyson's LUNA account and data, which Celentino had finished seizing after Court on 6/12/23.

42.    **It was not until 7/7/23 that Celentino/his field agents handed over temporary login credentials to Greyson, to allow Greyson to re-access LUNA** so that Greyson could access Greyson's client list and manage the clients' services**. Those were temporary login credentials which would expire in two weeks' time.**

43.    Greyson's W-2 attorney employees used Greyson's LUNA account to list and manage the services for the clients that each of those attorneys was servicing for Greyson.  They were also given individual accounts to Phoenix Law Group's LUNA account and individual accounts to Consumer Legal's Debt Pay Pro account by those law firms directly so that they could be able to access information regarding clients they were representing when assigned a case. From my knowledge, they were to leave documentation regarding the status of the case assignment and all communications with the clients in each of those law firms' database so that those law firms would be up to date regarding the status of the lawsuit and be able to provide updates to their clients when necessary. Only Greyson attorneys were given access to those law firms' CRM. Greyson itself and non-attorney staff had no means of access to any clients other than Greyson's.

44.    When Celentino finalized locking Greyson out of Greyson's LUNA account and emails, on 6/12/23, after Court that day, lockout also  included locking Greyson's W-2 attorney employees out of the Greyson LUNA account, preventing Greyson's attorneys from accessing the data on clients they were appearing for in lawsuits. Celentino/his field agents  refused to allow Greyson's W-2 attorney employees to access to any of their client data on Greyson's LUNA account, unless each Greyson attorney sent Celentino and additional people (Alex

Rubin, an employee of Validation Partners LLC) a copy of their current employment agreement/contract with Greyson.

45.    Celentino had no right to demand this because Greyson's contracts with Greyson's attorneys were property of Greyson, and **LPG was a direct competitor of Greyson**.  In addition, Jonathan Serrano, Esq., an attorney of Celentino's firm demanded—though he had no right to demand this—that I give a list of all Greyson employees and what each of them was paid.  Greyson's Human Resources Director gave this list to Serrano, and thereafter, Morning Law Group (winning buyer of LPG's assets at the 8/4/23 bankruptcy court sale of the LPG assets) "poached" (i.e. hired away from Greyson, to work for Morning Law Group) almost all of Greyson's W-2 attorneys, obviously using Greyson's list, which Trustee had no right to give to **Morning Law Group, which was a competitor of Greyson**. Greyson employees were even receiving insurance cards with Resolution Processing LLC, the processing center used by Morning Law Group, as their listed employer around early September 2023.

46.    Morning Law Group was the winning buyer of debtor LPG's assets, at the sale held by the Bankruptcy Court on 8/4/23 and "poached" Greyson's attorneys shortly thereafter. Morning Law Group, Resolution Processing, and Phoenix Law Group have many of the same employees and/or former employees. To my knowledge, former defendants within the adversary, Phoenix Law Group's

Managing Attorney William Ty Carss and Director of Operations Maria Eeyah

Tan are now official employees of Resolution Processing. On 6/2/23, when

Celentino and the Trustee field agents executed the lockout and preliminary

injunction on Phoenix Law Group and Consumer Legal Group--which are LPG's

"alter egos"--these field agents also executed the lockout and preliminary

injunction on  Greyson (wrongful as to Greyson, because by Celentino admitted,

at the 6/12/23 hearing, that Greyson is NOT to be an alter ego of LPG).  Celentino

and field agents took everything of all 3 entities.

47.    The Greyson data seized included all Greyson's protocols for

servicing clients and included all Greyson's trade secrets. Greyson's protocols,

confidential employee and client information, and trade secrets are now being used

by Morning Law Group, the buyer at the 8/4/23 sale, and its processor, Resolution

Processing LLC. One of the Trustee's field agents, Gary Depew, who was present

to seize the assets of all these entities, is the Chief Strategy Officer of Resolution

Processing LLC, which is the B2B company that is servicing buyer Morning Law

Groups' clients, which are the LPG clients that Morning Law Group purchased in

the LPG asset sale held 8/4/23.  Gary Depew is also the Co-Founder and Chief

Operating Officer of Morning Financial LLC. Seizing Greyson's protocols for

servicing clients, and seizing all Greyson's trade secrets, and locking Greyson out

from using Greyson's data, was and is wrongful.  But it is obvious that these field

agents who seized the data that shows Greyson's protocols for servicing clients,

seized the data including all Greyson's trade secrets, which is now conveniently

accessible to Resolution Processing LLC and Morning Law Group, is illegal use of

Greyson's proprietary data, and is unfair competition against Greyson by Morning

Law Group and Resolution Processing.

48.    During the 6/2/23 lockout Celentino's staff seized my computer,

managing attorney Scott Eadie's computer, and all the other computers in the

Greyson offices, and **have never returned those computers  to Greyson, and**

**never allowed Greyson to access Greyson's data in Greyson's computers,  to**

**present.**  Celentino required the Greyson IT staff to give him access to the data in

those computers, and the IT staff did so, including to those computers' "cloud"

storage.  I, Jayde Trinh and Scott Eadie were all locked out of accessing those

computers' "cloud storage" and no longer had the computers themselves, as the

field agents took them all on 6/2/23.  This cut Greyson off from all the data and

documents stored on all those computers, including stored on the "cloud storage"

of those computers.

49.    Celentino only got the 5/26/23 Lockout and Preliminary Injunction

Order against Greyson, based on the **false allegation** that Greyson was the alter

ego of debtor LPG.  When Celentino admitted, at the 6/12/23 hearing, that

Greyson was NOT the alter ego of LPG, Celentino **had a duty to immediately**

**UNDO the lockout order and UNDO the preliminary injunction**, as to

Greyson.  (Discussed in March Decl to this Motion).  But instead of requesting the

Court to UNDO the Lockout and Preliminary Injunction, as to Greyson, Celentino

kept Greyson locked down for months, and for some things,  kept Greyson locked

down  to present.

50.    My understanding, from attending the 6/12/23 hearing, was that all

Greyson personnel, including Scott, Jayde, and I, who had been locked out of our

offices at Greyson, on 6/2/23, were allowed to return to our offices at Greyson, and

that Trustee/Celentino/Trustee's field agents, would give Greyson back access to

Greyson's bank accounts, payment processors, email, client files, domain, and to

everything else that Trustee/Celentino/Trustee's field agents had frozen, on 6/2/23.

**But this did NOT happen, to present.**

51.    Attorney Douglas Plazak represented Greyson at the 6/12/23 hearing.

The day after the 6/12/23 hearing, Celentino emailed Plazak, demanding that

Plazak show Celentino signed retention agreements for our 48 clients that had

moved to Greyson, from LPG and other firms, before he would hand over the 48

client files (which had been seized in the Lockout of Greyson on 6/2/23) back to

Greyson **(Decl Plazak)**. Attorney Plazak responded stating that the LPG

bankruptcy estate had seized, and therefore had access to, Greyson's LUNA

Customer Management Relationship account, while Celentino/his field agents, had

frozen/locked Greyson out of accessing Greyson's LUNA account, with the result

that Celentino had the capability to confirm the status of the Greyson's clients, while Greyson did not have access to do so.  Plazak requested Celentino to Trustee to immediately return to Greyson, Greyson's 48 client files which Celentino's field agents had taken. **(see Decl Plazak to this Motion)**. But Celentino delayed returning the 48 client files for a month, with the result that Greyson lost 22 of the 48 clients, because the clients and Greyson could not contact each other for a month.

52.    At the 6/12/23 hearing, Celentino had stated, "They [Greyson] have nothing to do with the **<u>transferred operation of LPG that's in the hands of Phoenix</u>**. And they can do with those 48 clients with the Court's blessing—it would be the trustee's request—they can do with those 48 clients and the 90 employees and the 28 attorneys whatever they wish" **(Transcript of 6/12/23 Hearing pg. 228 is attached as Exhibit G to March Decl).** "We don't want to manage Greyson. **<u>We don't want any interaction with Greyson.</u>** We will not pay the payroll of Greyson. And we want that to be clear because that's what the TRO says, there is to be no movement of monies" **(Transcript of 6/12/23 Hearing pg. 227).**

53.    But what Celentino said at the 6/12/23 hearing was NOT how he acted.   After the 6/12/23 hearing Celentino finalized locking Greyson out of Greyson's LUNA account, which was the software Greyson used to keep track of and service its clients.  Doing that made it even more difficult for Greyson to try to

operate.   Celentino/his field agents actions toward Greyson, after the 6/12/23

hearing, were aimed at keeping Greyson shutdown—so Greyson could not

compete effectively with LPG/Phoenix, and so Phoenix could take Greyson's 22

high fee clients.  Celentino obviously gave Phoenix access to Greyson's 48 client

files, and did not give those files back to Greyson, until Phoenix had taken those of

Greyson's clients that Phoenix wanted (the 22 high fee clients).

54.    Trustee/Celentino/Trustee's field agents **prevented Greyson from**

**operating for 2 months, after 6/2/23, by seizing, then not returning, Greyson's**

**48 client files to Greyson  for a month, never returning Greyson's domain to**

**present, never returning  Greyson's access to Greyson's emails to present,**

**seizing on 6/2/23 Greyson's computers, and never returning Greyson's**

**computer/their data to Greyson to present, never returning access to**

**Greyson's Microsoft Office account to present, and never forwarding**

**Greyson's mail (which Celentino had the US postal service send to Celentino)**

**on to Greyson,  to present.** The conduct of Celentino/his field agents toward

Greyson was certainly negligent.  But that conduct was more than just negligence,

that conduct constituted **unfair competition by LPG, against Greyson, a direct**

**competitor of LPG.   It is my understanding that unfair competition is illegal.**

Celentino had no right to prevent Greyson from accessing everything that the

Trustee seized and/or froze on 6/2/23, and had no right to seize Greyson's LUNA

account, which Celentino locked Greyson out of on 6/12/23, **after** the 6/12/23

Court hearing.  The 5/26/23 Lockout and Preliminary Injunction order were

wrongfully obtained by the Trustee, against Greyson, by the false allegation that

Greyson was an alter ego of LPG, when Greyson was a direct competitor of LPG,

not an alter ego of LPG. Celentino/field agents locking Greyson out of LUNA and

Greyson's emails on 6/12/23, after Celentino admitted to the Court that Greyson

was not an alter ego of LPG, was even more wrongful, an Celentino/his field

agents **have never let Greyson back in to Greyson's emails to present**.

55.    It was additionally wrongful that Celentino/field agents demanded that

Greyson prove Greyson did not use any listed defendant's money to purchase any

of Greyson's property/systems/email, domain, etc. that Celentino had frozen on

6/2/23 and 6/12/23, before Trustee would restore Greyson's access to those items

**(see Decl Plazak to this Motion)**.  Even though I had proof  that I was paying for

Greyson's domain ($30.16/month), virtual mailbox ($74.19/month), MyFax

Services ($12/month), and Microsoft accounts ($2,312.25/month) with my own

money, Celentino kept disputing that Greyson had purchased its own domain since

he alleged (falsely as I bought that domain, and was paying the monthly fee for

that domain) that any monies used by Greyson or even by me personally were

stolen from LPG or derived from LPG since it was yet to be determined if I had

provided any value to LPG in the first place.  Celentino's position was that if

Greyson wanted access to its domain and emails, Greyson would have to wait until

the Trustee offered to sell those back to Greyson, or Greyson had to give in to

(wrongful) demands made by Celentino/field agents. Celentino/his field agents

agents did not even return to Greyson, boxes of blank Greyson business checks,

which were clearly Greyson's and were clearly not property of debtor LPG, which

Celentino's field agents had seized on 6/2/23.

56.    The way that Celentino and Trustee's field agents acted was **an abuse
of power**. Greyson must properly be allowed and paid the administrative claims

against the LPG bankruptcy estate, that Greyson here moves for the $300,633 of

damages Celentino and Trustee's field agents caused to Greyson, and for the

$5,134,000 that LPG alter ego Phoenix owes Greyson, pursuant to the post-

petition contract for Phoenix to pay Greyson $2,000 for each lawsuit where

Greyson attorneys appeared for Phoenix, defending Phoenix consumer debtor

clients in those lawsuits.

57.    Other than Plazak's communications with Celentino, as Greyson's

administrator, I was the Greyson employee who had to repeatedly request

Celentino/his field agents to return / return access to, everything belonging to

Greyson, which Celentino/his field agents had seized/frozen and improperly

refused to promptly return to Greyson that the Trustee had improperly taken or

frozen. We were so desperate to get back access that I requested Celentino to allow

Greyson to access 4 out of  Greyson's 100+ email accounts,  for 24 hours.

Celentino/his field agents still turned down that request, unless Greyson agreed to

follow Celentino's demanded protocols—which Celentino had no right to demand.

Celentino denied Greyson access, **even AFTER the 06/12/2023 hearing (Exhibit CC).**

58.    Creating protocols for Greyson and their employees to follow, and demanding those protocols be followed, is contrary to Celentino's statement at the 6/12/23 court  hearing, that:  "I want to be clear. We don't want anything to do with Greyson" **(6/12/23 Hearing Transcript pg. 249)**.

59.     With no access to Greyson's emails, domain, clients, payment processors, etc., Greyson was pretty much unable to operate, following the aftermath of Celentino and the Trustee's personnel reckless decision to withhold and not return all access. With Celentino denying Greyson and Greyson's W-2 attorneys to access Greyson's LUNA account, which Greyson used to manage clients, from 6/12/23 to 7/7/23, Greyson was **severely crippled**.

60.    Celentino/his field agents severely damaged Greyson by Celentino, causing Phoenix NOT to pay Greyson for the services ($2,000 per case) that Phoenix had contracted to pay to Greyson, to have Greyson attorneys represent Phoenix's consumer debtor clients in lawsuits.  That contract and work was after 3/2/23, the date on which LPG filed bankruptcy, and so was post-petition contract/services.   This includes that Celentino refused to make any payment of Greyson invoices **(Exhibit C)** for services Greyson attorneys performed for Phoenix, which Greyson properly billed and was in the middle of billing Phoenix for. Those invoices remain unpaid to present.  Phoenix Law Group and Consumer

DECLARATION OF HAN TRINH IN SUPPORT OF GREYSON LAW CENTER PC MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, TO BE PAID BY BANKRUPTCY ESTATE
OF DEBTOR LITIGATION PRACTICES GROUP PC ("LPG")                                             27

27

Legal Group who were both found to be an alter ego of LPG, so the LPG

bankruptcy estate should have paid those invoices for post-petition services but did

not do so.

61.    Unable to operate, Greyson had to make the difficult decision to do a

mass layoff. The few employees that Greyson rehired, after 6/18/23, took a

massive pay cut so Greyson could try to survive what Celentino/his field agents

had done to Greyson basically so that the firm could sustain itself.

62.    Celentino said, at the 6/12/23 hearing, that Greyson could do whatever

we wish with the 90 employees and 28 attorneys of Greyson.  That was contrary to

Celentino having told me, on 6/2/23, that I was required to have all Greyson

employees return to the office to work, where the Trustee's field agents announced

in a meeting with Greyson employees that they, Lori Bicher, Alex Rubin, Gary

Depew, and Russell Squires, had taken over Greyson and operations was to

continue under them.  Those Greyson employees that worked, from 6/2/23 until

6/12/23, at Celentino's instruction never got paid for that work. Cutting access to

Greyson's phone system, emails, CRM account, etc., throughout the lockout order,

which crippled Greyson as a business. Greyson employees were sitting around

doing nothing because they were not instructed what to do, how to proceed, and

Greyson's usual operations were compromised since access was being taken away

one by one. Plenty of Greyson employees spoke directly and emailed the Trustee,

Trustee personnel, and the field agents asking for answers, guidance, and updates

with no real update other than being often being told that they wish they could tell the employees the whole truth and that they felt bad for the employees who have been misled by Greyson's management team.

63.    Greyson's W-2 attorneys could not communicate with Greyson or with the clients they were appearing for, due to Celentino having locked them out of Greyson's emails, website, and LUNA access. The only updates they were able to get were by contacting Greyson's HR Department. But being attorneys, they could not just stop working on the lawsuits assigned to them.  They contacted Celentino/his personnel regarding what they were supposed to do since they wanted to make sure they did not violate the lockout order. They were informed to continue as usual with their representation of clients. Celentino had advised that the Celintino/his field agents would contact all attorneys who were handling LPG/Phoenix client files over the next 24 hours to either offer them some kind of deal to continue working directly for LPG/Phoenix, or they would be advised to cease all work on such files. They did no such thing. They kept stating that it was not their intention for the attorneys to work pro-bono and they did plan to get them paid. Requiring a protocol that Greyson's attorneys had to follow to gain traction regarding getting their pay and legal expenses such as sending an email of all the clients they were currently representing, a list of how many lawsuits they were currently working on, an expense report of what they have and had to pay out of pocket to cover legal expenses such as Nationwide Coverage, filing fees, etc. They

continued having such conversations and delayed direct reimbursements and payments to the attorneys until official sale date 8/4/23, which as of that date, the clients the attorneys represented now belong to Morning Law Group. What was really going on was that Celentino was demanding Greyson to supply Celentino with (and Greyson did so) the list of all Greyson employees and what they were paid, so that Phoenix, and later Morning Law Group (winning bidder at the LPG asset sale) could use that Greyson data to "poach" (aka hire those employees away from Greyson, to work for Phoenix or Morning Law Group).

64.    Greyson took a huge loss due to the Trustee's mishandling of Greyson's operations during the lockout order, improper at to Greyson, because it was obtained based on **<u>false allegations</u>** of Celentino's  declarants that Greyson was an alter ego of LPG. While Greyson was reeling from the damages created by the Trustee's carelessness, Morning Law Group began reaching out to Greyson's former attorneys one by one negotiating 1099 and W-2 contracts with them. Some attorneys were hired to just finish up their already assigned cases and some attorneys were hired to finish up their assigned cases and take on new cases. They were also told in their contract, which also had a no competition clause, that they were not allowed to work with any named defendants within the bankruptcy adversary; essentially cutting Greyson's ties with its former attorney network completely. Since Jayde and I were named defendants at the time, the connection that we had with our attorney network that we built together was severed as well.

65.     Although Morning Law Group won the bid for assets, the Court and

Trustee requires them to follow certain procedures. One of them would be

informing their newly obtained clients of their right to opt in or opt out of being

represented by Morning Law. The original notice that Morning Law sent out to the

clients got sent to Greyson's clients as well, which created mass confusion for the

clients and questions if Greyson had any affiliation with LPG or Phoenix. Not to

mention the way Morning Law's Opt-Out response was worded. "Thank you for

contacting Morning Law Group, PC., the court-approved interim operator of

Litigation Practice Group, Phoenix Law Group, and certain other related law firms

(collectively, the "Previous Firms.")" **(Exhibit DD)**. "If you complete the opt-out

process: 1. You will no longer be represented by Phoenix Law Group, PC,

Litigation Practice Group, PC or one of its affiliated entities (if applicable),

including without limitation Greyson Law Center PC, Oakstone Law Group PC,

Phoenix Law Group PC, or Gallant Law Group PC" **(Exhibit EE)**. There was no

need to mention Greyson Law Center in that context or even at all.  A lot of clients

emailed, called, and left voicemails questioning the legitimacy of Greyson and

demanded clarity **(Exhibit FF and Exhibit GG).** Clients that were in the process

of being onboarded chose to not follow through with Greyson's representation and

the ones that did decide to follow through had to be reassured extensively.

66.     The official date of the sale was 8/4/23, but when I went to the

Greyson office on 8/1/23 with other Greyson employees to attempt to gather my

personal belongings and to prepare to move to a different office space, we

discovered that we were completely locked out of Greyson's offices. We

immediately notified Attorney Plazak, who asked Celentino to let Greyson into the

locked Greyson offices to remove Greyson property.  Celentino responded

Greyson would not be allowed to move anything out of Greyson's office space

because as far as their assessment and review of records, money that came to

Greyson was sourced from theft of money and resources of LPG. That was totally

false, and Celentino had no evidence for that allegation.  He demanded that

Greyson demonstrate a source of funds from elsewhere **(see Decl Plazak)**. This

goes against what Celentino stated multiple times at the 6/12/23 hearing. "I don't –

I have no interest in whether they appear at the premises or they don't appear at

the premises. They're in a separate suite" **(Transcript of 6/12/23 Hearing pg.**

**228)**. "They're in a different suite. We have no interest in preventing them from

being in their suite" **(Transcript of 6/12/23 Hearing pg. 246).** "They have their

own fobs. They know how to get in and out" **(Transcript of 6/12/23 Hearing pg.**

**249)**.

    67.    Greyson did not receive access to any of Greyson's clients' files until

Friday, 07/07/2023 after business hours –**<u>35 DAYS after the Lockout Order</u>**

**(Exhibit GG)**. We were not able to attempt to contact any of our clients until

Monday, 07/10/2023. From that date, it took us about a month to be able to get a

hold of all our clients.

DECLARATION OF HAN TRINH IN SUPPORT OF GREYSON LAW CENTER PC MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, TO BE PAID BY BANKRUPTCY ESTATE
OF DEBTOR LITIGATION PRACTICES GROUP PC ("LPG")                                                                 32

32

68.   By then, 22 (Total amount of fees the 22 clients would have paid Greyson if they had not moved to Phoenx is $300,633.62) out of 46 clients (Total value: $454,726.73) that were returned to us chose to no longer be represented by Greyson, due to those 22 clients not being able to get a hold of us for over a month (and vice versa, because Celentino locked Greyson's email).   Phoenix (which Celentino was running as being an "alter ego" of debtor LPG) took most of the 22 of the 46 Greyson clients that were the high paying clients, during the month that Celentino had siezed, and refused to return to Greyson, the 48 Greyson client files that Celentino's field agents seized at Greyson's office, on 6/2/23.  During that same month, Celentino kept Greyson shut out from Greyson's emails,  and kept Greyson locked out of Greyson's LUNA account (which was Greyson's data base for all Greyson's clients).  It is a miracle that Greyson retained any of the 46 Greyson clients, under these circumstances. We were only able to retain the 24 low fee Greyson clients (Total value: $154.093.11).

69.   If the 22 clients Greyson lost had continued with Greyson's representation, Greyson would have collected a total of $300,633.62 from those 22 clients. The itemization of these 22 "high fee" clients, showing the fees each would have paid, which total $300,633.62, is **Exhibit HH** hereto.  The itemization of the 24 "low fee" clients, showing the fees each would have paid is **Exhibit II**. Because Celentino had seized all of Greyson's client files and client data, Phoenix was able to take the "high fee" Greyson clients, which is obviously what

DECLARATION OF HAN TRINH IN SUPPORT OF GREYSON LAW CENTER PC MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, TO BE PAID BY BANKRUPTCY ESTATE
OF DEBTOR LITIGATION PRACTICES GROUP PC ("LPG")                                                    33

33

happened. That was unfair competition against Greyson, because LPG/Phoenix were and are direct competitors of Greyson.

70.    In addition, due to Trustee's adversary proceeding suing Greyson as an alter ego of debtor LPG—an allegation Celentino admitted was false, at the 6/12/23 hearing-- certain vendors refuse to work with us **(Exhibit JJ)**. Even though Celentino admitted at the 06/12/2023 hearing that Greyson was not an alter ego of LPG, our payment processor at the time, Payliance, dropped us due to not wanting to have anything to do or with LPG or related to LPG. It took Greyson six weeks to find new payment processors that were willing to work with us. This means that we could not even process any payments made by Greyson clients, even after Greyson signed contracts with those Client and new Clients, obligating the Clients to pay Greyson.

71.    Right before the Lockout Order and Preliminary Injunction was executed on Greyson on 6/2/23, Greyson was receiving lists of lawsuits, as to which Phoenix Law Group had contracted with Greyson, for Greyson to supply Greyson's W-2 attorneys to work on, for Phoenix, for payment of $2,000 per lawsuit, to be paid to Greyson. Phoenix Law Group owed Greyson the contracted $2,000 per lawsuit, for that work, so that Greyson could pay the Greyson W-2 attorneys and Greyson's operations.

72.    To date, Phoenix has paid ZERO to Greyson, because Celentino has not permitted Phoenix to pay Greyson for **<u>any</u>** of the work done by Greyson

attorneys, which Phoenix contracted to pay Greyson for. (Han Trinh Decl).

Greyson needed those payments, per contract, so that Greyson could pay the

Greyson W-2 attorneys.

73.    Pursuant to Phoenix's **<u>post-petition</u>** contract with Greyson, for

Phoenix to pay Greyson $2,000 per lawsuit, to use Greyson attorneys to defend

Phoenix clients in lawsuits, Phoenix owes Greyson **<u>$5,134,000</u>**, NONE of which

Celentino has allowed Phoenix to pay to Greyson:

1.    Greyson's Texas and Oklahoma attorney worked, post-petition, on

approximately 1,500 lawsuits for Phoenix Law Group, pursuant to

Greyson's contract with Phoenix Law Group. 1,500 x $2,000 =

$3,000,000.

2.    One of Greyson's California attorneys worked post-petition, on

approximately 140 lawsuits for Phoenix Law Group, pursuant to

Greyson's contract with Phoenix Law Group.   140 x $2,000 = $280,000.

3.    Greyson's Louisiana attorney worked post-petition, on approximately 375

lawsuits for Phoenix Law Group, pursuant to Greyson's contract with

Phoenix Law Group. 375 x $2,000 = $750,000.

4.    Greyson's Florida attorney worked post-petition, on approximately 250

lawsuits for Phoenix Law Group, pursuant to Greyson's contract with

Phoenix Law Group. 250 x $2,000 = $500,000.

**5.** Greyson's Nevada and Arizona attorney worked post-petition on approximately 20 lawsuits at the time, for Phoenix Law Group, pursuant to Greyson's contract with Phoenix Law Group. 20 x $2,000 = $40,000.

**6.** Greyson's West Virgina attorney worked post-petition on approximately 30 lawsuits for Phoenix Law Group pursuant to Greyson's contract with Phoenix Law Group. 30 x $2,000 = $60,000.

**7.** Greyson's Illinois, Iowa, and Arkansas attorney worked post-petition on approximately 150 lawsuits for Phoenix Law Group, pursuant to Greyson's contract with Phoenix Law Group. 150 x $2,000 = $300,000.

**8.** Greyson's Managing Attorney, Scott Eadie, worked post-petition on approximately 102 lawsuits for Phoenix Law Group, pursuant to Greyson's contract with Phoenix Law Group. 102 x $2,000 = $204,000.

74.    Just for these attorneys' work alone, Greyson is owed **$5,134,000** by Phoenix Law Group—which Celentino had taken over running as being an alter ego of debtor LPG.  But when Celentino took over running Phoenix Law Group (as being an alter ego of debtor LPG), Celentino refused**, wrongfully,** to pay Greyson the  contracted for $2,000 per lawsuit, for **any** of the lawsuits where Greyson attorneys been hired to litigate the suits for Phoenix Law  Center, for $2,000 per lawsuit to be paid to Greyson by Phoenix Law Center.

75.     Greyson's accounting department had sent Phoenix over 2000 invoices ($2,000 per lawsuit), for this work, pursuant to the Greyson-Phoenix contract, before the 6/2/23 lockout;  and was preparing to send the rest of the invoices to Phoenix, but were prevented from doing so because on 6/2/23, Celentino/his field agents seized all the computers from Greyson's offices, locked Greyson out of accessing the data on those computers (including locking Greyson out of accessing the "cloud" backup for that data, which cut off Greyson's ability to complete sending invoices.

76.     Celentino demanded that each Greyson attorney email Celentino a list of all the clients/lawsuits each Greyson attorney was working on for Phoenix, for the $2,000 per case fee to be paid by Phoenix to Greyson.  Greyson could not send those lists, because Trustee field agents locked Greyson and Greyson's W-2 attorney employees out of Greyson's data bases and emails, including locking Greyson and its attorneys out of Greyson's LUNA account, as explained supra.  Plus, Celentino and the Trustee's field agents have never allowed Greyson or Greyson's attorneys to access Greyson's emails, after Celentino and the filed agents locked those emails, despite multiple demands for access.  The accounting department, Greyson's W-2 attorney employees, and I would have been able to provide exact data if I had been given back access to Greyson's systems, but Celentino and the Trustee's field agents, wrongfully refused to allow Greyson to access Greyson's data bases, to present.

77. For all these reasons, Greyson should be allowed an administrative claim of not less than **$5,134,000**, as itemized immediately supra, to be paid by debtor LPG's bankruptcy estate. That is in addition to the **$300,633** of fees itemized supar, that Greyson lost because Celentino's improper delay caused Greyson to lose the 22 "high fee" Greyson clients, to Phoenix.

78. As Greyson's Motion requests, the Bankruptcy Court should order Trustee to immediately pay that **$5,134,000 + $300,633 =** **$5,434,633** administrative claim to Greyson, all which damage is due to **wrongful/illegal post-petition** conduct by Trustee/Celentino/Trustee's field agents. I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed at Orange, California on November __17__, 2023.

HAN TRINH

DECLARATION OF HAN TRINH IN SUPPORT OF GREYSON LAW CENTER PC MOTION FOR
ALLOWANCE AND PAYMENT OF ADMINISTRATIVE CLAIM, TO BE PAID BY BANKRUPTCY ESTATE

38

58
CS CamScanner

Exhibit A



Exhibit B



Exhibit C



Exihibt D



Here's the message that we want to get to the Grayson employees, and no other:

"The Bankruptcy Court has asked for all of us to cooperate with the Trustee pursuant to the Bankruptcy Code and to turn over all books, records, logins, passwords, and related data of the business known as Greyson until further order of the Court."

Perhaps Jade can read that same message to all the employees.

Indeed, we will gather them all together and put you both on speaker so you and Jade can express this sentiment to all the employees.

Exhibit E



Exhibit F



Exhibit G



Exhibit H



Exhibit I



Exhibit J



Exhibit K



It was announced by Lori that she was affiliated with LPG, Phoenix and Greyson. She told us that she and her team would be taking over the business. Why are we being treated like we are Phoenix or even LPG? These comments are absolutely not true and unfounded. The whole office and my team are wondering why we are being treated as if we are one company.

The whole office has deep loyalty to Han and that is why we all left different law firms to follow her at Greyson Law Center PC.

The time spent working at LPG was very traumatic and honestly, I am grateful that we do not work there anymore, that is partly why we left.

After Loris announcement, my team is in fear again and they have expressed that they are considering finding other work if we are in any way being forced to affiliate with

Exhibit L



any way being forced to affiliate with Phoenix or LPG.

Considering my history with LPG and working directly under Eeyah Tan, I hope you can understand that I refuse to work with anyone other than our Greyson team and Han.

It breaks my heart to even say this but I will not put myself back into that abusive situation. I love what we have started and built at Greyson but if I am forced to work with Phoenix or LPG I will have to resign in order to protect my own health.

My team completely refuses to work with anyone else but Han and for Greyson Law Center PC.

My team has told me that this makes them so uncomfortable they do not want to come into office.

Exhibit M



I have reassured my team and myself to the best of my ability that maybe Lori got her words mixed up and she was nervous. We are not going to be working with anyone but Greyson and Greyson clients.

Having some clarification on why Phoenix and LPG were brought up in the conversation of "taking over the business" of Greyson would really put myself and my team at ease.

Without pay and without clarification as to where our Admin, Han is, we are extremely anxious and completely lost.

We need answers.

A quick response would be greatly appreciated.

Thank you,
Courtney Kelley

EXHIBIT N

To: christopher.hartmon@dinsmore.com x | muchlaw@marshackhayes.com x | ehays@marshackhays.com x | jonathanstrauss@dinsmore.com x

Clarification on Greyson Law Center Status

Hello,

On Monday morning, I was informed by Lori that Greyson Law Center had been included in with Phoenix Law Group and Litigation Practice Group under the control of a trustee, Richard Marshack. It was my desire to comply with what seemed to be a serious situation and information that seemed to be, on its face, without issue. That said, I have concerns and questions that I would like to confirm directly with the trustee and his team.

I would like to confirm the status of Lori as a representative of the trustee, as I have relied on her word in good faith so far. I would also like to confirm if Gary DeFevre and Russ Squires are in charge as it was described to me. My previous knowledge of both Gary and Russ is in relation to their involvement with the Litigation Practice Group, in what I had come to understand was an adversarial relationship. Additionally, Alex Rubin has, to my knowledge, been reviewing our systems and equipment. Alex Rubin was previously associated with both Gary and Russ during that same period to the best of my knowledge. Considering the initial premise that was relayed to me, that this is in relation to the matter of bankruptcy of Litigation Practice Group, would appreciate confirmation regarding the role of each individual from the trustee directly.

I have reported to Han Trinh for my entire tenure at Greyson Law Center, and her absence has been a glaring one. and felt keenly. It was jarring to learn that Gary and Russ would be in charge, as Scott Eadie is the Managing Attorney and Han is our administrator, for that to change with such immediacy has been shocking to me. The firm is effectively crippled without their involvement, and for those in the office especially Han. At the time I was hoping more information would be given on the relationship between how Gary, Russ, Han, and Scott would work. Now I am concerned that Han may not be involved at all.

While the team in the office has done its best to comply, Han is indispensable to the daily operations of the firm, and I believe that at this stage it may cause a complete breakdown without her. Morale is down among the team and with each day that goes on without vision or instruction from above, the firm's ability to function will degrade. I am worried that Greyson will begin losing personnel as a result of this churn. Already I am being asked about this Friday's paycheck by employees and have seen emails from concerned employees regarding the current situation. Some individuals still have not been paid their previous check as well.

All of these things together have left me confused, weary, and unsure of what the truth of the current situation is. Is this a temporary state of affairs or is it permanent? Are Gary and Russ now owners of the company? What is the current status of Han Trinh and Scott Eadie in relation to Greyson Law Center? I appreciate your time in reviewing this matter so I know how to proceed.

Sincerely,

Reid Wood
Client Services Director
Greyson Law Center PC
www.greysonlawpc.com

Draft saved at 10:48 AM

Exhibit O



Exhibit P



and Han have my full support. I refuse to be affiliated in any way with Phoenix or LPG. I can speak for myself and the others when I say that we all have had the option to work at other law firms in the industry, but we all choose to stay because of Han. I believe what is happening is wrong and unjust.  If you had prior knowledge that funds were going to be to frozen on Friday June 2nd, why would you come in and demand that we work on Monday June 5th? I also think it's unusual how you expect us to work "business as usual" but restrict us of our Luna access? I do not feel comfortable working under these conditions and I especially feel uncomfortable working without our Admin, Han.

Where is our Admin, Han? Where is Scott? Will we be getting paid on Friday?

Looking forward to your urgent response.

*Sincerely,*

**Aly Housel**
Quality Assurance
**Greyson Law Center PC**
www.greysonlawpc.com

Exhibit Q

I, Aly Housel declare, on Monday June 5th, 2023, numerous people came into the Greyson Law Center office, unannounced by my leadership team. They claimed that they were the trustee of the chapter 11 bankruptcy from a different company called "LPG". They told everyone that was in office that they would be taking over the company, and we should just resume work as normal. These same "trustees" restricted us of our zoom and CM access resulting in us being unable to operate as normal. The trustees informed the office that we should continue to work as normal even under these conditions. Greyson employees were expecting a paycheck for the hours that we worked to be deposited on June 9th, 2023. No one in the office received their check due to the "trustees" placing a hold on our checks. I believe that this is wrong and I'm demanding that I recieve the paychecks that I am owed.

Sincerely,
Aly Housel

Exhibit R



Exhibit S



Exhibit T



Exhibit U



Exhibit V



Exhibit W



**You**                                                    7:37 AM
To Celentino, Christopher

Scott is a lawyer: Bar No. 108345. Jayde Trinh is also a lawyer:
Bar No. 340042. Jayde serves as the supervising attorney for
Greyson, tasked with overseeing client assignments and assisting
our attorneys in whatever needs they may have, such as
coordinating assignments between attorneys, following up on
clients and providing client information if a client is having
difficulty locating that information, among other roles she
assumes. Han Trinh on the other hand is not an attorney. She
oversees much of the administrative tasks within the firm, as well
as the day-to-day functions of the work that our attorney staff and
represents handle.

Sincerely,

**Israel Orozco, Esq.**
**Greyson Law Center PC**

Exhibit X



Without Scott and Jayde at the moment, there is no one really supervising the attorneys, yet they are competent attorneys and continue to do what is best, for the clients, always.

Sincerely,

**Israel Orozco, Esq.**
**Greyson Law Center PC**

Exhibit Y



Exhibit CC



Exhibit DD



From: **optout@morninglawgroup.com**
<optout@morninglawgroup.com>
Date: Wed, Sep 6, 2023 at 7:25 PM
Subject: MLG: Opt-Out Acknowledgement
To:

Dear

Thank you for contacting Morning Law
Group, P.C., the court-approved interim
operator of Litigation Practice Group, Phoenix
Law Group, and certain other related law
firms (collectively, the "Previous Firms.")

We respect your interest in opting-out of your
legal services agreement with the Previous
Firms.  Please be advised that no further
payments from you will be processed while
you complete the opt-out process.

Please review the below information carefully
to understand what opting-out means with
regard to your current legal matters. If you
complete the opt-out process:

Exhibit EE



complete the opt-out process:

1. You will no longer be represented by Phoenix Law Group, PC, Litigation Practice Group, PC or one of its affiliated entities (if applicable), including without limitation, Greyson Law Center PC, Oakstone Law Group PC, Phoenix Law Group, PC, or Gallant Law Group, PC.

2. Your legal representation will not be transferred to Morning Law Group, P.C.

3. You will not have any attorney-client relationship with Morning Law Group, P.C., and Morning Law Group, P.C. will not be your attorney in any legal matters.

4. If you are in a pending lawsuit or have received a summons, there may be immediate deadlines that require attention. You should immediately seek new counsel to ensure that your rights are protected.

5. Creditors and debt collection agencies will have the right to contact you directly again until you hire new counsel.

Unfortunately, we are not allowed to advise

Reply

Mail   Calendar   Feed   Apps

Exhibit FF



On Fri, Sep 15, 2023 at 12:41PM ▉▉▉▉
                                    wrote:

Hi all,

I just signed (yet another) opt-out form from
Phoenix Law today, they've sent many, I guess as a
way to make it hard for me to opt out.

I just noticed, re-reading it, that it mentions
Greyson Law as an "affiliated entity" of LPG, and
thus terminates any agreement with you, too??

I'm dealing with an HVAC that just exploded on me
for the 2nd time this summer, flooding my garage.

I don't have time for any more of Phoenix Law's
bullshit.  They know I want to opt out.  I didn't have
time to read each word on this 53rd opt-out form
they've sent.

Can you please review the attached doc and let
me know if I just opted out from your services, too,
accidentally, because these assholes won't stop
sending me opt-out correspondence they claim I
need to sign in order to opt out Phoenix?

Thanks,

Exhibit GG



5:47

**From:** Kripotos, Gina
**Sent:** Friday, July 7, 2023 4:16 PM
**To:** 'dplazak@rhlaw.com' <dplazak@rhlaw.com>
**Cc:** Celentino, Christopher
<christopher.celentino@dinsmore.com>; Serrano,
Jonathan <Jonathan.Serrano@Dinsmore.com>;
Lissebeck, Yosina
<Yosina.Lissebeck@Dinsmore.com>; Ghio,
Christopher <Christopher.Ghio@Dinsmore.com>
**Subject:** Data Access- Greyson Client Files

Doug,

Please see the login information below. This
should provide you with access to the data re
client files that you requested via GLC Admin. The
login credentials will be valid for 2 weeks and then
they will expire. Please let us know if you have any
questions.

Luna CRM: https://gs.lunapps.co/

Login: dplazak@rhlaw.com

Password:

Best,

Dinsmore

**Gina Kripotos**
Associate

Dinsmore & Shohl LLP ● Legal Counsel

Exhibit HH

| ProfileId | FirstName | Status | EnrolledDate | Total Fees |
|---|---|---|---|---|
| 5387654612 | Alfred | enrolled | 5/10/2023 18:19 | $ 4,597.02 |
| 1246642515 | Bartholomew | enrolled | 5/25/2023 14:17 | $ 6,021.41 |
| 3269813154 | Clarence | enrolled | 5/1/2023 22:07 | $ 62,996.60 |
| 4544725843 | Daniel | enrolled | 5/10/2023 18:13 | $ 11,917.68 |
| 8876957576 | Danita | enrolled | 5/10/2023 18:32 | $ 4,655.20 |
| 413418372 | Darlene | enrolled | 4/6/2023 | $ 2,663.68 |
| 1399378542 | Debora | enrolled | 5/1/2023 10:03 | $ 5,821.74 |
| 6329188764 | Derrick | enrolled | 5/10/2023 18:16 | $ 4,297.02 |
| 5523493412 | Florine | enrolled | 5/10/2023 18:13 | $ 12,843.72 |
| 5741452558 | Frank | enrolled | 5/11/2023 22:17 | $ 30,752.22 |
| 7584699667 | Hiwot | enrolled | 5/11/2023 18:49 | $ 16,866.24 |
| 542446612 | Karen | enrolled | 5/24/2023 | $ 9,506.16 |
| 8425611557 | Keith | enrolled | 5/10/2023 18:19 | $ 32,134.25 |
| 269301131 | Kimberly | enrolled | 3/20/2023 | $ 4,239.01 |
| 2149467143 | Linda | enrolled | 5/19/2023 19:25 | $ 7,083.72 |
| 9546992658 | Michele | enrolled | 5/25/2023 19:18 | $ 16,806.75 |
| 4879471332 | Nikki | enrolled | 5/31/2023 19:20 | $ 3,051.16 |
| 5777787158 | Quienten | enrolled | 5/11/2023 22:16 | $ 17,654.58 |
| 3834594677 | Roy | enrolled | 5/10/2023 18:20 | $ 20,880.00 |
| 9968853499 | Sung | enrolled | 5/19/2023 16:09 | $ 5,985.08 |
| 1726926848 | Susan | enrolled | 6/2/2023 16:46 | $ 6,945.11 |
| 7143133911 | Thomas | enrolled | 5/18/2023 19:44 | $ 12,915.27 |

$300,663.62 TOTAL

Exhibit II

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | ProfileId | FirstName | Status | EnrolledDate | Total Fees |
| 2 | 2255341584 | Bonaventure | enrolled | 5/26/2023 18:07 | $ 2,884.91 |
| 3 | 8124884496 | Breanna | enrolled | 5/22/2023 17:34 | $ 7,599.98 |
| 4 | 559668118 | Brian | enrolled | 5/24/2023 | $ 3,840.68 |
| 5 | 8169722736 | Bryan | enrolled | 5/22/2023 18:44 | $ 1,892.60 |
| 6 | 7719585371 | Cale | enrolled | 5/24/2023 15:11 | $ 3,544.06 |
| 7 | 7381512966 | Dana | enrolled | 5/31/2023 17:34 | $ 6,888.64 |
| 8 | 596929033 | Danette | enrolled | 5/23/2023 | $ 1,553.46 |
| 9 | 4894379969 | Deborah | enrolled | 5/11/2023 19:31 | $ 9,545.58 |
| 10 | 1481126452 | Gerald | enrolled | 5/26/2023 15:59 | $ 1,523.22 |
| 11 | 9693889179 | Ivan | enrolled | 5/31/2023 18:09 | $ 1,132.34 |
| 12 | 2443858629 | Jeffrey | enrolled | 6/2/2023 18:44 | $ 3,171.93 |
| 13 | 3382321587 | Jesse | enrolled | 5/22/2023 22:08 | $ 1,560.93 |
| 14 | 9345946116 | Katherine | enrolled | 5/24/2023 19:59 | $ 11,340.72 |
| 15 | 3746791617 | Keena | enrolled | 5/22/2023 19:20 | $ 19,072.91 |
| 16 | 2147291983 | Lyle | enrolled | 5/30/2023 15:58 | $ 7,353.00 |
| 17 | 3879236959 | Lynn Marie | enrolled | 5/18/2023 19:15 | $ 14,007.27 |
| 18 | 6991876217 | Melissa | enrolled | 5/26/2023 15:33 | $ 10,882.71 |
| 19 | 6273397941 | Michelle | enrolled | 5/19/2023 17:11 | $ 4,868.54 |
| 20 | 6461877497 | Octavia | enrolled | 5/31/2023 18:01 | $ 3,778.54 |
| 21 | 3525385249 | Patsy | enrolled | 5/26/2023 20:17 | $ 18,055.62 |
| 22 | 9157385241 | Peter | enrolled | 5/12/2023 0:13 | $ 9,140.27 |
| 23 | 6687959486 | Richard | enrolled | 5/22/2023 22:34 | $ 2,742.05 |
| 24 | 415722426 | Steven | enrolled | 5/25/2023 | $ 1,354.20 |
| 25 | 8892666518 | Yvonne | enrolled | 5/25/2023 18:42 | $ 6,358.95 |
| 26 | | | | | |

$154,093.11 TOTAL

Exhibit JJ

Service Agreement Addendum B
Bankruptcy Attorney Certifications

I hereby certify the following statements are true and accurate as a managing principal of the company requesting access to credit reports from Credit Reporting Services, Inc (CRS).

My company and/or its principal(s) is not involved in current or proposed litigation, state disputes, and/or regulatory investigations being completed by the Federal Trade Commission or any other state or federal regulating body regarding the past practices of Litigation Practice Group PC (LPG).

My company and/or its principal(s) have no current association with LPG or its entities, officers, or employees.

Because of increased risk of loss in this current market, I authorize CRS to invoice and charge the credit card or ACH on file for my company on the 5th and the 20th for prior charges accrued. This will replace standard monthly invoicing requirements listed elsewhere in the Service Agreement or Pricing Addendum.