1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, CA 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Chapter 11 Trustee
   RICHARD A. MARSHACK

7
                    UNITED STATES BANKRUPTCY COURT
8
          CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION
9

10 | In re | Case No. 8:23-bk-10571-SC |

11 | THE LITIGATION PRACTICE GROUP P.C., | Chapter 11 |

12 | Debtor. | NOTICE OF UNPUBLISHED AUTHORITY IN SUPPORT OF CHAPTER 11 TRUSTEE'S PRELIMINARY OPPOSITION TO MOTION BY OFFICE OF THE UNITED STATES TRUSTEE TO CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C. §1112(b) |

13

14

15

16                                      Date:    August 10, 2023
                                        Time:    10:00 a.m.
17                                      Ctrm:    5C – Virtual[1]
                                                 411 West Fourth Street
18                                               Santa Ana, CA 92701

19

20 TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

21 DEFENDANTS, AND ALL INTERESTED PARTIES:

22      Richard A. Marshack, in his capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy

23 estate ("Estate") of The Litigation Practice Group P.C. ("Debtor" or "LPG"), in accordance with

24 Local Bankruptcy Rule 9013-2(b)(4), attaches copies of the following unpublished decisions cited in

25 *Chapter 11 Trustee's Preliminary Opposition to Motion by Office of the United States Trustee to*

26

27 ─────────────────────
   [1] This hearing date is designated Zoom Only, pursuant to Judge Clarkson's self-calendaring procedures. Video and audio
28 connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which
   may be viewed online at:  http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=SC.

                                          1
                    NOTICE OF UNPUBLISHED AUTHORITY

*Convert Case to Chapter 7 Pursuant to 11 U.S.C. §1112(B)*, filed on July 19, 2023, as Docket

No. 286. The unpublished cases were retrieved from Lexis Advance.

## Unpublished Cases

1.    *Mahmood v. Khatib (In re Mahmood),* 2017 WL 1032569, at *8 (B.A.P. 9th Cir. Mar. 17,

2017) (unpublished).

2.    *In re Melendez Concrete Inc.*, 2009 WL 2997920 at *7 (Bankr. D.N.M. Sept. 15,

2009) (unpublished).


DATED: July 19, 2023                    MARSHACK HAYS LLP


                                        By: */s/ D.Edward Hays*
                                            D. EDWARD HAYS
                                            LAILA MASUD
                                            General Counsel for Chapter 11 Trustee
                                            RICHARD A. MARSHACK

NOTICE OF UNPUBLISHED AUTHORITY

4868-2751-5761,v.1

Mahmood v. Khatib



**User Name:** Chanel Mendoza

**Date and Time:** Wednesday, July 19, 2023 9:30:00AM PDT

**Job Number:** 201678807

## Document (1)

1. *Mahmood v. Khatib (In re Mahmood), 2017 Bankr. LEXIS 724*

   **Client/Matter:** 1015-157

◆ Positive
As of: July 19, 2023 4:30 PM Z

# *Mahmood v. Khatib (In re Mahmood)*

United States Bankruptcy Appellate Panel for the Ninth Circuit

February 23, 2017, Argued and Submitted at Pasadena, California; March 17, 2017, Filed

BAP No. CC-16-1210-TaFC

## Reporter
2017 Bankr. LEXIS 724 *

In re: IQBAL MAHMOOD, Debtor.IQBAL MAHMOOD, Appellant, v. ADNAN KHATIB, Appellee.

**Notice:** This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see *Fed. R. App. P. 32.1*), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**Prior History: [*1]** Appeal from the United States Bankruptcy Court for the Central District of California. Bk. No. 2:15-bk-25281-DS. Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding.

*Khatib v. Mahmood, 2012 Cal. App. Unpub. LEXIS 5109 (Cal. App. 2d Dist., July 11, 2012)*

## Core Terms

bankruptcy court, bad faith, factors, disclosure statement, reorganization, argues, best interest, unusual circumstances, clearly erroneous, schedules, two-party, disputes, unsecured creditor, state court, renews, bankruptcy petition, proposed plan, circumstances, fraudulent, appeals, parties, liens, weigh

## Case Summary

### Overview

HOLDINGS: [1]-The bankruptcy court did not abuse its discretion when it found that there was "cause" under *11 U.S.C.S. § 1112(b)* for dismissing a debtor's Chapter 11 bankruptcy case because the debtor filed the case in bad faith; [2]-The record supported the court's findings that the case was essentially a two-party dispute that the debtor and a judgment creditor had litigated in state court for many years that could be resolved in state court, that the debtor declared bankruptcy to impede the creditor from collecting his judgment by writ of execution, and that the debtor did not have sufficient cash flow to fund a reorganization plan; [3]-To the extent the bankruptcy court erred because it failed to consider the debtor's claim that other creditor held a lien on his homestead that was superior to the creditor's lien, that error was harmless.

### Outcome
The bankruptcy appellate panel affirmed the bankruptcy court's decision.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Judicial Review > Standards of Review > Abuse of Discretion

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

Bankruptcy Law > ... > Judicial Review > Standards of Review > De Novo Standard of Review

Bankruptcy Law > ... > Judicial Review > Standards of Review > Clear Error Review

**HN1[⭳]** Standards of Review, Abuse of Discretion

The United States Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") reviews de novo whether the cause for dismissal of a Chapter 11 bankruptcy case under *11 U.S.C.S. § 1112(b)* is within the contemplation of that section of the Bankruptcy Code. The BAP reviews for abuse of discretion a bankruptcy court's decision to dismiss a Chapter 11 case as a "bad faith"

filing, and applies a two-step test to determine whether the bankruptcy court abused its discretion. First, the BAP considers de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Then it reviews for clear error the bankruptcy court's findings of fact. The BAP must affirm a bankruptcy court's findings of fact unless it concludes that they are illogical, implausible, or without support in the record. A factual determination is clearly erroneous if it is without adequate evidentiary support or was induced by an erroneous view of the law.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN2*[⬇] **Conversion & Dismissal, Lack of Good Faith**

*11 U.S.C.S. § 1112(b)(1)* provides that a court shall convert a case under Chapter 11 of the Bankruptcy Code to a case under Chapter 7 or dismiss a case under Chapter 11, whichever is in the best interests of creditors and a debtor's bankruptcy estate, "for cause." If cause is established, the decision to convert or dismiss a case falls within a bankruptcy court's discretion. If a bankruptcy court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the debtor's estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *11 U.S.C.S. § 1112(b)(1)*, *(b)(2)*. A determination that a bankruptcy petition was filed in bad faith constitutes "cause" under *§ 1112(b)*.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

*HN3*[⬇] **Conversion & Dismissal, Lack of Good Faith**

The United States Bankruptcy Appellate Panel for the Ninth Circuit and other courts have elucidated helpful circumstantial factors that might indicate a debtor's bad faith when considering a totality of the circumstances. A bankruptcy court does not have to consider all the

factors; nor does it have to weigh them equally. A bankruptcy court may find one factor dispositive. Indeed, a bankruptcy court may find bad faith even if none of the factors are present.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN4*[⬇] **Conversion & Dismissal, Lack of Good Faith**

To determine whether a debtor has filed a petition under Chapter 11 of the Bankruptcy Code in bad faith, courts weigh a variety of circumstantial factors such as whether: (1) the debtor has only one asset; (2) the debtor has an ongoing business to reorganize; (3) there are any unsecured creditors; (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and (5) the case is essentially a two-party dispute capable of prompt adjudication in state court. Generally speaking, when factors such as these indicate that a debtor is unreasonably deterring or harassing creditors rather than attempting a speedy and feasible reorganization, a court may conclude that the debtor's petition has been filed in bad faith and dismiss it. The list is admittedly not exhaustive.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

*HN5*[⬇] **Conversion & Dismissal, Lack of Good Faith**

A debtor's financial status is relevant to the question of whether the debtor declared bankruptcy in bad faith.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN6*[⬇] **Conversion & Dismissal, Lack of Good Faith**

If a Chapter 11 debtor's timely filing of all operating reports, complying with various reporting requirements, and working toward reorganization rebutted indicia of bad faith, then every debtor who complied with the bare minimum of procedural requirements would be immunized from a bad faith finding.

Bankruptcy Law > ... > Judicial Review > Standards of Review > Clear Error Review

### *HN7*[⬇] Standards of Review, Clear Error Review

The United States Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") must affirm a bankruptcy court's factual findings unless it concludes that they are illogical, implausible, or without support in the record. The BAP may view a factual determination as clearly erroneous if it was without adequate evidentiary support or was induced by an erroneous view of the law.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

### *HN8*[⬇] Conversion & Dismissal, Reorganizations

Disputes over liens and their respective priority are not "unusual circumstances" for purposes of *11 U.S.C.S. § 1112(b)*.

**Counsel:** Michael R. Totaro of Totaro & Shanahan argued for appellant.

Janelle M. Dease of Borchard & Callahan, APC argued for appellee.

**Judges:** Before: TAYLOR, FARIS, and CLEMENT,** Bankruptcy Judges.

# Opinion

## MEMORANDUM

## INTRODUCTION

_____

** The Hon. Fredrick E. Clement, United States Bankruptcy Judge for the Eastern District of California, sitting by designation.

Chapter 11[1] debtor Iqbal Mahmood appeals from the bankruptcy court's dismissal of his bankruptcy case as a bad faith filing. We AFFIRM the bankruptcy court.

## FACTS[2]

A California appellate court once remarked: "Understanding the complex series of events that led to this litigation is necessary to frame the current appeal, and to explain our holdings." *Mahmood v. Sharif, No. B175483, 2005 Cal. App. Unpub. LEXIS 6317 (Cal. Ct. App. July 20, 2005)*. That was in 2005. Twelve years — and at least two more appellate decisions — later, we meet an enhanced challenge in explaining the long history of the underlying disputes. Thankfully, the parties agree on most basic facts.

**Pre-bankruptcy events**. Debtor Iqbal Mahmood immigrated to the United States in 1970. In 1981, he and Fehmida, his wife at the time, purchased a mixed-use property in Cerritos, California (the **[*2]** "Property"). Debtor has apparently lived and worked there ever since.

In 1988, Adnan Khatib commenced a state court lawsuit against Debtor and others and sought recovery based on alleged slander. In April 1991, Debtor quitclaimed the Property to Fehmida. Shortly thereafter, Khatib obtained a $542,159 judgment. And only three months thereafter, Fehmida filed for divorce. Khatib and Debtor then entered into a settlement agreement to satisfy the judgment; but concord did not follow.

In September 1992, Khatib again sued Debtor, among others; he alleged four causes of action: (1) fraudulent conveyance; (2) breach of contract; (3) fraud; and (4) conspiracy. As a result of discovery sanctions, Khatib eventually obtained a default judgment on the fraudulent conveyance and breach of contract causes. The judgment set aside all transfers of the Property after January 27, 1988, deemed title held by Debtor and Fehmida as community property, enjoined Debtor from transferring the Property, and awarded Khatib money

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, **11 U.S.C. §§ 101-1532**.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case. See *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003)*.

2017 Bankr. LEXIS 724, *2

damages on the breach of contract cause.

Khatib then recorded an abstract of judgment. Debtor appealed. In 1996, the California Court of Appeal affirmed the fraudulent conveyance aspect of [*3] the judgment but reversed and remanded for the trial court to recalculate the damages on the breach of contract claim. The trial court entered a new judgment the next year but erroneously assessed damages on the fraud cause of action. Debtor again appealed, and the California Court of Appeal again affirmed, albeit while also modifying the judgment to reflect that the damages award was based on the contract, not the fraud, cause of action.

At appropriate intervals Khatib renewed his judgment: once when he calculated the amount due as $1,256,537.37; and then when he calculated the amount due as $2,029,423.50. Debtor disputed this second renewal, but Khatib prevailed at both the trial and appellate levels.

In January 2013, Khatib applied to have the Property sold by writ of execution. In response, Debtor's daughter, as trustee for a trust, filed a lawsuit for quiet title, declaratory relief, and equitable relief: she claimed that the trust had title to the Property, based on a series of transfers going back to the April 1991 transfer from Debtor to Fehmida. The state court ruled in Khatib's favor in her action, an appeal followed, and the appellate court affirmed.

In July 2015, Khatib again [*4] sought to sell the Property by writ of execution. Debtor was served with an "Application for Issuance of an Order to Show Cause Why an Order for Sale of Dwelling Should Not Issue"; it was set for hearing on October 6, 2015.

**Debtor's bankruptcy petition**. But on October 4, 2015, Debtor filed a voluntary chapter 11 petition. On Schedule A, he listed two pieces of real property, the Property and vacant land in Chico, CA. He valued his interest in them at $275,000 and $44,000, respectively.

He listed four secured creditors on Schedule D, marking all as "disputed": Adhan Khatib [sic], 1994, $50,000; Butte County Tax Collector, 2014, $2,000; James F. McGee, 1994, $50,000; and Los Angeles County Tax Collector, 2015, $5,923.70. He then listed six unsecured creditors on Schedule F, again marking all as "disputed." These included: Khatib, 1994, $1,422,034.20; McGee, 1994, $1,422,034.20; Mohammad and Rukhsna Sharif, 1994, $195,000; Mohammad S. Tremzai, 1992, $50,000; Rutan &

Tucker, 2012, $10,000; and Shaheen Iqbal, 1992, $45,000.

Debtor also has a litigious history with Mohammad Sharif, Rukhsana Sharif, and M. Sharif (the "Sharifs"). The Sharifs obtained a money judgment against Debtor in 2001. [*5] Debtor appealed, but the Sharifs prevailed.

Debtor almost immediately filed a post-petition motion to value the Property, asserting it was worth $275,000. Khatib opposed. The bankruptcy court eventually valued the Property at $550,000.

Debtor also promptly commenced an adversary proceeding against Khatib and the Sharifs to determine the existence, validity, and priority of the various liens.

Debtor then submitted a "corrected" disclosure statement and a proposed plan of reorganization. As described in the disclosure statement, the plan proposes to take the Property's $550,000 value, subtract a $175,000 homestead exemption, and treat the secured claims as secured up to $375,000. The plan then pays secured claims over 7 years at 3% interest. The deficiency claims are treated as unsecured claims to receive a 2% dividend, without interest, in equal monthly installments over 84 months. The disclosure statement also represents that Debtor had averaged net monthly income of $3,758.94 in the six months since the petition was filed.

Khatib responded to Debtor's bankruptcy efforts with a motion to dismiss the bankruptcy case as a bad faith filing. After canvassing the parties' history and discussing [*6] various factors, Khatib argued that "totality of the circumstances reveals that Debtor is fraudulently using bankruptcy as a way to appeal and avoid the Judgment that allows Khatib to enforce against the [Property]." He urged the bankruptcy court to find "that Debtor acted in bad faith in filing his petition." He then argued that dismissal would serve the best interest of all creditors and the estate.

Debtor opposed. Among other things, he argued that if the court found cause to dismiss, there were unusual circumstances that established that neither dismissal nor conversion was in the best interests of creditors and the estate: he related his discovery that the liens and their respective priority was unclear and needed judicial determination. His adversary proceeding, he suggested, was a quick way to resolve the dispute. He added: "If Debtor had to choose he would argue dismissal would provide a better option for the creditors and the estate

Chanel Mendoza

Case 8:23-ap-01046-SC    Doc    Filed 07/19/23    Entered 07/19/23 17:31:45    Desc Main
Document    Page 9 of 28

Page 5 of 9
2017 Bankr. LEXIS 724, *6

as their claims would not be reduced further by trustee fees and their attorney's fees."

The bankruptcy court heard the matter, entertained oral argument, and ruled from the bench. It clarified that bad faith was grounds for dismissal under *§ 1112(b)*. And **[*7]** it identified five relevant factors: need for any sort of investigation, there's no need for another party to come in to operate a business or to oversee the conduct of a case." It then entered an order dismissing the case. Debtor timely appealed.

> whether the debtor has only one asset; whether the debtor has an ongoing business to reorganize; whether . . . there [are] unsecured creditors; whether the debtor has any cash flow or sufficient source of income consisting a plan; and finally, whether this is essentially a case that is a two-party dispute that is capable of being adjudicated in state court as opposed to a bankruptcy court.

It then discussed each of the factors. From them, it concluded "that we have . . . a pretty clear case for dismissal based on bad faith." Finally, the bankruptcy court decided: "I don't believe that appointment of a trustee or an examiner in this case would be an appropriate option either because there's no

## JURISDICTION

The bankruptcy court had jurisdiction under *28 U.S.C. §§ 1334* and *157(b)(2)(A)*. We have jurisdiction under *28 U.S.C. § 158*.

## ISSUE

Whether the bankruptcy court abused its discretion when it dismissed Mahmood's chapter 11 petition.

## STANDARDS OF REVIEW

*HN1*[↑] "We review de novo whether the cause for **[*8]** dismissal of a Chapter 11 case under *11 U.S.C. § 1112(b)* is within the contemplation of that section of the Code." *Marsch v. Marsch (In re Marsch), 36 F.3d 825, 828 (9th Cir. 1994)*. We review for abuse of discretion the bankruptcy court's decision to dismiss a chapter 11 case as a "bad faith" filing. *Hutton v. Treiger (In re Owens)*, 552 F.3d 958, 960 (9th Cir. 2009); *Sullivan v. Harnisch (In re Sullivan), 522 B.R. 604, 611 (9th Cir. BAP 2014)*. We apply a two-step test to determine whether the bankruptcy court abused its discretion. *In re*

*Sullivan, 522 B.R. at 611* (citing *United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)* (en banc)). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the relief requested. Id. Then we review for clear error the bankruptcy court's findings of fact. Id. (citing cases). "We must affirm the bankruptcy court's fact findings unless we conclude that they are illogical, implausible, or without support in the record." Id. A factual determination is clearly erroneous "if it was without adequate evidentiary support or was induced by an erroneous view of the law." Id.

## DISCUSSION

*HN2*[↑] *Section 1112(b)(1)* provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." *11 U.S.C. § 1112(b)(1)*. If cause is established, the decision to convert or dismiss the case falls within the bankruptcy court's discretion. *In re Sullivan, 522 B.R. at 612*. If a bankruptcy **[*9]** court determines that there is cause to convert or dismiss, it must also: (1) decide whether dismissal, conversion, or the appointment of a trustee or examiner is in the best interests of creditors and the estate; and (2) identify whether there are unusual circumstances that establish that dismissal or conversion is not in the best interests of creditors and the estate. *11 U.S.C. § 1112(b)(1)*, *(b)(2)*; *In re Sullivan, 522 B.R. at 612*.

Debtor concedes that a determination that a bankruptcy petition was filed in bad faith constitutes cause under *§ 1112(b)*. *In re Marsch, 36 F.3d at 828*. We now turn to whether the bankruptcy court's dismissal was an abuse of discretion.

### A. The bankruptcy court properly applied the correct legal standard.

As discussed in more detail below, the bankruptcy court weighed various factors before finding that Debtor filed his chapter 11 petition in bad faith. On appeal, Debtor argues that the bankruptcy court misapplied the correct legal standard because it failed to consider the totality of the circumstances when it considered only some, but not other, factors.

We disagree. *HN3*[↑] This Panel (and others) have elucidated helpful circumstantial factors that might

indicate bad faith when considering a totality of the circumstances. The bankruptcy court did not have to [*10] consider all the factors; nor did it have to weigh them equally. A bankruptcy court may find one factor dispositive. Indeed, a bankruptcy court may find bad faith even if none of the factors are present.

Here, the bankruptcy court recited and considered factors this Panel has endorsed. See *St. Paul Self Storage Ltd. P'ship v. Port Auth. (In re St. Paul Self Storage Ltd. P'ship), 185 B.R. 580 (9th Cir. BAP 1995)*. In St. Paul, we remarked:

> *HN4*[⬆] ] To determine whether a debtor has filed a petition in bad faith, courts weigh a variety of circumstantial factors such as whether:
> (1) the debtor has only one asset;
> (2) the debtor has an ongoing business to reorganize;
> (3) there are any unsecured creditors;
> (4) the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and
> (5) the case is essentially a two party dispute capable of prompt adjudication in state court.

> See In re Stolrow's, Inc., 84 B.R. [167, 171 (9th Cir. BAP 1988)]. Generally speaking, when factors such as these indicate that a debtor is unreasonably deterring or harassing creditors rather than attempting a speedy and feasible reorganization, the court may conclude that the petition has been filed in bad faith and dismiss it.

*Id. at 582-83* (some citations omitted). The list is admittedly not exhaustive; an even earlier Panel decision set forth a more expansive list of [*11] eight factors. See *In re Stolrow's, Inc., 84 B.R. at 171*. The bankruptcy court could have discussed all eight circumstantial factors; but it was not obliged to. Indeed, in St. Paul the Panel affirmed a bad faith finding based on the more limited list of five factors — the precise factors the bankruptcy court, here, considered.

Debtor also believes the bankruptcy court should have evaluated factors that he raised (factors that do not appear on even the longer list). But we are not persuaded that the bankruptcy court ignored them.[3] First, Debtor emphasizes that his insolvency is relevant

to the case and that the "disinclination to examine debtor's overall financial status was a factor in an erroneous conclusion [that] the Sullivan case was filed in bad faith." Aplt's Opening Br. 14. As this panel and the Ninth Circuit have observed, *HN5*[⬆] ] a debtor's financial status is relevant. *In re Sullivan, 522 B.R. at 615* (citing *In re Arnold, 806 F.2d at 939*). But Sullivan is distinguishable; there, the bankruptcy court erroneously viewed the debtor's alleged insolvency as a "non-issue" and inappropriately limited its examination of the debtor's financial status. Id. Here, the bankruptcy court did consider Debtor's financial status (i.e., his assets, cash flow, liabilities, etc.), and it did not erroneously [*12] determine that Debtor was solvent.

Second, Debtor contends that "the very fact" that he has been diligently "working toward reorganization is inconsistent and incongruous with this being a 'bad faith filing.'" Aplt's Opening Br. at 14. But Debtor is not the first to raise this argument; in St. Paul, the debtor also argued that it did not file its bankruptcy petition in bad faith, and to "support this contention, [d]ebtor refers to the fact that it filed a proposed disclosure statement and plan, filed all monthly operating reports, and paid all quarterly fees to the United States Trustee." *185 B.R. at 583*. The St. Paul Panel was not convinced: "However, notwithstanding Debtor's reverence for form, the substance of this case indicates that the bankruptcy court's finding of bad faith was not clearly erroneous nor did it abuse its discretion when dismissing the case." Id. We are similarly unimpressed with Debtor's form over substance argument. Put bluntly: *HN6*[⬆] ] if a debtor's timely filing all operating reports, complying with various reporting requirements, and "working toward reorganization" rebutted indicia of bad faith, then every debtor who complied with the bare minimum of procedural requirements would be immunized [*13] from a bad faith finding.

Last, Debtor twice argues that filing bankruptcy to "save equity in one's home" is a legitimate reason for filing bankruptcy and then suggests that his motivation for filing is similar. See Aplt's Opening Br. at 13, 15. It is a legitimate reason, except Debtor has no equity to save. He wants to preserve his homestead exemption. But he does not need bankruptcy protection to do so.

In sum, we conclude that the bankruptcy court properly considered the totality of the circumstances; it listed appropriate factors and from those factors found bad faith.

---

[3] Debtor raised them in his papers. And the bankruptcy court informed counsel, on the record, that "I have reviewed the papers."

## B. The bankruptcy court's "bad faith" finding was not clearly erroneous.

HN7[↑] "We must affirm the bankruptcy court's fact findings unless we conclude that they are illogical, implausible, or without support in the record." *In re Sullivan, 522 B.R. at 612*. "We may view a factual determination as clearly erroneous if it was without adequate evidentiary support or was induced by an erroneous view of the law." Id.

The bankruptcy court found that Debtor's petition was filed in bad faith. It based this, in part, on a finding that Debtor "is using this bankruptcy as a litigation tactic in connection with his disputes with Mr. Khatib and using bankruptcy as a litigation [*14] tactic or as a grounds to delay creditor's collection . . . ." Debtor argues that the bankruptcy "court failed to explain what that 'litigation tactic' was." Aplt's Opening Br. at 25. He reasons: "This was just collection efforts to sell Mahmood's home and place of business so no actual 'tactic' just following a viable procedure to seek to pay debts and retain his property." Aplt's Opening Br. at 26. We disagree.

The evidence before the bankruptcy court reflected: in 1991, Khatib obtains judgment, Debtor and Khatib later settle, but Debtor fraudulently conveys the Property; Khatib obtains a second judgment, Debtor appeals, judgment affirmed in part remanded in part, new judgment, Debtor appeals, judgment affirmed; Khatib renews the judgment; Khatib renews the judgment again, Debtor appeals, renewed judgment affirmed; Khatib begins the sale process, Debtor's daughter brings quiet title action, Khatib prevails at trial, Debtor's daughter appeals, judgment affirmed; finally, Khatib renews the sale process, Debtor files bankruptcy. We recognize Debtor's belief that, along the way, he scored minor victories. But the bankruptcy court's finding that Debtor was using the bankruptcy petition [*15] as the latest in a decades-old campaign to delay Khatib's collection efforts was not clear error.

For the sake of completeness, we also address Khatib's more specific arguments. Debtor disputes the bankruptcy court's analysis on nearly every factor; he argues that the bankruptcy court's factual findings were clearly erroneous.[4]

---

[4] Debtor does not, however, dispute the bankruptcy court's conclusion that the "ongoing business to reorganize" factor was not particularly useful: "[T]he debtor's practice right out of his home it's -- it appears to be a relatively straightforward one. It doesn't appear the bankruptcy is to be used as a tool to

**Whether Debtor has only one asset**. The bankruptcy court concluded that the case was "essentially a one-asset case." It observed that Debtor "clearly filed this case to protect this particular asset." It acknowledged that there were other items on the schedules, but noted that they were "of de minimis value." On appeal, Debtor argues that a case is either a single asset case or not; accordingly, this case cannot be a "one-asset" case because Debtor has other assets: he co-owns a parcel of vacant land and has postpetition income. But as Debtor concedes, the bankruptcy court did not find that Debtor only had one asset; it looked at the schedules, acknowledged that Debtor had other assets, but concluded that they were negligible. Although the bankruptcy court did not explicitly identify Debtor's postpetition income as an asset, we are not persuaded this would have [*16] altered the calculus. Accordingly we conclude that the bankruptcy court's finding that this was "essentially" a one-asset case was not clearly erroneous.

**Whether there are any unsecured creditors**. The bankruptcy court found that there were few, if any, true unsecured creditors in the case. On appeal, Debtor acknowledges that some of the creditors listed on the schedules did not file proofs of claims, but he argues that the court should look at the schedules at the time of filing. Debtor also contends that the bankruptcy court ignored the natural result of claim bifurcation: all but $375,000 of the "secured" claims would be treated as unsecured. In reaching its conclusion, the bankruptcy court looked at Debtor's initial schedules, Debtor's proposed amended schedules, and the claims register. There was no clear error in its conclusion — even if Debtor's bankruptcy plan would treat some claims as undersecured.

**Whether Debtor has any cash flow or sources of income to sustain a plan of reorganization**. The bankruptcy court found: "it seems to me that the debtor is not likely to be able to fund the proposed plan while also funding basic needs of his own life." The bankruptcy court looked at [*17] the proposed plan and disclosure statement; based on the information in them, it calculated that Debtor would have about $198 per month left over after expenses and plan payments. Then it compared the income reported in the disclosure statement (based on the six months since the petition was filed) with Debtor's initial Schedule I. Based on Schedule I, Debtor could not cover the proposed plan payments. Hr'g Tr. 15:24-16:3. Last, it acknowledged

---

reorganize the business."

that Debtor intended to rely on family members for emergencies but concluded that there was no evidence "that's been provided by the debtor as to specifics regarding those contributions or under what circumstances they would be made."

On appeal, Debtor urges that the income disparity between the disclosure statement and schedules was a positive development because it showed that Debtor had increased his income by nearly $500 per month since the petition was filed. And he argues that the bankruptcy court misread the submitted declaration because it indicated that Debtor's son-in-law was committed to providing at least $1,000 or more a month to Debtor.

We hesitate to discuss this factor at length. This was not a hearing to confirm the plan or approve [*18] the disclosure statement. See In re Sullivan, 522 B.R. at 617-19 (concluding that a bankruptcy court's determination that debtor could not file a confirmable plan may be premature at an early stage in the case). But Debtor had submitted a proposed plan and disclosure statement and the case was well developed, so the bankruptcy court could consider them. In doing so, the bankruptcy court looked at the plan's feasibility, Debtor's admitted need for outside funding, and the declaration attesting to outside funding. We recognize that, with some clarification (and assuming his son-in-law's cooperation), Debtor might have corrected any deficiency in the offered declaration. Nevertheless, we conclude that the bankruptcy court did not clearly err in finding that Debtor did not have sufficient cash flow to sustain a reorganization plan — any increase in the interest rate paid to creditors, litigation costs, or other changes to the plan would have made it difficult, if not impossible, for Debtor to make plan payments.

**Whether the case is essentially a two-party dispute capable of prompt adjudication in state court**. The bankruptcy court found:

> Finally, this is a two-party dispute and while there are . . . maybe a couple of unsecured [*19] creditors, obviously we have the Sharifs, ultimately it really appears to me that this is a dispute between the debtor and Mr. Khatib and this is a dispute that has been going on since I believe about 1991. . . . And . . . . there's . . . a story to this case and it all indicates that there is a history between these two parties of litigation with a number of findings that are certainly not favorable to the debtor. And we have the debtor in this case

now making arguments that appear to be exactly the same as arguments that were made unsuccessfully and decided against the debtor in other forums.

It later added: "I think the record is clear that this is . . . a two-party dispute that is better resolved and, in fact, is likely already largely been resolved outside of this court." After the bankruptcy court's ruling, Debtor's counsel interjected; the bankruptcy court then clarified: "[Mr. Sharif] is one of the two parties in the other -- in the two-party dispute and I did mention the Sharifs as well. But even if that factor . . . did weigh in favor finding that this was a case that was filed in good faith, I think that the other factors very much outweigh that one factor."

Debtor disagrees; [*20] but his position is not persuasive. First, he rightly argues that the presence of a two-party dispute does not per se constitute a bad faith filing. But here the bankruptcy court also found that the dispute could be resolved outside the bankruptcy court's jurisdiction; Debtor does not argue otherwise.

Second, Debtor emphasizes that he does not intend to challenge the judgments — instead, the dispute is about the judgment liens. He urges that his filing bankruptcy has leveled the playing field because, after reviewing the proofs of claim, he discovered "what appears to be a problem with Khatib's current claimed judgment lien which must be resolved before any efforts to sell the Property as the Sharifs may have liens senior to Khatib's." Aplt's Opening Br. at 22. But he has not "leveled" the playing field;[5] he identifies no bankruptcy tool that would be uniquely helpful. At best, he has identified that the Sharifs, and not Khatib, may have a senior interest. This does not require the bankruptcy court's special expertise; the state court is more than competent to resolve the dispute.

Third, Debtor's hyper-technical assertion that there were other parties and properties involved in his and [*21] Khatib's history, although true, misses the mark. Khatib's bringing actions against other parties does not transform his dispute with **Debtor** into a multi-party action. That said, the description of this as a two-party dispute is not technically

---

[5] Nor is this postpetition discovery particularly relevant to whether Debtor filed the petition in good faith. apt. The bankruptcy court acknowledged this when Debtor's counsel pointed it out at the hearing; but it reasoned that, even absent this being a two-party dispute, it would still find that the petition was filed in bad faith. We agree.

In short, this was an at most three-party dispute involving a single asset. Debtor's interest is ostensibly to protect his homestead exemption; but by filing bankruptcy, Debtor coincidentally manages to retain possession and further forestall the Property's sale.

In sum, we conclude that the bankruptcy court's finding that Debtor filed the bankruptcy petition in bad faith was not clearly erroneous.

**C. Any error in failing to consider the interests of all creditors when deciding to dismiss or convert the case was harmless**.

On appeal, Debtor argues that the bankruptcy court abused its discretion by: (1) not considering the best interests of all creditors when it concluded that appointment of a trustee or examiner was not appropriate; (2) not weighing the best interests of all creditors and the estate before dismissing the case; and (3) not considering Debtor's argument that unusual circumstances existed establishing that dismissal and conversion are **[*22]** not in the best interests of creditors or the estate. Debtor chiefly points to the lien priority issue (i.e., his allegation that Khatib may not have a first priority lien) and consequently urges that the bankruptcy court failed to properly consider the interest of all creditors (i.e., the Sharifs, who may now be in a first position) and the estate.

But Debtor waived the first two arguments. At oral argument, Debtor's counsel conceded that, if Debtor stated below that he preferred dismissal, Debtor waived these arguments. Debtor did, in fact, concede that he would prefer dismissal if put to the choice. What's more, no party below argued against dismissal in favor of another option.

That leaves the third point: Debtor's contention that the bankruptcy court did not even consider his argument that the lien priority issue was an unusual circumstances. We disagree; Debtor's counsel apprised the court of the adversary proceeding's status and his interest in having Judge Ahart mediate the matter. Despite this, the bankruptcy court found that Debtor and Khatib's dispute, including the potential senior interests of the Sharifs, could be better resolved outside the bankruptcy court. Further, *HN8*[↑] disputes **[*23]** over liens and their respective priority are not "unusual circumstances." See *In re Prods. Int'l Co., 395 B.R. 101, 109 (Bankr. D. Ariz. 2008)* ("*Section 1112(b)* does not define 'unusual circumstances.' However, the phrase contemplates conditions that are not common in chapter 11 cases."). Although the bankruptcy court did not

specifically address this issue under the rubric of unusual circumstances, we conclude that any error was harmless.

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

**End of Document**

In re Melendez
Concrete Inc.



**User Name:** Chanel Mendoza
**Date and Time:** Wednesday, July 19, 2023 9:22:00AM PDT
**Job Number:** 201677896

## Document (1)

1. *In re Melendez Concrete, Inc., 2009 Bankr. LEXIS 2925*

   **Client/Matter:** 1015-157
   **Search Terms:** In re Melendez Concrete Inc., 2009 WL 2997920 at *7
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2023 LexisNexis

◆ Positive
As of: July 19, 2023 4:22 PM Z

# *In re Melendez Concrete, Inc.*

United States Bankruptcy Court for the District of New Mexico

September 15, 2009, Entered on Docket

No. 11-09-12334 JA, Chapter 11

**Reporter**

2009 Bankr. LEXIS 2925 *; 2009 WL 2997920

In re: MELENDEZ CONCRETE INC., Debtor.

## Core Terms

convert, insiders, unusual circumstances, pre-petition, insured, conversion, documents, schedules, asserts, post-petition, disclose, maximize, orderly, circumstances, monthly, enumerated grounds, state court, collateral, construction equipment, small business, bad faith, liquidation, coverage, auction

## Case Summary

### Procedural Posture

This matter came before the court on a creditor bank's motion to dismiss or convert debtor's Chapter 11 Case to Chapter 7 under *11 U.S.C.S. § 1112(b)*.

### Overview

The court noted that a Chapter 11 case could not be converted or dismissed under *11 U.S.C.S. § 1112(b)* except for "cause." It found "cause" from the following: (i) failures on the part of debtor to schedule or disclose substantial claims against insiders until raised by the bank's motion to convert or dismiss, (ii) failure to timely file the June 2009 monthly operating report, and failure to include an income statement and balance sheet as part of the operating reports for either June or July 2009, together with pre-petition conduct on the part of debtor, (iii) discrepancies between debtor's equipment list and the equipment list for the insurance policy, and (iv) debtor's lack of care in producing documents required by the *Fed. R. Bankr. P. 2004* order. These circumstances suggested a pattern of lack of diligence in complying with obligations of a litigant or debtor in possession. Based on the evidence, and common knowledge of the depressed market in New Mexico in the current recessionary environment, the court found

there were unusual circumstances that established that dismissal or conversion of debtor's case would not have been in the best interests of creditors and the estate.

### Outcome

The court denied the motion to dismiss or convert contingent on debtor's compliance with certain specified requirements.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN1*[⬇] **Conversion & Dismissal, Reorganizations**

A chapter 11 case may not be converted or dismissed under *11 U.S.C.S. § 1112(b)* except for "cause." If cause is established, a court must dismiss or convert the case, or appoint a chapter 11 trustee, unless the court finds unusual circumstances that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate. *11 U.S.C.S. §§ 1104(a)(3)*, *1112(b)(1)*. If the court finds such unusual circumstances exist, the court is not required to convert or dismiss or to appoint a trustee. If no such unusual circumstances are found, the court must not convert or dismiss the case if (i) the debtor or another party objects, (ii) the act or omission is other than a substantial or continuing loss to or diminution of the estate coupled with the absence of a reasonable likelihood of rehabilitation, and (iii) the objecting party establishes that there is a reasonable likelihood that a plan will be confirmed within a time specified in the statute, that there exists a reasonable justification for the act or omission, and that the act or omission will be cured within a reasonable period fixed by the court. *11 U.S.C.S. § 1112(b)(2)*.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN2*[🔽] **Conversion & Dismissal, Reorganizations**

*11 U.S.C.S. § 1112(b)(4)* lists sixteen nonexclusive grounds that constitute cause. The list contained in *§ 1112(b)(4)* is not exhaustive, and a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose. Although this section restricts a court's discretion, a court still maintains some degree of discretion to deny the relief requested.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN3*[🔽] **Conversion & Dismissal, Reorganizations**

See *11 U.S.C.S. § 1112(b)(4)*.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN4*[🔽] **Conversion & Dismissal, Lack of Good Faith**

Prepetition conduct of a debtor can be considered to determine whether cause exists under *11 U.S.C.S. § 1112(b)(4)* to convert or dismiss on the ground the chapter 11 case was filed in bad faith. To determine whether a chapter 11 case was filed in bad faith, courts consider all relevant factors, including (i) whether the petition serves a valid bankruptcy purpose such as by preserving a going concern or maximizing the value of the debtor's estate; (ii) whether the petition is filed merely to obtain a tactical litigation advantage; (iii) whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation; (iv) whether it is a single asset case, (v) whether there are one or a very few unsecured creditors, (vi) whether there is no ongoing business or employees; (vii) whether the pre-petition conduct of the debtor has been improper; and (viii) whether the case is

filed to evade one or more court orders. No single factor is determinative, and the weight given each factor will necessarily vary with the facts and circumstances of each case.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN5*[🔽] **Conversion & Dismissal, Reorganizations**

To determine whether a court should apply a materiality standard to the enumerated grounds set forth in *11 U.S.C.S. § 1112(b)(4)*, the words of the statute should be read in context and with a view to carry out the purpose of the statutory scheme. A fundamental purpose of chapter 11, in the case of a reorganization, is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. Fundamental purposes of chapter 11 also include maximizing the value of the estate for the benefit of all creditors, promoting equality of distribution among creditors, and avoiding piecemeal, preferential dismemberment of a debtor's assets.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

*HN6*[🔽] **Conversion & Dismissal, Reorganizations**

A materiality standard should be applied when assessing whether cause exists under the enumerated grounds that constitute cause under *11 U.S.C.S. § 1112(b)(4)*. Not applying a materiality standard to the enumerated grounds would undermine the fundamental purposes of chapter 11. For example, it is common sense that a chapter 11 case should not be converted or dismissed under *§ 1112(b)(4)(F)* or *§ 1112(b)(4)(I)* if a debtor in possession that is generally discharging its duties files a monthly operating report a few days late, even if without just excuse, or pays a post-petition tax a day late.

Bankruptcy Law > ... > Bankruptcy > Debtor Benefits & Duties > Debtor Duties

*HN7*[🔽] **Debtor Benefits & Duties, Debtor Duties**

*Fed. R. Bankr. P. 1007* requires a debtor to file schedules of assets and liabilities as prescribed by the

appropriate Official Forms within 15 days after the petition date (or 15 days after entry of the order for relief in an involuntary case), unless the court extends such time. The schedules are executed by an authorized representative of the debtor and certified, under penalty of perjury, to be true and correct.

Bankruptcy Law > ... > Bankruptcy > Debtor Benefits & Duties > Debtor Duties

Bankruptcy Law > ... > Bankruptcy > Debtor Benefits & Duties > Small Business Debtors

### HN8[↓]  Debtor Benefits & Duties, Debtor Duties

11 U.S.C.S. §§ 1106(a)(1), 1107(a) read in conjunction with 11 U.S.C.S. § 704(8) require a debtor in possession to file monthly operating reports as required by the United States Trustee. The United States Trustee requires debtors in possession in small business chapter 11 cases to file small business debtor monthly operating reports by the fifteenth day after the end of the reporting period, unless otherwise ordered by the court. 11 U.S.C.S. § 1116.

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

### HN9[↓]  Conversion & Dismissal, Reorganizations

When "cause" has been demonstrated, a court must convert or dismiss a chapter 11 case absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate. 11 U.S.C.S. § 1112(b)(1). The Bankruptcy Code does not define "unusual circumstances" within the meaning of § 1112(b) but does give a clue. When Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, it used the phrase "absent unusual circumstances" in § 1112(b)(1), while using the different phrase "absent extraordinary and compelling circumstances" in the newly enacted 11 U.S.C.S. § 1116. The court need not find that the circumstances are "extraordinary and compelling" to find that they are "unusual."

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Reorganizations

### HN10[↓]  Conversion & Dismissal, Reorganizations

Use of the phrase "unusual circumstances" contemplates circumstances not common in most chapter 11 cases and under which the purposes of the Bankruptcy Code would be better served by the case remaining in chapter 11. This construction of the language "unusual circumstances" is consistent with the ordinary meaning of the terms, and with use of the terms in the context of the statute. The import of 11 U.S.C.S. § 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding.

**Counsel:** [*1] For Melendez Concrete Inc., Debtor: Daniel J Behles, Cuddy & McCarthy, LLP, Albuquerque, NM.

For Debtors: Daniel J. Behles, Albuquerque, NM.

For United States Trustee, U.S. Trustee: Leonard K Martinez-Metzgar, Albuquerque, NM.

**Judges:** ROBERT H. JACOBVITZ, United States Bankruptcy Judge.

**Opinion by:** ROBERT H. JACOBVITZ

## Opinion

### MEMORANDUM OPINION

This matter came before the Court on Community Bank's Motion to Dismiss or Convert Case to Chapter 7 filed July 30, 2009. Following an evidentiary hearing on September 1, 2009, the Court took the matter under advisement. Community Bank (the "Bank") seeks dismissal or conversion of Debtor's chapter 11 case under 11 U.S.C. § 1112(b) on the grounds that the Debtor committed various prepetition bad acts, failed to timely file operating reports, failed to produce documents as required by an order of this Court, failed to adequately insure the Bank's equipment collateral, failed to disclose claims against insiders, and has suffered continuing losses or diminution of the estate. The Debtor contends conversion or dismissal is inappropriate because 1) prepetition bad acts may not be considered in connection with a motion to dismiss or convert under 11. U.S.C. § 1112(b); 2) the Debtor [*2] has now filed the operating reports, substantially

complied in good faith with the order, adequately insured the equipment collateral, and inadvertently failed to disclose the claims against insiders; and 3) the estate is not suffering losses.

After considering the Motion to Dismiss or Convert and the evidence admitted at trial, and being otherwise informed, the Court will deny the Motion to Dismiss or Convert contingent on the Debtor's compliance with certain requirements specified below.

FACTS

Melendez Concrete, Inc. ("Melendez Concrete" or "Debtor") is a construction company that ceased operations in or around February 2009. It commenced a voluntary chapter 11 case on May 29, 2009 to conduct an orderly liquidation of its assets. Melendez Concrete is a small business debtor as defined by *11 U.S.C. § 101(51D)*. Miguel Melendez (Mr. Melendez) is Secretary of and Designated Agent for the Debtor.

The Bank, a secured creditor of the Debtor, made three loans to the Debtor. As of May 30, 2009, the Debtor owed the Bank $ 381,940.05, exclusive of attorney's fees. Of that amount, $ 342,639.64 is secured by the Debtor's inventory, chattel paper, accounts, equipment, and general intangibles, and **[*3]** $ 132,328.74 of the $ 342,639.64 is also secured by certain vehicles. [1]

On October 20, 2008, after Debtor defaulted on Loan 505095001, the Bank commenced litigation against the

_____

[1] Community Bank made three loans to the Debtor, designated Loan 505095001, Loan 506015002, and Loan 505105002. Community Bank made Loan 505095001 on September 7, 2005. Community Bank made Loan 505105002 on October 11, 2005. No evidence was presented on when Community Bank made Loan 506015002. As collateral for Loan 505095001, and future advances, which included Loan 505105002, Debtor granted Community Bank a security interest in all of Debtor's inventory, chattel paper, accounts, equipment, and general intangibles, then owned or thereafter acquired, and proceeds thereof. As collateral for Loan 505105002, Debtor granted Community Bank a security interest in certain titled vehicles. The amounts Debtor owed Community Bank on Loan 505095001, Loan 506015002, and Loan 505105002, as of May 30, 2009, were $ 210,310.90, $ 39,204.41, and $ 132,328.74, respectively, which totals $ 381,940.05. Because the security agreements do not contain dragnet clauses, and no evidence was presented on when Community Bank made Loan 506015002 or whether it is secured, the record does not establish whether the Bank has a secured claim for **[*4]** Loan 506015002. .

Debtor in state court to collect that loan and foreclose its security interest in the collateral securing the loan. Subsequently, Debtor defaulted on the remaining two loans by failing to make required payments.

On March 13, 2009, Melendez Concrete sold certain titled vehicles not pledged to the Bank to an insider of the Debtor, Sangre de Christo Gravel Products LLC ("Sangre de Christo"), for $ 71,000. On or about March 17, 2008, Melendez Concrete sold equipment pledged to the Bank for $ 36,947 in violation of one of the security agreements, and did not pay the sale proceeds to the Bank. In early April 2009, Melendez Concrete collected approximately $ 41,000 on a receivable pledged to the Bank, and did not pay the sale proceeds to the Bank in violation of a security agreement. [2] Melendez Concrete used those funds to pay unsecured creditors, including one or more creditors whose claims Mr. Melendez and his father personally guaranteed.

On March 26, 2009, shortly before a scheduled deposition of Mr. Melendez, counsel for Melendez Concrete sent an email message to counsel for the Bank stating "We surrender," and agreeing to entry of a stipulated judgment against Melendez Concrete. After the parties could not agree on the terms of the stipulated judgment, the Bank sought and obtained an order from the state court, entered May 14, 2009, requiring Mr. Melendez to appear for a deposition, and ordering Melendez Concrete to surrender certain equipment and vehicles to the Bank by May 28, 2009. Melendez Concrete commenced this chapter 11 case on May 29, 2009 to avoid complying with the state court order.

Post-petition, the Court entered a stipulated order authorizing the Bank to take a *Rule 2004* examination *duces tecum*. The order provided, in part, that "the debtor shall provide . . . copies of the documents listed on Exhibit A [to the order] to counsel for the Bank . . . on or before August 7, 2009," which was in advance of a *Rule 2004* examination scheduled for August 14, 2009. The Bank complains that the Debtor, in violation of this Court's order, failed to produce its initial report, documents **[*6]** showing the sale of equipment on March 17, 2009 to Richie Brothers, and cancelled checks reflected on certain bank statements. The Debtor produced other requested documents. The Debtor's explanation for not producing requested

_____

[2] The Debtor delivered two checks to Community Bank on or about April 21, 2009 in the total amount of $ 17,528.43. Both checks were **[*5]** returned for insufficient funds.

documents is that the initial report had not yet been prepared [3], the Debtor did not understand that "items" means checks, [4] and that the requested sale documents were in storage and would be burdensome to find.

In its schedules of assets and liabilities filed June 18, 2009, Debtor scheduled total assets it valued at $ 1,488,221.34, but failed to schedule claims of the Debtor against insiders in the amount of approximately $ 680,000. Mr. Melendez testified that he did not realize those claims were assets of the estate that needed to be scheduled. On June 23, 2009 the Debtor filed a financial statement that disclosed insider claims as of October 30, 2008 in the Financial Notes. Following the hearing on the Bank's Motion to Convert or Dismiss, on September 9, 2009 the Debtor amended its schedules to list the insider claims as an asset of the estate.

On August 19, 2009, the Debtor filed its first small business monthly operating report in this case, which was a combined report for the period of June and July 2009. No financial statements are attached to the operating report. Consistent with the Debtor's testimony that all operations of the Debtor ceased in or around February 2009, the operating report reflects no income or expenses during the reporting period. The small business monthly operating [*8] report for the period of August 2009 has not been filed; the report is not due until September 15, 2009.

Debtor's equipment and vehicles are insured under a policy listing Sangre de Cristo as the named insured. Debtor's agent testified that, in consultation with Debtor's insurance agent, all of Debtor's equipment and vehicles were insured under a Sangre de Cristo policy in an effort to save money. The Bank asserts that the insurance policy failed to provide coverage for certain equipment and vehicles, [5] while providing insufficient coverage for other equipment and vehicles, [6] and failed to list the Bank as an additional insured. Mr. Melendez testified that he had requested the insurance agent to add the Bank as an additional insured.

Mr. Melendez's uncontroverted testimony was that the total value of the equipment and vehicles owned by Debtor is approximately $ 1.3 million to $ 1.4 million if sold in an orderly fashion and not by auction, and that in the current depressed market this is not the time or place to sell construction equipment by auction. The schedules reflect total debt of $ 1,328,940.53, including the debt owed to the Bank of $ 381,940.05 as of May 30, 2009. The Debtor has not sold any equipment post-petition, and has limited funds for advertising until some equipment is sold.

Debtor has not filed a plan or disclosure statement. The exclusivity period for Debtor to file its plan and disclosure statement expires November 25, 2009.

DISCUSSION

HN1] A chapter 11 case may not be converted [*10] or dismissed under 11 U.S.C. § 1112(b) except for "cause." If cause is established, the Court must dismiss or convert the case, or appoint a chapter 11 trustee, unless the court finds "unusual circumstances . . . that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. §§ 1104(a)(3) and 1112(b)(1). If the court finds such unusual circumstances exist, the court is not required to convert or dismiss or to appoint a

---

[3] On June 15, 2009, the Debtor prepared what is now the equivalent of what previously was termed an initial report but did not provide a copy to Community Bank. That document is entitled United States Trustee Financial Requirements Checklist, Certifications and Declarations The Debtor is required to provide that document to the United States Trustee before the initial debtor interview of the Debtor conducted by the United States Trustee, but it is not required to be filed of record. No evidence was presented regarding the date of the initial debtor interview.

[4] The Bank requested copies of bank statements with items. Under Section 4-104(a)(9) of the Uniform Commercial Code, enacted in New Mexico as § 55-4-104(a)(9) NMSA 1979, an "item" is defined as "an instrument [*7] or a promise or order to pay money handled by a bank for collection or payment," and includes a check.

---

[5] A few items of Debtor's equipment appear not to be included in the list of insured equipment, including two items pledged to Community Bank, a 1989 Ford F350XL and a 1987 Caterpillar CP-323. These comprise a small portion of the equipment.

[6] Exhibit 15, the CNA Inland Marine Policy, contains "Blanket coverage on small tools and equipment used in your business" with an insurance limit of $ 10,000 in the aggregate and $ 1,000 per item. Mr. Melendez testified [*9] that the amount of this "blanket coverage" is in accordance with ordinary industry practices. He further testified that the total value of the equipment itemized on pages 16 and 17 of Exhibit 16, designated as light equipment, exceeded the $ 10,000 limit. There appear to be 47 pieces of small tools and equipment covered under the "blanket coverage" but there was no testimony regarding the actual value of the small tools and equipment.

trustee. [7] If no such unusual circumstances are found, the court must not convert or dismiss the case if (i) the debtor or another party objects, (ii) the act or omission is other than a substantial or continuing loss to or diminution of the estate coupled with the absence of a reasonable likelihood of rehabilitation, and (iii) the objecting party establishes that there is a reasonable likelihood that a plan will be confirmed within a time specified in the statute, that there exists a reasonable justification for the act or omission, and that the act or omission will be cured within a reasonable period fixed by the court. *11 U.S.C. § 1112(b)(2)*.

The threshold issue, thus, is whether "cause" exists to convert or dismiss. *HN2*[↑] *Section 1112(b)(4)* lists sixteen nonexclusive grounds that constitute cause. [8] *In*

---

[7] *See, e.g.*, *In re Franmar, Inc., 361 B.R. 170, 180 (Bankr. D.Colo. 2006)*(stating [*11] that even if 'cause' to dismiss is established under the statute, *section 1112(b)(1)* provides a court with discretion to deny a mot ion to dismiss or convert if the court finds '. . . unusual circumstances . . . that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.'"); *In re Gateway Access Solutions, Inc., 374 B.R. 556, 560 (Bankr.M.D.Pa. 2007)*(noting that dismissal or conversion may be disallowed when the debtor identifies 'unusual circumstances' that establish conversion is not in the best interest of creditors).

[8] *Section 1112(b)(4)* [*12] provides:

> *HN3*[↑] For purposes of this subsection, the term 'cause' includes-(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under *rule 2004 of the Federal Rules of Bankruptcy Procedure* without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, [*13] within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of

*re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr.D.N.H.2007)* ("The list [contained in *1112(b)(4)*] is not exhaustive, and a case may be dismissed for other causes, such as bad faith or if the petition does not serve a bankruptcy purpose.") (citations omitted). Although this section restricts the Court's discretion, the Court still maintains some degree of discretion to deny the relief requested. *Gateway Access Solutions, 374 B.R. at 560*; *Franmar, 361 B.R. at 180*.

The Bank asserts that cause exists to dismiss or convert the case under *11 U.S.C. § 1112(b)(4)*, including *(b)(4)(A)*, *(C)*, *(E)* and *(H)* due to Debtor's conduct both pre-petition and post-petition. The Bank asserts that pre-petition, Debtor intentionally delayed state court litigation during which time it sold some of the bank's collateral and collected an account, and used the proceeds to pay other creditors in violation of the Bank's lien rights. The Bank asserts that post-petition Debtor failed to comply with a discovery order of the Court; failed to maintain appropriate insurance coverage for Debtor's [*14] equipment and vehicles; failed to disclose claims against insiders that are property of the estate; and failed to timely file proper operating reports.

## The Debtor's Pre-petition Conduct is Relevant to the Court's Consideration of "Cause"

Debtor contends that its prepetition conduct is irrelevant to a motion to dismiss or convert. This contention is not correct. *HN4*[↑] Prepetition conduct of a debtor can be considered to determine whether cause exists under *§ 1112(b)(4)* to convert or dismiss on the ground the chapter 11 case was filed in bad faith. [9] To determine whether a chapter 11 case was filed in bad faith, courts consider all relevant factors, including (i) whether the petition serves a valid bankruptcy purpose such as by preserving a going concern or maximizing the value of the debtor's estate; (ii) whether the petition is filed

---

confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

[9] *See, e.g.* *In re Integrated Telecom Express, Inc., 384 F.3d 108, (3rd Cir. 2004)*; *In re Nursery Land Development, Inc., 91 F.3d 1414, 1415 (10th Cir. 1996)*; *In re Trident Associates Ltd. Partnership, 52 F.3d 127, 130 (6th Cir. 1995)*; *In re Phoenix Piccadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988)*.

merely to obtain a tactical litigation advantage; (iii) whether the debtor's financial problems involve essentially a dispute between the debtor and secured creditors that can be resolved in the pending state court litigation; (iv) whether it is a single asset case, (v) whether there are one or a very few unsecured creditors, (vi) whether there is no ongoing business **[*15]** or employees; (vii) whether the pre-petition conduct of the debtor has been improper; and (viii) whether the case is filed to evade one or more court orders. [10] No single factor is determinative, and the weight given each factor will necessarily vary with the facts and circumstances of each case. [11]

Factors (vi), (vii) and (viii) support a finding of bad faith. Debtor engaged in conduct to delay the Bank's exercise of remedies prepetition during which time it sold or collected **[*16]** and then paid about $ 78,000 of the Bank's collateral, in breach of a security agreement, to creditors other than the Bank, including a creditor whose debt was personally guaranteed by Mr. Melendez and his father. Debtor commenced the chapter 11 case to avoid compliance with a state court order requiring surrender of the Bank's collateral; has no business operations; and has only one employee. On the other hand, the schedules list two unsecured priority claims and twelve unsecured nonpriority claims totaling $ 842,372.65, in addition to the Bank's claim of $ 381,940.05. The uncontroverted testimony was that the Debtor's equipment assets, all or most of which are pledged to the Bank, have a value of approximately $ 1.3 million to $ 1.4 million, and that in the current recessionary market an orderly sale of Debtor's equipment in chapter 11 rather than by auction provides the best prospect for maximizing value for the benefit of creditors as a whole. Mr. Melendez and his father are motivated to maximize value as a result of personal guarantees not only to the Bank but also to unsecured creditors. The Court is persuaded by these facts and the testimony that the petition serves a valid **[*17]** bankruptcy purpose. Under these circumstances, the Court gives particular weight to factor (i), and finds

that the Debtor did not file the chapter 11 case in bad faith.

The Enumerated Grounds for Dismissal or Conversion Should be Evaluated under a Materiality Standard

The Bank asserts that cause to convert or dismiss also exists under several of the enumerated grounds contained in _§ 1112(b)(4)_. The Debtor counters that it is in substantial compliance with the prescriptions of _§ 1112(b)(4)_. The parties' contentions raises the question whether the materiality of the Debtor's infractions are to be considered. **HN5**[↑] To determine whether the Court should apply a materiality standard to the enumerated grounds set forth in _§ 1112(b)(4)_, the words of the statute should be read in context and with a view to carry out the purpose of the statutory scheme. [12] A fundamental purpose of chapter 11, in the case of a reorganization, "is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources. _N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 528, 104 S.Ct. 1188, 79 L. Ed. 2d 482 (1984)_. Fundamental purposes of chapter 11 also include maximizing the value of the estate **[*18]** for the benefit of all creditors, promoting equality of distribution among creditors, and avoiding piecemeal, preferential dismemberment of a debtor's assets. _In re Holley Garden Apartments, Ltd., 238 B.R. 488, 494 (Bankr. M.D. Fla. 1999)_.

**HN6**[↑] A materiality standard should be applied when assessing whether cause exists under the enumerated grounds that constitute cause under _§ 1112(b)(4)_. Not applying a materiality standard to the enumerated grounds would undermine the fundamental purposes of chapter 11. For example, it is common sense that a chapter 11 case should not be converted or dismissed under _§ 1112(b)(4)(F)_ or _§ 1112(b)(4)(I)_ if a debtor **[*19]** in possession that is generally discharging its duties files a monthly operating report a few days late, even if without just excuse, or pays a post-petition tax a

---

[10] _See Integrated Telecom Express, Inc., 384 F.3d at 122_ (applying one or more of the factors); _In re Nursery Land Development, Inc., 91 F.3d at 1416_ (same); _Trident Associates Ltd. Partnership, 52 F.3d at 130_ (same); _Phoenix Piccadilly, Ltd., 849 F.2d at 1394_ (same).

[11] _Cf. Flygare v. Boulden, 709 F.2d 1344 (10th Cir. 1983)_ (applying a factors test in the context of whether a chapter 13 plan is proposed in good faith).

[12] _Cf. Bailey v. U.S., 516 U.S. 137, 145, 116 S.Ct. 501, 133 L. Ed. 2d 472 (1995)_ (the Court considered the meaning of the word "use" under _18 U.S.C. § 924(c)(1)_ as well as its "placement and purpose in the statutory scheme"); _Been v. O.K. Industries, Inc., 495 F.3d 1217, 1227 (10TH Cir. 2007)_ (where the Court interpreted _§ 202(a)_ of the Packers and Stockyards Act ("PCA"), _7 U.S.C. § 181 et seq._ "in light of the purposes Congress sought to serve". The Court read "the words of the statute in their context and with a view to their place in the overall statutory scheme").

Case 8:23-ap-01046-SC    Doc    Filed 07/19/23    Entered 07/19/23 17:31:45    Desc Main
Document    Page 23 of 28

Page 8 of 10
2009 Bankr. LEXIS 2925, *19

day late.

**"Cause" Has Not Been Demonstrated Under § 1112(b)(4)(A), (C) or (E): the Debtor's Failures Are Not Material Enough to Constitute "Cause"**

The Bank asserts that cause to convert or dismiss exists under 11 U.S.C. § 1112(b)(4)(A), which provides that cause exists if there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." This case has been pending for less than four months. The Debtor has no business operations. The Debtor's monthly operating report reflects no post-petition income, and that no post-petition expenses have been paid. The Debtor has incurred minimal post-petition expenses. The Court finds that cause does not exist under § 1112(b)(4)(A).

The Bank asserts that cause to convert or dismiss exists under 11 U.S.C. § 1112(b)(4)(C) based on failure to maintain appropriate insurance that poses a risk to the estate or to the public. Applying a materiality standard, the Court finds, based on the evidence presented, that the Debtor's insurance **[*20]** in place does not pose a risk to the estate sufficiently material to constitute cause under 11 U.S.C. § 1112(b)(4)(C) and poses no risk to the public, and therefore alone does constitute cause to convert or dismiss.

The Bank asserts that cause to convert or dismiss exists under 11 U.S.C. § 1112(b)(4)(E), which provides that cause includes "failure to comply with an order of the Court," as a result of the Debtor's failure to produce all of the requested documents on a timely basis as required by a Stipulated Order to Take Rule 2004 Examination Duces Tecum. Cause has not been established under this ground for two reasons. First, the nature and extent of documents not produced was not sufficiently material to rise to the level of the type of violation of a court order that results in conversion or dismissal of a chapter 11 case. Second, reading the language of § 1112(b)(4)(E) in the context used and with a view to its place in statutory scheme of chapter 11, the Court concludes that violation of a document production requirement in a stipulated order authorizing a creditor to take a Rule 2004 examination of a debtor is not a type of violation of an order encompassed by § 1112(b)(4)(E).

**The [*21] Debtor's Failure to Timely File Proper Operating Reports and Failure to Schedule or Disclose Substantial Assets Constitutes "Cause" to Dismiss or**

**Convert under § 1112(b)**

Finally, the Bank asserts that cause exists for conversion or dismissal based on the Debtor's failure timely to file proper operating reports or to disclose certain claims of the Debtor against insiders. This assertion implicates 11 U.S.C. § 1112(b)(4)(F) ("unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter") [13] and § 1112(b)(4)(H) ("failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any)"). [14] The Debtor's schedules filed June 16, 2009 failed to list claims against various insiders of the Debtor totaling some $ 680,000. [15] The small business monthly operating report filed by the Debtor for June and July 2009 similarly failed to disclose those claims. The information the Debtor provided to the United States Trustee prior to the initial debtor interview does not include a balance sheet as of the month-end immediately preceding the **[*22]** filing, with the explanation that it was not available. If provided, it should have disclosed the claims against insiders.

---

[13] **HN7**[⬆] Bankruptcy Rule 1007 requires a debtor to file schedules of assets and liabilities as prescribed by the appropriate Official Forms within 15 days after the petition date (or 15 days after entry of the order for relief in an involuntary case), unless the court extends such time. The schedules **[*23]** are executed by an authorized representative of the debtor and certified, under penalty of perjury, to be true and correct. No extension of the time for Debtor to file it schedules was sought or obtained in this case.

[14] **HN8**[⬆] 11 U.S.C. §§ 1106(a)(1) and 1107(a) read in conjunction with § 704(8) require a debtor in possession to file monthly operating reports as required by the United States Trustee. The United States Trustee requires debtors in possession in small business chapter 11 cases to file small business debtor monthly operating reports by the fifteenth day after the end of the reporting period, unless otherwise ordered by the Court. See also 11 U.S.C. § 1116.

[15] Although the Debtor, on September 9, 2009, filed an amendment to Schedule B to reflect receivables due from insiders in the amount of $ 681,352.95, such amendment was filed over three months after commencement of the chapter 11 case, well after the first meeting of creditors, and only after Debtor's failure to schedule or disclose the insider claims was asserted at the hearing on the motion to convert or dismiss. The Court is not determining, however, that the failure to schedule or disclose the insider claims constituted a **[*24]** knowing and willful concealment.

Although the Debtor filed a balance sheet as of October 31, 2008 that disclosed claims against insiders, the Debtor filed its chapter 11 case almost seven months later and had a duty to schedule and disclose those claims as of the petition date. Further, the Debtor, without excuse, failed to file its first small business monthly operating report due July 15, 2009 until August 19, 2009, and as part of the report that was filed failed to include a financial statement. The first report, and only report filed to date, was filed over a month late even though, as prepared, the report should have taken very little time to complete. It reported no income or expenses during the reporting period, and failed to include an internally prepared income statement and balance sheet as required.

Under the facts and circumstances of this case, and taking into account the limited discretion Congress has afforded to bankruptcy courts with respect to the enumerated grounds for cause under § 1112(b)(4), the Court finds that the failures on the part of the Debtor to schedule or disclose substantial claims against insiders until raised by the Bank's motion to convert or dismiss, failure to timely file the June 2009 monthly operating report, and failure to include an income statement and balance sheet as part of the operating reports for either June or July 2009, together with pre-petition conduct on the part of the Debtor, discrepancies between the Debtor's equipment list and the equipment list for the insurance policy, and the Debtor's lack of care in producing documents required by the Rule 2004 order, constitute cause to dismiss or convert. [16] These circumstances suggest a pattern of lack of diligence by the Debtor in complying with obligations of a litigant or debtor in possession.

HN9[↑] Since "cause" has been demonstrated, the Court must convert or dismiss the [*25] chapter 11 case "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of creditors and the estate." 11 U.S.C. § 1112(b)(1). The Bankruptcy Code does not define "unusual circumstances" within the meaning of 11 U.S.C. 1112(b) but does give a clue. When Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, it used the phrase "absent unusual circumstances" in 11 U.S.C. § 1112(b)(1), while using the different phrase "absent extraordinary and

compelling circumstances" in the newly enacted 11 U.S.C. § 1116. [17] The court need not find that the circumstances are "extraordinary and compelling" to find that they are "unusual."

HN10[↑] ] Use of the phrase "unusual circumstances" contemplates circumstances not common in most chapter 11 cases and under which the purposes of the Bankruptcy Code would be better served by the case remaining in chapter 11. See In re Alternate Fuels, Inc., 2009 Bankr. LEXIS 1654, 2009 WL 1298447 *4 (Bankr. D. Kan. 2009) [*26] (the code does not define "unusual circumstances" but it "clearly contemplates conditions that are not common in most chapter 11 cases."); In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D.N.M. 2008) (to the same effect). This construction of the language "unusual circumstances" is consistent with the ordinary meaning of the terms, and with use of the terms in the context of the statute. "The import of section 1112(b) is that, if cause exists, the case should be converted or dismissed unless unusual facts or circumstances demonstrate that the purposes of chapter 11 would be better served by maintaining the case as a chapter 11 proceeding." " 7 Collier on Bankruptcy P 1112.04[3], p. 1112-26 (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev.2008).

The Debtor commenced its chapter 11 case to effectuate an orderly liquidation of its construction equipment and vehicles to not only pay the Bank in full, but to maximize value for creditors as a whole. Mr. Melendez testified the total value of the equipment and vehicles based on his experience is $ 1.3 million to $ 1.4 million if sold in an orderly fashion and not by auction, which is well in excess of three times the amount necessary [*27] to fully satisfy the Bank's claims, and enough to pay all creditors nearly in full. Mr. Melendez testified that he is knowledgeable and experienced in the construction industry, has purchased and sold a substantial amount of construction equipment over the years, and that this is not the time or place to sell construction equipment by auction to maximize value.

It is not common for the value of a debtor's assets in a chapter 11 to exceed the amount of the debt secured by those assets by more than 300%, and for a debtor by maximizing value in a chapter 11 through an orderly liquidation to have a good prospect of not only paying

---

[16] The Court is not finding that the Debtor willfully concealed the claims against insiders.

[17] The Merriam-Webster Online Dictionary defines "unusual" to mean "uncommon," "extraordinary" to mean "exceptional to a very marked extent," and "compelling" to mean "forceful" or "convincing."

the secured creditor in full but also paying all or a substantial portion of unsecured debt that well exceeds the amount of secured debt. The depth and severity of the current recession is also not a common circumstance, in which an orderly sale of construction equipment by an experienced owner financially motivated to maximize value is of unusual value and benefit to the estate and its creditors as a whole. Based on the evidence before the Court, and common knowledge of the depressed market in New Mexico in the current recessionary environment, the Court finds [*28] these are unusual circumstances that establish that dismissal or conversion of Debtor's chapter 11 case would not be in the best interests of the creditors and the estate.

The Court is persuaded that Debtor should be afforded the opportunity to propose a plan for the orderly liquidation of its assets and payment of all creditors if the Debtor complies with certain requirements. Those requirements are that the Debtor, by October 20, 2009: (1) file its plan and disclosure statement; (2) amend its operating reports (including any operating reports to be filed prior to October 20, 2009) to include a current financial statement for months in question; [18] (3) obtain insurance for any of the Debtor's equipment or vehicles not currently insured; (4) increase the amount of blanket insurance coverage on small tools and equipment as necessary to fully insure those items subject to the deductible in place; and (5) obtain insurance coverage naming the Bank as an insured or loss payee. If any of these requirements are not satisfied timely, the Court will convert the case to Chapter 7, finding that, given the amount of equity in the Debtor's equipment and the total amount of unsecured claims, conversion, [*29] rather than dismissal, is in the best interest of the estate.

This Memorandum Opinion constitutes the Courts findings of fact and conclusions of law issued in accordance with *Rule 7052, Fed.R.Bankr.P.* and *Rule 9014, Fed.R.Bankr.P.* An order consistent with this Memorandum Opinion will be entered.

/s/ Robert H. Jacobvitz

ROBERT H. JACOBVITZ

United States Bankruptcy Judge

---

[18] The Court expects the Debtor to file its small business operating reports timely, and to seek an extension of the filing dates if circumstances prevent it from doing so.

Entered on Docket Date: September 15, 2009

---

**End of Document**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **NOTICE OF UNPUBLISHED AUTHORITY IN SUPPORT OF CHAPTER 11 TRUSTEE'S OPPOSITION TO NOTICE OF MOTION AND MOTION BY OFFICE OF THE UNITED STATES TRUSTEE TO CONVERT CASE TO CHAPTER 7 PURSUANT TO 11 U.S.C.§1112(B)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **July 19, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On **July 19, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR – MAIL REDIRECTED TO TRUSTEE**
THE LITIGATION PRACTICE GROUP P.C.
~~17542 17TH ST, SUITE 100~~
~~TUSTIN, CA 92780-1981~~

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **July 19, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**

| |
|---|
| **PRESIDING JUDGE'S COPY**<br>HONORABLE SCOTT C. CLARKSON<br>UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>RONALD REAGAN FEDERAL BUILDING AND<br>COURTHOUSE<br>411 WEST FOURTH STREET, SUITE 5130 /<br>COURTROOM 5C<br>SANTA ANA, CA 92701-4593 |

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 19, 2023 | Chanel Mendoza | /s/ Chanel Mendoza |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:
- **INTERESTED PARTY COURTESY NEF:** Eric Bensamochan eric@eblawfirm.us, G63723@notify.cincompass.com
- **ATTORNEY FOR CREDITOR SDCO TUSTIN EXECUTIVE CENTER, INC.:** Ronald K Brown ron@rkbrownlaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Celentino christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **INTERESTED PARTY COURTESY NEF:** Shawn M Christianson cmcintire@buchalter.com, schristianson@buchalter.com
- **INTERESTED PARTY COURTESY NEF:** Randall Baldwin Clark rbc@randallbclark.com
- **INTERESTED PARTY COURTESY NEF:** Leslie A Cohen leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com; clare@lesliecohenlaw.com
- **INTERESTED PARTY COURTESY NEF:** Jenny L Doling jd@jdl.law, dolingjr92080@notify.bestcase.com; 15994@notices.nextchapterbk.com
- **ATTORNEY FOR CREDITOR CAROLYN BEECH:** Daniel A Edelman dedelman@edcombs.com, courtecl@edcombs.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Christopher Ghio christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **ATTORNEY FOR CREDITOR ANAHEIM ARENA MANAGEMENT, LLC and CREDITOR ANAHEIM DUCKS HOCKEY CLUB, LLC:** Jeffrey I Golden jgolden@go2.law, kadele@ecf.courtdrive.com; cbmeeker@gmail.com; lbracken@wgllp.com; gestrada@wgllp.com; golden.jeffreyi.b117954@notify.bestcase.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Richard H Golubow rgolubow@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR CITY CAPITAL NY:** Alan Craig Hochheiser ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **ATTORNEY FOR CREDITOR DEBT VALIDATION FUND II, LLC; CREDITOR MC DVI FUND 1, LLC; and CREDITOR MC DVI FUND 2, LLC:** Garrick A Hollander ghollander@wghlawyers.com, jmartinez@wghlawyers.com; svillegas@wghlawyers.com
- **ATTORNEY FOR CREDITOR OHP-CDR, LP:** Razmig Izakelian razmigizakelian@quinnemanuel.com
- **ATTORNEY FOR DEBTOR THE LITIGATION PRACTICE GROUP P.C.:** Joon M Khang joon@khanglaw.com
- **ATTORNEY FOR INTERESTED PARTY AD HOC CONSUMER CLAIMANTS COMMITTEE:** Ira David Kharasch ikharasch@pszjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Meredith King mking@fsl.law, ssanchez@fsl.law; jwilson@fsl.law
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Nicholas A Koffroth nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **ATTORNEY FOR DEFENDANT MARICH BEIN, LLC:** David S Kupetz David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **INTERESTED PARTY COURTESY NEF:** Christopher J Langley chris@slclawoffice.com, omar@slclawoffice.com; langleycr75251@notify.bestcase.com; ecf123@casedriver.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, P.C. and INTERESTED PARTY LIBERTY ACQUISITIONS GROUP INC:** Daniel A Lev daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com; dlev@ecf.courtdrive.com
- **ATTORNEY FOR CREDITOR PHILLIP A GREENBLATT, PLLC:** Michael D Lieberman mlieberman@lipsonneilson.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Yosina M Lissebeck Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Richard A Marshack (TR) pkraus@marshackhays.com, rmarshack@iq7technology.com; ecf.alert+Marshack@titlexi.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Laila Masud lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; kfrederick@ecf.courtdrive.com
- **ATTORNEY FOR US TRUSTEE:** Kenneth Misken Kenneth.M.Misken@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**

- **INTERESTED PARTY COURTESY NEF:** Byron Z Moldo bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com, dperez@ecjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Alan I Nahmias anahmias@mbn.law, jdale@mbnlawyers.com
- **INTERESTED PARTY COURTESY NEF:** Victoria Newmark vnewmark@pszjlaw.com
- **ATTORNEY FOR US TRUSTEE:** Queenie K Ng queenie.k.ng@usdoj.gov
- **ATTORNEY FOR COMMITTEE OF UNSECURED CREDITORS:** Keith C Owens kowens@foxrothschild.com, khoang@foxrothschild.com
- **INTERESTED PARTY COURTESY NEF:** Teri T Pham tpham@epglawyers.com, ttpassistant@epglawyers.com
- **ATTORNEY FOR DEFENDANT GREYSON LAW CENTER PC; DEFENDANT HAN TRINH; DEFENDANT JAYDE TRINH; and DEFENDANT SCOTT JAMES EADIE:** Douglas A Plazak dplazak@rhlaw.com
- **ATTORNEY FOR DEFENDANT CONSUMER LEGAL GROUP, PC:** Ronald N Richards ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **ATTORNEY FOR CREDITOR MARI AGAPE:** Gregory M Salvato gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com; jboufadel@salvatoboufadel.com; gsalvato@ecf.inforuptcy.com
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Olivia Scott olivia.scott3@bclplaw.com
- **ATTORNEY FOR CHAPTER 11 TRUSTEE RICHARD A MARSHACK (TR):** Jonathan Serrano jonathan.serrano@dinsmore.com
- **ATTORNEY FOR CREDITOR UNITED PARTNERSHIPS, LLC:** Paul R Shankman PShankman@fortislaw.com, info@fortislaw.com
- **ATTORNEY FOR US TRUSTEE:** Leslie Skorheim leslie.skorheim@usdoj.gov
- **ATTORNEY FOR DEFENDANT BANKUNITED, N.A.:** Howard Steinberg steinbergh@gtlaw.com, pearsallt@gtlaw.com; howard-steinberg-6096@ecf.pacerpro.com
- **INTERESTED PARTY COURTESY NEF:** Andrew Still astill@swlaw.com, kcollins@swlaw.com
- **US TRUSTEE:** United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- **ATTORNEY FOR CREDITOR AZZURE CAPITAL LLC and CREDITOR HI BAR CAPITAL LLC:** Sharon Z. Weiss sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com
- **ATTORNEY FOR CREDITOR DEBT RELIEF GROUP, LLC:** Johnny White JWhite@wrslawyers.com, jlee@wrslawyers.com

4876-7324-4273, v. 1

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF.SERVICE**