Michael A. Sweet (SBN 184345)
Keith C. Owens (SBN 184841)
Nicholas A. Koffroth (SBN 287854)
**FOX ROTHSCHILD LLP**
10250 Constellation Blvd., Suite 900
Los Angeles CA 90067
Telephone:    (310) 598-4150
Facsimile:    (310) 556-9828
msweet@foxrothschild.com
kowens@foxrothschild.com
nkoffroth@foxrothschild.com

*Proposed* Counsel For Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor. | Chapter 11<br><br>Case No. 8:23-bk-10571-SC<br><br>**LIMITED OPPOSITION AND RESERVATION OF RIGHTS TO MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER (A) APPROVING SALE, SUBJECT TO OVERBID, OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B) AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS**<br><br>**Hearing Date and Time**<br>Date:    July 21, 2023<br>Time:    10:00 a.m.<br>Place:    Courtroom 5C<br>            411 West Fourth Street<br>            Santa Ana, California 92701<br>                    or<br>            *Via ZoomGov* |

**TABLE OF CONTENTS**

I. Introduction ........................................................................................................................ 1

II. Factual Background .......................................................................................................... 1

    A. General Background ............................................................................................... 1

    B. The Sale Motion and PSA ...................................................................................... 2

III. Summary of Material Outstanding Issues ........................................................................ 2

IV. Argument .......................................................................................................................... 6

    A. The Debtor Can Satisfy § 363(f) With Respect to Consumer Claims If the Sale Order Adopts the Proposed Assignment Procedure. ............................................... 6

        1. The Proposed Reformation and Sale Satisfies § 363(f)(1) With Respect to Any Statutory Liability Arising from the "Illegality" of the Prepetition LSAs. .................................................................................... 7

        2. The Proposed Sale Satisfies § 363(f)(2) With Respect to Consumers That Do Not "Opt-Out" of the Transferred, Reformed LSA or Enter Into a New Agreement with the Buyer. ....................................................... 9

        3. The Proposed Sale Satisfies § 363(f)(5) With Respect to "Opt-Out" Consumers or Consumers with Rejected LSAs. ......................................... 9

    B. The Proposed Assignment Procedure Will Satisfy § 365 With Respect to the Reformed Legal Services Agreements. ................................................................. 11

V. Reservation of Rights ...................................................................................................... 12

VI. Conclusion ...................................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re AEG Acquisition Corp.*,
  127 B.R. 34 (Bankr. C.D. Cal. 1991), *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993) .................. 11

*In re Baroni*,
  No. 22-7414 ,2023 WL 4236887, at *6 (C.D. Cal. June 28, 2023) .......................................... 9

*In re Bowman*,
  194 B.R. 227 (Bankr. D. Ariz. 1995) ....................................................................................... 11

*In re Central Fla. Metal Fabrication, Inc.*,
  190 B.R. 119 (Bankr. N.D. Fla. 1995) ..................................................................................... 11

*In re Continental Country Club, Inc.*,
  114 B.R. 763 (Bankr. M.D. Fla. 1990) .................................................................................... 11

*In re Embers 86th Street. Inc.*,
  184 B.R. 892 (Bankr. S.D.N.Y. 1995) ..................................................................................... 12

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281 (7th Cir. 2002), *cert. denied*, 538 U.S. 962 (2003) ............................................ 9

*In re Gardens*,
  567 B.R. 802 (Bankr. C.D. Cal 2017) .................................................................................. 6, 7

*In re Grand Slam U.S.A., Inc.*,
  178 B.R. 460 (E.D. Mich. 1995) ............................................................................................. 10

*In re Grumman Indus., Inc.*,
  467 B.R. 694 (S.D.N.Y. 2012) .................................................................................................. 6

*In re Gucci*,
  193 B.R. 411 (S.D.N.Y. 1996) ................................................................................................ 11

*In re Gulf States Steel, Inc. of Alabama*,
  285 B.R. 497 (Bankr. N.D. Ala. 2002) .................................................................................... 10

*In re Healthco Int'l Inc.*,
  174 B.R. 174 (Bankr. D. Mass. 1994) ..................................................................................... 10

*In re Klein Sleep Prods, Inc.*,
  78 F.3d 18 (2d. Cir. 1996) ....................................................................................................... 11

*In re La Paloma Generating, Co.*,
  2017 WL 5197116 (Bankr. D. Del. Nov. 9, 2017) ................................................................ 7, 8

*Lubrizol Enterprises v. Richmond Metal Finishers*,
  756 F.2d 1043 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986) ...................................... 11

*Mass. Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)*,
484 B.R. 860 (1st Cir. BAP 2013) .......... 7

*P.K.R. Convalescent Ctrs., Inc. v. Commonwealth of Va., Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Ctrs., Inc.)*,
189 B.R. 90 (Bankr. E.D. Va. 1995) .......... 9

*In re Perroncello*,
170 B.R. 189 (Bankr. D. Mass. 1994) .......... 10

*In re Prime Motors Inns*,
124 B.R. 378 (Bankr. S.D. Fla. 1991) .......... 11

*In re PW, LLC*,
391 B.R. 25 (B.A.P. 9th Cir. 2008) .......... 10

*Scherer v. Fed. Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments, Ltd.)*,
159 B.R. 821 (Bankr. N.D. Ill. 1993) .......... 10

*In re Shary*,
152 B.R. 724 (Bankr. N.D. Ohio 1993) .......... 7

*In re Trans World Airlines, Inc.*,
322 F.3d 283 (3d Cir. 2001) .......... 7

**Statutes**

11 U.S.C. § 363(f) .......... 6, 7, 8

11 U.S.C. § 363(f)(5) .......... 9, 10

11 U.S.C. § 365(b)(1) .......... 11

The Official Committee of Unsecured Creditors (the "Committee") of The Litigation Practice Group, P.C. (the "Debtor"), in the above-referenced bankruptcy case (the "Bankruptcy Case") pending under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),[1] hereby submits this limited opposition (the "Opposition") to the *Motion of Trustee Richard A. Marshack for Entry of an Order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements* [Docket No. 191] (the "Motion") filed by the chapter 11 trustee, Richard A. Marshack (the "Trustee"). In support of the Opposition, the Committee refers to the record in this Bankruptcy Case, the argument of counsel at any hearing on the Motion, and respectfully states as follows:

## I.

## INTRODUCTION

The Committee has been engaged in productive negotiations with the Trustee and proposed stalking horse bidder to attempt to resolve outstanding issues related to the proposed sale as contemplated by the Motion and the PSA. The Committee is hopeful that these negotiations will result in the resolution of the majority of the issues highlighted in this Opposition in advance of the sale hearing. Additionally, the Committee submits that these modifications will ensure that the proposed sale satisfies the requirements of §§ 363(f) and 365 while protecting the estates interest in quickly transitioning operations to the winning bidder post-closing to limit ongoing accrual of administrative liabilities.

## II.

## FACTUAL BACKGROUND

**A.    General Background**

On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

---

[1] Unless otherwise defined herein, all references to "Section" or "§" refer to a section of the Bankruptcy Code.

On May 4, 2023, the Court entered an order [Docket No. 58] appointing the Trustee as chapter 11 trustee in this Bankruptcy Case. On June 13, 2023, the Trustee filed a motion [Docket No. 102] for the approval of reimbursement procedures for counsel to a proposed *ad hoc* committee of consumer claimants. On June 27, 2023, the Court entered an order [Docket No. 151] approving a stipulation [Docket No. 149] voluntarily dismissing the *ad hoc* committee motion in light of the appointment of the Committee and the agreement that a majority of the Committee's members will remain consumer claimants.

On June 23, 2023, the Office of the United States Trustee (the "UST") appointed [Docket No. 134] the Committee. On June 29, 2023, the UST expanded [Docket No. 157] the Committee's membership from five to seven members. On June 29, 2023, the Committee retained proposed counsel.

**B.     The Sale Motion and PSA**

On July 7, 2023, the Trustee filed the Motion to approve, among other things, that certain *Agreement of Purchase and Sale and Joint Escrow Instructions* (the "PSA") by and between the Trustee and Consumer Legal Group, P.C. ("CLG"). *See* Mot., Ex. 2. On July 11, 2023, the Court entered an order [Docket No. 214] setting the Motion for hearing and setting briefing deadlines.

On July 10, 2023, the Court entered an order [Docket No. 206] requiring supplemental briefing on certain issues raised by the sale. On July 17, 2023, the Committee filed its supplemental brief [Docket No. 264] (the "Pocket Brief") in response to the Court's order. In the interest of avoiding duplication, the Committee incorporates herein by this reference the factual background and legal argument set forth in the Pocket Brief without limitation.

## III.

## SUMMARY OF MATERIAL OUTSTANDING ISSUES

The Committee is in substantive and productive negotiations with the Trustee and CLG to address certain concerns with the proposed PSA. These negotiations remain ongoing as of the filing of this Opposition. As such, the Committee summarizes the outstanding significant issues it believes must be addressed to achieve the Committee's support and otherwise align the proposed PSA with the requirements of applicable law, including those related to consumer protection:

- 2 -

- **Assumption, Assignment, and Opt-Out.** The Trustee proposes a sale of the agreements between consumers and the Debtor. *See* PSA, § 1(a) at 3-4. The APA allows CLG to add or remove agreements from the assumed agreement list for 120 days post-closing and, conflictingly, provides that CLG will be required to provide a 90-day "opt-out" notice to consumers under California law. *See id.*, § 1(c) at 6, § 2.1 at 9. Although the PSA is unclear, the Committee understands that, under its current terms, CLG (or the winning bidder) will operate the Debtor's business immediately post-closing, collect ACH draws from consumers, and fund business losses. *See id.*, § 2(d) at 9. This presents several issues that the Committee believes may be properly resolved as follows (the "Proposed Assignment Procedure"):

  - **Reformation.** Provide in the Sale Order for the immediate reformation of consumer agreements consistent with applicable law. The basis for the Court's authority to reform the current consumer agreements is set forth more fully in the Pocket Brief.

  - **Assumption and Assignment Procedures.** The Motion contemplates assumption and assignment of consumer agreements, subject to reformation, but the PSA and Motion provide no procedures for notice of assumption and assignment, objections, and cures. The Committee believes this may be resolved as follows: (i) include in the Sale Order a schedule for providing notice, an opportunity to object to the proposed assumption and assignment of consumer agreements or the amounts necessary to cure any monetary defaults, and a hearing on assumption and assignment to run concurrently with the 90-day opt-out period under applicable California law; (ii) approve in the Sale Order a proposed form of potential assumption and assignment notice (the "Potential Assumption and Assignment Notice") and authorize the Trustee to serve the notice on consumers using the Debtor's proprietary software (as the Trustee did for notice of the Motion); and (iii) consistent with the agreement reached between the Committee, Trustee, and CLG, permit the buyer to remove executory contracts or unexpired leases from the notice of potential assumption and assignment for 90 days post-closing (rather than 120 days), consistent with the opt-out procedure. The Committee recommends that the Court hold a hearing on assumption and assignment at the conclusion of the 90-day post-closing period to satisfy all requirements under § 365 for assumption and assignment of agreements, including reformed consumer agreements.

○ **Interim Associate Agreement.** The current PSA does not adequately address the interim period between the closing of the sale and the conclusion of the opt-out period/assignment (the "Gap Period"). During the Gap Period, consumer agreements will technically remain unassigned executory contracts between consumers and the Debtor's estate. As set forth above, the PSA presupposes that the buyer will be the permitted assignee of the agreements immediately post-closing. The Committee understands the Trustee's desire to stop the continued accrual of administrative liability associated with the operation of the Debtor's business and the estate's exposure to liability as soon as practicable post-closing.

The Committee recommends that the PSA provide that the buyer will enter into an interim association agreement or similar agreement with the estate permitting the buyer to perform services pursuant to the reformed agreements, collect ACH draws, and fund operating losses on behalf of the estate during the Gap Period. The Sale Order would need to provide that the buyer indemnifies the estate for any liability in the operation of the business during the Gap Period. Upon the conclusion of the 90-day "opt-out"/assignment period, assigned files (which will be reformed to comply with all applicable law) would be transferred to the buyer and the interim association agreement would terminate. The Committee submits that the Monitor would be the appropriate party to oversee reconciliation of funds earned by the buyer during the Gap Period as well as refund rights with respect to funds collected by the buyer during the Gap Period for consumers that "opt-out" or whose reformed agreements are rejected.

Collectively, the Committee submits that the foregoing procedures would resolve a litany of issues concerning the appropriate transition of client files to the buyer.

- **Reformed LSA.** The reformed version(s) of the legal services agreement (the "Reformed LSA Form") should be attached as an exhibit to the Sale Order to provide all parties clarity as to the terms of the reformed consumer agreement effective upon entry of the Sale Order. The Committee reserves the right to provide additional comments and make additional revisions to the proposed Reformed LSA Form and believes that the Monitor should have the opportunity to provide comments on the proposed Reformed LSA Form to ensure compliance with applicable law.

- **Opt-Out Notice.** The Committee is currently providing comments to the Trustee on the proposed form of Opt-Out Notice to be provided to consumers to advise them of their rights to "opt-out" of assignment under California law. The Committee expects its revisions, which are intended to provide a plain English description of consumer's choices and rights, will be noncontroversial.

- **Monitor Rights.** The Monitor's term should not be restricted to one year; rather, the Monitor should be permitted to serve so long as the buyer is servicing clients transferred to the buyer as a result of the sale. *See* PSA, § 2.2 at 9. The Monitor's duties should also explicitly include oversight of the buyer's compliance with operations during any interim period pre-assignment, as well as ensuring the buyer's compliance with and accurate accounting of any "earn-out" amounts due to the estate as a component of the Purchase Price. These oversight rights should not be subject to a random sampling of just 1% of files, but subject to the Monitor's discretion. The Committee should be afforded the opportunity to communicate with the Monitor and request periodic updates.

- **Liberty Superpriority Claim.** The PSA requires that the Trustee satisfy the postpetition superpriority claim of Liberty Acquisitions, Inc. (a CLG affiliate) from the deposit. *See* PSA, § 2(a) at 7. For the reasons set forth in the Committee's opposition [Docket No. 282] to the Trustee's motion [Docket No. 249] for a second interim financing order, the Committee submits that payment of the claim from the deposit is neither appropriate under the applicable standard for the preconfirmation payment of administrative claims nor required under the PSA. *See, e.g.*, Docket No. 282 at 7-8 (collecting cases); PSA, § 2(a) at 6 (not providing for purchase price reductions); PSA, § 6(a) at 12, § 7 at 13 (not establishing payment of the Liberty superpriority claim as a condition to closing).

- **Employment of CLG's Counsel as an Estate Professional.** The PSA provides that the Trustee "cooperate and support" a motion by CLG's counsel to be retained by the Debtor's estate as special counsel to pursue claims against any party interfering with the sale. PSA, § 12(s) at 18. The Committee sees no value to increasing administrative costs to the estate for permit the buyer to enforce its rights under the PSA.

- **Evidence of Fewer "Active Paying Files"**.  The original PSA calculated the deposit based on an approximation that the estate held 22,000 "active paying files."  *See* PSA, § 1(a)(3) at 2.  The Trustee has represented that, following an analysis, he has identified only 13,400 "active paying files," which will result in a purchase price reduction.  The Committee believes the Trustee must put evidence into the record, by declaration or testimony, establishing how he arrived at the number of active paying files.  This has a bearing on the proper calculation of the purchase price under the PSA.

The Committee remains hopeful that some, if not all, of these outstanding issues will be addressed between the filing of this Opposition and the hearing on the sale.

## IV.

## ARGUMENT

### A. The Debtor Can Satisfy § 363(f) With Respect to Consumer Claims If the Sale Order Adopts the Proposed Assignment Procedure.

Based on the Court's comments at the hearing on July 19, 2023, the Committee analyzed the Trustee's ability to satisfy § 363(f) with respect to consumer claims and concluded that the Proposed Assignment Procedure will resolve some of the potential issues created by the PSA.  The Committee's analysis does not extend to claims of allegedly secured creditors; however, the Committee submits that permitting liens to attach to the sale proceeds to the same validity, extent and priority as they did prepetition (subject to the ability of the Trustee, Committee or other party to challenge such claims) will satisfy § 363(f).

The Trustee has requested that, under § 363(f), the proposed sale be effected "free and clear" of encumbrances, interests or liens in the assets.  11 U.S.C. § 363(f); *see also In re Grumman Indus., Inc.*, 467 B.R. 694, 702 (S.D.N.Y. 2012) (discussing generally "free and clear" provision in § 363(f)).  Section 363(f) "empowers the trustee to sell the debtor's assets 'free and clear of any interest in such property of an entity other than the estate.'" While "[t]he Bankruptcy Code does not define the phrase "interest . . . property" for purposes of § 363(f) . . . [the] trend in caselaw '[favors] a broader definition [of the phrase] that encompasses other obligations that may flow from ownership of the property.'" *In re Gardens*, 567 B.R. 802, 825-826 (Bankr. C.D. Cal 2017) (citing

- 6 -

3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 363.06[1] (16th ed. 2017)). Therefore, courts interpret the term "any interest" expansively to effectuate liquidations and reorgazinations "to include not only in rem interests in property, but also other obligations that are "connected to or arise from the property being sold" or that could "potentially travel with the property being sold." *See, e.g.*, *In re La Paloma Generating, Co.*, 2017 WL 5197116, *4 (Bankr. D. Del. Nov. 9, 2017) (quoting *In re Trans World Airlines, Inc.*, 322 F.3d 283, 285, 288 (3d Cir. 2001)); *see also Mass. Dep't of Unemployment Assistance v. OPK Biotech, LLC (In re PBBPC, Inc.)*, 484 B.R. 860 (1st Cir. BAP 2013) (interests in property include monetary obligations arising from the ownership of property, even when those obligations are imposed by statute).

The alternative five conditions spelled out in § 363(f) under which a sale free and clear may be authorized are the following:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity [the holder of the interest] consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5) (2012); *see In re Shary*, 152 B.R. 724, 725 (Bankr. N.D. Ohio 1993) (stating the five conditions in § 363(f) are disjunctive and sale is proper where trustee can prove existence of any of the five conditions). The Committee submits that one or more of the tests of § 363(f) may be satisfied here with respect to consumer claims, even to the extent such claims arise from the prepetition violation of applicable law.

### 1. The Proposed Reformation and Sale Satisfies § 363(f)(1) With Respect to Any Statutory Liability Arising from the "Illegality" of the Prepetition LSAs.

The prepetition liabilities associated with the Debtor's prepetition operations in violation of applicable law constitute an "interest in property" which is subject to § 363(f)(1). *See, e.g.*, *In re Gardens Reg'l Hosp. & Med. Ctr., Inc.*, 567 B.R. at 826 ("The Attorney General's claim to regulatory authority . . . constitutes an 'interest in . . . property' for purposes of § 363(f)."). In *In re La Paloma Generating, Co.*, 2017 WL 5197116, *4 (Bankr. D. Del. Nov. 9, 2017), the California

- 7 -

Attorney General argued that the debtors could not transfer substantially all of their assets—including their electricity generating facility—to a purchaser free and clear of any obligation to surrender compliance instruments under the California cap and trade program for emissions generated by such facility during the pre-transfer period. The Delaware Bankruptcy Court stated:

> Whether property "may" be sold free and clear of an interest pursuant to section 363(f)(1) of the Bankruptcy Code turns on whether "applicable nonbankruptcy law permits sale of such property free and clear of such interest." Applicable nonbankruptcy law here is California law, and, in particular, the Regulation. Under California law, the general rule of successor liability is that the corporate purchaser of another corporation assets presumptively does not assume the seller's liabilities unless: (1) there is an express or implied assumption of liability; (2) the transaction amounts to a consolidation or merger of the two corporations; (3) the purchasing corporation is a mere continuation of the sellers; or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts. […] The Regulation does not provide for successor liability nor does it in anyway make a Purchaser of a Facility liable for the emissions of the former-Covered Entity. Nor does it explicitly express the need for a purchasing entity to provide for the former-Covered Entity's emissions. […] Under section 363(f), "[t]he trustee may sell property ... free and clear of any interest in such property of an entity other than the estate, only if— ... (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest ...." As noted above, the Court finds that the Regulation does not provide for successor liability related to the Debtor Emission Surrender Obligations. Nor is environmental liability excepted by Section 363(f). […] In the case sub judice, Debtor Emission Surrender Obligations are an interest under section 363(f) and the Regulation does not impose successor liability nor does section 363(f).

*In re La Paloma Generating, Co.*, 2017 WL 5197116, *4-8.

Here, it is nearly undisputed that the Debtor may have violated applicable laws and regulations prepetition but there is no allegation that those laws expressly impose successor liability. The Trustee recognizes that he must sell the assets "in accordance with applicable non-bankruptcy law," and has sought reformation of the LSAs in the Motion to ensure compliance with applicable non-bankruptcy law. Accordingly, notwithstanding the Debtor's prepetition violations of consumer protection laws and regulations, the estates' assets may be sold free and clear of any such claim so long as the LSAs are properly reformed to comply with applicable law.

**2.    The Proposed Sale Satisfies § 363(f)(2) With Respect to Consumers That Do Not "Opt-Out" of the Transferred, Reformed LSA or Enter Into a New Agreement with the Buyer.**

Section 363(f)(2) authorizes a sale to be free and clear of an interest if the interest holder consents to the sale.  Here, the Proposed Assignment Procedure provides for a methodical process during which consumers will have the right to "opt-out" of the transfer of the reformed LSA to the buyer or may affirmatively enter into a new agreement with the buyer.  *See, e.g.*, *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent"), *cert. denied*, 538 U.S. 962 (2003); *accord In re Baroni*, No. 22-7414 ,2023 WL 4236887, at *6 (C.D. Cal. June 28, 2023) (citing *FutureSource LLC*).  With respect to these consumers, the Trustee may sell free and clear pursuant to § 363(f)(2).

**3.    The Proposed Sale Satisfies § 363(f)(5) With Respect to "Opt-Out" Consumers or Consumers with Rejected LSAs.**

Section 363(f)(5) permits a sale of property free and clear of liens and interests if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. § 363(f)(5); *P.K.R. Convalescent Ctrs., Inc. v. Commonwealth of Va., Dep't of Med. Assistance Serv. (In re P.K.R. Convalescent Ctrs., Inc.)*, 189 B.R. 90 (Bankr. E.D. Va. 1995) (allowing sale of nursing home assets under § 363(f)(5) over objection of the Department of Medical Assistance Service where its interest was reducible to a claim and subject to a hypothetical money satisfaction).

Section 363(f)(5) has generally been interpreted to mean that if, under applicable law, the holder of the interest could be compelled to accept payment in exchange for its interest, the trustee may take advantage of that right by replacing the holder's interest with a payment or other adequate protection.  *See* Collier on Bankruptcy, ¶ 363.06 [6] (15th ed. rev. 2003). Applicable nonbankruptcy law may recognize a monetary satisfaction when the interest holder is to be paid in full out of the proceeds of the sale or otherwise.  *Id.*  However, § 363(f)(5) does not require full payment to the interest holder if the trustee can demonstrate the existence of another legal or equitable proceeding

by which the holder may be compelled to accept less than full satisfaction of the debt. *In re Grand Slam U.S.A., Inc.*, 178 B.R. 460, 461-62 (E.D. Mich. 1995) (holding that the "money satisfaction" language in § 363(f)(5) does not require full payment to the lien holder); *In re Healthco Int'l Inc.*, 174 B.R. 174, 176-78 (Bankr. D. Mass. 1994) (construing "money satisfaction of such interest" to mean a payment constituting less than full payment of the underlying debt because any lien can always be discharged by full payment of the underlying debt pursuant to §363(f)(3)); *Scherer v. Fed. Nat'l Mortgage Ass'n (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (Bankr. N.D. Ill. 1993).

Courts have held that confirmation is a typical "legal proceeding" by which an entity may be compelled to accept less than full money satisfaction and which will permit the sale of creditor's collateral free and clear of interest under § 363(f)(5). *See, e.g.*, *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 497, 508 (Bankr. N.D. Ala. 2002) (holding that the liens or interests identified in the sale motion could be compelled to accept a money satisfaction in a cramdown plan of reorganization in a chapter 11 case); *In re Terrace Chalet Apartments, LTD.*, 159 B.R. at 829 (finding that § 1129(b)(2) cramdown is such a provision); *In re Perroncello*, 170 B.R. 189 (Bankr. D. Mass. 1994); Collier, ¶ 363.06[6][a]; *but see In re PW, LLC*, 391 B.R. 25, 46 (B.A.P. 9th Cir. 2008).

Here, consumers with refund claims arising from their "opt-out" of the reformed LSA, or rejection of their reformed LSA by the buyer, will hold a claim against the estate subject to administration through the confirmation process. The Committee understands that, in addition to general unsecured creditor recoveries, these consumers may also have a right to payment from certain funds held by the Trustee in a blocked account. The consumer's rights to these different pools of assets is properly determined through an orderly, post-confirmation process. In any event the terms of a confirmed plan providing for liquidation and distribution of those estate funds in accordance with the Bankruptcy Code's priority scheme undoubtedly constitutes a recognized legal proceeding by which a consumer holding a general unsecured claim may be compelled to accept less than full payment on its claim. Accordingly, the Committee believes that the proposed sale would satisfy § 365(f)(5) with respect to "opt-out" or rejected consumer claims.

**B.     The Proposed Assignment Procedure Will Satisfy § 365 With Respect to the Reformed Legal Services Agreements.**

Barring exceptions not herein relevant, § 365(a) authorize a trustee, "subject to the Court's approval, . . . [to] assume or reject any executory contract or unexpired lease of the debtor." A trustee may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Prods, Inc.*, 78 F.3d 18, 25 (2d. Cir. 1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y. 1996). In reviewing a decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); *see also In re Gucci*, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the trustee unless that judgment is the product of bad faith, whim, or caprice. *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991) (citing *Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986)).

Pursuant to § 365(f)(2), a trustee may assign its executory contracts and unexpired leases, provided the trustee first assumes such executory contracts and unexpired leases in accordance with §365(b)(1), and provides adequate assurance of future performance by the assignee. Pursuant to § 365(b)(1), assumption of executory contracts and unexpired leases requires a trustee to: (a) cure any existing defaults under such agreements; (b) compensate all counterparties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1); *see also In re Bowman*, 194 B.R. 227, 230 (Bankr. D. Ariz. 1995); *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd*, 161 B.R. 50 (B.A.P. 9th Cir. 1993). Pursuant to § 365(f)(1), a trustee may assign an executory contract or unexpired lease pursuant to § 365(f)(2) notwithstanding any provision in such executory contract or unexpired lease that prohibits, restricts or conditions the assignment of such executory contract or unexpired lease.

1  The assumption and assignment of executory contracts furthers the goals of chapter 11 of promoting reorganization by balancing the trustee's interest in maximizing the value of its estate against the contracting party's interest in receiving the benefit of its bargain and being protected against default by the trustee after assumption has occurred. *In re Embers 86th Street. Inc.*, 184 B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

Here, the PSA provides for assumption and assignment of an unknown number of reformed LSAs and (based on the parties' agreement) will provide the buyer 90 days from closing to remove consumer agreements and other executory contracts from an assumed contracts list.  As set forth above, the Committee proposes a Cure Notice informing counterparties of potential assumption and assignment. The Proposed Assignment Procedure similarly provides counterparties an opportunity to present objections and participate in a hearing during the same period the buyer has already acknowledged it must permit consumer counterparties to consider their "opt-out" rights. Sufficient notice and an opportunity to object to the proposed assumption and assignment of consumer agreements and other executory agreements, and for consumers to exercise their opt-out rights, is critical in order to afford consumer clients and other counterparties due process. The proposed Interim Association Agreement would permit the estate to cease the accrual of administrative liability as this process plays out post-closing, while obligating the buyer to service consumer clients during the Gap Period.  The Committee submits that this procedure would ensure compliance with the provisions of § 365(b) while still protecting the estate's interests in a rapid post-closing transition of operations to the buyer.

## V.

## **RESERVATION OF RIGHTS**

The Committee continues to negotiate with the Trustee and CLG concerning the relief requested in the Motion, and, as such, expressly reserves all rights with respect to the Motion and the PSA.  Moreover, as the Motion permits overbids, the Committee reserves all rights with respect to any overbid proposal submitted at the hearing on the Motion, and to assert a more fulsome objection and any additional objections to the proposed sale at the Sale Hearing.  Nothing contained

herein shall be construed as an admission with respect to the Motion or any potential overbid, a waiver of arguments, claims, or defenses, or an election of remedies.

## VI.

## **CONCLUSION**

Based on the foregoing, the Committee respectfully requests that the Court enter an order: (i) granting the Motion, subject to the incorporation or resolution of the Committee's outstanding issues in the final PSA; and (ii) granting the Committee such other and further relief as is just and appropriate under the circumstances.

Dated: July 19, 2023                                                    Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: *Keith C. Owens*
Proposed Counsel to Official Committee
of Unsecured Creditors

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 900, Los Angeles, CA 90067.

A true and correct copy of the foregoing documents entitled:  LIMITED OPPOSITION TO MOTION OF TRUSTEE RICHARD A. MARSHACK FOR ENTRY OF AN ORDER (A) APPROVING SALE, SUBJECT TO OVERBID, OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B) AND (B) APPROVING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND OTHER AGREEMENTS on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On 7/19/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Ronald K Brown**    ron@rkbrownlaw.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Shawn M Christianson**    cmcintire@buchalter.com, schristianson@buchalter.com
- **Randall Baldwin Clark**    rbc@randallbclark.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Daniel A Edelman**    dedelman@edcombs.com, courtecl@edcombs.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, Kristina.Heller@Dinsmore.com
- **Jeffrey I Golden**    jgolden@go2.law, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com;golden.jeffreyi.b117954@notify.bestcase.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Alan Craig Hochheiser**    ahochheiser@mauricewutscher.com, arodriguez@mauricewutscher.com
- **Garrick A Hollander**    ghollander@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Razmig Izakelian**    razmigizakelian@quinnemanuel.com
- **Joon M Khang**    joon@khanglaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Nicholas A Koffroth**    nkoffroth@foxrothschild.com, khoang@foxrothschild.com
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Christopher J Langley**    chris@slclawoffice.com, omar@slclawoffice.com;langleycr75251@notify.bestcase.com;ecf123@casedriver.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Michael D Lieberman**    mlieberman@lipsonneilson.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com

Active\118774763.v1-1/20/21

- **Kenneth Misken**   Kenneth.M.Misken@usdoj.gov
- **Byron Z Moldo**   bmoldo@ecjlaw.com, amatsuoka@ecjlaw.com,dperez@ecjlaw.com
- **Alan I Nahmias**   anahmias@mbn.law, jdale@mbnlawyers.com
- **Victoria Newmark**   vnewmark@pszjlaw.com
- **Queenie K Ng**   queenie.k.ng@usdoj.gov
- **Teri T Pham**   tpham@epglawyers.com, ttpassistant@epglawyers.com
- **Douglas A Plazak**   dplazak@rhlaw.com
- **Ronald N Richards**   ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Gregory M Salvato**   gsalvato@salvatoboufadel.com, calendar@salvatolawoffices.com;jboufadel@salvatoboufadel.com;gsalvato@ecf.inforuptcy.com
- **Olivia Scott**   olivia.scott3@bclplaw.com
- **Jonathan Serrano**   jonathan.serrano@dinsmore.com
- **Paul R Shankman**   PShankman@fortislaw.com, info@fortislaw.com
- **Leslie Skorheim**   leslie.skorheim@usdoj.gov
- **Andrew Still**   astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**   sharon.weiss@bclplaw.com, raul.morales@bclplaw.com,REC_KM_ECF_SMO@bclplaw.com
- **Johnny White**   JWhite@wrslawyers.com, jlee@wrslawyers.com;eweiman@wrslawyers.com

**2.   SERVED BY UNITED STATES MAIL**: On July 19, 2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.

Parties not on ECF but require service of filings:

Grobstein Teeple LLP
23832 Rockfield Blvd suite 245
Lake Forest, CA 92630

Jason Patterson Stopnitzky
52 Cupertino Circle
Aliso Viejo, CA 92656

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 19, 2023, I served the following persons and/or entities by personal delivery, mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
United States Bankruptcy Court, Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct

| 7/19/2023 | Kimberly Hoang | */s/ Kimberly Hoang* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |