ZEV SHECHTMAN (State Bar No. 266280)
zs@DanningGill.com
AARON E. DE LEEST (State Bar No. 216832)
adeleest@DanningGill.com
SHANTAL MALMED (State Bar No. 351496)
Smalmed@DanningGill.com
DANNING, GILL, ISRAEL & KRASNOFF, LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, California 90067-6006
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for MORNING LAW GROUP, P.C.,

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>LITIGATION PRACTICE GROUP,<br><br>Debtor. | Case No. 8:23-bk-10671-SC<br><br>Chapter 11 |
| RICHARD A. MARSHACK,<br><br>Plaintiff,<br><br>vs.<br><br>TONY DIAB, et al.,<br><br>Defendants. | Adv. No. 8:23-ap-01046-SC<br><br>**STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LBR 7026-1(c)(3) REGARDING MOTION FOR PROTECTIVE ORDER AND TO MODIFY SUBPOENA FILED BY MORNING LAW GROUP P.C. PURSUANT TO FRCP 26(c)(1)(G) AND FRCP 45(d)(3)(B)(i)**<br><br>Judge: Hon. Scott C. Clarkson<br>Date: To Be Determined<br>Time: To Be Determined<br>Crtrm.: 5C |

The following persons or entities are parties to this stipulation ("Stipulation"): Morning Law Group, P.C. ("MLG"), Bradford Lee, Resolution Processing LLC ("ResPro"), and Greyson Law Center PC ("Greyson"), who are collectively referred to as the "Parties" to this Stipulation.

1747991.1  27175

1

This Stipulation is submitted pursuant to Local Bankruptcy Rule 7026-1(c)(3), which requires that parties who are unable to resolve a discovery dispute file a stipulation identifying "each disputed issue that remains to be determined at the hearing and the contentions and points and authorities of each party as to each issue." LBR 7026-1(c)(3)(A). The Parties' respective positions are as follows:

## I.

## MLG'S POSITION

### MLG's Contentions and Statement of the Disputed Issue

1. MLG is not a party to the above-captioned action.

2. MLG acquired certain assets from the debtor's estate pursuant to section 363 of the Bankruptcy Code. The sale closed in August 2023. MLG had no prior connection to the debtor or the Trustee. MLG had no prior connection to Greyson.

3. MLG is a law firm. It provides consumer debt dispute services, including primarily to consumer clients who are former clients of the debtor. ResPro provides back-office, administrative and other business services to MLG to assist MLG with the operation of the business that MLG acquired from the debtor's estate.

4. Mr. Lee is an employee of ResPro. Mr. Lee has knowledge regarding the clients, business, financial affairs, operations, and other matters concerning MLG. The information that Mr. Lee has regarding MLG is proprietary. The information is confidential and in some cases privileged. MLG is a private company that is in a competitive business space. Any information about MLG's business affairs could be useful to a competitor of MLG. MLG also handles sensitive personal data involving consumer clients. ResPro and its employees, including Mr. Lee, are responsible for maintaining that information in strict confidence. This is true regardless of the existence of a formal confidentiality agreement.

5. In other words, MLG believes that all of the work that ResPro and Mr. Lee do for MLG constitute "trade secrets or other confidential research, development, or commercial

information" ("Confidential Information") entitled to protection under FRCP 26(c)(1)(G) which is incorporated by FRBP 7026 and FRCP 45 which is incorporated by FRBP 9016.

6. As a non-party, MLG has been forced to act to protect its information because Greyson has served on Mr. Lee a subpoena to appear at a deposition regarding the declaration that Mr. Lee submitted in the above-captioned action. See doc. no. 347. Greyson's notice of deposition states that the subject matter of the deposition will include "Lee's present employment at Morning Law Group and/or Resolution Trust," even though nothing in Mr. Lee's Declaration references or relates to MLG. See doc. no. 347 at ECF p. no. 22 at lines 23-24. Mr. Lee is not employed by MLG. Presumably the reference to "Resolution Trust" is to ResPro, Lee's employer.

7. MLG is, therefore, greatly concerned that the deposition of Mr. Lee will include questions about MLG or work that ResPro does for MLG.

8. MLG's counsel has met and conferred with Greyson's counsel and has attempted to negotiate terms of a protective order to prevent disclosure regarding MLG's Confidential Information, which could include questions about MLG or questions about services ResPro provides to MLG. MLG does not believe that disclosure of such information would be necessary, reasonable or appropriate under the circumstances.

9. In response to MLG's concerns, Greyson's counsel proposed that the deposition be held and that MLG preserve its rights by objecting to questions and then seeking to redact portions of the transcript after the fact. In other words, Greyson suggests that the Parties adjudicate the protection of information *after* the Confidential Information is already disclosed. This is not an acceptable resolution to MLG because:

    a. Mr. Lee is not MLG's employee and MLG's counsel cannot instruct Mr. Lee not to answer questions unless the Court authorizes MLG to do so. Mr. Lee's counsel has informed MLG's counsel that Mr. Lee's counsel will not be able to instruct Mr. Lee not to answer questions that may include disclosure of MLG Confidential Information absent a protective order.

    b. Greyson is an admitted competitor of MLG. Allowing Greyson to elicit information about MLG in discovery and then later letting MLG seek to redact that information

1 | does not alleviate the concern of a competitor knowing and using information about MLG (the "cat
2 | will be out of the bag").

3 |       c.     MLG's information is sensitive, private, proprietary and privileged. MLG has an ethics monitor appointed by the Court and multiple government agencies throughout the country to whom MLG reports and by whom MLG is regulated. MLG does not know what Greyson is going to ask about MLG and cannot risk that such information be elicited in the uncontrolled manner that Greyson demands.

      d.     MLG proposed to Greyson that if it comes up with questions about MLG during the Lee deposition, that Greyson can submit them in writing to MLG at a later time. If not objectionable, MLG will later provide or allow Lee or ResPro to provide answers. If objectionable, the Court can later consider the information at issue, including en camera. Greyson rejected this proposal. Hence, this Stipulation and MLG's accompanying motion for protective order are needed.

**MLG's Points and Authorities**

10.     Federal Rule of Bankruptcy Procedure ("FRBP") 7026 states that Federal Rule of Civil Procedure ("FRCP") 26 applies in adversary proceedings. FRCP 26 contains general discovery provisions for civil actions. FRCP 26(c)(1) permits persons to seek a protective order to prevent "annoyance, embarrassment, oppression, or under burden or expense," <u>including</u> if discovery requires the revelation of a "trade secret or other confidential research, development, or commercial information." FRCP 26(c)(1)(G). The rule uses the term "including" before listing a number of examples of the kinds of information that may be protected, indicating that the list is not an exclusive list of categories of information that may be protected from discovery. The rule states that a "party" or a "person" may seek protection. *Id.* This means that these rules protect anyone whose information is at issue, not only parties to the action. FRCP 45 (made applicable by FRBP 9016) regarding subpoenas similarly protects persons from disclosure of "a trade secret or other confidential research, development, or commercial information." FRCP 45(d)(3)(B)(i).

1747991.1 27175

4

11. Trial courts enjoy broad power and discretion to issue protective orders tailored to the circumstances of the case. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

12. A non-party deserves extra protection from the courts. *Soto v. Castlerock Farming and Transport, Inc.*, 282 F.R.D. 492, 504 (E.D. Cal. 2012) (quoting *High Tech Medical Instrumentation v. New Image Indus.*, 161 F.R.D. 86, 88 (N.D.Cal.1995) (citing *United States v. Columbia Broadcasting System*, 666 F.2d 364, 371–72 (9th Cir.1982)). The court is able to use its "ample discretion" to "modify a subpoena that unduly burdens a nonparty." *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2016 WL 164294, at *2 (N.D. Cal. Jan. 14, 2016) (quoting in part *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).

13. In deciding whether to modify or quash a subpoena the court weighs the burden on the party whose information is sought against the value of the information to the serving party. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005).

14. Applying the above legal concepts requires careful consideration of the following unique facts:

    a. MLG does not know what questions will be asked about MLG and, absent the requested protection, will not know until after the questions are asked and answered.

    b. As a non-party competitor of Greyson, and holder of significant confidential, proprietary, consumer, personal, and regulated information, MLG is very concerned that the revelation of information regarding MLG will be harmful to MLG and its consumer clients, and there will be no sufficient remedy after the fact.

    c. Although Greyson has not established that MLG is relevant to the adversary proceeding, Greyson refuses to voluntarily limit the discovery in any way.

    d. In light of MLG's non-party status and the other sensitive facts of MLG, MLG believes it would be appropriate to enter a protective order that would allow MLG, ResPro and Mr. Lee to participate in the deposition with confidence that MLG's Confidential Information will be protected.

15. Accordingly, MLG has submitted a proposed order with its separately filed motion for protective order and to modify the subpoena ("Protective Order").

**Relief Requested in MLG's Proposed Protective Order**

The relief requested in MLG's proposed Protective Order, the form of which ResPro and Mr. Lee approve, is as follows:

1. No party in this action shall be required to disclose MLG Confidential Information absent further order of this Court.

2. Bradford Lee shall not be required to disclose MLG Confidential Information in his deposition on February 2, 2024 or in any continuance thereof.

3. Counsel for Bradford Lee is authorized to instruct Mr. Lee not to answer questions regarding MLG Confidential Information.

4. Counsel for MLG is authorized to instruct Mr. Lee not to answer questions regarding MLG Confidential Information.

5. To the extent the deposing party or any other party seeks MLG Confidential Information, such questions shall be reserved for later written review by MLG and, if necessary, consideration by the Court for relevancy and protected status, and need not be answered until after the Court determines whether such MLG Information is subject to protection under FRCP 7026(c)(1) and/or FRCP 45(d)(3)(B)(i) or other applicable law.

6. No person shall be sanctioned, or incur any expense to another, as a result of their refusal to provide MLG Confidential Information to any other party or non-party in this action, including if there is a dispute regarding whether any information should be designated as MLG Confidential Information.

## II.

## RESPRO'S POSITION

ResPro agrees with MLG's position.

## III.

## BRADFORD LEE'S POSITION

Bradford Lee agrees with MLG's position.

## IV.

## GREYSON'S POSITION

1. Non-party witness Bradford Lee ("Lee") signed 2 Declarations (1/8/24 and 1/15/24 declarations) for Trustee Marshack's attorneys, the Celentino firm (Dinsmore & Scholl), which the Celentino firm filed with this Court, opposing the Motion of Greyson Law Center PC ("Greyson") [dkt.290] which moves to vacate, as to Greyson, the 5/26/23 Lockout and Preliminary Injunction Order [dkt.13, and the continuation order dkt70], and which moves for an order ordering the Celentino firm to return to Greyson, Greyson's computers, data and documents seized at Greyson's office on 6/2/23, by Celentino firm attorneys/field agents.

2. Greyson's counsel noticed (and subpoenaed) Lee (no documents requested, testimony only) to give his deposition on 1/24/24/ at 10am, in person, at The Bankruptcy Law Firm, PC, to be taken by Greyson counsel Kathleen P. March, Esq. The process server delivered a $127.10 witness fee check to Lee, along with the deposition subpoena.

3. At the emergency hearing held last week, on 1/24/24, at 10am, this Court **denied Lee's** Motion to Quash Subpoena, and Motion for Protective Order against subpoena, filed by William Wall, Esq., the attorney for non-party witness Lee. As Lee already lost last week, Lee cannot "agree with MLG" position, because Lee already lost on Lee's request for a protective order that this Court heard and denied at the 1/24/24 at 10am hearing.

4. At the 1/24/24/ at 10am hearing, this Court ordered Lee to give Lee's deposition on 2/2/24, starting at 10am, in person, at The Bankruptcy Law Firm, PC, to defendant Greyson Law Center PC (Greyson) attorney Kathleen P. March, Esq of The Bankruptcy Law Firm, PC, who had

1747991.1 27175

7

noticed Lee's deposition for 1/24/24 at 10am, and who had, by registered process server, served Lee on 1/17/24 with a deposition subpoena for 1/24/24.

5. **In last week's meet and confer, Zev Shechtman, counsel for MLG agreed that** Greyson counsel is entitled to ask Lee how Lee came to sign the 1/8/24 and 1/15/24 Declarations that Trustee's attorneys, the Celentino firm, then filed with this Court, opposing Greyson's dkt.290 Motion. Zev agreed that if MLG or Resolution Processing personnel were involved in procuring those Lee Declarations, that Greyson counsel is entitled to find out how they were involved, including exploring was Lee given positive or negative consideration to sign those Declarations, and who was involved in the process of those Declarations being prepared/signed/filed.

6. Now Morning Law Group ("MLG") seeks a protective order that MLG's attorney can instruct non-party witness Bradford Lee, **not** to answer questions that MLG's attorney claims would call for Lee to state MLG's "confidential information" or privileged information.

7. No privilege is named, and there is none, so that part of MLG's Motion should be denied for no privilege named or established.

8. The "confidential information" portion of MLG's request for protective order should be denied also, because MLG's above statement of issues has so little content that it fails to establish that Lee's testimony could call for "confidential commercial information" of MLG. "Confidential information " is not the correct term. The terminology used in FRCP Rule 45(d)(3)(B)(i)—which is incorporated into FRBP Rule 9016—is that a subpoena **may** be quashed or modified it if requires : "(i) disclosing a trade secret or other **confidential** research, development or **commercial information**;"

9. Lee is employed by Resolution Processing (ResPro), which MLG counsel Zev Shechtman admitted, in last week's meet and confer, is a different company from MLG. Zev represents MLG, not Resolution Processing. Zev cannot move on behalf of Resolution Processing.

1747991.1  27175                                     8

10. Anything that Lee—an employee of Resolution Processing, knows about MLG's business, cannot qualify as "confidential commercial information" of MLG.

11. If Lee who is an employee of a different company (Resolution Processing), knows MLG information, that information does not met the accepted definition of "**confidential commercial information**".

12. There is an accepted definition of "**confidential commercial information**" in much case law, which is:

> "Confidential commercial information has been defined as important proprietary information that provides the business entity with financial or competitive advantage when it is kept secret and results in competitive harm when it is released to the public."

*Lyman v. Greyhound Lines, Inc.*, 2:20-cv-01812-DCN, 2021 WL 3811298 at *3 (D. S.C. 8/26/2021):citing *Rech v. Wal-Mart Stores East, L.P.*, 2020 WL 3396723, at *2 (D.S.C. July 19, 2020) (internal quotation omitted).

13. If Lee, who works for Resolution Processing--a different company than MLG--has learned MLG information working for Resolution Processing—a different company that MLG, such MLG information cannot be "confidential commercial information" of MLG, because it wasn't kept secret by MLG, if someone working for a different company than MLG learned that information. Information that MLG did not keep secret, is not "confidential commercial information", pursuant to the above quoted, accepted, definition of "**confidential commercial information**".

14. Second, MLG's part of the proposed Stipulation fail to explain what competitive harm would befall MLG, if the protective order MLG seeks is denied. Vague allegations of harm, with out specific facts/content, are insufficient to entitle the entity making the vague allegations of harm to a protective order:

> "All Tri-State has done is claim that the documents at issue are confidential and generally claim that it will be harmed if these documents are disclosed to Sentinel. But, '[a]llegations

of harm' or prejudice must be supported with specific examples or articulated reasoning. ... '[B]road allegations of harm' are insufficient."

*Cheatwood v. Christian Brothers Services*, 2:16-cv-2946-HRH, 2018 WL 684736 at *7 (D. Ariz. 2/2/2018) (internal citations omitted).

15. It doesn't have either, but even if MLG's part of the Stipulation had sufficient law and evidence to prove that the information Lee might (who knows) testify to was MLG "confidential commercial information", **that would NOT entitle MLG to the Protective Order MLG seeks**. All that would do is to require the Court to **weigh** Greyson's need for the information, to determine whether Greyson's need for the information **outweighs** MLG's desire to keep the information secret. MLG's facts and law do not do that analysis, so the proper result is the protective order MLG seeks should properly be denied.

16. The *Lyman v. Greyhound Lines, Inc.*, 2:20-cv-01812-DCN, 2021 WL 3811298 at *3 (D. S.C. 8/26/2021), cited supra, at *4, explains:

"Fed. R. Civ. P. 26(c)(1). "The standard for issuance of a protective order is high." Wellin v. Wellin, 211 F. Supp. 3d 793, 800 (D.S.C. 2016), order clarified, 2017 WL 3620061 (D.S.C. Aug. 23, 2017) (quoting Nix v. Holbrook, 2015 WL 631155, at *2 (D.S.C. Feb. 13, 2015)). "The party moving for a protective order bears the burden of establishing good cause." Slager v. Southern States Police Benevolent Association, Inc., 2016 WL 4123700, at *2 (D.S.C. Aug. 3, 2016) (quoting Webb v. Green Tree Servicing, LLC, 283 F.R.D. 276, 278 (D. Md. 2012)). "**Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production**." Id. (quoting UAI Tech., Inc. v. Valutech, Inc., 122 F.R.D. 188, 191 (M.D.N.C. 1988)). **In other words, the court "must weigh the need for the information versus the harm in producing it**." Id. (quoting A Helping Hand, LLC v. Baltimore Cty., Md., 295 F. Supp. 2d 585, 592 (D. Md. 2003)). The district court is afforded broad discretion "to decide when a

protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984)."

17. Even if MLG's facts and law proved that Lee might testify to "confidential commercial information" of MLG--which MLG has not shown--that would not entitle MLG to any protective order. All it would do is shift the burden to Greyson to prove that the information Greyson seeks from Lee is relevant to Greyson's Motion [dkt.290]. *United Property & Casualty Insurance v. Couture,* 2:19-cv-01856-DCN, 2020 WL 2319086 at *7 (D. S.C. 5/11/2020):

> "In seeking to prevent discovery based on a proprietary information claim, the party resisting discovery must 'demonstrate to the Court that the information being sought is a trade secret and that its disclosure might be harmful.' *Mustang Innovation, LLC v. Sonoco Prod. Co.*, 2015 WL 4508830, at *2 (D.S.C. July 24, 2015) (quoting *In re Sealed Air Corp.*, 220 F.R.D. 452, 453 (D.S.C. 2004)). 'Once shown, the burden shifts to the party that seeks the discovery to establish the **relevance** of the trade secret to the lawsuit and that it is necessary to the action.' *Id.* Finally, 'if relevance and necessity are established, the Court "must balance the need for the information against the injury that would ensue if disclosure is ordered." ' *Id.* (internal citation omitted).
>
> " 'There is no absolute privilege to protect trade secrets from disclosure during the discovery process.' *Id.* (*citing Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1185 (D.S.C. 1974)). Discovery of confidential information, however, 'is virtually always ordered once the movant has established that the secret information is relevant and necessary.' *Id.* (internal citation and quotation marks omitted). Under Rule 45(d)(3)(B)(i) and its counterpart Rule 26(c)(1)(g), confidential information 'is more than just routine business data; instead, it is important proprietary information that provides the business entity with a financial or competitive advantage when it is kept secret, and results in financial or competitive harm when it is released to the public.' *Id.* at 2–3 (quoting *Cobb v. Ramey Motors, Inc.*, 2014 WL 7159235, at *4 (S.D. W. Va. Dec. 15, 2014)). Confidential commercial information has been defined as 'information, which if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained.' *Id.* at 2–3 (quoting *Massey Coal Servs., Inc. v. Victaulic Co. of Am.* 249 F.R.D. 477, 482 (S.D. W. Va. 2008))."

18. Finding out how Lee came to sign his 2 Declarations for Trustee's attorneys (the Celentino firm) is **obviously highly relevant**, because Lee's might reveal that persons other than Lee had a hand in preparing the Declarations Lee signed; might reveal that Lee was induced or threatened to sign those declarations; might show the Celentino firm has been trying to destroy

1747991.1 27175                                    11

Greyson—from 6/2/23 to present—to make it impossible for Greyson to effectively compete against MLG, so MLG can make more money, and therefore can pay more money to Trustee Marshack, even though Greyson has a legal right to compete against MLG.

7. In addition to MLG totally failing to show entitlement to be granted the protective order it seeks, even if MLG were entitled to be granted some Protective Order (it isn't) the scope of MLG's proposed Protective Order (requested in "Relief Requested in MLG's Proposed Protective Order", all 5 things 1-5 supra, are improper. None of those 5 things MLG requests could properly be granted **as follows:**

MLG says: **(1)** No party in this action shall be required to disclose MLG Confidential Information absent further order of this Court: INVALID, totally overbroad, MLG is seeking restrictions on Lee testimony only, not on anything else.

MLG says: (2) Bradford Lee shall not be required to disclose MLG Confidential Information in his deposition on February 2, 2024 or in any continuance thereof: For reasons briefed supra, MLG has not sustained its burden of proving it is entitled to any protective order restricting Lee's testimony on 2/2/24 or in any continuance thereof.

MLG says: (3) Counsel for Bradford Lee is authorized to instruct Mr. Lee not to answer questions regarding MLG Confidential Information: WRONG. Lee lost Lee's Motion for Protective Order last week, heard and denied on 1/24/24, and Lee is NOT a movant on LMG's present Motion.

MLG says: (4) Counsel for MLG is authorized to instruct Mr. Lee not to answer questions regarding MLG Confidential Information: WRONG: As discussed supra, "Confidential Information" is not the correct standard, and MLG has not presented facts or law to entitle it to any protective order. In addition, this Court, NOT MLG, determines what questions asked Lee by Greyson counsel can properly be subject to a protective order, and per MLG's lack of facts and law, the answer is NOTHING.

MLG says: (5) To the extent the deposing party or any other party seeks MLG Confidential Information, such questions shall be reserved for later written review by MLG and, if necessary, consideration by the Court for relevancy and protected status, and need not be answered

until after the Court determines whether such MLG Information is subject to protection under FRCP 7026(c)(1) and/or FRCP 45(d)(3)(B)(i) or other applicable law.  WRONG ON THE LAW. Greyson counsel has not found any case which applied what (5) requests, ie to allow MLG to block Lee from answering any question that MLG claims is "Confidential Information" (not the correct legal standard as quoted supra).  Expect that MLG counsel would instruct Lee not to answer any question that MLG counsel thought produce an answer unfavorable to MLG, even if the question did NOT ask for information that was "confidential commercial information" which MLG had kept secret, and as to which determinant to MLG of the information being revealed exceeded the determinant to Greyson of NOT getting the question answered.  No case law gives that kind of "carte blanche" to instruct a non-party witness, who is NOT an employee of MLG, to answer highly relevant questions.

Regarding MLG (6):  No person shall be sanctioned, or incur any expense to another, as a result of their refusal to provide MLG Confidential Information to any other party or non-party in this action, including if there is a dispute regarding whether any information should be designated as MLG Confidential Information:  This is a misstatement of what FRCP Rule 45, and FRCP Rule 37 says, which is loser pays, unless there is some circumstance causing court to order otherwise.  In addition, if the Protective Order MLG seeks is denied--as it should be, pursuant to the facts and law Greyson here briefs--and if Lee refused to answer, Lee should be sanctioned and would additionally be subject to other actions by the Court to compel Lee to answer.

V.

**SIGNATURES**

The following counsel for the Parties have participated in the drafting, and hereby, jointly submit this Stipulation.

| | | |
|---|---|---|
| 1 | DATED: January 29, 2024 | DANNING, GILL, ISRAEL & KRASNOFF, LLP |
| 2 | | |
| 3 | | By: /s/ Zev Shechtman |
| 4 | | ZEV SHECHTMAN |
| | | Attorneys for MORNING LAW GROUP, P.C. |
| 5 | | |
| 6 | DATED: January ___, 2024 | MARKO & MAGOLNICK, P.A. |
| 7 | | |
| | | **[Signature to Follow]** |
| 8 | | By: _____ |
| 9 | | JOEL MAGOLNICK |
| | | Attorneys for RESOLUTION PROCESSING, LLC |
| 10 | | |
| 11 | DATED: January ___, 2024 | THE WALL LAW OFFICE A PROFESSIONAL CORPORATION |
| 12 | | |
| 13 | | |
| 14 | | By: _____ |
| | | WILLIAM J. WALL |
| 15 | | Attorneys for BRADFORD LEE |
| 16 | | |
| 17 | DATED: January ___, 2024 | THE BANKRUPTCY LAW FIRM, PC |
| 18 | | |
| 19 | | By: _____ |
| | | KATHLEEN P. MARCH |
| 20 | | Attorneys for GREYSON LAW CENTER PC |

1747991.1 27175

14

Greyson here briefs--and if Lee refused to answer, Lee should be sanctioned and would additionally be subject to other actions by the Court to compel Lee to answer.

V.

**SIGNATURES**

The following counsel for the Parties have participated in the drafting, and hereby, jointly submit this Stipulation.

DATED: January ___, 2024        DANNING, GILL, ISRAEL & KRASNOFF, LLP


By: _____
ZEV SHECHTMAN
Attorneys for MORNING LAW GROUP, P.C.

DATED: January ___, 2024        MARKO & MAGOLNICK, P.A.


By: _____
JOEL MAGOLNICK
Attorneys for RESOLUTION PROCESSING, LLC

DATED: January ___, 2024        THE WALL LAW OFFICE A PROFESSIONAL CORPORATION


By: _____
WILLIAM J. WALL
Attorneys for BRADFORD LEE

DATED: January ___, 2024        THE BANKRUPTCY LAW FIRM, PC


By: _____
KATHLEEN P. MARCH
Attorneys for GREYSON LAW CENTER PC

17479911.1 27175

15

| | | |
|---|---|---|
| 1 | DATED: January ___, 2024 | DANNING, GILL, ISRAEL & KRASNOFF, LLP |

By: _____
ZEV SHECHTMAN
Attorneys for MORNING LAW GROUP, P.C.

DATED: January ___, 2024        MARKO & MAGOLNICK, P.A.

By: _____
JOEL MAGOLNICK
Attorneys for RESOLUTION PROCESSING, LLC

DATED: January ___, 2024        THE WALL LAW OFFICE A PROFESSIONAL CORPORATION

By: _____
WILLIAM J. WALL
Attorneys for BRADFORD LEE

DATED: January 29, 2024 at 4pm        THE BANKRUPTCY LAW FIRM, PC

By: /s/ KPMarch
KATHLEEN P. MARCH
Attorneys for GREYSON LAW CENTER PC

1747991.1  27175

14

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1901 Avenue of the Stars, Suite 450, Los Angeles, CA 90067-6006.

A true and correct copy of the foregoing document entitled (*specify*): STIPULATION RE DISCOVERY DISPUTE PURSUANT TO LBR 7026-1(c)(3) REGARDING MOTION FOR PROTECTIVE ORDER AND TO MODIFY SUBPOENA FILED BY MORNING LAW GROUP P.C. PURSUANT TO FRCP 26(c)(1)(G) AND FRCP 45(d)(3)(B)(i) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 29, 2024 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) January 29, 2024 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| January 29, 2024 | Patricia Morris | */s/ Patricia Morris* |
| Date | Printed Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                   **F 9013-3.1.PROOF.SERVICE**
1748022.1  27175

**ADDITIONAL SERVICE INFORMATION** (if needed):

1. **SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- **Keith Barnett**  keith.barnett@troutman.com, kelley.wade@troutman.com
- **Eric Bensamochan**  eric@eblawfirm.us, G63723@notify.cincompass.com
- **Christopher Celentino**  christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Leslie A Cohen**  leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael T Delaney**  mdelaney@bakerlaw.com, TBreeden@bakerlaw.com
- **Jeremy Freedman**  jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com
- **Christopher Ghio**  christopher.ghio@dinsmore.com, nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- **Eric D Goldberg**  eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Richard H Golubow**  rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Sweeney Kelly**  kelly@ksgklaw.com
- **Meredith King**  mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **David S Kupetz**  David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Matthew A Lesnick**  matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**  daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Yosina M Lissebeck**  Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Daniel S March**  marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**  kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Richard A Marshack (TR)**  pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Kenneth Misken**  Kenneth.M.Misken@usdoj.gov
- **Queenie K Ng**  queenie.k.ng@usdoj.gov
- **Lisa Patel**  lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Douglas A Plazak**  dplazak@rhlaw.com
- **Daniel H Reiss**  dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**  ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Jonathan Serrano**  jonathan.serrano@dinsmore.com
- **Howard Steinberg**  steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**  astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**  ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**  wwall@wall-law.com
- **Johnny White**  JWhite@wrslawyers.com, jlee@wrslawyers.com

2. **SERVED BY U.S. MAIL**

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5130
Santa Ana, CA 92701

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                 **F 9013-3.1.PROOF.SERVICE**
1748022.1  27175