CHRISTOPHER B. GHIO (259094)
christopher.ghio@dinsmore.com
CHRISTOPHER CELENTINO (131688)
christopher.celentino@dinsmore.com
JEREMY B. FREEDMAN (308752)
Jeremy.freedman@dinsmmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Tele:   619.400.0500
Fax:    619.400.0501

Special Counsel to Richard A. Marshack
Chapter 11 Trustee for the Bankruptcy Estate of
The Litigation Practice Group PC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC |
| Debtor. | Chapter 11 |
| RICHARD A. MARSHACK, | **PLAINTIFF RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE'S FURTHER BRIEFING IN OPPOSITION TO GREYSON LAW CENTER, PC'S FRIVOLOUS MOTION TO VACATE [1046 Dkt No. 290] AND SUPPLEMENTAL BRIEFING FILED IN SUPPORT THEREOF [1046 Dkt. No. 474]** |
| Plaintiff, | |
| v. | |
| TONY DIAB, et al. | |
| Defendants. | |

Date:     May 1, 2024
Time:     1:30 p.m.
Judge:    Hon. Scott C. Clarkson
Place:    Courtroom 5C
          411 West Fourth Street
          Santa Ana, California  92701

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ............................................................................................... 5

II.     THE EVIDENCE HAS AND CONTINUES TO SHOW THAT THE NO NOTICE TRO AND SUBSEQUENT PRELIMINARY INJUNCTION AFTER HEARING WERE NOT ONLY PROPER BUT NECESSARY ............................................................................... 7

    A.    The Court Properly Issued Its TRO and Ordered a Hearing on Trustee' Preliminary Injunction Based on Actual Evidence of Exigent Circumstances ............................. 7

    B.    The Court Properly Issued Its Preliminary Injunction After Opportunity to be Heard Based on the Evidence, Greyson Admissions and Stipulation to the Preliminary Injunction ...................................................................................... 10

    C.    The Evidence Today Further Supports the Continuation of the Preliminary Injunction as to Greyson and That Greyson Is and Always Has Been an Alter Ego of Diab ..... 13

        1.    The Evidence Shows Diab, Han and Jayde Among Other Insiders Were Facilitating the Fraudulent Transfer of LPG Assets to Non-Debtor Entities, Including Greyson ...................................................................... 13

        2.    Han, Eadie and Diab Have Provided False Declarations That Lack Probative Value and Fail to Present New Evidence or Evidence Not Already Addressed By This Court ........................................................................ 19

        3.    The Preliminary Injunction As To Greyson Must Not Only Stand, But Also Be Modified to Expand Its Reach to Prevent Injustice and Irreparable Harm .... 24

III.    GREYSON HAS FAILED TO MEET ITS BURDEN THAT THE COURT'S TRO AND SUBSEQUENT PRELIMINARY INJUNCTION WAS OBTAINED THROUGH FRAUD ................................................................................................................ 25

    A.    Greyson Argues in Bad Faith That the Burden to Prove the Property and Accounts in Question Rest With the Trustee ........................................................ 25

    B.    Greyson Improperly Seeks Reconsideration of Its Alter Ego Argument and Presents No New Evidence or Law Substantiating Its Request to Modify or Vacate the Preliminary Injunction ...................................................................... 26

    C.    Greyson Has Failed to Establish That the Alter Ego Allegation Was Fraudulent to Support a Rule 60(B)(3) Order Vacating the Preliminary Injunction ..................... 27

IV.     THE PRELIMINARY INJUNCTION SHOULD BE READ AGAINST GREYSON ......... 30

V.      THE COURT SHOULD MODIFY THE PRELIMINARY INJUNCTION TO LIMIT GREYSON, DIAB, HAN, JAYDE AND EADIE'S ABILITY TO CAUSE IRREPARABLE HARM TO THE ESTATE AND CONSUMERS ............................................... 30

VI.     GREYSON, ITS COUNSEL OF RECORD AND OFFICERS HAN, JAYDE AND EADIE SHOULD BE REQUIRED TO PAY SANCTIONS TO TRUSTEE FOR HAVING TO OPPOSE GREYSON'S FRIVOLOUS MOTION ............................................... 31

VII.    CONCLUSION ................................................................................................ 33

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexander v. Robertson*
    882 F.2d 421 (9th Cir. 1989) ............................................................................... 27

*Alto v. Black*
    738 F.3d 1111 (9th Cir. 2013) .............................................................................. 24

*Am. Can Co. v. Mansukhani*
742 F.2d 314 (7th Cir. 1984) ................................................................................... 6

*Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*
    12 F.3d 1080 (Fed. Cir. 1993) .............................................................................. 27

*Chambers v. Nasco, Inc.*
    501 U.S. 32 (1991) ................................................................................................ 26

*Estate of Perlbinder v. Dubrowsky* (In re Dubrowsky)
    244 B.R. 560 (E.D.N.Y. 2000) ............................................................................. 31

*Estate of Perlbinder v. Dubrowsky* (In re Dubrowsky)
    206 B.R. 30 (Bankr. E.D.N.Y. 1997) .................................................................... 31

*First Tech. Safety Sys., Inc. v. Depinet*
    11 F.3d 641 (6th Cir. 1993) ................................................................................... 6

*Granny Goose Foods, Inc. v. Teamsters*
    415 U.S. 423 .......................................................................................... 6, 9, 29

*Greco v. Troy Corp.*
    952 F.2d 406 (9th Cir. 1991) ................................................................................ 25

*Gumport v. China Int'l Trust and Inv. Corp.*
    926 F.2d 912 (9th Cir. 1991) ................................................................................ 27

*In re Coquico, Inc.*
    508 B.R. 929 (Bankr. E.D. Pa. 2014) .................................................................... 31

*In re Crofford*, 286 B.R. 366 (Bankr. E.D. Ark. 2002) ............................................ 30

*In re Crofford*
    301 B.R. 880 (8th Cir. 2003) ................................................................................ 30

*In re Greco*
    113 B.R. 658 (D. Haw. 1990) ............................................................................... 25

*In re Mannie*
    299 B.R. 603 (Bankr. N.D. Cal. 2003) .................................................................. 25

*In re Property Management & Invest., Inc.*
    69 B.R. 310 (Bankr. M.D. Fla. 1987) ................................................................... 30

*In re Whitney Place Partner*
    123 B.R. 117 (Bankr. N.D. Ga. 1991) ................................................................... 31

In re Whitney Place Partners
    966 F.2d 681 (11th Cir. 1992) .............................................................................. 31

## TABLE OF AUTHORITIES

**Page**

*In re Witt*
481 B.R. 468 (Bankr. N.D. Ind. 2012)............................................................................ 31

*In the Matter of Vuitton et Fils S.A.*
606 F.2d 1 (2d Cir. 1979)............................................................................................ 6

*Karnoski v. Trump*
926 F.3d 1180 (9th Cir. 2019) .................................................................................... 24

*Perfect 10, Inc. v. Giganews, Inc.*
847 F.3d 657 (9th Cir. 2017) ................................................................................ 7, 27

*Sharp v. Weston*
233 F.3d 1166 (9th Cir. 2000) .................................................................................... 24

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*
240 F.3d 832 (9th Cir. 2001) ...................................................................................... 29

*Toscano v. Commissioner*
441 F.2d 930 (9th Cir. 1971) ...................................................................................... 27

**Statutes**

Federal Rules of Bankruptcy Procedure, Rule 9011.................................................... 4, 26, 30

Federal Rules of Bankruptcy Procedure, Rule 9011(b)(1)-(3) ............................................ 30

Federal Rules of Civil Procedure, Rule 11 ................................................................ 4, 26

Federal Rules of Civil Procedure, Rule 60 ...................................................................... 27

Federal Rules of Civil Procedure, Rule 60(b)(3) ........................................ 5, 24, 26, 27

Federal Rules of Civil Procedure, Rule 65(b)(1)(A) ............................................................ 6

**TO THE COURT, HONORABLE SCOTT C. CLARKSON, OFFICE OF THE UNITED STATES TRUSTEE, DEFENDANTS, AND ALL INTERESTED PARTIES:**

Pursuant to the Court's January 16, 2024 Order (1046 Action Dkt. No. 333) and subsequent orders thereon (1046 Action Dkt. Nos. 342, 363 and 417), Plaintiff Richard A. Marshack, in his capacity as the Chapter 11 Trustee ("Trustee") of the bankruptcy estate ("Estate") of The Litigation Practice Group P.C. ("Debtor" or "LPG") hereby respectfully submits the following supplemental briefing in opposition to the *Motion of Greyson Law Center, PC ("Greyson") , For an Order, Made in Both Adversary Proceeding and LPG's Main BKY Case: (1) Vacating the 5/26/23 Lockout and Preliminary Injunction Order, As to Greyson, Because That Order was Obtained, as to Greyson, Based on the False Allegation In the Sealed, Ex Parte, Motion Trustee Marshack's Attorney, Celentino, Filed Moving For that Order, That Greyson was an Alter Ego of LPG; and (2) Ordering Celentino to Immediately Return All Greyson's Seized Property to Greyson, And To Immediately Restore Greyson's Access to All of Greyson's Data, Which Celentino Seized and Locked Greyson Out of on 5/26/23 and on 6/12/23, A Lockout Continuing to Present* (herein after Greyson's "Frivolous Motion to Vacate") [1046 Dkt No. 290]; Greyson's Supplemental Brief in Support of its Frivolous Motion to Vacate [1046 Dkt. No. 474]; and the fraudulent declarations submitted to this Court by Han Trinh ("Han" or "General Han"), Tony Diab ("Diab") and Scott Eadie ("Eadie") and Greyson's attorneys at The Bankruptcy Law Firm with knowledge that such evidence is false and fraudulent. Trustee respectfully requests that Greyson's frivolous motion to vacate be denied and seeks an order permitting Trustee to: (1) amend the Preliminary Injunction to remove all conditions as to Greyson as set forth on pages 5-6 paragraph 14, page 6 paragraph 3, page 9 paragraph 5, page 11 lines 6-16; (2) to set a hearing and briefing schedule to amend the Preliminary Injunction to add language barring Greyson, Diab, Han, Phoung (aka Jayde) Trinh ("Jayde") and Eadie or any of their known or unknown entities from contacting, hiring or otherwise employing, whether directly or indirectly, any prior LPG attorneys licensed to practice in any State to provide legal services related to consumer debt until further order of this Court and to bar the use of any LPG data, in any form and on any platform, whether stored electronically or in hard copy for any reason; and (3) to set a hearing and further briefing scheduling on Trustee's request for sanctions pursuant to Federal Rules of Civil Procedure

("FRCP"), Rule 11 and Federal Rules of Bankruptcy Procedure ("FRBP"), Rule 9011.

## I. **INTRODUCTION**

"Pay no attention to the man behind the curtain!" (Noel Langley, The Wizard of Oz)

These words hold true today as they did on May 26, 2023 when this Court granted Trustee's temporary restraining order (the "TRO") subsequently superseded by the Court's Preliminary Injunction entered June 23, 2023 [1046 Dkt. No. 7] (the "Preliminary Injunction") in order to protect more than 50,000 consumer clients who were subjected to fraudulent business practices at LPG, Oakstone Legal Group, PC ("OLG"), Phoenix Law, PC ("Phoenix"), Consumer Legal Group, PC ("CLG"), Guardian Processing, LLC ("Guardian"), Greyson Law Center, PC ("Greyson") among other named non-Debtor entities. This included the unauthorized and fraudulent transfer of LPG client files, double and triple ACH pulls, misappropriation and the use of LPG client ACH funds, attorneys, software programs and applications, email accounts, databases, furniture, equipment and proprietary information. All of which caused and without the Court's Preliminary Injunction would continue to cause serious irreparable harm to consumers, creditors and LPG's Estate by Diab and his high-ranking soldiers "General" Han[1] and "Hammer" Jayde[2], among other insiders involved in Diab's scheme.

The secondary purpose of the TRO and Preliminary Injunction was to gain access to and obtain the evidence, data and information necessary to accomplish the primary goal of the TRO and Preliminary Injunction before Diab and his soldiers could hide, abscond with and/or destroy the evidence. With little doubt, the Court's TRO and Preliminary Injunction was to allow the Trustee to review Greyson's Microsoft Account among other accounts and information turned over to the Trustee, contrary to Greyson's specious claims. Specifically, both the TRO and Preliminary

---

[1] Han was often referred to as General Han given her role enforcing Diab's orders. See First Supplemental Declaration of Alex Rubin ("Suppl. AR Decl.") at ¶¶ 8 and 29, Exhs. 28 and 49; Declaration of Hershy Deustch ("Hershy Decl.") at ¶ 9. In submitting the Hershy Decl., managing member of Marich Bein, LLC, Trustee does not make any admissions of fact contained therein, whether express or implied, except as to only those facts relied upon and specifically cited to herein, including only paragraphs 1-3, 7-9, 13, 14, 16-19. Trustee expressly disputes all other paragraphs contained in the Hershy Decl.

[2] Similarly, Jayde was often referred to as Hammer Jayde given her role enforcing Diab's orders. Suppl. AR Decl. at ¶ 29, Exh. 49.

5

Injunction was narrowly drafted with specificity requiring LPG, Diab and other non-Debtor entities and individuals to turn over LPG funds and necessary evidence to: (1) locate all fraudulently transferred files, consumer client funds and personal information; (2) identify all ACH companies involved; (3) gain access to and protect LPG's databases, software systems among other assets from further theft, misappropriation and use in order to continue Diab's scheme; and (4) uncover evidence of the scheme that led to this unprecedented fraud against innocent consumers at the hands of Diab, Han, Jayde and other insiders. With every passing day and as a result of the Court's TRO and Preliminary Injunction, the mountain of evidence (totaling more than 100 million documents) Trustee is diligently working through shows that Greyson is nothing more than LPG 2.0, again being run by Diab and his soldiers, Han and Jayde with Eadie renting his license in exactly the same manner in which LPG was run with Diab, Han, Jayde and Dan March ("March") at the helm.

Despite multiple opportunities, Greyson has failed to set forth the proper standard for bringing a motion to modify or vacate the Court's Preliminary Injunction and instead speciously argues the same meritless alter ego claim and that the Court needs to "get it right." Regardless of whether this Court applies the proper standard, or, alternatively, FRCP Rule 60(b)(3), Greyson has failed to meet its burden. As an initial matter, the Court cannot now vacate the TRO, which was superseded by the Preliminary Injunction. Even if the Court were authorized to vacate the TRO, such an order would not vacate the Preliminary Injunction Greyson drafted and agreed to.

Greyson has further failed to raise any new facts or law to substantiate its Frivolous Motion. Greyson's false declarations could have been submitted prior to and/or at the Preliminary Injunction hearing by prior counsel for Greyson, who in his wisdom chose not to for reasons made apparent by the evidence. With new counsel, Greyson now submits false declarations unsupported by any evidence and contrary to actual evidence that cannot reasonably be disputed. Thus, the TRO and Preliminary Injunction were not only appropriate but also critical in stopping Diab and his soldiers from committing further irreparable harm and destruction of evidence.

Furthermore, the current language provided for in the Court's Preliminary Injunction, to which the Trustee agreed to, was based on Han's false assertion that Diab was not involved with Greyson in any fashion. A fact that the evidence now shows is false. As such, the Trustee respectfully requests

all conditions set forth in the Preliminary Injunction as to Greyson and specifically identified herein should be removed. Based on the additional evidence submitted herewith, it is clear Greyson, Diab, Han, Jayde and Eadie intend to continue to use any means necessary to misappropriate LPG assets, proprietary information and client data and use it for improper purposes. As such, the Trustee respectfully request this Court set a hearing and briefing schedule to amend and expand the scope of the Preliminary Injunction as specifically detailed herein.

Lastly, Greyson's Frivolous Motion has been brought in bad faith, re-argues the same argument already rejected by this Court, is unsupported by evidence, case law or even the proper legal standard. Instead, Greyson has submitted false declarations by those most financially incentivized to regain access to LPG assets and information. All of which are grounds for this Court to impose sanctions against Greyson, its attorney of record and officers including Han, Jayde and Eadie.

## II. THE EVIDENCE HAS AND CONTINUES TO SHOW THAT THE NO NOTICE TRO AND SUBSEQUENT PRELIMINARY INJUNCTION AFTER HEARING WERE NOT ONLY PROPER BUT NECESSARY

### A. The Court Properly Issued Its TRO and Ordered a Hearing on Trustee' Preliminary Injunction Based on Actual Evidence of Exigent Circumstances

No notice "temporary restraining orders are no doubt necessary in certain circumstances… [and] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438-39. One recognized instance where no notice temporary restraining orders are proper is where giving notice would result in irreparable injury or loss including the loss of evidence as was established by the Trustee on May 26, 2023 and again after hearing on June 12, 2023. FRCP Rule 65(b)(1)(A); *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984); *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993); *In the Matter of Vuitton et Fils S.A.*, 606 F.2d 1, 4-5 (2d Cir. 1979) ("Vuitton").

Contrary to Greyson's unsupported contention and lack of personal knowledge of the events at the May 26, 2023 hearing, the Court did not rely on the Trustee's allegation that Greyson was an alter ego of LPG in issuing its TRO. Instead, the Trustee presented evidence well beyond the mere

1   legal conclusion that Greyson was an alter ego of LPG which itself requires evidentiary support.

2   *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017) [Alter ego is a legal doctrine

3   that can only be established by evidence and therefore not a fact in and of itself.]

4       On May 26, 2023, the Trustee requested a TRO in order to protect over 50,000 consumer

5   clients and against the destruction of evidence, further transfer and loss of client data, LPG Estate

6   funds, fraudulent ACH draws, and in many instances double or triple ACH draws in one month. See

7   e.g. Omnibus Motion for Turnover, 1046 Dkt. No. 4 at 17:13-16 and 25:3-8; see also 1046 Dkt. Nos.

8   5-8. The Trustee proffered evidence that LPG Estate assets and evidence were being transferred, lost

9   and/or destroyed in the form of a shredding party. Suppl. 1046 Dkt. Nos. 5-8; AR Decl. at ¶ 24,

10  Exh. 44. Trustee's no notice TRO was further warranted due to evidence of threats of physical harm

11  by those to be restricted by the TRO. 1046 Dkt. No. 4 at 3:23-4:4 and 14:11-17, see also Dkt No. 5 at

12  ¶ 20 and Dkt. No. 8 ¶¶ 1-13.

13      Most importantly, the Trustee presented evidence of an actual threat of irreparable harm to

14  over 50,000 consumer clients to the Court on May 26, 2023 all of which were subsequently confirmed

15  by further evidence and admissions of Greyson on June 12, 2023. Since that time, substantial evidence

16  has come to light as the Trustee diligently continues to review over 100 million documents turned

17  over and/or produced in this matter. Specifically, on May 26, 2023, the Trustee presented the

18  following evidence up which the TRO issued:

19      (1)    A TRO was necessary to prevent irreparable harm to over 50,000 consumer client,

20  who were impacted by the fraudulent transfer, ACH draws and wrongful conduct of Diab, Han, Jayde

21  and other insiders (See Omnibus Motion for Turnover, 1046 Dkt. No. 4 at 8:5-7 and 23-28; see also

22  Decl. of Richard Marshack, Dkt. No. 8 at ¶¶ 4-20, Decl. of Christopher Ghio, Dkt. No. 7 at ¶¶ 3-11,

23  Exhs. 1-9, Decl. of Darius Newbold Dkt. No. 6 at ¶ 3, Exh. 1, and Decl. of Russ Squires, Dkt. No. 5

24  at ¶ 4, Exh. 2);

25  ///

26  ///

27  ///

28

(2)    There exited a real and present threat of loss of evidence, client data and LPG Estate assets, including post-petition ACH draws being funneled to Greyson (1046 Dkt. No. 4 at 26:4-28:24, Dkt. No. 8 at ¶¶ 4-20, Dkt. No. 7 at ¶¶ 3-11, Exhs. 1-9, Dkt. No. 6 at ¶ 3, Exh. 1, and Dkt. No. 5 at ¶ 4, Exh. 2);

(3)    Greyson had misappropriated LPG's "most valuable asset," its attorney network without which Greyson, Phoenix, LPG and their "Golden Goose" –ACH receivable revenue— would not and could not exist (1046 Dkt. No. 4 at 11:10-16, 17:13-27; Declaration of Jane Dearwester ("Jane D. Decl.") at ¶ 32.);

(4)    Greyson fraudulently received former LPG client files by way of the misappropriated attorney network without client consent in violation of numerous rules of ethics/professional responsibility across this Country in order to commit further fraud upon consumer client and LPG's creditors (*Ibid.*; see also 1046 Dkt. No. 8 at ¶¶ 4-20, 1046 Dkt. Nos. 47-3, 47-4, 47-5, 47-6, 47-7);

(5)    Greyson was funded <u>entirely</u> with LPG assets originating from fraudulent ACH draws and in many instances double or triple ACH draws causing irreparable financial harm to LPG's consumer clients (1046 Dkt. No. 4 at 2:3-21 and 12-13; see also 1046 Dkt. No. 8 at ¶¶ 4-20);

(6)    Greyson had misappropriated LPG's customer relationship management ("CRM") software, client files, raw data and ACH data stored therein, including DebtPayPro and/or LUNA (*Id.* at 19-20; see also 1046 Dkt. No. 8 at ¶¶ 4-20);

(7)    Greyson had misappropriated LPG's proprietary information including but not limited to documents, scripts, employment manuals, retainer agreements, affiliate contacts and contracts and training materials (*Id.* at 22-28; see also 1046 Dkt. No. 8 at ¶¶ 4-20);

(8) Greyson had misappropriated other LPG assets including but not limited to computers, laptops, monitors, other computer equipment, office furniture and software accounts including Microsoft 365 (*Id.*; see also 1046 Dkt. No. 8 at ¶¶ 4-20);

(9)    Greyson was being controlled by Diab (a double disbarred attorney for forging a judge's signature on an order) running Greyson behind closed curtains just as he had done at LPG (*Id.*; see also 1046 Dkt. No. 8 at ¶¶ 4-20, Dkt. No. 5 at ¶ 4, Exh. 2 at ¶ 15); and

///

1    (10)    Diab provided false information regarding access to Microsoft, LUNA and other

2    critical information and programs to assist Trustee in protecting evidence, over 50,000 consumer

3    clients and preventing further fraudulent ACH draws, which the evidence showed was still occurring

4    through LPG's Revolv3 account that was listed in Diab's name [1046 Dkt. No. 4, and Dkt. No. 8 at

5    ¶¶ 4-20.].

6    Based on the foregoing facts and evidence, the Court rightfully found exigent circumstances

7    to issue its no notice TRO. Greyson's argument that the Trustee's evidence and declarations did not

8    mention Greyson at all and that the Court simply got it wrong is contrary to the actual record and

9    declarations.[3] Further, Greyson was not denied due process or any right to object as this Court did

10   exactly as directed by the United States Supreme Court in *Granny Goose Foods* and set a hearing on

11   Trustee's Preliminary Injunction, seventeen (17) days later and only ten (10) after the TRO was

12   actually served and enforced by the Trustee. Indeed, this procedure was ordered by the Court to ensure

13   proper notice and a reasonable time and opportunity to object before a preliminary injunction issued.

14   1046 Dkt. No. 10; 1046 Dkt. No. 31; See also 1046 Dkt. No. 325-4, Declaration of Alex Rubin ("AR

15   Decl.") at ¶ 1. At which time, Greyson did file an objection including twelve (12) declarations, all of

16   which contained material judicial admissions confirming the evidence previously submitted by the

17   Trustee upon which the Court issued its TRO and subsequent Preliminary Injunction. 1046 Dkt.

18   Nos. 47 – 47-12.

19   **B.    The Court Properly Issued Its Preliminary Injunction After Opportunity to be Heard**

20   **Based on the Evidence, Greyson Admissions and Stipulation to the Preliminary**

21   **Injunction**

22   Prior to the Preliminary Injunction hearing on June 12, 2023 the Trustee's omnibus motion

23   for turnover and supporting evidence was unsealed and made available to the public and all parties to

24   this matter, including Greyson. 1046 Dkt. No. 27. On June 12, 2023, Greyson filed and served its

25   opposition to the Trustee's Preliminary Injunction, including numerous consumer client declarations

26

27

28   [3] Greyson and its counsel refuse to review the record in this matter, which if they had would not have
made patently false arguments and assertions in its Frivolous Motion as the Declarations filed in
support of the TRO specifically discussed Greyson. 1046 Dkt. Nos. 5-8 discussing Greyson.

1  admitting they were unethically solicited by LPG attorneys and transferred to Greyson. 1046 Dkt.

2  Nos. 47 and Dkt. Nos. 47-3 – 47-7. Thus, Greyson's own evidence and admissions prior to the

3  Preliminary Injunction hearing further supported the evidence presented by the Trustee to the Court

4  on May 26, 2023. Specifically, that Greyson had misappropriated LPG's most valuable assets, its

5  client files and attorney network. *Id.*

6      At the June 12, 2023 hearing, Greyson further admitted Greyson was entirely funded with

7  LPG assets and post-petition ACH pulls on LPG client accounts as the Trustee's evidence had

8  previously shown and as more thoroughly briefed in the Trustee's portion of the parties Joint

9  Statement [1046 Dkt No 325 at 5:16-7:7]. See 1046 Dkt. No. 76 at 73:18-74:1 ["So in the past few

10 weeks, the direction was given to pull the LPG client money, and then the direction was given for

11 that money to go to PrimeLogix or Maverick. And that money was used at those locations to either

12 compensate personnel at Greyson. . . and/or a series of other purposes that were detailed to the to the

13 Court."]. This admissions details what was and remains a primary concern of irreparable harm to

14 consumers and LPG's Estate that the Trustee sought to prevent by way of the TRO and Preliminary

15 Injunction. This Court agreed.

16      Notwithstanding actual admitted and undisputable evidence, testimony, photographs and bank

17 records tracing LPG assets, computer equipment, software, documents and other assets to Greyson

18 and other non-Debtor entities, Diab, Han and Eadie now speciously resort to doubling down and

19 providing further false declarations. Notably, they claim Greyson never received LPG funds or assets

20 without any evidence to contradict the overwhelming weight of the evidence presented by Trustee

21 and their own attorneys admission of this undisputable fact at the June 12, 2023. Compare 1046 Dkt.

22 No. 474 at 29 ¶ 10, 48 ¶ 5(g) *with* 1046 Dkt. No. 76 at 73:18-74:1, Freedman Decl., Dkt. No. 325-8

23 at ¶¶ 5-7, Exhs. C-F, Brad Lee Decl., Dkt No. 325-5 at ¶ 7, 9, 14-15, Exh. G, Dkt. No. 76 at 73:18-

24 74:1. A position Han did not take at her deposition. Instead, Han speciously attempted to explain

25 away the use of LPG Estate and client ACH funds with yet another fabricated story to try and cover

26 up her deceit. Supplemental Declaration of Jeremy Freedman ("Suppl. Freedman Decl.") at ¶ 3,

27 Exh. L, Han Transcript at 248:22-249:12 ["This is the money that was due for Greyson. . ."] and

28 250:7-251:22.

Moreover, Ty Carss ("Carss") and text messages he had directly with Diab regarding Greyson confirm that Diab was again controlling Greyson, Phoenix and OLG in the shadows as he had done at LPG contrary to Diab, Han and Eadie's false declarations. William "Ty" Carss Declaration ("Carss Decl.") at ¶¶ 2-8, Exh. A. In this regard, Carss testified that it was Diab who had ultimate control over expenses and finances at Phoenix and Greyson. *Id*. Diab's text messages to Carss further indicates he had the power and control over Greyson to <u>shut it down</u>. *Id*. Further, Carss evidence show that refusing to pay Phoenix' attorney invoices was intentional. *Id*. Indeed, LPG attorneys were coerced to switch to Greyson if they wanted to "get paid" just as they had been told when forced to switch to OLG, which of course folded and was born again as Greyson. *Id*.; Jane. D. Decl. at ¶ 26, Exhs. 17-18. All of which was done so that Greyson could use LPG's attorneys to bring former LPG clients over to Greyson, indirectly, and launder $2,000 to $2,400 in LPG client ACH receivables per file back to Greyson, Diab and his soldiers through Phoenix under the rouse of competition without having to wait for the actual revenue to be earned or even received from the client. *Id*. A business practice employed at LPG this Court and the United States Trustee's Office has argued is illegal.

Based on the foregoing and over seven hours of presenting evidence, testimony and objections on June 12, 2023, this Court confirmed Trustee had met his burden and that good cause existed to issue the Preliminary Injunction as to all defendants. Notably, as it relates to Greyson this Court explicitly dispelled Greyson and its attorney of the notion that it was issuing the Preliminary Injunction based on Trustee's alter ego allegation, which was moot, as the Trustee had agreed to withdraw that allegation based on privileged settlement communications with Greyson's prior counsel. 1046 Dkt. No. 76 at 75:9-25 and 79:21-80:5 ["Well, <u>I think your judicial admissions made today pretty well give a good basis to continue the injunction against Greyson</u>."]. Based on the Court's actual findings and Trustee's agreement to withdraw his alter ego allegation, Greyson stipulated and agreed to the issuance of the Preliminary Injunction. *Id*. at 261:7-262:15 ["Well -- and I think based on what everybody is saying is – <u>I think what has to happen is Mr. Celentino and I just need to work on specific language that relates to this that's going to cover Greyson</u>."].

Based on Greyson's agreement to the Preliminary Injunction, counsel for Greyson drafted the proposed language as it relates to Greyson that this Court ultimately approved and made the final

order of the Court. 1046 Dkt. No. 325-6 at ¶ 4, Exh. B, 1046 Dkt. No. 70. As such, Greyson's sole argument that the TRO and Preliminary Injunction was improper because they were based on Trustee's alter ego allegation is false and raised in bad faith as these are all facts known and should be known to Greyson and its attorney of record.

## C.  The Evidence Today Further Supports the Continuation of the Preliminary Injunction as to Greyson and That Greyson Is and Always Has Been an Alter Ego of Diab

The fraudulent scheme employed by Diab and his soldiers, Han and Jayde, at OLG, Phoenix and Greyson all follow the LPG model. At the center of the ring is and always has been Diab with Han and Jayde implementing Diab's orders whether at LPG, OLG, Phoenix and Greyson. This is true based on the evidence regardless of whether Diab, Han, Jayde and Eadie speciously attempt to classify Greyson as Eng Taing Greyson or Present Greyson. With March at LPG and Eadie at Greyson renting their name and Bar license to Diab, a double disbarred attorney.[4] 1046 Dkt No. 325- 5, BL Decl. at ¶¶ 7, 9-10; Hershy Decl. at ¶ 19; Bankr. Dkt. No. 1105, Jane D. Decl. at 25-26 ¶¶ 24-26. All of which was intentionally done to hide Diab's involvement and control.

### 1.  The Evidence Shows Diab, Han and Jayde Among Other Insiders Were Facilitating the Fraudulent Transfer of LPG Assets to Non-Debtor Entities, Including Greyson

As early as January 2023, Diab had already made plans to kill LPG and transfer all of LPG's profitable clients and assets to Phoenix, OLG, CLG and Greyson prior to filing bankruptcy. Suppl. AR Decl. at ¶¶ 3, 4, Exh. 23 and 24; Hershy Decl. at ¶¶ 16-19. To accomplish this scheme, Diab and his soldiers developed a two-step process targeting LPG's most valuable assets: first, they would transfer consumer client files to non-Debtor entities; and, second, they would force new employment contracts upon LPG's network of attorneys.

///

---

[4] The evidence further shows that Diab was using and signing documents on March's behalf by applying his electronic signature to documents and then later sending him the signed documents, including LPG's bankruptcy petition. Suppl. Freedman Decl. at ¶ 4, Exh. M-N. On information provided to Trustee, reasonable grounds exist to believe Diab was doing the same for Greyson, especially as it relates to ACH and affiliate contracts he was facilitating.

This was the product of the initial plan Diab and Eng Taing ("Eng") had devised and that Eng pushed for in order to avoid the mountain of debt incurred by LPG through Diab's ACH receivable affiliate and factoring Ponzi scheme. Suppl. Freedman Decl. at ¶ 10, Exh. U, 341a Transcript at 62:5-17. On January 23, 2023, Diab turned to his accomplices, General Han and Reid Wood ("Reid") regarding the "Hard Part" and seeking their input as to which LPG files should be left behind and how best to accomplish the fraudulent transfer. Suppl. AR Decl. at ¶ 3, Exh. 23. General Han in turn sent the same correspondence to Jayde seeking her input. *Id*. at Exh. 24.

From these discussions, Diab and his soldiers developed client file groups to be transferred to Phoenix, CLG, OLG and Greyson leaving unprofitable and/or burdensome client files behind in the dust. Suppl. AR Decl. at ¶ 3, 4 and 9, Exh. 23-24 and 29. To that end, Diab, Han, Reid and Jayde were all involved in strategizing how best to group the LPG client files to be transferred in order to direct them to the right group of customer service representatives at the correct entities. Suppl. AR Decl. at ¶ 9, Exh. 29. The strategy included scripts on how to diffuse client anger related to the surprise transfer without having obtained prior client consent. Id. Around the end of January and beginning of February 2023, LPG clients started receiving file transfer emails from CLG, OLG and Daniel March and behalf of LPG advising of the transfer. *Id.* at ¶¶ 5-7, Exhs. 25-26. All of which Han, Jayde, Reid and Diab were closely monitoring and directing. *Id.*

Not only were LPG clients not informed of the intended transfer before it happened, neither were LPG's attorneys with the exception of Diab's insiders. Bankr. Dkt. No. 1105, Jane D. Decl. at ¶¶ 22, 41, 52. As a result, some LPG attorneys resigned and refused to go along with Diab, Han, Jayde and Eadie's unethical and reprehensible scheme. *Id*. at 26-27 ¶ 37. 48-49; Suppl. AR Decl. at ¶ 10, Exh. 30. Those that chose not to follow Diab and his soldiers were made fun of and laughed at by and Han, Jayde and Israel Orozco ("Israel").[5]

After the majority of LPG files were transferred to Phoenix, Carss was forced to rely on LPG attorneys to continue to perform the legal work necessary to provide the services LPG clients contracted for and to protect their interests. Carss Decl. at ¶¶ 2-8. Initially, Carss had negotiated a

---

[5] Notably, Israel signed an employment contract with Greyson one day after LPG filed its bankruptcy petition. Bankr. Dkt. at 1105, Mamlyuk Decl. at 184-183 Ex. 33.

1   reasonable rate of $750 per client file for LPG attorneys to continue to do the work. *Id.* Because Diab

2   controlled the finances at Phoenix and Greyson, as he had at LPG, Carss was required to submit

3   invoices for attorney payment to Diab directly or through Phoenix' accounting department but in

4   ether event Diab had the final say. *Id.* at 2-8; see also 1046 Dkt. No. 46-5, Carss Decl. at ¶ 7.

5          In early March 2023, tension between Eng at OLG and Wes Thomas ("Wes") at Guardian

6   Processing grew to a point where Diab, Han and Jayde needed to figure out a new plan. 1046 Dkt.

7   No. 325-5, BL Decl. at ¶¶ 4-5. In early March, as Lee testified, Diab, Han, Jayde and Brad Lee met

8   at Diab's house in Newport where the Greyson scheme was developed and Jayde came up with the

9   name. 1046 Action Dkt. No. 325-5 BL Decl. at ¶ 6; see also 1046 Dkt. No. 331-1 Suppl. BL Decl. at

10  ¶ 8. Despite Han and Eadie's contrived declarations in an effort to discredit Mr. Lee, text messages

11  between Eng and Jayde on March 7, 2023 confirm Jayde did in fact come up with the name and

12  spelling for Greyson during the same time period Lee testifies that they all met at Diab's house. *Id.*;

13  Suppl. Freedman Decl. at ¶ 5, Exh. O.[6] Greyson's own evidence therefore confirms Lee's declarations

14  to be true.

15         One day after LPG filed its bankruptcy petition, instead of doing any work on behalf of LPG,

16  Diab, Han, Jayde and Eadie got to work making sure the fraudulent transfer of client files was

17  complete and operations at the non-Debtor entities were running smoothly. See Suppl. AR Decl. and

18  exhibits attached thereto generally. To that end, Diab sent his soldiers, Han and Jayde, the list of

19  clients transferred to Phoenix and OLG. Suppl. AR Decl. at ¶ 11, Exh. 31. Han in turn sent Eadie a

20  list of clients transferred to CLG. *Id.* at ¶ 13, Exh. 33. LPG's attorneys were initially advised to send

21  invoices to OLG for payment. Suppl. AR Decl. at ¶ 12, Exh. 32. Due to the Eng and Wes

22  disagreement, Diab, Han and Jayde developed a plan to begin moving LPG attorneys and clients over

---

24  [6] Notably, Jayde's text messages were produced by Han ahead of her deposition confirming Mr. Lee's
25  testimony to be credible and contrary to Greyson's specious name calling and attempt to intimidate
    and embarrass Mr. Lee based on his education level which has no bearing on his personal knowledge
26  of the events at issue or whether his declaration was dictated. 1046 Dkt. No. 474- Greyson's Suppl.
    Brief at 19:6-11. Further, Counsel for Greyson misrepresents Mr. Lee's ability to authenticate the
27  exhibits attached to his deposition because she intentionally showed him only portions of the actual
    exhibit hiding portions necessary to authenticate them. When presented with the complete exhibit by
28  counsel for Trustee, Mr. Lee was able to authenticate the exhibit. See Suppl. Freedman Decl. at ¶ 6,
    Exh. P; Bradford Lee Transcript at 253:16-258:23.

to Greyson. 1046 Dkt. No. 325-5 BL Decl. at ¶ 6; Hershy Decl. at ¶¶ 17-19. To that end, Diab stopped approving Phoenix invoices for the attorneys it desperately needed to continue to provide legal services to thousands of consumer clients. Carss Decl. at ¶¶ 2-8; see also 1046 Dkt. No. 45-6 at ¶ 8(b). Mr. Carss then started noticing LPG attorneys were using Greyson email addresses and refused to provide any services unless Phoenix went through Greyson. Carss Decl. at ¶¶ 2-8; see also 1046 Dkt No. 45-6 at ¶ 8(b).

By April 10, 2023, Han was advising LPG attorneys at Phoenix and OLG that LPG cells phones had to be re-activated for Greyson's use, which had only recently occurred. Suppl. AR Decl. at ¶ 14, Exh. 34. A few days later General Han was advising LPG attorneys to submit their expenses to Greyson for reimbursement. *Id*. at ¶ 15, Exh. 35. Moreover, Han, Jayde, Eadie and LPG's attorneys all had access to and/or were using LUNA accounts and email addresses for LPG, Phoenix, Greyson and OLG, which contained all of the same LPG client and proprietary information. *Id*. at ¶ 16, Exh. 36; 1046 Dkt, No. 45-6, Decl. of Ty Carss at ¶ 8(c)-(d).

Due to further distention between Eng, Diab, Han and Jayde the initial Greyson was shut down and the new Greyson re-born, by its creators Diab, Han and Jayde in early May of 2023. Given Diab's intent to coerce LPG attorneys over to Greyson, Phoenix was having trouble finding coverage attorneys in States outside California. Carss Decl. at ¶ 2-8, Exh. B. Out of necessity, Carss confronted Diab about being forced to use LPG attorneys through Greyson. Id. To which, Diab instructed Mr. Carss via text in May 2023, after the "Eng Taing" Greyson was shut down, that "until <u>we close Greyson the plan is the following</u>" to send all new assignments to Greyson at a cost of 167% more than what Mr. Carss had already negotiated. Carss Decl. at ¶¶ 7-8, Exh. B. 1046 Action Dkt. Nos. 45-6 at ¶ 8(d). No contract was signed, just a straight directive from Diab himself to Mr. Carss. See Carss Decl. at ¶ 6, Exh. B. Having no choice but to follow Diab's directive in order to prevent malpractice and ensure LPG clients received the legal services they required Mr. Carss was forced to comply. Id. at ¶¶ 2-8. Notably, Diab was also the person to field administrative questions at Greyson, including how credit card charges were to be handled, and whether Greyson had coverage attorneys in certain states evidencing clear involvement, authority and ability to act on behalf of, direct and control Greyson. Id. at ¶ 7, Exh. B.

During the transition from LPG to OLG and then Greyson, Han, Jayde and others continued to monitor and use their LPG email accounts. See Suppl. AR Decl. generally. The purpose, however, was not to perform work for LPG as evidenced by Jayde's email indicating <u>she no longer worked for LPG</u>. Suppl. AR Decl. at ¶ 27, Exh. 47. Instead, Han and Jayde facilitated the fraudulent transfer of client files and LPG assets to Diab's alter egos; answering attorney questions about the change to ensure the most valuable asset of LPG, its attorneys, moved over to Greyson; moving LPG and OLG attorneys over to Greyson's LUNA account; making sure LPG's LUNA data was migrated to OLG and Greyson's LUNA; ensuring LPG's client and litigation mail was directed to the proper fraudulent transferee; transferring other LPG assets, documents and proprietary information to Greyson to get it ready for handling thousands of client files; and switching LPG attorney and employee cell phones over to Greyson. Suppl. AR Decl. at ¶¶ 3-23, 26, Exhs. 23-43, 46.  None of which assisted LPG or the Debtor's estate.

In fact, <u>General Han was the person Diab put in charge of making sure all of the administrative tasks necessary to effectuate the fraudulent transfer were completed, including those to Greyson</u>. Suppl. AR Decl. at ¶ 20, Exh. 40; Hershy Decl. at ¶ 9, 19. Along these lines, in May 2023, Greyson needed funding as it had none of its own to which it has already admitted before this Court. General Han therefore contacted Paychex demanding that LPG's reserve account in the amount of approximately $184,000 be directly deposited in Greyson's bank account explaining that <u>Greyson, Guardian Processing and LPG were "all related" entities and that Greyson's bank account was a "debtor in possession account."</u> Suppl. AR Decl. at ¶¶ 17-18, Exhs. 37-38. As such, Han's false declaration and Greyson's argument that it is completely separate and distinct from LPG, Phoenix, OLG and Diab's other non-Debtor entities is a material misrepresentation to this Court for the sole purpose of regaining access to LPG assets. Notably, this is the same misrepresentation Han and Jayde attempted to employ at OLG before it was shut down. See Jane D. Decl. at ¶ 30.

In addition to the foregoing, the evidence further establishes Greyson has comingled and misappropriated for fraudulent purposes LPG assets, attorneys, equipment, client files, emails, CRM among other critical software programs, training material, employee handbooks, retainer agreements and other proprietary documents as more thoroughly discussed in the Trustee's portion of the parties

1    Joint Statement. See 1046 Action Dkt. No. 325. As discussed above, Greyson's LUNA account

2    contained the exact same client information stored in OLG's LUNA account which apparently was

3    also the same client data stored in Phoenix' LUNA account. 1046 Action Dkt. No. 45-6 at ¶ 5(c) ["the

4    CRM databases utilized by the current Phoenix and Greyson practices contain the historical data of

5    all LPG clients who have been migrated to these entities from LPG."], Suppl. AR Decl. at ¶ 23,

6    Exh. 43; Bankr. Dkt. No. 1105, Jane D. Decl. at 26 ¶ 31.

7         The importance of which is paramount. With the raw data files that Diab, Han, Jayde and

8    Eadie copied and used post-petition for fraudulent purposes they have the ability to continue to use

9    that data to create new LUNA accounts or establish other CRM accounts hosted on any server they

10   want in order to re-create and use the very information, system and processes the TRO and

11   Preliminary Injunction are designed to prevent and lock them out of. As such, the Preliminary

12   Injunction should not only be enforced as to Greyson, Diab, Han, Jayde and Eadie but be modified to

13   remove all conditions Greyson's counsel drafted and expanded to deter any use of LPG client data on

14   any server, CRM, software program or in any fashion.

15        Based on the foregoing, the evidence establishes beyond a preponderance of the evidence that

16   Diab: (1) is running, controlling and directing Greyson behind the scenes;  (2) was or is working with

17   Bianca Loli on a new "flow" and/or entity in order to "shut down" Greyson however needs LPG's

18   proprietary documents and electronically stored information that is the subject of the Court's TRO

19   and Preliminary Injunction to effectively do so [Carss Decl. at ¶ 5 Exhibit B]; (3) was working on

20   addressing credit card related to legal expenditures at Greyson [*Id.*]; (4) knew whether Greyson had

21   coverage attorney's in certain states by name when asked by Mr. Carss [*Id.*]; (5) used Han, Jayde and

22   Eadie to effectuate the fraudulent scheme of transferring LPG, clients assets, property and proprietary

23   information and software; (6) misappropriate LPG most valuable asset, its network of attorneys; (7)

24   comingled LPG data, documents and proprietary information; (8) took LPG property including

25   computers laptops, beelinks and other equipment; (9) was funded directly and indirectly with LPG

26   funds through other non-Debtor entities, including but not limited to PrimeLogix, LLC

27   ("PrimeLogix"), Vulcan Consulting, Inc. ("Vulcan"), Maverick Management, LLC ("Maverick") and

28   BAT, Inc. ("BAT"); and (10) used LPG assets to reimburse Greyson employees which would include

Han, Justin Nugyen among others who claim they used personal or business credit cards to pay for Greyson equipment and its Microsoft account. In this way, Greyson is nothing more than LPG re-built and another alter ego of Diab who seeks to gain access to LPG assets, information, data files, emails and other proprietary information under the pretext of competition.

2.     **Han, Eadie and Diab Have Provided False Declarations That Lack Probative Value and Fail to Present New Evidence or Evidence Not Already Addressed By This Court**

Based on the evidence discussed above, the declarations submitted by Han, Eadie and Diab falsely states, among other examples, the following:

1.     "Greyson had NO involvement with Tony Diab." 1046 Dkt. No. 290-1, Han Declaration at ¶ 30. However, Han later testified Diab was the one who negotiated the purported contract between Greyson and Phoenix. Han Depo , Suppl. Freedman Decl. ¶ 3, Exh. L at 323:7-17. As such, Han has perjured herself under oath and admits as the evidence shows Diab was involved with and in control of Greyson. See also Carss Decl. at ¶ 6, Exh. B; Hershy Decl. at ¶¶ 18-19.

2.     "At the 6/12/23 hearing, Ty Carss, called as a witness by the Celentino firm, testified that Phoenix. . . , had agreed to pay Greyson $2,000 per lawsuit, to have Greyson supply Greyson attorneys to appear for Phoenix, on a 1099 basis, to defend Phoenix consumer debtor clients who were being sued for alleged consumer debts in state court cases." Conveniently, Han has fabricated Carss' testimony to suit Greyson's specious arguments. Contrary to Han's declaration, Carss testified that Diab told him he had to send client files to Greyson, which he had to do because Diab would not approve attorney invoices for Phoenix in an effort to shift all LPG network attorney's to Greyson. 1046 Dkt. No. 76 at 201:3-15; See also Carss Decl. at ¶ 6-8, Exh. B.

3.     "It is correct that Phoenix and Greyson had signed a written contract, for Phoenix to pay Greyson $2,000 per lawsuit, to have Greyson provide Greyson attorneys to appear for Phoenix, on a 1099 basis, to defend Phoenix clients. . ." To the contrary, Ty Carss, as the managing partner, CEO, CFO, Secretary and Director was the only person authorized to contractually bind Phoenix. Carss Decl. at ¶¶ 3-8. Carss had no knowledge of any such contract and therefore could not have authorized or signed any purported contract. Id. As such, no such contract exists unless it has been

19

forged and/or is fraudulent. *Id.*

4. "The things that Lee's two Declarations say, about Tony Diab controlling Greyson, are absolutely false, to my personal knowledge…Tony Diab has never had any control over Greyson, at any time. The Greyson incorporated on 5/12/23 has always been owned and operated, completely independent of Tony Diab." 1046 Dkt. No. 474, Eadie Decl. at ¶ 8, pg. 28. "Lee's Declarations are also false in saying that I have, or ever have had, any control of Present Greyson—I have not, do not, and never have had any control over Present Greyson whatsoever. 1046 Dkt. No. 474, Diab Decl. at ¶ 5(e), pg. 48. Despite submitting self-serving false declarations, the overwhelming and undisputable evidence shows Diab was in control, involved and operating the "everything else" at the "Present" Greyson just as he had at LPG. 1046 Dkt No. 76 at 154:5-16; Hershy Decl. at ¶¶ 18-19; Carss Decl. at ¶ 6, Exh. B [texts with Carss dated after the Eng Taing Greyson was shut down evidencing control]; 1046 Dkt No. 325-4, AR Decl. at ¶¶ 4-5, Exhs. 1-2; Dkt No. 325-5 at ¶¶ 7, 10, Exhs. C-E, Dkt. No. 331-1 at ¶ 8, Exh. K; Suppl. AR Decl. at ¶ 21, Exh. 4.

5. "The only money that Greyson was paid, by any "alter ego" of LPG is that Phoenix…" 1046 Dkt. No. 474, Eadie Decl. at ¶ 10. This too is false based on actual evidence. 1046 Dkt. No. 76 at 73:18-74:1, Dkt. No. 325-8 at ¶ 5-7, Exhs. C-F, Dkt. No. 325-5 at ¶¶ 7, 10, Exhs. C-E, Dkt. No. 331-1 at ¶ 7, Dkt. No. 325-4 at ¶¶ 4-5, 11, 15-17, Exhs. 1-2, 8, 12-14; Suppl. AR Decl. at ¶ 17-18, Exh. 37-38.

6. "Lee's Declarations are false in asserting that I [Diab] helped to plan either Eng Taing Greyson, or Present Greyson. I did not do so, and I had not part in setting up either Eng Taing Greyson, or Present Greyson." 1046 Dkt. No. 474, Diab Decl. at ¶ 5(a). The overwhelming evidence establishes this too is false. 1046 Dkt No. 76 at 154:5-16; Hershy Decl. at ¶¶ 18-19; Carss Decl. at ¶ 6, Exh. B; 1046 Dkt No. 325-4, AR Decl. at ¶¶ 4-5, Exhs. 1-2; Dkt No. 325-5 at ¶¶ 7, 10, Exhs. C-E, Dkt. No. 331-1 at ¶ 8, Exh. K; Suppl. AR Decl. at ¶ 21, Exh. 4.

7. "Lee's Declarations are false in saying that I had discussions with Han Trinh, and/or with Jayde Trinh, planning either Eng Taing Greyson, or Present Greyson. Han and Jayde and I never had discussions at my house, or anywhere else, regarding the formation of either Eng Taing Greyson or Present Greyson." 1046 Dkt. No. 474, Diab Decl. at ¶ 5(b). The overwhelming evidence establishes

1    this too is false. 1046 Dkt No. 76 at 154:5-16; Hershy Decl. at ¶¶ 18-19; Carss Decl. at ¶ 6, Exh. B;

2    1046 Dkt No. 325-4, AR Decl. at ¶¶ 4-5, Exhs. 1-2; Dkt No. 325-5 at ¶¶ 7, 10, Exhs. C-E, Dkt.

3    No. 331-1 at ¶ 8, Exh. K; Suppl. AR Decl. at ¶ 21, Exh. 4.

4          8.    "Eng Taing formed Eng Taing Greyson to deprive The Litigation Practice Group PC

5    ("LPG") of LPG's share of revenue being generated by LPG clients which LPG had been with

6    Oakstone for servicing." 1046 Dkt. No. 474, Diab Decl. at ¶ 5(b).  Yet, such false statements

7    contradict Diabs own 341a hearing testimony among other evidence. Suppl. Freedman Decl. at ¶ 10,

8    Exh. U, 341a Transcript at 143:23-144:10; Hershy Decl. at ¶¶ 14, 16-19.

9          Diab and Eadie's specious attempt to claim Greyson never received any money from LPG is

10   deceptive and false. 1046 Dkt. No. 474, Eadie Decl. at ¶ 10; Diab Decl. at ¶ 5(g). The evidence is

11   clear and Greyson has already admitted it received funds from PrimeLogix, Vulcan and BAT. 1046

12   Dkt. No. 76 at 73:18-74:1. All of Greyson's funds came from LPG ACH receivables post-petition

13   and was sent at the direction of Diab and Han. Id.; 1046 Dkt. No. 325-8 at ¶ 5-7, Exhs. C-F, Dkt

14   No. 325-5 at ¶¶ 7, 10, Exhs. C-E. Han has also testified that LPG owned BAT, and therefore all money

15   Greyson and Greyson employees received from BAT without a doubt were and are LPG funds. Suppl.

16   Freedman Decl. at ¶ 3, Exh. L at 137:3-4.

17         The same holds true for Diab's claim that he is not aware of LPG directly paying any credit

18   card from May 1, 2023 to June 9, 2023 as it does not address LPG funds fraudulently transferred from

19   PrimeLogix, Vulcan, BAT or any other non-Debtor entity of Diab's that was funded with LPG assets.

20   Notably in this regard, Diab and Han were the only two individuals authorized on BAT's Chase

21   account and all of Guardian and Greyson's payroll, among other expenses, was sent by Han to Diab

22   for approval and/or with the instruction to Diab to "Pay it".[7] 1046 Dkt. No. 325-4 AR Decl. at ¶ 4,

23   Exh. 1.

24   _____

25   [7] In a deceitful effort to hide Han's involvement with the fraudulent transfer of LPG funds from BAT
26   to Greyson and withhold the production of evidence requested to oppose Greyson's Frivolous Motion
     pursuant to Trustee's document demand ahead of Han's deposition, Diab had Han removed as the
27   CEO, CFO, Secretary and board member of BAT after Trustee's deposition subpoena was served so
     she was no longer an employee of BAT. Suppl. Freedman Decl. at ¶ 7, Exh. Q-R.  As such, Han
28   refused to produce any documents related to BAT claiming just that, she was not an employee of
     BAT. Id. at ¶ 7, Exh. S.

1    Similarly, Diab, Han and Eadie's declarations that claim LPG never transferred any files to

2    Greyson is also deceptively false. LPG clients were transferred to Greyson by the misappropriation

3    of LPG's network of attorneys who then inappropriately solicited and encouraged their LPG clients

4    to move over to Greyson. A tactic Greyson's own evidence and client declarations submitted in

5    opposition to the Trustee's Preliminary Injunction show and one this Court noted as improper at the

6    Preliminary Injunction hearing. See 1046 Dkt. Nos. 47 and Dkt. Nos. 47-3 – 47-7; 1046 Dkt. No. 76

7    at 75:9-25 ["Well, let me explain to you that if you don't know anything about it, then your papers

8    are fairly worthless, <u>because they have made a strong case that the preliminary injunction should go</u>

9    <u>with respect to the Greyson Law Center</u>."].

10    Indeed, having been served with the Trustee's adversary complaint, Diab, Han and Jayde had

11    to re-calibrate their strategy. The resulting scheme was no longer to transfer LPG clients directly to

12    Greyson and other entities. Instead, it was to steal all of LPG's other assets, including but not limited

13    to LUNA, Client data stored in LUNA, LPG's attorney network, LPG funds, computers, training

14    documents, sales scripts and employee handbook among other assets. Fraudulently transferring

15    LPG's other assets in this way gave Greyson the ability to coerce and unethically solicit former LPG

16    clients from MLG, harm the Estate and further defraud unsophisticated consumer clients with few

17    options to protect themselves. Based on the new Greyson scheme, the unsuspecting consumer client

18    was for all purposes being fraudulently transferred without any knowledge or understanding that they

19    were the subject of a fraudulent scheme by a double disbarred attorney and his soldiers. As such, any

20    claim by Greyson Diab, Han, Jayde, and/or Eadie that Greyson is a competitor is nothing more than

21    a pretext for the same individuals to re-capture the golden goose that was taken away from them as a

22    result of the TRO and Preliminary injunction.

23    Furthermore, Diab's declaration provides testimony that he would only have personal

24    knowledge of if he was involved in, controlled and/or ran OLG and Greyson in the shadows. For

25    example, Diab states "Eng Taing set up Eng Taing Greyson, for the ostensible purpose of avoiding

26    the stigma associated with the unlawful debits of Oakstone clients, but in reality Eng Taing set up

27    Eng Taing Greyson to deprive Eng Taing's partner, Wes Thomas, and to deprive LPG…from the

28    revenue stream being generated from those LPG files." 1046 Dkt. No. 474, Diab Decl. at ¶ 5(d). Diab

fails to state how he has personal knowledge of why Eng Taing purportedly started Eng Taing Greyson, absent his complicit involvement in the decision as he testified to at the 341a hearing. Suppl. Freedman Decl. at ¶ 10, Exh. U at 143:23-144:10. Moreover, the agreement Diab mentions was purportedly entered into between LPG and OLG was entered into after the fraudulent transfer and LPG filed its bankruptcy petition in yet another scheme to try and defraud the Court and creditors. Suppl. AR Decl. at ¶ 28, Exh. 48.

Along the same lines, Diab claims "Present Greyson never had or used, computers, monitors, or furniture [sic] been purchased by LPG or with LPG money. If that had happened, I would have been aware." 1046 Dkt. No. 474, Diab Decl. at ¶ 5(h). Mr. Lee testified he was present when LPG's Tustin office was raided by "Eng Taing Greyson" employees, including Eng himself, and stripped LPG of its computers, laptops, and other equipment that were loaded into a Uhaul truck as established by photographic evidence. 1046 Dkt. No. 325-5 BL Decl. at ¶ 8, Exh. B, Dkt. No. 331-1, Suppl. BL Decl. at ¶ 9. Mr. Lee was further present in Greyson's office when the same equipment was loaded off the truck and installed in Greyson's office. Id. As such, Diab either lacks personal knowledge to make such a statement or he was involved in the theft of LPG assets and his declaration is intentionally false.

It is clear that Han, Jayde and Eadie all have substantial financial, among other professional, incentives to continue Diab's fraudulent scheme. Indeed, they have been lavishly rewarded for their loyalty to Diab. Specifically, Han's wedding costing approximately $300,000 was paid for with LPG assets [Jane D. Decl. at ¶ 44] and therefore approved by Diab; Han and Jayde salaries at PLG, OLG and now Greyson which no reasonable company would have offered but for their involvement in Diab's fraudulent scheme, including $300,000 a year for an administrator and $500,000 per year to an attorney who only had just passed the bar and potentially engaged in the unauthorized practice of law before she even passed the bar [1046 Dkt. No. 45-6 at ¶ 5(d); Jane D. Decl. at 24, 27, ¶ 11-13, 16-19, 44]; LPG paid for luxury vehicles costing more than $100,000, including Mercedes and a BMW i8 [Jane D. Decl. at 24, 27 ¶ 11-13, 16-19, 44] among others; and LPG paid for Han an Jayde's private jets and trips to Vegas [Id.]. In addition to Greyson, Han and Jayde's meritless $5 million dollar administrative claims, they have a significant incentive to continue LPG's fraudulent business

1  model worth hundreds of millions of dollars a year in addition to other personal and financial

2  incentives.

3      3.    **The Preliminary Injunction As To Greyson Must Not Only Stand, But Also Be**

4            **Modified to Expand Its Reach to Prevent Injustice and Irreparable Harm**

5          It is evident from Greyson's supplemental brief supported by the Declaration of Diab, that

6  Han, Jayde, Eadie, Diab and Greyson's attorney are now coordinating their efforts in submitting false

7  declarations, in an effort to re-claim LPG. With LPG funds shut off, Diab and his soldiers have turned

8  to presenting false evidence in support of Greyson, Han and Jayde's meritless administrative claims

9  totaling more than $5 million dollars. Bank. See Dkt. Nos. 674-676 and the objections thereto.

10  Dkt. Nos. 1103-1105. By way of Greyson's Frivolous Motion, Diab and his soldiers seek to regain

11  possession of LPG assets, proprietary software and client data in order to execute on their scheme to

12  use such assets to steal former LPG clients from MLG and harm the Debtor's Estate.

13          In essence, Greyson, Han and Jayde seek Estate funds and all of LPG's key assets necessary

14  to continue with their fraudulent enterprise regardless of whether they operate under the Greyson

15  name or a new entity Diab has started, including but not limited to Legacy Law Partners, PC. Suppl.

16  Freedman Decl. at ¶ 8, Exh. T. This is an outcome this Court stated it would not let happen and the

17  reason the TRO and Preliminary Injunction issued in the first instance. 1046 Dkt. No. 76 at 261:7-

18  262:17 ["What you're afraid of is they're going to -- I'm going to kill the golden goose, and I'm not

19  going to -- I'm not going to do anything but that."]

20          Granting Greyson's Frivolous Motion on the other hand, will cause severe injustice and

21  irreparable harm to LPG's Estate, creditors, consumer creditors and consumers at large. Indeed,

22  Greyson will, as it has argued, use Estate funds, client contact information, LPG attorneys, computers,

23  equipment and proprietary information to target MLG clients such that consumer clients will continue

24  to be subjected to Diab's fraudulent business practices and the residual value of the sale of LPG's

25  assets to MLG which has yet to be set will be severely diminished, forever harming the Debtor's

26  Estate, LPG creditors and therefore the numerous consumer client creditors who have all made claims

27  for reimbursement. Thus, in order to prevent injustice and irreparable harm to not only LPG's Estate

28  but also consumer clients and creditors who have been harmed by Diab, Han, Jayde and other insiders,

1  the Preliminary Injunction as to Greyson must not only stand but should be expanded to prevent any

2  further miscarriage of justice.

3  **III.    GREYSON HAS FAILED TO MEET ITS BURDEN THAT THE COURT'S TRO**

4  **AND PRELIMINARY INJUNCTION WAS OBTAINED THROUGH FRAUD**

5  Greyson's contention that the Preliminary Injunction should be vacated pursuant to

6  FRCP 60(b)(3) based on the Trustee's withdrawn allegation that Greyson is an alter ego of LPG is

7  wholly misguided. Even assuming, *arguendo*, Rule 60(b)(3) were applicable, which it is not as the

8  TRO was superseded by the Court's subsequent Preliminary Injunction order, Greyson has failed to

9  meet its burden of proof to show that: 1) any fraud was committed; and 2) that the Court's TRO and

10  subsequent Preliminary Injunction was made as a result of Greyson's unsupported allegation of fraud.

11  Greyson's attempt to improperly shift the burden of proof as to why the Preliminary Injunction should

12  not be vacated and what property is and/or is not Greyson's to Trustee is contrary to Ninth Circuit

13  case law, discussed more thoroughly in the Trustee's portion of the parties Joint Separate Statement.

14  **A.    Greyson Argues in Bad Faith That the Burden to Prove the Property and Accounts in**

15  **Question Rest With the Trustee**

16  Greyson's contention that the burden rests on the Trustee to prove that the Preliminary

17  Injunction should not be vacated or amended is further unsupported by the law and Greyson's

18  Frivolous Motion, the parties subsequent Joint Statement and Greyson's further supplemental briefing

19  fail to cite any law in support of its position because no such authority exists. Instead, it is well

20  established in the Ninth Circuit, that "[a] party seeking modification or dissolution of an injunction

21  [Greyson] bears the burden of establishing that a significant change in facts or law warrants revision

22  or dissolution of the injunction." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) citing *Sharp*

23  *v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) and *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir.

24  2013).

25  Contrary to Greyson's unsupported position, in fact and law, the burden does not rest on the

26  Trustee to present evidence Greyson, Han, Jayde, Diab and others have intentionally withheld and

27  speciously refuse to produce. Assuming, *arguendo*, the evidence existed to support Greyson's claim

28  of ownership of the equipment and accounts it asks this Court to return and that they were not paid

1  for with LPG funds, whether directly or through other non-Debtor entities, the easiest way for

2  Greyson to prove those facts would be to produce such evidence to the Court –bank records showing

3  what account paid Han or H3 Computer. Based on the fervor with which Greyson has litigated its

4  Frivolous Motion, it would be reasonable to expect that Greyson, Han, Jayde, Eadie and Diab would

5  gladly produce records showing: (1) proof of ownership and serial numbers of the laptops, computers

6  and beelinks; and (2) proof that Han, Justin Nugyen and H3 Computer Services were not reimbursed

7  for the equipment, Microsoft Account and website by Diab or from LPG assets transferred from any

8  number of Diab's non-Debtor entities, including but not limited to BAT, Vulcan and/or PrimeLogix.

9  Greyson, however, hides behind arguments raised in bad faith, unsupported by any authority and

10 refuses to produce such records because the evidence they have withheld will likely show it was all

11 paid for with LPG assets just as all of Greyson's other expenses had been. As such, Greyson has failed

12 to meet its burden and the Court should deny Greyson's Frivolous Motion to vacate the Preliminary

13 Injunction and turnover LPG property.

14 **B.    Greyson Improperly Seeks Reconsideration of Its Alter Ego Argument and Presents No**

15 **New Evidence or Law Substantiating Its Request to Vacate the Preliminary Injunction**

16 A motion for reconsideration may not be used "to rehash the same arguments made the first

17 time or simply express an opinion that the court was wrong." *In re Greco*, 113 B.R. 658, 664 (D.

18 Haw. 1990), aff'd and remanded sub nom. *Greco v. Troy Corp.*, 952 F.2d 406 (9th Cir. 1991); see

19 also *In re Mannie*, 299 B.R. 603, 608 (Bankr. N.D. Cal. 2003) (internal citation omitted) ("A motion

20 to reconsider should not be used 'to ask the court "to rethink what the court had already thought

21 through—rightly or wrongly"—or to reiterate arguments previously raised.'"). Greyson fails to raise

22 any change in circumstances, evidence or law that would give this Court authority to modify or vacate

23 its Preliminary Injunction order. Instead, Greyson improperly raises the same alter ego argument

24 raised in its opposition to the Trustee's Preliminary Injunction, at the Preliminary Injunction hearing

25 and that Court got it wrong and needs to now "get it right." 1046 Dkt. No. 474 at 8-10. Such

26 arguments, however, are not grounds to reconsider this Court's Preliminary Injunction supported by

27 evidence that Greyson drafted and stipulated to.

28

1    Based on false representations by Han and privileged settlement communications with

2    Greyson's prior counsel, the Trustee agreed to withdraw his alter allegation as to Greyson. 1046 Dkt,

3    No. 325-6 at ¶ 3, Exh. A. At the hearing counsel for Greyson continued to raise the alter ego allegation

4    argument, which this Court rejected as being any ground upon which it issued the TRO and upon

5    which it would issue a Preliminary Injunction order.[8] 1046 Dkt, No. 325-6 at ¶ 3, Exh. A. 1046 Dkt.

6    No. 47, Dkt. No. 76 at 73:18-74:1, 75:9-25, 79:21-80:5, 261:7-262:15. In this way, the alter ego

7    argument was moot and inconsequential.

8    Conceding the TRO and Preliminary Injunction was proper based on the evidence and

9    Greyson's own admissions, Greyson not only agreed to the Preliminary Injunction on the record but

10   drafted and approved the very language Greyson, Diab, Han and Jayde now speciously argue was

11   obtained by fraud and that this Court did not "get it right." 1046 Dkt. No. 76 at 261:7-262:15, Dkt

12   No. 325-6, Celentino Decl. at ¶ 4, Exh. B. As such, Greyson's Frivolous Motion should be denied as

13   it is based on nothing more than the same arguments this Court already rejected.

14   Furthermore, all of the false declarations submitted in support of Greyson's Frivolous Motion

15   and subsequent briefing are based on facts that could have been raised prior to and at the Trustee's

16   Preliminary Injunction hearing.[9] As such, not only is Greyson sole argument raised in its Frivolous

17   Motion not new, it has already been rejected by this Court and in this way an untimely and improper

18   motion for reconsideration and should be denied.

19   **C.    Greyson Has Failed to Establish That the Alter Ego Allegation Was Fraudulent to**

20   **Support a Rule 60(B)(3) Order Vacating the Preliminary Injunction**

21   "A court must exercise its inherent powers with restraint and discretion in light of their

22   potency. See *Chambers v. Nasco, Inc,* 501 U.S. 32, 44 (1991). Although the term 'fraud on the court'

---

[8] A word search of the June 12, 2023 hearing transcript identifies sixteen instances when the phrase "alter ego" was raised. Suppl. Freedman Decl. at ¶ 9.

[9] Notably, the false declarations and facts now presented by Han, Eadie and Diab were not presented by prior counsel for Greyson (other than to disclaim Diabs involvement) as doing so would violate Rule 11, FRBP 9011 and the attorney's duty of candor to the Court. All of which supports the Trustee's position that sanctions pursuant to Rule 11 and FRBP 9011 as to Greyson and its attorney of record, Han, Jayde and Eadie are warranted.

1  remains a 'nebulous concept', *Broyhill Furniture Indus., Inc. v. Craftmaster Furniture Corp.*, 12 F.3d

2  1080, 1085 (Fed. Cir. 1993), that phrase 'should be read narrowly, in the interest of preserving the

3  finality of judgments.' *Toscano v. Commissioner*, 441 F.2d 930, 934 (9th Cir. 1971). Simply put, not

4  all fraud is fraud on the court. To constitute fraud on the court, the alleged misconduct must 'harm[]

5  the integrity of the judicial process.'" *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989).

6      Despite Greyson's failure to apprise this Court of the applicable standard for finding fraud,

7  the Ninth Circuit, among others, have long applied Professor Moore's definition of "fraud" for

8  purposes of Rule 60(b)(3), which the Ninth Circuit re-stated as follows:

9      Fraud upon the court should, we believe, embrace only that species of fraud
       which does or attempts to, defile the court itself, or is a fraud perpetrated by
10     officers of the court so that the judicial machinery can not perform in the usual
       manner its impartial task of adjudging cases that are presented for adjudication.
11

12  *Gumport v. China Int'l Trust and Inv. Corp.*, 926 F.2d 912, 916 (9th Cir. 1991).

13      Here, Greyson's only argument is that this Court issued its TRO and subsequent Preliminary

14  Injunction based on the Trustee's allegation that Greyson was an alter ego of LPG. Such an allegation

15  if false, does not remotely rise to the level of fraud required to grant a Rule 60(b)(3) motion. As

16  previously discussed herein, this Court explicitly indicated at the June 12, 2023 hearing, it was relying

17  on Greyson's judicial admissions and opposition as the basis for issuing its Preliminary Injunction.

18  Recognizing the Court was not basing its order on an alter ego allegation and that such an argument

19  was contrived and meaningless, Greyson stipulated to the Preliminary Injunction subject to agreed

20  upon language it drafted. Based on Greyson's own flawed argument, Greyson agreed to the fraud and

21  therefore committed a fraud upon itself. An unintelligible outcome that does not support a

22  Rule 60(b)(3) order vacating the Preliminary Injunction.

23      Notwithstanding, the Trustee's allegation that Greyson was an alter ego of LPG in seeking a

24  TRO and subsequent withdrawal of the allegation is immaterial as it is not a fact but rather a legal

25  doctrine based on a number of factors to be proved by evidence. *Perfect 10, Inc.*, *supra*, 847 F.3d at

26  677 [Alter ego is a legal doctrine that can only be established by evidence.]. The Trustee is not aware

27  of any case law holding that a party commits fraud for purposes of Rule 60 if a cause of action or an

28  allegation is withdrawn or even where a defendant proves the allegation to be false, absent clear and

1  convincing evidence of malice or malicious prosecution. Facts not present here as the Trustee's alter

2  ego allegation was reasonably based on the evidence and information available at the time.

3       Along these lines, LPG was an alter ego of Diab. All of the evidence produced by the Trustee

4  in opposition to Greyson's Frivolous Motion establish Greyson is and always has been an alter ego

5  of Diab. Evidence that has come to light as the Trustee has and continues to review over 100 million

6  documents produced in this matter to date.

7       Initially, however, the connection between Diab and Greyson was thwarted by false

8  statements intentionally made by Han to Mr. Celentino in an effort to prevent having access to LPG

9  assets, information and data it needed to rebuild LPG. 1046 Dkt. No. 325-6 at ¶ 3, Exh. A. At the time

10  the Trustee sought its TRO and Preliminary Injunction, however, it was clear Greyson was the

11  recipient of comingled LPG client files, funds and property, equipment and proprietary information,

12  which the Trustee presented evidence of to support those allegations. All of which support the TRO

13  and Preliminary Injunction. Based thereon, it reasonably appeared that Greyson was an alter ego of

14  LPG. The inadvertent gaffe that was made, if any, was the product of LPG and Diab often being

15  referred to synonymously. This reasonable gaffe is further supported by the Trustee's agreement to

16  withdraw the allegation based on Han's false representations that <u>Diab had no affiliation with</u>

17  <u>Greyson</u>, as opposed to a statement that LPG did not have any affiliation with Greyson.

18       Moreover, the alter ego allegation was not a factor considered by this Court in issuing its TRO

19  and subsequent Preliminary Injunction as noted by the Court at the June 12, 2023 hearing and

20  therefore could not have defiled the Court, impeded the judicial process or in any way derailed the

21  Court's judgment to "get it right" as Greyson speciously argues. In fact, Greyson fails to argue or

22  present any reliable evidence on how the alter ego allegation derailed or worked a fraud on the Court,

23  other than to baldly claim it has suffered significant damages over the past ten months. 1046 Dkt.

24  No. 474. Notably in this regard, Greyson fails to explain why it did not present such false information

25  and arguments in opposition to the Trustee's Preliminary Injunction in June 2023, which it could have

26  done absent objection and refusal to do so by Greyson's prior counsel. Moreover, Greyson fails to

27  explain why it waited over four (4) months to bring it's Frivolous Motion when the Court had

28  indicated at the June 12, 2023 hearing that any party could bring a motion based on new evidence of

1    changed circumstance to have the Preliminary Injunction set aside at any time.

2        With little doubt, the Trustee's alter ego allegation did not work a fraud on the Court to support

3    a Rule 60(b)(3) as it was never the grounds for the Court issuing the TRO or Preliminary Injunction

4    in the first instance. Further, Greyson has failed to meet its burden because it relies on unsupported

5    arguments, in law and fact. As such, Greyson's Frivolous Motion has been brought in bad faith and

6    should be denied.

7    **IV.    THE PRELIMINARY INJUNCTION SHOULD BE READ AGAINST GREYSON**

8        It is well established, a TRO is only intended to preserve the status quo until a preliminary

9    injunction hearing can be held. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839

10    n. 7 (9th Cir. 2001); *see also Granny Goose Foods, Inc.*, *supra*, 415 U.S. at 438-39. Here, the Court

11    Preliminary Injunction superseded its TRO. 1046 Dkt. No. 70. As such, any argument that the TRO

12    should be read against the Trustee is immaterial and raised in bad faith as the TRO is no longer the

13    enforceable order. *Id*.

14        Nonetheless, based on Greyson's own "*contra proferentem*" argument, the Preliminary

15    Injunction must be read against the drafter. 1046 Dkt. No. 474 at 22-24. Here, Greyson drafted the

16    language contained in paragraphs 5-6, paragraph 14, page 6 paragraph 3, page 9 paragraph 5, page 11

17    lines 6-16 of the Preliminary Injunction. 1046 Dkt. No. 325-6 at ¶ 4, Exh. B. While the Trustee

18    maintains "*contra proferentem*" is inapplicable, to the extent this Court finds that it is, the language

19    in the Preliminary Injunction specific to Greyson, which it drafted, must be read against Greyson and

20    not the Trustee.

21    **V.    THE COURT SHOULD MODIFY AND EXPAND THE PRELIMINARY**

22    **INJUNCTION TO PROTECT AGAINST IRREPARABLE HARM**

23        The uncontrovertable evidence produced by Trustee in opposition to Greyson's Frivolous

24    Motion shows that Greyson, Diab, Han, Jayde and Eadie intend to use LPG assets to engage in the

25    same fraudulent enterprise employed at LPG, solicit prior LPG clients and steal MLG clients in order

26    to re-capture their "golden-goose" –an outcome this Court explicit stated it would not permit. 1046

27    Dkt No. 76 at 261:7-262:15. Permitting Greyson, Diab and his soldiers to compete with access and

28    opportunity to use LPG assets, information, databases, documents and other proprietary information

1  in the debt relief industry would, as Greyson threatens it intends to do, cause irreparable harm the

2  Estate, MLG, the value of the sale of LPG's assets to MLG, LPG's creditors including consumer

3  client creditors, and consumers at large who may fall prey to their illegal enterprise run by a double

4  disbarred attorney.

5      As such, the Trustee respectfully requests that the Trustee be allowed to modify the current

6  Preliminary Injunction as to Greyson only, to remove the conditions it drafted and as set forth in

7  paragraphs 5-6, paragraph 14, page 6 paragraph 3, page 9 paragraph 5, page 11 lines 6-16 of the

8  Preliminary Injunction. Further, the Trustee respectfully requests this Court set a further hearing and

9  briefing schedule on Trustee's request to expand the scope of the Court's Preliminary Injunction in

10  order to prevent Greyson, Diab, Han, Jayde, Eadie, Eng and others from: (1) retaining former LPG

11  attorneys; (2) using copies of LPG client data, in any form and/or on any server and/or software

12  platform, including but not limited LUNA; and (3) as to Greyson, Diab, Han and Jayde from providing

13  any services, whether directly or indirectly, related to, affiliated with or in connection to any

14  enterprise, entity or person providing debt relief services until further order of the Court.

15  **VI.    GREYSON, ITS COUNSEL OF RECORD AND OFFICERS HAN, JAYDE AND**

16  **EADIE SHOULD BE REQUIRED TO PAY SANCTIONS TO TRUSTEE FOR**

17  **HAVING TO OPPOSE GREYSON'S FRIVOLOUS MOTION**

18      Sanctions for filing frivolous motions, unsupported in law or fact, and based on false

19  declaration unsupported by any evidence are authorized pursuant to FRBP 9011(b)(1)-(3), which is

20  nearly identical to its Federal counter part, Rule 11. To wit, courts have routinely held that filing

21  frivolous, malicious and repetitive pleadings based on the same arguments, unsupported facts and/or

22  law is grounds for Rule 9011 sanctions. See e.g. *In re Crofford*, 286 B.R. 366 (Bankr. E.D. Ark.

23  2002), aff'd in part and rev'd in part, remanded, 301 B.R. 880 (8th Cir. 2003); *In re Property*

24  *Management & Invest., Inc.*, 69 B.R. 310 (Bankr. M.D. Fla. 1987). Here, Greyson continues to re-

25  argue its alter ego allegation argument ten months after this Court rejected the exact same argument.

26  This is a fact Greyson, its attorney of record, Han, Jayde, Eadie and Diab are all aware of and yet

27  refuse to accept the Court's certified transcript from the June 12, 2023 hearing that dispels of the very

28  argument they continue to raise. As such, sanctions are warranted.

Courts have awarded sanctions where, as here, the party against whom sanctions are sought knew or should have known that they were filing false pleadings and/or pleadings in bad faith. See e.g. *In re Whitney Place Partners*, 123 B.R. 117 (Bankr. N.D. Ga. 1991), aff'd, 966 F.2d 681 (11th Cir. 1992); In re Coquico, Inc., 508 B.R. 929 (Bankr. E.D. Pa. 2014); *Estate of Perlbinder v. Dubrowsky* (In re Dubrowsky), 206 B.R. 30 (Bankr. E.D.N.Y. 1997), aff'd, 244 B.R. 560 (E.D.N.Y. 2000). Here, Greyson, Han, Jayde, Diab, Eadie and The Bankruptcy Law Firm knew and should have known that they declarations and arguments raised by Greyson were made in bad faith and false. Even if Greyson, its attorney of record, Diab and his soldiers speciously argued they were not aware of false facts in their declarations, after the Trustee served Greyson with evidence, including emails, text messages and photographs they were all put on notice that their declarations have no evidentiary support. Instead of heading this warning wherein the Trustee indicated it would seek sanctions in the parties Joint Statement filed January 8, 2024 [1046 Dkt. No. 325 at 1-11] they chose to double down and rely on their ring leader, Diab, to help try and bail them out.

Further, Courts have awarded sanctions where, as here, the moving party has failed to state and/or apply the governing legal standard and deliberately mischaracterized the standard. See e.g. *In re Witt*, 481 B.R. 468 (Bankr. N.D. Ind. 2012). Here, Greyson, its attorney of record, Han, Jayde (an attorney), Eadie (an attorney) and Diab (a disbarred attorney) have been given multiple opportunities to properly brief this Court on the legal standard for bringing a motion to modify or vacate a preliminary injunction. Yet, after three or more opportunities and even ones not authorized by the Court [see 1046 Dkt. No. 338] to properly set forth the legal standard and provide truthful facts supported by evidence, Greyson and its multitude of attorneys, including its attorney of record failed to do so because they know or should know they cannot meet the standard as properly set forth by the Trustee in his portion of the parties Joint Separate Statement. 1046 Dkt. No. 325 at 10. As such, sanctions are warranted.

Based on the foregoing, the Trustee respectfully requests this Court set a hearing on his request for sanctions to allow further briefing on Greyson, its attorney of record, Han, Jayde, and Eadie's sanctionable conduct and amount of sanctions sought by Trustee as result of Greyson's Frivolous Motion.

## VII.    <u>CONCLUSION</u>

The evidence today is as clear as it was to this Court on May 26, 2023 and June 12, 2023 when it issued is TRO and Preliminary Injunction. Diab, Han, Jayde and Eadie have all been working together to effectuate Diab's fraudulent enterprise while at LPG, OLG and Greyson. Along these lines the evidence is clear, Diab has been controlling Greyson by and through his control over his soldiers, Han and Jayde with Eadie allowing Diab to rent his license. The evidence shows Greyson was fully funded with LPG assets and misappropriated LPG's attorney network in order to fraudulently use the attorneys to solicit and steal former LPG clients. The evidence shows Greyson was in possession of LPG assets, including computers, laptops, monitors and beelinks. Greyson had access to all of LPG's client data through Phoenix and OLG's LUNA access points. In fact, Han's email admits the different LUNA systems contained all the same information.

Greyson, on the other hand, has provided this Court with nothing more than false declarations unsupported by any evidence. Greyson carries the burden of proving that new law, facts and evidence support an order modifying or vacating this Court's Preliminary Injunction which it has failed to do and cannot do. For all the reasons herein and as set forth in the Trustee's portion of the parties Joint Statement [1046 Dkt. No. 325], the Court should: (1) deny Greyson's Frivolous Motion; (2) modify the Preliminary Injunction as to Greyson to remove all conditions set forth on pages 5-6 paragraph 14, page 6 paragraph 3, page 9 paragraph 5, page 11 lines 6-16 of the Preliminary Injunction; (3) set a hearing and briefing schedule on Trustee's request to expand the scope of the Preliminary Injunction as to Greyson, Han, Jayde, Eadie, Diab and Eng among others; and (4) set a hearing and briefing schedule on Trustee's request for sanctions pursuant to Rules 11 and 9011 for the attorney's fees and costs associated with opposing Greyson's Frivolous Motion.

Dated:  April 17, 2024

Respectfully submitted,

DINSMORE & SHOHL LLP

By: */s/ Jeremy B. Freedman*
  Christopher B. Ghio
  Jeremy B. Freedman
  Special Counsel to Richard A. Marshack,
  Chapter 11 Trustee

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101

A true and correct copy of the foregoing document entitled (*specify*): **PLAINTIFF RICHARD A. MARSHACK, CHAPTER 11 TRUSTEE'S FURTHER BRIEFING IN OPPOSITION TO GREYSON LAW CENTER, PC'S FRIVOLOUS MOTION TO VACATE [1046 Dkt No. 290] AND SUPPLEMENTAL BRIEFING FILED IN SUPPORT THEREOF [1046 Dkt. No. 474]**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>April 17</u> persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Keith Barnett<br>on behalf of Defendant Payliance, LLC | keith.barnett@troutman.com<br>kelley.wade@troutman.com |

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On <u>April 17, 2024</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Tony Diab
1278 Glenneyre Street
Laguna Beach, California 92651

Lisa Cohen
20101 SW Cypress Street
Newport Beach, California 92660

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>April 17, 2024</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

### VIA FEDERAL EXPRESS – JUDGE'S COPY

Honorable Scott C. Clarkson
United States Bankruptcy Court. Central District of California
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| April 17, 2024 | Nicolette D. Murphy | /s/ *Nicolette D. Murphy* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*    Page 37    **F 7016-1.STATUS.REPORT**

1.      **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

| | |
|---|---|
| Bradford Barnhardt<br>on behalf of Plaintiff Richard A. Marshack | bbarnhardt@marshackhays.com<br>bbarnhardt@ecf.courtdrive.com<br>alinares@ecf.courtdrive.com |
| Eric Bensamochan<br>on behalf of Interested Party Courtesy NEF | eric@eblawfirm.us<br>G63723@notify.cincompass.com |
| Christopher Celentino<br>on behalf of Plaintiff Richard A. Marshack | christopher.celentino@dinsmore.com<br>caron.burke@dinsmore.com |
| Christopher Celentino<br>on behalf of Trustee Richard A Marshack (TR) | christopher.celentino@dinsmore.com<br>caron.burke@dinsmore.com |
| Leslie A Cohen<br>on behalf of Defendant Rosa Bianca Loli | leslie@lesliecohenlaw.com<br>jaime@lesliecohenlaw.com<br>clare@lesliecohenlaw.com |
| Leslie A Cohen<br>on behalf of Interested Party Courtesy NEF | leslie@lesliecohenlaw.com<br>jaime@lesliecohenlaw.com<br>clare@lesliecohenlaw.com |
| Michael T Delaney<br>on behalf of Defendant Fidelity National Information Services, Inc. dba FIS | mdelaney@bakerlaw.com<br>tbreeden@bakerlaw.com |
| Alan W Forsley<br>on behalf of Interested Party Courtesy NEF | alan.forsley@flpllp.com<br>awf@fkllawfirm.com<br>awf@fl-lawyers.net<br>addy@flpllp.com |
| Jeremy B. Freedman<br>on behalf of Plaintiff Richard A. Marshack | jeremy.freedman@dinsmore.com<br>nicolette.murphy@dinsmore.com |
| Jeremy B. Freedman<br>on behalf of Trustee Richard A. Marshack (TR) | jeremy.freedman@dinsmore.com<br>nicolette.murphy@dinsmore.com |
| Christopher Ghio<br>on behalf of Plaintiff Richard A. Marshack | christopher.ghio@dinsmore.com<br>angelica.urena@dinsmore.com<br>nicolette.murphy@dinsmore.com<br>deamira.romo@dinsmore.com |
| Christopher Ghio<br>on behalf of Trustee Richard A. Marshack (TR) | christopher.ghio@dinsmore.com<br>angelica.urena@dinsmore.com<br>nicolette.murphy@dinsmore.com<br>deamira.romo@dinsmore.com |
| Eric D Goldberg<br>on behalf of Defendant Stripe, Inc. | eric.goldberg@dlapiper.com<br>eric-goldberg-1103@ecf.pacerpro.com |
| Richard H Golubow<br>on behalf of Creditor Debt Validation Fund II, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Richard H Golubow<br>on behalf of Creditor MC DVI Fund 1, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Richard H Golubow<br>on behalf of Creditor MC DVI Fund 2, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Meredith King<br>on behalf of Defendant Gallant Law Group *(DISMISSED)* | mking@fsl.law<br>ssanchez@fsl.law<br>jwilson@fsl.law |
| Meredith King<br>on behalf of Interested Party Courtesy NEF | mking@fsl.law<br>ssanchez@fsl.law<br>jwilson@fsl.law |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                            Page 38                        **F 7016-1.STATUS.REPORT**

| | |
|---|---|
| David S Kupetz<br>on behalf of Defendant Marich Bein, LLC *(DISMISSED)* | David.Kupetz@lockelord.com<br>mylene.ruiz@lockelord.com |
| Matthew A. Lesnick<br>on behalf of Defendant Optimumbank Holdings, Inc. d/b/a Optimum Bank | matt@lesnickprince.com<br>matt@ecf.inforuptcy.com<br>jmack@lesnickprince.com |
| Daniel A Lev<br>on behalf of Defendant Consumer Legal Group, PC | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Daniel A Lev<br>on behalf of Defendant LGS Holdco, LLC | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Daniel A Lev<br>on behalf of Interested Party Courtesy NEF | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Yosina M Lissebeck<br>on behalf of Plaintiff Richard A. Marshack | yosina.lissebeck@dinsmore.com<br>caron.burke@dinsmore.com |
| Daniel S. March<br>on behalf of Defendant Daniel S. March | marchlawoffice@gmail.com<br>marchdr94019@notify.bestcase.com |
| Kathleen P. March<br>on behalf of Defendant Greyson Law Center PC | kmarch@bkylawfirm.com<br>kmarch3@sbcglobal.net<br>kmarch@sbglobal.net |
| Kathleen P. March<br>on behalf of Defendant Han Trinh *(DISMISSED)* | kmarch@bkylawfirm.com<br>kmarch3@sbcglobal.net<br>kmarch@sbglobal.net |
| Kathleen P. March<br>on behalf of Defendant Jayde Trinh *(DISMISSED)* | kmarch@bkylawfirm.com<br>kmarch3@sbcglobal.net<br>kmarch@sbglobal.net |
| Richard A Marshack (TR) | pkraus@marshackhays.com<br>rmarshack@iq7technology.com<br>ecf.alert+Marshack@titlexi.com |
| Kenneth Misken<br>on behalf of U.S. Trustee United States Trustee (SA) | Kenneth.M.Misken@usdoj.gov |
| Queenie K Ng<br>on behalf of U.S. Trustee United States Trustee (SA) | queenie.k.ng@usdoj.gov |
| Lisa Patel<br>on behalf of Defendant OptimumBank Holdings, Inc. | lpatel@lesnickprince.com<br>jmack@lesnickprince.com<br>jnavarro@lesnickprince.com |
| Douglas A Plazak<br>on behalf of Defendant Scott James Eadie | dplazak@rhlaw.com |
| Daniel H Reiss<br>on behalf of Defendant Touzi Capital, LLC | dhr@lnbyg.com<br>dhr@ecf.inforuptcy.com |
| Daniel H Reiss<br>on behalf of Defendant Eng Taing | dhr@lnbyg.com<br>dhr@ecf.inforuptcy.com |
| Ronald N Richards<br>on behalf of Defendant Consumer Legal Group, PC | ron@ronaldrichards.com<br>7206828420@filings.docketbird.com |
| Jonathan Serrano<br>on behalf of Plaintiff Richard A. Marshack | jonathan.serrano@dinsmore.com |
| Zev Shechtman<br>on behalf of Interested Party Morning Law Group, P.C. | zs@danninggill.com<br>danninggill@gmail.com<br>zshechtman@efc.inforuptcy.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| | |
|---|---|
| Howard Steinberg<br>on behalf of Defendant BankUnited, N.A *(DISMISSED)* | steinbergh@gtlaw.com<br>pearsallt@gtlaw.com<br>howard-steinberg-6096@ecf.pacerpro.com |
| Andrew Still<br>on behalf of Interested Party Courtesy NEF | astill@swlaw.com<br>kcollins@swlaw.com |
| Kelly Sweeney<br>on behalf of Defendant Fidelity National Information Services, Inc. | kelly@ksgklaw.com |
| Kelly Sweeney<br>on behalf of Defendant Fidelity National Information Services, Inc. dba FIS | kelly@ksgklaw.com |
| Kelly Sweeney<br>on behalf of Defendant Worldpay Group | kelly@ksgklaw.com |
| Kelly Sweeney<br>on behalf of Defendant Worldpay, LLC | kelly@ksgklaw.com |
| United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |
| William J. Wall<br>on behalf of Witness Bradford Lee | wwall@wall-law.com |
| Johnny White<br>on behalf of Interested Party Courtesy NEF | JWhite@wrslawyers.com<br>jlee@wrslawyers.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*December 2015*                                 Page 40                                 **F 7016-1.STATUS.REPORT**