Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel of Record for Greyson Law Center PC*
*on its dkt.290 in AP, dkt.749 in LPG main case,*
*Motion to vacate dkt.13/dkt.70, and for return of seized items*

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor.<br>_____<br>Trustee Marshack,<br><br>  Plaintiff<br><br>Vs.<br><br>Tony Diab, et al. | Bankruptcy Case No. 8:23-bk-10571-SC<br>Adversary Proceeding 8:23-ap-01046-SC<br>Chapter 11<br><br>  **REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION TO GREYSON'S MOTION [DKT.290 IN AP; DKT.749 MAIN CASE] TO: (1) VACATE DKT.13 LOCKOUT/PRELIMINARY INJUNCTION ORDER, AND VACATE THE SUCCESSOR ORDER AS TO GREYSON, AND (2) ORDER TRUSTEE/ DINSMORE FIRM TO RETURN TO GREYSON 4 CATEGORIES OF ITEMS SEIZED IN 6/2/23 LOCKOUT, WHICH DKT.13 ORDER DID <u>NOT</u> AUTHORIZE SEIZURE OF, AND WHICH WERE THEREFORE SEIZED ILLEGALLY;<br><br>  **REPLY DECLS. OF DOUGLAS PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, R.PRUYN,7 LOCAL COUNSEL, 4 FORMER LPG STAFF & K.P. MARCH**<br><br>Hearing on Greyson's [dkt.290/dkt.] Motion to vacate :<br>Date: May 1, 2024    Time: 1:30 p.m. |

1
2
3

Place:  Courtroom of Bankruptcy Judge Scott Clarkson, by Zoom or
in person at:
411 West Fourth Street, Courtroom 5C
Santa Ana, CA 92701-4593

4
5
6

Greyson Law Center, PC ("Greyson") makes its herein REPLY to the

Opposition [dkt.493 items filed 4/18/24, some of which duplicate dkt.492 items filed

7
8

4/17/24 by Chapter 11 Trustee Marshack, by his attorneys Dinsmore firm], opposing

9
10

Greyson's Motion [dkt.290 in adv proc, dkt.749 in main LPG case moving: **(1)** to

vacate, as to Greyson, the [dkt.13] 5/26/23 Lockout and Preliminary Injunction

11
12
13

Order, and [dkt.70] continuation Order; and **(2)** for Order ordering Trustee/Dinsmore

firm to return to Greyson the 4 categories of items Dinsmore firm seized at 6/2/23

14
15

Lockout at Greyson's office, which dkt.13 Order did NOT authorize to be seized,

and which therefore were seized illegally.

16
17

Greyson's REPLY consists of Greyson's REPLY Memo of P&A, plus Reply

18

Declaration of Douglas Plazak, Esq.; Declaration to this REPLY of LPG Managing

19
20

Attorney Daniel March, Esq., Declarations to Reply of Han Trinh and of Jayde

21

Trinh; Declarations of 7 "local counsel" attorneys (Israel Orozco, David Orr, Collin

22

Donner, George Chamberlain, Haley Simmoneau, Peter Osterman, Denise Mikrut)

23
24

re. firms they worked for after LPG and before Greyson and why they chose to work

for Greyson; Declarations of 3 former LPG staff (Esmeralda Guzman, Brenda

25
26

Mendez, Kennedy Martinez) that Han and Jayde Trinh were not part of LPG upper

27
28

**REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. OF PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 "LOCAL COUNSEL" ATTYS, 4 FORMER LPG STAFF, REED PRUYN, AND KATHLEEN MARCH, ESQ.**   ii

1  management; Declaration of Mallory McCarthy that Diab did not give Jayde Trinh a

2  BMW car;  and Declaration to Reply of Kathleen March, Esq..

3

4  In addition, filed as separately captioned pleadings, in support of  this Reply,

5  are: (1) Greyson Response to Trustee Evidentiary Objections to Tony Diab Decl; (2)

6  Greyson Evidentiary Objections to and Request to Strike Ty Carss Decl.[dkt.493-2,

7  also filed as dkt.492-1] to Trustee OPP; (3) Greyson Evidentiary Objections to and

8  Request to Strike Alex Rubin Decl. and Exhibits [dkt.493-10] to Trustee OPP; (4)

9  Greyson Evidentiary Objections to and Request to Strike Hershy Duetsch Decl.

10

11  [dkt.493-3, also filed as dkt.492-2] TO Trustee OPP.

12

13  Dated: April 24, 2024                    THE BANKRUPTCY LAW FIRM, PC

14                                                       __/s/ Kathleen P. March_____

15                                                       By: Kathleen P. March, Esq

16                                                       *Attorneys for  Greyson Law Center, PC*
                                                        *on its Dkt.290/Dkt.794 Motion/Reply*
17

18

19

20

21

22

23

24

25

26

27

28

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION
TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT &
PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED
IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE
ITEMS; DECLS. OF PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 "LOCAL
COUNSEL" ATTYS, 4 FORMER LPG STAFF, REED PRUYN, AND KATHLEEN MARCH, ESQ.    iii

1

## TABLE OF CONTENTS

2

TO GREYSON REPLY MEMORANDUM OF POINTS & AUTHORITIES

3

4

I. Trustee's Opp <u>Does Not Deny</u> That the Specific Items Itemized In Greyson's

5

Briefing—Which Greyson Seeks Return Of, By Greyson's Motion In Chief

6

[Dkt.290 Filed 12/6/23] And By Greyson's Supplemental Briefing [Dkt.474 Filed

7

4/2/24]—Were <u>Not</u> Authorized To Be Seized By The [Dkt.13] *Lockout And*

8

*Preliminary Injunction* Order, And Therefore Were Illegally Seized............ 1

9

II. OPP Is Not Just Error, OPP Is Repeatedly And Knowingly <u>False</u>, In Arguing That

10

The [Dkt.13] *Lockout And Preliminary Injunction Order*, And The Successor

11

Dkt.70 Order, Should <u>Not</u> Be Vacated As To Greyson............................5

12

13

A. OPP's Alleging that the Dkt.13 Lockout and Preliminary Injunction Order was

14

proper as to Greyson, because Greyson "Misappropriated" LPG's attorney

15

network, is So Errornous that it is Bad Faith, for at Least 4 Reasons...........5

16

B. OPP (p.13-19) suddenly argues that Greyson is the alter-ego of Diab, an

17

argument which is contrary to the evidence, is not alleged in Trustee's

18

complaint [dkt.1, adv proc], and was not alleged in Trustee's Motion for

19

Lockout and Preliminary Injunction order [Dkt.4, adv proc].......................8

20

C. OPP is repeatedly false, where OPP alleges that Diab, Han and Jayde did

21

things which only Diab Did..............................................................9

22

23

D. OPP Lies Brazenly, where it Misattributes Something <u>Celentino</u> said at the

24

6/12/23 hearing, as being something Greyson's then-attorney <u>Plazak</u> said ....9

25

26

27

28

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION
TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT &
PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED
IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE
ITEMS; DECLS. OF PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 "LOCAL
COUNSEL" ATTYS, 4 FORMER LPG STAFF, REED PRUYN, AND KATHLEEN MARCH, ESQ.      iv

E. The Extremely Onerous Terms of Dkt.13/dkt.70 were only justified against Greyson, if Greyson was the Alter Ego of LPG, and should have been vacated as to Greyon, when Celentino, at the 6/12/23 Court hearing, admitted Greyson was NOT an alter ego of LPG...........................................................................11

F. OPP (p.25-26) is Error of Law where OPP argues that FRCP Rule 60 [FRBP Rule 9024] (relief from judgment or order), only apply where there was fraud...............................................................................................................12

G. OPP is Error, in Alleging that Greyson's then attorney, Plazak, "concurred" that the dkt.13 Lockout and Preliminary Injunction Order and dkt.70 follow on order, were correctly entered against Greyson; NOT True.............................13

H. 11 Months after dkt.13 and dkt70 were issued against Greyson, there is no evidence, or law, that would justify keeping those Orders in effect as to Greyson.......................................................................................................17

I. OPP's Plethora of Inflammatory, but False Arguments, made without Evidence, and Contrary to the Evidence, must Properly be Rejected by this Court.......................................................................................................19

J. Contrary to OPP's False Allegation that Han and Jayde were in LPG Upper Management, the Declaration of LPG Managing Attorney Daniel March, Esq. to this REPLY attests Diab and Daniel March (Sometimes with Input from Loli Made the Management Decisions at LPG, and that Management Decisions at LPG were Never Made by Han or Jayde ..............………………………25

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. OF PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 "LOCAL COUNSEL" ATTYS, 4 FORMER LPG STAFF, REED PRUYN, AND KATHLEEN MARCH, ESQ.   v

III. OPP's alleging that Greyson's Motion is "Frivolous", and that Greyson counsel, Kathleen March, Esq. of The Bankruptcy Law Firm, PC, and Han Trinh, should be sanctioned for bringing Greyson's Motion, is Contrary to all the Evidence, and Contrary to Controlling Law....................................................................26

IV. Conclusion……………………………………………….…………………28

V. Greyson Objects to Hearings Being Held—Such as The 4/22/24 Hearing—Where Trustee Discusses Information Highly Relevant to Greyson--But Without Trustee Noticing Greyson's Counsel such Matter will be Discussed…………….………29

Declarations to this Reply are:

Douglas Plazack Decl…………………………………………..……..32

Declaration of Daniel March, Esq., Managing Attorney of LPG………….……..37

Declaration of Han Trinh……………………………………………………..41

Declaration of Jayde Trinh…………………………………………………52

7 Declarations of "Local counsel" (Israel Orozco, David Orr, Collin Donner, George Chamberlain, Haley Simmoneau, Peter Osterman, Denise Mikrut)……………….56

Declaration of Reed Pruyn……………………………………………..…100

4 Declarations of former LPG staff (Esmeralda Guzman, Brenda Mendez, Kennedy Martinez, Mallory McCarthy)……………………………………………101

Kathleen P. March  Esq. Decl…………………………………..……………..109

# REPLY TABLE OF AUTHORITIES

FRCP Rule 60.................................................................................................12, 21

FRBP Rule 9011...................................................................................................21

FRBP Rule 9024............................................................................................12, 21

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION
TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT &
PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED
IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE
ITEMS; DECLS. OF PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 "LOCAL
COUNSEL" ATTYS, 4 FORMER LPG STAFF, REED PRUYN, AND KATHLEEN MARCH, ESQ.      vii

**GREYSON'S <u>REPLY</u> MEMORANDUM OF POINTS & AUTHORITIES**

**I.     TRUSTEE'S OPP <u>DOES NOT DENY</u> THAT THE SPECIFIC ITEMS ITEMIZED IN GREYSON'S BRIEFING—WHICH GREYSON SEEKS RETURN OF, BY GREYSON'S MOTION IN CHIEF [DKT.290 FILED 12/6/23] AND BY GREYSON'S SUPPLEMENTAL BRIEFING [DKT.474 FILED 4/2/24]—WERE <u>NOT</u> AUTHORIZED TO BE SEIZED BY THE [DKT.13] *LOCKOUT AND PRELIMINARY INJUNCTION* ORDER, AND THEREFORE WERE ILLEGALLY SEIZED**

Greyson's Motion in chief [dkt.290 in adversary proceeding/dkt.749 in main case, filed 12/6/23], Greyson part of Joint Statement [dkt.325, filed 1/8/24], and Greyson's Supplemental briefing [dkt.474, filed 4/2/23] move for **<u>TWO things</u>**. (Declaration of Kathleen P. March, Esq. hereto)

First Greyson moves to vacate, as to Greyson,  the dkt.13 *Lockout and Preliminary Injunction Order* (includes follow on dkt.70 *Preliminary Injunction Order)*.

Second, Greyson moves for an order ordering Trustee/Dinsmore firm to return 4 specific categories of  items, seized at Greyson on 6/2/23, which were seized illegally, because the [dkt.13] *Lockout and Preliminary Injunction Order* (and the follow on dkt.70 *Preliminary Injunction Order*) did **<u>NOT</u>** authorize seizure of those 4 categories of items.  (Kathleen P. March Decl hereto).

---

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          **1**

1
2
3
4

Trustee's Opposition ("OPP") [dkt.492/493 filed 4/17/24 and 4/18/24] argues (in error) that the Court should **<u>not</u>** vacate, as to Greyson,  the dkt.13 *Lockout and Preliminary Injunction Order/follow on Dkt.70 Order*.

5
6
7
8
9
10
11
12

**But Trustee's OPP does not say a single word about the other half of Greyson's Motion—the half of Greyson's Motion moving for return of 4 categories of items seized illegally at Greyson on 6/2/23, because neither the [dkt.13]** *Lockout and Preliminary Injunction Order***, and not even the [dkt.70] follow-on** *Preliminary Injunction Order***, authorized seizure of those 4 categories of items.** (March Decl)

13
14
15
16
17
18
19
20

The dkt.13 Lockout and Preliminary Injunction Order  and follow-on dkt.70 Order, **<u>do not contain</u>** any language authorizing Trustee/Dinsmore firm, to seize the following 4 categories of  items (previously itemized in Greyson's 1/8/24 and 4/2/24 briefing), which Dinsmore firm/its field agents illegally seized at Greyson on 6/2/23, because there is no language in dkt.13, or in dkt.70, authorizing seizure of those 4 categories of items.

21
22
23
24
25
26
27

As itemized in the Joint Statement [dkt.325, filed 1/8/24] and itemized again in Greyson's Supplemental Briefing [dkt.474, filed 4/2/24], the 4 categories of items Greyson seeks return of from Trustee/Dinsmore firm, because dkt.13/dkt.70  did NOT authorize Trustee/Dinsmore firm to seize those items, are  as follows:

28

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.        2**

(1)    The dkt.13 Order did NOT authorize Celentino firm to seize, or to lock Greyson out of, Greyson's Microsoft [M365 suite] account, which Han Trinh had been paying Microsoft $2,312 monthly, from Han Trinh's own money as proven by Han's credit card bill (not reimbursed by anyone) (attested to in Han Trinh's Declaration [dkt.325-2] to Joint Statement filed 1/8/24).  Celentino's part of the Joint Statement [dkt.325, filed 1/8/24] does not point to any text in the 5/26/23 [dkt.13] Order authorizing Celentino firm to seize and lock Greyson out of Greyson's whole Microsoft [M365 suite] account.  The dkt.13 Order does not authorize that.  Nor does the 6/23/23 [dkt.70] continuation Order.

(2)    The dkt.13 Order did not authorize Celentino's firm to seize, or to lock Greyson's out of, Greyson's internet domain/website, which Greyson's IT director, Justin Nguyen, had paid for with his own funds (as attested to in Nguyen's Declaration [dkt.325-1], filed as part of Joint Statement on 1/8/24).  Celentino's part of the Joint Statement does not point to any text in the 5/26/23 [dkt.13] Order authorizing Celentino firm to seize and lock Greyson out of Greyson's internet domain.  The dkt.13 Order does not authorize that.  Nor does the 6/23/23 [dkt.70] continuation order.

(3)    The dkt.13 Order [p.8, line 24 to p.9, line 11 enjoins a list of people, which includes Han Trinh, Jayde Trinh and Scott Eadie from accessing emails.  However, that provision does NOT authorize the Celentino firm to seize, read, or use Greyson's 100 + email accounts.  It was **<u>unauthorized</u>** for Celentino firm to seize, read and use Greyson's 100+ email accounts, which Celentino firm has obviously done, because 18 of Greyson's emails (which Han, Jayde and Scott Eadie have been locked out of by Celentino, form 6/2/23 to present), are attached as Exhibits to the Declaration of Alex Rubin [dkt.325-4] (then working as a field agent for Celentino firm) that is one of Celentino firm's declarations to the Joint Statement [dkt.325] filed 1/8/24.  Celentino firm's part of the Joint Statement does not point to any language in the 5/26/23 Order, or 6/23/23, which authorized Celentino firm to seize, read, use or lock Greyson out of all 100+ Greyson email accounts.  The dkt.13 Order does not authorize that.  Nor does the 6/23/23 [dkt.70] continuation order.  Enjoining Han Trinh, Jayde Trinh and Scott Eadie of Greyson from accessing their emails, does NOT authorize Celentino firm to seize all 100+

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Greyson email accounts,  nor does it allow Celentino firm to read and use Greyson's emails, from those 100+ Greyson email accounts, which the 18 Greyson emails attached to Ruben's Declaration [dkt.325-4] shows Celentino firm has done.

(4)    Approximately 50 Greyson computers and beelinks seized by Celentino firm at Greyson's office, on 6/2/23 should properly be ordered returned to Greyson.  The Declaration [dkt.325-1] of Greyson's IT director, Justin Nguyen to Greyson's portion of the Joint Statement, attests he paid for the 24 beelinks with his own personal credit card, unreimbursed by anyone, and attaches delivery documents showing Nguyen ordered those 24 beelinks.

OPP does not deny that Dinsmore firm/its field agents seized all these items on 6/2/23, and does not deny the Dinsmore firm still has these seized items.  If the dkt.13 Order, or the successor dkt.70 Order,  had any language authorizing seizure of the foregoing four categories of items,  OPP would have point to that language.  **OPP is silent because there is NO LANGUAGE in dkt.13, or the successor dkt.70 Order, authorizing seizure of these 4 categories of items**.

Because OPP is silent about the portion of Greyson's Motion/joint statement/ supplemental briefing moving for return of those items, Greyson's request for an order ordering Dinsmore firm/its field agents to return these 4 categories of items to Greyson , is **unopposed**.  The Court should grant the "return 4 categories of seized items" relief because it is **unopposed** in OPP.  But more importantly, that relief should be granted, because there is no language in dkt.13/dkt.70 authorizing Dinsmore firm/its field agents, to seize any of these 4 categories of items. (March Decl hereto).

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.            **4**

OPP's false argument (discussed in II. ….infra), that Greyson's then attorney, Douglas Plazak, Esq., "agreed" to the dkt.13 Lockout and Preliminary Injunction Order, or to the follow on dkt.70 Preliminary Injunction. (See Plazak's detailed Declaration to this Reply, explaining, in detail that there was no such "agreement" or "concurrence". But OPP's (false) allegation, that Plazak "concurred or "agreed" to the dkt.13/dkt.70 Orders, is irrelevant to Greyson's right to have the 4 categories of seized items, itemized supra this section, returned to Greyson, because neither the [dkt.13] Order, nor the [dkt.70] Order, authorized Trustee/Dinsmore firm to seize those 4 categories of items. (March Decl hereto).

## II.    OPP IS NOT JUST ERROR, OPP IS REPEATEDLY AND KNOWINGLY <u>FALSE</u>, IN ARGUING THAT THE [DKT.13] *LOCKOUT AND PRELIMINARY INJUNCTION ORDER*, AND THE SUCCESSOR DKT.70 ORDER, SHOULD <u>NOT</u> BE VACATED AS TO GREYSON

**A. OPP's Alleging that the Dkt.13 Lockout and Preliminary Injunction Order was proper as to Greyson, because Greyson "Misappropriated" LPG's attorney network, is So Errornous that it is Bad Faith,  for at Least 4 Reasons:**

OPP's (p.9, lines 5-8;  p.13, lines 20-23;  p.17, lines 5-6;  p.18, line 23, etc.) argues that the dkt.13 Lockout and Preliminary Injunction Order (and follow on dkt.70 Order) was proper as to Greyson, because Greyson had "misappropriated LPG's attorney network," which was LPG's "most valuable asset".  That (newly

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          5

created) argument is so clearly contrary to law and evidence, for at least 4 reasons,

that it is bad faith.

First, Dinsmore firm's Motion [dkt.4], filed under seal on 5/25/23,  moving for

dkt.13, **nowhere alleged** that dkt.13 should be granted because Greyson

misappropriated LPG's attorney network. Dinsmore firm's motion sought, and was

granted, the dkt.13 Lockout and preliminary injunction order (and the follow on

dkt.70 order) based on the allegation that various entities (e.g. Phoenix, Oakstone,

Consumer Law Group), **including Greyson**, were alter egos of debtor LPG.  Trustee's

Motion [dkt.4, filed 5/25/23] and the Declarations thereto, is based on the allegation

that these entities, including Greyson, are alter egos of LPG. Trustee's Omnibus

Emergency Motion for Turnover etc. [dkt.4, filed 5/25/23] at p.1, footnote 1 states:

> "**The Alter Egos include, but are not limited to**: OakStone Legal Group, P.C.
> ("OakStone"); **Greyson Law, P.C. ("Greyson")**; Phoenix Law Group, P.C.
> (Phoenix"); LGS Holdco., LLC; Consumer Legal Group, P.C. ("CLG");
> Maverick Management, LLC ("Maverick"); Vulcan Consulting Group, LLC
> ("Vulcan"); Strategic Consulting Solutions, LLC ("SCS"); BAT Inc. d/b/a Coast
> Processing ("Coast Processing"); Prime Logix, LLC ("Prime Logix"); Tony
> Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli ("Rosa Loli"); Lisa
> Cohen and/or any other alias', agents or corporate entities affiliated  with same
> (collectively referred to herein as "Alter Egos" unless specifically identified)."
> [bold/underline added for emphasis]

Plus see Trustee's Status Report [dkt. 45, filed 6/12/23], page 3, lines 10-12 (stating

same).

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                6**

1    Second, Trustee's Complaint [dkt.1, adv proc], filed by Dinsmore firm on

2    5/25/23, **nowhere alleges** "misappropriation" of LPG's attorney network, by anyone.

3
4    Third, the attorneys in question had ceased to be employed by LPG, before they

5    were employed by Greyson. By the time the attorneys in question were employed by

6    Greyson, there was no "LPG attorney network". So there was nothing to

7
8    "missappropriate".

9    Fourth, there is zero evidence that Greyson "forced" attorneys to work for

10   Greyson. The evidence is directly contra: The attorneys chose to work for Greyson

11
12   The many declarations of "local counsel" attorneys to this Reply— Israel Orozco,

13   David Orr, Collin Donner, George Chamberlain, Haley Simmoneau, Peter Osterman,

14   Denise Mikrut —who had previously worked for LPG, then had worked for Oakstone,

15
16   then had done work directly for Phoenix, attest that they weren't willing to continue

17   working directly for Phoenix, because Phoenix was slow pay/no pay, and attest they

18   were only willing to work defending state court lawsuits, **through Greyson**. Those

19
20   Declarations establish that those attorneys chose to work for Greyson, not that

21   Greyson "forced" those attorneys to work for Greyson. Greyson had no power to

22   "force" attorneys to work for Greyson. (Jayde Trinh Decl hereto)

23
24   Ty Carss, managing attorney of Phoenix, testified, at the 6/12/23 hearing, that

25   because of the slow pay problem Phoenix had, those attorneys were unwilling to

26   continue working directly for Phoenix, and would only work through Greyson:

27

28
REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                                  7

1
2
3
4
5
6

"A  Well, again, the payment processing through Phoenix was so slow that a lot of these attorneys ["Local Counsel" attorneys appearing in state court suits for Phoenix] were wondering how they were going to get paid.  And then they—many of them, as I noticed, their e-mails all started changing from LPG e-mails to Greyson e-mails.  **And many of them told me that they would not take assignments unless it was through Greyson**." [6/12/23 hearing transcript, p.201, lines 7-8; bold/underline added for emphasis]

7
8
9
10
11
12
13
14
15
16

The evidence is uncontroverted that those attorneys were no longer employed by LPG, **before** Greyson hired them.  (Jayde Trinh Decl to this Reply).  But even if those attorneys had left LPG, to be employed by Greyson, they would have been entitled to do that. Attorneys aren't serfs or slaves, they have a right to move from one law firm to another, as they see fit. (Jayde Trin Decl)  OPP does not point to any authority that the attorneys in question were not allowed to work for Greyson.  There is no such authority.  (March Decl hereto).

17
18
19
20
21
22
23
24
25
26
27

**B. OPP(p.13-19) suddenly argues that Greyson is the alter-ego of Diab, an argument which is contrary to the evidence, is not alleged in Trustee's complaint [dkt.1, adv proc], and was not alleged in Trustee's Motion for Lockout and Preliminary Injunction order  [Dkt.4, adv proc]**

Desperate to find some argument to justify keeping dkt.13/dkt.70 in place against Greyson, OPP (p.13-19) makes a second, brand new, false argument (in addition to the new, false "Greyson misappropriated LPG attorney network" argument discussed immediately infra..  That second, new, false argument is **not** alleged in

28

**REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.             8**

Trustee's Complaint [dkt.1, adv proc] and is **not** alleged in Trustee's Motion [dkt.4, adv proc] for the Order granted as dkt. 13 on 5/26/23, in the ex parte hearing.  That second false,  brand new argument,  is OPP alleging that Greyson is the alter ego of Diab.  OPP has no evidence to support that new argument, which is contrary to all the evidence, including contrary to Scott Eadie Decls filed 4/18/24, Han Trinh Decl filed 4/18/24, Jayde Trinh Decl to this Reply,  Daniel March Esq. Decl to this Reply.

### C. OPP is repeatedly false, where OPP alleges that Diab, Han and Jayde did things which only Diab Did

The repeated OPP ( OPP pp.10, 13-15, and 18-19) argument, of alleging that Diab, Han and Jayde did things which only Diab did, is a good example of the old adage: "Saying it don't make it true".  This OPP argument has no evidence to prove it, and is contrary to all the evidence [Han Trinh Decl, Diab Decl, Daniel March Decl.

### D.  OPP Lies Brazenly, where it Misattributes Something Celentino said at the 6/12/23 hearing, as being something Greyson's then-attorney Plazak said

At page 11, lines 6-15, OPP lies to this Court, where OPP alleges that:

> "At the June 12, 2023 hearing, Greyson further admitted Greyson was entirely
> funded with LPG assets and post-petition ACH pulls on LPG client accounts as
> the Trustee's evidence had previously shown and as more thoroughly briefed in
> the Trustee's portion of the parties Joint Statement [1046 Dkt No 325 at 5:16-
> 7:7]. See 1046 Dkt. No. 76 at 73:18-74:1 ["So in the past few weeks, the
> direction was given to pull the LPG client money, and then the direction was

---

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                    9

1
2
3

<u>given for that money to go to PrimeLogix or Maverick. And that money was
used at those locations to either compensate personnel at Greyson. . . and/or a
series of other purposes that were detailed to the to the Court."].</u>"

4    But this quote—which Trustee was so pleased with that he emphasized it with

5    underlining—is NOT anything Greyson's then counsel Plazak said, at the 6/12/23
6
7    hearing.  This quote is something that **<u>Trustee counsel Celentino said at the 6/12/23</u>**

8    **<u>hearing.  It is NOT something Plazak said.</u>**  The foregoing quote is not even at

9    p.73:18-74:1 of the transcript, as cited.  It is at p.33:10-16.  The page of the 6/12/23
10
11   transcript, p.33:10-16, where Celentino said the above, is attached as **<u>Exhibit A</u>** to

12   March Decl to this Reply.

13
14            What is actually said, at p.73:18-74:1 of the 6/12/23 transcipt, is just a

15   statement by Greyson's counsel Mr. Plazak, that Greyson used an ACH mechanism to

16   pay attorneys and staff.  The  p.73:18-74:1 page of the 6/12/23 transcript, where

17
18   Plazak was speaking, is attached as **<u>Exhibit B</u>** to March Decl to this Reply.

19            Misattributing the foregoing quote of something Celentino said, as having been

20   said by Plazak, **<u>is a brazen lie</u>**.  Dinsmore firm should be able to read the 6/12/23

21
22   transcript, and state accurately who was speaking about what, on a page of the

23   transcript which OPP quotes.  OPP doesn't get this wrong by mistake, its wrong on

24   purpose.

25
26
27

28
**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          10**

**E. The Extremely Onerous Terms of Dkt.13/dkt.70 were only justified against Greyson, if Greyson was the Alter Ego of LPG, and should have been vacated as to Greyon, when Celentino, at the 6/12/23 Court hearing, admitted Greyson was NOT an alter ego of LPG**

Greyson briefed, in Greyson' supplemental brief filed 4/2/24, that an Order with the "scorched earth" terms of dkt.13/dkt17 could never have been granted based on the very vague fraudulent transfer allegations against Greyson, which were the only allegations left in Trustee's adversary proceeding complaint against Greyson, once the alter-ego allegations were removed . **OPP does not deny this**. OPP does not deny that no reported case grants a Lockout and Preliminary Injunction Order, of anything like the "scorched earth" scope of the dkt.13/dkt.70 Orders, based on a complaint that only makes fraudulent transfer allegations.

OPP error in alleging this Court did not rely on false alter ego allegation, in granting dkt.13, or in granting the follow on Order, dkt.70. This Court did not state, in the 6/12/23 hearing, that this Court did **not** rely on the –false as to Greyson--alter ego allegations, in granting dkt.13.

Without dkt.13, there could be no dkt.70 Order continuing dkt.13 in effect. But for the fact that Dinsmore firm's dkt.4 Motion made the false as to Greyson, allegation that Greyson was one of LPG's alter egos, this Court could not have granted the dkt.13 Order as to Greyson. If the dkt.13 Lockout and Preliminary Injunction Order

---

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.    11**

1
2
3

had not been granted as to Greyson, there would have been nothing for dkt.70, the

"continuation" order, to continue in effect, as to Greyson.

4
5
6

**F. OPP (p.25-26)  is Error of Law where OPP argues that FRCP Rule 60 [FRBP Rule 9024] (relief from judgment or order), only apply where there was fraud.**

7
8
9
10
11
12
13
14

That OPP argument is **directly contrary** to the wording of FRCP Rule 60 [applied to bankruptcy adversary proceedings by FRPB Rule 9024], regarding grounds for a Court granting relief from a judgment or order.  Contrary to OPP's error of law argument, FRCP Rule 60 [incorporated by FRBP Rule 9024] does NOT require that there be fraud, in order for a movant to be entitled to relief from a judgment or order.

15
16
17
18
19

As quoted in Greyson's briefing filed 4/2/24, FRCP Rule 60(b)(3) which states that "**misrepresentation**" is one of the 6 categories of  grounds justifying a Court granting relief from a judgment or order:

20
21
22
23
24

"(b) Grounds for Relief from a Final Judgment, Orde , or Proceeding.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

…

(3) fraud (whether previously called intrinsic or extrinsic), **misrepresentation,** or misconduct by an opposing party;"

…"

25
26
27
28

1
2
3
4

It is uncontrovertable that the central allegation of Trustee's dkt.4 Motion (on

which the Dkt.13 Lockout Order and Preliminary Injunction were granted) was the

Motion's **misrepresenting**, that Greyson was one of the alter egos of LPG.  **That was**

5
6
7
8
9

**a huge  misrepresentation as regards Greyson,** because Greyson was a competitor

of LPG, NOT an alter ego of LPG.  That misrepresentation requires vacating dkt13, as

to Greyson, and without dkt.13, there is nothing to be continued in effect against

Greyson, by the dkt.70 continuation order, which must also be vacated.

10
11
12
13
14
15
16
17

Greyson's briefing [dkt.474], filed 4/2/24, briefs the law that an order granted

based on false information must properly be vacated.  OPP has no law contra.  That

the dkt. 4 Motion **misrepresented**, in alleging Greyson was the alter ego of LPG,  is

proven by Trustee's lead attorney Celentino admitting, on the record, at the 6/12/23

court hearing, that Greyson was NOT an alter ego of LPG.  [6/12/23 court hearing

transcript, p p.33:22-p.34:1 (quoted immediately infra)

18
19
20

**G. OPP is Error, in Alleging that Greyson's then attorney, Plazak, "concurred"**
**that the dkt.13 Lockout and Preliminary Injunction Order and dkt.70 follow**
**on order, were correctly entered against Greyson; NOT True**

21
22
23
24

While OPP, at p.12, claims that Trustee agreed to withdraw the argument that

Greyson was an alter ego of LPG "based on undisclosed (allegedly privileged

settlement communications) with Greyson's prior counsel [Doug Plazak, Esq.]," even

25
26
27
28

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S**
**MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY**
**INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S**
**MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.**
**PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,**
**4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.             13**

a cursory review of the transcript of the 6/12/23 hearing shows that allegation is false.

At p.33:22-p.34:1, Trustee's counsel Celentino states:

> "It does not appear -- and this is one thing I want to credit the folks that are
> appearing on behalf of Greyson. We are going to want to modify -- the trustee
> is going to want to amend its complaint. **It does not appear that Greyson is an
> alter ego**. I'll take it at face value that it's not…"

Later, at p.35:18-p.36:2, Celentino states:

> "And so for the purposes of the order that your Honor has asked us, the reason I
> wanted to get into this a little bit is the order that we'll be seeking isn't exactly
> just a continuation of the one your Honor entered. It has a issue with Greyson
> because that is nothing more than our view, and ultimately we'll prove at trial
> that it's a fraudulent conveyance partner of the former management of LPG, and
> they have their own fiduciary and other duties that they will have to attest to at
> some point. **But it is not an alter ego of LPG**."

These are statements Celentino made to the Court,  not announcements that Trustee

has agreed to withdraw Trustee's alter ego allegations against Greyson, based on some

allegedly privileged, off the record,  "settlement" discussion Celentino had with

Greyson counsel Plazak.  The Declaration of attorney Plazak  to this Reply attest, in

detail, that there was never any such off the record "settlement" discussion between

Celentino and Plazak, and attests that OPP is lying in alleging there was any such

discussion.

Plazak's Declaration to this Reply attests that Plazak **never consented,
stipulated or concurred**, that Dkt.13, or the follow on order, dkt.70, should be

granted against Greyson, or were correctly granted, as to Greyson.  Plazak's

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          **14**

1   Declaration attests that all Plazak did was try to work out some language in the dkt.70

2   order, with Celentino, after the 6/12/23 hearing, to make the erroneous order a little

3
    less onerous as regars Greyson.
4

5       OPP at p.27-28 again seeks to mislead by claiming that Greyson "agreed to the

6   Preliminary Injunction on the record."  Not true:  the part of the transcript OPP cites is

7
    Plazak, stating that he will need to work out language with Mr. Celentino regarding
8

9   Greyson's 48 client files which Celentino's firm had seized on 6/2/23, and any ACH

10  "pulls" (payments Greyson in future might make to pay for work Greyson did for

11
    those 48 clients) because Greyson [**not being an alter ego of LPG],** was situated
12

13  differently than the other entities [**which were alter egos of LPG**], which would be

14  subject to what was later issued as the dkt.70 continuation order.

15
        Celentino, Plazak, and the Court had a lengthy discussion about what needed to
16

17  change in the Preliminary Injunction so that the bankruptcy estate would not be

18  involved in Greyson's operation.  At the end of that conversation, Plazak and

19
    Celentino agree to work out language to that effect, with the Court's approval.  See
20

21  6/12/23 Transcript p. 256:25- 262:18, particularly p.261:12-24:

22      "MR. PLAZAK: Well -- and I think based on what everybody is saying is -- **I
23      think what has to happen is Mr. Celentino and I just need to work on
        specific language that relates to this that's going to cover Greyson, which is
24      in a different situation with the others.** And I believe the idea is that we're --
        we just need to work together to figure out language, as it relates to ACH, that's
25
        going to be different for Greyson than perhaps all the others. And the same
26

27

28  **REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
    MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
    INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
    MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
    PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
    4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          15

1
2
3
4

thing with, for example -- well, (indiscernible) -- you know, again, with the lockout. In other words, we're not -- things that would apply to Greyson may perhaps not apply to the other entities. And I think these are all things that probably can be worked out by Mr. Celentino and I. [bold/underline added for emphasis]

5
6
7
8
9
10
11

Plazak trying to work out such language with Celentino, when the Court had stated (Transcript p.80:3-8) that Greyson would not be let out of the PI entirely, does NOT constitute Greyson agreeing to the dkt.70 continuation order.  Plazak working with Celentino, as this Court directed at the 6/12/23 hearing, to get slightly less onerous language put in the dkt.70 follow on Order, cannot be characterized as Greyson:

12
13
14
15
16

"conceding the TRO and Preliminary Injunction was proper based on the evidence and Greyson's own admissions, Greyson only agreed to the Preliminary Injunction on the record, but drafted and approved the very language Greyson, Diab, Han and Jayde now speciously argue was obtained by fraud and that this Court did not 'get it right' " [OPP, p.27, lines 8-11].

17
18
19
20
21
22

Nobody could say that a party, who loses a motion, agrees that the party should have lost, because counsel for the losing party works with opposing counsel regarding the wording of the order against the losing party, to try to make the order less onerous on the client.  There is no authority saying, or even suggesting that would be the case.

23
24
25
26

Note also that it was impossible for Greyson to have consented to, stipulated to, or "concurred" that the Court should grant the dkt.13 [5/26/23 *Lockout and Preliminary Injunction*] Order, against Greyson, because Trustee's Motion [dkt.4 in

27
28

REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          16

1
2
3
4    adv. Proc.] moving for the dkt.13 Order, was filed sealed, and the Court granted

dkt.13 at an *ex parte* hearing held 5/25/23, where only Trustee attorneys, U.S. Trustee

attorney, and Debt Validation Fund attorney were present, and where neither Greyson

nor any other "target" were present, or were even aware was being held, as no "target"

5    was served with the dkt.4 motion, before the hearing was held, or given notice of that
6
7    hearing, before the hearing was held.  (March Decl hereto, proven by pacer adv proc
8
9    docket).
10

11    **H. 11 Months after dkt.13 and dkt70 were issued against Greyson, there is no**
12    **evidence, or law, that would justify keeping those Orders in effect as to**
13    **Greyson**

14        The Dkt.13 Lockout and Preliminary Injunction Order, (and the dkt.70
15
16    continuation order) were supposedly to keep LPG money, which had been transferred
17    by LPG to LPG alter egos, from moving.  But Greyson was **not** an alter ego, and all
18
19    the evidence, after 11 months, is that LPG **never** transferred any LPG money to
20    Greyson (Scott Eadie decls, Han Trinh decl, Tony Diab decl, Daniel March decl).

21        Trustee has had 11 months to produce evidence that LPG transferred any LPG
22
23    money to Greyson, and has no such evidence. Greyson had negative $1.70 in its bank
24    account as of May 2024 [See Exhibit A to Han Trinh Decl to Greyson's further
25    briefing, filed 4/2/24]
26
27
28

1    Similarly, after 11 months of dkt.13/dkt70 being in effect, Trustee has zero

2  evidence that LPG transferred any client files to Greyson.  All the evidence (Scott

3

4  Eadie decls, Han Trinh decl, Tony Diab decl, Daniel March decl) is that LPG did **not**

5  transfer any LPG client files to Greyson.  Even the testimony of Trustee's witness

6  Bradford Lee, given by Lee in deposition, is that LPG did NOT transfer any LPG

7

8  client files to Greyson.  [Transcript of Lee deposition taken 3/2/24, p.157:23-258:1;

9  see also p54:17-55:9].

10    The dkt.13 Order did NOT authorize trustee to seize the 4 categories of items

11

12  that Greyson moves to have Trustee return to Greyson.  As briefed in **I**, supra, since

13  the dkt.13 Order did **not** authorize Trustee/Dinsmore firm to seize the 4 categories of

14  items listed in I. supra,  Dinsmore firm **illegally** seized those 4 categories of items, at

15

16  Greyson, on 6/2/23.

17    Further, the dkt.13 order **nowhere** authorizes trustee to search through

18  Greyson's data, or to use Greyson's data for Trustee's own purposes. Despite there

19

20  being nothing in dkt.13 (or in dkt.70) authorizing Dinsmore firm to search through,

21  and use for Trustee's own purposes, Greyson's seized documents and data, Dinsmore

22  firm has spent the last 11 months searching through Greyson's data, and using it for

23

24  Trustee's own purposes.  Alex Rubin's Declaration [dkt....] filed by Dinsmore firm

25  on 1/8/24,  attaches Exhibits that are taken from Greyson's (illegally) seized

26

27

28  **REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.               18**

1    data/emails.  Trustee's Evidentiary Objection [dkt.493-….. filed 4/18/24, stated, in

2    objecting to ¶8 of Diab Declaration, that Diab's Declaration:

3

4        "….is contradicted by numerous statements taken from documents **such as**
        **those taken from Greyson Law Center** and LPG **email servers** ."

5

6        But despite having searched Greyson's illegally seized 4 categories of items for

7    11 months, Trustee has been **unable to produce any evidence** that LPG transferred

8
9    any LPG money, or any LPG client files, to Greyson, because those things didn't

10   happen.  That is why there is no such evidence attached to OPP, and why OPP instead

11   consists of FALSE arguments, contrary to the evidence and contrary to law.

12
13       For all these reasons, after 11 months, there is **no** factual or legal justification

14    for continuing dkt.13/dkt70 in effect, as to Greyson.

15

16   **I. OPP's Plethora of Inflammatory, but False Arguments, made without**

17      **evidence, and contrary to the Evidence, must properly be rejected by this**

18      **Court**

19       As Trustee/Dinsmore firm lacks law, and lack evidence, to justify OPP's position,

20   OPP makes a plethora of inflammatory, but false arguments, made without citing any

21
22   evidence, and which are contrary to Greyson's evidence.  These should be disregarded

23   by this Court, as failing to cite any evidence, and as being contrary to Greyson's

24   evidence.  Here's a partial list of these false arguments in OPP:

25

26

27

28   **REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**    **19**

1    1. OPP p.5 lines 3, cites the Wizard of OZ quote "Pay no attention to the man

2   behind the curtain" and OPPp.9, lines 25-27 alleges Diab is the man running Greyson

3
4   behind closed curtains.  That OPP allegation is false, because OPP lacks evidence to

5   prove that:

6       "Greyson was being controlled by Diab…running Greyson behind closed
7       curtains just as he had done at LPG."

8
9    All the evidence [Scott Eadie Decls, Tony Diab Decl filed 4/2/24 and filed again on

10  4/18/24, Han Trinh Decls, Jayde Trinh Decls] is that Greyson was a separate

11  corporation from LPG, which Diab had no control over, no ownership in, and never

12
13  participated in managing.

14    2. OPP p.9, lines 13-15, states:

15      "Greyson was funded entirely with LPG assets originating from fraudulent
16      ACH draws and in many instances double or triple ACH draws causing
17      irreparable financial harm to LPG's consumer clients (1046 Dkt. No. 4 at 2:3-
        21 and 12-13; see also 1046 Dkt. No. 8 at ¶¶ 4-20)"
18

19  The "evidence" that Trustee cites is not evidence at all.  First, Dkt. No. 4 at 2:3-21 and

20
21  12-13 is simply Trustee citing his own Motion, which is not evidence at all.

22  Moreover, those sections do not even mention Greyson specifically.  The second cite,

23  to Dkt. No. 8, is Trustee Marshack's own declaration.  Trustee has no personal

24
25  knowledge of Greyson's funding, and the paragraphs cited do not allege anything

26  relating to Greyson at all, only Diab's alleged wrongdoing as it related to LPG.

27

28  **REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
    MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
    INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
    MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
    PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
    4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**                    **20**

3. OPP p.9, lines 16-18 states:

> "Greyson had misappropriated LPG's customer relationship management
> ("CRM") software, client files, raw data and ACH data stored therein, including
> DebtPayPro and/or LUNA (Id. at 19-20; see also 1046 Dkt. No. 8 at ¶¶ 4-20)"

Again, Trustee's "evidence" on this point is not evidence, it is a citation to the

argument in Trustee's own motion, is not evidence, and which does not even mention

Greyson's name.  Plus Trustee cites his own declaration—which, again, does not

allege any wrongdoing by Greyson—and is only a laundry list of Diab's alleged

wrongdoing.

4. OPP p.9, lines 19-21 states:

> "Greyson had misappropriated LPG's proprietary information including but not
> limited to documents, scripts, employment manuals, retainer agreements,
> affiliate contacts and contracts and training materials (Id. at 22-28; see also
> 1046 Dkt. No. 8 at ¶¶ 4-20)"

This is not the case. Han Trinh's declaration to Greyson's original Motion

(dkt.290/dkt.749) attests that the documents, scripts, protocols, templates, and

procedures were Greyson's proprietary information, not LPG proprietary information.

There is no evidence contra.

5. OPP p.9, lines 22-24 states:

> "Greyson had misappropriated other LPG assets including but not limited to
> computers, laptops, monitors, other computer equipment, office furniture and
> software accounts including Microsoft 365 (Id.; see also 1046 Dkt. No. 8 at ¶¶
> 4-20)"

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          21

This is also untrue.  Han Trinh's declaration to Greyson's original Motion

(dkt.290/dkt.749) attests that she put the LPG office furniture in lockers that she paid

for,  when LPG was evicted, immediately notified Trustee counsel of this by email.

The Declaration of Justin Nguyen, Greyson's IT director filed 1/8/24, as part of the

Joint Statement, attests he paid for the 24 B link computers, and was not reimbursed

by anyone for doing so.  Trustee's Motion and Declaration do not say anything about

these, and has no evidence that LPG paid for, or reimbursed Han or Nguyen for the

Mircrosoft account Han paid $2,187 to Microsoft, per month, with Han's personal

credit card,  or for the Greyson internet domain/website Han and Nguyen paid for,

unreimbursed, or for the 24 B links Nguyen paid for unreimbursed; or that LPG paid

for anything else Greyson has.

  6. OPP. 6, lines 19-22 states:

> "Greyson has further failed to raise any new facts or law to substantiate its
> Frivolous Motion. Greyson's false declarations could have been submitted prior
> to and/or at the Preliminary Injunction hearing by prior counsel for Greyson,
> who in his wisdom chose not to for reasons made apparent by the evidence."

OPP offers no evidence that Greyson's declarations are "false," because they are not

false.  Greyson's Motion is meritorious, including for all reasons briefed in this Reply.

  7. OPP p.6, lines 26-28 states:

> "Furthermore, the current language provided for in the Court's Preliminary
> Injunction, to which the Trustee agreed to, was based on Han's false assertion

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.            22**

1

2

that Diab was not involved with Greyson in any fashion. A fact that the
evidence now shows is false."

3

4

5

6

7

8

9

10

11

12

13

14

Diab was not and is not involved with Present Greyson.  Attorney Scott Eadie's two

Declarations filed 4/18/24 [part of dkt.1127] attest Diab had and has nothing to do

with present Greyson, which is owned and run by Eadie.  Tony Diab's Declaration

[part of dkt.1127]  filed 4/2/24, and filed again on 4/18/24, attests Diab had nothing to

do with Present Greyson.  Han's several Declarations, including Han's Declaration to

this Reply, attest to this also.  Trustee has no evidence contra. Han did not make any

false assertion.  The "false assertion" in this case is Trustee's counsel Dinsmore firm

falsely alleging Diab controlled Greyson, with no evidence proving that, and with all

evidence being **contrary** to Dinsmore firm's allegations.

15

16

    8. OPP p.10, lines 1-5 states:

17

18

19

20

> "Diab provided false information regarding access to Microsoft, LUNA and
> other critical information and programs to assist Trustee in protecting evidence,
> over 50,000 consumer clients and preventing further fraudulent ACH draws,
> which the evidence showed was still occurring through LPG's Revolv3 account
> that was listed in Diab's name [1046 Dkt. No. 4, and Dkt. No. 8 at ¶¶ 4-20.]."

21

22

23

24

Diab's alleged actions have nothing to do with Greyson. But here also,  Trustee's

"evidence" is the argument in Trustee's Motion, which is not evidence, and Trustee

Marshack's own declaration.

25

26

27

    9. OPP p.12, lines 6-10 states:

28

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**          **23**

1
2
3
4

> "Further, Carss evidence show that refusing to pay Phoenix' attorney invoices was intentional. Id. Indeed, LPG attorneys were coerced to switch to Greyson if they wanted to "get paid" just as they had been told when forced to switch to OLG, which of course folded and was born again as Greyson. Id.; Jane. D. Decl. at ¶ 26, Exhs. 17-18"

5
6

Not only is this false, because no one "coerced" LPG attorneys to switch to Greyson.

7

Plus this allegation is contradicted by Carss' own testimony at the 6/12/23 hearing,

8
9

where Carss testified that due to Phoenix's being slow paying the attorneys, "many of

10

them told me that they would not take assignments unless it was through Greyson."

11

[6/12/23 hearing transcript, p.201, lines 7-8]

12
13

    10.OPP p.14, lines 24-26 states:

14
15
16

> "After the majority of LPG files were transferred to Phoenix, Carss was forced to rely on LPG attorneys to continue to perform the legal work necessary to provide the services LPG clients contracted for and to protect their interests. Carss Decl. at ¶¶ 2-8."

17
18

First, Phoenix is not Greyson, and has no bearing on Greyson's Motion. Second, it is

19
20

false to say that Carss was "forced" to do anything.  Carss testimony at the 6/12/23

21

Court hearing establishes Greyson did not "force" Carss to do anything, that Phoenix

22

"oftentimes" did not have attorneys to defend consumer clients being sued in state

23
24

court suits, and that Phoenix urgently needed attorneys to defend those consumer

25

clients, often on an emergency basis, in state court suits, and contracted to pay

26

Greyson $2,000 per lawsuit, in which Greyson attorneys appeared, for Phoenix, to

27
28

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.    24

1    defend Phoenix clients, in those state court suits. [6/12/23 transcript, p206, line 12, to

2    p.207, line 12

3

4        11. OPP p.22, lines 1-7 states:

5        "Similarly, Diab, Han and Eadie's declarations that claim LPG never transferred

6        any files to Greyson is also deceptively false. LPG clients were transferred to

7        Greyson by the misappropriation of LPG's network of attorneys who then

         inappropriately solicited and encouraged their LPG clients to move over to

8        Greyson. A tactic Greyson's own evidence and client declarations submitted in

9        opposition to the Trustee's Preliminary Injunction show and one this Court noted

10       as improper at the Preliminary Injunction hearing. See 1046 Dkt. Nos. 47 and Dkt.

         Nos. 47-3 – 47-7; 1046 Dkt. No. 76 at 75:9-25

11

12   First, there is zero evidence that Diab, Han or Eadie's declarations are false.  Second,

13   the remainder of this allegation impliedly admits  LPG never transferred files to

14
     Greyson, but instead alleges that  LPG "transferred files" to Greyson by Greyson
15

16   attorneys recommending to thee clients that their clients move to Greyson.  That does

17   NOT constitute LPG transferring files to Greyson.

18

19   **J.  Contrary to OPP's False Allegation that Han and Jayde were in LPG Upper**

20       **Management, the Declaration of LPG Managing Attorney Daniel March,**

21       **Esq. to this REPLY attests Diab and Daniel March (Sometimes with Input**

22       **from Loli) Made the Management Decisions at LPG, and that Management**

23       **Decisions at LPG were <u>Never Made</u> by Han or Jayde**

24
         Contrary to OPP's false allegation, the Declaration to this Reply of LPG's
25

26   Managing Attorney, Daniel March, Esq.,(p.2 Decl, center of page) attests that:

27

28   **REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
     MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
     INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
     MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
     PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
     4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                    25

"Management decisions at LPG were made solely by Tony Diab and me, with Loli sometimes making input.  Management decisions at LPG were **never made** by Han Trinh or Jayde Trinh"

See also the Declarations to this Reply of 3 former LPG staff (Esmeralda Guzman, Brenda Mendez, Kennedy Martinez) that Han and Jayde Trinh were not in LPG "upper management".  Also see Declaration to this Reply of Mallory McCarthy that Diab/LPG did not give Jayde Trinh a BMW, contrary to what OPP alleges.

## III.   OPP'S ALLEGING THAT GREYSON'S MOTION IS "FRIVOLOUS", AND THAT GREYSON COUNSEL, KATHLEEN MARCH, ESQ. OF THE BANKRUPTCY LAW FIRM, PC,  AND HAN TRINH, SHOULD BE SANCTIONED FOR BRINGING GREYSON'S MOTION,  IS CONTRARY TO ALL THE EVIDENCE, AND CONTRARY TO CONTROLLING  LAW

Greyson's Motion is meritorious and should be granted:

(1)   **First half of Greyson's Motion is Meritorious**: As briefed in Section **I.**, supra, OPP has NOTHING contra to the half of Greyson's Motion that seeks return to Greyson of the 4 categories of items that Dkt.13/dkt.70 did NOT authorize Dinsmore to seize, and which were therefore seized by Dinsmore illegally, in the 6/2/23 Lockout at Greyson.

(2)   **Second half of Greyson's Motion is Meritorious**:  All the law and evidence, recapped here, establish that dkt.13/dkt.70 were granted as to Greyson,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

based on Dinsmore firm's **misrepresentation** that Greyson was an alter ego of LPG.

Dkt.13 should have been vacated at the end of the 6/12/23 court hearing, in whic

which Celentino admitted [quoted supra], that Greyson was **not** the alter ego of LPG.

That misrepresentation alone entitles Greyson to have dkt.13 vacated, pursuant to

FRCP Rule 60(b)(3) [FRBP Rule 9024] as to Greyson, and without dkt.13, there can

be no dkt.70, continuing dkt.13 in effect as to Greyson.

For both these reasons, Greyson's Motion is meritorious, not "frivolous". Plus,

the movant is Greyson, not Han Trinh. There are no grounds on which Han Trinh

could be sanctioned, as she is not the movant, Greyson is the movant, and as

Greyson's Motion is meritorious

In addition, Dinsmore firm has apparently not read FRBP Rule 9011(c)(1)(A),

which states that a party contending a pleading is contrary to the FRBP Rule 9011

standard cannot bring a motion for Rule 9011 sanctions, unless that party served a

Rule 9011 letter on the party which filed the offending pleading, demanding the party

withdraw the offending pleading, and that after being served with that letter, the party

does not withdraw the pleading in question, within the 21 days Rule 9011 "safe

harbor" for doing so. Dinsmore firm did not do serve any such a letter on March's

law firm, regarding any Greyson pleading here in issue. (March Decl hereto).

---

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**    27

FRBP Rule 9011(c)(1)(A) additionally requires that a Motion seeking sanctions pursuant to Rule 9011 "shall be made separate from other motions…". OPP doesn't do that either.

What is frivolous here are the arguments made in OPP, not the arguments made in Greyson's pleadings here in issue.  In fact, OPP's arguments are worse than frivolous, because many of OPP's arguments are knowingly false, as briefed supra this REPLY.  If any conduct is sanctionable, its Dinsmore firm's conduct, not conduct of Greyson/its counsel, for all reasons recapped in this Reply.

## IV.   CONCLUSION

This Court should properly grant Greyson's Motion, both to order Trustee/Dinsmore Firm to return to Greyson the 4 categories of items that Dinsmore firm seized, in the 6/2/23 Lockout at Greyson, which [dkt.13] Lockout and Preliminary Injunction Order did not authorize Trustee/Dinsmore firm to seize, because those 4 categories of items were seized illegally.  OPP says nothing about the return seized items half of Greyson's Motion, which is therefore unopposed.

This Court should properly grant the half of Greyson's Motion moving this Court to vacate dkt.13, and dkt.70, the keep injunction in effect order.  Dkt 13 was granted based on Dinsmore firm's misrepresentation, in its dkt.4 sealed Motion moving for dkt13, that Greyson was an alter ego of LPG, which Dinsmore lead attorney Celentino admitted was NOT the case, at the 6/12/23 hearing.

---

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.              28

If it were *assumed arguendo*, that there were ever grounds to grant

dkt.13/dkt.70 as to non-alter ego Greyson (there were no such grounds), 11 months

later, there is no valid reason to keep dkt.13/dkt.70 in effect, as to Greyson.

### V.   GREYSON OBJECTS TO HEARINGS BEING HELD—SUCH AS THE 4/22/24 HEARING—WHERE TRUSTEE ATTORNEY DISCUSSES INFORMATION HIGHLY RELEVANT TO GREYSON--BUT WITHOUT TRUSTEE NOTICING GREYSON COUNSEL SUCH HIGHLY RELEVANT MATTER WILL BE DISCUSSED

Please see Declaration of Kathleen March, Esq. to this REPLY.  Greyson objects to

hearings being held—such as the 4/22/24 hearing—where information highly relevant

to Greyson (and to all other parties in the LPG case) is discussed with the Court by

Trustee counsel, but without notice having been given to Greyson counsel (and to all

other parties in the LPG case) that such highly relevant matter, NOT noticed anywhere

in the matter on calendar for hearing on 4/22/24, will be discussed with the Court by

Trustee counsel.  Ex parte hearings and communications need to stop.  Period.

If Greyson counsel had been noticed that Trustee counsel were going to discuss

the deteriorating situation with buyer Morning Law, at the 4/22/24 hearing regarding

Judith Skiba, Greyson attorney Kathleen March would have appeared, and  would

have told this Court the same information March told Trustee Marshack, in a

telephone call, on 3/5/24 (which, at March's request, Trustee's counsel arranged for

me to have with Trustee) (K. March Decl to this Reply).

---

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**          **29**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In that call, March told Trustee that in doing investigation for her firm's clients (Greyson, Han Trinh, Jayde Trinh) that March's firm had received information, from a source with personal knowledge, that Morning Law, buyer of LPG's assets, was deteriorating; that it had lost all but around 2,000 LPG  client files that Morning Law had purchased in the Bankruptcy Court sale, in July 2023; that it had the week before my 3/5/24 phone call with Trustee, laid off 10 of its remaining 30 staff; that Morning Law  could not run profitably with so few client files left, and that Morning Law would eventually close down, maybe by the end of April 2024. (K.March Decl to this Reply).

Obviously this would be bad for all claimants, because if Morning Law closed, that would end the stream of future payments that Morning Law was required to pay to the LPG bankruptcy estate.  (K.March Decl hereto).  Trustee said he would "look into" this situation. (K.March Decl herto)  March also told Trustee that March's firm was concerned that Dinsmore firm had recommended Russ Squires as winning bidder, when Wes Thomas had given Dinsmore firm information, in a phone meeting with Dinsmore firm, followed up by sending Dinsmore firm a lengthy document,  that Russ Squires had an unresolved allegation against him, that Squires had misappropriated 5.5 million dollars from Resolution Processing.  That didn't sound like an appropriate winning bidder to March's firm, particularly as Squires was not a lawyer, and had to

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.      30**

go out and find a law firm (Morning Law) to front for Squires, in order to be

proclaimed the winning bidder. (KMarch Decl to this Reply).

If this Court wasn't given that very negative information about Squires by

Dinsmore firm at the sale hearing (and it appears to me this Court was NOT given that

information about Squires), Greyson respectfully suggests this Court should be

demanding to know why Dinsmore firm did not give that very negative information

about Squires to this Court, before the Court proclaimed Squires (via Morning Law)

as the winning bidder for LPG's clients files.  (KMarch Decl to this Reply).  As

March's Declaration attests, withholding highly relevant information from the Court

can suggest someone at Dinsmore firm was being paid present or future consideration,

to withhold giving the court the highly relevant negative information regarding

Squires.  (Kmarch Decl to this Reply).

March's firm has evidence proving that the phone meeting with Dinsmore firm

attorneys and Wes Thomas (which Dinsmore attorney Ghio first denied had occurred)

did occur.  My firm has the lengthy document that Wes Thomas provided to Dinsmore

firm, stating that there are unresolved allegations against Squires, that Squires

misappropriated 5.5 million dollars at Resolution Processing. (K.March Decl hereto)

Dated: April 24, 2024   THE BANKRUPTCY LAW FIRM, PC

__/s/ Kathleen P. March_____
By: Kathleen P. March, Esq
*Attorneys for Greyson Law Center, PC on its Motion/Reply*

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          **31**

1

## **DECLARATION OF DOUGLAS PLAZAK ESQ.**

2

3    I, DOUGLAS PLAZAK, ESQ., declare:

4    1. I am an attorney in good standing, admitted to practice law in California, and

5    am admitted to US District Court and Bankruptcy Court, CD CA. I am a

6    shareholder of Reid & Hellyer, APC ("Reid & Hellyer), the former counsel of

7    Greyson Law Center PC ("Greyson), Han Trinh, and Phuong (aka Jayde) Trinh.

8    I attended on behalf of Greyson the June 12, 2023, Bankruptcy Court hearing

9    held in adversary proceeding 8:23-ap-01046-SC (*Trustee Marshack v. Tony*

10   *Diab et al.*), which adversary proceeding was filed in the Litigation Practice

11   Group PC ("LPG") bankruptcy case 8:23-bk-10571-SC.

12

13   2. I make this Declaration in support of Greyson's REPLY to be filed on April 24,

14   2024, replying to Trustee Marshack's Opposition [dkt.493, filed April 18,

15   2024], opposing Greyson's Motion [dkt.290] to vacate the dkt.13 Lockout and

16   Preliminary Injunction Order, and the dkt.70 follow on order, and moving for

17   return of four categories of items that Trustee counsel Dinsmore & Shohl LLP

18   seized at Greyson in the June 2, 2023, lockout at Greyson.

19

20   3. I have read Trustee's Opposition "OPP") [dkt.493]. The OPP mischaracterizes

21   the events of the June 12, 2023 hearing and falsely alleges, at p. 27:8-11 that :

22

23   "conceding the TRO and Preliminary Injunction was proper based on the
evidence and Greyson's own admissions, Greyson not only agreed to the
24   Preliminary Injunction on the record, but drafted and approved the very
language Greyson, Diab, Han and Jayde now speciously argue was obtained by

25

26

fraud and that this Court did not 'get it right' "

4.   Rather than conceding the propriety of the Preliminary Injunction, while appearing at the June 12, 2023, hearing on behalf of Greyson, I repeatedly voiced Greyson's opposition to the TRO and Preliminary Injunction.  (See, e.g., dkt 76 at p. 79:21-80:7 and in particular,  p. 72:2-6 "And therefore, the preliminary injunction should not relate to Greyson in the same way that it would---if at all, and it shouldn't relate at all because they are not similarly situated as the other entities.")  Neither I nor Greyson ever "conceded" that the TRO and Preliminary Injunction was proper based on the evidence.  Neither I nor Greyson made any admissions or ever agreed to the Preliminary Injunction on the record.

5.  Because Judge Clarkson had already entered dkt.13 on May 26, 2023, (Lockout and Preliminary Injunction Order), on the sealed Motion, ex parte hearing, and because of comments made by Judge Clarkson during the hearing (see, e.g., dkt. 76, p. 75:18-76:13, and p. 79:21-80:5) indicating that he was going to continue the dkt.13 Order in effect as to Greyson, my only recourse as counsel for Greyson were attempts to lessen the severity of the language as to Greyson that was ultimately inserted into what was thereafter entered as the dkt.70 Order. Because both Mr. Celentino and Judge Clarkson had made comments during the course of the lengthy hearing that Greyson should be treated differently than other entities, I believed both were at least receptive to the concept of

modifying the Preliminary Injunction language as to Greyson. Accordingly,

toward the end of the June 12, 2023, hearing I began suggesting modifications

to the language of Preliminary Injunction for the benefit of Greyson (See, e.g.,

dkt. 76, p. 245:5-16). A fair reading of dkt. 76 reflects that my suggestions

concerning modifications to the Preliminary Injunction language were not

concessions of validity, but were instead my attempts to soften the effects of the

Preliminary Injunction upon Greyson.

6. As reflected in dkt 76, I offered to work out some language with Mr. Celentino

and the Court agreed that we should. However, my offer to meet and confer on

the language of the Preliminary Injunction did NOT constitute my: (1)

concession on behalf of Greyson that the TRO and Preliminary Injunction were

proper; or (2) agreement on behalf of Greyson to the Preliminary Injunction.

Neither I nor Greyson concurred that any of the language set forth in either

dkt.13, or what was thereafter issued as dkt.70, was **properly issued** against

Greyson. I simply played the cards that Greyson was dealt, particularly when it

became clear that Greyson was not going to be excluded from the Preliminary

Injunction.

7. It is improper to suggest that cooperation between counsel concerning the

language of a Post-Hearing Order constitutes agreement concerning the merits

of the Order. I believe the dkt 70 Order was improperly issued against Greyson

34

for reasons articulated in both the papers submitted prior to the hearing and my comments at the hearing.

8. I further note it not possible for Greyson to have "concurred" or "agreed" that dkt.13 should be entered against it because the dkt.13 Order was granted on Trustee's sealed motion, at the ex parte hearing on May 25, 2023, with only Trustee attorneys were present, and where neither Greyson, nor any of the other "targets" of the Motion were present or had any knowledge that Trustee had filed his sealed Motion [dkt.4 in adv proc] or that the Court was hearing that Motion, ex parte, on May 25, 2023. Greyson did not "concur" or "agree that dkt.13 should be entered against Greyson.

9. The OPP at p. 12:19-21 alleges that "the Trustee had agreed to withdraw [the alter ego] allegation based upon privileged settlement communications with Greyson's prior counsel"---presumably me. Further at p.12:22-24, the Opp. alleges that Greyson stipulated and agreed to the issuance of the Preliminary Injunction based upon "the Court's actual findings and Trustee's agreement to withdraw his alter ego allegation . . .." First, I don't know what specifically caused the Trustee to withdraw the alter ego allegations against Greyson other than the obvious absence of evidence to support the allegation--which was evident at the time of the June 12, 2023, hearing. I can state unequivocally that there was no deal, quid pro quo, or stipulation between Greyson and the Trustee for Greyson to accept the Preliminary Injunction in exchange for the Trustee

abandoning the alter ego allegations against Greyson.  That never happened.   A cursory review of dkt. 76 at p.33:22-p.34:1 suggests that the Trustee came to the conclusion that Greyson was not a proper alter ego on his own:

"It does not appear -- and this is one thing I want to credit the folks that are appearing on behalf of Greyson. We are going to want to modify -- the trustee is going to want to amend its complaint. **It does not appear that Greyson is an alter ego**. I'll take it at face value that it's not…"

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed at _Riverside_, California on April 2ъ, 2024.

_____
DOUGLAS PLAZAK

DECLARATION OF DANIEL S. MARCH, ESQ.

I, DANIEL S. MARCH, declare as follows:

1. I am an active status attorney in California, California State Bar# 106854. I was admitted to practice law in California, in 1982.

2. Litigation Practice Group, PC ("LPG"), was incorporated on 2/22/19, as a California Corporation (CA Corp. No. 4247540, per Articles of Incorporation filed on 2/22/19). In both Statements of Information that LPG filed with the California Secretary of State, I was listed as holding all the officer positions at LPG (chief executive officer, corporate secretary, chief financial officer, and sole director). I was the Managing attorney for LPG and was responsible for the legal representation of all California clients, all California litigation matters, and any California client Bankruptcy filings.

3. Tony Diab was LPG's administrator and was responsible for handling marketing, LPG vendors and personnel.

Administratively, Mr. Diab and I ran LPG together, from after LPG was incorporated in 2019, until Trustee Richard Marshack was appointed Chapter 11 Trustee of LPG, about a month after LPG filed bankruptcy (filed 3/20/23). I am aware that

that Tony Diab's "right hand person" and assistant at LPG was Rosa Bianca Loli. Loli sometimes participated in making LPG management decisions, along with me and Diab.

4. Han Trinh ("Han"), and Jayde Trinh ("Jayde"), were hired as W-2 employees of LPG early on, and continued working for LPG, as W-2 employees of LPG, from when LPG filed bankruptcy on 3/20/23, until 6/2/23 (date Trustee Marshack's attorneys performed lockouts), at which time Han and Jayde both stopped working for LPG.

5. During the years Han and Jayde worked for LPG, they did vital administrative work for LPG. Jayde Trinh, an attorney, reported to me as managing attorney, and did essential work

-1-

1  liaising with attorneys who were lawfully performing "local counsel" work for LPG, defending

2  LPG clients who were being sued by creditors in state court suits in states all over the US. Han

3  Trinh, who was not an attorney, did essential work answering

4  client questions and addressing certain client concerns.

5

6      6. Without Han and Jayde's work for LPG, from 3/20/23 through 6/2/23, LPG's client

   base would have been severely diminished, and may well have evaporated completely. One of

7  the major reasons that Trustee Marshack was able to sell LPG's client files to buyer Morning

8  Law, for many millions of dollars, at the Court approved sale, was because of Han and Jayde's

9

10 work

11     Neither Han, nor Jayde actively participated in making management decisions at LPG.

12 Management decisions at LPG were made solely by Tony Diab and me, with Loli sometimes

13 making input. Management decisions at LPG were never made by Han Trinh or Jayde Trinh.

14 Han and Jayde Trinh were never, and are not now equity holders in LPG, and they were never

15 officers or directors in LPG. They were W-2 salaried employees, only, and didn't get salary

16

17 bonuses.

18     Neither Han, nor Jayde, participated in making the decision to transfer LPG client

19 files out of LPG. Neither Han, nor Jayde, participated in transferring LPG client files out of LPG,

20 to other law firms.

21

22     6. Neither Han, nor Jayde, participated in making the decision to transfer LPG money out

23 of LPG. Neither Han, nor Jayde participated in transferring LPG money out of LPG.

24     7. LPG did not transfer any LPG client files to Greyson Law Center PC, the California

25 Corporation (CA Corp no. 5714736) incorporated by attorney Scott Eadie as incorporator, by

26 Articles of Incorporation filed with the California Secretary of State on 5/12/23. I have looked at

27 the California Secretary of State website, which shows this.

28

-2-

38

8. LPG did not transfer any LPG money to Greyson Law Center PC, ever.

9. Scott Eadie, Esq. was one of the attorneys employed by LPG to do "local counsel work", ie to defend LPG consumer clients who were being sued by creditors in state Courts in California, or who were in collections. Scott Eadie was never involved in any decision making at LPG, he was a "local counsel" for LPG, defending clients with state court suits, not participating in any way in making management decisions at LPG.

10. Scott Eadie never participated in deciding to transfer LPG files out of LPG and had no part in transferring LPG client files out of LPG. As a "local counsel" attorney for LPG, Scott Eadie had nothing to do with those matters.

11. To my knowledge, Scott Eadie, Esq. was, and is the sole shareholder, and managing attorney of Greyson Law Center, PC, (California Corporation No. 5714736), created by Articles of Incorporation filed with the California Secretary of State on 5/12/23, that list Scott Eadie as the incorporator.

12. Greyson is not, and never was, an "alter ego" of LPG . Greyson is not, and never was, an "alter ego" of Diab. Greyson is a totally separate corporation from LPG and Diab, and to my knowledge, Diab has no interest of any kind in Greyson, and has never had any ability to control Greyson's activities or decisions. To my knowledge, Greyson is solely controlled by Scott Eadie, Esq.

13. As soon as Richard Marshack was appointed as Chapter 11 Trustee of LPG, I became subject to Trustee Marshack's control and supervision.

14. Marshack is liquidating LPG. In July 2023, Trustee Marshack brought a Motion to sell all LPG's client files, which the Bankruptcy Court granted, thereby selling LPG's client files to Morning Law as the winning bidder. Trustee Mashack has recently filed a proposed liquidating LPG Chapter 11 Plan.

-3-

39

8. I believe I am still the Managing Attorney of LPG, but I am not sure about that.

I declare, under penalty of perjury, of the State of California, that the foregoing is true and correct, and that this Declaration is executed at TUSTIN, California on April 24, 2024.

Daniel S. March, Esq

-4-

40

## <u>DECLARATION OF HAN TRINH TO REPLY</u>

I, HAN TRINH, declare:

1. I make this Declaration to attest to certain facts relevant to the foregoing Greyson Law Center PC's ("Greyson") Reply to be filed 04/24/24, responding to Trustee's OPP [dkt.493 filed 04/18/24, same OPP Memorandum filed as dkt.492 on 04/17/24] ("OPP" herein). I know what I state here, from my own personal observation and knowledge, and could and would testify to these items, in any trial or hearing.

2. Trustee's OPP is <u>false</u> in alleging that Greyson "misappropriated" Litigation Practice Group PC's ("LPG") attorney network.  The evidence is directly contrary to that argument:  Though some of the "local counsel" attorneys, which Greyson hired, at the start of May 2023, as Greyson W-2 attorneys,  to appear to defend consumer debtor sued in state court suits, around the US, had previously been employees of LPG, none of those "local counsel" attorneys were still employed by LPG, at the time Greyson hired those "local counsel" employees.  The evidence is uncontroverted that those attorneys were no longer employed by LPG, **before** Greyson hired them.

3. Many of the "local counsel" attorneys had first been employed by LPG, then next had been employed by Oakstone, plus some worked 1099 for Phoenix and other firms, all of which occurred before they were hired by Greyson.

41

4. Declarations of many of these local counsel attorneys were filed on 04/18/24, attached to my Han Trinh dkt.1124, and to Jayde Trinh dkt1125, each filed 04/18/24. Those Declarations are also being filed attached to this Greyson Reply, for convenience.

5. Greyson had no power to "force" any attorneys to work for Greyson.  That allegation in OPP is false, and OPP cites no evidence to support that allegation, because there is no way Greyson could force anyone to work for Greyson.

6. OPP does not point to any authority that the attorneys in question were not allowed to work for Greyson, even if they had left LPG, for the purpose of going to work for Greyson (not the case).

7. OPP (pp.10, 13-15, and 18-19) is false where it alleges that Diab, Jayde, and I did things which only Diab did. Where OPP makes those arguments, OPP cites no evidence proving that Diab, Jayde, and I did things together, which only Diab did.

8. Contrary to OPP's false allegation, Jayde and I were NOT Diab's "soldiers" and did NOT assist Diab to do anything fraudulent or illegal. Diab's "right hand person" at LPG was Rose Bianca Loli, **NOT** me. I was always **just a W2 employee** of LPG. I was never anyone's right hand person. Rosa Bianca Loli's "right hand person" at LPG was Maria Eeyah Tan, who in hindsight, left LPG to work with Loli at Gallant Law Group in June 2022, was with Rosa Bianca Loli at Phoenix Law.

9. Neither Jayde, nor I, ever assisted Diab to transfer LPG files out of LPG.  I testified regarding that in my deposition on 03/20/24, taken by Trustee attorney Ghio.

10. Neither Jayde, nor I, ever assisted Diab to transfer LPG money out of LPG.  I testified regarding that in my deposition on 3/20/24, taken by Trustee attorney Ghio.

11. Neither Jayde, nor I, ever assisted Diab to perform any "fraudulent scheme" or any "fraudulent transfers".  OPP cites no evidence that we did those things, because neither Jayde nor I ever did such things.

12. Neither Jayde, nor I, ever made management decisions at LPG.  Diab and Daniel March, Esq., sometimes with input of Rose Bianca Loli, made the management decisions at LPG.  NOT me.  NOT Jayde.  OPP is false in alleging that Jayde and I were management level employees, at LPG.  OPP cites no evidence to prove that allegation, because neither Jayde nor I were ever management level employees at LPG.  I did administration work and Jayde liaised with the "local counsel" attorneys, handled TCPA lawsuits, attorney general complaints, and escalated client calls.

13. We were W2 salaried employees of LPG, never got any bonuses, except for Christmas in December 2021, we and the rest of LPG staff got a $500 Christmas bonus.  In contrast, the "executives" of LPG, such as Maria Eeyah Tan, got a $5,000 to $10,000 bonus.

14. We never held any officer positions at LPG.

15. We never owned any stock of LPG.

16. Jayde and I both continued to work for LPG from 03/20/23 to 06/02/23, to help LPG "wind up" its business, because Diab and Daniel March, Esq. told us that LPG was going to "wind up" its business, and cease operating, but that it would take LPG about a year to do so.

17. Diab never controlled Greyson.  Greyson has always been 100% owned and controlled by its Managing Attorney, Scott Eadie, Esq.  Greyson was never the alter-ego of LPG.  OPP's new argument that Greyson is an alter ego of Diab is false:  Greyson was never the alter ego of Diab.

18. Trustee has had 11 months to produce evidence that LPG transferred any LPG money to Greyson, and has no such evidence. Greyson had negative $1.72 in its bank account as of May 2023 [See **Exhibit A** to this Declaration].

19. Similarly, after 11 months of dkt.13/dkt70 being in effect, the Trustee has zero evidence that LPG transferred any client files to Greyson.  All the evidence (including Scott Eadie decls, Han Trinh decl, Tony Diab decl,) is that LPG did **not** transfer any LPG client files to Greyson. Even the testimony of Trustee's witness Bradford Lee, given by Lee in deposition, is that LPG did NOT transfer any LPG client files to Greyson.  [Transcript of Lee deposition taken 3/2/24, p.157:23-258:1; see also p54:17-55:9].

20. OPP p.5 lines 3, cites the Wizard of OZ quote "Pay no attention to the man behind the curtain" and OPPp.9, lines 25-27 alleges Diab is the man running

Greyson behind closed curtains.  That OPP allegation is false, because OPP

lacks evidence to prove that:

> "Greyson was being controlled by Diab…running Greyson behind closed
> curtains just as he had done at LPG."

All the evidence [Scott Eadie Decls, Tony Diab Decl filed 4/2/24 and filed again

on 4/18/24, Han Trinh Decls, Jayde Trinh Decls, etc] is that Greyson was a

separate corporation from LPG, which Diab had no control over, no ownership

in, and never participated in managing.

21. I have only ever met one of Marich Bein's one representative by the name of

Israel R. (he did not give his last name) 3-4 times in total near the end of 2022.

The first time I met him, Diab instructed me to explain the workflow of LPG to

Israel. Diab stated that Israel was here to help make things better for LPG--

especially in the payment department. That was the only explanation I was

given. The other 2-3 times was just in passing when Israel was in the LPG's

office visiting Diab. The last time I ran into Israel was on 02/07/2023 when he

showed up at LPG with his thug-like crew of 3-4 people and I had to call the

Tustin police. I explained all of this in my deposition on 03/20/2024 and

testified that I did not even know about Marich Bein until late February to early

March. Through reading the court docket, I have learned that Hershy Deutsch is

part of or involved with Marich Bein. I had never heard of Hershy Deutsch until

his name started appearing in the court docket. I have never met Hershy

Deutsch. I never spoke to or had any interactions or communications with

Hershy Deutsch.

OPP p.6, lines 26-28 states:

"Furthermore, the current language provided for in the Court's Preliminary
Injunction, to which the Trustee agreed to, was based on Han's false assertion
that Diab was not involved with Greyson in any fashion. A fact that the
evidence now shows is false."

I made no false assertion: I took the word "involved" as what I thought it meant to me

at the time. It is clear what I meant is that Diab had no control or any authority over

Present Greyson in any fashion or at any time, and there is no evidence to the

contrary.

I declare under penalty of perjury that the foregoing is true and correct, and that

this Declaration is executed at _____Orange_____, California, on April 24, 2024.

_____

HAN TRINH

# EXHIBIT A

Citibank CBO Services    466
P.O. Box 6201
Sioux Falls, SD 57117-6201

001/R1/04F013

000
CITIBANK, N. A.
**Account**
▆▆▆▆**6370**


GREYSON LAW CENTER PC

**Statement Period**
**May 2 - May 31, 2023**

Page 1 of 2

## CitiBusiness® ACCOUNT AS OF MAY 31, 2023

**Relationship Summary:**

| | |
|---|---|
| **Checking** | **$1.72-** |
| **Savings** | ----- |
| **Checking Plus** | ----- |

| Checking | | Balance |
|---|---|---|
| CitiBusiness Streamlined Checking | 6370 | $1.72- |
| CitiBusiness Streamlined Checking | | $0.00 |
| CitiBusiness Streamlined Checking | | $0.00 |
| **Total Checking at Citibank** | | **$1.72-** |

## CHECKING ACTIVITY

**CitiBusiness Streamlined Checking**

▆▆▆▆6370

| | | Beginning Balance: | | $0.00 |
|---|---|---|---|---|
| | | Ending Balance: | | $1.72- |

| Date | Description | Debits | Credits | Balance |
|---|---|---|---|---|
| 05/09 | ACH DEBIT<br>PLIC-SBD    INSUR CLM PACT#210129509 May 09 | 8,260.58 | | 8,260.58- |
| 05/10 | CHECK REVERSAL | | 8,260.58 | 0.00 |
| 05/10 | NSF/OD/DAU CHARGE | 35.00 | | 35.00- |
| 05/12 | ACH DEBIT<br>PAYCHEX EIB    INVOICE   X02268800000464 May 12 | 1,855.34 | | 1,890.34- |
| 05/15 | CHECK REVERSAL | | 1,855.34 | 35.00- |
| 05/15 | NSF/OD/DAU CHARGE | 35.00 | | 70.00- |
| 05/17 | ACH DEBIT<br>PAYX ADJUSTMENT  PAYROLL   sSgsvLLQVjpsVos May 17 | 15,914.11 | | 15,984.11- |
| 05/18 | ELECTRONIC CREDIT<br>PAYCHEX INC.    PAYROLL   02337800051770X May 18 | | 666.89 | 15,317.22- |
| 05/18 | CHECK REVERSAL | | 15,914.11 | 596.89 |
| 05/18 | NSF/OD/DAU CHARGE | 35.00 | | 561.89 |
| 05/18 | ACH DEBIT<br>PAYCHEX EIB    INVOICE   X02339500001028 May 18 | 563.61 | | 1.72- |
| 05/18 | ACH DEBIT<br>PAYCHEX EIB    RETRY PYMT X02336200001641 May 18 | 1,855.34 | | 1,857.06- |
| 05/19 | CHECK REVERSAL | | 1,855.34 | 1.72- |
| | **Total Debits/Credits** | **28,553.98** | **28,552.26** | |

GREYSON LAW CENTER PC

Account ▇▇▇6370          Page 2 of 2
Statement Period:  May 2 - May 31, 2023

001/R1/04F013

## CUSTOMER SERVICE INFORMATION

| IF YOU HAVE QUESTIONS ON: | YOU CAN CALL: | YOU CAN WRITE: |
|---|---|---|
| Checking | 877-528-0990<br>For TTY:We accept 711 or<br>other Relay Service. | Citibank, N.A.<br>P.O. Box 790184<br>St Louis, MO 63179 |

For change in address, call your account officer or visit your branch.
* To ensure quality service, calls are randomly monitored.

© 2023 Citigroup Inc. Citibank, N.A. Member FDIC.
Citibank with Arc Design and CitiBusiness are registered service marks of Citigroup Inc.

49

Citibank CBO Services     466
P.O. Box 6201
Sioux Falls, SD 57117-6201

001/R1/04F013

000
CITIBANK, N. A.
**Account**
**6370**
**Statement Period**
**Jun 1 - Jun 30, 2023**
**Relationship Manager**
US SERVICE CENTER
1-877-528-0990
Page 1 of 2

GREYSON LAW CENTER PC

## CitiBusiness® ACCOUNT AS OF JUNE 30, 2023

### Relationship Summary:

| Checking | $953.12 |
|---|---|
| Savings | ----- |
| Checking Plus | ----- |

| Checking | | Balance |
|---|---|---|
| CitiBusiness Streamlined Checking | 6370 | $953.12 |
| CitiBusiness Streamlined Checking | | $0.00 |
| CitiBusiness Streamlined Checking | | $0.00 |

| **Total Checking at Citibank** | **$953.12** |
|---|---|

## SERVICE CHARGE SUMMARY FROM MAY 2, 2023 THRU MAY 31, 2023

| Type of Charge | No./Units | Price/Unit | Amount |
|---|---|---|---|
| **STREAMLINED CHECKING #   6370** | | | |
| Average Daily Collected Balance | | | $1,066.83- |
| DEPOSIT SERVICES | | | |
| OVERDRAWN BALANCE INT CHARGE | 1 | .0200 | 0.02 |
| OVERDRAWN BALANCE INT CHARGE | 5 | .0100 | 0.05 |
| CHECKS, DEP ITEMS/TICKETS, ACH | 6 | .4500 | 2.70 |
| **WAIVE | | | |
| CITIBUSINESS ONLINE | | | |
| ACH - CBUSOL WEB ACH MODULE | 1 | 20.0000 | 20.00 |
| POSITIVE PAY MODULE | 1 | .0000 | 0.00 |
| AUTOMATED CLEARING HOUSE (ACH) | | | |
| ACH - MONTHLY MAINTENANCE FEEWCM | 1 | 30.0000 | 30.00 |
| DEPOSIT SERVICES | | | |
| REMOTE CHECK MAINTENANCE | 1 | 60.0000 | 60.00 |
| **Total Charges for Services** | | | **$110.07** |
| **Net Service Charge** | | | **$110.07** |

Charges debited from account #   6370

## CHECKING ACTIVITY

### CitiBusiness Streamlined Checking

6370

| Beginning Balance: | $1.72- |
|---|---|
| Ending Balance: | $953.12 |

50

GREYSON LAW CENTER PC

Account ████6370   Page 2 of 2
Statement Period: Jun 1 - Jun 30, 2023

001/R1/04F013

## CHECKING ACTIVITY                                                        Continued

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 06/02 | ██████████ Jun 02 | | 10.00 | 8.28 |
| 06/06 | OTHER WITHDRAWAL/ADJ | 15.00 | | 6.72- |
| 06/08 | SERVICE CHARGE<br>ACCT ANALYSIS DIRECT DB | 110.07 | | 116.79- |
| 06/20 | DEPOSIT | | 2,000.00 | 1,883.21 |
| 06/26 | DEBIT CARD PURCH Card Ending in 5928<br>5XWW8NGW          005928 Jun 26<br>GATEWAY FEES     ELGIN     IL 23174 | 13.20 | | 1,870.01 |
| 06/26 | DEBIT CARD PURCH Card Ending in 5928<br>T5*DV0Q2          005928 Jun 26<br>PA BCCO CORP FEE-DOS HARRISBURG   PA 23174 | 250.00 | | 1,620.01 |
| 06/26 | CBUSOL TRANSFER DEBIT<br>WIRE TO Paychex of New York | 666.89 | | 953.12 |
| | **Total Debits/Credits** | **1,055.16** | **2,010.00** | |

## CUSTOMER SERVICE INFORMATION

IF YOU HAVE QUESTIONS ON:        YOU CAN CALL:                 YOU CAN WRITE:

Checking                          877-528-0990                  Citibank, N.A.
                                  For TTY:We accept 711 or      P.O. Box 790184
                                  other Relay Service.          St Louis, MO 63179

For change in address, call your account officer or visit your branch.
* To ensure quality service, calls are randomly monitored.

© 2023 Citigroup Inc. Citibank, N.A. Member FDIC.
Citibank with Arc Design and CitiBusiness are registered service marks of Citigroup Inc.

## DECLARATION OF PHUONG JAYDE TRINH ("JAYDE") TO REPLY

I, PHUONG JAYDE TRINH ("Jayde"), declare:

1. I am still a California attorney in good standing, as I stated in previous Declarations.

2. I make this Declaration to attest to certain facts relevant to the foregoing Greyson Law Center PC's ("Greyson") Reply to be filed 4/24/24, responding to Trustee's OPP [dkt.493 filed 4/18/24, same OPP Memorandum filed as dkt.492 on 4/17/24] ("OPP" herein).

3. Trustee's OPP is <u>false</u> in alleging that Greyson "misappropriated" Litigation Practice Group PC's ("LPG") attorney network.  The evidence is directly contrary to that argument:  Though some of the "local counsel" attorneys, which Greyson hired, at the start of May 2023, as Greyson W-2 attorneys,  to appear to defend consumer debtor sued in state court suits, around the US, had previously been employees of LPG, none of those "local counsel" attorneys were still employed by LPG, at the time Greyson hired those "local counsel" employees.  The evidence is uncontroverted that those attorneys were no longer employed by LPG, **before** Greyson hired them.

4. Many of the "local counsel" attorneys had first been employed by LPG, then next had been employed by Oakstone, then after that had done work for Phoenix Law, and thereafter, were hired by Greyson.  Declarations of many of these local counsel attorneys were filed on 4/18/24, attached to Han Trinh

dkt.1124, and to Jayde Trinh dkt1125, each filed 4/18/24. Those Declarations are also being filed attached to this Reply, for convenience.

5. Greyson had no power to "force" any attorneys to work for Greyson. That allegation in OPP is false, and OPP cites no evidence to support that allegation, because there is no way Greyson could force anyone to work for Greyson.

6. Second, Trustee's OPP is wrong on the law: Even if those attorneys had left LPG, to be employed by Greyson (not the case), those attorneys would have been entitled to do that. Attorneys aren't serfs or slaves, they have a right to move from one law firm to another, as they see fit. OPP does not point to any authority that the attorneys in question were not allowed to work for Greyson, even if they had left LPG, for the purpose of going to work for Greyson (not the case).

7. OPP (pp.10, 13-15, and 18-19) is false where it alleges that Diab, Han, and I did things, which only Diab did. Where OPP makes those arguments, OPP cites no evidence proving that Diab, Han and I did things together, which only Diab did.

8. Contrary to OPP's false allegation, Han and I were NOT Diab's "soldiers" and did NOT assist Diab to do anything fraudulent or illegal. In addition, the rarely used nickname "Hammer" was given to me by R. Reed Pruyn, an LPG attorney because I was effective with getting clients to connect with him.

9. Neither Han, nor I, ever assisted Diab to transfer LPG files out of LPG.

10. Neither Han, nor I, ever assisted Diab to transfer LPG money out of LPG.

11. Neither Han, nor I, ever assisted Diab to perform any "fraudulent scheme" or any "fraudulent transfers".  OPP cites not evidence that we did those things, because neither Han nor I did not do those things.

12. Neither Han, nor I, ever made management decisions at LPG.  Diab and Daniel March, Esq., sometimes with input of Rosa Bianca Loli, made the management decisions at LPG.  NOT me.  NOT Han.  OPP is false in alleging that Han and I were management level employees, at LPG.  OPP cites no evidence to prove that allegation, because neither Han, nor I, were management level employees. Han did administration work and I liaised with the "local counsel" attorneys, handled TCPA lawsuits, attorney general complaints, and escalated client calls.

13. We were W-2 salaried employees of LPG, who didn't even get bonuses, except for December 2021, when we and the rest of LPG staff got a $500 Christmas bonus.

14. We never held any officer positions at LPG.

15. We never owned any stock of LPG.

16. Han and I both continued to work for LPG from 3/20/23 to 6/2/23, to help LPG "wind up" its business, because Diab and Daniel March, Esq. (my boss) told us that LPG was going to "wind up" its business, and cease operating, but that it would take LPG about a year to do so.

17. Diab never controlled Greyson.  Greyson has always been 100% owned and controlled by its Managing Attorney, Scott Eadie, Esq.  Greyson was never the

alter-ego of LPG. OPP's new argument that Greyson is an alter ego of Diab is false: Greyson was never the alter ego of Diab.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration is executed at ___Orange___, California, on April 24, 2024.

PHUONG JAYDE TRINH ("Jayde")

1  Kathleen P. March, Esq., (CA SBN 80366)
2  **THE BANKRUPTCY LAW FIRM, PC**
   10524 W. Pico Blvd, Suite 212, LA, CA 90064
3  Phone: 310-559-9224;    Fax: 310-559-9133
4  Email: kmarch@BKYLAWFIRM.com
   *Counsel for Greyson Law Center PC*
5

6

7                  UNITED STATES BANKRUPTCY COURT

8       OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

9  |                        | Bankruptcy Case No. 8:23-bk-10571-SC |
10 | In re                  | Chapter 11 |
11 |                        | **DECLARATION OF ATTORNEY ISRAEL** |
12 | LITIGATION             | **OROZCO REGARDING WORKING FOR** |
13 | PRACTICE               | **GREYSON LAW CENTER PC** |
14 | GROUP, PC              | This Declaration relates to Greyson Law Center PC's |
15 |                        | Motion for Administrative Claim [dkt.676 in LPG main bankruptcy case docket], which is set for hearing by |
16 |                        | Bankruptcy Judge Scott <u>Clarkson on:</u> |
17 | Debtor.                | Date:  April 25, 2024 |
18 |                        | Time: 11:00 a.m. |
   |                        | Place:  Courtroom of Bankruptcy Judge Scott Clarkson, |
19 |                        | **by Zoom** or in person at: |
20 |                        | 411 West Fourth Street, Courtroom 5C |
   |                        | Santa Ana, CA 92701-4593 |
21

22

23            <u>**DECLARATION OF ATTORNEY ISRAEL OROZCO**</u>

24     I, Israel Orozco, declare:

25     1.    I am an attorney at law, duly licensed to practice law under the laws of the

26
27 State of California, as well as in the Central District of California.

28     2.    I make this Declaration regarding the Motion [dkt.676] of Greyson Law

Center, PC ("Greyson"), which moves the Bankruptcy Court to grant Greyson allowance and payment of Greyson's administrative claim, to be paid to Greyson by the bankruptcy estate of bankruptcy debtor Litigation Practice Group, PC ("LPG").

3.    From August 2021 to February 2023, I was employed by LPG, as a W-2 salaried attorney providing legal representation to LPG's clients.

4.    On or around late January 2023 to February 2023, LPG experienced difficulty paying me on time, on multiple occasions, and was also unable to provide me with a substitute business credit card to be used for legal expenses. In order for me to properly continue legal representation of LPG's clients, I was forced to use personal credit cards for legal expenses. I continued to do so on Daniel S. March's ("March") representation to me that LPG was expected to continue running its operations for approximately a year as it was winding up. This representation was made to me by Mr. March at a meeting that occurred on February 8, 2023.

5.    Given the financial difficulties that LPG was experiencing around late January 2023 to February 2023, it was Mr. March, during that February 8, 2023 meeting, who stated that it would be best for me to consider employment elsewhere, despite also stating that LPG would continue to operate for approximately a year. In that meeting, Mr. March informed me that Scott Eadie was to be the managing attorney at a new law firm (Oakstone), which would be taking over representation of some of the LPG clients, and that LPG would still be able to continue representation of LPG clients.

6.    This aforementioned information from my meeting with Mr. March was later reiterated by Han and Jayde as they had also been informed by Tony Diab and Mr. March that LPG would be winding up, which would take around a year.

7.    Han and Jayde told the other attorneys and me that they would continue doing work for LPG to assist LPG wind up. The continued assistance of Han and Jayde became crucial as my caseload was drastically increased in February 2023. Specifically, a separate part of LPG's practice area involved claims brought by client's against creditors and/or debt collectors under the FDCPA, or under Rosenthal.

8.    A former employee and attorney for LPG, Richard Meier, was the lead attorney in this practice area and was operated by two other LPG attorneys: Ms. Ina Meier, and Mr. Anthony Diehl. However, Mr. Meier abruptly left the firm on February 9, 2023, providing only three days' notice that he was leaving. I was informed by Mr. Meier of his resignation by email on February 9, 2023. Attached hereto as Exhibit "A" is a true and correct copy of the email I received from Mr. Meier on February 9, 2023.

9.    Ms. Ina Meier abruptly left a short time before Mr. Meier. Mr. Diehl, left LPG on February 24, 2023, providing notice of his resignation on February 22, 2023. After these three attorneys left, I was the only attorney in LPG's California office in Tustin to handle these FDCPA and Rosenthal matters, alongside other local counsel for LPG in other states.

10.     At the time of his departure in early February, Mr. Meier did not leave a comprehensive list of clients. Anthony Diehl and I were the only two attorneys in LPG's Tustin office handling these matters. It was Jayde Trinh that pressed Mr. Meier to provide that list of clients. It was not until February 15, 2023, that Mr. Meier sent LPG a zip-file containing the list of FDCPA clients that was requested. The email also included a list of cases that required substitution of attorneys. Attached hereto as Exhibit "B" is a true and correct copy of the email received from Mr. Meier on February 15, 2023 (redacted in part to protect client confidentiality).

11.     I had a close and professional relationship with Mr. Meier at LPG and consider him a trusted and respected colleague overall. But the manner in which he abruptly departed LPG provided very little notice for the remaining attorneys working on these cases to effectively do so, and very little to no notice to the clients where substitution of attorneys was needed.

12.     I believe that no one felt the brunt pressure of having the caseload of Mr. Meier and Ms. Ina Meier more than Mr. Anthony Diehl. Mr. Diehl worked solely on FDCPA/Rosenthal matters. We attempted to help Mr. Diehl identify and spread out his workload. At Han and Jayde's suggestion, I directed my then LPG paralegal, Ms. Vanessa Buchner, to help assist Mr. Diehl with his caseload, specifically Rosenthal matters as Ms. Buchner was able to file legal pleadings and motions in state courts. The remaining legal assistants that were originally part of the FDCPA team did not have the

ability or were not trained to file legal documents.

13.    On February 22, 2023, Mr. Diehl tendered his resignation, which took effect on February 24, 2023. During the month of February 2023, Han, Jayde, and I did what we could in order to help LPG and Mr. Diehl continue the effective representation of these clients.

14.    On April 11, 2024, the Chapter 11 Trustee filed the First Supplemental Declaration of Alex Rubin. Dkt. 1099. At paragraph 10, Mr. Rubin incorporates as an attachment "Exhibit 30" an email string "with Jayde Trinh, Israel Orozco and Han regarding notice of shutting down LPG and laughing at attorneys resigning as a result last dated February 23, 2023[.]" This is not true.

15.    No one was laughing at anyone as Mr. Rubin erroneously states. That email string begins with Ms. Rocio Prado-Garcia tendering her resignation on February 22, 2023, to be effective on February 24, 2023. Ms. Prado was one of the legal assistants within the FDCPA department.

16.    Anthony Diehl also announced his resignation on February 22, 2023, to be effective on February 24, 2023. Mr. Diehl, despite the enormous workload he was handling, was willing to stay at LPG on the condition that LPG increase his salary, substantially. LPG refused his salary increase. Mr. Diehl's salary request at that time was not for the most part unreasonable, in part, because he did have to manage a heavier caseload that resulted from the departures of Mr. Meier and Ms. Ina Meier. However, what was being laughed at in "Exhibit 30" of Mr. Rubin's aforementioned declaration

concerned the amount of salary increase requested by Mr. Diehl that was based on his stance that *only he* could and should manage the entire FDCPA/Rosenthal caseload. LPG was unwilling to agree to his demand as LPG was attempting to lessen Mr. Diehl's caseload by distributing it amongst other willing attorneys, me included.

17.    There were multiple local counsel for LPG that were capable in assisting Mr. Diehl, including myself, with the FDCPA/Rosenthal caseload, and Mr. Diehl wanted full control over the FDCPA/Rosenthal caseload. As stated earlier, I relied on the representation of Mr. March that LPG was able to continue to operate for approximately a year as it was winding up.

18.    Han, Jayde, and I did everything we could to assist Mr. Diehl with his caseload. I witnessed first-hand the tremendous distress Mr. Diehl was facing in February 2023. To state that we were laughing at attorneys resigning is simply untrue.

19.    On or around February 18, 2023, I received an employment offer letter from Oakstone Law Group. I made the decision on my own to accept employment from Oakstone as this would allow me to better represent LPG clients as LPG was winding up, and because of LPG's financial problems, which made it uncertain that LPG would be able to meet its financial obligations to me.

20.    Deciding to accept employment at Oakstone, I was able to continue to work on cases of LPG clients assigned to me, because those client's files had been sent to Oakstone to service, with the further understanding, from representations made to me

by Mr. March, that LPG was able to continue client representation in this manner.

21.    During my brief tenure at Oakstone, I relied on Han and Jayde, at LPG, to get their help regarding issues concerning LPG clients that LPG had sent to Oakstone for servicing, because Oakstone appeared to be wanting of the proper procedures to effectively communicate with clients.

22.    The consumer clients that I was assigned to represent were originally LPG clients, some of whom were then moved by LPG to Oakstone for servicing, and then, when Oakstone was failing, moved to Phoenix for servicing, which had already received other LPG files. I later came to learn that some of these clients had also been moved to Consumer Legal Group. To the best of my knowledge, Phoenix had few to no attorneys to effectively represent LPG clients. I was never notified by either Phoenix or Consumer Legal Group that their attorneys would take over client representation and that a substitution of attorney was forthcoming. I continued to represent LPG clients under LPG, as I had been directed by Mr. March to do.

23.    I never worked for Phoenix, in any capacity, nor was I ever approached with an employment offer from Phoenix. After client files were sent from Oakstone to Phoenix, which was the firm collecting clients payments, local counsel attorneys and I were the ones continuing doing the work and representing clients. Though client files were moved to Phoenix, I did not know who to contact at Phoenix for compensation resulting from my continued representation of LPG clients, nor did Phoenix reach out to

me to discuss compensation. Yet, I continued representing these clients.

24.     On or around March 23, 2023, I received an offer letter from Greyson Law Center from Ms. Harris of Greyson, by email from onboarding@greysonpc.com. The offer letter was dated March 21, 2023. I received it on March 23, 2023, and signed it on March 24, 2023.

25.     As stated above, I made the decision on my own to accept employment from Greyson Law Center as this would allow me to continue to represent LPG clients.

26.     I was not forced, coerced, or felt compelled to accept employment at Greyson. I accepted employment at Greyson, which at that point I understood was being financed by Eng Taing. It was my choice to accept employment at Greyson as this would allow me to continue representing LPG clients. I could have gone elsewhere.

27.     Around this same time, on or about March 18, 2023, I was approached by a representative of another law firm, Elite Legal Practice ("Elite"), based out of Las Vegas, Nevada, to consider joining their firm. On March 22, 2023, I accepted to meet with the principal of Elite in Nevada and was provided an airplane ticket for my transportation.

28.     When I arrived at Elite's office, Mr. Meier was also present and already employed by Elite, along with one of his personal assistants that had worked with Mr. Meier in the FDCPA/Rosenthal department at the LPG office in Tustin. Other former LPG employees were also present as they had decided to accept employment with Elite.

29.    My interview went well and was productive. Days later, towards the end of March 2023 or early April 2023, I was offered an employment offer to join Elite. The salary and benefits were competitive and indulging. Even so, I decided not to accept employment at Elite. I instead weighed my options and decided to remain at Greyson.

30.    Near the end of April 2023, Scott Eadie, Jayde Trinh, and Han Trinh held an emergency attorney meeting and told us, local counsel attorneys, that Eng Taing and his team pulled out their investments and support of Greyson Law Center.

31.    I, and some of the other attorneys reported that we had had trouble getting paid—either late pay, or no pay (in my case I had not been paid) for work performed for LPG clients that had been moved to Phoenix.

32.    As Greyson had agreed to hire us as attorneys, on a W-2 basis, it was understood that Greyson would then try to contract with Phoenix so that local counsel will be paid for the legal services we had been performing for LPG clients that had been moved to Phoenix. It became known that Phoenix had very few or no attorneys of their own to handle the caseload that all local counsel at Greyson was servicing.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed by me at Brea, California, on April 17, 2024.

_____

ISRAEL OROZCO, ESQ.

# Exhibit "A"

**Subject:** California cases

**Date:**   Thursday, February 9, 2023 at 7:12:48 AM Pacific Standard Time

**From:**   Richard Meier

**To:**    Israel Orozco

Israel,

As you know, today is my last day. Please ask Mars to file a substitution of counsel for all the Rosenthal filed cases in my name to put you on them. Each case should settle pretty quickly without a lot of work (think De Lima). I am available for advice at ███████████████████

It has been an honor working with you...I mean that. You have a bright career ahead of you.

Best regards, Richard

# Exhibit "B"

**From:** Richard Meier <richardmeier4@gmail.com>
**Date:** Wednesday, February 15, 2023 at 1:14 PM
**To:** Admin <admin@lpglaw.com>, Han Trinh <han@lpglaw.com>, Dan March
<Dan@lpglaw.com>, Anthony Diehl <ADiehl@lpglaw.com>, Peter Schneider
<peter@lpglaw.com>, Israel Orozco <israel@lpglaw.com>, Jayde Trinh
<Jayde@lpglaw.com>
**Subject:** Cases that need substitution this week

**California cases:**

**Illinois cases:**

**Indiana cases:**

**New Mexico cases:**

**Colorado cases:**

**Michigan cases:**

**Ohio cases:**

FDCPA.zip
2.7 MB

Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224;    Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel for Greyson Law Center PC*

UNITED STATES BANKRUPTCY COURT

OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

|  |  |
|---|---|
| In re | Bankruptcy Case No. 8:23-bk-10571-SC<br>Chapter 11 |
|  | **DECLARATION OF ATTORNEY Haley Simmoneau** |
| LITIGATION PRACTICE GROUP, PC | **REGARDING WORKING FOR GREYSON LAW CENTER PC** |
| Debtor. | This Declaration relates to Greyson Law Center PC's Motion for Administrative Claim [dkt.676 in LPG main bankruptcy case docket], which is set for hearing by Bankruptcy Judge Scott Clarkson on:<br>Date:  April 25, 2024<br>Time: 11:00 a.m.<br>Place:  Courtroom of Bankruptcy Judge Scott Clarkson, **by Zoom** or in person at:<br>411 West Fourth Street, Courtroom 5C<br>Santa Ana, CA 92701-4593 |

<u>**DECLARATION OF ATTORNEY HALEY SIMMONEAU**</u>

I, Haley Simmoneau, declare:

1.      I make this Declaration regarding the Motion [dkt.676] of Greyson Law

Center, PC ("Greyson"), which moves the Bankruptcy Court to grant Greyson

allowance and payment of Greyson's administrative claim, to be paid to Greyson by

69

the bankruptcy estate of bankruptcy debtor Litigation Practice Group, PC ("LPG").

2.      I was employed by LPG, as a W2 attorney, from June 2022 to February 2023. In addition to my employment, I was permitted to hire 2 Paralegals and a Legal Assistant under LPG.

3.      LPG became unstable by February 2023. Pay was received approximately six to seven days late for each pay period in February 2023.

4.      Due to the tardiness of pay and need for staff, I personally had to front money for staff that were paid late.

5.      Han Trinh, LPG Administrator, and Jayde Trinh, LPG General Counsel, informed myself and other LPG attorneys, in an attorney meeting, that the situation at LPG would most likely not improve and that payroll will most likely continue being late due to LPG's financial issues.

6.      Han and Jayde let us all know during this meeting that Tony Diab and LPG managing attorney Daniel March, Esq. had told them that LPG would be winding up, which would take around a year, and that we were encouraged to seek employment elsewhere. Han and Jayde informed us there was a job opportunity with a new law firm, Oakstone Law Group ("Oakstone") which would be taking over representation of some of the LPG clients, because Oakstone was better equipped to service the LPG clients due to LPG's present condition. My caseload was sizeable as I was in charge of Oklahoma and Texas and the attorneys for those states had either quit or been previously terminated.

7.     Han and Jayde informed us they would continue doing work for LPG to assist LPG with LPG's winding up and they would attempt to be available to assist with any LPG related issues.

8.     I received an employment offer letter from Oakstone Law Group on or around February 18, 2023. I willingly chose to accept the employment offer letter from Oakstone and my start date was on or around February 20, 2023.

9.     If I had not chosen to be employed by Oakstone, I still would have had to resign from LPG, because of the failure of LPG to continually miss W-2 salary to myself and my staff. The financial problems at LPG was a deciding factor in my decision to accept the Oakstone job offer.

10.     In addition, had I not gone to Oakstone, I could not have continued to work on the cases of the LPG clients assigned to me due to lack of payment on these files, many of the client's files had been sent to Oakstone to service, and the expense to withdraw from the number of files assigned to me would bankrupt myself.

11.     During my employment with Oakstone, I had to repeatedly contact Han and Jayde, at LPG, to get their help regarding issues concerning the LPG clients that LPG had sent to Oakstone for servicing, because Oakstone had no one to answer such questions.  Han and Jayde also assisted in allowing myself and staff to maintain access to LPG systems or email in order to properly service these clients.

12.     At this time not all files were transferred to another firm and some files were transferred to many other firms, Phoenix Law Group ("Phoenix") and Consumer

Law Group ("CLG") . While working for Oakstone, I continued to service non-Oakstone files from LPG as well with no compensation for this.

13.    Later, we were informed that any LPG files maintained at Oakstone were transferred from Oakstone, to Phoenix, for servicing, because Oakstone was failing.  When the cases went to Phoenix, I still had to repeatedly contact Han and Jayde at LPG, to get their help regarding issues concerning the LPG clients that were now at Phoenix, because I couldn't reach anyone at Phoenix who could answer my questions, and I needed my questions answered, to represent my clients effectively.

14.    The consumer clients who were defendants in those state court suits were originally LPG clients, who were then moved by LPG to Oakstone for servicing, and then, when Oakstone was failing, were moved to Phoenix for servicing.

15.    To my knowledge, Phoenix didn't have any attorneys to do that state court defense work, except for Ty Carss, Esq., who couldn't possibly do all that work, and couldn't represent consumer clients in states other than the state where Carss was admitted to practice law.

16.    I did not work directly for Phoenix as either a W-2 employee or an independent contractor. I attempted to contact Phoenix regarding continuing to service the Phoenix Clients. No response was received. I received no pay from Phoenix at all for work defending those lawsuits. I paid my staff directly for their services with no response from Phoenix Law about pay, so that the clients would not be left with no representation. This placed a substantial financial burden on myself however, the LPG

clients were put through a harrowing situation, and I could not in good conscience abandon them.  I had a duty to continue representation until Courts released me from my obligation or I was able to resolve their case in some way.

17.     Phoenix was collecting clients' payments while local counsel attorneys were the ones doing the work for the clients.  Without pay directly from Phoenix or another alternative, I could not continue to work on these LPG files.

18.     In March 2023, I was informed of a possible job with Greyson Law Center ("Greyson"). I expressed interest in this, as my staff and I had no steady income. I was informed that Eng Taing, a wealthy investor, was financing this firm and no financial issues would come up. It was my understanding that Scott Eadie was the Owner/Managing Attorney, and that Han Trinh would assist him in getting things set up. We were informed that Jayde and Han would eventually be joining us at Greyson Law Center, should we receive an offer their and accept it.

19.     On or around March 23, 2023, I received an offer letter from Greyson Law Center from Ms. Harris of Greyson, by email from onboarding@greysonpc.com with all the onboarding information.

20.     I chose to accept the employment offer letter from Greyson and my start date was on or around March 27, 2023.

21.     I had limited amount of time and money to continue to dedicate to LPG files with no pay. With no response from Phoenix or CLG, whose LPG files I had been servicing, I had to make a decision quickly. Again, staff was being paid by myself,

personally, if their pay was late or did not arrive at all.

22.    I was not forced or coerced, I was eager to be employed as a W-2
employee of Greyson Law Center, which at that point I understood was being financed
by Eng Taing.

23.    However, near the end of April 2023, Scott Eadie, Jayde Trinh, and Han
Trinh held an emergency attorney meeting and informed us "local counsel" attorneys
that Eng Taing and his people pulled out their investments and support of Greyson
Law Center.

24.    In that same meeting, Scott Eadie, Jayde Trinh, and Han Trinh
brainstormed with us on how Greyson could survive without financial support from
Eng Taing. None of us wanted to work without getting paid.

25.    Many attorneys reported that they had had trouble getting paid--either
late pay, or no pay--for work done for Phoenix Law. I informed everyone that I had no
response from Phoenix and that at this point they could substitute counsel in for the
files they had. Most of the attorneys that had done work for Phoenix directly, said they
did not want to continue working for Phoenix directly, because of the slow pay/no pay
problem.  I agreed with several attorneys that it would be better to be an employee of
Greyson and have Greyson reach out directly to  Phoenix in order to contract with
them to pay Greyson to supply Greyson attorneys to appear in state court suits, for
Phoenix, to defend consumer clients being sued for alleged debts owed to the creditors
suing those consumer clients in state court suits. Phoenix would pay Greyson, and that

74

would enable Greyson to pay us our W-2 Greyson salaries, from what Phoenix paid Greyson.

26.    Greyson agreed to hire attorneys us attorneys, who wished to be hired by Greyson, on a W-2 basis, and agreed that Greyson would then try to contract with Phoenix, for Phoenix to pay Greyson $2,000 per case, for each state court case we appeared in, defending consumer defendant clients for Phoenix.

27.    The $2,000 per case figure was because some of the attorneys said they were supposed to be paid approximately $800 to $2,500, per state court lawsuit they appeared in to defend consumer clients in, by Law Firms they did work for (Phoenix Law, Consumer Legal Group, and other outside firms).

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed by me at Oklahoma City, Oklahoma on April 15, 2024.


HALEY SIMMONEAU, ESQ.
Licensed in OK, TX, & DC
PO BOX 1310
Mustang, OK 73064
405-212-3945

Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel for Greyson Law Center PC*

UNITED STATES BANKRUPTCY COURT

OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re | Bankruptcy Case No. 8:23-bk-10571-SC<br>Chapter 11 |
| LITIGATION PRACTICE GROUP, PC | **DECLARATION OF ATTORNEY COLLIN O. DONNER IN SUPPORT OF GREYSON LAW CENTER PC'S MOTION FOR ADMINISTRATIVE CLAIM** |
| Debtor. | This Declaration relates to Greyson Law Center PC's Motion for Administrative Claim [dkt.676 in LPG main bankruptcy case docket], which is set for hearing by Bankruptcy Judge Scott <u>Clarkson on:</u><br>Date:  April 25, 2024<br>Time: 11:00 a.m.<br>Place:  Courtroom of Bankruptcy Judge Scott Clarkson, **by Zoom** or in person at:<br>411 West Fourth Street, Courtroom 5C<br>Santa Ana, CA 92701-4593 |

<u>**DECLARATION OF ATTORNEY COLLIN O. DONNER**</u>

I, Collin O. Donner, declare:

1.      I am an attorney duly admitted to practice law in the State of Louisiana and the United States District Court for the Western District of Louisiana.

2.      I make this Declaration regarding the Motion [dkt.676] of Greyson Law Center, PC ("Greyson"), which moves the Bankruptcy Court to grant Greyson allowance and payment of Greyson's administrative claim, to be paid to Greyson by the bankruptcy estate of bankruptcy debtor Litigation Practice Group, PC ("LPG").

3.      I was employed by LPG, as a W2 attorney, from May 2022, until Mid-February 2023.

4.      The stability of LPG began to waver in February 2023, as pay was consistently delayed by six to seven days for each pay period that month.

5.      During a routine meeting prior to my separation from the firm, Han Trinh, and Jayde Trinh candidly informed LPG attorneys that the payment issues were unlikely to improve. They expressed concerns about LPG's financial status, indicating that payroll would continue to be unpredictable and problematic.

6.      Han and Jayde disclosed that they had been informed by Tony Diab and Daniel March that LPG would be winding up and encouraged us to seek alternative employment opportunities. They mentioned a potential job opening at Oakstone, a new firm that would be taking over representation of **SOME** former LPG clients (emphasis added).

7.      Han and Jayde informed the attorneys that they decided to stay behind at LPG to assist with the wind up process.

8.       On or about February 18, 2023, I received an employment offer letter from Oakstone, which I accepted, with a start date of February 20, 2023. I made a personal choice to join Oakstone, as it seemed like the best option given the circumstances.

9.      I transitioned to Oakstone Law Group smoothly but encountered challenges due to the lack of operational structure within the firm. This led me to reach out to Han and Jayde at LPG on numerous occasions for guidance and support, as I was unable to locate and/or access former LPG client files. Nonetheless, If I had not chosen to be employed by Oakstone, I still would have resigned from LPG for the reasons stated above.

10.     During my tenure at Oakstone, my ability to effectively represent former LPG clients with active lawsuits was hindered because only a small portion of Louisiana LPG files were transferred to Oakstone. The vast majority of my active LPG files were transferred to PHX.

11.     After several demands from Jayde, myself, and other former LPG attorneys, we were provided login credentials to PHX's cloud-based server where the client files were being stored. Unfortunately, most of the client files were missing information due to the hurried and ineffective porting of data, further hindering my ability to service former clients.

12.      After some time at Oakstone, it was shared in multiple team meetings that Oakstone was clearly failing.

13.      On or around March 23, 2023, I received an offer letter from Ms. Harris of Greyson, via email from onboarding@greysonpc.com.

14.     I chose to accept the employment offer from Greyson and my start date was on or around March 27, 2023.

15.     If I had not chosen to join Greyson, I still would have resigned from Oakstone.

16.     Despite their active roles assisting with LPG's wind up, Han and Jayde were helpful in setting up Greyson. However, to the best of my knowledge, they didn't officially join Greyson as employees sometime in April 2023.

17.     In late April 2023, an emergency attorney meeting was held by Scott Eadie, Jayde Trinh, and Han Trinh, where it was revealed that Eng Taing and his associates had withdrawn their investments and support from Greyson. This prompted discussions on how Greyson would sustain itself without financial backing.

18.     During the meeting, Greyson's attorneys raised concerns about accepting new lawsuits as the clients were remitting attorney's fees to a different law firm – PHX. Some attorneys shared that they were offered new cases by PHX (and other unknown entities) ranging from $800 to $2,500 per lawsuit but payment was either delayed or non-existent. It was then decided that Greyson would invoice PHX $2,000 per lawsuit for the work done on behalf of former LPG clients.

19.     Furthermore, it was noted that PHX was not paying Greyson attorneys who were actively litigating matters involving LPG clients that had been transferred to PHX. This raised concerns about fairness and remuneration for the work being done. Moving forward, Greyson aimed to ensure proper compensation for the legal services provided.

20.     In conclusion, my choice in transitioning as an employee from LPG to Oakstone and eventually to Greyson was a challenging yet necessary journey. Despite the uncertainties and financial setbacks, the commitment to serving clients and upholding professional standards remained paramount. The decisions made were driven by a dedication to legal excellence and ethical practice, ensuring that the interests of clients were always the top priority.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration is executed by me on April 16, 2024.

_____

Collin O. Donner

Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224;    Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel for Greyson Law Center PC*

UNITED STATES BANKRUPTCY COURT

OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re | Bankruptcy Case No. 8:23-bk-10571-SC<br>Chapter 11 |
| | **DECLARATION OF ATTORNEY DENISE MIKRUT, ESQ. IN SUPPORT OF GREYSON LAW CENTER PC'S MOTION FOR ADMINISTATIVE CLAIM** |
| LITIGATION PRACTICE GROUP, PC | |
| Debtor. | This Declaration relates to Greyson Law Center PC's Motion for Administrative Claim [dkt.676 in LPG main bankruptcy case docket], which is set for hearing by Bankruptcy Judge Scott <u>Clarkson on:</u><br>Date:  April 25, 2024<br>Time: 11:00 a.m.<br>Place:  Courtroom of Bankruptcy Judge Scott Clarkson, **by Zoom** or in person at:<br><u>411 West Fourth Street, Courtroom 5C</u><br>Santa Ana, CA 92701-4593 |

**<u>DECLARATION OF DENISE MIKRUT, ESQ.</u>**

I, DENISE MIKRUT, ESQ., declare and state as follows:

1

1.     This Declaration is being submitted in support of the Motion [dkt.676] of Greyson Law Center, PC ("Greyson"), which moves the Bankruptcy Court to issue an Order granting and allowing payment of Greyson's administrative claim submitted in the bankruptcy case of Debtor Litigation Practice Group, PC ("LPG").

2.     I am a licensed attorney in the States of Nevada and Arizona.  I was employed by LPG as a W2 attorney, from November 2021 to February 2023 to represent LPG clients in the States of Nevada and Arizona.

3.     Beginning around February 2023, I became aware that the business operations of LPG were suspect.  This was evidenced by the failure of LPG to issue paychecks when due.  Paychecks began to be issued late and were received approximately six to seven days late for each pay period beginning in late January 2023 and continuing in February 2023.

4.     At a Zoom meeting held in February 2023, Han Trinh and Jayde Trinh, who were also employed by LPG at that time, informed the LPG attorneys that LPG was having financial issues and they were unsure about the reliability of issuance of paychecks on a regular basis moving forward.  The reason(s) for the collapse of LPG were not disclosed and no one appeared to know exactly what had caused the financial situation at LPG to deteriorate in such a quick manner.

5.     That which was disclosed at the February Zoom meeting by Han and Jayde was that Tony Diab and LPG managing attorney Daniel March, Esq. had

2

told them that LPG would be winding down its operations and moving the LPG client files to other firms.  One of these entities was another law firm, Oakstone Law Group.  Han and Jayde also informed us they would continue doing work for LPG to assist LPG with LPG's obligations in winding  up its operations.

6.    Upon information and belief, I received an employment offer letter from Oakstone Law Group on or around February 18, 2023.

7.    Because it was represented that LPG would be forwarding client files to Oakstone, and many of these clients would need attorney assistance with either settlement of debts or litigation of debt cases, I believed I had no chose but to accept the employment offer letter from Oakstone in order to continue to work with open client matters.  My start date was on or around 02/20/2023.  In addition, because LPG was essentially "going out of business", it became clear that my employment relationship with LPG would end.

8.    My work for Oakstone was very short-term and only lasted about a month.  However, during this time, I was in regular contact with either Han or Jayde for assistance with issues related to the LPG clients and the transfer of client files from LPG to Oakstone for servicing.  Upon information and belief, Han and Jayde were still working for LPG during this time.  In addition, although the client files were being transferred to Oakstone for serving, Oakstone did not have any staff in place to service clients or their concerns or questions regarding the transfer

3

81

or what would happen with the client accounts.

9.      At some point in after March or April 2023, the LPG files that had been transferred to Oakstone were transferred to Phoenix Law.  At this point, I only had access to information for clients for which I was in the midst of doing work.  If existing clients needed help resolving issues for which I had no answers, I directed these clients to contact either Phoenix Law or LPG.  Upon information and belief, Han and Jayde were still working at LPG at this time, trying to assist "former" LPG clients.

10.      During this "transition" time, the LPG clients who were served with debt collection lawsuits found themselves in a bind.  To my knowledge, Phoenix Law did not have any attorneys to handle these matters and its only attorney-employee was Ty Carss, Esq., who was only licensed in California.

11.      My employment relationship with Greyson Law Center began on or around 03/27/2023.

12.      I was eager to be employed as a W-2 employee of Greyson Law Center because I believed it would enable me to continue to help former LPG clients whose files had been transferred numerous times within a short period of time and whose needs I believed were being overlooked and/or neglected.

13.      Upon information and belief, me, along with the other attorneys that had agreed to work for the Greyson Law Center were informed that the startup

funding for Greyson Law Center was being financed by Eng Taing.  However, near the end of April 2023, Scott Eadie, Jayde Trinh, and Han Trinh held an emergency attorney meeting and told us "local counsel" attorneys that Eng Taing and his people pulled out their investments and support of Greyson Law Center.

14.    At that same meeting, Scott Eadie, Jayde Trinh, and Han Trinh brainstormed with us on how Greyson could survive without financial support from Eng Taing.  None of us could afford to without getting paid.

`    15.    Most of the attorneys that had done work for Phoenix Law directly stated at the meeting that they did not want to continue working for Phoenix Law under the current circumstances because of the slow pay/no pay problem.  Given our options at the time, I, and the other attorneys at the meeting, agreed to be employed by Greyson, as W-2 employees.  The plan was that Greyson Law Center as a firm would employ attorneys for hire.  Greyson would enter into contractual relationship with Phoenix whereby Phoenix Law would assign consumer debt litigation cases to Greyson, and in turn, Greyson would assign an attorney to represent the consumer/client in the applicable jurisdiction.  Attorneys would then work with the clients directly with the goal of resolving the client's litigation case.  Phoenix would pay Greyson an agreed-upon sum per case file assigned, and said payments would enable Greyson to pay its attorneys.

16.    Upon information and belief, Greyson and Phoenix Law did enter into

a contractual agreement whereby Phoenix agreed to pay Greyson the sum of $2,000 per each litigation case assigned.  If this arrangement would have been allowed to continue, it is my belief it would have permitted continuity of service to former LPG clients without causing the delays and interruptions in service to clients that resulted.

17. Moreover, because of the pending LPG bankruptcy case, I was told by Ty Carss that Phoenix Law could not hire or otherwise contract with attorneys in the various states to assist former LPG clients transferred to Phoenix Law because he could not obtain authorization from the bankruptcy court and/or the bankruptcy trustee assigned to the LPG case to pay attorneys for case assignments. Without a promise of payment, it was foreseeable that former LPG attorneys, such as me, would not take on work for which they might not be compensated.

I declare under penalty of perjury that to the best of my knowledge, the foregoing Declaration is true and correct.


DATED this 15th day of April, 2024.        /s/Denise Mikrut, Esq.
                                           DENISE MIKRUT, ESQ.


6

84

1    Kathleen P. March, Esq., (CA SBN 80366)
2    **THE BANKRUPTCY LAW FIRM, PC**
3    10524 W. Pico Blvd, Suite 212, LA, CA 90064
     Phone: 310-559-9224;    Fax: 310-559-9133
4    Email: kmarch@BKYLAWFIRM.com
5    *Counsel for Greyson Law Center PC*

6

7              UNITED STATES BANKRUPTCY COURT

8        OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

9                                    Bankruptcy Case No. 8:23-bk-10571-SC
                                     Chapter 11
10       In re

11                                   **DECLARATION OF ATTORNEY DAVID ORR**

12       LITIGATION                  **REGARDING WORKING FOR GREYSON LAW**
13       PRACTICE                    **CENTER PC**
         GROUP, PC
14                                   This Declaration relates to Greyson Law Center PC's
15                                   Motion for Administrative Claim [dkt.676 in LPG main
                                     bankruptcy case docket], which is set for hearing by
16                                   Bankruptcy Judge Scott <u>Clarkson on:</u>
         Debtor.
17                                   Date:  April 25, 2024
                                     Time: 11:00 a.m.
18                                   Place:  Courtroom of Bankruptcy Judge Scott Clarkson,
19                                   **by Zoom** or in person at:
                                     411 West Fourth Street, Courtroom 5C
20                                   Santa Ana, CA 92701-4593

21

22
              <u>**DECLARATION OF ATTORNEY DAVID ORR**</u>
23

24       I, David Orr, declare:

25       1.    I make this Declaration regarding the Motion [dkt.676] of Greyson Law
26
    Center, PC ("Greyson"), which moves the Bankruptcy Court to grant Greyson
27
    allowance and payment of Greyson's administrative claim, to be paid to Greyson by
28

---

1    the bankruptcy estate of bankruptcy debtor Litigation Practice Group, PC ("LPG").

2
3      2.     I was employed by LPG, as a W2 attorney, from on or around April

4    2022 to on or around February 2023.

5
6      3.     LPG became unstable in February 2023. I began receiving my pay from

7    LPG consistently late around this time.

8      4.     Han Trinh and Jayde Trinh, who were also employed by LPG at that

9
10    time, told me and other LPG attorneys, in an attorney meeting, that the situation at

11    LPG would most likely not improve and that payroll will most likely continue being

12    late due to LPG's financial issues.

13
14      5.     Han and Jayde told us that Tony Diab and LPG managing attorney

15    Daniel March, Esq. had told Han and Jayde that LPG would be winding up, which

16
17    would take around a year, and that we were encouraged to seek employment

18    elsewhere. Han and Jayde told us there was a job opportunity with a new law firm

19
20    (Oakstone) which would be taking over representation of some of the LPG clients,

21    because Oakstone was better equipped to service the LPG clients, than was LPG, in

22    LPG's present condition.

23
24      6.     Han and Jayde told us they would continue doing work for LPG to assist

25    LPG with LPG's winding up.

26
27      7.     I received an employment offer letter from Oakstone Law Group on or

28    around February 18, 2023.

     8.     I willingly chose to accept the employment offer letter from Oakstone

---

**DECLARATION OF ATTORNEY DAVID ORR**        2       

1  and my start date was on or around 2/20/2023.

2
3      9.    If I had not chosen to be employed by Oakstone, I still would have

4  resigned from LPG, because of the financial problems at LPG.

5
6      10.   Further, had I not gone to Oakstone, I could not have continued to work

7  on the cases of the LPG clients assigned to me due to the immense financial burden

8  doing so without pay would cause me. I would have been required to withdraw from

9
10  the approximately 250+ clients who I was representing in various stages of active

11  litigation.

12
13     11.   During my employment with Oakstone, I had to repeatedly contact Han,

14  Jayde, and their team, at LPG, to get their help regarding issues concerning the former

15  LPG clients that LPG had sent to Oakstone for servicing, because Oakstone had no one

16
17  to answer such questions.

18     12.   Later, I learned that the LPG files were transferred from Oakstone to

19  Phoenix Law for servicing, because Oakstone was unsurprisingly failing.  When the
20
21  cases went to Phoenix Law, I still had to repeatedly contact Han, Jayde and their team

22  at LPG, to get their help regarding issues concerning the former LPG clients that were

23
24  now at Phoenix, because I had no contact information from anyone at Phoenix, nor did

25  anyone from Phoenix reach out to me to discuss how I should proceed on their clients'

26  cases.

27
28     13.   The consumer clients who were defendants in those state court suits were

originally LPG clients, who were then moved by LPG to Oakstone for servicing, and

_____

**DECLARATION OF ATTORNEY DAVID ORR**          3                    87

then, when Oakstone was failing, were moved to Phoenix for servicing. To my knowledge, Phoenix did not have any attorneys who were able to practice law in Florida who could potentially substitute in on my active cases with their clients.

14. While I later learned that Phoenix had made arrangements with some of the other former LPG attorneys to pay them for their representation of their clients, I never received any such communications from Phoenix myself.

15. Phoenix Law was the entity collecting clients' payments while we, the local counsel attorneys, were the ones doing the work for the clients. I needed to be compensated for the immense amount of work I was doing for those clients. Moreover, I had to pay out of pocket expenses personally in furtherance of my representation for those clients on at least one instance, somewhere in the area of $3,000.00-$4,000.00.

16. As far as I recall, on or around 3/23/2023, I received an offer letter from Greyson Law Center from Ms. Harris of Greyson, by email from onboarding@greysonpc.com with all the onboarding information.

17. I chose to accept the employment offer letter from Greyson Law Center and my start date was on or around 3/27/2023.

18. If I had not chosen to accept employment at Greyson, I again would have had to withdraw from the clients' active cases, because Phoenix made no attempts to arrange any kind of employment agreement with me.

19. I was not forced or coerced to join Greyson. I was eager to be employed as a W-2 employee of Greyson Law Center, which at that point I understood was being

1    financed by Eng Taing.

2       20.    However, near the end of April 2023, Scott Eadie, Jayde Trinh, and Han

3

4    Trinh held an emergency attorney meeting and told us "local counsel" attorneys that

5    Eng Taing and his team had pulled out of their investments toward Greyson.

6

7       21.    In that same meeting, Scott Eadie, Jayde Trinh, and Han Trinh

8    brainstormed with us attorneys on how Greyson could survive without financial

9

10   support from Eng Taing. Obviously, working on a caseload of this size without

11   compensation was not feasible.

12      22.    Greyson agreed to hire us attorneys, who wished to be hired by Greyson,

13

14   on a W-2 basis, and agreed that Greyson would then try to contract with Phoenix, for

15   Phoenix to pay Greyson $2,000 per case, for each state court case we appeared in,

16

17   defending consumer defendant clients for Phoenix.

18      23.    Greyson landed on a $2,000 per case figure because some of the

19   attorneys said they were being paid, or at least supposed to be paid, approximately

20

21   $800 to $2,750, per lawsuit they appeared in to defend the consumer clients, by law

22   firms they did work for, such as Phoenix, Consumer Legal Group, etc. However, I had

23

24   no personal role in the negotiations with those other firms.

25      24.    Once the Temporary Restraining Order was entered by the Court in this

26   matter, I began no longer receiving payment from Greyson. From that time on, until

27

28   being hired by Morning Law Group, I continued to work tirelessly on behalf of the

LPG clients without compensation for such (from 6/2/2023 through 8/4/2023).

1

I declare under penalty of perjury that the foregoing is true and correct, and that

2

3

this Declaration is executed by me at Oakland Park, Florida, on April 18, 2024.

4

5

6

DAVID ORR, ESQ.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kathleen P. March, Esq., (CA SBN 80366)
**THE BANKRUPTCY LAW FIRM, PC**
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224;    Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel for Greyson Law Center PC*

## UNITED STATES BANKRUPTCY COURT

## OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re<br><br>LITIGATION PRACTICE GROUP, PC<br><br>Debtor. | Bankruptcy Case No. 8:23-bk-10571-SC<br>Chapter 11<br><br>**DECLARATION OF ATTORNEY GEORGE CHAMBERLAIN REGARDING WORKING FOR GREYSON LAW CENTER PC**<br><br>This Declaration relates to Greyson Law Center PC's Motion for Administrative Claim [dkt.676 in LPG main bankruptcy case docket], which is set for hearing by Bankruptcy Judge Scott <u>Clarkson on:</u><br>Date:  April 25, 2024<br>Time: 11:00 a.m.<br>Place:  Courtroom of Bankruptcy Judge Scott Clarkson, **by Zoom** or in person at:<br>411 West Fourth Street, Courtroom 5C<br>Santa Ana, CA 92701-4593 |

## <u>DECLARATION OF ATTORNEY GEORGE CHAMBERLAIN</u>

I, George Chamberlain, declare:

1.     I make this Declaration regarding the Motion [dkt.676] of Greyson Law

Center, PC ("Greyson"), which moves the Bankruptcy Court to grant Greyson

allowance and payment of Greyson's administrative claim, to be paid to Greyson by the

bankruptcy estate of bankruptcy debtor Litigation Practice Group, PC ("LPG").

2. I was employed by LPG, as a W2 attorney, from the summer of 2022 to the winter of 2023.

3. LPG experienced financial instability beginning in February 2023, resulting in delayed employee compensation for several pay periods during the winter months of the same year.

4. Han Trinh and Jayde Trinh, who were also employed by LPG at that time, advised me and other LPG attorneys, in a meeting, that the situation at LPG would most likely not improve and that payroll would most likely continue being late due to LPG's financial issues.

5. Han and Jayde informed us that Tony Diab and LPG managing attorney Daniel March, Esq. had advised them that LPG would begin the process of shutting down, which would take around a year, and that we were encouraged to seek employment elsewhere. They also mentioned a job opportunity with a new law firm, Oakstone, which would be taking over representation of some LPG clients, as Oakstone was better equipped to service these clients given LPG's current condition.

6. Han and Jayde told us they would continue doing work for LPG to assist with the shutdown process.

7. I received an employment offer letter from Oakstone Law Group in or around February 2023.

8. Even if I had not chosen to be employed by Oakstone, I still would have

**DECLARATION OF ATTORNEY GEORGE CHAMBERLAIN**    **2**

resigned from LPG due to its financial problems.

9.    Additionally, had I not joined Oakstone, I would not have been able to continue working on the cases of the LPG clients assigned to me, as those clients' files had been transferred to Oakstone for servicing.

10.    During my employment with Oakstone, I had to contact Han and/or Jayde at LPG to seek their assistance regarding issues concerning the LPG clients that LPG had sent to Oakstone for servicing, as Oakstone lacked personnel to address such queries.

11.    In or around March 2023 I received an offer letter from Greyson Law Center from Ms. Harris of Greyson, by email from onboarding@greysonpc.com with all the onboarding information

12.    I chose to accept the employment offer letter from Greyson Law Center and my start date was in or around March 2023.

13.    I was not forced or coerced; I was eager to be employed as a W-2 employee of Greyson Law Center.

14.    However, near the end of April 2023, Scott Eadie, Jayde Trinh, and Han Trinh held an emergency attorney meeting and informed certain attorneys that Eng Taing and his associates had withdrawn their investments and support for Greyson Law Center.

15.    During that same meeting, Scott Eadie, Jayde Trinh, and Han Trinh brainstormed with us on how Greyson could survive without financial support from

Eng Taing.

16.    In that same meeting, Scott Eadie, Jayde Trinh, and Han Trinh discussed strategy addressing the survival of Greyson without financial support from Eng Taing.

17.    Upon information and belief, Greyson agreed to hire attorneys who wished to be employed by them on a W-2 basis with Phoenix paying Greyson $2,000 per case for each state court case we appeared in to defend consumer clients for Phoenix.

18.    Upon information and belief, the $2,000 per case figure was based on some attorneys reporting that they were supposed to be paid approximately $800 to $2,500 per state court lawsuit they appeared in to defend consumer clients by law firms they worked for, such as Phoenix Law and Consumer Legal Group.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed by me in Charleston, West Virginia, on April 16, 2024.


*George E. Chamberlain*
GEORGE CHAMBERLAIN

**DECLARATION OF ATTORNEY GEORGE CHAMBERLAIN**    4

1  Kathleen P. March, Esq., (CA SBN 80366)
2  **THE BANKRUPTCY LAW FIRM, PC**
3  10524 W. Pico Blvd, Suite 212, LA, CA 90064
   Phone: 310-559-9224;    Fax: 310-559-9133
4  Email: kmarch@BKYLAWFIRM.com
   *Counsel for Greyson Law Center PC*
5

6

7                UNITED STATES BANKRUPTCY COURT

8      OF THE CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

9                                    | Bankruptcy Case No. 8:23-bk-10571-SC
                                     | Chapter 11
10 In re                            |
                                     | **DECLARATION OF ATTORNEY PETER R**
11                                   | **OSTERMAN REGARDING WORKING FOR**
12 LITIGATION                        | **GREYSON LAW CENTER PC**
13 PRACTICE                          | This Declaration relates to Greyson Law Center PC's
   GROUP, PC                         | Motion for Administrative Claim [dkt.676 in LPG main
14                                   | bankruptcy case docket], which is set for hearing by
15                                   | Bankruptcy Judge Scott <u>Clarkson on:</u>
16                                   | Date:  April 25, 2024
                                     | Time: 11:00 a.m.
17 Debtor.                           | Place:  Courtroom of Bankruptcy Judge Scott Clarkson,
18                                   | **by Zoom** or in person at:
                                     | 411 West Fourth Street, Courtroom 5C
19                                   | Santa Ana, CA 92701-4593

20

21        <u>**DECLARATION OF ATTORNEY PETER R OSTERMAN**</u>

22    I, Peter R Osterman, declare as follows:

23

24    1.     I make this Declaration in support of the Motion [dkt.676] of Greyson

25 Law Center, PC (Hereafter, "Greyson"), which moves the Bankruptcy Court to grant

26 Greyson allowance and payment of Greyson's administrative claim, to be paid to

27 Greyson by the bankruptcy estate of bankruptcy debtor Litigation Practice Group, PC

28 (Hereafter, "LPG");

---

2.      I was employed by LPG as a W2 attorney from January of 2022 through February of 2023;

3.      LPG became financially unstable on or around February of 2023. Consequently, pay was received approximately six to seven days late for each pay period during said period of time;

4.      I was informed by Han Trinh and Jayde Trinh, who were also employed by LPG at the time, that the situation at LPG would most likely not improve and that payroll would most likely continue to be late due to LPG's financial concerns;

5.      I was further informed by Han and Jayde that Tony Diab and LPG managing attorney Daniel March had informed each of them that LPG would be winding up over the course of the following year and that we were encouraged to seek employment elsewhere. I was further informed that there may be a job opportunity with a new law firm, Oakstone Law Group (Hereafter, "Oakstone"), which would be taking over representation of a portion of the LPG clients;

6.      I was further informed by Han and Jayde that they would continue acting in their capacity as employees of LPG to assist with the winding up of that entity;

7.      To the best of my recollection, I was never provided with an offer of employment from Oakstone;

8.      For some time thereafter, I continued to manage the cases assigned to me despite the fact that my employer, LPG, was no longer a going concern;

9.      At some point thereafter, because Oakstone had not presented me with an offer of employment and because my efforts to communicate with them were *not* met with a response, I was unable to continue working on the cases assigned to me by LPG;

10.     At some point thereafter, I was informed that the LPG files were being transferred from Oakstone, to Phoenix Law (Hereafter, "Phoenix"), for servicing, because Oakstone was failing;

11.     At all times during this transition from one entity to another, I remained in contact with both Han and Jayde (formerly employees of LPG) in an effort to remain abreast of activities and in an effort to ensure that our former clients were receiving the services for which they had contracted;

12.     At some point thereafter, I was informed that Phoenix was insufficiently equipped with the attorneys necessary to satisfactorily service the clients.  I was further informed that Ty Carss was admitted to the California Bar *only* and therefore could not represent consumer clients in states other than California, including the states of Alaska and Washington which were the jurisdictions I had previously handled;

13.     At no time did I receive any payment from either Oakstone or Phoenix for any of the services I may have provided a given client during this transition period;

14.     At some point thereafter, it was brought to my attention that attorneys reported having trouble securing payment for services rendered to Phoenix Law. The attorneys who had provided services directly for Phoenix Law indicated a desire to be employed by Greyson as W-2 employees and have Greyson contract with Phoenix for

purposes of paying Greyson attorneys to defend consumer clients being sued for debts

allegedly owed to the creditors. Phoenix was ostensibly to pay Greyson, which would

enable Greyson to pay W-2 salaries to its employed attorneys from the pool of funds

Phoenix was to pay Greyson;

15.     To my knowledge, Phoenix Law continued collecting clients' payments

while the local counsels previously employed by LPG provided services to the clients,

sometimes without pay which ultimately proved to be an untenable arrangement;

16.     On or around March 23, 2023, I received an offer letter via email from

Greyson Law Center's Ms. Harris (onboarding@greysonpc.com) with onboarding

information;

17.     I chose to accept employment with Greyson with a start date on or

around March 27, 2023;

18.     At no time herein was I ever coerced into any arrangement, including

employment with Greyson. I remained eager to continue my employment as a W-2

employee of Greyson, which at that point, I was informed, was being financed by Eng

Taing;

19.     Near the end of April 2023, Scott Eadie, Jayde Trinh, and Han Trinh held

an emergency attorney meeting and informed me and other "local counsel" attorneys

that Eng Taing and his group had discontinued with both their investment and support

of Greyson Law Center;

20.     In that same meeting, Scott Eadie, Jayde Trinh, and Han Trinh

collectively shared ideas on how Greyson could survive without financial support from Eng Taing. For obvious reasons, working without pay was not an option;

21.     Greyson thereafter agreed to hire the attorneys on a W-2 basis and engage in efforts to contract with Phoenix to pay Greyson $2,000 per case for each state court case in which a given attorney appeared to defend Phoenix's consumer clients;

22.     The $2,000 per case figure was established as the result of attorneys having indicated an expectation to be paid approximately $800 to $2,500 per state court lawsuit in which they appeared based on previous indications from Phoenix Law and Consumer Legal Group;

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This Declaration was executed by me at Seattle, Washington on this 16th day of April, 2024.

PETER R OSTERMAN, Attorney at Law
*California Bar No.* 177093
*Washington State Bar No.* 27803
*Alaska Bar No.* 125028

## <u>DECLARATION OF R. REED PRUYN</u>

I, R. REED PRUYN, ESQ., declare:

1. Jayde Trinh has asked me to explain the nickname I gave her when we were working for The Litigation Practice Group.

2. Every now and then, a client newly assigned to me was unresponsive to my efforts to contact and communicate with them, which of course was vital for me to timely and effectively represent them.

3. In such instances, I turned to Ms. Trinh for her help to explain to such clients the importance of promptly connecting with me and that I'd not be able to help them if they did not.

4. Ms. Trinh was highly effective in getting such clients to contact me. That is the reason I called her The Hammer.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed at ___Layton_____, Utah on April _24th_, 2024.

_Reed Pruyn_____
R. REED PRUYN

## DECLARATION OF MALLORY MCCARTHY

I, MALLORY MCCARTHY, declare:

1. I am a former employee of Litigation Practice Group PC.  My employment commenced in December 2020, and I continued to be employed until the filing of the bankruptcy by LPG in March 2023.  I make this declaration on the basis of my own personal knowledge, and if called to testify I could and would testify to the facts set forth below.

2. During the time I was employed at LPG, I knew Tony Diab.  At various times during my employment I witnessed Tony Diab driving a BMW i8.  I do not know whether he owned, leased or rented the vehicle.

3. On multiple occasions, Tony permitted me to drive the i8.  At no point did Tony indicate to me that he had purchased the vehicle, let alone that he purchased it for someone other than himself.

4. Tony allowed other individuals to drive the i8, including Jayde Trinh, a co-worker at LPG.  At no point did Tony indicate that he was giving the i8 to Jayde, that he purchased it for Jayde, or that Jayde would be permitted to use it permanently.  In no sense was Jayde held out as the owner or primary operator of the i8.

5. When LPG would host attorneys from remote offices, I was often asked to pick those attorneys up from the airport.  On numerous occasions, I would give the i8 or another vehicle Tony drove, a Mercedes-Benz G-wagon, to the visiting

DECLARATION OF MALLORY MCCARTHY TO BE E-FILED IN BANKRUPTCY COURT IN ADV
PROCEEDING 8:23-ap-01046-SC (*Trustee Marshack v. Tony Diab et al*)    1

101

attorneys.  On one occasion, two newly hired attorneys visited the LPG offices in Tustin, and I gave the keys to the i8 to one attorney at the keys to the G wagon to another attorney.

6. To the best of my knowledge, Tony returned the i8 and G-wagon to whomever he obtained those vehicles from in 2021.  I did not witness Tony drive or possess either vehicle in 2022 or 2023.  Nor did I witness Jayde Trinh or any other current or former LPG employee drive either vehicle beyond 2021.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed at _____Miami, Florida_____, on April 16, 2024.

_____
MALLORY MCCARTHY

## <u>DECLARATION OF BRENDA MENDEZ</u>

I, BRENDA MENDEZ, declare:

1.  I am a former employee of BAT Inc., The Litigation Practice Group PC (LPG), Guardian Processing, and Greyson Law Center.

2.  I was employed by BAT Inc., known to me as Coast Processing, from 9/20/2020 until June 2021, when I was terminated and then was hired at LPG. I worked at LPG until 3/3/2023 when I left due to LPG's failures to timely pay payroll.

3.  During my entire employment with Coast Processing, I reported to the owners, whom I knew to be Brian Reale and Asante Bayrooti. I would see Tony Diab from time to time and knew him to be a person in upper management but did not know his actual role. I never saw nor heard of Han Trinh and Jayde Trinh while at Coast Processing.

4.  When I moved to LPG, I observed that Tony Diab was the person in charge at LPG, and that he and Rosa Bianca Loli ran LPG for Daniel March, the managing attorney at LPG. I would see Daniel March, Bianca Loli, and Tony Diab on occasion. I did not report to any of them directly. My direct supervisor was Maria Eeyah Tan, while I was in Customer Service and Retention, and Han Trinh once I moved to LPG's Document Control Team.

5.  I observed that Tony Diab, Bianca Loli and Daniel March were Han Trinh's bosses at LPG. At no point did I observe that either Tony Diab or Bianca Loli would report to or be managed by Han Trinh, and at no point did I observe that Han Trinh was a part of upper management of LPG at all. I

never observed that Han Trinh was in any sense a decision-maker at LPG as far as management decisions at LPG were concerned. To my observations, Han Trinh solely did administration work at LPG.

6.  I never worked for or underneath Jayde Trinh.  At no time did I observe that Jayde Trinh to be a part of LPG's upper management, nor did I believe that she was in any sense a decision-maker at LPG.

7.  I was employed by Guardian Processing from 3/6/2023 to 4/21/2023.

8.  During my training at Guardian Processing, I was told that Eng Taing was in charge and had ultimate authority in all things relating to the company, and that is what I observed.

9.  I was employed by Greyson Law Center from 5/1/2023 to 6/9/2023.

10. During my employment with Greyson, I observed that attorney Scott Eadie was in charge and that everything had to be approved by him.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed at_____Costa Mesa_____, California on April __22__, 2024.


_____*Brenda Mendez*_____
BRENDA MENDEZ

104

## DECLARATION OF ESMERALDA GUZMAN

I, ESMERALDA GUZMAN, declare:

1. I am a former employee of BAT Inc., The Litigation Practice Group PC (LPG), Guardian Processing, and Greyson Law Center.

2. I was employed by BAT Inc., known to me as Coast Processing, from 5/29/2018 until June 2021, when I was terminated and then was hired a LPG. I worked at LPG until 3/3/2023 when I left due to LPG's failures timely pay payroll.

3. During my entire employment with Coast Processing, I reported to the owners, whom I knew to be Brian Reale and Asante Bayrooti. I would Tony Diab from time to time and knew him to be a person in upper management.

4. When I moved to LPG, I observed that Tony Diab was the person in ch at LPG, and that he ran LPG for Daniel March, the managing attorney a LPG. I would see Daniel March and Tony Diab on occasion. I did not r to any of them directly. My direct supervisor was Maria Eeyah Tan, wh was in Customer Service and Retention, and Han Trinh once I moved to LPG's Legal Operations Team.

5. I observed that Tony Diab and Daniel March were Han Trinh's bosses a LPG. At no point did I observe that Tony Diab would report to or be managed by Han Trinh or that Han Trinh was even a part of upper

management at all. I never believed that Han Trinh was in any sense a

decision-maker at LPG.

6.  I never worked for or underneath Jayde Trinh.  At no point did I believe

Jayde Trinh to be a part of LPG's upper management, nor did I believe

she was in any sense a decision-maker at LPG.

7.  I was employed by Guardian Processing from 3/13/2023 to 4/21/2023.

8.  During my training at Guardian Processing, I was told that Eng Taing w

charge and had ultimate authority in all things relating to the company.

9.  I was employed by Greyson Law Center from 5/1/2023 to 6/9/2023.

10. During my employment with Greyson, I was told that attorney Scott Ea

was in charge and that everything had to be approved by him.

I declare under penalty of perjury that the foregoing is true and correct, and t

this Declaration is executed at Santa Ana, California on April 24, 2024.

<u>Esmeralda Guzman</u>
ESMERALDA GUZMAN

# DECLARATION OF KENNEDY MARTINEZ

I, Kennedy Martinez, declare:

1. I am a former employee of BAT Inc. and The Litigation Practice Group PC ("LPG"). I make this declaration on the basis of my personal knowledge.

2. I was hired at BAT Inc., known to me as Coast Processing, in March 2021. I continued that employment until late June 2021, when I was terminated and then hired at LPG in July 2021. I worked at LPG until March 2023, when I left due to not being paid.

3. The entire time that I was at Coast Processing, I reported to the owners, who I knew to be Brian Reale and Asante Bayrooti. I would see Tony Diab from time to time and knew him to be a person at the level of management, but did not know his role. I never saw nor heard of Han Trinh or Jayde Trinh while at Coast Processing.

4. When I moved to LPG, I was told that Tony Diab was the person in charge, and that he and Bianca ran LPG for Dan March, the head attorney at LPG. I would see Dan March, Bianca Loli, and Tony Diab on occasion. I did not report to any of them directly. My direct supervisor was Eeyah Tan, while I was in Customer Service, and Karla Bravo, once I moved to the legal customer service team.

5. It was my understanding that Tony Diab and Bianca Loli were Jayde Trinh's boss at LPG. If I had a dispute with Jayde Trinh, and I believed her decision to

DECLARATION OF KENNEDY MARTINEZ TO BE E-FILED IN BANKRUPTCY COURT IN ADV
PROCEEDING 8:23-ap-01046-SC (*Trustee Marshack v. Tony Diab et al*)      1

107

be incorrect, I would ask Tony Diab directly to determine whether Jayde Tinh was correct in her decision. At no point did I believe that either Tony Diab or Bianca Loli would report to or be managed by Jayde Trinh.

6. I never worked for or underneath Han Trinh. At no point did I believe Han to be a part of upper management, nor did I believe that she was in any sense a decision-maker at LPG. I understood her to work for Tony Diab and be his assistant, nothing more.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration is executed at ___Laguna Hills___, California on April 23 2024.

_____
Kennedy Martinez

## DECLARATION OF KATHLEEN P. MARCH ESQ TO REPLY

I, KATHLEEN P. MARCH, declare:

1.      I am an attorney in good standing, admitted to practice in California and New York.  I am admitted to practice in US District Court and Bankruptcy Court, CDCA, among other Courts. I make this Declaration in support of the foregoing REPLY of my firm's client, Greyson Law Center, PC.

2.      Greyson objects to hearings being held—such as the 4/22/24 hearing—where information highly relevant to Greyson (and to all other parties in the LPG case) is discussed with the Court by Trustee counsel, but without notice having been given to Greyson counsel (and to all other parties in the LPG case) that such highly relevant matter, NOT noticed anywhere in the matter on calendar for hearing on 4/22/24, would be discussed with the Court by Trustee counsel.  Ex parte hearings and communications need to stop.  Period.

3.      Trustee attorneys should not be requesting continuances, other than by motions to continue, filed with the Court and served on my firm, so that my firm can take a position on whether requested continuances are appropriate.

4.      If my firm had been noticed that Trustee counsel was going to discuss the deteriorating situation with buyer Morning Law, at the 4/22/24 hearing regarding Judith Skiba-- I would have appeared and I would have told this Court the

same information I told Trustee Marshack, in a telephone call, on 3/5/24 (which, at

my request, Trustee's counsel arranged for me to have with Trustee)

     5.     In that call, I told Trustee Marshack that in doing investigation for

my firm's clients (Greyson, Han Trinh, Jayde Trinh) my firm had received

information, from a source with personal knowledge, that Morning Law, buyer of

LPG's assets, was deteriorating; that it had lost all but around 2,000 of the LPG  client

files that Morning Law had purchased,  in the Bankruptcy Court sale, in July 2023;

that it had the week before my 3/5/24 phone call with Trustee, laid off 10 of its

remaining 30 staff;  that Morning Law could not operate profitably with so few client

files left, and that Morning Law would eventually close down, which could happen by

the end of April 2024.

     6.     Obviously Morning Law closing down would be very bad for all

claimants, because that would end the stream of future payments that Morning Law's

purchase agreement with Trustee requires Morning Law to pay to the LPG bankruptcy

estate  (50% of fees Morning Law receives in future on active executory contracts,

and 40% of fees Morning Law receives in future on inactive executory contracts.

Trustee said he would "look into" this situation.

     7.     I also told Trustee that my firm was concerned that Dinsmore firm

had recommended Russ Squires as winning bidder, when Wes Thomas had given

Dinsmore firm information, in a phone meeting with Dinsmore firm, followed up by

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.    33

sending Dinsmore firm a lengthy document,  that Russ Squires had an unresolved

allegation against Squires,  that Squires had misappropriated 5.5 million dollars from

Resolution Processing.  That didn't sound like an appropriate winning bidder to my

firm, particularly as Squires was not a lawyer, and had to go out and find a law firm

(Morning Law) to front for him, in order to be proclaimed the winning bidder.

8.      If this Court wasn't given that very negative information about

Squires by Dinsmore firm at the sale hearing (and it appears to me this Court was

NOT given that information about Squires), Greyson respectfully suggests this Court

should be demanding to know why Dinsmore firm did not give that very negative

information about Squires to this Court, before the Court proclaimed Squires (via

Morning Law) as the winning bidder for LPG's client files. Withholding highly

relevant information from the Court raises the possibility that someone at Dinsmore

firm was being paid present or future consideration, to withhold giving the Court the

highly relevant negative information regarding Squires.

9.      My firm has evidence proving that the phone meeting with

Dinsmore firm attorneys and Wes Thomas (which Dinsmore attorney Ghio first

denied had occurred) did occur.  My firm has the lengthy document that Wes Thomas

provided to Dinsmore firm, stating that there  are unresolved allegations against

Squires, that Squires misappropriated 5.5 million dollars at Resolution Processing.

10.      Greyson's Motion in chief [dkt.290 in adversary proceeding/

**REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.            34**

dkt.749 in main case, filed 12/6/23], Greyson part of Joint Statement [dkt.325, filed 1/8/24], and Greyson's Supplemental briefing [dkt.474, filed 4/2/23] move for **TWO**

**things**:    First Greyson moves to vacate, as to Greyson,  the dkt.13 *Lockout and Preliminary Injunction Order* (includes follow on dkt.70 *Preliminary Injunction Order)*.  Second, Greyson moves for an order ordering Trustee/Dinsmore firm to return 4 specific categories of  items, seized at Greyson on 6/2/23, which were seized illegally, because the [dkt.13] *Lockout and Preliminary Injunction Order* (and the follow on dkt.70 *Preliminary Injunction Order*) did **NOT** authorize seizure of those 4 categories of items.

11.    Trustee's OPP [dkt.493, filed 4/18/24, also filed as dkt.492 on 4/18/23} does not say a single word about the half of Greyson's Motion moving for return of 4 categories of items seized illegally at Greyson on 6/2/23, because neither the [dkt.13] *Lockout and Preliminary Injunction Order*, and not even the [dkt.70] follow-on *Preliminary Injunction Order*, authorized seizure of those 4 categories of items.

12.    I have carefully read the [dkt.13] Lockout and Preliminary Injunction Order.  entered 5/26/23, and the follow-on dkt.70 Order.  Neither contains any  any language authorizing Trustee/Dinsmore firm, to seize the following 4 categories of items (4 categories of items previously itemized in Greyson's 1/8/24 and 4/2/24 briefing), which Dinsmore firm/its field agents illegally seized at Greyson on 6/2/23, because there is no language in dkt.13, or in dkt.70, authorizing seizure of those 4

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                    35

categories of items.

13.    As itemized in the Joint Statement [dkt.325, filed 1/8/24] and itemized

again in Greyson's Supplemental Briefing [dkt.474, filed 4/2/24], the 4 categories of

items Greyson seeks return of from Trustee/Dinsmore firm, because dkt.13/dkt.70  did

NOT authorize Trustee/Dinsmore firm to seize those items, are as follows:

(1) The dkt.13 Order did NOT authorize Celentino firm to seize, or to lock
Greyson out of, Greyson's Microsoft [M365 suite] account, which Han
Trinh had been paying Microsoft $2,312 monthly, from Han Trinh's own
money as proven by Han's credit card bill (not reimbursed by anyone)
(attested to in Han Trinh's Declaration [dkt.325-2] to Joint Statement filed
1/8/24).  Celentino's part of the Joint Statement [dkt.325, filed 1/8/24] does
not point to any text in the 5/26/23 [dkt.13] Order authorizing Celentino firm
to seize and lock Greyson out of Greyson's whole Microsoft [M365 suite]
account.  The dkt.13 Order does not authorize that.  Nor does the 6/23/23
[dkt.70] continuation Order.

(2)    The dkt.13 Order did not authorize Celentino's firm to seize, or to lock
Greyson's out of, Greyson's internet domain/website, which Greyson's IT
director, Justin Nguyen, had paid for with his own funds (as attested to in
Nguyen's Declaration [dkt.325-1], filed as part of Joint Statement on 1/8/24.
Celentino's part of the Joint Statement does not point to any text in the 5/26/23
[dkt.13] Order authorizing Celentino firm to seize and lock Greyson out of
Greyson's internet domain.  The dkt.13 Order does not authorize that.  Nor does
the 6/23/23 [dkt.70] continuation order.

(3)    The dkt.13 Order [p.8, line 24 to p.9, line 11 enjoins a list of people,
which includes Han Trinh, Jayde Trinh and Scott Eadie from accessing emails.
However, that provision does NOT authorize the Celentino firm to seize, read, or
use Greyson's 100 + email accounts.  It was **unauthorized** for Celentino firm to
seize, read and use Greyson's 100+ email accounts, which Celentino firm has

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                    36

obviously done, because 18 of Greyson's emails (which Han, Jayde and Scott Eadie have been locked out of by Celentino, form 6/2/23 to present), are attached as Exhibits to the Declaration of Alex Rubin [dkt.325-4] (then working as a field agent for Celentino firm) that is one of Celentino firm's declarations to the Joint Statement [dkt.325] filed 1/8/24. Celentino firm's part of the Joint Statement does not point to any language in the 5/26/23 Order, or 6/23/23, which authorized Celentino firm to seize, read, use or lock Greyson out of all 100+ Greyson email accounts. The dkt.13 Order does not authorize that. Nor does the 6/23/23 [dkt.70] continuation order. Enjoining Han Trinh, Jayde Trinh and Scott Eadie of Greyson from accessing their emails, does NOT authorize Celentino firm to seize all 100+ Greyson email accounts, nor does it allow Celentino firm to read and use Greyson's emails, from those 100+ Greyson email accounts, which the 18 Greyson emails attached to Ruben's Declaration [dkt.325-4] shows Celentino firm has done.

(4)    Approximately 50 Greyson computers and beelinks seized by Celentino firm at Greyson's office, on 6/2/23 should properly be ordered returned to Greyson. The Declaration [dkt.325-1] of Greyson's IT director, Justin Nguyen to Greyson's portion of the Joint Statement, attests he paid for the 24 beelinks with his own personal credit card, unreimbursed by anyone, and attaches delivery documents showing Nguyen ordered those 24 beelinks.

14.    OPP does not deny that Dinsmore firm/its field agents seized all these items on 6/2/23, and does not deny the Dinsmore firm still has these seized items. If the dkt.13 Order, or the successor dkt.70 Order, had any language authorizing seizure of the foregoing four categories of items, OPP would have point to that language. **OPP is silent because there is NO LANGUAGE in dkt.13, or the successor dkt.70 Order, authorizing seizure of these 4 categories of items**.

15.    Because OPP is silent about the portion of Greyson's Motion/joint statement/ supplemental briefing moving for return of those items, Greyson's request

REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                37

1   for an order ordering Dinsmore firm/its field agents to return these 4 categories of

2   items to Greyson , is **unopposed**.  The Court should grant the "return 4 categories of

3
4   seized items" relief because it is **unopposed** in OPP.  But more importantly, that relief

5   should be granted, because there is no language in dkt.13/dkt.70 authorizing Dinsmore

6   firm/its field agents, to seize any of these 4 categories of items.

7
8         16.    OPP is error, in alleging that this Court should **not** vacate, as to

9   Greyson,  the dkt.13 *Lockout and Preliminary Injunction Order/follow on Dkt.70*

10  *Order*.  Pursuant to Greyson's evidence, OPP's lack of evidence, and pursuant to

11
12  controlling law, Greyson is entitled to have this Court vacate both the dkt.13 *Lockout*

13  *and Preliminary Injunction* Order, and  the follow-on *Dkt.70 Order.*

14        17.    OPP (p.9, lines 5-8;  p.13, lines 20-23;  p.17, lines 5-6;  p.18, line

15  23, etc.) argues that the dkt.13 Lockout and Preliminary Injunction Order (and follow

16
17  on dkt.70 Order) was proper as to Greyson, because Greyson had "misappropriated

18  LPG's attorney network," which was LPG's "most valuable asset".  That (newly

19
20  created) argument is so clearly contrary to law and evidence, for at least 4 reasons,

21  that it is bad faith:

22        18.    First, Dinsmore firm's Motion [dkt.4], filed under seal on 5/25/23,

23
24  moving for dkt.13, **nowhere alleged** that dkt.13 should be granted because Greyson

25  misappropriated LPG's attorney network. Dinsmore firm's motion sought, and was

26  granted, the dkt.13 Lockout and preliminary injunction order (and the follow on

27

28  REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.    **38**

1  dkt.70 order) based on the allegation that various entities (e.g. Phoenix, Oakstone,

2  Consumer Law Group), **including Greyson**, were alter egos of debtor LPG.

3
4  Trustee's Motion [dkt.4, filed 5/25/23] and the Declarations thereto, is based on the

5  allegation that these entities, including Greyson, are alter egos of LPG. Trustee's

6  Omnibus Emergency Motion for Turnover etc. [dkt.4, filed 5/25/23] at p.1, footnote 1

7
8  states:

9          "**The Alter Egos include, but are not limited to**: OakStone Legal Group,
   P.C. ("OakStone"); **Greyson Law, P.C. ("Greyson")**; Phoenix Law
10 Group, P.C. (Phoenix"); LGS Holdco., LLC; Consumer Legal Group, P.C.
   ("CLG"); Maverick Management, LLC ("Maverick"); Vulcan Consulting
11 Group, LLC ("Vulcan"); Strategic Consulting Solutions, LLC ("SCS");
   BAT Inc. d/b/a Coast Processing ("Coast Processing"); Prime Logix, LLC
12 ("Prime Logix"); Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca
13 Loli ("Rosa Loli"); Lisa Cohen and/or any other alias', agents or corporate
   entities affiliated with same (collectively referred to herein as "Alter
14 Egos" unless specifically identified)." [bold/underline added for
15 emphasis]

16

17      19.    Plus see Trustee's Status Report [dkt. 45, filed 6/12/23], page 3,

18 lines 10-12 (stating same).

19
20      20.    Second, Trustee's Complaint [dkt.1, adv proc], filed by Dinsmore

21 firm on 5/25/23, **nowhere alleges** "misappropriation" of LPG's attorney network, by

22 anyone.

23
24      21.    Third, the attorneys in question had ceased to be employed by

25 LPG, before they were employed by Greyson. By the time the attorneys in question

26 were employed by Greyson, there was no "LPG attorney network".   So there was

27

28 REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.     39

nothing to "missappropriate".

22.    Fourth,  there is zero evidence that Greyson "forced" attorneys to work for Greyson.  The evidence is directly contra:  The attorneys chose to work for Greyson The many declarations of the "local counsel"  attorneys to this Reply, listed on page 1 of Greyson's Reply, who had previously worked for LPG, then had worked for Oakstone, then had done work directly for Phoenix, attest that they weren't willing to continue working directly for Phoenix, because Phoenix was slow pay/no pay, and attest they were only willing to work defending state court lawsuits, **through Greyson**. Those Declarations establish that those attorneys chose to work for Greyson, not that Greyson "forced" those attorneys to work for Greyson.  Greyson had no power to "force" attorneys to work for Greyson.  (Jayde Trinh Decl hereto)

23.    Ty Carss, managing attorney of Phoenix, testified, at the 6/12/23 hearing, that because of the slow pay problem Phoenix had, those attorneys were unwilling to continue working directly for Phoenix, and would only work through Greyson:

> "A  Well, again, the payment processing through Phoenix was so slow that a lot of these attorneys ["Local Counsel" attorneys appearing in state court suits for Phoenix] were wondering how they were going to get paid.  And then they—many of them, as I noticed, their e-mails all started changing from LPG e-mails to Greyson e-mails.  **And many of them told me that they would not take assignments unless it was through Greyson**." [6/12/23 hearing transcript, p.201, lines 7-8; bold/underline added for emphasis]

REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                    40

24.    The evidence is uncontroverted that those attorneys were no longer employed by LPG, **before** Greyson hired them.  (Jayde Trinh Decl to this Reply).  But even if those attorneys had left LPG, to be employed by Greyson, they would have been entitled to do that. Attorneys aren't serfs or slaves, they have a right to move from one law firm to another, as they see fit.  OPP does not point to any authority that the attorneys in question were not allowed to work for Greyson.  There is no such authority

25.    Desperate to find some argument to justify keeping dkt.13/dkt.70 in place against Greyson, OPP (p.13-19) makes a second, brand new, false argument (in addition to the new, false "Greyson misappropriated LPG attorney network" argument discussed immediately infra..  That second, new, false argument is **not** alleged in Trustee's Complaint [dkt.1, adv proc] and is **not** alleged in Trustee's Motion [dkt.4, adv proc] for the Order granted as dkt. 13 on 5/26/23, in the ex parte hearing.  That second false,  brand new argument,  is OPP alleging that Greyson is the alter ego of Diab.  OPP has no evidence to support that new argument, which is contrary to all the evidence, including contrary to Scott Eadie Decls filed 4/18/24, Han Trinh Decl filed 4/18/24, Jayde Trinh Decl to this Reply,  Daniel March Esq. Decl to this Reply

26.    The repeated OPP ( OPP pp.10, 13-15, and 18-19) argument, of

alleging that Diab, Han and Jayde did things which only Diab did, is a good example

of the old adage: "Saying it don't make it true".  This OPP argument has no

evidence to prove it, and is contrary to all the evidence [Han Trinh Decl, Diab Decl,

Daniel March Decl]

27.    OPP is blatantly false, where OPP (p11, lines 6-15)

Misattributes Something <u>Celentino said</u> at the   6/12/23 hearing, as being

something Greyson's then-attorney <u>Plazak said</u>, where OPP states:

> "At the June 12, 2023 hearing, Greyson further admitted Greyson was entirely
> funded with LPG assets and post-petition ACH pulls on LPG client accounts as
> the Trustee's evidence had previously shown and as more thoroughly briefed in
> the Trustee's portion of the parties Joint Statement [1046 Dkt No 325 at 5:16-
> 7:7]. See 1046 Dkt. No. 76 at 73:18-74:1 ["<u>So in the past few weeks, the
> direction was given to pull the LPG client money, and then the direction was
> given for that money to go to PrimeLogix or Maverick. And that money was
> used at those locations to either compensate personnel at Greyson. . . and/or a
> series of other purposes that were detailed to the to the Court.</u>"]."

28.    But this quote—which Trustee was so pleased with that he

emphasized it with underlining—is NOT anything Greyson's then counsel Plazak

said, at the 6/12/23 hearing.  This quote is something that **Trustee counsel**

**Celentino said at the 6/12/23 hearing.  It is NOT something Plazak said.**  The

foregoing quote is not even at p.73:18-74:1 of the transcript, as cited.  It is at

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**                    42

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

p.33:10-16.  The page of the 6/12/23 transcript, p.33:10-16, where Celentino said the

above, is attached as **Exhibit A** to March Decl to this Reply.

      29.     What is actually said, at p.73:18-74:1 of the 6/12/23 transcipt, is

just a statement by Greyson's counsel Mr. Plazak, that Greyson used an ACH

mechanism to pay attorneys and staff.  The  p.73:18-74:1 page of the 6/12/23

transcript, where Plazak was speaking, is attached as **Exhibit B** to March Decl to

this Reply.

      30.     Misattributing the foregoing quote of something Celentino said, as

having been said by Plazak, **is a brazen lie**.  Dinsmore firm should be able to read

the 6/12/23 transcript, and state accurately who was speaking about what, on a page

of the transcript which OPP quotes.  OPP doesn't get this wrong by mistake, its

wrong on purpose.

      31.     Greyson briefed,  in Greyson' supplemental brief filed 4/2/24, that

an Order with the "scorched earth" terms of dkt.13/dkt17 could never have been

granted based on the very vague fraudulent transfer allegations against Greyson,

which were the only allegations left in Trustee's adversary proceeding complaint

against Greyson, once the alter-ego allegations were removed . **OPP does not deny**

**this**.  OPP does not deny that no reported case grants a Lockout and Preliminary

Injunction Order, of anything like the "scorched earth" scope of the dkt.13/dkt.70

Orders, based on a complaint that only makes fraudulent transfer allegations.

**REPLY** OF *GREYSON LAW CENTER PC*, **TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S**
**MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY**
**INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S**
**MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.**
**PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,**
**4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.**     **43**

32.      OPP is error in alleging this Court did not rely on false alter ego allegation, in granting dkt.13, or in granting the follow on Order, dkt.70.  This Court did not state, in the 6/12/23 hearing, that this Court did **not** rely on the –false as to Greyson--alter ego allegations, in granting dkt.13.

33.      Without dkt.13, there could be no dkt.70 Order continuing dkt.13 in effect. But for the fact that Dinsmore firm's dkt.4 Motion made the false as to Greyson, allegation that Greyson was one of LPG's alter egos, this Court could not have granted the dkt.13 Order as to Greyson. If the dkt.13 Lockout and Preliminary Injunction Order had not been granted as to Greyson, there would have been nothing for dkt.70, the "continuation" order, to continue in effect, as to Greyson.

34.      OPP is contrary to express language of FRCP rule 60(b)(3), which is applied to adversary proceedings by FRBP Rule 9024.  It is uncontrovertable that the central allegation of Trustee's dkt.4 Motion (on which the Dkt.13 Lockout Order and Preliminary Injunction were granted) was the Motion's **misrepresenting**, that Greyson was one of the alter egos of LPG. **That was a huge  misrepresentation as regards Greyson,** because Greyson was a competitor of LPG, NOT an alter ego of LPG, as Han Decl, Eadie Decls attest.  That misrepresentation requires vacating dkt13, as to Greyson, and without dkt.13, there is nothing to be continued in effect against Greyson, by the dkt.70 continuation order, which must also be vacated.

35.      Greyson's briefing [dkt.474], filed 4/2/24, briefs the law that an order granted based on false information must properly be vacated.  OPP has no law

**REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS. PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS, 4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          44**

1
2
3
4
5

contra.  That the dkt. 4 Motion **misrepresented**, in alleging Greyson was the alter

ego of LPG,  is proven by Trustee's lead attorney Celentino admitting, on the record,

at the 6/12/23 court hearing, that Greyson was NOT an alter ego of LPG.  [6/12/23

court hearing transcript, p p.33:22-p.34:1].

6
7
8
9
10
11
12
13
14
15
16
17
18
19

36.        Note also that it was impossible for Greyson to have

consented to, stipulated to, or "concurred" that the Court should grant the dkt.13

[5/26/23 *Lockout and Preliminary Injunction*] Order, against Greyson, because

Trustee's Motion [dkt.4 in adv. Proc.] moving for the dkt.13 Order, was filed sealed,

and the Court granted dkt.13 at an *ex parte* hearing held 5/25/23, where only Trustee

attorneys, U.S. Trustee attorney, and Debt Validation Fund attorney were present,

and where neither Greyson nor any other "target" were present, or were even aware

was being held, as no "target" was served with the dkt.4 motion, before the hearing

was held, or given notice of that hearing, before the hearing was held.  The pacer adv

proc docket shows all these things.

20
21
22
23
24
25
26
27

37.        11 Months after dkt.13 and dkt70 were issued against Greyson,

there is no evidence, or law, that would justify keeping those Orders in effect as to

Greyson.  The Dkt.13 Lockout and Preliminary Injunction Order, (and the dkt.70

continuation order) were supposedly to keep LPG money, which had been

transferred by LPG to LPG alter egos, from moving.  But Greyson was **not** an alter

ego, and all the evidence, after 11 months, is that LPG **never** transferred any LPG

28

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.                    45

money to Greyson, as Declarations of Scott Eadie decls, Han Trinh Tony Diab, and

Daniel March Esq (attached to this Reply) attest.

38.    Trustee has had 11 months to produce evidence that LPG

transferred any LPG money to Greyson, and has produced no such evidence.

Greyson had negative $1.70 in its bank account as of May 2024, shown by Bank

Statement that is  **Exhibit A** to Han Trinh Decl this REPLY.

39.    Similarly, after 11 months of dkt.13/dkt70 being in effect, Trustee

has produced zero evidence that LPG transferred any client files to Greyson.  All the

evidence (Scott Eadie decls, Han Trinh decl, Tony Diab decl, Daniel March decl) is

that LPG did **not** transfer any LPG client files to Greyson.  Even the testimony of

Trustee's witness Bradford Lee, given by Lee in deposition, is that LPG did NOT

transfer any LPG client files to Greyson.  [Transcript of Lee deposition taken 3/2/24,

p.157:23-258:1; see also p54:17-55:9].

40.    The dkt.13 Order did NOT authorize trustee to seize the 4

categories of items that Greyson moves to have Trustee return to Greyson.  As

briefed in **I**, supra, since the dkt.13 Order did **not** authorize Trustee/Dinsmore firm

to seize the 4 categories of items listed in I. supra,  Dinsmore firm **illegally** seized

those 4 categories of items, at Greyson, on 6/2/23.

41.    Further, the dkt.13 order **nowhere** authorizes trustee to search

through Greyson's data, or to use Greyson's data for Trustee's own purposes.

REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.    46

Despite there being nothing in dkt.13 (or in dkt.70) authorizing Dinsmore firm to

search through, and use for Trustee's own purposes, Greyson's seized documents

and data, Dinsmore firm has spent the last 11 months searching through Greyson's

data, and using it for Trustee's own purposes.  Trustee admits this illegal searching

and use of Greyson's data, including in Trustee's Evidentiary Objection to Tony

Diab Decl [Evidentiary Objection is dkt.493-5 filed 4/18/24, stated, in objecting to

¶8 of Diab Declaration, that Diab's Declaration:

> "….is contradicted by numerous statements taken from documents **such as
> those taken from Greyson Law Center** and LPG **email servers** ."

42.    But despite having searched Greyson's illegally seized 4 categories of items

for 11 months, Trustee has been **unable to produce any evidence** that LPG transferred any LPG

money, or any LPG client files, to Greyson, because those things didn't happen.  That is why there

is no such evidence attached to OPP, and why OPP instead consists of FALSE arguments, contrary

to the evidence and contrary to law.

43.    For all these reasons, after 11 months, there is **no** factual or legal justification

for continuing dkt.13/dkt70 in **effect**, as to Greyson.

44.    Trying to cover up Trustee's lack of evidence, and lack of law, to

support Trustee's position, OPP makes a plethora of inflammatory, but false

arguments, made without citing any evidence, and which are contrary to Greyson's

evidence.  Greyson's REPLY (at II., I., pp 19-24)  goes through some of OPP's

inflammatory, false, contrary to the evidence allegations.  Those false/contrary to the

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.            47

1    evidence allegations should be disregarded by this Court, for failing to cite

2    evidence, citing things (like Trustee's briefing/Motion) which are not evidence, and

3

4    ignoring the uncontroaverted evidence contra, that Greyson has supplied.

5        45.    Greyson's Motion is meritorious and should be granted, both to

6    order return of the 4 categories of items seized by Dinsmore firm in the 6/2/23

7

8    lockout at Greyson (OPP says NOTHING about that half of Greyson's Motion,

9    which is therefore unopposed), and to vacate dkt.13/the continuation order, dkt.70,

10   as to Greyson.

11

12       46.    OPP's allegations seeking sanctions against attorney Kathleen

13   March/The Bankruptcy Law Firm, PC, is contrary to law, as briefed in this Reply.  So

14

15   is seeking sanctions against Han Trinh (not even the movant here, as Greyson is the

16   movant).  Dinsmore failed to comply with the safe harbor of FRBP Rule

17   9011(c)(1)(A), because Dinsmore firm failed to serve my firm with a Rule 9011

18

19   letter, regarding ANY of Greyson's pleadings here in issue, so Dinsmore firm cannot

20   seek Rule 9011 sanctions, which cannot be awarded on a meritorious motion, in any

21   event.

22

23       47.    What is frivolous here are the arguments made in OPP, not the

24   arguments made in Greyson's pleadings here in issue.  In fact, OPP's arguments are

25   worse than frivolous, because many of OPP's arguments are knowingly false, as

26   briefed in Greyson's Reply hereto.  If any conduct is sanctionable, its Dinsmore

27

28

**REPLY** OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S OPPOSITION TO GREYSON'S
MOTION [DKT.290 IN A.P./DKT.749 IN MAIN CASE] TO VACATE DK.13 LOCKOUT & PRELIMINARY
INJUNCTION ORDER, AND FOR RETURN TP GREYSON SEIZED ITEMS ITEMIZED IN GREYSON'S
MOTION, BECAUSE DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF THOSE ITEMS; DECLS.
PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL ATTYS,
4 FORMER LPG STAFF, REED PRUYN & KATHLEEN MARCH, ESQ.          48

1  firm's conduct, not conduct of Greyson/its counsel, for all reasons recapped in

2  Greyson's Reply.

3
4      I declare under penalty of perjury that the foregoing is true and correct and that

5  this Declaration is executed at Los Angeles, California on April 24, 2024.

6              _____/s/ Kathleen P. March_____

7
8              KATHLEEN P. MARCH

# EXHIBIT A

```
1                  UNITED STATES BANKRUPTCY COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3                            --oOo--

4   In Re:                       ) Case No. 8:23-bk-10571-SC
                                  )
5   THE LITIGATION PRACTICE GROUP ) Chapter 11
    P.C.,                         )
6                                 ) Santa Ana, California
              Debtor.            ) Monday, June 12, 2023
7   _____) 1:30 p.m.
                                  )
8   MARSHACK,                     ) Adv. No. 8:23-ap-01046-SC
                                  )
9         Plaintiff,             )
                                  )
10       vs.                     )
                                  )
11  DIAB, ET AL.,                )
                                  )
12        Defendants.            )
    _____)
13

14                          HEARING RE: PRELIMINARY
                            INJUNCTION
15
                            STATUS CONFERENCE HEARING RE:
16                          (1) CASE MANAGEMENT CONFERENCE
                            AND (2) REQUIRING STATUS
17                          REPORT

18               TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE SCOTT CLARKSON
19            UNITED STATES BANKRUPTCY JUDGE

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

32

1  like between six and $9 million, some number we have not

2  been able to pinpoint, are the active valid monthly ACH

3  contracts that LPG has with its clients.

4           THE COURT:  So let's make sure that everyone

5  understands, or at least I understand.  The settlement is

6  made with a creditor or a collection agency, and the client

7  says I'll pay $100 a month.  That money is drawn from their

8  bank.  It is paid to the processor.  The processor under

9  instructions sends it to the creditor.

10           MR. CELENTINO:  The processor sends it to the law

11  firm.

12           THE COURT:  The law firm.  And then the law firm

13  is supposed to pay the monthly agreement?

14           MR. CELENTINO:  Correct.  That is as set forth in

15  the declaration of Mr. Schneider that we've submitted to

16  your Honor is how it's supposed to work.

17           THE COURT:  And how has it really been working?

18           MR. CELENTINO:  It appears in the last three weeks

19  to six weeks, it has been working such that the money does

20  not go to the law firm.  That money does not go to Phoenix.

21  The money that we've been able to determine so far goes to

22  Maverick Consulting or to Prime Logix for Maverick and Prime

23  Logix to spend it as they wish.

24           By way of example -- and I can bring a little bit

25  of the Greyson story in now.  By way of example, the Greyson

33

1  law firm which has 48 confirmed clients and there is some

2  dispute as to whether or not those clients ever were in the

3  LPG, Oakstone, Gallant, Phoenix system or not.  Those 48

4  clients with an expected monthly ACH pull of roughly $15,000

5  are clients of a law firm that has a payroll -- according to

6  that law firm's director of human resources, they have a

7  payroll -- assuming the hourly employees only work one hour

8  a year, the payroll is $5.67 million a year or 565,000 a

9  month.

10         So in the last few weeks, the direction was given

11  to pull the LPG client money, and then the direction was

12  given for that money to go to Prime Logix or Maverick.  And

13  that money was used at those locations to either compensate

14  personnel at Greyson and/or personnel at Phoenix and/or a

15  series of other purposes that were detailed to the to the

16  Court.  The point of course being no rational person would

17  run a law firm at a $5-million annual human resources cost

18  with a current revenue of 15,000 a month and continue to

19  have the pulls come from the Chapter 11 Debtors' account on

20  behalf of Chapter 11 Debtor clients.  He wouldn't be

21  operating that law firm legitimately.

22         It does not appear -- and this is one thing I want

23  to credit the folks that are appearing on behalf of Greyson.

24  We are going to want to modify -- the trustee is going to

25  want to amend its complaint.  It does not appear that

# EXHIBIT B

1          UNITED STATES BANKRUPTCY COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3                    --oOo--

4  In Re:                      ) Case No. 8:23-bk-10571-SC
                               )
5  THE LITIGATION PRACTICE GROUP ) Chapter 11
   P.C.,                       )
6                              ) Santa Ana, California
            Debtor.           ) Monday, June 12, 2023
7  _____) 1:30 p.m.
                               )
8  MARSHACK,                   ) Adv. No. 8:23-ap-01046-SC
                               )
9          Plaintiff,          )
                               )
10     vs.                     )
                               )
11  DIAB, ET AL.,              )
                               )
12          Defendants.        )
   _____)
13

14                      HEARING RE: PRELIMINARY
                        INJUNCTION
15
                        STATUS CONFERENCE HEARING RE:
16                      (1) CASE MANAGEMENT CONFERENCE
                        AND (2) REQUIRING STATUS
17                      REPORT

18              TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE SCOTT CLARKSON
19          UNITED STATES BANKRUPTCY JUDGE

20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

73

1          THE COURT:  I mean, I'm reading it from your own

2    papers.

3          MR. PLAZAK:  I understand.

4          THE COURT:  It's not -- you know, I'm not making

5    these stuff up.  I'm reading our own papers.

6          MR. PLAZAK:  I understand.

7          THE COURT:  And I imagine that you only did have

8    72 hours to jump into this.  I appreciate that, but I have

9    read your papers.  So you don't have an answer for what

10   these 140 employees are doing, but we know -- except

11   processing clients files, and I've asked you what is the

12   process for processing -- pardon the iteration -- those

13   files, and you're now saying, they go out and hire attorneys

14   in Indiana and Michigan and Missouri and Iowa.  Is that what

15   they're doing?

16         MR. PLAZAK:  I believe that they're -- they help

17   facilitate getting counsel for those people, and to get --

18         THE COURT:  And how do they get -- how does

19   Greyson get money to pay these 140 people?

20         MR. PLAZAK:  Well, I believe that was the --

21   that's the issue that -- when counsel, Mr. Celentino, was

22   discussing the inability to make payroll, I believed, at

23   least in part, the way they were doing it was to access the

24   ACH mechanism to draw funds to pay, which were used to pay

25   predominantly, I believe, the attorneys and their staff who

74

1  were doing the litigation in other states.

2         THE COURT:  And who makes the processor deliver

3  that money to your accounts?

4         MR. PLAZAK:  I -- who --

5         THE COURT:  The processor --

6         MR. PLAZAK:  Yeah.

7         THE COURT:  -- takes the money from your bank

8  account, processor holds the money, make sure that the money

9  is good and then sends it to your bank account -- your

10 client's bank account to pay its -- to pay your 140 people.

11        MR. PLAZAK:  Sends it to -- I think it would be --

12 he would actually be send to the -- well, I'm not sure.

13 Here's what I don't know.  I don't know if it would go

14 directly to Greyson as opposed to go from the -- from ACH to

15 the attorneys in the other states.  I don't know the answer

16 to that.

17        THE COURT:  But who would direct the processor to

18 -- we know now that Greyson finds the lawyer in Indiana, and

19 then we know that Greyson makes a deal with that attorney in

20 Indiana because your own words, "It's a simple thing."  So

21 now, where do you get the money to pay the attorneys in

22 Indiana?

23        MR. PLAZAK:  I believe that at least previously,

24 it did come through that portal that we were talking about.

25        THE COURT:  Good.  Who tells the portal the name

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10524 W. Pico Blvd., Ste. 212, Los Angeles, CA 90064
A true and correct copy of the foregoing document entitled (*specify*):

**REPLY OF *GREYSON LAW CENTER PC*, TO TRUSTEE MARSHACK'S [DKT.493/DKT.492] OPPOSITION TO GREYSON'S MOTION [DKT.290 IN AP; DKT.749 MAIN CASE] TO: (1) VACATE DKT.13 LOCKOUT/PRELIMINARY INJUNCTION ORDER, AND VACATE THE SUCCESSOR ORDER AS TO GREYSON, AND (2) ORDER TRUSTEE/ DINSMORE FIRM TO RETURN TO GREYSON 4 CATEGORIES OF ITEMS SEIZED IN 6/2/23 LOCKOUT, WHICH DKT.13 ORDER DID <u>NOT</u> AUTHORIZE SEIZURE OF, AND WHICH WERE THEREFORE SEIZED ILLEGALLY; REPLY DECLS. OF DOUGLAS PLAZAK, ESQ., DANIEL MARCH, ESQ., HAN TRINH, JAYDE TRINH, 7 LOCAL COUNSEL, 5 FORMER LPG STAFF & KATHLEEN MARCH**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) ___4/24/24___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See next page

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____,  I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

n/a

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __4/24/24_,  I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Hon. Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/24/24 | Kathleen P. March | /s/ Kathleen P. March |
|---------|-------------------|----------------------|
| *Date*  | *Printed Name*    | *Signature*          |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Keith Barnett**    keith.barnett@troutman.com, kelley.wade@troutman.com
- **Bradford Barnhardt**    bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael T Delaney**    mdelaney@bakerlaw.com, TBreeden@bakerlaw.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Jeremy Freedman**    jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com,
  nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Richard H Golubow**    rgolubow@wghlawyers.com,
  jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Jonathan Serrano**    jonathan.serrano@dinsmore.com
- **Zev Shechtman**    Zev.Shechtman@saul.com,
  zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**    wwall@wall-law.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**