Kathleen P. March, Esq., (CA SBN 80366)
THE BANKRUPTCY LAW FIRM, PC
10524 W. Pico Blvd, Suite 212, LA, CA 90064
Phone: 310-559-9224; Fax: 310-559-9133
Email: kmarch@BKYLAWFIRM.com
*Counsel of Record for Greyson Law Center PC*
*on its dkt.290 in AP, dkt.749 in LPG main case,*
*Motion to vacate dkt.13/dkt.70, and for return of seized items*

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA—SANTA ANA DIV.

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP, P.C.,<br><br>Debtor. | Bankruptcy Case No. 8:23-bk-10571-SC<br>Adversary Proceeding 8:23-ap-01046-SC<br>Chapter 11<br><br>(Proposed) **FINDINGS OF FACT AND CONCLUSIONS OF LAW** OF *GREYSON LAW CENTER PC*, **RELATING TO GREYSON'S MOTION [DKT.290 IN AP; DKT.749 MAIN CASE] TO: (1) VACATE DKT.13 LOCKOUT & PRELIMINARY INJUNCTION ORDER, AND VACATE THE SUCCESSOR ORDER AS TO GREYSON, AND TO (2) ORDER TRUSTEE/ DINSMORE FIRM TO RETURN TO GREYSON 4 CATEGORIES OF ITEMS SEIZED IN 6/2/23 LOCKOUT, WHICH DKT.13 ORDER DID NOT AUTHORIZE SEIZURE OF, AND WHICH WERE THEREFORE SEIZED ILLEGALLY** |
| Trustee Marshack,<br><br>    Plaintiff<br><br>vs.<br><br>Tony Diab, et al.<br><br>    Defendants | |

Hearing on Greyson's [dkt.290 adv.proc./dkt.749 in LPG main case] Motion to vacate dkt.13/dkt.70 preliminary injunction, and for return of illegally seized items, was held on:
Date: May 1, 2024      Time: 1:30 p.m.
Place: Courtroom of Bankruptcy Judge Scott Clarkson, by Zoom or in person at:

---

**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED TO COURT BY GREYSON LAW CENTER PC, MOVANT ON DKT.290 MOTION IN ADVERSARY PROCEEDING, WHICH IS DKT.749 MOTION IN LPG MAIN BANKRUPTCY CASE        1**

411 West Fourth St., Ctrm 5C, Santa Ana, CA 92701-4593

**Please Note:**  Declarations of Phuong Jayde Trinh, Han Trinh and Kathleen P. March are being filed as separately captioned pleading, on same date these proposed FOF/COL are being filed.

Greyson Law Center, PC ("Greyson") files and serves its herein proposed FINDINGS OF FACT AND CONCLUSIONS OF LAW ("FOF/COL"), as directed by the Court at the 5/1/24 hearing on Greyson's Motion [dkt.290 in adv proc, dkt.749 in main LPG case], which Motion moves: (1) for an Order vacating, as to Greyson, the [dkt.13] 5/26/23 Lockout & Preliminary Injunction Order, and [dkt.70] continuation Order; and (2) for an Order ordering Trustee/Dinsmore firm to return to Greyson the 4 categories of items Dinsmore firm seized at 6/2/23 Lockout at Greyson's office, which dkt.13 Order did NOT authorize to be seized, and which therefore were seized illegally.

**In addition to efiling these FOF/COL, Greyson is e-lodging these FOF/COL**.

Plus, pursuant to the Court stating, at the 5/1/24 hearing, that each party could file such additional items as that party desired, at the same time that the party filed the party's proposed FOF/COL, Greyson is filing, as separately captioned pleadings, the following:

(1) Phoung Jayde Trinh Declaration, that Greyson did not use LPG documents, that instead, attorney Jayde drafted, and other Greyson attorneys reviewed, the contracts and other legal documents, the standard operating procedures, and the written protocols which Greyson used;

(2) Han Trinh Declaration that Dinsmore firm attorney Ghio arguing, at 5/1/24 hearing, that Greyson used LPG proprietary documents was false; that Dinsmore firm filed ZERO evidence to prove Ghio's false argument; that Greyson never used LPG proprietary documents or information attorney and that Greyson's contracts, operating procedures  and protocols were written by Greyson attorney Phuong Jayde Trinh.

(3) Kathleen P. March, Esq. Declaration authenticating and attaching relevant portions of 4 officially transcribed transcripts, and discussing relevant case law.

Dated:  May 15, 2024          THE BANKRUPTCY LAW FIRM, PC
                              ___/s/ Kathleen P. March_____
                              By Kathleen P. March, counsel for Greyson on
                              Its Motion heard 5/1/24 and on Greyson's FOF/COL

## GREYSON'S (PROPOSED) FINDINGS OF FACT

**I. FACTS PROVING TRUSTEE/DINSMORE FIRM WAS <u>NOT</u> AUTHORIZED TO SEIZE THE 4 CATEGORIES OF GREYSON ITEMS DINSMORE FIRM SEIZED IN 6/2/23 LOCKOUT, WHICH DINSMORE FIRM SEIZED ILLEGALLY, AND HAS KEPT ILLEGALLY, TO PRESENT**

| FACTS PROVEN BY GREYSON'S MOTION | EVIDENCE PROVING THIS FACT |
|---|---|
| 1. Trustee's special counsel, Dinsmore & Shohl LLP moved for the dkt.13 Lockout & Preliminary Injunction Order against Greyson and other targets, by a Motion filed under seal on 5/25/23, which the Bankruptcy Court heard ex parte, on 5/25/23, without Greyson or any other of the targets of that Motion having been given notice of the hearing and without Greyson and the other targets being present at the 5/25/23 hearing. | 1.    Declaration of Kathleen March Esq [dkt.290-2]to Greyson's Motion [dkt.290, filed 12/6/23], citing pleadings in LPG adversary proceeding pacer dkt showing all these things, including showing that Trustee's dkt.4 Motion for dkt.13 was filed under seal, and was not served on Greyson or on any other target before the 5/25/23 hearing on dkt.4 Motion, and that pacer dkt shows that hearing on 5/25/23 was held ex parte, and Transcript of the 5/25/23 hearing shows hearing was held ex parte, and Court at p59, lines 10-15 of 5/25/23 Transcript [Transcript is dkt.32 in the 8:23-mp-00102-SC miscellaneous docket] states no notice to any target, stating "we cannot wait for the notice, and notice is also going to serve as a…detriment…to the estate in  the case of transferring money immediately, as electronic funds can be operated in a very, very quick manner". |

| | |
|---|---|
| 2. The dkt.13 Lockout & Preliminary Injunction Order was entered on 5/26/23. | 2.      5/26/23 date of entry is stamped on p.1 of dkt.13 Lockout and Preliminary Injunction Order, attached to March Decl [dkt.290-2]to Greyson's herein Motion, |
| 3.  Analysis of the specific sections of the Dkt.13 Order establishes there is **NO language in the dkt.13 Order authorizing Trustee/Dinsmore firm to seize any of the 4 categories of items** that Dinsmore firm/its field agents seized in the 6/12/23 lockout of Greyson from Greyson's office. These specific sections of the Dkt.13 Order will now be discussed, in 4, 5, 6, 7 immediately infra: | 3. Wording of [Dkt.13, entered 5/26/23] Lockout & Preliminary Injunction Order, and the dkt.70 Continuation Order has similar wording |
| 4. "TURNOVER ORDER OF ESTATE PROPERTY AND RECORDED INFORMATION" Portion of Dkt.13, p.1 line 12 to p.5, line 8, **only orders Debtor LPG to turnover items (13 listed items) to Trustee** (p.1, line 26 states these items "shall be turned over to the Trustee by Debtor"), and does **not** order Greyson to do anything, or to turn anything over to trustee, and does **not** grant Trustee/his attorneys power to do anything to, or regarding, Greyson. | 4. Wording of [Dkt.13, entered 5/26/23] Lockout & Preliminary Injunction Order, and the dkt.70 Continuation Order has similar wording |
| 5. "ESTATE FUNDS" portion of Dkt.13, p.5, lines 9-24,  **only orders** | 5.  Wording of [Dkt.13, entered 5/26/23] Lockout & Preliminary Injunction Order, |

| | |
|---|---|
| **Debtor LPG to turn over ACH payments, plus $6,308,702 of ACH funds, to Trustee** (p.5, line 11 states these funds "shall be turned over to the Trustee by Debtor"), and does **not** order Greyson to do anything, or to turn anything over to trustee, and does **not** grant Trustee/his attorneys power to do anything to, or regarding, Greyson. | and the dkt.70 Continuation Order has similar wording |
| 6. "TEMPORARY RESTRAINING ORDER" portin of Dt.13, p.5, line 25 through p.8, line 6, **enjoin various persons and entities, including Greyson, from interfering with any ACH Electronic funds transfers**, and Dkt.13, p.7, line 4 through p.8, line 6 **prohibit withdrawing or transferring funds received from ACH transfers.**<br><br>   However, these paragraphs of dkt.13 have no application to Greyson, because Greyson did not have a working ACH system as of 6/2/23 lockout, and mandates (p.7, lines 14-22) holding in trust, funds relating to any ACH accts of current or former LPG, Oakstone, Greyson, Phoenix, LGS, etc entities, and prohibits incurring, taking out or pledging any receiveables of LPG, Oakstone, Greyson, etc. | 6. Wording of [Dkt.13, entered 5/26/23] Lockout & Preliminary Injunction Order, and the dkt.70 Continuation Order has the similar wording.<br>Evidence that these pages of Dkt.13 have no application to Greyson: Trustee's witness Bradford Lee, admitted in his 2/2/24 deposition, taken by Greyson attorney K.March, that though Lee was hired by Greyson to set up an ACH system for Greyson, that Greyson did NOT have a working ACH system as of 6/2/23 (date of Lockout of Greyson by Trustee attorneys Dinsmore firm). [Lee deposition transcript, p.40:12-42:18] Bradford Lee testified that Greyson had not made a single ACH pull as of 6/2/23. [Lee deposition transcript, p.40:12-41:5]. |

| | |
|---|---|
| None of these provisions apply to Greyson, because Greyson did NOT have a working ACH system as of the date of the 6/2/23 lockout.<br><br>Plus Dkt.13, at p.7 lines 14-28 orders turnover of all funds related to any current or former client of LPG, Oakstone, Greyson, etc.  But the dkt.70 continuation order exempted Greyson's 48 client files, which had contracted with Greyson to represent them.<br><br>Plus Dkt.13, at p.8, lines 1-6 requires holding in trust and not withdrawing funds in specified Bank of America accounts ofPrime Logic and/or Vulcan, which does not apply to Greyson because those are not Greyson bank accounts. | |
| 7.  "LOCKOUT ORDER" portion of Dkt.13, p.8, line 7  through p.9, line 11, states persons named in the LOCKOUT ORDER  part of Dkt.13-- which includes Scott Eadie, Han Trinh and Jayde Trinh-- are **"<u>enjoined and shall not access items listed in a) through g)</u>"**.  Items **a)** through **g)** are listed at p.8, lines 14-24 of Dkt.13, as follows:<br><br> **a)** 3343 Michelson Drive, Suite 400,  Irvine, California 92612;<br><br> **b)** 17542 17th St Suite 100, Tustin. California 92780; | 7. Quoted verbatim from "LOCKOUT ORDER"  portion of Dkt.13 (p. 8, lines 9 through 24).<br><br>Note that items c), e) and f) did not apply to Scott Eadie, Han Trinh, or Jayde Trinh, because Greyson did not, as of 6/2/23 lockout,  have "c) DPP Data or accounts"; did not have "e) ACH processing accounts", and did not have, or have access to "f) Vulcan or Primelogix' accts at Bank of America".<br><br>As regards item "d) accounting data and/or accounts on Netsuite, Quickbooks and Microsoft SharePoint, G-Suite or other permanent or cloud based systems", Han |

**b)** Luna's domain located on AWS [yes, there are two b)s]

**c)** DPP Data or accounts;

**d)** Accounting Data and/or accounts on NetSuite, Quickbooks and Microsoft SharePoint, G-Suite or other permanent or cloud based systems;

**e)** ACH processing accounts, whether individual, merchant or business, held at any ACH processing or affiliated financial institution, including but not limited to EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; FIS; Guardian; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875"· or any such substantially similar ACH identification transaction;

**f)** Vulcan and/or Prime Logix' financial accounts at Bank of America, including but not limited to Account Nos. ending in xxx951 and xxx9021; and

**g)** the Email Data.
After g) is the list of the names of the 13 people (including Scott Eadie, Jayde Trinh, and Han Trinh, who are **enjoined from doing a) - g)**]."

Trinh's Decl. attested [dkt.325-2, filed 1/8/24, at ¶7], and Bradford Lee testified in his 2/2/24 deposition [p.59:11-60:4 of transcript], that Microsoft SharePoint is only a tiny part of Greyson's whole Microsoft [M365 suite] account, where Greyson posted instructions for staff. Han Trinh's Declaration, ¶10 [dkt. 325-2] to Greyson's part Joint Statement filed 1/8/24 attests that Dinsmore lead attorney Celentino (falsely) told Han, on 6/2/23, that the Dkt.13 Lockout & Preliminary Injunction Order required Han to instruct Greyson's IT director, Justin Nguyen, to give Celentino firm attorney Serrano the access codes to Greyson's whole Microsoft [M365 suite] account; which is why Han instructed Nguyen to give Greyson's Microsoft passcodes to Serrano, who immediately used Greyson's codes to get into Greyson's Microsoft [M365 suite] account, and then immediately locked Greyson out of Greyson's whole Microsoft [M365 suite] account, by changing those codes, and that Greyson has continued to be locked out of Greyson's whole Microsoft [M365 suite] account, including the backup portion of that account, to present.[¶3 of Han Trinh's 11/17/23 Decl. which is Exhibit 1 to Han's 290-1 Declaration]. Lockout & Preliminary Injunction Order; Dkt.70 Continuation Order has the similar wording.

| | |
|---|---|
| 8.  The only additional provisions in Dkt.13 are: "ORDER TO RE-DIRECT MAIL", p.9, lines 12-21, which states Trustee is authorized to instruct the US Postal Service to redirect mail from certain locations, to Trustee, which does not order anyone except Trustee and US Postal Service to do anything; and "ORDER TO SHOW CAUSE RE WHY A PRLIMINARY INJUNCTION SHOULD NOT ISSUE AND LIMITED EXAMINATION", p.9, line 22 to p.10, line 14, which does NOT list Scott Eadie, Han Trinh or Jayde Trinh; and "NOTICE TO LPG CLIENTS", p.10 lines 15-20, which states Trustee is authorized to provide notice to any and all LPG clients. | 8. Dkt.13, as stated; Dkt.70 Continuation Order has the similar wording |
| 9.  Nothing in this "LOCKOUT ORDER" portion of dkt.13 (p.8, line 7 through p.9, line 11), and nothing elsewhere in Dkt.13 authorizes Trustee/Trustee's attorneys/field agents to **seize** the items listed in **a)** though **g)**, or to **search** through those items **a)** through **g)**, or to **use** anything listed in items **a)** through **g)** for Trustee's own purposes. | 9.  There is NO language in the LOCKOUT ORDER portion of dkt.13 (p.8, line 7 through p.9, line 11), or anywhere else in Dkt.13, authorizing Trustee/Dinsmore firm to seize, search, or use for Trustee's own purposes, any of the items listed in a) through g).<br><br>None of Dinsmore firm's Oppositions opposing Greyson's Dkt.290 Motion point to any language anywhere in Dkt.13 or in Dkt.70 continuation order, that authorized |

| | |
|---|---|
| | Trustee/Dinsmore firm to seize, search of use for Dinsmore firm's own purposes, any of the items listed in a) through g), p.8, lines 7-24, of Dkt.13 [No such language pointed out in Dinsmore firms portion of dkt.325 Joint Statement filed 1/8/24; no such language pointed out in Dinsmore firm Opposition filed 4/17/24 [dkt.492], and refiled with additions on 4/18/24 [dkt.493]. |
| 10.  Trustee/his special counsel Dinsmore Firm/Dinsmore's field agents, **acted illegally, when they seized, searched through, and used for Trustee's purposes, Greyson items**, including using the 18 Greyson emails which are attached to Declarations of Alex Rubin[dkt.325-4] and Jeremy Freedman [dkt.325-8, each filed 1/8/24 as part of Joint Statement], and using emails from Greyson's 100+ seized email accounts, and using documents from Greyson's seized Microsoft [M365 suite] account, as exhibits to Bradford Lee's 1/8/24 and 1/15/24 Declarations filed by Dinsmore Firm, because Dkt.13/dkt.70 did NOT authorize Dinsmore firm/its field agents, to **seize, search through, or use for Trustee's purposes, any of the a) – g) items.** | 10.  Dkt.13/Dkt70 have no language authorizing these actions by Dinsmore firm/its field agents, which therefore were **illegal** actions by Dinsmore firm/its field agents.  Illegally seized items are attached to Alex Rubin Decl [dkt.325-4 filed 1/8/24 by Dinsmore firm]; are attached to Jeremy Freedman Decl, dkt.325-8 filed 1/8/24] filed by Dinsmore firm; are attached to Bradford Lee 1/8/24 Decl [dkt.325-5] filed by Dinsmore firm; and are attached to Bradford Lee 1/15/24 Decl [dkt.331-1] filed by Dinsmore firm.  Each of the 4 Declarations attach Greyson emails, which Dinsmore firm seized, searched and used **illegally**, because Dkt.13/Dkt.70 did not authorize them to do any of those things.  Rubin's Declaration admits the Greyson documents he attaches were taken from Greyson's seized emails.<br><br>    Both Bradford Lee's 1/8/24 and 1/15/24 Declarations attached Greyson emails, and documents from Greyson's Microsoft [M365 suite] account, which Dinsmore firm |

| | seized, searched and used illegally, because Dkt.13/Dkt.70 did not authorize them to do any seize, search, or use Greyson emails, or Greyson's Microsoft account, or the documents in it, and did NOT authorize Dinsmore firm to lock Greyson out of Greyson's Mircrosoft [M365 suite] account. |
|---|---|
| 11.  Trustee's attorneys/field agents **seizing, searching through, and using Greyson's emails, Microsoft [M365 suite] account, internet domain/website, and computers, for Trustee's purposes**, constitutes **unclean hands** by Trustee, violating the dkt.13 Order, because the dkt.13 Order did **not** authorize Trustee's attorneys/field agents to seize, search or use for Trustee's purposes, Greyson emails (category g), or any of the other categories of items listed in a) – g) of Dkt.13, titled "LOCKOUT ORDER' at p.8, line 7-24 . | 11.  Trustee's attorneys/field agents seizing, searching, and using for Trustee's purposes, constituted **unclean hands** by Trustee, violating the dkt.13 Order, because the dkt.13 Order/dkt.70 Order did not authorize Trustee's attorneys/field agents **to seize, to search through,  or to use, for Trustee's purposes**, Greyson emails, Greyson's Microsoft [M365 suite] account, Greyson's internet domain/website, or any other items or Greyson documents. |
| 12. The dkt.13 Order did **NOT authorize Dinsmore firm, to seize, or to lock Greyson out of, Greyson's whole Microsoft [M365 suite] account**, which Han Trinh had been paying Microsoft over $2,000 per month for, from Han Trinh's own money, as proven by Han's credit card bill (not reimbursed by anyone). | 12. Dkt.13 Order; Dkt.70 Order has no language authorzing Dinsmore firm/its field agents to **seize, or to lock Greyson out of, Greyson's whole Microsoft [M365 suite] account**; Han Trinh's Declaration [dkt.325-2] to Joint Statement filed 1/8/24 that Dinsmore lead attorney Celentino falsely told Han that the Dkt.13 Order required Han to have Greyson turn over Greyson's codes to Greyson's Microsoft |

| | |
|---|---|
| | [M365 suite] account.  Han instructed Greyson IT director Justin Nguyen to turn Greyson's codes to Greyson's Microsoft [M365 suite] account over to Dinsmore attorney Serrano.  Justin Nuyen Decl [dkt.325-1] to Joint Statement attests Nguyen followed Han's direction, turning Greyson's access codes to greyson's Microsoft [M365 suite] over to attorney Serrano,  who immediately accessed Greyson's Microsoft [M365 suite] account using Greyson's access codes, and immediately changed the codes, locking Greyson out of Greyson's Microsoft [M365 suite] account, including locking Greyson out of Greyson's One Drive backup/storage to Greyson's Microsoft account. Dinsmore firm has kept Greyson locked out of Greyson's Microsoft [M365 suite] account, to present.  None of Trustee's Oppositions to Greyson's dkt.290/dkt.749 Motion identified any text in the Court's dkt.13 Lockout & Preliminary Inj. Order, or in dkt.70 follow-on Order, authorizing Dinsmore firm to seize, or to lock Greyson out of, Greyson's Microsoft [M365 suite] account. |
| 13.  The dkt.13 Order did **NOT authorize Dinsmore firm to seize, or to lock Greyson out of, Greyson's <u>internet domain/website</u>**, which Greyson's | 13. Dkt.13 Order; Dkt.70 Order have no language authorzing Dinsmore firm to seize, or to lock Greyson out of, Greyson's internet domain/website; but Dinsmore firm did both; Nguyen's Declaration [dkt.325-1], filed as part of Joint Statement on 1/8/24. |

| | |
|---|---|
| IT director, Justin Nguyen, had paid for with his own funds. | None of Trustee's Oppositions to Greyson's dkt.290/dkt.749 Motion identified any text in the Court's dkt.13 Lockout & Preliminary Inj. Order, or in dkt.70 follow-on Order, which authorizes Dinsmore firm to seize, or to lock Greyson out of, Greyson's internet domain/website. There is no such text in the Dkt.13 Order. |
| 14. The dkt.13 Order [p.8, line 24 to p.9, line 11] enjoins a list of people, which includes Han Trinh, Jayde Trinh and Scott Eadie from accessing their Greyson emails.<br><br>However, that **provision does NOT authorize the Dinsmore firm to seize, to read, or to use Greyson's 100 + email accounts or emails from those accounts, for Dinsmore firm's own purposes**.<br><br>It was unauthorized, and therefore **illegal** for Dinsmore firm to seize, read and use Greyson's 100+ email accounts, which Dinsmore firm has done, because 18 of Greyson's emails (which Han, Jayde and Scott Eadie have been locked out of by Celentino, from 6/2/23 to present), are attached as Exhibits to the Declaration of Alex Rubin [dkt.325-4] (then working as a field agent for Dinsmore firm) that is one of Dinsmore firm's declarations to the Joint Statement [dkt.325] filed | 14. Dkt.13 Order; Dkt.70 Orders have no language **authorizing Dinsmore firm to seize, to read, or to use Greyson's 100 + email accounts or emails from those accounts, for Dinsmore firm's own purposes**.<br><br>None of Trustee's Oppositions to Greyson's dkt.290/dkt.749 Motion identified any text in the Court's dkt.13 Lockout & Preliminary Inj. Order, or in dkt.70 follow-on Order, which authorizes Dinsmore firm to seize, read, and use Greyson's 100+ email accounts, which Dinsmore firm has done, because 18 of Greyson's emails (which Han, Jayde and Scott Eadie have been locked out of by Celentino, from 6/2/23 to present), are attached as Exhibits to the Declaration of Alex Rubin [dkt.325-4] (then working as a field agent for Celentino firm) that is one of Celentino firm's declarations to the Joint Statement [dkt.325] filed 1/8/24.  There is no such text in the Dkt.13 Order. |

1/8/24. Dinsmore firm's part of the Joint Statement does not point to any language in the 5/26/23 Order, or 6/23/23, which authorized Celentino firm to seize, read, use or lock Greyson out of all 100+ Greyson email accounts.

Enjoining Scott Eadie, Han Trinh and Jayde Trinh of Greyson from accessing their Greyson emails, does **NOT** authorize Dinsmore firm to seize all 100+ Greyson email accounts, does **NOT** authorize Dinsmore firm to read emails in Greyson's 100+ email accounts, and does **NOT** authorize Dinsmore firm to use Greyson emails for Trustee's own purposes, such as attaching18 Greyson emails to Rubin's Declaration [dkt.325-4] and to Dinsmore attorneys Freedman's Declaration [dkt.325-8]. That was illegal accessing of, and use of Greyson emails.

| | |
|---|---|
| 15. The dkt.13 Order did not anywhere authorize Trustee/ Dinsmore firm to seize approximately **50 Greyson computers (including 24 beelinks)** which Dinsmore firm/its field agents seized at Greyson's office, in 6/2/23 lockout. | 15. Dkt.13/Dkt.70 have no language authorizing Trustee/Dinsmore firm to seize the 50 computers (including 24 Beelinks) that Dinsmore firm seized at Greyson's office in 6/2/23 lockout, and have refused to return to Greyson, to present. The seizure of the 50 computers (including 24 beelinks) was **illegal, because Dkt.13/Dkt.70 did not** |

Justin Nguyen's Declaration attests he paid for the 24 beelinks with his own personal credit card, unreimbursed by anyone, and attaches delivery documents showing Nguyen ordered those 24 beelinks.

All 50 of those seized computers/beelinks mut be ordered returned to Greyson because they were seized illegally, because nothing in Dkt.13 authorizes seizing computers from Greyson's office.

**authorize seizing those computers/beelinks**.

Dinsmore firm's refusal to return those 50 seized computers (including 24 beelinks) to Greyson, for 11 months, is **continuing illegal** conduct (tort of conversion) by Dinsmore firm/its field agents.

The Declaration [dkt.325-1] of Greyson's IT director, Justin Nguyen attests he paid for the 24 beelinks with his own personal credit card, unreimbursed by anyone, and attaches delivery documents showing Nguyen ordered those 24 beelinks.

None of Trustee's Oppositions to Greyson's dkt.290/dkt.749 Motion identified any text in the Court's dkt.13 Lockout & Preliminary Inj. Order, or in dkt.70 follow-on Order, which authorizes Dinsmore firm to seize the 50 computers (including 24 beelinks) that Dinsmore firm/its field agents seized at Greyson's office on 6/2/23.

Over 11 months after Dinsmore firm/its field agents seized 50 Greyson computers (including 24 beelinks) in the lockout at Greyson's office on 6/2/23, Trustee/Dinsmore firm have failed to supply any evidence that the seized computers were owned by LPG, or had been paid for by LPG money, or that LPG had reimbursed Greyson for buying those Greyson computers, so Trustee/Dinsmore firm have no grounds for failing to return the seized computers (including beelinks) to Greyson.

| | |
|---|---|
| 16. Because the Dkt.13/Dkt.70 Orders did not authorize Trustee's attorneys, the Dinsmore firm, to seize any of the 4 categories of items, itemized in ¶12, ¶13, ¶14 and ¶ 15, immediately supra, Dinsmore firm seized those 4 categories of items **illegally**. | 16. Dinsmore firm's OPPs have not alleged to have anything other than Dkt.13 to authorize Dinsmore firm's actions in 6/2/23 Lockout of Greyson at Greyson's office. <br><br> Neither dkt.13, nor the dkt.70 follow on Order, authorize Dinsmore firm to seize the 4 categories of items, itemized at ¶¶14-17 immediately supra, which Dinsmore firm seized on 6/2/23, which **unauthorized seizures were illegal (i.e., are conversion, a tort).** Dinsmore firm refusing to  return the 4 categories of illegally seized items to Greyson, despite request for return of those, for 11 months, is **continuing illegal conduct** by Dinsmore firm. |
| 17. In addition, because Dkt.13/Dkt.70 did **not authorize Dinsmore firm to seize, to search through, or to use for Trustee's own purposes**, emails from Greyson's 100+ email accounts which Dinsmore firm seized, it was **illegal for Dinsmore firm/its field agents to do those things**. All Greyson emails and documents, which Dinsmore firm has offered in evidence,  must be stricken for unauthorized use by Dinsmore firm, of those Greyson materials.  That includes that the Greyson documents which Dinsmore firm attached to Bradford Lee's 1/8/24 and 1/15/24 | 17. Dkt.13/Dkt.70 do not have any language authorizing **Dinsmore firm to seize, to search through, or to use for Trustee's own purposes**, emails from Greyson's 100+ email accounts which Dinsmore firm seized, which dkt.13/dkt.70 did NOT authorize Dinsmore firm to seize. Enjoining Scott Eadie, Han Trinh, Jayde Trinh from accessing their Greyson emails, **does NOT constitute authorization for Dinsmore firm** to seize those email accounts, or to read all the emails in those email accounts, or to attach Greyson emails or Microsoft documents, they found, to Declarations Dinsmore firm filed. |

Declarations, must be stricken for Dinsmore firm's unauthorized use of Greyson Microsoft data and emails. And all the Greyson emails and documents attached as exhibits to Alex Rubin Declaration [dkt.325-4] and Jeremy Freedman Declaration [dkt.325-8] each filed 1/8/24, must be stricken.

## II. FACTS PROVING DKT.13/DKT.70 CONTINUATION ORDER SHOULD BE VACATED, AS TO GREYSON

| FACTS PROVEN BY GREYSON'S MOTION | EVIDENCE PROVING EACH FACT |
|---|---|
| 18. Trustee's adversary proceeding Complaint [dkt.1 in adv proc 8:23-ap-01046-SC], filed by Dinsmore firm on 5/25/23, alleges over 20 times that illegal things were done by **the alter egos of debtor LPG, and alleges Greyson is an alter ego of LPG.** | 18. Dkt.1, Trustee's adversary proceeding Complaint, in adv proc 8:23-ap-01046-SC, filed under seal on 5/25/23. |
| 19.  Trustee's adversary proceeding Complaint [dkt1, adv proc] filed by Dinsmore firm on 5/25/23, commits a **huge misrepresentation of fact and law,** as to Greyson,  by erroneously alleging that Greyson is an alter ego of LPG. | 19. Dkt.1, Trustee's adversary proceeding Complaint, in adv proc 8:23-ap-01046-SC, filed under seal on 5/25/23; Dkt.4, Trustee's Motion moving for Dkt.13 Lockout and Preliminary Injunction Order, filed under seal on 5/25/23, alleges Greyson is one of the alter egos of debtor LPG, and alleges, over 20 times, that LPG's alter egos did |

| | illegal things. Complaint alleges [¶59] that LPG transferred LPG client files to alter egos of LPG. |
|---|---|
| 20. Plus Trustee's sealed Motion [dkt.4 in adv proc] moving for the dkt.13 Lockout and Preliminary Injunction Order as to Greyson, commits a **huge misrepresentation of fact and law** by seeking entry of dkt.13 Lockout and Preliminary Injunction Order as to Greyson, by alleging Greyson is an alter ego of LPG. | 20. Like Trustee's Complaint [dkt.1 in adv proc], Dkt.4 in adv proc, Trustee's Motion moving for Dkt.13 (the Lockout and Preliminary Injunction Order), in adv proc commits a **huge misrepresentation of fact and law** by alleging Greyson is an alter ego of LPG [Dkt. 4, at p.1, footnote 1; p.19, line 10] |
| 21. Dinsmore firm's **misrepresentation that Greyson was one of the "alter egos" of debtor LPG**, in Dinsmore firm's sealed complaint [adv proc dkt.1], and in Dinsmore firm's sealed Motion [adv proc dkt.4] which Motion moved for, and convinced this Court to grant, the dkt.13 Lockout and Preliminary Injunction order, at the *ex parte* hearing held 5/25/23, **misled the Court**, because Greyson was not served with the sealed motion, was given no notice of the ex parte hearing, and therefore was not at the 5/25/23 hearing, to defend itself, to tell the Court that Greyson was NOT an alter ego of debtor LPG. | 21. March Decl [dkt.290] that is part of Greyson's Motion to Vacate Dkt.13 and the Dkt.70 continuation Order, attests to these things, cites pleadings, and the portion of the adversary proceeding pacer docket, that prove how Trustee proceeded prevented Greyson from having notice of, or being present at, the 5/25/23 ex parte hearing on Dinsmore firm's motion, and so was deprived of having any opportunity to correct Dinsmore firm's absolutely false **misrepresentation** that Greyson was an alter ego of debtor LPG. |

| | |
|---|---|
| 22.  Greyson was **not** an alter ego of LPG.  Greyson was, and is, a **competitior** of LPG, and is a competitor of buyer Morning Law, which is the polar opposite of being an alter ego of LPG. | 22. Han Trinh Decl [dkt.290-1] to Greyson's dkt.290 Motion, ¶¶3-4; Tony Diab Decl, ¶6, filed 4/2/24 as part of Greyson's supplemental briefing [dkt. 474] |
| 23.  Dinsmore firm's lead attorney, Christopher Celentino Esq., **admitted** to the Court, at the 6/12/23 hearing, that Greyson was NOT an alter ego of debtor LPG. | 23.  6/12/23 hearing transcript, dkt.76 at p.33:22-p.34:1, Trustee's counsel Celentino states: "It does not appear -- and this is one thing I want to credit the folks that are appearing on behalf of Greyson. We are going to want to modify -- **the trustee is going to want to amend its complaint**. **It does not appear that Greyson is an alter ego**. I'll take it at face value that it's not…"<br><br>Later, at p.35:18-p.36:2, Celentino states: "And so for the purposes of the order that your Honor has asked us, the reason I wanted to get into this a little bit is the order that we'll be seeking isn't exactly just a continuation of the one your Honor entered. It has a issue with Greyson because that is nothing more than our view, and ultimately we'll prove at trial that it's a **fraudulent conveyance partner** of the former management of LPG, and they have their own fiduciary and other duties that they will have to attest to at some point. **But it is not an alter ego of LPG**." |

| | |
|---|---|
| 24. Celentino told the Court, at the 6/12/23 hearing, that his firm would amend Trustee's Complaint, to remove the alter ego allegations as to Greyson, but that amended Complaint would allege that Greyson had received fraudulent transfers from LPG. Celentino did amend the Complaint, shortly after the 6/12/23 hearing, to remove the allegations that Greyson was an alter ego of LPG, but the amended complaint alleged, very vaguely, that Greyson had received fraudulent transfers from LPG, without alleging what kinds of fraudulent transfers, received in what manner, on what dates, in what amounts. | 24. Stated by Celentino at 6/12/23 hearing transcript, [dkt.76], at p.33:22-p.34:1 (quoted immediately supra). Dinsmore firm's First amended Complaint is adv proc. Dkt.62, filed 6/15/23, and omits the alter ego allegations as to Greyson, but alleges, very vaguely, that Greyson received fraudulent transfers from debtor LPG. |
| 25. Even if Celentino had NOT admitted to this Court, at the 6/12/23 hearing, that Greyson was NOT an alter ego of debtor LPG, Greyson's uncontroverted evidence proved that Greyson was not an alter ego of LPG, pursuant to the case law test for when two corporations are alter egos of each other. | 25. Federal Courts apply the state law test for alter ego, of the state the federal court is located in. Thus, federal courts located in California (including bankruptcy courts) apply the California state law test for when alter ego liability should be applied. California case law is well settled: a leading California Court of Appeals case is *Troyk v. Farmers Grp., Inc.,* 171 Cal.App.4th 1305, 1341 (Cal. Ct. App. 2009), which quotes the 1991 California Court of Appeal case *Las Palmas Assoc. v. Las Palmas Ctr. Assocs*, 235 Cal.App.3d 1220, 1249 (Cal. Ct. App. 1991) for the proposition that "Alter ego liability is not limited to the parent-subsidiary corporate |

relationship; rather, '**under the single enterprise rule**, liability can [also] be found between sister [or affiliated] companies." *Cam-Carson v. Carson Reclamation Authority*, 82 Cal.App.5th 535 at 449, quotes *Troyk* (p.341) for this point. *Cam-Carson*, at 550, quotes the *Troyk* (at 1342) test for how to determine if two corporations constitute a "single enterprise", as follows:

"Factors for the trial court to consider **include** the **commingling of funds and assets of the two entities**, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and **use of one as a mere shell or conduit for the affairs of the other**. [Citation.] '**No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied**.' "
[bold/underline added for emphasis]

Federal Courts located in California (i.e., this Bankruptcy Court) apply this California state law test for alter ego. *Kayne v. Ho*, 2012 WL 12878753 (USDC CD CA 2012) at *8 discusses the California state law "single enterprise" test in detail:

"The "single enterprise" theory can also support a claim for alter ego liability. This theory, which was first described in

*Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1248-50 (1991), provides that, if the defendants act as a single enterprise, sister corporations can have alter ego liability even if one does not own stock in the other. The court explained that "it would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity." *Id.* at 1249. Thus, the single enterprise theory applies when the decisionmaker finds "that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *Id.* at 1249-50 (internal quotations omitted). To assert liability under this theory, stock ownership is not necessary. *See Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486 (2010); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1341-43 (2009) (finding no abuse of discretion in applying single enterprise doctrine where one company neither owned nor controlled stock in the other, but exercised managerial and administrative control)."

| | |
|---|---|
| | *Kayne* ruled the federal complaint sufficiently alleged two corporations were alter egos, pursuant to the California state law "single enterprise" test. |
| |     *C.H. Belt & Associates, Inc v. East & West Gourmet Food, Inc.*, 2017 WL 11631509 at *3 (C.D. Cal. 2017), applied the California state law "single enterprise" test for alter ego to grant default judgment the several corporate defendants were alter egos of each other. |
| |     See *Consumerdirect, Inc. v. Array US, Inc.*, 2023 WL 6165732 at *7 (C.D. Cal. 2023) ("If Pentius [first corporation] is treated as Aarry's [second corporation] alter ego…the two corporate identities collapse into a 'single enterprise,' " citing *Cam-Carson*). |
| 26.  Greyson did not come close to meeting this definition of alter ego | 26. Declarations of Scott Eadie [dkt.474, ¶2, ¶¶8-9, filed 4/2/24] attest Eadie is the sole shareholder and managing attorney of Greyson, and that Diab has no control over Greyson, and has never been paid anything by Greyson; Declaration of Han Trinh [dkt.501, filed 4/2424, ¶17, ¶20] attesting to same; Declaration of Tony Diab [dkt.474, ¶5(e) and ¶5(g), filed 4/2/24] attesting that Eadie is sole shareholder and managing attorney of Greyson, that Diab has no control over Greyson, that Diab has never received any money from Greyson, that LPG never transferred any LPG client files to Greyson, and that LPG never transferred |

| | |
|---|---|
| | any LPG money to Greyson; Declaration of Daniel March [dkt.501, ¶¶7-8 and last paragraph of decl., filed 4/28/24] attesting Daniel March is the managing attorney of LPG, and that LPG never transferred any LPG client files, or LPG money, to Greyson. |
| 27.Dinsmore firm seeks to keep the dkt.13/dkt70 orders in effect as to Greyson, for the **illegal purpose** of trying to prevent Greyson from competing with Morning Law. | 27.  At the 5/1/24 hearing of Greyson's Motion,  Trustee attorney Freedman of Dinsmore firm stated that this Court should keep dkt.13/dkt.70 injunction in place, because if this Court vacates dkt.13/dkt.70 as to Greyson, **Greyson will be able to compete against Morning Law**, and will have the advantage in competing, because Han and Jayde Trinh (not Morning law) have the relationship with the "local counsel" attorneys.<br><br>    Greyson counsel has had officially transcribed, on an expedited basis, the portion of the 5/1/24 hearing where Dinsmore firm counsel makes this admission of Dinsmore firm's illegal purpose in trying to keep the dkt.13/dkt.70 preliminary injunction against Greyson. That portion of 5/1/24 Transcript is attached as **Exhibit A** to Kathleen P. March Declaration, which is being efiled same date as these FOF/COL are efiled. |
| 28.    After so stating, Trustee's attorney Freedman, told this Court: We need to keep the preliminary injunction in place, because the | 28. Stated by Dinsmore attorney Freedman at the 5/1/24 hearing.  This statement too is an admission of Dinsmore firm's illegal |

| success of buyer Morning Law is not only very important for properly serving the consumers, but also for payment of all the creditors, because the better the buyer does, the better the creditors do in a recovery scenario. | purpose in trying to keep Dkt.13/Dkt.70 in place as to Greyson.<br><br>Official Transcript of Freedman's admissions of illegal purpose is attached as **Exhibit A** to March Decl being filed same date these FOF/COL are being filed. |
|---|---|
| 29. Trustee's counsel saying this, is an **admission** that Dinsmore firm seeks to use the Dkt.13/Dkt.70 Orders for the **illegal purpose** of preventing Greyson from being to compete with Morning Law (buyer of LPG's client files in Trustee's Motion to sell LPG's client files to the highest and best bidder). | 29. Trustee counsel telling this Court that Dinsmore firm wants to keep using dkt.13/dkt.70 to prevent Greyson from competing with Morning Law, and wants to keep dkt.13/dkt.70 in place, to continue to prevent Greyson from competing with Morning Law, constitutes is an **admission** by Trustee Marshack, byTrustree's attorneys, Dinsmore firm--admissible against Trustee/Dinsmore firm pursuant to FRE Rule 801(d)(2)(A), (C) and (D). |
| 30. As Greyson counsel March stated, in March's rebuttal comments to the Court, in the 5/1/24 hearing: "This is America, competing is legal." It is **legal** for Greyson to compete with Morning Law. Keeping dkt.13/dkt.70 in place, to prevent Greyson from competing against Morning Law, would be an **illegal use** of the dkt.13 / dkt.70 preliminary injunction. | 30. Stated by Greyson atty March in 5/1/24 hearing. Competition is legal.<br><br>Trustee's OPP does not even suggest, much less cite, any statute or case law, which authorizes issuance of, or use of, a Lockout Order/Preliminary Injunction, to **suppress competition.** There is no such statute or case law, because **competing is a legal activity**.<br><br>Attorney March's response to the Court, regarding Trustee attorney Freedman's "keep dkt.13/dkt.70 in place to prevent Greyson from competing with Morning Law" argument, is also part of the officially |

| | |
|---|---|
| | transcribed portion of the 5/1/24 hearing, attached as **Exhibit A** to March Decl that is being efiled on the same date these FOF/COL are efiled. |
| 31. Trustee's Motion [dkt.4 in adv proc] for Dkt.13/Dkt.70 Complaint does NOT allege that Greyson "misappropriated" LPG's attorney network. | 31. Dkt.4, Trustee's Motion moving for dkt.13, nowhere alleges that Greyson "misappropriated" LPG's attorney network. This is just a false, last ditch argument Dinsmore firm has added, because Dinsmore firm knows the uncontroverted evidence proves LPG never transferred LPG files, or LPG money, to Greyson. |
| 32. The attorneys that Greyson hired, on or about 5/1/23, had ceased to be employed by LPG, **before** they were employed by Greyson. By the time the attorneys in question were employed by Greyson, there was no "LPG attorney network". Therefore, there was nothing to "missappropriate". | 32. Declarations of Jayde Trinh, Esq., Israel Orozco, Esq., David Orr, Esq., Collin Donner, Esq., George Chamberlain, Esq., Haley Simmoneau, Esq., Peter Osterman, Esq., Denise Mikrut, Esq. to Greyson's Dkt.501 Reply filed 4/24/24. |
| 33. There is zero evidence that Greyson "forced" attorneys to work for Greyson. The evidence is directly contra: The attorneys chose to work for Greyson. Greyson had no power to "force" attorneys to work for Greyson. | 33. Declarations of 7 of the "local counsel" attorneys (Israel Orozco, Esq., David Orr, Esq., Collin Donner, Esq., George Chamberlain, Esq., Haley Simmoneau, Esq., Peter Osterman, Esq., Denise Mikrut, Esq) to Greyson's REPLY [dkt.501], filed 4/24/24, all say they chose to work for Greyson. Some of those Declarations attest that they declined to continue working for Phoenix directly, because Phoenix was slow |

| | |
|---|---|
| | paying them, and that they told Ty Carsson of Phoenix they would **only work through Greyson** to defend Phoenix/LPG clients in the state court suits, where those clients were being sued. |
| 34. Ty Carss testified, at the 6/12/23 Court hearing, that attorneys that had worked directly for Phoenix declined to continue to do so, because Phoenix was slow pay, and told Carss they would only defend the over 2,480 plus state court suits that Phoenix needed Phoenix/LPG clients defended in, through Greyson: | 34. Ty Carss testimony at 6/12/23 court hearing, Transcript, p.201, lines 7-8: "A:Well, again, the payment processing through Phoenix was so slow that a lot of these attorneys ["Local Counsel" attorneys appearing in state court suits for Phoenix] were wondering how they were going to get paid. And then they—many of them, as I noticed, their e-mails all started changing from LPG e-mails to Greyson e-mails. And many of them told me that they would not take assignments unless it was through Greyson." |
| 35. The new argument, first made in Dinsmore firm's Opposition [dkt.492/492, filed 4/17/24, refiled 4/18/24], alleging that **Greyson is allegedly the alter ego of Diab** is not alleged in Trustee's Complaint [dkt.1, adv proc] and is not alleged in Trustee's Motion [dkt.4, adv proc] for the Order granted as dkt. 13 on 5/26/23, in the ex parte hearing. OPP has no evidence to support that new argument, which is contrary to all the evidence | 35. Dkt.1 Complaint, and Dkt.4 Motion show that this argument was not alleged in either Dkt.1 or Dkt 4; Scott Eadie Decls filed 4/18/24, Han Trinh Decl filed 4/18/24, Jayde Trinh Decl to Greyson Dkt.501 Reply, and Daniel March Esq. Decl to Greyson Dkt.501 Reply all establish that Greyson is not alter ego of Diab. |

| | |
|---|---|
| 36. Greyson's former counsel Plazak did NOT "admit", at the 6/12/23 hearing, that Greyson was funded with LPG assets. At page 11, lines 6-15, OPP **lies** to this Court, where OPP alleges that:<br><br>"At the June 12, 2023 hearing, Greyson further admitted Greyson was entirely funded with LPG assets and post-petition ACH pulls on LPG client accounts as the Trustee's evidence had previously shown and as more thoroughly briefed in the Trustee's portion of the parties Joint Statement [1046 Dkt No 325 at 5:16-7:7]. See 1046 Dkt. No. 76 at 73:18-74:1 ["So in the past few weeks, the direction was given to pull the LPG client money, and then the direction was given for that money to go to PrimeLogix or Maverick. And that money was used at those locations to either compensate personnel at Greyson. . . and/or a series of other purposes that were detailed to the to the Court."]."<br><br>This quote is NOT anything Greyson's then counsel Plazak said, at the 6/12/23 hearing. This quote is something that Trustee counsel Celentino said at the 6/12/23 hearing, which Dinsmore firm is **dishonestly** trying to pass off as | 36. Dkt.76 is 6/12/23 Transcript, see 73:18-74:1, and see 33:10-16 which is where the quote comes from. Exhibits A of K.March Decl to Greyson Reply [dkt.501, filed 4/24/24] are the pages of the 6/12/23 transcript which establish it was Celentino—NOT Greyson attorney Plazak—which said this. Exhibit B of K.March Decl to Greyson Reply [dkt.501, filed 4/24/24] is the page of the 6/12/23 Transcript showing what Plazak did NOT say Greyson was entirely funded with LPG assets and post-petition ACH pulls on LPG client accounts as the Trustee's evidence had previously shown. |

| something Greyson attorney Plazak said. | |
|---|---|
| 37.  Celentino did not agree to withdraw the argument that Greyson was an alter ego of LPG based on an undisclosed (allegedly privileged settlement communications) with Greyson's prior counsel, Doug Plazak, Esq.<br><br>Plus what Celentino told the Court, at the 6/12/23 hearing [at Transcipt p.33:22-p.34:1, and at p.35:18-p.36:2], is that Greyson is NOT an alter ego of LPG, and that Trustee will amend his complaint to allege Greyson received fraudulent transfers.<br><br>Celentino didn't say that Trustee has agreed to withdraw Trustee's alter ego allegations against Greyson, based on some allegedly privileged, off the record, "settlement" discussion Celentino had with Greyson counsel Plazak. | 37. The Declaration of attorney Doug Plazak to Dkt.501 Reply attests, in detail, that there was never any such off the record "settlement" discussion between Celentino and Plazak, and attests that OPP is lying in alleging there was any such discussion.<br><br>Plus, what Trustee atty Celentino said, a the 6/12/23 hearing, at Transcript, dkt.76 of 6/12/23 hearing, at p.33:22-p.34:1 is that Greyson is not an alter ego of LPG:<br><br>"It does not appear -- and this is one thing I want to credit the folks that are appearing on behalf of Greyson. We are going to want to modify -- the trustee is going to want to amend its complaint. **It does not appear that Greyson is an alter ego**. I'll take it at face value that it's not…"<br><br>Later, at p.35:18-p.36:2 of 6/12/23 transcript, Celentino states:<br><br>"And so for the purposes of the order that your Honor has asked us, the reason I wanted to get into this a little bit is the order that we'll be seeking isn't exactly just a continuation of the one your Honor entered. It has a issue with Greyson because that is nothing more than our view, and ultimately we'll prove at trial that it's a **fraudulent conveyance partner** of the former management of LPG, and they have their own fiduciary and other duties that they will have to attest to at some point. **But it is not an alter ego of LPG**." |

| | |
|---|---|
| 38.  Greyson's prior counsel, Plazak, did not agree or concur that the Dkt.13/Dkt.70 Orders were correct. Plazak's Declaration [part of Greyson's Reply, dkt.501, filed 4/24/24] attests that all Plazak did was try to work out some language in the dkt.70 order, with Celentino, after the 6/12/23 hearing, to make the erroneous order a little less onerous as regards Greyson. Plazak stating that he will need to work out language with Mr. Celentino regarding Greyson's 48 client files which Celentino's firm had seized on 6/2/23, and any ACH "pulls" (payments Greyson in future might make to pay for work Greyson did for those 48 clients) because Greyson [not being an alter ego of LPG], was situated differently than the other entities [which were alter egos of LPG], which would be subject to what was later issued as the dkt.70 continuation order.<br><br>Celentino, Plazak, and the Court had a lengthy discussion about what needed to change in the Preliminary Injunction so that the bankruptcy estate would not be involved in Greyson's operation.  At the end of that conversation, Plazak and Celentino agree to work out | 38.  Doug Plazak Decl to Dkt. 501 Reply; Dkt.76 transcript of 6/12/23 hearing, see p. 256:25- 262:18, particularly p.261:12-24 of transcript. |

language to that effect, with the Court's approval.  See 6/12/23 Transcript p. 256:25- 262:18, particularly p.261:12-24:

> "MR. PLAZAK: Well -- and I think based on what everybody is saying is -- I think what has to happen is Mr. Celentino and I just need to work on specific language that relates to this that's going to cover Greyson, which is in a different situation with the others. And I believe the idea is that we're -- we just need to work together to figure out language, as it relates to ACH, that's going to be different for Greyson than perhaps all the others. And the same thing with, for example -- well, (indiscernible) -- you know, again, with the lockout. In other words, we're not -- things that would apply to Greyson may perhaps not apply to the other entities. And I think these are all things that probably can be worked out by Mr. Celentino and I."

| | |
|---|---|
| 39.  Plazak trying to work out such language with Celentino, when the Court had stated (Transcript p.80:3-8) that Greyson would not be let out of the PI entirely, does **not** constitute Greyson agreeing to the dkt.70 continuation order. | 39.  OPP has no law, that Plazak trying to make the language of a bad order less onerous, constitutes Plazak agreeing that the bad order should have been granted. |

| | |
|---|---|
| 40. Trustee could not have obtained the "scorched earth" terms of dkt.13/dkt.70 based on the very vague fraudulent transfer allegations against Greyson, which were the only allegations left in Trustee's adversary proceeding complaint against Greyson, once the alter-ego allegations were removed. No reported case grants a Lockout and Preliminary Injunction Order, of anything like the "scorched earth" scope of the dkt.13/dkt.70 Orders, based on a complaint that only makes fraudulent transfer allegations. | 40. March Decl being filed 5/15/24 attests that Extensive Westlaw legal research by March's law firm did not find any reported case where a Preliminary Injunction with anything like the "scorched earth" terms of dkt.13/dkt70 was granted, on a Complaint which only alleged the defendant had received fraudulent transfers, particularly where the fraudulent transfer allegations were very vague.   Nor did Trustee's OPPs cite any case where a Preliminary Injunction with anything like the "scorched earth" terms of dkt.13/dkt70 was granted, on a Complaint which only alleged the defendant had received fraudulent transfers. |
| 41.  Greyson was not an alter ego, and all the evidence, after 11 months, is that LPG never transferred any LPG money to Greyson.  Trustee has had 11 months to produce evidence that LPG transferred any LPG money to Greyson, and has no such evidence. Greyson had negative $1.72 in its bank account as of May 2023. | 41. Scott Eadie decl [dkt.474, ¶¶10-11], Han Trinh decl [dkt.501, ¶18], Tony Diab decl [dkt.474, ¶5(g)], Daniel March decl [dkt.501, ¶8]; Exhibit A to Han Trinh Decl to Greyson's dkt.474 further briefing, filed 4/2/24, shows that Greyson had -$1.72 in its bank account as of May 31, 2023. Trustee's witness Bradford Lee testified that Lee never assisted Diab to transfer any LPG money to Greyson (Lee deposition, p. 53, lines 7-20). |
| 42. LPG did not transfer any files to Greyson. After 11 months of dkt.13/dkt70 being in effect, Trustee has zero evidence that LPG transferred any client files to Greyson.  All the evidence is that | 42. Scott Eadie decl [dkt.474, ¶10], Han Trinh decl [dkt.501, ¶19], Tony Diab decl [dkt.474, ¶5(j)], Daniel March decl [dkt.501, ¶7]; Transcript of Lee deposition taken 2/2/24, p.157:23-258:1; see also p54:17-55:9. |

| | |
|---|---|
| LPG did not transfer any LPG client files to Greyson. Even the testimony of Trustee's witness Bradford Lee, given by Lee in deposition, is that LPG did NOT transfer any LPG client files to Greyson. | |
| 43. The dkt.13 order nowhere authorizes trustee to search through Greyson's data, or to use Greyson's data for Trustee's own purposes. Despite there being nothing in dkt.13 (or in dkt.70) authorizing Dinsmore firm to search through, and use for Trustee's own purposes, Greyson's seized documents and data, Dinsmore firm has spent the last 11 months searching through Greyson's data, and using it for Trustee's own purposes. Alex Rubin's Declaration filed by Dinsmore firm on 1/8/24, attaches Exhibits that are taken from Greyson's (illegally) seized data/emails. Trustee's Evidentiary Objection [dkt.493-5 filed 4/18/24, stated, in objecting to ¶8 of Diab Declaration, that Diab's Declaration: "….is contradicted by numerous statements taken from documents **such as those taken from Greyson Law Center and LPG email servers** ." But despite having searched Greyson's illegally seized 4 | 43. Dkt.13 Order, Dkt.70 Order has no language authorizing seizure, searching through, or use for Dinsmore firm's own purposes, of Greyson's emails, or of Greyson's Microsoft account. But despite searching Greyson's emails and Microsoft data for 11 months, Dinsmore firm's OPPs have zero admissible evidence that LPG transferred any LPG files or LPG money to Greyson. The Declarations of Scott Eadie [dkt.474, filed 4/2/24], Han Trinh [dkt.501, filed 4/24/24], Daniel March, [dkt.501, filed 4/24/24], and Tony Diab [dkt.474, filed 4/2/24] all attest LPG never transferred LPG client files, or LPG money to Greyson. Even Trustee's declarant Bradford Lee testified that Lee never assisted Diab to transfer any LPG money to Greyson (Lee deposition, p. 53, lines 7-20), and that LPG did not transfer any client files to Greyson. (Lee deposition, p. 55, lines 4-9). |

| | |
|---|---|
| categories of items for 11 months, Trustee has been unable to produce any evidence that LPG transferred any LPG money, or any LPG client files, to Greyson, because those things didn't happen.  That is why there is no such evidence attached to Trustee's OPP [dkt.492/493]. | |
| 44. Greyson was a separate corporation from LPG, which Diab had no control over, no ownership in, never participated in managing, and was never paid any money by. | 44. Scott Eadie Decl [dkt.474, ¶¶8-9], Tony Diab Decl filed 4/2/24 and filed again on 4/18/24 [dkt.474, ¶5(l)], Han Trinh Decl [dkt.501, ¶17], Jayde Trinh Decl [dkt.501, ¶17]. |
| 45. OPP p.9, lines 13-15, is **false, and has no evidence**, where it states:<br>"Greyson was funded entirely with LPG assets originating from fraudulent ACH draws and in many instances double or triple ACH draws causing irreparable financial harm to LPG's consumer clients (1046 Dkt. No. 4 at 2:3-21 and 12-13; see also 1046 Dkt. No. 8 at ¶¶ 4-20)"<br>     The "evidence" that Trustee cites is not evidence at all.  First, Dkt. No. 4 at 2:3-21 and 12-13 is simply Trustee citing Trustee's  own Motion, which is not evidence at all. Moreover, those sections do not even mention Greyson specifically.  The | 45.  Dkt. No. 4 at 2:3-21 and 12-13;  Dkt. No. 8 at ¶¶ 4-20<br><br>Even Trustee's Declarant Bradford Lee testified in deposition that Lee never assisted Diab to transfer any LPG money to Greyson (Lee deposition, p. 53, lines 7-20). |

| | |
|---|---|
| second cite, to Dkt. No. 8, is Trustee Marshack's own declaration. Trustee Marshack has no personal knowledge of Greyson's funding, and the paragraphs cited do not allege anything relating to Greyson at all, only Diab's alleged wrongdoing as it related to LPG. | |
| 46. OPP p.9, lines 16-18 **false, and has no evidence,** where it states: "Greyson had misappropriated LPG's customer relationship management ("CRM") software, client files, raw data and ACH data stored therein, including DebtPayPro and/or LUNA (Id. at 19-20; see also 1046 Dkt. No. 8 at ¶¶ 4-20)" Again, Trustee's "evidence" on this point is not evidence, it is a citation to the argument in Trustee's own motion, which is not evidence, and which does not even mention Greyson's name. Plus Trustee cites his own declaration—which, again, does not allege any wrongdoing by Greyson—and is only a laundry list of Diab's alleged wrongdoing. | 46. Dkt. No. 4 at 19-20; Dkt. No. 8 at ¶¶ 4-20 Trustee's part of the 1/8/24 Joint Statement, and Trustee's OPP [dkt.492/493, filed 4/17/24 and refiled 4/18/24] has **zero evidence** that Greyson misappropriated LPG's customer relationship management ("CRM") software, client files, raw data and ACH data stored therein, including DebtPayPro and/or LUNA. The Declarations of Tony Diab, Daniel March, Han Trinh and Scott Eadie are uncontroverted that LPG **never** transferred any LPG client files to Greyson. [dkt.474; dkt.501] Han Trinh's declaration being filed on 5/15/24, at ¶4, attests that Greyson's contracts and protocols were written by Greyson attorney Jayde Trinh. Trustee's Declarant Bradford Lee, had alleged Greyson used contracts from LPG. But when Greyson attorney K.March deposed Lee on 2/2/24, he admitted what Greyson was using was very different from |

| | what LPG had used. [2/2/24 Lee deposition Transcript, at p.118:2-10] |
|---|---|
| 47.  OPP p.9, lines 19-21 is also **false, and has no evidence,** where it states:<br><br>    "Greyson had misappropriated LPG's proprietary information including but not limited to documents, scripts, employment manuals, retainer agreements, affiliate contacts and contracts and training materials".  see also 1046 Dkt. No. 8 at ¶¶ 4-20)" | 47.   For this false allegation, which Dinsmore firm has no evidence proving, Dinsmore cites to Dkt.4 at 22-28; and Dkt. 8 at ¶¶ 4-20. However, neither actually contain this allegation.<br><br>    This allegation is proven false by  Han Trinh's declaration to Greyson's original Motion (dkt.290-1/dkt.749-1), which at ¶14 attests that the documents, scripts, protocols, templates, and procedures were Greyson's proprietary information, not LPG proprietary information.  Han Trinh's Declaration being filed 5/15/24, along with these FOF/COL, also attests that Greyson's contracts, standard operating procedures, and written protocols were written by Greyson attorney Phuong Jayde Trinh aka Jayde.  Jayde Trinh's Declaration being filed 5/15/24, along with these FOF/COL, attests that Jayde wrote Greyson's contracts, standard operating procedures, and written protocols, which were reviewed by additional Greyson attorneys.  There is no evidence contra. |
| 48. OPP p.9, lines 22-24 is **false, and has no evidence,** where it states:<br>"Greyson had misappropriated other LPG assets including but not limited to computers, laptops, monitors, | 48.  This is also untrue.  Han Trinh's declaration to Greyson's original Motion (dkt.290/dkt.749) attests that she put the LPG office furniture in lockers that she paid for, when LPG was evicted, and promptly notified Trustee counsel of this by email. |

| | |
|---|---|
| other computer equipment, office furniture and software accounts including Microsoft 365 (Id.; see also 1046 Dkt. No. 8 at ¶¶ 4-20)" | Han Trinh's declaration being filed on 5/15/24 attests that the computers/monitors went to, and were paid for, by Phoenix. The Declaration of Justin Nguyen, Greyson's IT director filed 1/8/24, as part of the Joint Statement, attests he paid for the 24 B link computers, and was not reimbursed by anyone for doing so. Trustee's Motion and Declaration do not say anything about these, and has no evidence that LPG paid for, or reimbursed Han or Nguyen for the Microsoft account Han paid $2,187 to Microsoft, per month, with Han's personal credit card, or for the Greyson internet domain/website Han and Nguyen paid for, unreimbursed, or for the 24 B links Nguyen paid for unreimbursed; or that LPG paid for anything else Greyson has. |
| 49.  OPP p.6, lines 26-28 is **false, and has no evidence,** where it states: "Furthermore, the current language provided for in the Court's Preliminary Injunction, to which the Trustee agreed to, was based on Han's false assertion that Diab was not involved with Greyson in any fashion. A fact that the evidence now shows is false." <br><br>Diab was not and is not involved with Present Greyson.  Attorney Scott Eadie's two Declarations filed | 49.  This allegation (for which Dinsmore firm has no evidence) is proven false by Attorney Scott Eadie's two Declarations filed 4/18/24 [part of dkt.1127] , which attest Diab had and has nothing to do with present Greyson, which is owned and run solely by Eadie.  Tony Diab's Declaration [part of dkt.1127]  filed 4/2/24, and filed again on 4/18/24, attests Diab had nothing to do with Present Greyson.  Han's several Declarations, including Han's Declaration to this Reply, attest to this also. |

| | |
|---|---|
| 4/18/24 [part of dkt.1127] attest Diab had and has nothing to do with present Greyson, which is owned and run by Eadie.  Tony Diab's Declaration [part of dkt.1127]  filed 4/2/24, and filed again on 4/18/24, attests Diab had nothing to do with Present Greyson.  Han's several Declarations, including Han's Declaration to this Reply, attest to this also. | |
| 50. OPP p.12, lines 6-10 is **false and has no evidence** where it states: "Further, Carss evidence show that refusing to pay Phoenix' attorney invoices was intentional. Id. Indeed, LPG attorneys were coerced to switch to Greyson if they wanted to "get paid" just as they had been told when forced to switch to OLG, which of course folded and was born again as Greyson. Id.; Jane. D. Decl. at ¶ 26, Exhs. 17-18" | 50.  Not only is this false, because no one "coerced" LPG attorneys to switch to Greyson, as Declarations of the 7 local counsel attorneys to Greyson's dkt.501 Reply filed 4/24/24 attest.  But in addition, this allegation is contradicted by testimony of Phoenix managing attorney Ty Carss, at the 6/12/23 hearing, where Carss testified that due to Phoenix's being slow paying the attorneys, "many of them told me that they would not take assignments unless it was through Greyson." [Dkt.76 6/12/23 hearing transcript, p.201, lines 7-8].  Greyson is not responsible for Phoenix being slow paying local counsel attorneys, and is not responsible for Diab causing slow payment, if Diab did so, which is not proven. |

| 51.  OPP p.14, lines 24-26 is **false and has no evidence,** where it states: <br> "After the majority of LPG files were transferred to Phoenix, Carss was forced to rely on LPG attorneys to continue to perform the legal work necessary to provide the services LPG clients contracted for and to protect their interests. Carss Decl. at ¶¶ 2-8." | 51.   Dkt.76 6/12/23 transcript, p.206:12-207:12. <br> First, Phoenix is not Greyson, and has no bearing on Greyson's Motion. Second, it is false to say that Carss was "forced" to do anything. <br>     Carss testimony at the 6/12/23 Court hearing establishes Greyson did not "force" Carss to do anything, that Phoenix "oftentimes" did not have attorneys to defend consumer clients being sued in state court suits, and that Phoenix urgently needed attorneys to defend those consumer clients, often on an emergency basis, in state court suits, and contracted to pay Greyson $2,000 per lawsuit, in which Greyson attorneys appeared, for Phoenix, to defend Phoenix clients, in those state court suits Carss testified at the 6/12/23 hearing that he used Greyson attorneys to appear for Phoenix to defend Phoenix/LPG clients who were being sued in state court suits all over the US, because Phoenix did not have attorneys to defend those suits. [Dkt.76 transcript, p.205:13-206:11] <br>     Carss testified at the 6/12/23 hearing that Greyson did not "force" Carss to do anything.  [Dkt.76 transcript, p206:6-207:18] |
| 52.  OPP p.22, lines 1-7  is **false and has no evidence**, where it states: <br> "Similarly, Diab, Han and Eadie's declarations that claim LPG never | 52.   OPP has zero evidence that Diab, Han and Eadie's Declarations are false.  They aren't false.  And the Declaration of Daniel March filed 4/24/24 as part of dkt.501, says |

| | |
|---|---|
| transferred any files to Greyson is also deceptively false. LPG clients were transferred to Greyson by the misappropriation of LPG's network of attorneys who then inappropriately solicited and encouraged their LPG clients to move over to Greyson. A tactic Greyson's own evidence and client declarations submitted in opposition to the Trustee's Preliminary Injunction show and one this Court noted as improper at the Preliminary Injunction hearing. See 1046 Dkt. Nos. 47 and Dkt. Nos. 47-3 – 47-7; 1046 Dkt. No. 76 at 75:9-25 | the same thing.  In Trustee's witness Bradford Lee testified that LPG did not transfer any client files to Greyson. (Lee deposition, p. 55, lines 4-9).<br><br>    OPP has zero evidence that Diab, Han or Eadie's declarations are false.  Second, the remainder of this allegation impliedly admits  LPG never transferred files to Greyson, but instead alleges that  LPG "transferred files" to Greyson by Greyson attorneys recommending to their clients that their clients move to Greyson.  That does NOT constitute LPG transferring files to Greyson.<br><br>    Plus, the evidence cited at ¶32 supra establishes there was no LPG attorney network, by the time Greyson hired former LPG attorneys, on 5/1/24. |
| 53. Management decisions at LPG were made solely by Daniel March and Tony Diab, with Bianca Loli sometimes making input. Management decisions at LPG were never made by Han Trinh or Jayde Trinh. | 53.  Attested to by Declaration of Daniel March, managing attorney of LPG, that is part of  Dkt.501 Reply (p.2); See also Declarations of Esmeralda Guzman, Brenda Mendez, and Kennedy Martinez to Dkt.501 Reply, that Han and Jayde Trinh were not in LPG "upper management" at LPG. |
| 54.  At the 5/1/24 Court hearing on Greyson's herein Motion, Trustee attorney Ghio of Dinsmore firm alleged that if the Court lifted the dkt.13/dkt.70 preliminary injunction, that Greyson would  "take the proprietary information that it already pilfered pursuant to the Lee | 54.  Relevant pages of Lee's 2/2/24 Deposition, taken by attorney K.March, where Lee admitted the 2 contracts were different, are **Exhibit C** to March Decl being filed 5/15/24, along with these FOF/COL. [Attached for convenience. Full Lee 2/2/24 deposition transcript was |

| | |
|---|---|
| (phonetic) declaration from LPG" and use that information to compete with buyer Morning law. Bradford Lee's declaration was the only evidence" Ghio only cited as proving Ghio's allegation. However, Lee admitted, when Greyson attorney March deposed Lee, on 2/2/24, that the only specific item (a contract) which Lee alleged Greyson had taken from LPG, was **different** from the Greyson contract, written by attorney Jayde Trinh of Greyson. | previously filed with the Court, as Exhibit to K. March Decl to Greyson dkt. 474, supplemental briefing, filed 4/2/24.] In addition, the Declaration of Phuong Jayde Trinh (aka Jayde), being filed 5/15/24, along with these FOF/COL, attests that Jayde wrote Greyson's contracts, standard operating procedures, and written protocols, which additional Greyson attorneys reviewed. Plus Han Trinh's Declaration, being filed 5/15/24, along with these FOF/COL, attests Jayde wrote those Greyson items. Han's Declaration also attests that the only LPG item in Greyson's sharepoint was a document Bradford Lee put into sharepoint, without any authorization from Greyson to do so. |

## III. CONCLUSIONS OF LAW

| CONCLUSIONS OF LAW | CITATIONS TO LAW, AND TO ORDERS |
|---|---|
| 1. The Court grants the half of Greyson's [dkt.290/dkt.749] Motion, that moves for an order ordering Trustee/Dinsmore firm to immediately return to Greyson, the 4 categories of items [itemized at ¶¶12, 13, 14, and 15 supra in FOF] that were seized by Dinsmore firm/its field agents, at the 6/2/23 lockout at | 1. Wording of Dkt.13 Order which does not authorize seizure of the 4 categories of items [itemized at ¶¶ 12, 13, 14, and 15 supra in FOF supra], which Dinsmore firm seized at Greyson on 6/2/23. Nor does the Dkt.70 Continuation Order attempt to (retroactively) authorize seizure of those 4 categories of items. |

Greyson's office, because the dkt.13 Lockout and Preliminary Injunction Order did NOT authorize Dinsmore firm/its field agents to seize any of those 4 categories of items, which are:  ¶12 FOF--Greyson Microsoft [M365 suite] account, which Han Trinh was paying Microsoft for monthly with her personal credit card, unreimbursed; ¶13 FOF--Greyson internet domain/website, which Greyson IT director Justin Nguyen paid for, with his personal credit card, unreimbursed; ¶14 FOF--Greyson's 100+ email accounts; and ¶15 FOF-- the 50 computers (including 24 beelinks) which Dinsmore firm/its field agents seized at Greyson's office in 6/2/23 lockout.

| | |
|---|---|
| 2.  Each of the 4 categories of items were illegally seized by Dinsmore firm/its field agents on 6/2/23, because Dkt.13 did **not** authorize their seizure, and even Dkt.70, the Continuation Order, did not (retroactively) authorize their seizure, and therefore Dinsmore firm seizing the 4 categories of items at Greyson on 6/2/23 constituted **conversion** of Greyson property, a strict liability tort pursuant to controlling California state law. | 2.  Wording of Dkt.13 Order; wording of Dkt.70 Continuation Order.      Property rights (and torts for violating property rights) are not defined by the Bankruptcy Code, they are defined by applicable state law, which here is California state law.  The California Court of Appeal, in *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (Ct. App.Cal. 1998)(certified for partial publication, including section on conversion) summarizes California state law on the tort of conversion, as follows: |

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. **Conversion is a strict liability tort**. **The foundation of the action rests neither in the knowledge nor the intent of the defendant**. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 144 [271 Cal.Rptr. 146, 793 P.2d 479], and fn. 38; *Oakdale Village Group v. Fong* (1996) 43 Cal.App.4th 539, 543-544 [50 Cal.Rptr.2d 810].)" [bold/underline added for emphasis].

5 Witkin, Summary of California Law (11th Edition 2023), Torts, at **(a) [§810] Nature of Tort**, discusses the tort of conversion, pursuant to California state law, as follows:

"(1) *In General.* Conversion is the wrongful exercise of dominion over personal property of another. (Steele v. Marsicano (1894) 102 C. 666, 669, 36 P. 920; Poggi v. Scott (1914) 167 C. 372, 375, 139 P. 815; Moore v. Regents of Univ. of Calif. (1990) 51 C.3d 120, 137,

271 C.R. 146, 793 P.2d 479, infra, § 816; Kee v. Becker (1942) 54 C.A.2d 466, 470, 129 P.2d 159; Farmers Ins. Exchange v. Zerin (1997) 53 C.A.4th 445, 451, 61 C.R.2d 707; see Salma v. Capon (2008) 161 C.A.4th 1275, 1295, 74 C.R.3d 873, citing the text [tort of conversion applies to personal property, not real property]; …"

"(2) *Elements.* The basic elements of the tort of conversion are (a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages. (Fremont Indem. Co. v. Fremont General Corp. (2007) 148 C.A.4th 97, 119, 55 C.R.3d 621, infra, § 814.) The property need not be appropriated to the use of the defendant; it may be destroyed, or merely damaged. (Staley v. McClurken (1939) 35 C.A.2d 622, 628, 96 P.2d 805; see Hernandez v. Lopez (2009) 180 C.A.4th 932, 939, 103 C.R.3d 376 …"

| | |
|---|---|
| 3. Dinsmore firm/its field agents refusing to return the 4 categories of illegally seized items to Greyson, despite Greyson counsel March requesting Dinsmore firm/its field agents return those 4 categories of illegally seized items to Greyson, for 11 months, constituted continuing | 3. Law on conversion cited immediately supra. March Decl [dkt.325-3, filed 1/8/24] that March requested Dinsmore firm return the illegally seized Greyson items to Greyson, and filed Greyson's Motion [dkt.290 in adv proc/dkt.749 in LPG main bankruptcy case] for return of the 4 categories of seized items, filed |

| | |
|---|---|
| illegal conduct by Dinsmore firm/its field agents, i.e. continuing conversion. | 12/6/23; Han Trinh Decl [¶¶53-54, 59 of 11/17/23 Decl. that is attached as Exh.1 to Dkt.290-1 decl, filed 12/6/23] that Dinsmore firm seizing the 4 categories of items (items dkt.13 Order did not authorize Dinsmore firm to seize) has made it impossible for Greyson to operate/compete successfully. |
| 4.  This Court ordering Dinsmore firm to return to Greyson the 4 categories of Greyson items that Dinsmore firm illegally seized/converted on 6/2/23,  does **NOT require, or depend on, vacating** Dkt.13/Dkt.70, because Dkt.13/Dkt.70 did NOT authorize Dinsmore firm, its field agents, to seize the 4 categories of items. | 4.  Wording of Dkt.13 Order, wording of Dkt.70 Continuation order. |
| 5.  11.  In construing the dkt.13/dkt.70 Orders, this Court applies the doctrine of "contra proferentem" which is that orders must be construed against the party which drafted the orders, which here is the Dinsmore firm. | 5. *In re Gazzo*, 505 B.R. 28 at 41 (Bankr. D. CO 2014); *In re Taylor*, 884 F.2d 478, at footnote 1 (9th Cir. 1989). |
| 6.  As regards the half of Greyson's dkt.290 Motion which moves this Court to vacate, as to Greyson, the Dkt.13 Lockout and Preliminary Injunction Order, and the follow-on Dkt.70 Order, the Court grants that | 6.  Law:  FRCP Rule 60(b)(3), incorporated into bankruptcy adversary proceeding practice by FRBP Rule 9024; and case law cited in Greyson's Dkt.474 supplemental briefing filed 4/2/24, including |

half of Greyson's dkt.290 Motion, pursuant to the evidence cited in FOF supra, and pursuant to FRCP Rule 60(b)(3), for highly material misrepresentation that Greyson was an alter ego of debtor LPG, in Dinsmore firm's Complaint [adv.proc.dkt1] and in Dinsmore's Motion [adv. Proc dkt.4] that moved for,and on which this Court granted Dkt.13, the Lockout & Preliminary Injunction Order entered on 5/26/23.

*In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404–05 (9th Cir. 1987), which states the standard for obtaining relief from an Order which was obtained by a party's misrepresentation:

"To prevail under the cited portion of the Rule [Rule 60(b)(3)], the moving party must establish that a judgment was obtained by fraud, **misrepresentation**, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. *Lafarge,* 791 F.2d at 1338; *Bunch v. United States,* 680 F.2d 1271, 1283 (9th Cir.1982). The rule is aimed at judgments which were **unfairly obtained**, not at those which are factually incorrect. *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978)."

"When a motion under Rule 60(b)(3) is based on negligent misrepresentation, it is important that the moving party be required to demonstrate that the **misrepresentation prevented it from presenting its case**. …"

Cases, at several levels, hold that an Order, or even a jury verdict, granted on **false information**,  must properly be vacated. An Order, or a jury verdict, granted on false information is not just a fraud on the opposing party, but is also a fraud on the Court itself.   See, e.g., *Kraja v. Bellagio, LLC*, No. 2:15-cv-01983-APG-NJK, 2020 WL 60233, at *1 (D. Nev. Jan. 6, 2020)

"[T]he trial judge [has] the right, and indeed the duty, ... to set aside the verdict of the jury ... where, in his conscientious opinion, the verdict ... is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 256 (9th Cir. 1957). False testimony does not have to rise to the level of perjury to justify a new trial. "The trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prod.*, Inc., 212 F.3d 493, 510 (9th Cir. 2000).

Accord: *In re Levander*, 180 F.3d 1114 (9th Cir 1999) ("We therefore hold that a federal court may amend a judgment or order under its inherent power when the original judgment or order was obtained through fraud on the court.").

FRCP Rule 60(b)(3), incorporated by FRBP Rule 9024, states:

"(b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party

| | |
|---|---|
| | or its legal representative from a final judgment, order, or proceeding for the following reasons:<br><br>(3) fraud (whether previously called intrinsic or extrinsic), **misrepresentation**, or misconduct by an opposing party;"<br>[emphasis added] |
| 7. Dinsmore firm's Opposition [dkt.492/493 filed 4/17/24 and refiled 4/18/24] is error of law in alleging that FRCP Rule 60 [incorporated by FRBP Rule 9024] only allows granting relief from an order or judgment for fraud. That is NOT the law. FRCP Rule 60(b)(3) does NOT require that there be fraud, in order for a movant to be entitled to relief from a judgment or order.<br><br>As quoted in Greyson's briefing filed 4/2/24, FRCP Rule 60(b)(3) states that "misrepresentation" is one of the 6 categories of grounds justifying a Court granting relief from a judgment or order:<br><br>"(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may | 7. FRCP Rule 60(b)(3); incorporated into adversary proceeding practice by FRBP 9024. |

| | |
|---|---|
| relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;" …" | |
| 8. The Dkt.13 Order, must properly be vacated, as to Greyson, because dkt.13 was obtain based on the highly material **misrepresentation**, in Dinsmore Firm's Complaint [adv proc dkt.1] and in Dinsmore Firm's [Dkt.4] Motion moving for Dkt.13, of **misrepresenting** that Greyson was an alter ego of LPG, which was untrue, and which lead Dinsmore attorney Celentino admitted, at the 6/12/23 hearing, was untrue. | 8. FRCP Rule 60(b)(3); FRBP 9024. |
| 9. Vacating Dkt.13, pursuant to FRCP Rule 60(b)(3) and case law, is necessary and proper, because Greyson was **prevented from defending itself--**by presenting this Court with evidence that Greyson was NOT an alter ego of LPG, that Greyson was a competitor of law firms of LPG, and of similar law firms, like Morning Law. Greyson | 9. This situation meets the case law standard for granting relief under FRCP Rule 60(b)(3): "To prevail under the cited portion of the Rule, the moving party must establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. Lafarge, 791 F.2d at 1338; Bunch v. United States, 680 F.2d 1271, 1283 (9th Cir.1982). The rule is aimed at judgments which were unfairly |

was **prevented from defending itself**, because Dinsmore firm filed its Complaint [dkt.1] and its Motion [dkt.4] under seal, not served on Greyson, and the 5/25/23 hearing on the motion was *ex parte*, with no notice to Greyson, so Greyson could not attend the 5/25/23 hearing, because Greyson had no notice it was being held, with the result that only Trustee Marshack's attorneys, an attorney from the Office of US Trustee, and an attorney for one creditor,  attended the hearing.

obtained, not at those which are factually incorrect. Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir.1978).

"When a motion under Rule 60(b)(3) is based on negligent misrepresentation, it is important that the moving party be required to demonstrate that the misrepresentation prevented it from presenting its case. This eliminates any discontinuity between Rule 60(b)(1) and Rule 60(b)(3). If the rule were otherwise, then a mutual mistake would ordinarily be evaluated under the stringent requirements of Rule 60(b)(1), whereas Rule 60(b)(3) would provide an easy route to post-judgment relief where one of the mistaken parties happens to memorialize the mistake in writing or repeat it orally to the other."

10.  The Dinsmore firm obtained the [Dkt.13] Lockout and Preliminary Injunction Order by making a huge, highly material, misrepresentation to the Court, of falsely alleging Greyson was an alter ego of debtor LPG, sought via a sealed Complaint [dkt.1] and a sealed motion [dkt.4], not served on Greyson or on any other respondent, at a hearing held the same day the motion was filed, 5/25/23, where only Dinsmore firm, US Trustee's office, and one creditor were present, and where neither Greyson, nor any other "target" of

10. FRCP 60(b)(3).  This situation meets the case law standard for granting relief under FRCP Rule 60(b)(3):  "To prevail under the cited portion of the Rule, the moving party must establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. *Lafarge*, 791 F.2d at 1338; *Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir.1982). The rule is aimed at judgments which were unfairly obtained, not at those which are factually incorrect. *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir.1978).

| the Motion, had been given notice of, or were present at the hearing, to dispute Dinsmore firm's huge misrepresentation.  This whole situation deprived  Greyson of having opportunity to present evidence contra to Dinsmore firm's huge misrepresentation that Greyson was an alter ego of Debtor LPG, when Greyson was not an alter ego, and instead was a competitor of LPG. Celentino firm's false alter ego "evidence." | "When a motion under Rule 60(b)(3) is based on negligent misrepresentation, it is important that the moving party be required to demonstrate that the misrepresentation prevented it from presenting its case. This eliminates any discontinuity between Rule 60(b)(1) and Rule 60(b)(3). If the rule were otherwise, then a mutual mistake would ordinarily be evaluated under the stringent requirements of Rule 60(b)(1), whereas Rule 60(b)(3) would provide an easy route to post-judgment relief where one of the mistaken parties happens to memorialize the mistake in writing or repeat it orally to the other." |
|---|---|
| 11.  Even if Dinsmore firm attorney Celentino--who admitted, at the 6/12/23 hearing, that Greyson was **not** an alter ego of debtor LPG—had **not** admitted that, the uncontroverted evidence establishes that Greyson was **not** the alter ego of LPG, pursuant to the case law test for when two corporations are alter egos of each other. | 11.  Federal Courts apply the state law test for alter ego, of the state the federal court is located in, to determine when one corporation can be held to be the aler ego of another corporation.  Thus, federal courts located in California (including bankruptcy courts) apply the California state law test for when alter ego liability should be applied, to hold that one corporation is the alter ego of another corporation.  California case law is well settled:  A leading California Court of Appeals case is *Troyk v. Farmers Grp., Inc.,* 171 Cal.App.4th 1305, 1341 (Cal. Ct. App. 2009), which quotes the 1991 California Court of Appeal case *Las Palmas Assoc. v. Las Palmas Ctr. Assocs*, 235 Cal.App.3d 1220, 1249 (Cal. Ct. App. |

1991) for the proposition that "Alter ego liability is not limited to the parent-subsidiary corporate relationship; rather, '**under the single enterprise rule**, liability can [also] be found between sister [or affiliated] companies." *Cam-Carson v. Carson Reclamation Authority*, 82 Cal.App.5th 535 at 449, quotes *Troyk* (p.341) for this point. *Cam-Carson*, at 550, quotes the *Troyk* (at 1342) test for how to determine if two corporations constitute a "single enterprise", as follows:

"Factors for the trial court to consider **include** the **commingling of funds and assets of the two entities**, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and **use of one as a mere shell or conduit for the affairs of the other**. [Citation.] '**No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied**.' " [bold/underline added for emphasis]

Federal Courts located in California (i.e., this Bankruptcy Court) apply this California state law test for alter ego. *Kayne v. Ho*, 2012 WL 12878753 (USDC CD CA 2012) at *8 discusses the California state law "single enterprise" test in detail:

"The "single enterprise" theory can also support a claim for alter ego liability. This theory, which was first described in *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App. 3d 1220, 1248-50 (1991), provides that, if the defendants act as a single enterprise, sister corporations can have alter ego liability even if one does not own stock in the other. The court explained that "it would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity." *Id.* at 1249. Thus, the single enterprise theory applies when the decisionmaker finds "that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." *Id.* at 1249-50 (internal quotations omitted). To assert liability under this theory, stock ownership is not necessary. *See Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486 (2010); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1341-43 (2009) (finding no abuse of discretion in applying single enterprise doctrine where one company neither owned nor controlled stock in the other, but exercised managerial and administrative control)."

*Kayne, supra*, ruled the federal complaint sufficiently alleged two corporations were alter egos, pursuant to the California state law "single enterprise" test.

*C.H. Belt & Associates, Inc v. East & West Gourmet Food, Inc*., 2017 WL 11631509 at *3 (C.D. Cal. 2017), applied the California state law "single enterprise" test for alter ego to grant default judgment the several corporate defendants were alter egos of each other.

See *Consumerdirect, Inc. v. Array US, Inc*., 2023 WL 6165732 at *7 (C.D. Cal. 2023) ("If Pentius [first corporation] is treated as Aarry's [second corporation] alter ego…the two corporate identities collapse into a 'single enterprise,' " citing *Cam-Carson*).

| | |
|---|---|
| 12. Second, the Court vacates the Dkt.13/dkt.70 continuation order, as to Greyson, because the aggressive terms of Dkt.13/ Dkt.70 are not properly granted for vague fraudulent transfer allegations in Dinsmore firm's amended complaint, which are the only allegations against Greyson, after Dinsmore firm amended the original Complaint [dkt.1] to delete the alter ego allegations as to Greyson | 12. Greyson counsel March's Declaration filed herewith attests that extensive Westlaw research by her firm did not find any reported case where an order with the aggressive terms of Dkt.13/dkt.70 was granted based on a complaint that only alleged the defendant had received fraudulent transfers, which is all Dinsmore's Complaint alleges against Greyson, after it was amended to drop the alter ego allegations against Greyson<br><br>Dinsmore firm's OPP does not cite any case where an order with the aggressive terms of Dkt.13/dkt.70 was granted based |

| | on a complaint that only alleged the defendant had received fraudulent transfers, and does not deny there is no such case. |
|---|---|
| 13.  Third, the Court vacates the Dkt.13/dkt.70 continuation order, as to Greyson, because the situation which caused the Court to grant dkt.13—which was the Court's concern that money LPG had transferred out of LPG to LPG's alter egos, and that LPG's alter egos could rapidly transfer those LPG funds again, electronically—does not apply to Greyson.  In the 11 months that Dkt.13/Dkt.70 have been in place, the uncontroverted evidence proves that LPG did not transfer any LPG money to Greyson, so there was and is no danger Greyson would transfer those LPG funds elsewhere, as Greyson had not received any funds from LPG. | 13.  Transcript of 5/25/23 hearing, at p.59, lines 1015, quoted in FOF No.1 supra in FOF, explains Court believed that Dkt.13 was necessary, because money LPG transferred to its alter egos could be transferred elsewhere, electronically, very quickly.<br><br>    The relevant pages of the 5/25/23 hearing Transcript, where the Court stated this, at p.59, lines 10-15 of transcript, are attached as **Exhibit B** to Kathleen March Declaration being filed on 5/15/24, at same time these FOF/COL are filed.  The 5/25/23 transcript was sealed, but later  was unsealed, and the full transcript is dkt.32 in the 8:23-mp-00102-SC miscellaneous docket.<br><br>    As the evidence is uncontroverted [declarations of Scott Eadie, Daniel March Esq., Han Trinh, Tony Diab cited in FOF supra, and deposition testimony of Dinsmore declaration Bradford Lee, all establish that LPG never transferred LPG funds to Greyson, Dkt. 13, and the continuation dkt.70 Order, are not needed or appropriate, as to Greyson. |
| 14.  Fourth,  the express language of the dkt.70 continuation order states | 14.  This language is a clear expression, by this Court, that at some point in time, |

| | |
|---|---|
| that Dkt.70 will remain in effect "until the Court orders otherwise". | Dkt.70 might be vacated by the Court. Dkt.13/Dkt.70 are not needed or appropriate, **as to Greyson**, which is an additional reason the Court now vacates Dkt.13/Dkt.70**, as to Greyson**. |

## IV. COURT'S CONCLUSIONS OF LAW SUSTAINING GREYSON'S EVIDENTIARY OBJECTIONS TO, AND REQUESTS TO STRIKE, CERTAIN DECLARATIONS FILED BY DINSMORE FIRM

| | |
|---|---|
| 15.  The Court **sustains** Greyson's [dkt.475, filed 4/2/24] Evidentiary Objection to, and Request to Strike, portions of  Bradford Lee's **1/8/24** declaration [dkt. 325-5, filed 1/8/24], and to strike exhibits thereto. | 15.  Sustained for reasons stated in Greyson's dkt.475 pleading, including but not limited to the fact that Lee's testimony, in Lee's deposition taken on 2/2/24 by Greyson attorney K.March, completely contradicted Lee's 1/15/24 Declaration, including Lee admitted he did not write his Declaration, which was written by Dinsmore attorney Freedman, and the exhibits were not attached (nor had he seen them), before he signed his Declaration. Plus, Lee could not lay foundation for, or authenticate documents that were attached as exhibits.  Plus, Lee admitted Lee was concerned Trustee might sue Lee, and admitted Dinsmore firm had paid Lee several thousand dollars, both of which were reasons for Lee to sign whatever Freedman wrote, even if false. |
| 16.  The Court **sustains** Greyson's [dkt.476, filed 4/2/24] Evidentiary | 16. Sustained for reasons stated in Greyson's dkt.476 pleading, including but |

| Objection to, and Request to Strike, portions of Bradford Lee's **1/15/24** declaration [dkt.331-1, filed 1/16/24], and to strike exhibits thereto. | not limited to the fact that Lee's testimony, in Lee's deposition taken on 2/2/24 by Greyson attorney K.March, completely contradicted Lee's 1/15/24 Declaration, including Lee admitted he did not write his Declaration, which was written by Dinsmore attorney Freedman, and the exhibits were not attached (nor had he seen them), before he signed his Declaration. Plus, Lee could not lay foundation for, or authenticate documents that were attached as exhibits.  Plus Lee admitted Lee was concerned Trustee might sue Lee, and admitted Dinsmore firm had paid Lee several thousand dollars, both of which were reasons for Lee to sign whatever Freedman wrote, even if false. |
|---|---|
| 17.  The Court **sustains** Greyson's dkt.477, filed 4/2/24] Evidentiary Objection to, and Request to Strike, each of paragraphs 3-29, and each of exhibits 23-49, to Alex Rubin's first Declaration [dkt.325-4 filed 1/8/24]. The objected to paragraphs, and objected to exhibits  are substantially similar in that each claims to authenticate a specific email, attached as an exhibit.<br><br>    [Note:  See 17 infra for discussion of defects in Rubin's Supplemental Declaration and Exhibits [dk.t493-10 filed 4/18/24].] | 17. Sustained for reasons stated in Greyson's dkt.477 pleading, including, but not limited to the following:  First, Rubin's Declaration  attaches, as Exhibits, emails which were unlawfully seized  from Greyson, by Dinsmore firm/its field agents (like Rubin), because the dkt.13/Lockout & Preliminary Injunction Order, and the dkt.70 Order did **not** authorize Trustee's attorneys to seize, read, and use Greyson emails for Trustee's/Dinsmore firm's  own purposes.  Second, Rubin lacks foundation to attach emails which Rubin did not send or receive. [FRE Rule 901(a); FRE Rule 602].  None of the emails which Rubin claims to be authenticating were sent by |

him, nor received by him, even as a CC or BCC. Rubin's "foundation"—that he was provided credentials and saw emails that other people allegedly sent—is no more foundation than if he had stumbled upon a box of files in a hallway and was now attempting to testify to the truth of its contents.  Third, the content of emails which Rubin did not send or receive is inadmissible hearsay as regards Rubin, who is seeking to put them into evidence.

Hearsay with no hearsay exception is inadmissible per FRE Rules 801 and 802. The content of emails which Rubin did not send or receive is inadmissible hearsay as regards Rubin, who is seeking to put them into evidence for the truth of what they say. There is no business records exception, or any other hearsay exception,  shown. The emails are inadmissible as hearsay.

| | |
|---|---|
| 18.  The Court **sustains** Greyson's dkt.478, filed 4/2/24] Evidentiary Objection to, and Request to Strike, portions of Jeremy Freedman's [dkt.325-8, filed 1/8/24], and to strike the exhibits thereto. | 18.  Sustained for reasons stated in Greyson's dkt.478 pleading, including but not limited to the fact that Freedman cannot authenticate or lay foundation for emails which Freedman did not send or receive. Freedman attaches documents Freedman has no personal knowledge of, as he neither sent nor received them.  That violates FRE Rule 602, which requires personal knowledge.  Nor can  Freedman cannot lay foundation for those documents, contrary to FRE Rule 901(a), which requires foundation.  Plus, Freedman's Declaration |

contains misstatements of fact [FRE Rule 403].  Third, the attached documents are hearsay, inadmissible per FRE Rule 801 and 802, because no business records foundation, or other hearsay exception is shown.

| | |
|---|---|
| 19.  The Court **sustains** Greyson's dkt.505, filed 4/24/24] Evidentiary Objection to, and Request to Strike, portions of Alex Rubin's **Supplemental** Declaration [dkt.493-10, filed 4/18/24], and to strike the exhibits thereto.<br><br>   [Note: See 15. supra for discussion of defects in Rubin's original [dkt.325-4] Declaration with exhibits, filed 1/8/24]. | 19.  Sustained for reasons stated in Greyson's dkt.505 pleading, including but not limited to the fact that Rubin lacks personal knowledge of, and cannot lay foundation for, emails which Rubin did not send or receive. [FRE Rule 602 (personal knowledge required); FRE Rule 901(a) (foundation required)]. None of the emails which Rubin claims to be authenticating were sent by him, nor received by him, even as a CC or BCC. Rubin is a stranger to those emails, who has no personal knowledge of those emails, and who cannot lay foundation for those emails, required by FRE Rule 901(a) and FRE Rule 602.<br><br>   In addition, the content of emails which Rubin did not send or receive is **inadmissible hearsay** as regards Rubin, who is seeking to put them into evidence for the truth of what they state.<br>Hearsay with no hearsay exception is inadmissible per FRE Rules 801 and 802. There is no business records exception, or any other hearsay exception,  shown. The emails are inadmissible as hearsay. |

| | |
|---|---|
| 20. The Court **sustains** Greyson's dkt.504, filed 4/24/24] Evidentiary Objection to, and Request to Strike, portions of Hershy Deutsch Declaration [dkt.493-3 filed 4/18/24, also filed as dkt.492-2 on 4/17/24], and to strike the exhibits thereto. | 20. Sustained for reasons stated in Greyson's dkt.504 pleading, including but not limited to the fact that Hershy Deutsch no personal knowledge of anything regarding Han Trinh [FRE Rule 602], because Hershy Deutsch never met or communicated with Han Trinh, and never had any dealings with Greyson, as attested to in Han's declaration to Greyson's Dkt.501 Reply, ¶21. Dinsmore firm writing that Declaration for Deutsch, having Deutsch sign it, and filing it with this Court is knowing misconduct by Dinsmore firm (aka suborning perjury). |
| 21. The Court **sustains** Greyson's dkt.503, filed 4/24/24] Evidentiary Objection to, and Request to Strike, portions of Ty Carss Declaration [dkt.493-3 filed 4/18/24, also filed as dkt.492-2 on 4/17/24], and to strike the exhibits thereto. | 21. Sustained for reasons stated in Greyson's dkt.503 pleading, including but not limited to the fact that Ty Carss' declaration actually a Declaration relating to Greyson's [dkt.676] Motion for administrative claim, filed 8 days late with no excuse for late filing, because Declarations opposing Greyson's administrative claim motion were due 4/11/24. Carss Declaration is irrelevant [FRE Rule 402] to Greyson's Motion to vacate dkt13 Lockout and Preliminary Injunction Order/return seized items, because it is only about the Greyson-Phoenix contract. |

## V. COURT'S CONCLUSIONS OF LAW, OVERRULING DINSMORE FIRM'S OBJECTION TO TONY DIAB DECLARATION [DIAB DECL.

1

2

**FILED BY GREYSON ON 4/2/24, AS PART OF GREYSON'S DKT.474]**

3

| 22. The Court **overrules** the Dinsmore firm's Evidentiary Objection [dkt.402-3 filed 4/17/24, refiled as dkt.493-5 on 4/18/24], which objects to Tony Diab's Declaration [Tony Diab Declaration that is part of Greyson's dkt.474 filed 4/2/24]. | 22. Dinsmore firm's dkt.[402-3] Evidentiary Objection to Tony Diab's Declaration is overruled because Diab's Declaration is highly relevant, and the fact that Dinsmore firm disagrees with it does not make that Declaration excludable pursuant FRE Rule 403 as being "misleading", which is the only evidence Rule Dinsmore firm's Objection cites. Nor is the Objection sustainable on alleged basis that Diab's declaration "is not supported by any evidence." There is no authority that every statement in a declaration must be supported by (other) evidence; that would be nonsensical, because the declaration itself is evidence. Plus Diab's Declaration is corroborated by the Declaration of LPG Managing attorney Daniel March [filed 4/24/24 as part of Greyson dkt.501 Reply], and is corroborated by the Declarations of Scott Eade and Han Trinh [both filed 4/2/24 as part of Greyson dkt.474] and is further corroborated by Han Trinh's Declaration filed 4/24/24 as part of Greyson's dkt.501 Reply. |
|---|---|

The Court makes the foregoing Findings of Fact and Conclusions of Law.

Dated: …………………….

1

2

3

4

5        xxxx

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUBMITTED TO COURT BY GREYSON LAW
CENTER PC, MOVANT ON DKT.290 MOTION IN ADVERSARY PROCEEDING, WHICH IS DKT.749
MOTION IN LPG MAIN BANKRUPTCY CASE**       **62**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
10524 W. Pico Blvd., Ste. 212, Los Angeles, CA 90064
A true and correct copy of the foregoing document entitled (*specify*):

(Proposed) FINDINGS OF FACT AND CONCLUSIONS OF LAW OF GREYSON LAW CENTER PC,
RELATING TO GREYSON'S MOTION [DKT.290 IN AP; DKT.749 MAIN CASE] TO: (1) VACATE
DKT.13 LOCKOUT/PRELIMINARY INJUNCTION ORDER, AND VACATE THE SUCCESSOR ORDER
AS TO GREYSON, AND TO (2) ORDER TRUSTEE/ DINSMORE FIRM TO RETURN TO GREYSON 4
CATEGORIES OF ITEMS SEIZED IN 6/2/23 LOCKOUT, WHICH DKT.13 ORDER DID NOT
AUTHORIZE SEIZURE OF, AND WHICH WERE THEREFORE SEIZED ILLEGALLY

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
___5/15/24___, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See next page

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____,  I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

n/a

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __5/15/24__,  I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

Hon. Scott Clarkson
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/15/24 | Kathleen P. March | /s/ Kathleen P. March |
|---------|-------------------|------------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                        **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

- **Keith Barnett**    keith.barnett@troutman.com, kelley.wade@troutman.com
- **Bradford Barnhardt**    bbarnhardt@marshackhays.com,
  bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael T Delaney**    mdelaney@bakerlaw.com, TBreeden@bakerlaw.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com
- **Jeremy Freedman**    jeremy.freedman@dinsmore.com, nicolette.murphy@dinsmore.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com,
  nicolette.murphy@dinsmore.com;angelica.urena@dinsmore.com;deamira.romo@dinsmore.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Ronald N Richards**    ron@ronaldrichards.com, 7206828420@filings.docketbird.com
- **Jonathan Serrano**    jonathan.serrano@dinsmore.com
- **Zev Shechtman**    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;easter.santamaria@saul.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**    wwall@wall-law.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**