CHRISTOPHER B. GHIO (259094)
Christopher.Ghio@dinsmore.com
JEREMY B. FREEDMAN (308752)
Jeremy.Freedman@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California 92101
Tele: 619.400.0500
Fax:  619.400.0501
Special Counsel to Richard A. Marshack, Chapter 11 Trustee for the Bankruptcy Estate of The
Litigation Practice Group P.C.

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA (SANTA ANA DIVISION)

| | |
|---|---|
| In re:<br><br>THE LITIGATION PRACTICE GROUP, PC,<br><br>Debtor. | Case No. 8:23-bk-10571-SC<br><br>Adv. Proc. No. 8:23-ap-01046-SC<br><br>Chapter 11 |
| RICHARD A. MARSHACK,<br>Chapter 11 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>TONY DIAB, an individual; DANIEL S. MARCH, an individual; ROSA BIANCA LOLI, an individual; LISA COHEN, an individual; WILLIAM TAYLOR CARSS, an individual; ENG TAING, an individual; HENG TAING, an individual; MARIA EEYA TAN, an individual; JAKE AKERS, an individual; HAN TRINH, an individual; JAYDE TRINH, an individual; WES THOMAS, an individual; SCOTT JAMES EADIE, an individual; JIMMY CHHOR, an individual; DONGLIANG JIANG, an individual; MAX CHOU, an individual; OAKSTONE LAW GROUP PC; GREYSON LAW CENTER PC; PHOENIX LAW, PC; MAVERICK MANAGEMENT GROUP, LLC; LGS HOLDCO, LLC; CONSUMER LEGAL GROUP, P.C.; VULCAN CONSULTING | **FOURTH AMENDED COMPLAINT FOR:**<br><br>**(1)    INJUNCTIVE RELIEF;**<br><br>**(2)    AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(3)    AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(4)    AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR ACTUAL FRAUDULENT TRANSFERS;**<br><br>**(5)    AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS;**<br><br>**(6)    TURNOVER; AND**<br><br>**(7)    NEGLIGENCE** |

GROUP LLC; BAT INC. d/b/a COAST
PROCESSING; PRIME LOGIX, LLC;
TERACEL BLOCKCHAIN FUND II LLC;
EPPS; EQUIPAY; AUTHORIZE.NET; WORLD
GLOBAL; OPTIMUMBANK HOLDINGS,
INC. d/b/a OPTIMUM BANK; MARICH BEIN,
LLC; BANKUNITED, N.A.; REVOLV3, INC.;
FIDELITY NATIONAL INFORMATION
SERVICES, INC. d/b/a FIS; WORLDPAY,
LLC; WORLDPAY GROUP; MERIT FUND,
LLC; GUARDIAN PROCESSING, LLC;
PAYLIANCE, LLC; TOUZI CAPITAL, LLC;
SEAMLESS CHEX INC; DWOLLA, INC.;
STRIPE, INC.; and DOES 1 through 100,
inclusive,

Defendants.

For his *Fourth Amended Complaint for (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; (6) Turnover; and (7) Negligence* (the "Complaint"), Plaintiff Richard A. Marshack, the Chapter 11 Trustee (the "Trustee" or "Plaintiff") for the bankruptcy estate (the "Estate") of Debtor The Litigation Practice Group, PC (the "Debtor" or "LPG") in the above-captioned bankruptcy case (the "Bankruptcy Case"), alleges and avers as follows:

**STATEMENT OF JURISDICTION, NATURE OF PROCEEDING, AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O), 1334(b), and General Order No. 13-05 of the District Court for the Central District of California because this is a core proceeding arising in and/or related to the Bankruptcy Case, which is a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and which is pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Court"). Regardless of whether this proceeding is core, non-core, or otherwise, the Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court. The Defendants are hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires defendants to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court. Venue of this adversary proceeding properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a) because this proceeding is related to the Debtor's pending Bankruptcy Case.

**THE PARTIES**

2.      Debtor LPG is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Tustin, California.

3.      Defendant Tony Diab ("Diab") is, and at all material times was, an individual residing in the State of California.

4.      Defendant Daniel S. March ("March") is, and at all material times was, an individual residing in the State of California.

5.    Defendant Eng Taing ("Eng") is, and at all material times was, an individual residing in the State of California.

6.    Defendant Heng Taing ("Heng") is, and at all material times was, an individual residing in the State of California.

7.    Defendant Wes Thomas ("Thomas") is, and at all material times was, an individual residing in the State of California.

8.    Defendant Scott James Eadie ("Eadie") is, and at all material times was, an individual residing in the State of California.

9.    Defendant Jimmy Chhor ("Chhor") is, and at all material times was, an individual residing in the State of California.

10.    Defendant Dongliang Jiang ("Jiang") is, and at all material times was, an individual residing in the State of California.

11.    Defendant Max Chou ("Chou") is, and at all material times was, an individual residing in the State of California.

12.    Defendant Rosa Loli a.k.a. Rosa Bianca Loli a.k.a. Bianca Loli ("Loli") is, and at all material times was, an individual residing in the State of California.

13.    Defendant Oakstone Law Group, PC ("Oakstone") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in La Jolla, California.

14.    Defendant Greyson Law Center, PC ("Greyson") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Costa Mesa, California.

15.    Defendant LGS Holdco, LLC ("LGS") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware.

16.    Defendant Consumer Legal Group, PC ("CLG") is, and at all material times was, a professional corporation organized, existing, and in good standing under the laws of the State of New York.

/ / /

17.    Defendant Maverick Management Group, LLC ("Maverick") is, and at all material times was, a reserved name for a limited liability corporation in the State of Wyoming. On information and belief, Maverick is owned, operated and run by Loli under the direction of Diab.

18.    Defendant Vulcan Consulting Group, LLC ("Vulcan") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Newport Coast, California.

19.    Defendant BAT Inc. d/b/a Coast Processing ("Coast Processing") is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Riverside, California. Coast Processing exercised authority, control and dominion over LPG pre-petition. Coast Processing oftentimes used the name Coast Processing, LLC dba LPG to open financial accounts, including those at Optimum Bank to effectuate the scheme alleged herein in concert with Diab, Eng, Touzi and PECC among others.

20.    Defendant Prime Logix, LLC ("Prime Logix") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Wyoming, with its principal place of business in Long Beach, California. On information and belief, Prime Logix is owned operated and/or run by Loli under the direction of Diab.

21.    Defendant EPPS ("EPPS") is, and at all material times was, a corporation organized, existing, and in good standing under the laws of the State of California.

22.    Defendant EquiPay, LLC ("EquiPay") is an ACH processor.

23.    Defendant World Global ("World Global") is an ACH processor.

24.    Defendant Merit Fund LLC ("Merit Fund") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of California, with its principal place of business in Torrance, California.

25.    Defendant OptimumBank Holdings, Inc. d/b/a Optimum Bank ("Optimum Bank") is, and at all material times was, a bank holding company, with its principal place of business in Fort Lauderdale, Florida.

/ / /

/ / /

5

26.    Defendant Revolv3, Inc. ("Revolv3") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware, with its principal place of business in Laguna Beach, California.

27.    Defendant Fidelity National Information Services, Inc. d/b/a FIS, including but not limited to its subsidiaries Worldpay, LLC, Worldpay Group or any other subsidiaries providing ACH processing services ("FIS").

28.    Defendant Guardian Processing, LLC ("Guardian") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Wyoming, with its principal place of business in Sheridan, Wyoming.

29.    Defendant Payliance, LLC ("Payliance") is and, at all material times was, a limited liability company organized and existing under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio.

30.    Defendant Touzi Capital, LLC ("Touzi") is, and at all material times was, a limited liability company organized and existing under the laws of the State of California, with its principal place of business in Walnut, California. Touzi is owned, controlled and managed by Eng. Touzi and PECC, Corp. share the same office in Walnut California, located at 340 South Lemon Avenue, Unit 8284 Walnut, California 91789.

31.    PECC Corp. ("PECC") is, and all material times was, a Delaware Corporation registered and licensed to do business in the State of California, with its principal place of business listed in Walnut, California. PECC Corp. is owned, controlled and managed by Eng, who is also listed as PECC Corp.'s agent for service of process. PECC and Touzi share the same office in Walnut, California, located at 340 South Lemon Avenue, Unit 8284, Walnut, California 91789.

32.    Defendant Teracel Blockchain Fund II, LLC ("Teracel") is, and at all material times was, a limited liability corporation organized, existing, and in good standing under the laws of the State of Delaware. On information and belief, Teracel is owned, managed and controlled by Eng, Touzi and/or PECC.

/ / /

/ / /

6

33.    Defendant Seamless Chex, Inc. ("Seamless") is, and at all material times was, a corporation organized under the laws of the State of New York, with its principal place of business in New York, New York.

34.    Defendant Dwolla, Inc. ("Dwolla") is, and at all material times was, a corporation organized under the laws of the State of Iowa, with its principal place of business in Des Moines, Iowa.

35.    Defendant Stripe, Inc. ("Stripe") is, and at all material times was, a corporation organized under the laws of the State of Delaware, with its principal place of business in San Francisco, California.

## GENERAL ALLEGATIONS

**A.    LPG'S BANKRUPTCY CASE**

36.    On March 20, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing the Bankruptcy Case.

37.    After the Office of the United States Trustee (the "UST") filed the *Motion by United States Trustee to Dismiss or Convert Case Pursuant to 11 U.S.C. § 1112(b)* [Bankr. Docket No. 21] and creditors Debt Validation Fund II, LLC; MC DVI Fund 1, LLC; and MC DVI Fund 2, LLC filed the *Motion by DVF and MC DVI to Dismiss Chapter 11 Case Pursuant to 11 U.S.C. §§ 105, 305, 349, & 1112, or in the Alternative Convert This Case to Chapter 7 or Appoint a Trustee* [Bankr. Docket No. 44], the Court entered the *Order Directing Unites States Trustee to Appoint Chapter 11 Trustee* [Bankr. Docket No. 58] on May 4, 2021, thereby granting the UST's motion and directing the UST to appoint a Chapter 11 Trustee in the Bankruptcy Case.

38.    Pursuant to the *Acceptance of Appointment as Chapter 11 Trustee* [Bankr. Docket No. 63; the *Order Approving Appointment* is Docket No. 65], on May 8, 2023, the Plaintiff accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case, and he continues to serve in this capacity at this time. The Plaintiff was not appointed until after events of the case and, therefore, bases these allegations on information and belief.

39.    The Plaintiff brings this action solely in his capacity as the Chapter 11 Trustee for the benefit of the Debtor's Estate and its creditors.

/ / /

**B.    LPG'S OWNERSHIP AND MANAGEMENT**

40.    After being disbarred in both California and Nevada for forging a judge's signature and stealing large amounts of client funds, Diab transferred his existing debt resolution practice to LPG. LPG was a law firm that provided consumer debt resolution. LPG serviced more than 50,000 customers across the United States, with annual revenue estimated to total $150,000,000 in 2022.

41.    Despite having been disbarred, Diab controlled and operated LPG since its inception. Diab, however, endeavored to and did conceal his control of LPG. For example, Diab required LPG's employees to call him "Admin," and the name plate on his desk reads, "I don't work here."

42.    To pull this off, Diab rented the law license of March who, at times, masqueraded as the managing partner of LPG but exercised no actual management or control. In fact, Diab sometimes impersonated March and regularly signed March's signature on contracts. LPG's primary DocuSign account was tied to Diab's email address, admin@lpglaw.com, where Diab signed numerous contracts as March. For use of March's law license, March received an annual salary of $600,000 or more, in addition to bonuses and other forms of benefits and compensation.

43.    March's predecessor at LPG was John Thompson. Thompson was the original sole shareholder of LPG from February 2019 to November 2019 and was put in place to hide Diab's control over LPG. Appreciating the wrongful conduct alleged herein, Thompson conveyed his interest in LPG to March in November 2019 over concerns about his and LPG's potential liability. Similar to impersonating March, Diab also impersonated Thompson on many matters, giving legal advice to clients in an attorney capacity, including but not limited to signing certain Service Applications and Service Agreements submitted by LPG to Credit Reporting Services, LLC, among many others.

**C.    LPG'S BUSINESS STRUCTURE**

44.    Historically, LPG had a business partner called Coast Processing, which was owned by Brian Real, Arash Asante Bayrooti, and Diab. Coast Processing was one entity through which LPG ran its in-house marketing and client development operations, among other operational functions at LPG such as backend processing. LPG, however, also had a network of over 100 marketing affiliates from which LPG purchased new clients. In 2021, Diab bought out the other investors in Coast Processing and merged its operations with LPG, including Coast Processing's contracts with other

marketing affiliates. Despite Coast Processing's operations being merged into LPG, Coast Processing exists as a California corporation in good standing. At all relevant times prior to the buyout, Coast Processing exercised authority, dominion and control over LPG in concert with Diab, and used the dba "LPG."

45.     Marketing affiliates referred clients to LPG. The marketing affiliates located clients who were victims of predatory lending or who were subject to claims for large debt that are not legally valid under applicable law. After taking on these clients, LPG paid the marketing affiliates a percentage of the fees earned through the debt resolution process in order to avoid a large upfront cost and spread the risk of non-payment by the client in the future to the marketing affiliate who signed up the client.

46.     LPG clients pay fees to LPG over a period of time, ranging from 18 to 30 months, through monthly debits from their bank accounts. The monthly debits were controlled by Diab, LPG, and at times, as alleged herein, other entities who fraudulently initiated ACH transactions on LPG clients and/or with whom Diab had control, influence and/or had conspired to use to effectuate the fraudulent transfers of client files and funds as alleged herein. Each set of payments due by a client is referred to as an "ACH receivable."

47.     Once a new client had signed up, executed the retainer and payment plan contract, and provided bank ACH information, LPG was responsible for servicing the client file. To this end, LPG utilized software such as DebtPayPro ("DPP") and, more recently, cobbled together a less efficient proprietary software known as LUNA to automate the dispute process, facilitate client communications, and track payment information. For instance, the correspondence sent on behalf of clients to creditors, collection agencies, and/or credit bureaus are automated and generic templates sent via U.S. Mail, facsimile, and/or email. Some cases result in the disputed debt being corrected on the client's credit report, some result in successful challenges based on consumer protection laws, and others result in debt settlement, which the client is responsible to pay in addition to the payment plan. In limited instances, LPG will file a lawsuit in an effort to eliminate a disputed debt. Creating proprietary systems such as LUNA also facilitated Diab's scheme and LPG's fraudulent transfers of client files, ACH information, and ACH debit processing to Phoenix; Prime Logix; Greyson; CLG;

1  Oakstone; Touzi; Eng; Teracel; PECC; and Guardian among others as alleged herein.

2     48.    Because LPG and its marketing affiliates received only incremental payments over a

3  period of time, LPG would often sell the future cash flow to investors, often times referred to as

4  factoring companies, at a discounted rate. The factoring companies that bought the ACH receivables

5  on account of these files often times received a return equal to the difference between the amount the

6  clients owe on the file and the amount the buyer paid for the file or a percentage thereof. LPG sold

7  ACH receivables and client files in this fashion in order to defraud creditors in a pyramid scheme and

8  for improper personal gain. As alleged herein, Diab and LPG sold ACH receivables in such a manner,

9  often times selling the same ACH receivables to multiple entities including Touzi, PECC, Teracel and

10  Eng, among others, in order to defraud creditors, pay prior creditors in a pyramid scheme and/or

11  abscond with the proceeds of such fraudulent transfers.

12     49.    The largest factoring company to have purchased accounts receivable on account of

13  LPG's files is Validation Partners, LLC ("Validation Partners"). Between August 30, 2021 and August

14  17, 2022, Validation Partners spent $66,000,000 to purchase accounts receivable from LPG and 58 of

15  LPG's marketing affiliates. In total, Validation Partners purchased over 40,000 accounts from LPG

16  and its affiliates with a total value greater than $400,000,000.

17  **D.    DIAB'S SCHEME**

18     50.    Diab and his co-conspirators, including Loli, Eng, Touzi, Teracel and PECC among

19  others, caused thousands of LPG client files and/or their associated ACH receivables to be fraudulently

20  transferred, sold or both, and in many instances transferred and/or sold several times over, to factoring

21  companies, alter egos, and others. Diab and others implemented and facilitated such a scheme in order

22  to hide and hinder the discovery of LPG assets and abscond with as much value and money they could

23  squeeze out of LPG client files and associated ACH receivables in order to shield said funds against

24  the mounting number of creditor lawsuits being filed against LPG.

25     51.    All and/or a substantial portion of LPG client files and ACH receivables were transferred

26  and/or sold and resold to avoid and defraud its creditors, hide, hinder and abscond with client files and

27  ACH funds without any knowledge or consent by LPG creditors or clients. Yet, thousands of files

28  have been doubly sold in this manner, effectuating Diab and Eng's Ponzi scheme to defraud creditors.

## E.   DIAB'S CONTROL OVER LPG'S PAYMENT PROCESSING

52.   LPG's monthly revenue from client files is primarily received via ACH payments. In order to process ACH payments, LPG is required to enlist the services of ACH payment processing companies who handle high risk transactions. In this regard, Diab has enlisted numerous ACH processing companies[1] in order to easily switch between different vendors and quickly transfer millions of dollars of LPG funds to entities he controls, including but not limited to Vulcan, Prime Logix, and/or Coast Processing, generally in less than three days from an ACH pull, without oversight and detection and to avoid payment disputes and complications with the vendor itself. Notably, LPG does not have service contracts with EPPS or Marich Bein, among potential others who have processed the majority of LPG's ACH payments. The side deals between Diab and Marich Bein, created to avoid a lawsuit against LPG, evidences Diab's continued influence and control over the companies processing LPG and its Alter Egos' ACH EFTs – property of the Estate.

53.   LPG's monthly gross revenue from receipt of client payments has, pre-petition, ranged between $8.4 million to $11.2 million per month from May 2022 through September 2022. It is estimated that, as of the Petition Date, the current monthly revenue from client accounts that are serviced exceed $15 million dollars per month. Notwithstanding LPG's substantial monthly revenue and relatively low pre-petition monthly expenses (ranging between $2.3 to $3.4 million at the end of 2022), LPG was not accumulating any cash on hand and claimed to have only $4,500 in its bank account on the Petition Date.

## F.   LPG'S PREPETITION CREDITORS

54.   In addition to the financing provided by factoring companies, LPG obtained financing directly from other sources. Both of these sources of financing, having lent hundreds of millions of dollars to LPG, are among the creditors scheduled by the Debtor.

55.   On the Debtor's Schedule D [Bankr. Docket No. 33], the Debtor listed three secured creditors – (a) Diverse Capital, LLC with a claim in the amount of $1,224,810, (b) City Capital NY

---

[1]   The ACH processing companies LPG uses and which Diab controls include, but are not limited to, EPPS; EquiPay; Merit Fund; Authorize.net; World Global; Optimum Bank; BankUnited; Marich Bein; Revolv3; FIS; Guardian; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction.

with a claim in the amount of $2,950,000, and (c) Fundura Capital Group with a claim in the amount of $2,100,000 (together, the "Secured Creditors") – with secured claims totaling $6,274,810.

56.    In addition, on the Debtor's Schedule E/F [Bankr. Docket No. 33], the Debtor scheduled 11 unsecured creditors with priority unsecured claims totaling $374,060.04. These priority unsecured creditors include Indiana Department of Revenue, Washington Department of Labor and Industries, Arizona Department of Economic Security, Arkansas Department of Finance and Administration, California Franchise Tax Board, Georgia Department of Labor, Internal Revenue Service, Mississippi Department of Revenue, Nevada Department of Taxation, Utah State Tax Commission, and Wisconsin Department of Revenue (collectively, the "Priority Unsecured Creditors").

57.    Another group of creditors that the Debtor listed on its Schedule E/F [Bankr. Docket No. 33] are nonpriority unsecured creditors. Those 58 creditors have scheduled claims totaling $141,439,158.05 and include Ajilon; Anthem Blue Cross; Azevedo Solutions Groups, Inc.; Carolina Technologies & Consulting Invoice; Collaboration Advisors; Credit Reporting Service Inc.; CT Corporation – Inv.; Debt Pay Pro; Document Fulfillment Services; EnergyCare, LLC; Exela Enterprise Solutions; First Legal Network, LLC; GHA Technologies Inc.; Harrington Electric, Inc.; Imagine Reporting; Juize, Inc.; Krisp Technologies, Inc.; Liberty Mutual; Marc Lemauviel – Allegra; MarkSYS Holdings, LLC; Netsuite-Oracle; Pitney Bowes; Rapid Credit, Inc.; SBS Leasing A Program of De Lage Landen; Security Solutions; Sharp Business Systems; Streamline Performance, Inc.; Thomson Reuters; Twilio, Inc.; Nationwide Appearance Attorneys; Executive Center, LLC; Outsource Accelerator, Ltd.; TaskUs Holdings, Inc.; Marich Bein, LLC; Validation Partners; MC DVI Fund 1, LLC; MC DVI Fund 2, LLC; Debt Validation Fund II, LLC; Tustin Executive Center; LexisNexus; JP Morgan Chase; Business Centers of America; Michael Schwartz; Anibal Colon Jr.; Kathleen Lacey; David Ulery; Kimberly Birdsong; Kevin Carpenter; Karen Suell; Gloria Eaton; Carolyn Beech; Debra Price; Kenneth Topp; Darcey Williamson, Trustee; James Hammett; Johnny Rizo; Beverly Graham; Kathleen Scarlett; and Geneve and Myranda Sheffield (collectively, the "Nonpriority Unsecured Creditors" and, together with the Secured Creditors and Priority Unsecured Creditors, the "Prepetition Creditors").

/ / /

### G.    LOLI AIDED DIAB IN PERPETUATING HIS FRAUDULENT SCHEME

58.    Prior to the fraudulent transfers, Loli worked closely with Diab at LPG.

59.    In or around June 2022, LPG started to receive threats of litigation and cease and desist letters from LPG creditors, including but not limited to Validation Partners, LLC. In order to separate LPG client files from ACH revenue and protect Diab's revenue stream, Loli and Diab formed Prime Logix in or around May and June 2022. On information and belief, Prime Logix' primary function was intended to initiate, process and receive funds from LPG's client ACH transactions. Prime Logix would then transfer funds as needed to LPG, ensuring that LPG had minimal assets creditors could attach, enforce a judgment or otherwise use to satisfy LPG's debt obligation.

60.    In or around October 2022, Loli was involved in making sure Diab remained hidden behind the scenes and that his name was removed and kept off all files being transferred or intended to be transferred to other entities, including but not limited to emails instructing attorneys not use the name "Tony D" on any files, file notes in DPP or otherwise. Instead, employees were instructed to use "Atty" or "General Counsel."

61.    In or around January 2023, after creditors had filed suit and were seeking the appointment of a receiver over LPG, Diab began to implement his scheme to fraudulently transfer LPG's client files and ACH revenue with the assistance of Loli, Han Trinh[2] ("Han"), Jayde Trinh ("Jayde") and Reid Wood ("Wood") among others as alleged herein. To that end, Diab, Loli, Han, Jayde and Eng, among others alleged herein, created entities including Phoenix, Oakstone, Greyson, Guardian Processing, Maverick Management among other entities as alleged herein. During the fraudulent transfer period, Loli had knowledge of, aided, conspired, and was complicit with Diab in using and transferring LPG assets including client files, ACH receivables, funds and other LPG assets and proprietary information to Phoenix, Oakstone, Guardian, Greyson, Consumer Legal Group and Gallant Law Group, among other fraudulent transferee entities alleged herein.

62.    In or around January 2023, Diab and Loli further formed Maverick to manage the funds, payments and transfer of funds between the fraudulent transferee entities and eventually be the

---

[2]    Due to multiple individuals having the same last name, first names are being used to avoid any confusion. No disrespect is intended to any individual or party.

successor to Prime Logix in controlling all ACH processing and funds for all or some of the newly created fraudulent transferee entities.

63.    In addition to running Prime Logix, which controlled the receipt of funds, Loli was also charged with running Maverick who controlled the distribution of LPG funds. In essence, Loli was Diab's gatekeeper for his golden goose, ACH funds. Per Diab's instructions in written communications, without Loli's approval, none of LPG's funds were to be sent out. In this regard, even when the accounting department at Maverick was required to make payments and send wires out to cover liabilities that needed to be paid to avoid disruption at Greyson, Phoenix or other entities without Loli's authorization, Diab reprimanded the employee insisting that no payment be made under any circumstances until Loli approves. On information and belief and based on the foregoing, the purpose of Diab and Loli's work flow was to ensure: 1) LPG funds were separated from operations leaving the entities minimally capitalized; and 2) that sufficient LPG funds in these separated bank accounts to cover debt obligations, including payments to affiliates for all the entities Diab, Han, Jayde and others had created.

64.    In her role at Prime Logix, Loli was in charge of and complicit with Diab in all fraudulent transfers of LPG client files, ACH receivables and funds including post-petition ACH draws against LPG client accounts through Revolv3, among other ACH processing platforms and NACHA approved banks. Loli intentionally transferred LPG client files, ACH receivables and funds to Prime Logix, among other entities. Loli negligently failed to ensure that all clients whose files and ACH receivables were transferred to and/or processed by Prime Logix provided written authorization for not only the transfer of their file but also written authorization for Prime Logix to initiate the ACH transactions on their account or credit cards.

65.    In her role at Maverick, Loli was the gatekeeper charged by Diab with approving all fraudulent transfers of LPG funds from Prime Logix, among other bank accounts, to the proper fraudulent transferees, affiliates and creditors.

66.    Loli's efforts to aid Diab, however, went beyond fraudulently transferring LPG and Estate funds. Loli was also involved in and assisting Diab, Han and Jayde, among others, in ensuring LPG's most valuable assets according to Diab, employees and attorneys, signed on with Diab's new

14

entities including Greyson, Phoenix, Oakstone and Guardian Processing among others. To this end, Loli recruited prior LPG employees in critical roles including attorneys and "settlement officers." On information and belief and based on statements made by former LPG employees, Loli, Diab, Han and Jayde, among others, have access to and are using copies of the ACH data, client file data and other LPG proprietary data that the Preliminary Injunction prohibited them from accessing and using in order to accomplish Diab's scheme to defraud creditors and harm LPG's Estate and rebuild LPG under the rouse of competition.

67.     On information and belief, Loli is now aiding, assisting and/or heading a new entity or entities, including but not limited to Legacy Law Partners, LLC as part of Diab's scheme designed to and causing harm to LPG's Estate in an effort to recapture LPG's ACH revenue through fraud, misappropriation of LPG assets, proprietary information and client data.

68.     Loli has received substantial assets, compensation and other benefits belonging to LPG as a result of her involvement in Diab's fraudulent scheme to transfer LPG client files, funds, assets and proprietary information. As a proximate cause of the wrongful conduct alleged herein, LPG's Estate and creditors have suffered substantial damages to which Trustee is entitled to and seeks to recover, jointly and severely, all damages, jointly and severely against Loli as an accomplice and co-conspirator with Diab.

## H.      FRAUDULENT TRANSFERS AND DOUBLE PULLS BY DEFENDANTS TOUZI, ENG, AND TERACEL

69.     Eng, Touzi, Teracel and PECC, all of which are controlled by Eng, were in business with and acting in concert with Diab as early as 2021, if not earlier, pursuant to bank records produced by Optimum Bank showing hundreds of thousands of dollars being transferred from LPG to Touzi and PECC.

70.     After selling ACH receivables to Validation Partners and other factoring companies, discussed above, Diab caused LPG to sell receivables to a number of different entities at the direction of Eng, including Touzi, Teracel and PECC, entities Eng owned, controlled and dominated. To wit, at the first meeting of creditors, Tony Diab testified under oath that Eng, who owned PECC, had been "pushing for these files to be moved to a different entity."  Mr. Diab said that Eng was pushing for

this action given the pending lawsuits against the Debtor.  As a result of these discussion, Mr. Diab testified "we essentially agreed in January that we would move them [the files] to the destination that we chose[.]"  The result of this agreement was the execution of certain Finance Agreement and Statements, the creation of Oakstone Law Group, PC, which was intended to house and service those files identified in the Finance Agreement, transfers to Teracel, PECC and others.

71.    Approximately 719 files transferred for $2,070,000 to Teracel, an entity owned, controlled and operated by Touzi, which is headed by Eng and his brother Heng, and for purposes of this Complaint, alter egos of one another including PECC, Touzi and Teracel. Out of the 719 files purchased by Teracel, 643 of those files had already been purchased by Validation Partners. All of these files were sold and resold without Validation Partners nor the client's knowledge or consent. Despite LPG never receiving a payment from Teracel for the purchase of these client files, the ACH receivables associated with those files are being paid out directly to Teracel, which is controlled, dominated and managed by Eng, Touzi and/or PECC and each of them.

72.    Diab further caused client files to be sold for either no and/or little or inadequate consideration, to PECC, Eng and/or Touzi. By and through Eng, Touzi and Guardian, Defendants PECC, Eng, Touzi and/or Teracel have initiated and retained funds resulting from LPG client ACH transactions processed by Payliance pre and post-petition, including but not limited to approximately $551,893.42 in ACH transactions as listed in Invoice No. 230602030241-389051, Invoice Date June 15, 2023 for the Invoice Period, post-petition from May 1, 2023 to May 31, 2023 for which Payliance charged approximately $13,140.40 to process. Notably, the Payliance account used to process these fraudulent ACH transactions is in both Guardian and Eng's name and are identified in the client's bank statements as Touzi.

73.    According to the Declaration of Christine Le [Dkt. No. 159-1] and exhibits attached thereto, between late April and May 2023 and at all relevant times alleged above, Phoenix began receiving complaints from LPG clients indicating that their monthly ACH payments were being taken out twice (double pulls) causing the client's bank account to go negative and incur overdraft fees among other charges. These LPG clients indicated Touzi and Guardian had both taken monthly payments from their bank account in identical amounts. One LPG client reported his account had been

debited four times in one month. Phoenix tracked these double pull complaints by Touzi, Eng, Teracel and Guardian in the chart attached as Exhibit A-1 to the Declaration of Christine Le [Dkt No. 159-1]. Phoenix tracked over 50 different complaints from LPG clients being double pulled totaling approximately $35,805.76 in fraudulent double pulls that Phoenix was made aware of. This does not include double pulls that were not reported. Phoenix, and therefore the Debtor's Estate, reimbursed many of these clients using Estate assets, however, approximately $16,660.16 in double pulls and over draft fees Phoenix was made aware of have not been credited or reimbursed to the clients harmed by such conduct. On information and belief, the conduct alleged above by Eng, Touzi, Teracel and Guardian have and continue to result in double pulls that have not been reported to Phoenix or otherwise. Further, on information and belief, the Guardian account initiating the double pulls complained of by LPG clients to Phoenix, is and at all relevant times was, the same account invoiced by Payliance above and therefore under Eng's control who, as an alter ego of his many corporate forms, is responsible for the harm caused.

74.    Trustee has demanded the return of the client files, ACH receivables and funds held by PECC, Touzi, Eng, Guardian and Teracel. To date, these defendants refuse to turnover property of the Estate and as ordered in the Court's June 23, 2023 Preliminary Injunction [Dkt No. 70], including the $551,893.42 in ACH receivables initiated post-petition and an additional pre-petition $40,000, among other funds, client files and ACH information.

75.    Despite not paying for LPG client files, Touzi, PECC and/or Teracel continue to process duplicate ACH electronic funds transfers in their own name and/or in the name of Eng, Guardian and/or Oakstone via ACH payment processors, most recently to include but not limited to Payliance. Trustee is informed and believes and based thereon alleges that Touzi, Eng, Teracel, PECC and/or Oakstone may also be using additional payment processors including, but not limited to: (i) Paynote by Seamless; (ii) Dwolla; (iii) Stripe; and/or (iv) ACH processing accounts held by other entities named herein.

I.    **FURTHER FRAUDULENT TRANSFERS AND CONVEYANCES TO ALTER EGOS AND OTHER ENTITIES**

76.    In addition to diverting millions of dollars to third parties as alleged herein, Diab has

transferred LPG's entire business to new law firms free of LPG's obligations to its creditors. These new law firms are alter egos of the Debtor and include Oakstone and Phoenix (collectively, the "Alter Egos"). As he did with LPG, Diab controls and operates the Alter Egos, despite them being nominally owned by licensed attorneys from which Diab "rented" their license to practice law in return for unsustainable salaries.

77.    In addition to fraudulent client file and ACH receivable transfers to the Alter Egos, described above, Trustee is informed and believes and based thereon alleges that Diab sold with little or no consideration or fraudulently transferred additional LPG client files to Greyson and CLG without client consent in exchange for a right to receive a percentage of the revenue stream generated by those files (the "Fraudulent Transferees").

78.    In an effort to make LPG appear insolvent, in February 2023, Diab purchased a shell corporation and the website domain phoenixlaw.co and registered the business with the Better Business Bureau. Similarly, around the same time, Diab set up Oakstone with his business partner Wes Thomas, to run LPG's business through these new entities. Diab's actions are contrary to his testimony at the 341(a) meeting of creditors where Diab testified that LPG was not able to afford to service the same clients through LPG.

79.    At or around the Petition Date, Diab admitted that LPG had transferred or sold approximately 15,000 client files to Oakstone (approximately $4.2 million in revenue), 12,000 files to CLG (approximately $3.3 million in revenue), and the remaining files, approximated at slightly less than 40,000, to Phoenix (approximately $11.2 million in revenue). Neither LPG nor Diab obtained consent prior to fraudulently transferring the client files to these alter egos and/or fraudulent transferees. LPG does not have an executed assignment contract for any of the transferred client files to Alter Egos and other entities. As alleged herein, however, client files and ACH receivables were transferred and/or sold and resold to other Defendants, including but not limited to Teracel and PECC, among others in furtherance of Diab's scheme to defraud creditors, hide and abscond with LPG assets, namely the value of monthly ACH receivable income.

80.    Diab, Loli, Han, Jayde and the same group of partners that ran LPG, post-petition, syphoned off money through these new Alter Egos, using LPG's ACH processing accounts at FIS that

identify "Tony Diab" as the user of the account and LPG as the merchant account holder. LPG's FIS account indicates that, from March 28, 2023 through May 19, 2023, Diab netted between $6 million and $9.3 million dollars and transferred such funds to LPG's Alter Egos or Fraudulent Transferees from this one ACH processing company alone.

81.    Further, Diab, Loli, Han, Jayde, Eng, Heng, and/or Touzi have used other ACH processing companies including Payliance (using a Guardian merchant account), among others, to process and transfer property of the Estate through Diab's network of Alter Egos and Fraudulent Transferees, discussed above. With this money, Diab has made payroll from an account held by Vulcan. Clients who requested a refund after their file was transferred to Phoenix were refunded by and through an account held by Prime Logix. Diab and Loli among others have used LPG's Alter Egos and Fraudulent Transferees to re-direct LPG funds for his own personal gain and avoid the protections afforded creditors and the Estate under the Bankruptcy Code. Collectively, the client files, ACH receivables and income received therefrom, and funds transferred to Defendants, the Alter Egos and Fraudulent Transferees, are collectively referred to herein as the "Transfers."

## J.    THE SALE OF LPG'S ASSETS

82.    On July 7, 2023, Richard Marshack in his capacity as the Chapter 11 Trustee moved the Court for an order (A) Approving Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(b) and (B) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Other Agreements ("Sale Motion") [Bankr. Docket No. 191]. After supplemental briefing, addressing multiple oppositions, holding a lengthy hearing and auction wherein Morning Law Group was the highest bidder, the Court granted the Sale Motion entered August 2, 2023 ("Sale Order") [Bankr. Docket No. 352].

### FIRST CLAIM FOR RELIEF

### INJUNCTIVE RELIEF

### (Against All Defendants)

83.    Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 82 as though set forth in full.

84.    Plaintiff requests that this Court maintain and enforce its preliminary injunction [Dkt No.

70] enjoining Defendants and each of them from interfering with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG.

85.    Plaintiff also requests that this Court maintain and enforce its preliminary injunction [Dkt No. 70] prohibiting interference with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG.

86.    Plaintiff also requests that this Court maintain and enforce its preliminary injunction [Dkt No. 70] prohibiting Prime Logix, Maverick and Greyson, Diab, Loli and any other person or entity acting with or in concert with them, including, but not limited to, any staff or other attorneys or employees (including, without limitation Han or Jayde who have been dismissed from the Complaint [Dkt No. 219] but remain bound by the Court's preliminary injunction [Dkt. 70]) from accessing or attempting to access: (1) LPG client files and/or information whether stored electronically or in hardcopy, except as ordered by the Court and/or agreed to by the Chapter 11 Trustee; and (2) LUNA, any other customer relationship management ("CRM") software on which LPG client information, including without limitation the LPG client information subject to the above-described Transfers – is stored; (3) LPG's electronic mail ("email") accounts, including but not limited those hosted by Microsoft 365; (4) LPG's Netsuite account with Oracle; (5) LPG's Airtable account with Formgrid; and (6) LPG's QuickBooks account.

87.    Plaintiff also requests that this Court maintain and enforce its preliminary injunction [Dkt No. 70] prohibiting Prime Logix, Maverick and Greyson, Diab, Loli and any other person or entity acting with or in concert with them, including, but not limited to any staff or other attorneys or employees (including, without limitation Han or Jayde who have been dismissed from the complaint [Dkt. No. 219] but remain bound by the Court's preliminary injunction [Dkt. 70]) from interfering with Plaintiff's administration of the Estate or property of the Estate, without limitation.  Without limitation on the foregoing, Greyson may continue to process ACH electronic funds transfers for the 48 client files specifically identified by Plaintiff, provided that all of pre- and post-petition payroll obligations of Greyson, without limitation, must be made by Greyson alone and without any contribution from ACH electronic funds transfers derived from any source other than the 48 client files specifically identified by Plaintiff.

88.  Plaintiff also requests that this Court maintain and enforce its preliminary injunction [Dkt. No. 70] prohibiting Prime Logix, Oakstone, Touzi, Eng, Heng, Payliance, Seamless, Dwolla, Stripe, Maverick, Diab, Loli and any other person or entity acting with or in concert with them, including, but not limited to any staff or other attorneys or employees from accessing or attempting to access any ACH electronic funds transfers obtained from LPG client files subject to the above-described Transfers.

**SECOND CLAIM FOR RELIEF**

**AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR ACTUAL**

**FRAUDULENT TRANSFERS**

**(Against All Defendants**

**[11 U.S.C. §§ 548(a)(1)(A), 550, and 551]**

89.  Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 88 as though set forth in full.

90.  On or after the date that such Transfers were made, entities to which the Debtor was indebted include the Prepetition Creditors.

91.  The source of the client files, ACH receivables, and funds that are the subject of the Transfers are that of the Debtor.

92.  Diab and Loli, among others named herein, retained possession and control of the client files, ACH receivables, and funds transferred to the Alter Egos and Fraudulent Transferees or elsewhere after the Transfers.

93.  By creating several entities including the Alter Egos and transferring client files, ACH receivables, and funds to such entities, Diab endeavored to conceal the files, ACH receivables, funds, and Transfers, including those to the Fraudulent Transferees.

94.  Diab and Loli, among others named herein, made the Transfers, including those to PECC, Teracel, Touzi, Eng and/or Heng, among others as alleged herein, after LPG faced multiple lawsuits including those initiated by factoring companies. Validation Partners initiated a lawsuit on September 20, 2022 (Case No. 30-2022-01281911-CU-BC-CXC) in the Superior Court of California, County of Orange. DVF II also filed a lawsuit on January 23, 2023 (Case No. 30-2023-01303355-CU-CO-CXC)

in the Superior Court of California, County of Orange. Notably, the lawsuits sought the appointment of a receiver to perform many of the same duties of the Trustee and obtain information, an accounting of LPG funds, assets and ACH receivables and maintain the status quo, among other relief, pending the outcome of the litigation.

95. The client files, ACH receivables, and funds that were subject to the Transfers constitute substantially all of the Debtor's non-exempt property. In other words, the Transfers were of substantially all of the Debtor's assets.

96. The Transfers were made by Diab and Loli, among others named herein, to insiders, Alter Egos of the Debtor that are and/or were at all relevant times under Diab's control and the Fraudulent Transferees.

97. In addition, a substantial portion of LPG's client files and ACH receivables were transferred to multiple Defendants in order to defraud creditors, and to hide, hinder and abscond with LPG assets. This resulted in double pulls on client files causing harm not only to Debtor's Estate but the individual clients themselves, which in turn diminished the Debtor's Estate through loss of clients.

98. In addition, the Debtor received little to no consideration for the Transfers and/or double Transfers.

99. The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the client files, ACH receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets of which approximately $12,000,000 was and currently is being held by Defendant Marich Bein. With all assets and future receivables being transferred out of LPG and with no income stream, LPG filed for bankruptcy protection

100. Thus, the Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor.

101. The Transfers of the Debtor's client files, ACH receivables, and funds occurred within the two years prior to the Petition Date.

102. Accordingly, the Transfers that Diab and Loli, among others named herein, caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(A), and such property,

or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

**THIRD CLAIM FOR RELIEF**

**AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS**

**(Against All Defendants)**

**[11 U.S.C. §§ 548(a)(1)(B), 550, and 551]**

103. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 102 as though set forth in full.

104. At the time of the Transfers, the Debtor received less than reasonably equivalent value in exchange for the Transfers.

105. In many cases, the Debtor received no consideration for the Transfers.

106. In addition, a substantial portion of LPG's client files and ACH receivables were transferred to multiple Defendants in order to defraud creditors, and to hide, hinder and abscond with LPG assets. This resulted in double pulls on client files causing harm not only to Debtor's Estate but the individual clients themselves, which in turn diminished the Debtor's Estate through loss of clients.

107. As alleged herein, the Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the client files, ACH receivable, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

108. On or after the date the Transfers were made, the Debtor was not paying debts to the Prepetition Creditors including Validation Partners and DVF II as they came due.

109. Thus, at the time of the Transfers, or as a result thereof, the Debtor either:

a.    was insolvent on the date the Transfers were made, or became insolvent as a result thereof;

b.    was engaged or was about to engage in a transaction for which any property remaining with the Debtor was of unreasonably small capital;

c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

110. The Transfers of the Debtor's client files, ACH receivables, and funds occurred within the two years prior to the Petition Date.

111. Accordingly, the Transfers that Diab and Loli, among others named herein caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. § 548(a)(1)(B), and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551.

**FOURTH CLAIM FOR RELIEF**

**AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR ACTUAL**

**FRAUDULENT TRANSFERS**

**(Against All Defendants)**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.04(a) and 3439.07]**

112. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 111 as though set forth in full.

113. On or after the date such Transfers were made, entities to which the Debtor was indebted include the Prepetition Creditors.

114. The source of the client files, ACH receivables, and funds that are the subject of the Transfers are that of the Debtor.

115. Diab, Loli, Han and Jayde, among others, retained possession and control of the files, accounts receivable, and funds transferred to the Alter Egos or elsewhere after the Transfers.

116. By creating several entities including the Alter Egos and transferring client files, ACH receivables, and funds to such entities, Diab has endeavored to conceal the client files, ACH receivables, funds, and Transfers.

117. Diab, Loli, Han and Jayde, among others, made the Transfers after LPG faced multiple lawsuits including those initiated by factoring companies. Validation Partners initiated a lawsuit on September 20, 2022 (Case No. 30-2022-01281911-CU-BC-CXC) in the Superior Court of California, County of Orange. DVF II also filed a lawsuit on January 23, 2023 (Case No. 30-2023-01303355-CU-

CO-CXC) in the Superior Court of California, County of Orange. Notably, the lawsuits sought the appointment of a receiver to perform many of the same duties of the Trustee and obtain information, an accounting of LPG funds, assets and accounts receivables and maintain the status quo, among other relief, pending the outcome of the litigation.

118.  The client files, ACH receivables, and funds that were subject to the Transfers constitute substantially all of the Debtor's non-exempt property. In other words, the Transfers were of substantially all of the Debtor's assets.

119.  The Transfers were made by Diab, Loli, Han and Jayde, among others named herein, to insiders, Alter Egos that are under Diab's control and Fraudulent Transferees.

120.  The Debtor received little to no consideration for the Transfers.

121.  In addition, a substantial portion of LPG's client files and ACH receivables were transferred to multiple Defendants in order to defraud creditors, and to, hide, hinder and abscond with LPG assets. This resulted in double pulls on client files by Touzi, Eng and Guardian among others causing harm not only to Debtor's Estate but the individual clients themselves, which in turn diminished the Debtor's Estate through loss of clients.

122.  The Transfers left the Debtor insolvent. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the client files, ACH receivables, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

123.  As such, the Transfers left the Debtor with remaining assets that were unreasonably small in relation to the transaction.

124.  Further, the Debtor was insolvent at the time of the Transfers or became insolvent as a result of the Transfers; the exact aim of Diab's scheme to bankrupt LPG in the event a receiver was appointed. On or after the date such Transfers were made, the Debtor was not paying debts to the Prepetition Creditors, all of which arose before the Transfers were made, as they became due.

125.  Thus, the Transfers were made with actual intent to hinder, delay, or defraud creditors of the Debtor, as well as the duly appointed Receiver.

126. Thus, at the time of the Transfers, without receiving reasonably equivalent value in exchange for the Transfers, the Debtor either:

    a.    was engaged or was about to engage in a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or

    b.    intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

127. The Transfers of the Debtor's client files, ACH receivables, and funds occurred within the four years prior to the Petition Date.

128. At all relevant times, the Transfers of the Debtor's client files, ACH receivables and funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and California Civil Code sections 3439.04(a) and 3439.07 by one or more creditors who held and hold unsecured claims against the Debtor that were and are allowable against his Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

129. Accordingly, the Transfers that Diab and Loli, among others, caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and California Civil Code sections 3439.04(a) and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and California Civil Code section 3439.07.

**<u>FIFTH CLAIM FOR RELIEF</u>**

**AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS**

**(Against All Defendants)**

**[11 U.S.C. §§ 544(b), 550, and 551; Cal. Civ. Code §§ 3439.05, and 3439.07]**

130. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 129 as though set forth in full.

131. At the time of the Transfers, the Debtor did not receive reasonably equivalent value in exchange for the Transfers.

132. In many cases, the Debtor received no consideration for the Transfers.

133. In addition, a substantial portion of LPG's client files and ACH receivables were transferred to multiple Defendants in order to defraud creditors, and to hide, hinder and abscond with LPG assets. This resulted in double pulls on client files by Touzi, Eng and Guardian among others causing harm not only to Debtor's Estate but the individual clients themselves, which in turn diminished the Debtor's Estate through loss of clients.

134. The Debtor became insolvent as a result of the Transfers. The Debtor scheduled $141,813,219.09 in total debt to Prepetition Creditors. However, without the client files, ACH receivables, and funds, the Transfers left the Debtor with approximately $12,186,500 in assets and no income stream; virtually none of those alleged $12,186,500 assets have been turned over to the Trustee despite repeated request for same.

135. The Transfers left the Debtor with remaining assets that were unreasonably small in relation to the transaction.

136. On or after the date that the Transfers were made, the Debtor was not paying debts to the Prepetition Creditors including Validation Partners and DVF II as they came due.

137. At the time of the Transfers, Diab intended the Debtor to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond its ability to pay as they became due.

138. Thus, at the time of the Transfers, or as a result thereof, the Debtor either:

a.    was insolvent on the date the Transfers were made, or became insolvent as a result thereof;

b.    was engaged or was about to engage in a transaction for which any property remaining with the Debtor was of unreasonably small capital; or

c.    intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

139. The Transfers of the Debtor's files, ACH receivables, and funds occurred within the four years prior to the Petition Date.

140. At all relevant times, the Transfers of the Debtor's client files, accounts ACH receivables, and funds are avoidable as fraudulent pursuant to 11 U.S.C. § 544(b) and California Civil Code sections 3439.05 and 3439.07 by one or more creditors who held and hold unsecured claims against

the Debtor that were and are allowable against the Estate under 11 U.S.C. § 502 or that were not and are not allowable only under 11 U.S.C. § 502(e), including, without limitation, the Prepetition Creditors.

141. Accordingly, the Transfers that Diab and Loli, among others named herein, caused the Debtor to make should be avoided as fraudulent under 11 U.S.C. §§ 544(b) and California Civil Code sections 3439.05 and 3439.07, and such property, or the value thereof, should be recovered and preserved for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551 and California Civil Code section 3439.07.

## SIXTH CLAIM FOR RELIEF

### TURNOVER OF ESTATE PROPERTY

### (Against All Defendants)

### [11 U.S.C. § 542]

142. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 141 as though set forth in full.

143. One or all of Diab's Alter Egos or Fraudulent Transferees have possession or control over property of the Estate, including but not limited to the files, accounts receivable, and funds; including LPG's Merchant Account at FIS where Diab has orchestrated the post-petition transfer of in excess of $6,000,000 of Estate Property to entities owned and controlled by Diab and his associates/co-conspirators. None of those approximately $6,000,000 in post-petition payment assets have been turned over to the Trustee despite repeated request for same.

144. The client files, ACH receivables, funds, funds refunded on account of Touzi, Guardian, Teracel, PECC and/or Eng's double pulls alleged herein and potentially other property are property of the Estate and are not of inconsequential value to the Estate.

145. The client files, ACH receivables, and funds that are the subject of the Transfers were paramount to the operation of the Debtor and its ability to pay creditors.

146. Accordingly, the Trustee is entitled to a judgment for turnover of the files, ACH receivable, and funds pursuant to 11 U.S.C. § 542.

/ / /

### SEVENTH CLAIM FOR RELIEF

### NEGLIGENCE

### (Against Defendant Bianca Loli)

147. Plaintiff realleges and incorporates herein by reference each and every allegation contained in Paragraphs 1 through 146 as though set forth in full.

148. After the fraudulent transfer of LPG client files and nonpublic client information, alleged herein, Loli initiated <u>electronic fund transfers</u> ("EFT") from LPG client <u>consumer</u> <u>accounts</u> as the underlined terms are defined by 12 CFR 205.2(b), (e) and 12 CFR 205.3. LPG's consumer client files and accounts that were transferred to Loli and Prime Logix were used to initiate unauthorized EFT / ACH transactions using <u>nonpublic information</u> as defined by 15 USC § 6809(4)(A). An ACH withdrawal transaction falls within the definition of an EFT as defined by 12 CFR 205.2 and 205.3.

149. In Loli's role at LPG and Prime Logix, she owed Debtor, its clients and creditors a duty to follow all laws, rules and regulations regarding the transfer of consumer client files, consumer accounts, nonpublic client information and authorization requirement prior to initiating EFTs / ACH transactions on client accounts, including but not limited to:

    a.  California Model Rules 1.17 and 1.17(b) requiring Loli to provide notice to each fraudulently transferred LPG client to opt out and/or provide written consent from each and every LPG client transferred prior to initiating the transfer at LPG, receiving the client file, ACH information and initiating ACH / EFT transactions on the fraudulently transferred client files at Prime Logix;

    b.  The Electronic Funds Transfer Act (15 USC 1693 *et seq*.) and Regulation E which requires prior written authorization provided by the client and a copy of the authorization be provided to the client prior to initiating an EFT / ACH transaction that debit or credits a consumer's account. 12 CFR 1005.2, *et seq*; 12CFR 1005.2(m); and 15 U.S.C. § 1693a(12).

    c.  12 CFR 1005.10(b) that the entity initiating an ACH debit from a client account obtain written consent prior to initiating the withdrawal and provide a copy of the consent to the client;

      d.   California Financial Code § 4050, *et seq*. (California Financial Privacy Act) prohibiting the dissemination or use of nonpublic client information without client consent by third party entities including but not limited to Prime Logix, Maverick Management and Phoenix among others.  Financial Code §§ 4051.5, 4052, 4053;

      e.   California Department of Consumer Affairs: Consumer Rights in Electronic Fund Transfers: Legal Guide CR-6 requiring written authorization by the client and a copy of which is provided to the client prior to the initiation of the EFT / ACH withdrawal; and

      f.   NACHA (National Automated Clearing House Association) Operating Rules, Article II, Subsection 2.3, et seq. requires express written authorization prior to initiating a pre-arranged ACH payment and that such authorization be kept for two years after the date of the last ACH transaction. See also NACHA Operating Rules, Article II, Subsection 2.3.2.7.

150.  On or between January 2023 and March 31, 2023, Diab and Loli, among others, caused over 30,000 client consumer files containing nonpublic client information to be transferred from LPG to Prime Logix and Phoenix, among other transfers to other entities without client consent. None of the clients transferred to Prime Logix and Phoenix were provided notice of the transfer of their client file or nonpublic client information until after it had already been completed by Diab and Loli in breach of the duties enumerated above. Further, none of the transferred clients provided consent to the transfer or for Prime Logix to initiate ACH transactions on their bank accounts and credit cards in breach of the duties enumerated above. In order to prevent clients from cancelling LPG's services and/or disputing charges initiated by Prime Logix, Diab and Loli continued to use LPG's ACH payment processor account at Revolv3 so that LPG continued to appear on client's bank statements in an attempt to disguise the unauthorized EFT transactions directly and proximately causing damages to the Debtor's Estate and consumer clients.

151.  Loli claims she executed an alleged contract between Phoenix and Greyson, that does not exist, but even if it did, Loli claims she signed it in the capacity as the Chief Executive Officer ("CEO") of Phoenix, a law firm. Along these lines, Loli was listed as the CEO in a Phoenix Newsletter dated February 2023 and in Phoenix' organizational chart. See Exhibit C to Dkt No. 561 in this action.

1  Pursuant to Business and Professions Code section 6165, each director, shareholder, and officer of a

2  professional corporation, including Phoenix, must be licensed to practice law. As such, Loli has held

3  herself out to be a licensed attorney. Alternatively, Loli has negligently held herself out to hold a

4  position she could not hold for purposes of aiding Diab, Han, Jayde, Eadie and others in the fraudulent

5  scheme alleged herein, including but not limited to the unauthorized EFTs alleged above.

6       152.  As a direct and proximate cause of Diab and Loli's conduct alleged herein, Debtor and

7  its Estate have suffered substantial damages, loss of revenue and irreparable harm. Plaintiff is therefore

8  entitled to seek damages for all fraudulent transfers and ACH transactions resulting from Diab and

9  Loli's negligent conduct, jointly and severally, in an amount to be proven at trial.

10                              **RESERVATION OF RIGHTS**

11      Plaintiff reserves the right to bring all other claims or causes of action that the Plaintiff may

12  have against any of the Defendants, on any and all grounds, as allowed under the law or in equity,

13  including but not limited to, those claims not known by the Plaintiff at this time but that he may

14  discover during the pendency of this adversary proceeding.

15                              **PRAYER FOR RELIEF**

16      **WHEREFORE**, the Plaintiff prays for a judgment as follows:

17  **ON THE FIRST CLAIM FOR RELIEF:**

18      1.  <u>Control over ACH Transfers</u>: Entry of a preliminary injunction prohibiting interference

19  with any ACH Transfer being executed pursuant to documents authorizing such transfers to be

20  executed in favor of LPG as follows:

21          a.    <u>Covered Entities and Individuals</u>: The following entities and individuals, and

22  anyone acting on their behalf:  LPG, Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC;

23  CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca

24  Loli; Lisa Cohen, Dan March, Ty Carss, Eng, Heng and all other aliases, agents, or corporate entities

25  affiliated with same shall, absent further order from this Court:

26          b.    <u>Enjoined Conduct re ACH Instructions</u>: No covered entity or individual shall

27  initiate, cause to be initiated, or instruct any company or person that processes ACH transfers and/or

28  their affiliated financial institution including EPPS; EquiPay; Authorize.net; World Global; Optimum

Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Touzi; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875" or any such substantially similar ACH identification transaction, to execute any ACH EFT on any file, financial institution, or current or former client of LPG, to or for the benefit of LPG including but not limited to Oakstone; Greyson; Phoenix; Maverick; Prime Logix; and Vulcan without the express written authorization of Trustee;

       c.    Enjoined Conduct re Bank Accounts: No covered entity or individual shall open, or cause to be opened, any account, whether business or personal, that can receive or send money or anything of value, at any company including banking, financial, or similar institution and/or receive, directly or indirectly, any funds drawn from ACH Transfers;

    2.    Execution of ACH Transfers: Entry of a preliminary injunction prohibiting interference with any ACH Transfer being executed pursuant to documents authorizing such transfers to be executed in favor of LPG as follows:

       a.    Covered Entities and Individuals: All companies capable of processing ACH transfers including EPPS; EquiPay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Touzi; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875," or any such substantially similar ACH identification transaction, are enjoined absent further order of this Court, from**:**

       i.    Enjoined Conduct re ACH Transfers: No covered entity or individual shall initiate or receive funds from any ACH EFT on any file, financial institution, or current or former client of LPG, to or for the benefit of LPG or any one or more of its alleged assignees or transferees including, but not limited to, Oakstone; Greyson; Phoenix; Maverick; Prime Logix and/or Touzi;

       ii.    Injunction Mandating Turnover to Trustee: All covered entities or individuals shall hold in trust any and all funds, receipts, and transfers related to any account, file, or current or former client of LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG (as to 40% of all Transfers for which reasonably fair value was not paid at the time each of the Transfers); Vulcan;

Coast Processing; Prime Logix; Touzi, Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen, Eng, Heng and/or other aliases, agents or corporate entities affiliated with same until expressly directed to release, wire or transfer such funds by the Trustee and to a bank account whose information shall be provided with any such request; and, shall upon request by the Trustee provide an accounting of any and all such funds held in trust to the Trustee upon written request within ten days of said request;

   b. enjoining LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other corporate entities affiliated with same, from incurring, taking out, or pledging any receivables of LPG or any one or more of its alter ego entities, including but not limited to, Oakstone; Phoenix; Maverick; Prime Logix and/or CLG without seeking leave of court;

   c. enjoining LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same, from instructing any person and/or client to cancel and/or demand a refund from LPG; Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

   d. enjoining Bank of America from allowing any and all funds on behalf of Prime Logix or Vulcan, including but not limited to Account Nos. ending in xxx951 and xxx9021 and/or any other accounts to be withdrawn, wired, drawn against, moved, or otherwise transferred without the express consent of the Trustee in writing and to a financial account identified by the Trustee at the time the authorization is provided, and ordering Bank of America to hold in trust such funds;

   e. enjoining all persons identified below from accessing or attempting to gain access whether physically, remotely, electronically, or virtually to the following locations associated with LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or aliases, agents or other corporate entities affiliated

with same: (1) 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; (2) 17542 17th Street, Suite 100, Tustin, California 92780; (3) LUNA's domain located on AWS; (4) DPP Data or accounts; (5) Accounting Data and/or accounts on NetSuite, QuickBooks and Microsoft SharePoint, G-Suite or other permanent or cloud based systems; (6) ACH processing accounts, whether individual, merchant or business, held at any ACH processing or affiliated financial institution, including but not limited to EPPS; EquiPay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Touzi; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification transaction; (7) Vulcan and/or Prime Logix's financial accounts at Bank of America, including but not limited to Account Nos. ending in xxx951 and xxx9021; and (8) the Email Data, as follows:

        (i)     Tony Diab;

        (ii)    Rosa Loli aka Rosa Bianca Loli aka Bianca Loli;

        (iii)   Lisa Cohen;

        (iv)   Daniel March;

        (v)    Eng Taing;

        (vi)   Maria Eeya Tan;

        (vii)  Jake Akers;

        (viii) Han Trinh;

        (ix)   Jayde Trinh;

        (x)    Wes Thomas;

        (xi)   William Taylor "Ty" Carss;

        (xii)  Scott James Eadie;

        (xiii) Jimmy Chhor;

        (xiv) Brad Lee;

        (xv)  Dongliang Jiang;

        (xvi) Heng Taing;

        (xvii) Max Chou.

1    f.  requiring the United States Postal Service to re direct all mail directed to (1) LPG,

2 17542 17th Street, Suite 100, Tustin, California 92780; (2) Oakstone, 888 Prospect Street, Suite 200

3 La Jolla, California 92037; (3) Phoenix, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine,

4 California 92612 and/or P.O. Box 749, Millville, New Jersey 08332; (4) Prime Logix, 3347 Michelson

5 Drive, Suites 400, 410 & 420, Irvine, California 92612; (5) CLG, P.O. Box 412 Elmsford, New York

6 10523; (6) Greyson, 3347 Michelson Drive, Suites 400, 410 & 420, Irvine, California 92612; (7)

7 and/or any other address associated with such entities, and ordering the United States Postal Service

8 to forward and re-direct such mail to an address provided by the Trustee until such time as ordered by

9 the Court.

10 **ON THE SECOND AND THIRD CLAIMS FOR RELIEF:**

11   3. Avoiding, recovering, and preserving the two-year transfers against all Defendants;

12 **ON THE FOURTH AND FIFTH CLAIMS FOR RELIEF:**

13   4. Avoiding, recovering, and preserving the four-year transfers against all Defendants;

14 **ON THE SIXTH CLAIM FOR RELIEF:**

15   5. Ordering turnover to the Trustee of the following:

16   a. Information regarding any and all persons who signed a Legal Services Contract

17 with LPG or whose file was purchased or otherwise transferred to LPG, or any one or more of its alter

18 egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick;

19 LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa

20 Bianca Loli aka Bianca Loli; Lisa Cohen; Eng; Heng; Max Chou and/or other aliases, agents or

21 corporate entities affiliated with same, for which the client's file remains open and/or continues to

22 make payments under an agreed upon installment contract.

23   b. All client files, including but not limited to names, contact information, client file

24 management, communications, account information, letters, pleadings, communications, payment

25 history, financial account information, credit reports, executed legal services contracts, ACH

26 contracts, executed installment contracts, account balances, debts in dispute, payment history, file

27 status, settlements, debt invalidations and/or any other information created, managed and stored

28 electronically utilizing DPP software program's software license, key or account, that was opened and

is maintained and controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen; Eng; Heng; Max Chou and/or other aliases, agents or corporate entities affiliated with same;

c.    All administrative usernames and passwords that give the Trustee access to any DPP account held, maintained or controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

d.    All client files, including but not limited to names, contact information, client file management, communications, account information, letters, pleadings, communications, payment history, financial account information, credit reports, executed legal services contracts, ACH contracts, executed installment contracts, account balances, debts in dispute, payment history, file status, settlements, debt invalidations and/or any other information  created, managed and stored electronically utilizing proprietary software program "LUNA" hosted on AWS and located at the current domain "lunapp.com" that is maintained and controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

e.    All administrative usernames and passwords that give the Trustee access to any AWS account where LUNA, its software program, databases and client information is held, stored and hosted that is maintained or controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

f.    All ACH files related to client information, details, accounts, history of EFTs, payments, amounts held, interest on held amounts, penalty fees, nonsufficient fund fees or other ACH related charges to the clients stored electronically or in hard copy associated with ACH processing

service providers and/or affiliated financial institutions, including but not limited to EPPS; EquiPay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification transaction;

g.    All files, information, reports, spreadsheets, account numbers, routing numbers, and databases related to transfer of funds out of any account opened, maintained and controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same that were processed and executed by ACH processing service providers and/or their affiliated financial institutions, including but not limited to EPPS; EquiPay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; and/or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification transaction;

h.    All administrative usernames and passwords that give the Trustee access to any ACH processing accounts, software, database or other program at ACH processing service providers and/or affiliated financial institutions, including but not limited to EPPS; EquiPay; Authorize.net; World Global; Optimum Bank; Marich Bein; BankUnited, N.A.; Revolv3; FIS; Guardian; Payliance; Seamless; Dwolla; Stripe; or any entity associated with the ACH identification transaction "LPG 949-226-6262 #5 2363 RT 9 TOMS RIVER NJ 0875", or any such substantially similar ACH identification transaction, used to upload or input client information, initiate client ACH EFTs, transfer client ACH funds to outside financial institutions or otherwise manage any account opened, maintained and controlled by  LPG, or any one or more of its alter egos, including but not limited to Oakstone, Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing; Prime Logix; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or other aliases, agents or corporate entities affiliated with same;

i.      All accounting records, files, data and information for LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC; CLG; Vulcan; Coast Processing and Prime Logix stored on NetSuite; QuickBooks and Microsoft SharePoint; G-Suite or other permanent or cloud based systems;

j.      All contracts, records, reports, information, data and details regarding the transfer or sale of any client files or future client ACH payments to any other law firm, organization, corporate entity, person(s), or investment group (otherwise known as factoring companies) including but not limited to, Oakstone; Greyson; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

k.      All contracts, records, reports, information, data, cost basis, payment information and details regarding the transfer or receipt of any client files or future client ACH payments from any other law firm, organization, corporate entity, person(s), investment or marketing group (otherwise known as capping companies) to LPG or any one or more of its alter egos including, but not limited to, Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

l.      All information, data, tables, spreadsheets and reports regarding client information stored on Airtable cloud based data management system used by LPG, or any one or more of its alter egos, including but not limited to, Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG to manage the aforementioned information;

m.      All administrative usernames and passwords that give the Trustee access to any Airtable account opened, maintained or controlled by LPG, or any one or more of its alter egos, including but not limited to Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG;

n.      All email accounts related to LPG, or any one or more of its alter egos, including but not limited to, Oakstone; Phoenix; Maverick; LGS Holdco, LLC and/or CLG stored maintained and/or hosted on Office 365, G-suite or any other email server, whether physical or cloud based servers;

o.      All post-petition client ACH payments processed and received by LPG, or any one or more of its alter egos or fraudulent transferees, including but not limited to Oakstone; Greyson; Phoenix; Maverick; Prime Logix; CLG; LGS Holdco, LLC; Vulcan; Tony Diab; Rosa Loli aka Rosa Bianca Loli aka Bianca Loli; Lisa Cohen and/or any other aliases, agents or entities associated with

1  same related to clients who entered into a legal services contract pre-petition and who have received

2  the services provided in the contract;

3        p.     All rental payments made by Tony Diab; Lisa Cohen; Vulcan or Prime Logix or

4  from Bank of America Account No. ending in xxx9021 to any landlord(s), property management

5  company(s) or owner(s), including but not limited to Jason Oppenheim of real property located at

6  20101 S.W. Cypress Street, Newport Beach, California 92660 and at 8 Almanzora, Newport Coast,

7  California 92657 utilizing funds originating from LPG, or any one or more of its alter ego entities or

8  fraudulent transferees, including but not limited to, Oakstone; Phoenix; Maverick; CLG; Vulcan

9  and/or Prime Logix; and

10        q.     All rental payments made by Tony Diab; Lisa Cohen; Vulcan or Prime Logix or

11  from Bank of America Account No. ending in xxx9021 to any landlord(s), property management

12  company(s) or owner(s), including but not limited to 8 Almanzora, LLC, 310 West Profit Pro, Inc.,

13  Lisa Delaney and/or Tong Gan of real property located at 8 Almanzora, Newport Coast, California

14  92657 utilizing funds originating from LPG, or any one or more of its alter ego entities or fraudulent

15  transferees, including but not limited to, Oakstone; Phoenix; Maverick; CLG; Vulcan and/or Prime

16  Logix.

17  **ON ALL CLAIMS FOR RELIEF:**

18        6.     Granting any other and further relief as the Court deems just and proper.

19

20  Dated: June 28, 2024                     Respectfully submitted,

21                                       DINSMORE & SHOHL LLP

22                                       By:_/s/ Jeremy B. Freedman_____
                                       Christopher B. Ghio

23                                         Jeremy B. Freedman

24                                         Special Counsel to Richard A. Marshack,
                                       Chapter 11 Trustee

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, California  92101

A true and correct copy of the foregoing document entitled (*specify*): **FOURTH AMENDED COMPLAINT FOR: (1) INJUNCTIVE RELIEF; (2) AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR ACTUAL FRAUDULENT TRANSFERS; (3) AVOIDANCE, RECOVERY, AND PRESERVATION OF TWO-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS; (4) AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR ACTUAL FRAUDULENT TRANSFERS; (5) AVOIDANCE, RECOVERY, AND PRESERVATION OF FOUR-YEAR CONSTRUCTIVE FRAUDULENT TRANSFERS; (6) TURNOVER; AND (6) NEGLIGENCE**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On June 28, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| | |
|---|---|
| Keith Barnett<br>on behalf of Defendant Payliance, LLC | keith.barnett@troutman.com<br>kelley.wade@troutman.com |

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On June 28, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COPY**
Honorable Scott C. Clarkson
United States Bankruptcy Court. Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

**3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 28, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 28, 2024 | Angelica Urena | /s/ *Angelica Urena* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                Page 40                          **F 9013-3.1.PROOF.SERVICE**

**1.**    <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

| | |
|---|---|
| Bradford Barnhardt<br>on behalf of Plaintiff Richard A. Marshack | bbarnhardt@marshackhays.com<br>bbarnhardt@ecf.courtdrive.com<br>alinares@ecf.courtdrive.com |
| Eric Bensamochan<br>on behalf of Interested Party Courtesy NEF | eric@eblawfirm.us<br>G63723@notify.cincompass.com |
| Christopher Celentino<br>on behalf of Plaintiff Richard A. Marshack | christopher.celentino@dinsmore.com<br>caron.burke@dinsmore.com |
| Christopher Celentino<br>on behalf of Trustee Richard A Marshack (TR) | christopher.celentino@dinsmore.com<br>caron.burke@dinsmore.com |
| Leslie A Cohen<br>on behalf of Defendant Rosa Bianca Loli | leslie@lesliecohenlaw.com<br>jaime@lesliecohenlaw.com<br>clare@lesliecohenlaw.com |
| Leslie A Cohen<br>on behalf of Interested Party Courtesy NEF | leslie@lesliecohenlaw.com<br>jaime@lesliecohenlaw.com<br>clare@lesliecohenlaw.com |
| Michael T Delaney<br>on behalf of Defendant Fidelity National Information<br>Services, Inc. dba FIS | mdelaney@bakerlaw.com<br>tbreeden@bakerlaw.com |
| Alan W Forsley<br>on behalf of Interested Party Courtesy NEF | Alan.forsley@flpllp.com<br>awf@fkllawfirm.com<br>awf@fl-lawyers.net<br>addy@flpllp.com |
| Jeremy Freedman<br>on behalf of Plaintiff Richard A. Marshack | jeremy.freedman@dinsmore.com |
| Jeremy Freedman<br>on behalf of Trustee Richard A. Marshack (TR) | jeremy.freedman@dinsmore.com |
| Christopher Ghio<br>on behalf of Plaintiff Richard A. Marshack | christopher.ghio@dinsmore.com<br>nicolette.murphy@dinsmore.com<br>karina.reyes@dinsmore.com<br>deamira.romo@dinsmore.com |
| Christopher Ghio<br>on behalf of Trustee Richard A. Marshack (TR) | christopher.ghio@dinsmore.com<br>nicolette.murphy@dinsmore.com<br>karina.reyes@dinsmore.com<br>deamira.romo@dinsmore.com |
| Eric D Goldberg<br>on behalf of Defendant Stripe, Inc. | eric.goldberg@dlapiper.com<br>eric-goldberg-1103@ecf.pacerpro.com |
| Richard H Golubow<br>on behalf of Creditor Debt Validation Fund II, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Richard H Golubow<br>on behalf of Creditor MC DVI Fund 1, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Richard H Golubow<br>on behalf of Creditor MC DVI Fund 2, LLC | rgolubow@wghlawyers.com<br>jmartinez@wghlawyers.com<br>svillegas@wghlawyers.com |
| Sweeney Kelly<br>on behalf of Defendant Fidelity National Information<br>Services, Inc. | kelly@ksgklaw.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*          Page 41          **F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| Sweeney Kelly<br>on behalf of Defendant Fidelity National Information Services, Inc. dba FIS | kelly@ksgklaw.com |
| Sweeney Kelly<br>on behalf of Defendant Worldpay Group | kelly@ksgklaw.com |
| Sweeney Kelly<br>on behalf of Defendant Worldpay, LLC | kelly@ksgklaw.com |
| Meredith King<br>on behalf of Defendant Gallant Law Group | mking@fsl.law<br>ssanchez@fsl.law<br>jwilson@fsl.law |
| Meredith King<br>on behalf of Interested Party Courtesy NEF | mking@fsl.law<br>ssanchez@fsl.law<br>jwilson@fsl.law |
| David S Kupetz<br>on behalf of Defendant Marich Bein, LLC | David.Kupetz@lockelord.com<br>mylene.ruiz@lockelord.com |
| Matthew A. Lesnick<br>on behalf of Defendant Optimumbank Holdings, Inc. d/b/a Optimum Bank | matt@lesnickprince.com<br>matt@ecf.inforuptcy.com<br>jmack@lesnickprince.com |
| Daniel A Lev<br>on behalf of Defendant Consumer Legal Group, PC | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Daniel A Lev<br>on behalf of Defendant LGS Holdco, LLC | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Daniel A Lev<br>on behalf of Interested Party Courtesy NEF | daniel.lev@gmlaw.com<br>cheryl.caldwell@gmlaw.com<br>dlev@ecf.courtdrive.com |
| Yosina M Lissebeck<br>on behalf of Plaintiff Richard A. Marshack | yosina.lissebeck@dinsmore.com<br>caron.burke@dinsmore.com |
| Daniel S March<br>on behalf of Defendant Daniel S. March | marchlawoffice@gmail.com<br>marchdr94019@notify.bestcase.com |
| Kathleen P. March<br>on behalf of Defendant Greyson Law Center PC | kmarch@bkylawfirm.com<br>kmarch3@sbcglobal.net<br>kmarch@sbglobal.net |
| Kathleen P. March<br>on behalf of Defendant Han Trinh | kmarch@bkylawfirm.com<br>kmarch3@sbcglobal.net<br>kmarch@sbglobal.net |
| Kathleen P. March<br>on behalf of Defendant Jayde Trinh | kmarch@bkylawfirm.com<br>kmarch3@sbcglobal.net<br>kmarch@sbglobal.net |
| Richard A Marshack (TR) | pkraus@marshackhays.com<br>rmarshack@iq7technology.com<br>ecf.alert+Marshack@titlexi.com |
| Kenneth Misken<br>on behalf of U.S. Trustee United States Trustee (SA) | Kenneth.M.Misken@usdoj.gov |
| Queenie K Ng<br>on behalf of U.S. Trustee United States Trustee (SA) | queenie.k.ng@usdoj.gov |
| Lisa Patel<br>on behalf of Defendant OptimumBank Holdings, Inc. | lpatel@lesnickprince.com<br>jmack@lesnickprince.com<br>jnavarro@lesnickprince.com |
| Douglas A Plazak<br>on behalf of Defendant Scott James Eadie | dplazak@rhlaw.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                              Page 42                    **F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| Daniel H Reiss<br>on behalf of Defendant Touzi Capital, LLC | dhr@lnbyg.com<br>dhr@ecf.inforuptcy.com |
| Daniel H Reiss<br>on behalf of Defendant Eng Taing | dhr@lnbyg.com<br>dhr@ecf.inforuptcy.com |
| Ronald N Richards<br>on behalf of Defendant Consumer Legal Group, PC | ron@ronaldrichards.com<br>7206828420@filings.docketbird.com |
| Jonathan Serrano<br>on behalf of Plaintiff Richard A. Marshack | jonathan.serrano@dinsmore.com |
| Zev Shechtman<br>on behalf of Interested Party Morning Law Group, P.C. | Zev.Schechtman@saul.com<br>zshechtman@gtlaw.com<br>easter.santamaria@saul.com |
| Howard Steinberg<br>on behalf of Defendant BankUnited, N.A | steinbergh@gtlaw.com<br>pearsallt@gtlaw.com<br>howard-steinberg-6096@ecf.pacerpro.com |
| Andrew Still<br>on behalf of Interested Party Courtesy NEF | astill@swlaw.com<br>kcollins@swlaw.com |
| United States Trustee (SA) | ustpregion16.sa.ecf@usdoj.gov |
| William J Wall<br>on behalf of Witness Bradford Lee | wwall@wall-law.com |
| Johnny White<br>on behalf of Interested Party Courtesy NEF | JWhite@wrslawyers.com<br>jlee@wrslawyers.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.