1  Ira D. Kharasch (CA Bar No. 109084)
   ikharasch@pszjlaw.com
2  Steven J. Kahn (CA Bar No. 076933)
   skahn@pszjlaw.com
3  Victoria A. Newmark (CA Bar No. 183581)
   vnewmark@pszjlaw.com
4  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
5  Los Angeles, California 90067-4003
   Telephone: 310-277-6910
6  Facsimile:  310-201-0760

7  Attorneys for Consumer Legal Group P.C.

8           **UNITED STATES BANKRUPTCY COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| 10  In re | Case No. 8:23-bk-10571-SC |
| 11  THE LITIGATION PRACTICE GROUP P.C., | Adv. No. 8:23-ap-01046-SC |
| 12         Debtor. | Chapter 11 |
| 13  MARSHACK, | **NOTICE OF MOTION AND MOTION OF CONSUMER LEGAL GROUP P.C. FOR ORDER:** |
| 14         Plaintiff, | **(A) VACATING OR, IN THE** |
|     v. | **ALTERNATIVE, MODIFYING AS TO** |
| 15  DIAB, et al., | **CONSUMER LEGAL GROUP P.C. THAT** |
| 16 | **CERTAIN ORDER ENTERED JUNE 23,** |
|         Defendants. | **2023 ON TRUSTEE, RICHARD** |
| 17 | **MARSHACK'S OMNIBUS MOTION** |
| 18 | **GRANTING: 1) TURNOVER OF ESTATE PROPERTY AND RECORDED** |
| 19 | **INFORMATION PURSUANT TO 11 U.S.C. § 542; 2) PRELIMINARY** |
| 20 | **INJUNCTION; 3) LOCK-OUT; 4) RE-DIRECTION OF UNITED STATES** |
| 21 | **PARCEL SERVICES MAIL; 5) ORDER TO SHOW CAUSE; AND 6) OTHER** |
| 22 | **RELIEF [DOCKET NO. 70];** |
| 23 | **(B) RELEASING FUNDS FROZEN AT OPTIMUM BANK TO CLG; AND (C) GRANTING RELATED RELIEF** |
| 24 | Date:      January 15, 2025 |
| 25 | Time:      1:30 p.m. |
|    | Place:     5C -Via ZoomGov |
| 26 |            411 West Fourth Street |
|    |            Santa Ana, California |
| 27 | Judge:     Hon. Scott C. Clarkson |

28

4881-9351-2951.9 15344.001

*Vertical left margin:* PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / LOS ANGELES, CALIFORNIA

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE CHAPTER 11 TRUSTEE; THE ABOVE-CAPTIONED DEBTOR, AND OTHER PARTIES IN INTEREST, AND THEIR RESPECTIVE COUNSEL OF RECORD, IF ANY:**

**PLEASE TAKE NOTICE** that on January 15, 2025, at 1:30 p.m., in Courtroom 5C, via ZoomGov, in the above-entitled Court, located at 411 West Fourth Street, Courtroom 5C, Santa Ana, CA 92701, Consumer Legal Group P.C. ("CLG") will and hereby does move (the "Motion") pursuant to Section 105 of Title 11 of the United States Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure for entry of an Order:

(1)      vacating or, in the alternative, modifying the Court's *Order on Trustee, Richard Marshack's Omnibus Motion Granting: 1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; 2) Preliminary Injunction; 3) Lock-Out; 4) Re-Direction of United States Parcel Services Mail; 5) Order to Show Cause Re Compliance With Court Order; and 6) Other Relief as Necessary to Efficient Administration of This Matter* [Docket No. 70] entered June 23, 2023 (the "Turnover/PI Order"), as to CLG;

(2)      directing the release to CLG of the funds being held at Optimum Bank, account number xxx8253 titled to Consumer Legal Group PC and labeled Consumer Legal PC Reserve Acct (the "Optimum Account");

(3)      relieving CLG from the obligation to allow the Trustee administrator access to its CRM; and

(4)      granting such other and further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE** that, unless otherwise ordered by the Court, and pursuant to this Court's "Notice Re Video And Telephonic Appearance Procedures", video and audio connection information for each hearing will be provided on Judge Clarkson's publicly posted hearing calendar, which may be viewed online at: http://ecf.ciao.cacb.uscourts.gov/CiaoPosted/default.aspx, and then selecting "Judge Clarkson" from the tab on the left-hand side of the page.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

As noted above, hearing participants may view and/or listen to hearings before Judge Clarkson using ZoomGov free of charge. Individuals may appear by ZoomGov video and audio using a personal computer (equipped with camera, microphone and speaker), or a handheld mobile device (such as an iPhone). Individuals may participate by ZoomGov audio only using a telephone (standard telephone charges may apply). Neither a Zoom nor a ZoomGov account are necessary to participate, and no pre-registration is required. The audio portion of each hearing will be recorded electronically by the Court and constitute its official record. Members of the general public, however, may only view the hearings from the Courtroom, which will remain open.

**PLEASE TAKE FURTHER NOTICE** that the Motion is based on the attached Declaration of Jason J. Rebhun (the "<u>Rebhun Declaration</u>"), the attached Memorandum of Points and Authorities, and the record of this adversary proceeding and the main bankruptcy case.

**PLEASE TAKE FURTHER NOTICE** that the grounds for CLG's request are that changed circumstances warrant dissolution or, in the alternative, modification of the order as to CLG. The Turnover/PI Order was initially sought by the Trustee shortly after his appointment and concurrently with the filing of his fraudulent transfer complaint against CLG and other law firms that had acquired client files from LPG prepetition. The Court issued the order based on concerns of potential consumer fraud and alleged absence of consideration paid by CLG and other law firms to the LPG estate, resulting in extremely broad directives including that CLG, among other things, turnover all of its client files, administrative usernames and passwords, ACH files related to LPG client information, ACH transfer data, accounting records, email data, and ACH payments. The Court's order also directed CLG's banks to hold in trust all ACH funds on any client file (even non-LPG client files) pending further written instruction by the Trustee. Until lifted, these latter provisions caused, among other things, all of CLG's operating accounts to be completely frozen by its banks for a period of time, to the serious detriment of CLG and the service of thousands of consumer clients. The remaining provisions, however, remain in place, without basis and to the continuing detriment of CLG, as shown below.

1    The Trustee's basis for enjoining CLG was the flawed (and since disproven) premise that

2    CLG is an alter ego of LPG or its former principal Tony Diab and that the sale of client files from

3    LPG to CLG was not the result of arm's length negotiation.  The Trustee thereafter disavowed that

4    premise and, in seeking the Court's approval for CLG to be his stalking horse bidder, described

5    CLG to the Court as "legally providing case specific legal services tailored to the consumer's

6    needs"; "A model very different than the boiler plate legal services offered by LPG"; and "a

7    reputable law firm providing valuable legal services in compliance with applicable law."  The

8    Trustee's foregoing admissions are consistent with the evidence that CLG has since provided to

9    him, including evidence confirming that its receipt of client files from LPG was the result of an

10   arm's length transaction pursuant to which LPG received fair consideration in the form of the

11   forgiveness of approximately $3.1 million of LPG's indebtedness owing to third parties and the

12   benefit of $3 million of cash payments from CLG.

13   In light of the substantially changed circumstances, as further described in the attached

14   Memorandum of Points and Authorities and Rebhun Declaration, the Turnover/PI Order should be

15   vacated, or at a minimum modified, as to CLG, including the release to CLG of the approximately

16   $1 million currently frozen in the Optimum Account and relieving CLG from the obligation to allow

17   the Trustee administrator access to its CRM.

18   **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f),

19   any party objecting to the relief sought in the Motion must file written objections with the

20   Bankruptcy Court and must serve such objections upon counsel listed above and the Office of the

21   United States Trustee not later than 14 days before the date set for hearing. Failure to file and serve

22   a timely written opposition may be deemed to constitute consent to the relief requested in the

23   Motion, per LBR 9013-1(h).

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Dated:  December 23, 2024          PACHULSKI STANG ZIEHL & JONES LLP

2

3                                    By    */s/ Victoria A. Newmark*
                                          Ira D. Kharasch
4                                          Steven J. Kahn
                                          Victoria A. Newmark
5

6                                          Attorneys for Consumer Legal Group P.C.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

<b><u>Page</u></b>

I.      PRELIMINARY STATEMENT...................................................................................... 6

II.     BACKGROUND....................................................................................................... 7

III.    ARGUMENT ........................................................................................................... 8

        A.      The Trustee Cannot Demonstrate A Likelihood of Success on the Merits.............. 9

                1.      After the Hearing on the Turnover/PI Order, CLG Was Vetted in
                        Connection with the Asset Sale Process Run by the Trustee, and
                        Thereafter Found by the Trustee to Be a "Reputable Law Firm"............... 10

                2.      The Only "Evidence" In Support of the Trustee's Fraudulent
                        Transfer Claims Are Hearsay Statements by Non-Parties to the
                        Relevant Transactions ....................................................................... 12

        B.      The Trustee Also Has Not Satisfied The Remaining Factors For A
                Preliminary Injunction ................................................................................ 13

        C.      The Turnover Order/Injunction Exceeds the Bankruptcy Court's Authority
                Under Bankruptcy Code Section 105(a) ......................................................... 16

IV.     CONCLUSION...................................................................................................... 17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Caribbean Marine Servs. Co., Inc. v. Baldrige*
  844 F.2d 668 (9th Cir. 1988) ............................................................................................ 14

*Colorado River Indian Tribes v. Town of Parker*
  776 F.2d 846 (9th Cir. 1985) ............................................................................................ 14

*CTIA-The Wireless Ass'n v. City of Berkeley*
  854 F.3d 1105 (9th Cir. 2017) ............................................................................................ 8

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) ................................... 9

*Granfinanciera v. Nordberg*
  492 U.S. 33, 109 S.Ct. 2782 (1989) .................................................................................. 17

*Grupo Mexicano de Desarrollo v. Alliance Bond Fund Inc.*, 527 U.S. 308, 119 S.Ct. 1961 (1999)
  .................................................................................................................................... 16

*In re Excel Innovations, Inc.*
  502 F.3d 1086 (9th Cir. 2007) ......................................................................................... 14

*In re Mariner Health Cent., Inc.*
  2023 Bankr. LEXIS 95 (Bankr. N.D. Cal. Jan. 12, 2023).................................................. 16

*In re One Times Square Assocs. Ltd. P'ship*
  159 B.R. 695 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d
  Cir. 1994)....................................................................................................................... 16

*Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*
  15 F.3d 1222 (1st Cir. 1994) ............................................................................................. 9

*Miller v. Mott (In re Team Systems International, LLC)*
  2023 WL 1428572 (Bankr. D. Del. Jan. 31, 2023)............................................................ 16

*Pac. Gas & Elec. Co. v. Cal. Pub. Utils. Comm'n (In re Pac. Gas & Elec. Co.)*
  263 B.R. 306 (Bankr. N.D. Cal. 2001)................................................................................ 8

*Republic of the Philippines v. Marcos*
  862 F.2d 1355 (9th Cir. 1988) ........................................................................................... 9

*Salazar v. Buono*
  559 U.S. 700 (2010) .......................................................................................................... 8

*Winter v. Natural Resources Defense Council, Inc.*
  555 U.S. 7 (2008)........................................................................................................ 13, 16

**Statutes**

11 U.S.C. § 105 .................................................................................................................. 8, 16

11 U.S.C. § 105(a) .................................................................................................................. 8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

The Turnover/PI Order was issued based on what has now proven to be a false premise from which the Trustee walked away: that CLG supposedly is not a bona fide law firm or purchaser of LPG client files, and, instead, is an alter ego of LPG and its former principal, Tony Diab.  Since the Turnover/PI Order issued, CLG has produced documentary proof to the Trustee establishing that any concerns the Trustee may have had about CLG were misguided.  Among other things, CLG has produced documents showing that it is an independent law firm that provides legitimate services and value to its clients, and that the client files it previously received from LPG were the product of an arm's length transaction for which it paid fair consideration.

Having received the above-referenced documents, the Trustee himself has acknowledged the independence and legitimacy of CLG through his post-Turnover/PI Order conduct in this action.  Specifically, by motion dated July 7, 2023, the Trustee sought to approve CLG as his stalking horse bidder for tens of thousands of additional LPG client files, describing CLG to the Court as "legally providing case specific legal services tailored to the consumer's needs"; "A model very different than the boiler plate legal services offered by LPG"; and "a reputable law firm providing valuable legal services in compliance with applicable law."  Having said those things in the context of seeking an order authorizing him to enter a purchase agreement with CLG for additional LPG client files — on the basis of CLG being a "good faith purchaser" — the Trustee plainly was satisfied by the evidence it received that CLG is not (i) an alter ego of LPG or Diab, or (ii) a law firm that warrants continuing to have $1 million of its assets frozen or its CRM subject to continued Trustee access and oversight.

Moreover, having rightly represented to this Court that CLG is "a reputable law firm providing valuable legal services in compliance with applicable law" — and having characterized CLG as "a good faith purchaser" of LPG client files — the Trustee cannot possibly establish a likelihood of success on the merits of its claim.  Nor can the Trustee establish any of the other criteria necessary for injunctive relief.  Indeed, the supposed harm underlying the Trustee's claim (that as a supposed alter ego of LPG and Diab, CLG did not pay fair consideration for the client files it

received from LPG) not only is inconsistent with the documentary proof the Trustee has received and the Trustee's representations to the Court, but even if it existed, the supposed harm would be compensable through monetary relief.  As a matter of law, such harm (*i.e.*, harm that is compensable by monetary relief) is not irreparable.

Finally, the balance of equities favors CLG, as no legitimate basis exists for the Trustee to continue to seek to have CLG's assets frozen or its CRM subject to Trustee access and oversight when, based on the documentary proof the Trustee received from CLG after the Turnover/PI Order was issued, the Trustee was sufficiently satisfied with CLG's bona fides to make the above-referenced representations to the Court and seek approval of CLG as "a good faith purchaser" of additional LPG client files.  Further, the continued existence of the Turnover/PI Order recently subjected CLG to a substantial risk of harm and unnecessary expense in that the Trustee cited to the Order as grounds for him to try to push through a purported "settlement agreement" with the bank holding CLG's $1 million of frozen assets (Optimum Bank), pursuant to which (if the settlement had been allowed) the $1 million would have been seized and divided up between the Trustee and Optimum Bank.  CLG was forced to incur legal fees to successfully defend against the Trustee's improper money grab.

In light of the substantially changed circumstances, based on the above facts and as further described herein and in the Rebhun Declaration, the Turnover/PI Order should be vacated, or at a minimum modified, as to CLG, including the release to CLG of the approximately $1 million currently frozen in the Optimum Account and relieving CLG from the obligation to allow the Trustee administrator continued oversight of and access to its CRM.

## II.    **BACKGROUND**

On March 20, 2023 (the "Petition Date"), debtor LPG filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned bankruptcy case (the "Case"). *See* Pet., ECF No. 1. On May 4, 2023, the Bankruptcy Court entered an *Order Directing United States Trustee to Appoint Chapter 11 Trustee* [Docket No. 58], and on May 8, 2023, the Trustee filed his *Acceptance of Appointment as Chapter 11 Trustee* [Docket No. 63]. The Court entered the *Order Approving the U.S. Trustee's Application*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    *for the Appointment of a Chapter 11 Trustee* on the same date [Docket No. 65], and the Trustee has

2    continued to serve in this capacity since this date.

3        On May 25, 2023, the Trustee filed his *Adversary Complaint* initiating this action (the

4    "Action"), Docket No. 1. Filed concurrently with Trustee's Adversary Complaint, the Trustee

5    sought emergency omnibus relief seeking, among other things, a broad temporary restraining order

6    for the turnover and preservation of operating information, client information, accounts, ACH

7    processing accounts, bank accounts and client funds. Action, Docket Nos. 3-8. On May 26, 2023,

8    the Court issued the order on Trustee's Emergency Omnibus motion and set a status conference and

9    preliminary injunction hearing for June 12, 2023. Action, Docket Nos. 13 and 21 amended to correct

10    an address contained therein.

11        On June 23, 2023, the Court issued its Order granting a preliminary injunction for the relief

12    effectuated in the TRO. Action, Docket No. 70.

13    **III.    ARGUMENT**

14        Section 105 authorizes the bankruptcy court to issue any order necessary or appropriate to

15    carry out the provisions of the Code.[1] The specific question of whether a court should issue — or

16    here, maintain — an injunction under § 105 turns upon the "traditional elements," i.e., likelihood of

17    success on the merits, irreparable harm, balance of hardships, and public interest.[2]

18        Additionally, "[b]ecause injunctive relief is drafted in light of what the court believes will

19    be the future course of events, a court must never ignore significant changes in the law or

20    circumstances underlying an injunction lest the decree be turned into an instrument of wrong."[3]

21    Courts thus regularly dissolve preliminary injunctions when changed circumstances undermine the

22    original basis for the injunctive relief.[4]

---

[1]    11 U.S.C. § 105(a).

[2]    *Pac. Gas & Elec. Co. v. Cal. Pub. Utils. Comm'n (In re Pac. Gas & Elec. Co.)*, 263 B.R. 306, 321 (Bankr. N.D. Cal. 2001).

[3]    *Salazar v. Buono*, 559 U.S. 700, 714–15 (2010) (plurality op.) (internal quotation marks, ellipsis, and citation omitted).

[4]    *See, e.g.*, *CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1111 (9th Cir. 2017).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Ordinarily, "dissolution should depend on the same considerations that guide a judge in deciding whether to grant or deny a preliminary injunction in the first place"—i.e., "[t]he familiar quartet" of "likelihood of success, the threat of irreparable injury to the party seeking interim relief, the equities and the public interest."[5] Demonstrating a likelihood of success on the merits is the most important element of a preliminary injunction.[6]

The changed circumstances here bar the Trustee from meeting these criteria and thus the Turnover/PI Order should be vacated as to CLG.

## A.    The Trustee Cannot Demonstrate A Likelihood of Success on the Merits

To establish a likelihood of success on the merits, the Trustee must show "a fair chance of success" based on the preponderance of the evidence.[7] Based on the evidence provided to the Trustee since the Turnover/PI Order was issued — and the Trustee's own admissions regarding what that evidence shows (i.e., that the evidence establishes CLG's bona fides sufficient to warrant the Trustee supporting CLG as a " good faith purchaser" of additional LPG client files) — the Trustee cannot meet this standard.

The Trustee's initial "Complaint for:  (1) Injunctive Relief; (2) Avoidance, Recovery, and Preservation of Two-Year Actual Fraudulent Transfers; (3) Avoidance, Recovery, and Preservation of Two-Year Constructive Fraudulent Transfers; (4) Avoidance, Recovery, and Preservation of Four-Year Actual Fraudulent Transfers; (5) Avoidance, Recovery, and Preservation of Four-Year Constructive Fraudulent Transfers; and (6) Turnover," commencing this action, incorrectly alleged that CLG was an alter ego of LPG (and as such, supposedly had engaged in illegal consumer practices), and also the recipient of supposedly fraudulent transferred LPG client files.[8]  Since the

---

[5]    *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994).

[6]    *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

[7]    *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc).

[8]    Presumably there can be no fraudulent transfer from one alter ego to another alter ego, as they are effectively one and the same entity. Thus, while the Trustee initially alleged that CLG both was an alter ego of LPG and transferee of a fraudulent transfer, he has since twice amended his complaint on this point: first, to remove the alter ego allegation as to CLG altogether and, most recently, to put it back in but allege that CLG is an alter ego of Diab instead of the Debtor/transferor.  The new alter ego allegation is just as incompatible with the Trustee's prior representations to this Court as the old allegation.  The Trustee

1    Turnover/PI Order issued, CLG has furnished evidence to the Trustee establishing both that it is not

2    an insider of, controlled by, or affiliated with LPG or Diab, and that it paid fair consideration for the

3    client files it previously received from LPG.

4         The Trustee was sufficiently satisfied by the above-referenced evidence that after the

5    Turnover/PI Order was issued, he (1) sought authorization to enter into an agreement with CLG as

6    a "good faith purchaser" of tens of thousands of additional LPG client files, and in the course of

7    doing so, (2) described CLG to this Court as "legally providing case specific legal services tailored

8    to the consumer's needs"; "A model very different than the boiler plate legal services offered by

9    LPG"; and "a reputable law firm providing valuable legal services in compliance with applicable

10   law."[9]

11        **1.    After the Hearing on the Turnover/PI Order, CLG Was Vetted in
          Connection with the Asset Sale Process Run by the Trustee, and
12        Thereafter Found by the Trustee to Be a "Reputable Law Firm"**

13        After the Turnover/PI Order was entered, the Trustee conducted a vetting process for the

14   sale of LPG's remaining client files that limited potential buyers to those "compliant with applicable

15   rules and regulations," as well as agreeable "to additional provisions to protect consumers."[10] At the

16   conclusion of this process, the Trustee sought authorization to enter an asset purchase agreement

17   with CLG as a "good faith purchaser."[11] CLG hereby refers to and incorporates the Trustee's

18

19   _____

20   plainly has no basis to allege that CLG is an alter ego of Diab, having made flatly contrary representations
     to this Court (in defending CLG's status as a "good faith purchaser" and in seeking authorization for CLG
21   to purchase additional LPG client files), i.e., in representing to this Court that CLG "legally provid[es] case
     specific legal services tailored to the consumer's needs"; is "[a] model very different than the boiler plate
22   legal services offered by LPG"; and is "a reputable law firm providing valuable legal services in
     compliance with applicable law." *See infra* n.9.

23   [9]   *Notice of Motion and Motion of Trustee Richard A. Marshack for Entry of an Order (a) Approving*
24   *Sale, Subject to Overbid, of Assets Free and Clear of All Liens, Claims, Encumbrances and Interests*
     *Pursuant to 11 U.S.C. § 363(b) and (b) Approving Assumption and Assignment of Certain Executory*
25   *Contracts and Unexpired Leases and Other Agreements* [Dkt. No. 191] (the "Sale Motion"). CLG was not
     the prevailing bidder at the auction and the assets were sold to another, higher bidder, the Morning Law
26   Group.

27   [10]   *Id.*

28   [11]   *Id.*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

description of CLG's history and business in the sale pleadings, which detail the Trustee's process, the parameters for participation as a bidder, and the bona fides of CLG in particular to serve as his stalking horse bidder for LPG's remaining 35,000 client files.[12]

In connection with the Trustee's sales process, it requested a finding from this Court — and made representations to this Court — that are flatly inconsistent with the assertions it originally made that underly the Turnover/PI Order.  Specifically, the Trustee requested a finding from this Court that CLG is a "good faith purchaser."[13] In support of that requested finding, the Trustee described CLG to this Court as "legally providing case specific legal services tailored to the consumer's needs"; following "[a] model very different than the boiler plate legal services offered by LPG"; and "a reputable law firm providing valuable legal services in compliance with applicable law."[14] Further, and also inconsistent with the Trustee's assertions underlying the Turnover/PI Order, the Trustee has been content to allow CLG to continue to service the LPG client files that CLG acquired prior to the petition date (the "Acquired LPG Client Files"), which CLG has done and which are now CLG's own client files.[15]

The Trustee cannot alter his position regarding CLG to fit whatever narrative serves him in the moment. When he wanted to get the injunction, the Trustee filed a declaration "on information and belief" that CLG was a Tony Diab created entity formed to receive LPG clients and files. Even if the Trustee believed he had a basis to make the allegation at the time, he knows now it was incorrect. Conveniently, the Trustee's declarant, while seeming to know all about the transfers, said nothing about the fact that CLG paid fair consideration for the files, which the Trustee knows now occurred. That the Trustee's initial allegations about CLG proved incorrect presumably is why, later,

---

[12]    *Id.*, at pp. 9-11; Declaration of Jason J. Rebhun dated July 7, 2023 [Dkt. No. 191-4].

[13]    Sale Motion, at pp. 9-11.

[14]    *Id.*

[15]    *Trustee's Notice of Motion and Emergency Motion (i) For Entry of a Second Interim Order; (a) Authorizing the Trustee to Obtain Additional Post-Petition Financing and Superpriority Administrative Expense Claim Pursuant to 11 U.S.C. § 364; and (b) Setting Final Hearing; and Pursuant to Final Hearing, (ii) For Entry of Final Order Approving Post-Petition Financing on a Final Basis; Memorandum of Points and Authorities; Declaration of Richard A. Marshack in Support* [Dkt. No. 249].

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Trustee (1) wanted CLG to be his stalking horse bidder, and (2) reversed his position and touted CLG's bona fides to this Court. Now that the sale is over, the Trustee cannot revert back to his original, disproven allegations regarding CLG — from which he walked away during the sale process — to try to keep unjustified injunctive relief against CLG in place. Nor does any basis exist for the Trustee to try to manufacture some other negative narrative about CLG, having admitted that CLG is "a reputable law firm providing valuable legal services in compliance with applicable law" and having sought to defend CLG as a "good faith purchaser" of LPG client files. It would be disingenuous at best for him to suggest otherwise.

### 2. The Only "Evidence" In Support of the Trustee's Fraudulent Transfer Claims Are Hearsay Statements by Non-Parties to the Relevant Transactions

The Trustee's above-referenced requested finding that CLG is "a bona fide purchaser" of LPG client files (and its positive characterizations of CLG's business and operations) also are inconsistent with the assertions it made in support of the Turnover/PI Order that CLG previously was not a bona fide purchaser of LPG client files. Prior to the petition date, CLG acquired via purchase or forgiveness of indebtedness owing by LPG to third parties approximately 6,000 client files from LPG (i.e., the above-referenced "Acquired LPG Client Files"). CLG has provided the Trustee with documentation confirming that the acquisition was arm's length.[16] Indeed, as a result of the transaction, LPG received the benefit of $3 million cash consideration and forgiveness of approximately $3.1 million of indebtedness.[17] CLG has provided to the Trustee documentation of the cash payment and debt forgiveness.

Had the Trustee continued to be concerned about the legitimacy of the Acquired LPG Client Files following the entry of the Turnover/PI Order, the Trustee would not have endorsed CLG as "a bona fide purchaser" of approximately 35,000 additional LPG files.  Moreover, no credible evidence exists in the record supporting the merits of the Trustee's false narrative against CLG that the

---

[16]    Rebhun Declaration ¶ 4. CLG has furnished evidence of wire transfers totaling $3 million, forgiveness of approximately $3.1 million indebtedness, and other documentation to the Trustee on an informal basis. *Id.* ¶ 5.

[17]    Rebhun Declaration, ¶ 4.

Acquired LPG Client files was the product of a fraudulent transfer. Indeed, the only "evidence" that was submitted to support the Turnover/PI Order on this issue were statements made "on information and belief" by an employee of former LPG investor Validation Partners LLC, that "Tony Diab and his associates" supposedly established CLG to receive clients and files of LPG and that client files were transferred by LPG to CLG in early 2023. Declaration of Russ Squires [Adv. Dkt. No. 5] ¶¶ 11-15. Not only is this "evidence" is hearsay by a non-participant in the transactions,[18] but any concern that the Trustee may have had in this regard prior to the entry of the Turnover/PI Order clearly had been eliminated by the time the he endorsed CLG as **"a good faith purchaser," "legally providing case specific legal services tailored to the consumer's needs," following "[a] model very different than the boiler plate legal services offered by LPG," and "a reputable law firm providing valuable legal services in compliance with applicable law."**[19]

For the reasons set forth above, the changed circumstances that led the Trustee to endorse CLG as above in representations to this Court (including, the documentary proof that CLG has provided to the Trustee establishing the legitimacy of its purchase of the Acquired LPG Client Files, the "reputable" nature of its operations, and that its "legal services [are] in compliance with applicable law") eliminate the Trustee's ability to establish a likelihood of success on its claim that CLG supposedly was not a bona fide purchaser of LPG client files and, instead, is an alter ego of LPG and Diab.

**B.    The Trustee Also Has Not Satisfied The Remaining Factors For A Preliminary Injunction**

Nor can the Trustee meet any of the remaining factors needed to maintain injunctive relief against CLG in light of the changed circumstances.

**No Irreparable Harm.** To start, the Trustee must show that the estate is "likely" to suffer irreparable injury absent maintaining the preliminary injunction as to CLG.[20] Mere speculative harm

---

[18]    The declarant, Russ Squires, is now employed by Morning Law Group, the purchaser of the 35,000 client files recovered by the Trustee from Phoenix Law Group after outbidding CLG.

[19]    Sale Motion.

[20]    *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Pachulski Stang Ziehl & Jones LLP
Attorneys at Law
Los Angeles, California

1  is insufficient, the harm must be imminent.[21] Moreover, harm that is compensable through money

2  damages does not meet the standard for irreparable harm.[22]

3      The Trustee cannot demonstrate a likelihood of irreparable harm under these principles. To

4  begin, the supposed harm sought to be prevented by the preliminary injunction is economic harm,

5  which is by definition not irreparable. This is not a case alleging the types of injuries absent an

6  injunction that typically support an award of injunctive relief, such as personal injury, property

7  damage, or constitutional rights violations. Additionally, even if all of the Trustee's previous

8  representations to this Court about CLG (including its status as a "good faith purchaser" of LPG

9  client files) turned out not to be correct, the Trustee could still prosecute this case absent the

10  injunction and seek to enforce any judgment he might obtain for payment of money (however

11  unlikely such a judgment might be in light of the Trustee's prior admissions regarding CLG's good

12  faith and the legitimacy of its operations/legal services). Vacating the Turnover/PI Order would not

13  moot the Trustee's misguided fraudulent transfer action against CLG or otherwise divest the Court

14  of jurisdiction.

15      Finally, consistent with the Trustee's admissions, CLG is "a reputable law firm providing

16  valuable legal services in compliance with applicable law," and no basis exists to suggest that if the

17  Trustee were to obtain a judgment against it (again, however unlikely such a judgment may be),

18  CLG would not (based on the "valuable legal services" the Trustee has admitted it provides to its

19  clients), have assets sufficient to cover any such hypothetical judgment. That CLG is not under

20  Diab's control (and that any suggestion to the contrary would be inconsistent with the Trustee's

---

21  [21]    *Id.* at 375-76 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is
22  inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be
awarded upon a clear showing that the plaintiff is entitled to such relief."); *see also In re Excel Innovations,
23  Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of
irreparable harm." (citation omitted)); *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674
24  (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a
25  preliminary injunction." (citation omitted)).

26  [22]    Harms that are monetary may be compensated by a monetary judgment. Thus, these harms are not
irreparable. *See, e.g.*, *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850-51 (9th Cir.
27  1985) ("The possibility that adequate compensatory or other corrective relief will be available at a later
date . . . weighs heavily against a claim of irreparable harm . . . [P]urely monetary injury is compensable,
28  and thus not irreparable." (internal citations and quotations omitted)).

prior admissions and actions regarding CLG since the Turnover/PI Order issued, including the Trustee's having sought authorization to sell tens of thousands of additional LPG client files to CLG based on his characterization of CLG as a "good faith purchaser," as discussed above) further undermines any suggestion that a basis exists for concern regarding CLG's assets.[23]

**Balance of Equities Favors CLG.** Nor can the Trustee establish that the balance of the equities favors the injunction. Upon the original issuance of the injunction, all of CLG's bank accounts were frozen by the banks, and the Optimum Account containing approximately $1 million of CLG's own funds remains frozen pursuant to the injunction. In light of the Trustee's subsequent characterization of CLG as a "good faith purchaser" of LPG client files and a bona fide law firm, no basis exists for the continued freezing of these funds and they should be released to CLG. This is especially true, because the continued freezing has recently resulted in a threat of substantial harm to CLG. The Trustee recently cited the Turnover/PI Order as grounds for him to try to push through a supposed "settlement agreement" with Optimum Bank, pursuant to which (had CLG not stepped in to block the transaction) the approximately $1 million of CLG's funds would have been seized and unjustly divided up between the Trustee and Optimum Bank. CLG was forced to incur legal fees to successfully defend against the Trustee's improper motion in this Court.

**Public Interest Does Not Weigh In Favor of the Turnover/PI Order.** The Court's initial ruling hinged on the belief, in part, of "systematic fraud."[24] As discussed above, the Trustee has since investigated CLG and confirmed that CLG is not engaged in such activities, and to the contrary, "provid[es] valuable legal services in compliance with applicable law." The public interest does not weigh in favor of the Turnover/PI Order.

The Turnover/PI Order does not meet the standards for preliminary injunctive relief and, thus, should be vacated as to CLG on this basis.

---

[23]    Rebhun Declaration, ¶ 5.

[24]    Transcript on Hearing Re: Preliminary Injunction, June 12, 2023, p. 242, lines 1-6.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2

## C.    The Turnover Order/Injunction Exceeds the Bankruptcy Court's Authority Under Bankruptcy Code Section 105(a)

3    In an action outside of bankruptcy for money damages where no equitable relief is sought

4    and no property interest in the defendant's assets is claimed, a district court generally lacks authority

5    to issue a preliminary injunction freezing a defendant's assets before a judgment is entered.[25]

6    Bankruptcy courts nonetheless may issue injunctions to preserve the status quo when the trustee is

7    seeking to pull value back into the estate for fair distribution to creditors.[26]

8    However, "[i]njunctive relief is extraordinary, and should be granted sparingly, and only to

9    the extent that the standards for such relief are satisfied,"[27] which for the reasons set forth above,

10    they are not here.    The Turnover/PI Order freezes CLG's assets prior to any judgment on the

11    fraudulent transfer claims, ties up CLG's own funds, and gives unfettered access to CLG's CRM,

12    all without any evidence of alter ego status or an estate interest in CLG's assets.    Moreover, the

13    freeze and access has continued even after the Trustee (1) obtained documentary evidence that

14    demonstrates the bona fides and independence of CLG's operations and the legitimacy of its prior

15    acquisition of LPG client files, and (2) gained sufficient comfort with CLG and its operations to

16    support CLG as "a good faith purchaser" of additional LPG client files and describe CLG to this

17    Court as "a reputable law firm providing valuable legal services in compliance with applicable law."

18    Moreover, even if the Trustee could establish its claims (notwithstanding the flatly contrary

19
20
21
22

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[25]    *Grupo Mexicano de Desarrollo v. Alliance Bond Fund Inc.*, 527 U.S. 308, 119 S.Ct. 1961 (1999).

23
24

[26]    Some courts *require* the inclusion of equitable remedies such as turnover and/or constructive trust in addition to fraudulent conveyance claims as a condition to a bankruptcy court's authority to issue injunctive relief to preserve the status quo. *See, e.g.*, *Miller v. Mott (In re Team Systems International, LLC)*, 2023 WL 1428572 (Bankr. D. Del. Jan. 31, 2023).

25
26

[27]    *In re Mariner Health Cent., Inc.*, 2023 Bankr. LEXIS 95, *25 (Bankr. N.D. Cal. Jan. 12, 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008)); *see also In re One Times Square Assocs. Ltd. P'ship*, 159 B.R. 695, 702 (Bankr. S.D.N.Y. 1993), *aff'd*, 165 B.R. 773 (S.D.N.Y.), *aff'd*, 41 F.3d 1502 (2d Cir. 1994) (§ 105 should be used sparingly and then only to supplement, not supplant, the Code).

27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  positions he has now taken before this Court), the Trustee's allegations at most would support a

2  legal claim against CLG compensable through money damages.[28]

3       The Trustee has previously cited to the Ninth Circuit's decision *Rubin v. Pringle (In re Focus*

4  *Media Inc.)*, 387 F.3d 1077 (9th Cir. 2004), for the proposition that injunctive relief is appropriate.

5  The *Focus Media* case, however, is distinguishable. In *Focus Media*, the trustee sought to avoid

6  alleged transfers of assets to the debtor's sole shareholder, an individual residing in France, and

7  sought turnover, imposition of a constructive trust, and a permanent injunction. The complaint

8  alleged that the debtor had transferred approximately $20 million to the defendant, and further that

9  the debtor granted millions of dollars in unpaid loans to the defendant. The trustee further alleged

10  that the defendant had already spent these funds. Here, in contrast, there are no allegations or

11  evidence of dissipation. CLG is not an individual who is alleged to have received money from the

12  estate, much less to have done so and absconded to a foreign country to spend the estate's money.

13  Moreover, the client files at issue are now CLG's own client files which the Trustee has been content

14  to allow CLG to service pursuant to operation of its business in the United States. Diab is not in

15  control of CLG or the files, and no basis exists to suggest otherwise. This case thus is nothing like

16  *Focus Media*, and does not present a factual basis sufficient to sustain the continuation of the

17  Turnover/PI Order.

18  **IV.**　**CONCLUSION**

19       This Court should enter an order (a) vacating the Turnover/PI Order, with immediate effect,

20  as to CLG; (b) releasing the funds in the Optimum Account to CLG; (c) relieving the obligation of

21  CLG to allow the Trustee administrator access to its CRM; and (d) entering such further relief as is

22  just and proper.

23

24

25

26

27  ---
[28]　*Granfinanciera v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782 (1989) (avoidance and recovery of

28  fraudulent transfers is a legal remedy).

1    Dated:  December 23, 2024       PACHULSKI STANG ZIEHL & JONES LLP

2

3

4                             By    */s/ Victoria A. Newmark*

5                                 Ira D. Kharasch
                                Steven J. Kahn

6                                 Victoria A. Newmark

7                                 Attorneys for Consumer Legal Group P.C.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**<u>DECLARATION OF JASON J. REBHUN</u>**

I, Jason J. Rebhun, declare:

1.      I am an attorney duly admitted to practice law in the courts of the states of New York and New Jersey. I am also admitted to practice law in the United States District Courts for the Southern District of New York, Eastern District of New York, Northern District of New York, District of New Jersey, and the Second Circuit Court of Appeals. I am also in good standing in those courts.

2.      I make this declaration in support of the "Motion of Consumer Legal Group P.C. for Order: (a) Vacating or, in the Alternative, Modifying as to Consumer Legal Group P.C. That Certain Order Entered June 23, 2023 on Trustee, Richard Marshack's Omnibus Motion Granting: 1) Turnover of Estate Property and Recorded Information Pursuant to 11 U.S.C. § 542; 2) Preliminary Injunction; 3) Lock-Out; 4) Re-Direction of United States Parcel Services Mail; 5) Order to Show Cause; and 6) Other Relief [Docket No. 70]; (b) Releasing Funds Frozen at Optimum Bank to CLG; and (c) Granting Related Relief" (the "<u>Motion</u>") filed by Consumer Legal Group P.C. ("<u>CLG</u>").

3.      I am an owner and managing attorney of CLG. In this capacity, I have personal knowledge of the facts I state below, and if I were to be called as a witness, I could competently testify about what I have written in this declaration.

4.      Prior to the petition date, CLG acquired via purchase or forgiveness of indebtedness approximately 6,000 client files from the Debtor (the "<u>Acquired LPG Client Files</u>"). These were arm's length transactions completed prepetition.

5.      As consideration for the Acquired LPG Client Files, CLG paid $3 million in cash to the benefit of LPG and LPG's indebtedness of approximately $3.1 million owing to third parties was settled. It is my understanding that CLG has furnished to the Trustee evidence of wire transfers to the benefit of LPG totaling $3 million, documentation supporting the settlement of LPG's indebtedness of approximately $3.1 million owing to third parties, and other documentation relevant to the Trustee's allegations as to CLG on an informal basis.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6.      CLG is not an "alter ego" of Tony Diab. Mr. Diab does not directly or indirectly own any equity in CLG. Mr. Diab is not an employee, officer or director of CLG. Mr. Diab does not directly or indirectly exercise any actual control of CLG's operations or corporate governance.

Executed this 23 day of December, 2024.

Jason J. Rebhun

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California  90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***NOTICE OF MOTION AND MOTION OF CONSUMER LEGAL GROUP P.C. FOR ORDER:  (A) VACATING OR, IN THE ALTERNATIVE, MODIFYING AS TO CONSUMER LEGAL GROUP P.C. THAT CERTAIN ORDER ENTERED JUNE 23, 2023 ON TRUSTEE, RICHARD MARSHACK'S OMNIBUS MOTION GRANTING: 1) TURNOVER OF ESTATE PROPERTY AND RECORDED INFORMATION PURSUANT TO 11 U.S.C. § 542; 2) PRELIMINARY INJUNCTION; 3) LOCK-OUT; 4) RE-DIRECTION OF UNITED STATES PARCEL SERVICES MAIL; 5) ORDER TO SHOW CAUSE; AND 6) OTHER RELIEF [DOCKET NO. 70]; (B) RELEASING FUNDS FROZEN AT OPTIMUM BANK TO CLG; AND (C) GRANTING RELATED RELIEF*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 23, 2024,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **December 23, 2024,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Federal Express**
Honorable Scott Clarkson
U.S. Bankruptcy Court, Ronald Reagan Federal Building
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 23, 2024 | Maria R. Viramontes | /s/Maria R. Viramontes |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

1. __TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)__:

- **Keith Barnett**    keith.barnett@troutman.com, kelley.wade@troutman.com
- **Bradford Barnhardt**    bbarnhardt@marshackhays.com, bbarnhardt@ecf.courtdrive.com,alinares@ecf.courtdrive.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Christopher Celentino**    christopher.celentino@dinsmore.com, caron.burke@dinsmore.com
- **Leslie A Cohen**    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;clare@lesliecohenlaw.com
- **Michael T Delaney**    mdelaney@bakerlaw.com, TBreeden@bakerlaw.com
- **Alan W Forsley**    alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy@flpllp.com,andrea@flpllp.com
- **Jeremy Freedman**    jeremy.freedman@dinsmore.com, bonnie.connolly@dinsmore.com
- **Christopher Ghio**    christopher.ghio@dinsmore.com, angelica.urena@dinsmore.com
- **Eric D Goldberg**    eric.goldberg@dlapiper.com, eric-goldberg-1103@ecf.pacerpro.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Veneeta Jaswal**    veneeta.jaswal@dinsmore.com, bonnie.connolly@dinsmore.com
- **Sweeney Kelly**    kelly@ksgklaw.com
- **Ira David Kharasch**    ikharasch@pszjlaw.com
- **Meredith King**    mking@fsl.law, ssanchez@fsl.law;jwilson@fsl.law
- **David S Kupetz**    David.Kupetz@lockelord.com, mylene.ruiz@lockelord.com
- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **Daniel A Lev**    daniel.lev@gmlaw.com, cheryl.caldwell@gmlaw.com;dlev@ecf.courtdrive.com
- **Yosina M Lissebeck**    Yosina.Lissebeck@Dinsmore.com, caron.burke@dinsmore.com;Wendy.Yones@Dinsmore.com
- **Daniel S March**    marchlawoffice@gmail.com, marchdr94019@notify.bestcase.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net,kmarch@sbcglobal.net
- **Richard A Marshack (TR)**    pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Victoria Newmark**    vnewmark@pszjlaw.com, hdaniels@pszjlaw.com
- **Queenie K Ng**    queenie.k.ng@usdoj.gov
- **Lisa Patel**    lpatel@lesnickprince.com, jmack@lesnickprince.com;jnavarro@lesnickprince.com
- **Douglas A Plazak**    dplazak@rhlaw.com
- **Daniel H Reiss**    dhr@lnbyg.com, dhr@ecf.inforuptcy.com
- **Jonathan Serrano**    Jonathan@MarguliesFaithLaw.com, vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com
- **Zev Shechtman**    Zev.Shechtman@saul.com, zshechtman@ecf.inforuptcy.com;hannah.richmond@saul.com;LitigationDocketing@saul.com
- **Howard Steinberg**    steinbergh@gtlaw.com, pearsallt@gtlaw.com;NEF-BK@gtlaw.com;howard-steinberg-6096@ecf.pacerpro.com
- **Andrew Still**    astill@swlaw.com, kcollins@swlaw.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
- **William J Wall**    wwall@wall-law.com
- **Johnny White**    JWhite@wrslawyers.com, jlee@wrslawyers.com