1  CHRISTOPHER B. GHIO (259094)
   christopher.ghio@dinsmore.com
2  JEREMY B. FREEDMAN (308752)
   jeremy.freedman@dinsmore.com
3  DINSMORE & SHOHL LLP
   655 West Broadway, Suite 800
4  San Diego, California 92101
   Tele:   619.400.0500
5  Fax:    619.400.0501
6
7  Special Counsel to Richard A. Marshack former Chapter 11 Trustee for the Bankruptcy Estate of
   The Litigation Practice Group PC and current Liquidating Trustee of the Liquidation Trust
8

9
10              **UNITED STATES BANKRUPTCY COURT**

11         **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

12

| | |
|---|---|
| In re: | Case No.: 8:23-bk-10571-SC |
| THE LITIGATION PRACTICE GROUP P.C., | Adv. Proc. No. 8:23-ap-01046-SC |
| Debtor. | Chapter 11 |
| RICHARD A. MARSHACK, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF RICHARD A. MARSHACK'S MOTION TO VOLUNTARILY DISMISS DEFENDANTS GUARDIAN PROCESSING LLC, TOUZI CAPITAL LLC, PECC CORP, TERACEL BLOCKCHAIN FUND II, LLC ENG TAING HENG TAING, OAKSTONE LAW GROUP, AND JIMMY CHHOR *WITHOUT PREJUDICE* IN ORDER TO SEVER TRUSTEE'S CLAIMS AS TO THESE DEFENDANTS** |
| Plaintiff, | |
| v. | |
| TONY DIAB, et al. | |
| Defendants. | |
| | Date:    March 5, 2025<br>Time:    11:00 a.m.<br>Judge:   Hon. Scott C. Clarkson<br>Place:   Courtroom 5C<br>         411 West Fourth Street<br>         Santa Ana, California  92701 |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................... 4

II. BACKGROUND .................................................................................................. 5

    A.    RELEVANT PROCEDURAL HISTORY ...................................... 5

    B.    RELEVANT ALLEGATIONS AS TO GUARDIAN, TOUZI, PECC
        CORP., TERACEL, ENG, HENG, AND OAKSTONE ......................... 7

III. THE COURT IS AUTHORIZED TO DISMISS GUARDIAN PROCESSING,
     TOUZI CAPITAL, PECC CORP., TERACEL BLOCKCHAIN FUND II, ENG
     TAING, HENG TAING, AND OAKSTONE LAW GROUP WITHOUT
     PREJUDICE ....................................................................................................... 9

IV. THE COURT SHOULD DISMISS GUARDIAN, TOUZI, PECC, TERACEL, ENG
     TAING, HENG TAING, OAKSTONE AND CHORR WITHOUT PREJUDICE ........... 10

    A.    NEITHER GUARDIAN, TOUZI, PECC, TERACEL, ENG, HENG,
        CHHOR NOR OAKSTONE WILL SUFFER PLAIN LEGAL
        PREJUDICE AS A RESULT OF THE DISMISSAL............................. 11

    B.    GRANTING THE TRUSTEE'S VOLUNTARY DISMISSAL WITHOUT
        PREJUDICE WILL PROMOTE JUDICIAL ECONOMY ................... 12

V. CONCLUSION.................................................................................................. 14

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Creative Labs, Inc.* v. *Orchid Tech.*,
    No. C93-4329TEH, 1997 U.S. Dist. LEXIS 13911, 1997 WL 588923, at *2
4    (N.D. Cal. Sept. 12, 1997) ........................................................................................ 10, 12

5    *Hamilton v. Firestone Tire & Rubber Co.*,
    679 F.2d 143 (9th Cir. 1982) ...................................................................................... 9, 10

6

*Hargis v. Foster*,
7    312 F.3d 404 (9th Cir. 2002) ............................................................................................ 9

8    *Jackson v. LegalMatch.com*,
    42 Cal. App. 5th 760, 775 (2019) ..................................................................................... 8

9

*Mitchell-Jones* v. *Menzies Aviation, Inc.*,
10    No. C10-1190JLR, 2011 U.S. Dist. LEXIS 82889, 2011 WL 3273221, at *3
    (W.D. Wash. Jul. 28, 2011) ....................................................................................... 10, 12

11

*Searcy* v. *Thomas*,
12    No. 10-cv-294-EJL, 2013 U.S. Dist. LEXIS 32661, 2013 WL 837936, at *3
    (D. Idaho Mar. 6, 2013) ............................................................................................. 10, 12

13

*Smith v. Lenches*,
14    263 F.3d 972 (9th Cir. 2001) .......................................................................................... 10

15    *Stevedoring Serv's of Am. v. Armilla Intern.*,
    889 F.2d 919 (9th Cir. 1989) ............................................................................................ 9

16

*Westlands Water Dist. v. United States*,
17    100 F.3d 94 (9th Cir. 1996) ....................................................................................... 10, 11

18

**Statutes**

19

Federal Rule of Civil Procedure 41(a)(2) ............................................................................ 9

20

21

22

23

24

25

26

27

28

# I.

## **INTRODUCTION**

This Court should grant Plaintiff Richard A. Marshack, former Chapter 11 Trustee for the Bankruptcy Estate of The Litigation Practice Group PC ("LPG" or "Debtor") and current Liquidating Trustee of the Liquidation Trust's ("Trustee") voluntary request to dismiss Defendants Guardian Processing, LLC ("Guardian"), Touzi Capital, LLC ("Touzi"), PECC Corp. ("PECC"), Teracel Blockchain Fund II, LLC ("Teracel"), Eng Taing ("Eng"), Heng Taing ("Heng"), and Oakstone Law Group, PC ("Oakstone") without prejudice pursuant to Federal Rule of Civil Procedure 42(a)(2), on the grounds that severing Trustee's claims as to these Defendants will promote judicial economy, reduce the issues at trial and none of the parties will suffer legal prejudice. While some of these Defendants may have responded to prior pleadings, given the current status of discovery and the absence of a trial date, they do not stand to suffer any undue prejudice from dismissal and refiling their answer in a new Adverary Proceeding.

Allowing the Trustee to dismiss, re-file, and sever the claims against these Defendants will promote judicial efficiency, clarify the issues for trial, prevent confusion, and isolate claims related to distinct and intertwined misconduct involving fraudulent transfers, alter ego liability, and breaches of fiduciary duty. These claims diverge from the primary fraudulent scheme orchestrated by Defendant Tony Diab ("Diab") in that Eng and Heng engaged in distinct fraudulent activity post-client file transfer from LPG to Oakstone and Guardian Processing that has harmed the Debtor's estate. Specifically, the fraudulent rogue ACH transactions on LPG's clients without authorization often resulting in double or triple ACH transactions on individual clients in a single month. Moreover, in furtherance of a criminal enterprise and Ponzi scheme, Eng, Heng, and Touzi Capital used LPG's ACH debits as security to secure investment funds to engage in crypto mining. Severance will also simplify discovery and potential resolution as to these Defendants, ensuring a streamlined and efficient process.

The claims against Guardian, Touzi, PECC, Teracel, Eng, Heng, Oakstone, and Chhor are integrally intertwined and inseparable, as they involve a series of fraudulent transfers, improper use of LPG's data and funds, and coordinated misconduct. Specifically, the evidence shows that Eng,

Heng, and the entities they control, including but not limited to, Oakstone, Guardian, Touzi, PECC, and Teracel, facilitated the diversion of LPG assets, including ACH receivables and client account data, for little or no value. These funds were transferred to and through accounts controlled by these Defendants, violating LPG's obligations to its clients and creditors.

Further, Guardian and Oakstone played critical roles in the processing and misuse of LPG client data, with evidence indicating that they knowingly participated in the fraudulent transfer of over 15,000 LPG client files and receivables, forming part of a broader scheme to defraud LPG creditors. These claims also implicate breaches of fiduciary duties by Eng and Heng, who leveraged their control over these entities to perpetuate fraudulent transfers and obstruct creditor recovery. This misconduct carried out in furtherance of a coordinated scheme, necessitates severance to streamline discovery and adjudication while preserving the ability to fully address the misconduct of these Defendants in a separate proceeding.

Recognizing the efficiency to be achieved by dismissing and severing Trustee's claims, Plaintiff anticipates that some Defendants may stipulate to the requested relief. However, certain Defendants, including Guardian, Touzi, PECC, Teracel, Eng, Heng, Oakstone, and Chhor may remain unwilling to stipulate, thus requiring Plaintiff to seek relief from the Court. Based on the foregoing evidence, legal authority, and arguments herein, Plaintiff respectfully requests this Court dismiss and sever the claims against these Defendants without prejudice to allow Plaintiff to file a separate and severed complaint within ten days of any order granting Plaintiff's instant motion.

## II.

## BACKGROUND

### A.    RELEVANT PROCEDURAL HISTORY

1.    On March 20, 2023, Debtor filed a Voluntary Petition for Relief under Chapter 11 of Title 11 of the United States Code, sections 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Central District of California (the "Court"). On May 4, 2023, the Court entered the Order Directing United States Trustee to Appoint a Chapter 11 Trustee [Bk. Dkt No. 58], and on May 8, 2023, the Trustee filed his Acceptance of Appointment as Chapter 11 Trustee [Bk. Dkt. No. 63].

2.      To preserve the Estate's going concern value and to halt the collection of Estate funds by numerous parties, the Trustee moved quickly to file this Adversary Proceeding against dozens of defendants on May 25, 2023 – less than three weeks after his appointment. The Court granted the injunctive relief sought in the initial Complaint in an Order entered May 26, 2023 [Adv. Dkt. No. 13) and in an Amended Order entered on June 2, 2023 [Adv. Dkt. No. 21]. This Adversary Proceeding and the injunctive relief obtained herein were essential to the successful sale of the Debtor's assets in the bankruptcy case [Bk. Dkt. No. 352].

3.      Trustee subsequently amended the Complaint on June 15, 2023 ("Amended Complaint") [Adv. Dkt. No. 62]. The Amended Complaint set out an elaborate and wide-ranging shell game designed to strip assets from Debtor while directing those assets, or the income they generate, to entities either owned or controlled by Diab or affiliated parties.

4.      On July 24, 2023, Defendants Touzi and Eng filed a Motion to Dismiss as to Trustee's Amended Complaint [Adv. Dkt. No. 96]. The hearing was originally scheduled to be heard on September 13, 2023. On July 27, 2023, the Court continued the hearing to September 14, 2023 [Adv. Dkt. No. 108]. Trustee opposed Defendants' Motion to Dismiss providing recently obtained evidence to support Trustee's allegations and causes of action as to these Defendants, including but not limited to, evidence of Eng's direct involvement in initiating double pulls on LPG client accounts totaling more than $550,000 pre and post-petition, using entities he controlled, in an effort to hide, hinder and delay discovery of the fraudulent transfers and wrongful conduct [Adv. Dkt. No. 159-1]. Since that time, the Trustee has further discovered through his investigation Heng and Chorr's involvement and conspiracy to aid Eng, Touzi, Teracel, PECC, Oakston, and Guardian in the fraudulent scheme and criminal enterprise.

5.      On September 14, 2023, the Court granted Defendant's Motion to Dismiss without prejudice and ordered a second amended complaint be filed no later than October 14, 2023 [Adv. Dkt. No. 211].

6.      On October 13, 2023, the Trustee filed his Second Amended Complaint ("SAC") [Adv. Dkt. No. 226]. The Second Amended Complaint alleges specific facts and allegations submitted to

the Court in support of the Trustee's claims against Touzi and Eng, and the myriad of entities Eng and Heng created to hide the fraudulent transfers.

**B.      RELEVANT ALLEGATIONS AS TO GUARDIAN, TOUZI, PECC CORP., TERACEL, ENG, HENG, AND OAKSTONE**

7.      Guardian, Touzi, PECC, Teracel, Eng, Heng, Oakstone, and Chhor are implicated in a fraudulent scheme involving the transfer of LPG's client files, ACH receivables, and related financial data. Specifically, between August 2022 and March 2023, tranches of client files, including payment information required to process ACH receivables, were transferred among the Defendants and other entities as part of a coordinated effort to defraud LPG creditors and enrich insiders. These files and receivables were transferred multiple times, often for no or grossly inadequate value, and without the consent of LPG clients.

8.      Eng and his affiliated entities, including Touzi, PECC, Teracel, Oakstone, and Guardian played a central role in these fraudulent transfers. Guardian, operating under the direction of Eng and Heng Taing, served as a key facilitator by processing LPG client ACH transactions using LPG's proprietary client data. During the relevant period, Guardian maintained access to LPG's DebtPayPro ("DPP") platform, which stored sensitive client payment information. This access was provided without the consent of LPG clients and in violation of applicable legal and ethical obligations. The funds from these transactions were funneled through accounts controlled by Guardian and deposited into financial institutions linked to Touzi, PECC, and Teracel.

9.      Eng Taing's relationship with LPG and his insider status allowed him to orchestrate and execute a series of fraudulent transfers designed to strip LPG of its assets while enriching himself and the entities under his control. Evidence shows that Eng and Heng directly benefited from these transfers, receiving funds through Touzi and related entities without providing any legitimate value in return. Eng also exerted control over Oakstone, an entity that participated in managing and monetizing fraudulently obtained LPG client data.

10.      Guardian initially processed ACH transactions using LPG client data and purportedly remitted payment to LPG. However, by December 2022 or January 2023, Guardian began withholding ACH payments owed to LPG, including payments on client files that had not been

fraudulently transferred. These withheld payments, which amount to millions of dollars, were retained in financial accounts controlled by Guardian and the other Defendants. Pre-petition, LPG demanded the return of these funds and sought to terminate Guardian's access to its client data. Despite these demands, Guardian and the other Defendants continued to process and retain funds derived from LPG clients.

11.    By February 2023, Guardian's access to LPG's DPP platform was terminated. However, Guardian continued to process ACH transactions using client payment information it had wrongfully retained. These transactions were processed without client consent and in direct violation of the client's Legal Service Agreements. The proceeds from these transactions were funneled to Touzi, PECC, and Teracel and were not remitted to LPG or its creditors.

12.    In addition to these fraudulent activities, Guardian, Oakstone, Touzi, PECC, and Teracel entered into numerous ACH receivable purchase agreements purporting to acquire revenue streams from LPG marketing companies, also known as "cappers." These agreements, which purported to transfer client payment streams fraudulently obtained from LPG, violate Sections 6151 and 6155 of the California Business and Professional Code. Under these provisions, non-attorneys and non-licensed entities are prohibited from referring potential clients to attorneys or engaging in related referral activities without proper registration with the State Bar of California. *See Jackson v. LegalMatch.com*, 42 Cal. App. 5th 760, 775 (2019).

13.    The Trustee alleges that these purchase agreements were void ab initio and that the Defendants' participation in this scheme demonstrates their active involvement in perpetuating and profiting from Diab's fraudulent scheme. The Defendants, unlike other entities named in the larger 1046 Action, acted as direct conduits for the misappropriation of LPG client funds and played a unique and central role in concealing and monetizing these assets. These actions caused significant harm to LPG's estate and creditors.

14.    The evidence also shows that Eng and Heng, through their control of Touzi, PECC, and Teracel, developed and implemented the strategy to dismantle LPG's operations and divert its assets. Diab's testimony during the § 341(a) hearing corroborates that Eng was a key architect of the fraudulent scheme, pushing for the breakup of LPG and facilitating the transfer of its client files and

receivables to entities under his control. Further evidence shows that Heng and Chorr aided and assisted Eng in facilitating the fraudulent scheme. Eng and Heng's involvement, however, extended beyond mere facilitation—they actively participated in structuring transactions, concealing relationships, and retaining proceeds derived from these fraudulent activities.

15.    Oakstone, as another entity under the control of Eng and on information and belief Heng and Chorr. Together they further aided in the fraudulent scheme by providing legal and administrative support for the misappropriation and monetization of LPG client files. Oakstone's role in managing fraudulently obtained assets underscores its complicity in the scheme and its liability as part of the larger enterprise orchestrated by Eng and his affiliates.

16.    Based on the foregoing, the Trustee alleges that the Defendants collectively and individually engaged in fraudulent transfers, breaches of fiduciary duty, unjust enrichment, and civil conspiracy, among other claims, and that their actions directly harmed LPG's estate and creditors. Severing the claims against these Defendants and pursuing them in a separate adversary proceeding will allow for a more focused and efficient resolution of these issues while preserving the integrity and efficiency of the broader 1046 Action.

### III.
### THE COURT IS AUTHORIZED TO DISMISS GUARDIAN PROCESSING, TOUZI CAPITAL, PECC CORP., TERACEL BLOCKCHAIN FUND II, ENG TAING, HENG TAING, AND OAKSTONE LAW GROUP WITHOUT PREJUDICE

17.    Rule 41(a)(2) states in pertinent part that, after a defendant serves an answer or a motion for summary judgment, and, absent a stipulation by all parties who have appeared, "an action may be dismissed at the plaintiff's request, only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The decision whether to permit voluntary dismissal under Rule 41(a)(2), without prejudice, is left to the sound discretion of the court. *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 145 (9th Cir. 1982); *Hargis v. Foster*, 312 F.3d 404, 412 (9th Cir. 2002).

18.    The purpose of Rule 41(a)(2) is to permit a plaintiff to dismiss an action without prejudice so long as the defendant will not be prejudiced or unfairly affected by dismissal. *Stevedoring Serv's of Am. v. Armilla Intern.*, 889 F.2d 919, 921 (9th Cir. 1989). "When ruling on a motion to dismiss without prejudice, the district court must determine whether the defendant will suffer some

plain legal prejudice as a result of the dismissal." *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996); *see also Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001). Legal prejudice is "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist.*, 100 F.3d at 97. It is insufficient that the issues raised in a lawsuit remain unresolved. *Id.*; *Hamilton*, 679 F.2d at 145.

19.    The Trustee's intent to pursue the same claims against Guardian, Touzi, PECC, Teracel, Eng, Heng, Chorr, Guardian, and Oakstone in a separate adversary proceeding does not constitute prejudice. The mere prospect of a subsequent lawsuit is insufficient to establish such prejudice. *See Hamilton*, 679 F.2d at 145. The fact that these Defendants may need to refile their responsive pleadings does not rise to the level of legal prejudice necessary to deny the Trustee's request for voluntary dismissal without prejudice. *See, e.g.*, *Searcy* v. *Thomas*, No. 10-cv-294-EJL, 2013 U.S. Dist. LEXIS 32661, 2013 WL 837936, at *3 (D. Idaho Mar. 6, 2013); *Mitchell-Jones* v. *Menzies Aviation, Inc.*, No. C10-1190JLR, 2011 U.S. Dist. LEXIS 82889, 2011 WL 3273221, at *3 (W.D. Wash. Jul. 28, 2011); *Creative Labs, Inc.* v. *Orchid Tech.*, No. C93-4329TEH, 1997 U.S. Dist. LEXIS 13911, 1997 WL 588923, at *2 (N.D. Cal. Sept. 12, 1997).

20.    Furthermore, the Defendants have not produced initial disclosures, and the parties have not engaged in any formal discovery or trial preparation, although some informal discovery has occurred. Because there is no credible argument that the Defendants will suffer "plain legal prejudice" if this matter is dismissed without prejudice and refiled as a separate adversary proceeding, the Trustee is entitled to have his claims against Guardian, Touzi, PECC, Teracel, Eng, Heng, Chorr and Oakstone dismissed without prejudice. This approach will allow for a streamlined, focused resolution of these claims without causing undue hardship or prejudice to the Defendants.

**IV.**
**THE COURT SHOULD DISMISS GUARDIAN, TOUZI, PECC, TERACEL, ENG TAING, HENG TAING, OAKSTONE AND CHORR WITHOUT PREJUDICE**

21.    This case involves a highly complex web of transactions and alleged fraudulent activities, with over 40 named Defendants implicated in schemes involving the fraudulent transfer of LPG client files, ACH receivables, and, in some instances, the wrongful processing and retention of funds pulled from LPG client accounts. While there are overarching similarities in the fraudulent

strategies employed, the timing, methods, and schemes often present distinct factual issues that would be better adjudicated separately from the other defendants. This approach will reduce litigation costs, simplify trial proceedings, prevent confusion, and promote the efficient resolution of the Trustee's claims.

22.     The claims against Guardian, Touzi, PECC, Teracel, Eng, Heng, Chorr, and Oakstone involve unique allegations of fraudulent transfers, wrongful conduct, and the improper retention of Estate funds. These claims are intricately linked through shared control, alter ego relationships, and overlapping financial transactions, making them inseparable from one another. Severance and dismissal without prejudice would allow these claims to proceed in a focused and efficient manner without encumbering the broader litigation.

23.     Given the complexity of the claims and the necessity to address the specific misconduct of these Defendants in a streamlined manner, the Trustee respectfully requests that the Court grant his voluntary motion to dismiss the claims against Guardian, Touzi, PECC, Teracel, Eng, Heng, Chorr and Oakstone without prejudice to facilitate the severance of these claims into a separate adversary proceeding.

**A.   NEITHER GUARDIAN, TOUZI, PECC, TERACEL, ENG, HENG, CHHOR NOR OAKSTONE WILL SUFFER PLAIN LEGAL PREJUDICE AS A RESULT OF THE DISMISSAL**

24.     Plaintiff's request to dismiss the claims without prejudice, with the intent to sever and re-file those claims in a separate adversary proceeding, will not cause Guardian, Touzi, PECC, Teracel, Eng, Heng, Oakstone, or Chhor (collectively, the "Target Defendants") any legal prejudice. Although case law does not provide a precise definition of "plain legal prejudice," the analysis typically focuses on whether a dismissal without prejudice would affect a defendant's substantive rights in future litigation, such as the loss of a federal forum, the right to a jury trial, or the ability to assert a statute of limitations defense. *See Westlands Water Dist.*, 100 F.3d at 97.

25.     None of the concerns articulated by the Ninth Circuit in *Westlands Water Dist.* are present here. Granting Plaintiff's request to dismiss without prejudice will not: (1) preclude the Target Defendants from asserting any previously raised or new defenses; (2) deprive them of the ability to

challenge the pleadings; (3) deny them an opportunity for trial or adjudication on the merits; or (4) restrict discovery or meaningful preparation for trial. Should the Court grant Plaintiff's motion, the parties will effectively continue litigating the same issues as in the current adversary proceeding, albeit under a different case number and without the procedural and logistical complexities associated with coordinating discovery, calendaring, and trial preparation with over 40 other defendants whose claims are not directly related to those against the Target Defendants.

26.     Several of the Target Defendants have answered previous iterations of the Complaint, with only minor changes reflected in successive filings. For example, Touzi and Guardian's prior answers have remained substantively consistent across amendments. Moreover, Oakstone and PECC have yet to respond to the latest iteration of the Complaint, meaning that severance and dismissal will not impose any significant new obligations on these Defendants beyond filing an answer in the new adversary proceeding. Courts have repeatedly held that such minimal procedural burdens do not constitute plain legal prejudice. See, e.g., *Searcy v. Thomas*, No. 10-cv-294-EJL, 2013 U.S. Dist. LEXIS 32661, 2013 WL 837936, at *3 (D. Idaho Mar. 6, 2013); *Mitchell-Jones v. Menzies Aviation, Inc.*, No. C10-1190JLR, 2011 U.S. Dist. LEXIS 82889, 2011 WL 3273221, at *3 (W.D. Wash. Jul. 28, 2011); *Creative Labs, Inc. v. Orchid Tech.*, No. C93-4329TEH, 1997 U.S. Dist. LEXIS 13911, 1997 WL 588923, at *2 (N.D. Cal. Sept. 12, 1997).

27.     Furthermore, this matter is still in its early stages, and no significant discovery or dispositive motions have been undertaken by the Target Defendants. Although the parties have conducted a Rule 26(f) conference and preliminary discussions regarding informal discovery, none of the Target Defendants have produced initial disclosures, served discovery requests, or meaningfully engaged in trial preparation. Dismissing and severing the claims against these Defendants will not materially delay their progress in defending this case. To the contrary, severance will streamline proceedings, allowing for more focused discovery and efficient litigation.

**B.      GRANTING THE TRUSTEE'S VOLUNTARY DISMISSAL WITHOUT PREJUDICE WILL PROMOTE JUDICIAL ECONOMY**

28.     At the inception of this matter, Trustee was required to file one adversary proceeding against over 40 defendants to obtain emergency relief based on supported exigent circumstances to

protect Estate assets from dissipation and further transfer. An urgency this Court recognized in granting Trustee's Temporary Restraining Order and subsequent Preliminary Injunction [Bankr. Dkt Nos. 13, 21, and 70]. Proceeding with litigation, discovery, potential resolution, and trial, however, requires a different more manageable approach to reduce the cost and burden to all parties, including the Court.

29.    Plaintiff's ongoing investigation into the claims against all defendants has revealed that certain claims are factually distinct in terms of liability and logically severable from the broader fraudulent transfer claims that form the heart of this matter. Specifically, Plaintiff's claims against the Target Defendants are distinct. As detailed above, these claims involve allegations of fraudulent transfers, breach of fiduciary duty, and unjust enrichment, as well as improper retention and use of LPG client funds. Evidence demonstrates that these defendants were engaged in specific transactions involving the diversion and concealment of assets, including funds transferred through Touzi and Teracel Blockchain Fund II, LLC, and the misuse of LPG client files. Such claims are factually differentiated from those brought against other defendants despite overlapping themes related to Diab's broader Ponzi scheme and fraudulent asset transfers.

30.    Dismissing Plaintiff's claims against the Target Defendants to sever them from the main adversary proceeding will promote judicial economy by streamlining discovery, facilitating potential resolution, and simplifying trial preparation. A narrowly drafted discovery plan specific to the claims against the Target Defendants will reduce the complexity of formal and informal discovery. With fewer defendants involved, coordinating a joint discovery plan under Federal Rule of Civil Procedure 26(f)(3) will be less burdensome and result in cost savings for all parties. This is particularly beneficial in this case, where the claims against the Target Defendants diverge significantly from those brought against other defendants. Reducing extensive joint discovery obligations and required status reports will ease litigation burdens and enhance the potential for resolution.

31.    Similarly, dismissing and severing Plaintiff's claims against the Target Defendants will simplify trial and avoid confusion. While evidence related to Diab's Ponzi scheme and fraudulent transfers may overlap for many defendants, the claims against the Target Defendants involve

additional and separate factual allegations that would unnecessarily extend the length of trial and complicate the presentation of issues. For example, presenting the extensive evidence regarding fraudulent transfers and fiduciary breaches specific to Touzi and Teracel, including their intertwined relationship with Eng, Heng, and PECC Corp., would detract from the focus on other defendants. Isolating these claims into a separate adversary proceeding will streamline trial, clarify the issues, and allow for a more focused adjudication of the allegations against these particular defendants.

## V.

## CONCLUSION

Based on the foregoing, the Court should grant Plaintiff's voluntary request for dismissal without prejudice as to Guardian, Touzi, PECC, Teracel, Eng, Heng, Oakstone, and Chhor, who do not stand to suffer any legal prejudice as a result of such dismissal. Granting this relief will streamline litigation, promote judicial economy, and reduce litigation costs for all parties involved.

This dismissal will enable the claims against the Target Defendants to proceed as a separate and distinct adversary proceeding, facilitating more efficient resolution and allowing the Court to focus on the main claims in this matter without the added complexity of the distinct allegations against these specific defendants. For these reasons, Plaintiff respectfully requests that the Court grant this Motion and dismiss the claims against the Target Defendants without prejudice.

Dated: February 11, 2025                    Respectfully submitted,

                                            DINSMORE & SHOHL LLP

                                            By: */s/ Jeremy B. Freedman*
                                                Christopher B. Ghio
                                                Jeremy B. Freedman
                                                Special Counsel to Richard A. Marshack former
                                                Chapter 11 Trustee for the Bankruptcy Estate of
                                                The Litigation Practice Group PC and current
                                                Liquidating Trustee of the Liquidation Trust